| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RON BENDER (SBN 143364)<br>BETH ANN R. YOUNG (SBN 143945)<br>KRIKOR J. MESHEFEJIAN (SBN 255030)<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.<br>10250 Constellation Boulevard, Suite 1700<br>Los Angeles, California 90067<br>Telephone: (310) 229-1234; Facsimile: (310) 229-1244<br>Email:  rb@lnbyb.com; bry@lnbyb.com; kjm@lnbyb.com | |
| ☐  *Individual appearing without attorney*<br>☒  *Attorney for:* Dream Media Corporation | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>PENTHOUSE GLOBAL MEDIA, INC.,<br><br><br><br><br><br>Debtor(s). | CASE NO.: Lead No.: 1:18-bk-10098-MB |
|---|---|
| | CHAPTER: 11<br>Jointly Administered with (see attached) |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** |
| | DATE: 02/14/2018<br>TIME: 10:00 am<br>COURTROOM: 303 |

**Movant:** Dream Media Corporation

1. **Hearing Location**:

   ☐  255 East Temple Street, Los Angeles, CA 90012      ☐  411 West Fourth Street, Santa Ana, CA 92701
   ☒  21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐  1415 State Street, Santa Barbara, CA 93101
   ☐  3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice and remains pending. After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  01/24/2018                          Levene, Neale, Bender, Yoo & Brill L.L.P. _____
                                           Printed name of law firm (if applicable)

                                            Beth Ann R. Young _____
                                           Printed name of individual Movant or attorney for Movant


                                            /s/ Beth Ann R. Young _____
                                           Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☐ Vehicle (*year, manufacturer, type, and model*):

      *Vehicle Identification Number:*
      *Location of vehicle (if known):*

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s):*

      *Location (if known):*

   c. ☒ Other Personal Property (*type, identifying information, and location*):
      All assets of the Debtors, wherever located, whether now owned or existing or hereafter acquired or arising,
      together with all proceeds thereof, including but not limited to the Patents, Trademarks and Copyrights
      identified on the Schedules attached hereto at Exhibits C, D, E, F, and G.

3. **Bankruptcy Case History:**

   a. ☒ A voluntary bankruptcy petition  ☐ An involuntary bankruptcy petition
      under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13  was filed on (*date*) 01/11/2018 .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☐ Plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant
               sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's
               obligation to insure the collateral under the terms of Movant's contract with Debtor.

         (D) ☐ Other (*see attached continuation page*).

      (2) ☒ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case
               commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                               Page 3                               **F 4001-1.RFS.PP.MOTION**

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ (*Chapter 12 or 13 cases only*) All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation   ☐ postpetition postconfirmation.

(4) ☐ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(7) ☒ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐ Other (*specify*):

6. ☐ **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s). Paul Abramowitz, Adam Levin and Robert Richardson

c. ☒ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) _H_____.

d. ☒ Other: Petitions in all of the Debtors' cases indicating that "after administrative expenses are paid, no funds will be available for distribution to unsecured creditors."

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

See Memorandum of Points and Authorities filed herewith.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1.   Relief from the stay is granted under:   ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)

2.   ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3.   ☐ Confirmation that there is no stay in effect.

4.   ☐ The stay is annulled retroactive to the petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5.   ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.   ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.   ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8.   ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9.   ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
     ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ If relief from stay is not granted, the court orders adequate protection.

12. ☐ See continuation page for other relief requested


Date:  01/24/2018               Levene, Neale, Bender, Yoo & Brill L.L.P.
                                                          Print name of law firm

                                                          Beth Ann R. Young
                                                          Print name of individual Movant or attorney for Movant


                                                          /s/ Beth Ann R. Young
                                                          Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

       **F 4001-1.RFS.PP.MOTION**

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) <u>Paul Abramowitz</u>_____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property (*specify*):

    a.  ☐  I am the Movant.

    b.  ☒  I am employed by Movant as (*title and capacity*): Vice President of Finance

    c.  ☐  Other (*specify*):

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (see attached):

3.  The Property is:

    a.  ☐  Vehicle (*year, manufacturer, type, model and year*):

        *Vehicle Identification Number*:
        *Location of vehicle (if known)*:

    b.  ☐  Equipment (*manufacturer, type, and characteristics*):

        *Serial number(s)*:
        *Location (if known)*:

    c.  ☒  Other personal property (*type, identifying information, and location*):

        All assets of the Debtors, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof, including but not limited to the Patents, Trademarks and Copyrights

        identified on the Schedules attached hereto at Exhibits C, D, E, F, and G.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 6                    **F 4001-1.RFS.PP.MOTION**

4.  The nature of Debtor's interest in the Property is:

    a.  ☒  Sole owner
    b.  ☐  Co-owner (*specify*):
    c.  ☐  Lessee
    d.  ☐  Other (*specify*):
    e.  ☐  Debtor ☐ did ☐ did not   list the Property in the schedules filed in this case.

5.  ☐  The lease matured or was rejected on (*date*) _____:

    a.  ☐  rejected
        (1) ☐  by operation of law.
        (2) ☐  by order of the court.
    b.  ☐  matured.

6.  Movant has a perfected security interest in the Property.

    a.  ☒  A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor
            to Movant is attached as Exhibits A, B and C.

    b.  ☐  The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for
            by state law.  True and correct copies of the following items are attached to this motion:

        (1) ☐  Certificate of title ("pink slip") (Exhibit _____).
        (2) ☐  Vehicle or other lease agreement (Exhibit _____).
        (3) ☐  Security agreement (Exhibit _____).
        (4) ☐  Other evidence of a security interest (Exhibit _____).

    c.  ☒  The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided
            for by state law.  True and correct copies of the following items are attached to this motion:

        (1) ☒  Security agreement (Exhibit C ____).
        (2) ☒  UCC-1 financing statement (Exhibits D and E.(for Penthouse and all subsidiaries)
        (3) ☐  UCC financing statement search results (Exhibit _____).
        (4) ☐  Recorded or filed leases (Exhibit _____).
        (5) ☒  Other evidence of perfection of a security interest (Exhibits F (US Patent and Trademark Office) and
                                                                              G (US Copyright Office)

    d.  ☐  The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

        (1) ☐  Credit application (Exhibit _____).
        (2) ☐  Purchase agreement (Exhibit _____).
        (3) ☐  Account statement showing payments made and balance due (Exhibit _____).
        (4) ☐  Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

    e.  ☐  Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

7. Status of Movant's debt:

   a.  The amount of the monthly payment: $ <u>Entire loan accelerated for </u>default.

   b.  Number of payments that became due and were not tendered:  ☐ prepetition  ☐ postpetition.

   c.  Total amount in arrears: $ <u>Entire loan accelerated for </u>default.

   d.  Last payment received on (*date*):<u>No payments </u>other that automatic sweep.

   e.  Future payments due by the anticipated hearing date (*if applicable*): _____
       An additional payment of $ _____ will come due on (*date*) _____, and on
       the _____ day of each month thereafter.  If the payment is not received by the _____
       day of the month, a late charge of $ _____ will be charged under the terms of the loan.

8.  ☐  Attached as Exhibit _____ is a true and correct copy of a POSTPETITION payment history that accurately
       reflects the dates and amounts of all payments made by the Debtor since the petition date.

9.  Amount of Movant's debt:

    | | | |
    |---|---|---|
    | a. | Principal:.................................................................................................... | $ <u>7,947,656.71</u> |
    | b. | Accrued interest; cost plus fees.................................................................. | $ <u>2,429,860.78</u> |
    | c. | Costs (attorney's fees, late charges, other costs):........................................ | $ _____ |
    | d. | Advances (property taxes, insurance): ......................................................... | $ _____ |
    | e. | TOTAL CLAIM as of <u>01/04/2018  </u>:........................................................... | $ <u>10,377,517.49</u> |

10. ☒  (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ <u>6,000,000.00</u>          .
        This valuation is based upon the following supporting evidence:

    a.  ☐  This is the value stated for property of this year, make, model, and general features in the reference guide
           most commonly used source for valuation data used by Movant in the ordinary course of its business for
           determining the value of this type of property. True and correct copies of the relevant excerpts of the most
           recent edition of the reference guide are attached as Exhibit _____.

    b.  ☒  This is the value determined by an appraisal or other expert evaluation. True and correct copies of the
           expert's report and/or declaration are attached as Exhibit <u>I (Declaration of Adam Levin)</u>

    c.  ☐  The Debtor's admissions in the Debtor's schedules filed in the case. True and correct copies of the relevant
           portions of the Debtor's schedules are attached as Exhibit _____.

    d.  ☐  Other basis for valuation (*specify*):

    > **NOTE:**  If valuation is contested, supplemental declarations providing additional foundation for the
    > opinions of value should be submitted.

11. Calculation of equity in Property:

    a.  ☒  **11 U.S.C. § 362(d)(1) - Equity Cushion:**

           I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
           senior to Movant's debt is $ <u>Negative $4,377,577</u> and is <u>Zero</u> % of the fair market value of the
           Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ <u>None</u>                    .

12. ☒ The fair market value of the Property is declining because: of neglect, fraud and mismanagement by Debtors.

13. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

14. ☐ Movant regained possession of the Property on (*date*) _____, which is:  ☐ prepetition  ☐ postpetition.

15. ☐ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) _____
The plan was confirmed on (*if applicable*) (*date*) _____

b. Postpetition <u>preconfirmation</u> payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. <u>Postconfirmation</u> payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit* _____)

e. Attorneys' fees and costs:                                                 $
(*For details of type and amount, see Exhibit* _____)

f. Less suspense account or partial paid balance:                    $ [                    ]

TOTAL POSTPETITION DELINQUENCY:                    $

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☒ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☒ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☒ Other (*specify*):
Debtors filed their petitions on the eve of Dream Media's noticed Ex Parte Application for Appointment of Receiver.

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(3) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b.  ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c.  ☐  For other facts justifying annulment, see attached continuation page.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


___1/23/1___     Paul Abramowitz_____     _____
Date                         Printed Name                                       Signature


---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "A"

## REVOLVING NOTE

$6,000,000                                                    February 19, 2016

The undersigned ("*Borrower*"), for value received, promises to pay to the order of ExWorks Capital Fund I, L.P. ("*Lender*") at its principal office, the aggregate unpaid amount of all Revolving Loans made to Borrower by Lender pursuant to the Loan Agreement referred to below, such principal amount to be payable on the dates set forth in the Loan Agreement.

Borrower further promises to pay interest on the unpaid principal amount of each Revolving Loan from the date of such Revolving Loan until such Revolving Loan is paid in full, payable at the rate(s) and at the time(s) set forth in the Loan and Security Agreement. Payments of both principal and interest are to be made in lawful money of the United States of America.

This Note evidences indebtedness incurred under, and is subject to the terms and provisions of, the Loan and Security Agreement, dated as of the date hereof (as amended, restated or otherwise modified from time to time, the "*Loan Agreement*"; terms not otherwise defined herein are used herein as defined in the Loan Agreement), among Borrower, Lender, and the other parties thereto from time to time, to which Loan Agreement reference is hereby made for a statement of the terms and provisions under which this Note may or must be paid prior to its due date or its due date accelerated.

This Note is made under and governed by the laws of the State of Illinois applicable to contracts made and to be performed entirely within such State.

PENTHOUSE GLOBAL MEDIA, INC.

By: _Kelly Holland_

Title: _CEO_

# EXHIBIT "B"

# TERM NOTE

$3,000,000

February 19, 2016

The undersigned ("*Borrower*"), for value received, promises to pay to the order of ExWorks Capital Fund I, L.P. ("*Lender*") at its principal office, the aggregate unpaid amount of the Term Loan made to Borrower by Lender pursuant to the Loan Agreement referred to below, such principal amount to be payable on the dates set forth in the Loan Agreement.

Borrower further promises to pay interest on the unpaid principal amount of the Term Loan from the date of the Term Loan until the Term Loan is paid in full, payable at the rate(s) and at the time(s) set forth in the Loan and Security Agreement. Payments of both principal and interest are to be made in lawful money of the United States of America.

This Note evidences indebtedness incurred under, and is subject to the terms and provisions of, the Loan and Security Agreement, dated as of the date hereof (as amended, restated or otherwise modified from time to time, the "*Loan Agreement*"; terms not otherwise defined herein are used herein as defined in the Loan Agreement), among Borrower, Lender, and the other parties thereto from time to time, to which Loan Agreement reference is hereby made for a statement of the terms and provisions under which this Note may or must be paid prior to its due date or its due date accelerated.

This Note is made under and governed by the laws of the State of Illinois applicable to contracts made and to be performed entirely within such State.

[Signature page to follow]

PENTHOUSE GLOBAL MEDIA, INC.

By: _Kelly Holland_
Title: _CEO_

# EXHIBIT "C"

**LOAN AND SECURITY AGREEMENT**

**Dated as of February 19, 2016**

**between**

**EXWORKS CAPITAL FUND I, L.P.,**

**as Lender,**

**PENTHOUSE GLOBAL MEDIA, INC.,**

**as Borrower,**

**and the other parties hereto as Loan Party Obligors**

## TABLE OF CONTENTS

Page

1.  DEFINITIONS. ..................................................................................................... 1
    1.1.  Certain Defined Terms. ............................................................................. 1
    1.2.  Accounting Terms and Determinations. .................................................. 14
    1.3.  Other Definitional Provisions and References. ....................................... 14

2.  LOANS .................................................................................................................. 15
    2.1.  Amount of Loans ...................................................................................... 15
    2.2.  Protective Advances ................................................................................. 15
    2.3.  Notice of Borrowing; Manner of Revolving Loan Borrowing ................ 16
    2.4.  [Intentionally Omitted.] ........................................................................... 16
    2.5.  Repayment ................................................................................................ 16
    2.6.  Prepayments / Voluntary Termination .................................................... 16
    2.7.  Obligations Unconditional ....................................................................... 17
    2.8.  Reversal of Payments ............................................................................... 18

3.  INTEREST AND FEES; LOAN ACCOUNT. ...................................................... 18
    3.1.  Interest ...................................................................................................... 18
    3.2.  Fees ........................................................................................................... 18
    3.3.  Computation of Interest and Fees ............................................................ 18
    3.4.  Loan Account; Monthly Accountings ...................................................... 18
    3.5.  Further Obligations; Maximum Lawful Rate ........................................... 19

4.  CONDITIONS PRECEDENT. .............................................................................. 19
    4.1.  Conditions to Initial Loans ...................................................................... 19
    4.2.  Conditions to all Loans ............................................................................ 20

5.  COLLATERAL. ..................................................................................................... 20
    5.1.  Grant of Security Interest ........................................................................ 20
    5.2.  Possessory Collateral ............................................................................... 21
    5.3.  Further Assurances ................................................................................... 21
    5.4.  UCC Financing Statements ...................................................................... 21

6.  CERTAIN PROVISIONS REGARDING ACCOUNTS, INVENTORY, COLLECTIONS
    AND APPLICATIONS OF PAYMENTS. ............................................................. 22
    6.1.  Lock Boxes and Blocked Accounts .......................................................... 22
    6.2.  Application of Payments ........................................................................... 22
    6.3.  Notification; Verification ......................................................................... 23
    6.4.  Power of Attorney. ................................................................................... 23
    6.5.  Disputes .................................................................................................... 25
    6.6.  Invoices .................................................................................................... 25
    6.7.  Inventory ................................................................................................... 25

7.  REPRESENTATIONS, WARRANTIES AND AFFIRMATIVE COVENANTS. ............ 25
    7.1.  Existence and Authority ........................................................................... 25
    7.2.  Names; Trade Names and Styles .............................................................. 26
    7.3.  Title to Collateral; Third Party Locations; Permitted Liens .................... 26
    7.4.  Accounts and Chattel Paper ..................................................................... 26

7.5.     Electronic Chattel Paper ...................................................................27
7.6.     Capitalization; Investment Property .....................................................27
7.7.     Commercial Tort Claims ...................................................................28
7.8.     Jurisdiction of Organization; Location of Collateral ...............................28
7.9.     Financial Statements and Reports; Solvency ..........................................29
7.10.    Tax Returns and Payments; Pension Contributions ..................................29
7.11.    Compliance with Laws; Intellectual Property; Licenses. ...........................30
7.12.    Litigation .....................................................................................31
7.13.    Use of Proceeds .............................................................................31
7.14.    Insurance .....................................................................................31
7.15.    Financial, Collateral and Other Reporting / Notices ................................32
7.16.    Litigation Cooperation .....................................................................34
7.17.    Maintenance of Collateral, Etc ..........................................................34
7.18.    Material Contracts ..........................................................................34
7.19.    No Default ....................................................................................34
7.20.    No Material Adverse Change .............................................................34
7.21.    Full Disclosure ..............................................................................34
7.22.    Sensitive Payments .........................................................................35
7.23.    Borrower as Holding Company ..........................................................35
7.24.    Access to Collateral, Books and Records ..............................................35
7.25.    Appraisals ....................................................................................35
7.26.    Key-man Insurance .........................................................................35

8.       NEGATIVE COVENANTS ...................................................................36

9.       FINANCIAL COVENANTS ..................................................................37

         9.1.     Fixed Charge Coverage Ratio ...................................................37
         9.2.     Minimum EBITDA ................................................................38
         9.3.     Minimum Tangible Net Worth ...................................................38

10.      RELEASE, LIMITATION OF LIABILITY AND INDEMNITY. ...................38

         10.1.    Release .............................................................................38
         10.2.    Limitation of Liability ...........................................................39
         10.3.    Indemnity ..........................................................................39

11.      EVENTS OF DEFAULT AND REMEDIES. ............................................39

         11.1.    Events of Default .................................................................39
         11.2.    Remedies with Respect to Lending Commitments/Acceleration, Etc .....41
         11.3.    Remedies with Respect to Collateral .........................................41

12.      LOAN GUARANTY. ...........................................................................46

         12.1.    Guaranty ...........................................................................46
         12.2.    Guaranty of Payment ............................................................46
         12.3.    No Discharge or Diminishment of Loan Guaranty .........................46
         12.4.    Defenses Waived .................................................................47
         12.5.    Rights of Subrogation ...........................................................47
         12.6.    Reinstatement; Stay of Acceleration .........................................47
         12.7.    Information ........................................................................48
         12.8.    Termination .......................................................................48
         12.9.    Maximum Liability ..............................................................48
         12.10.   Contribution ......................................................................48
         12.11.   Liability Cumulative ............................................................49

13.    PAYMENTS FREE OF TAXES; OBLIGATION TO WITHHOLD; PAYMENTS ON
ACCOUNT OF TAXES. ........................................................................................................49

14.    GENERAL PROVISIONS. ....................................................................................................51
14.1.    Notices. .......................................................................................................................51
14.2.    Severability .................................................................................................................52
14.3.    Integration ..................................................................................................................52
14.4.    Waivers .......................................................................................................................52
14.5.    Amendment .................................................................................................................52
14.6.    Time of Essence .........................................................................................................52
14.7.    Expenses, Fee and Costs Reimbursement ..................................................................52
14.8.    Benefit of Agreement; Assignability ..........................................................................53
14.9.    Recordation of Assignment ........................................................................................53
14.10.   Participations ..............................................................................................................54
14.11.   Headings; Construction ...............................................................................................54
14.12.   USA PATRIOT Act Notification ................................................................................54
14.13.   Counterparts; Fax/Email Signatures ...........................................................................55
14.14.   GOVERNING LAW ...................................................................................................55
14.15.   CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL; CONSENT TO
SERVICE OF PROCESS .............................................................................................55
14.16.   Publication ..................................................................................................................55
14.17.   Confidentiality ............................................................................................................56

Perfection Certificate
Annex I         Lender's Bank
Annex II        Reporting
Exhibit A       Form of Notice of Borrowing
Exhibit B       Closing Checklist
Exhibit C       Form of Compliance Certificate
Exhibit D       Form of Borrowing Base Certificate

### Loan and Security Agreement

This Loan and Security Agreement (as it may be amended, restated or otherwise modified from time to time, this *"Agreement"*) is entered into on February 19, 2016 among EXWORKS CAPITAL FUND I, L.P. (*"Lender"*), PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation (*"Borrower"*) and each of the parties signatory hereto as a Loan Party Obligor (as defined herein). The Schedules and Exhibits to this Agreement are an integral part of this Agreement and are incorporated herein by reference.

**1.    DEFINITIONS.**

**1.1.    Certain Defined Terms.**

Unless otherwise defined herein, the following terms are used herein as defined in the UCC: Accounts, Account Debtor, Certificated Security, Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Farm Products, Fixtures, General Intangibles, Goods, Health-Care-Insurance Receivables, Instruments, Inventory, Letter-of-Credit Rights, Proceeds, Securities Accounts, Supporting Obligations and Tangible Chattel Paper.

As used in this Agreement, the following terms have the following meanings:

*"2016 Website CapEx"* means planned and budgeted Capital Expenditures of the Loan Parties during the 2016 Fiscal Year in connection with the rework of the Loan Parties' websites and related online presence, in an amount not to exceed $260,000.

*"Accounts Advance Rate"* means 85%; *provided*, that if Dilution exceeds 5%, Lender may, at its option, (A) reduce such advance rate by the number of full or partial percentage points comprising such excess or (B) establish a Reserve on account of such excess (the *"Dilution Reserve"*).

*"Advance Rates"* means, collectively, the Accounts Advance Rate and the Intellectual Property Advance Rate.

*"Affiliate"* means, with respect to any Person, any other Person in control of, controlled by, or under common control with the first Person, and any other Person who has a substantial interest, direct or indirect, in the first Person or any of its Affiliates, including, any officer or director of the first Person or any of its Affiliates; *provided*, that neither Lender nor any of its Affiliates shall be deemed an *"Affiliate"* of Borrower for any purposes of this Agreement. For the purpose of this definition, a *"substantial interest"* shall mean the direct or indirect legal or beneficial ownership of more than ten (10%) percent of any class of equity or similar interest.

*"Agreement"* has the meaning set forth in the preamble to this Agreement.

*"Bankruptcy Code"* means the United States Bankruptcy Code (11 U.S.C. § 101 et seq.).

*"Blocked Account"* has the meaning set forth in Section 5.1.

*"Borrower"* has the meaning set forth in the preamble to this Agreement.

*"Borrowing Base"* means, as of any date of determination, the Dollar Equivalent amount as of such date of determination of (a) the aggregate amount of Eligible Accounts multiplied by the Accounts Advance Rate, plus (b) the net orderly liquidation value of Eligible Intellectual

Property multiplied by the Intellectual Property Advance Rate (but in no event to exceed the Intellectual Property Sublimit) and minus (c) all Reserves which Lender has established pursuant to Section 2.1(b) (including those to be established in connection with any requested Revolving Loan).

*"Business Day"* means a day other than a Saturday or Sunday or any other day on which Lender or banks in Illinois are authorized to close.

*"Capital Expenditures"* means all expenditures which, in accordance with GAAP, would be required to be capitalized and shown on the consolidated balance sheet of Borrower, but excluding expenditures made in connection with the acquisition, replacement, substitution or restoration of assets to the extent financed (a) from insurance proceeds (or other similar recoveries) paid on account of the loss of or damage to the assets being replaced or restored or (b) with cash awards of compensation arising from the taking by eminent domain or condemnation of the assets being replaced and excluding capitalized film costs incurred in the ordinary course of business.

*"Capitalized Lease"* means any lease which is or should be capitalized on the balance sheet of the lessee thereunder in accordance with GAAP.

*"Cash Rate"* means 18% per annum.

*"Closing Date"* means February 19, 2016.

*"Closing Date Acquisition"* means the acquisition by Borrower of all of the outstanding equity interest of each of Danni Ashe, Inc., GMCI Internet Operations, Inc., GMI On-Line Ventures, Ltd., General Media Communications, Inc., General Media Entertainment, Inc., Great Ganilly Enterprise Limited, NAFT Media, S.L., Network Domain Services N.V., PMGI Holdings Inc., Penthouse Clubs International Establishment, Penthouse Digital Media Productions Inc., Penthouse Images Acquisitions, Ltd., Pure Entertainment Telecommunications, Inc., Streamray Studios Inc., Tan Door Media Inc., XVHUB Group Inc. on the Closing Date pursuant to the Closing Date Acquisition Agreement.

*"Closing Date Acquisition Agreement"* means that certain Stock Purchase Agreement dated as of February 19, 2016 by and among Borrower and Sellers.

*"Code"* means the Internal Revenue Code of 1986, as amended.

*"Collateral"* means all property and interests in property in or upon which a security interest, mortgage, pledge or other Lien is granted pursuant to this Agreement or the other Loan Documents, including all of the property of each Loan Party Obligor described in Section 5.1.

*"Collections"* has the meaning set forth in Section 6.1.

*"Compliance Certificate"* means a compliance certificate substantially in the form of Exhibit C hereto to be signed by the Chief Financial Officer or President of Borrower.

*"Confidential Information"* means confidential information that any Loan Party furnishes to the Lender pursuant to any Loan Document concerning any Loan Party's business, but does not include any such information once such information has become, or if such information is, generally available to the public (other than by a breach by Lender of its confidentiality obligations hereunder) or available to the Lender (or other applicable Person) from a source other than the Loan Parties which is not, to the Lender's knowledge, bound by any confidentiality agreement in respect thereof.

*"Control Agreement"* means a control agreement, in form and substance reasonably satisfactory to Lender, executed and delivered by a Loan Party Obligor, Lender, and the applicable securities intermediary (with respect to a Securities Account) or bank (with respect to a Deposit Account) or issuer (with respect to uncertificated securities) which grants Lender "control" (as defined in the UCC) over such Securities Account, Deposit Account or uncertificated securities, as the case may be, sufficient to perfect Lender's Lien over such Securities Account, Deposit Account or uncertificated securities.

*"Default"* means any event which with notice or passage of time, or both, would constitute an Event of Default.

*"Default Rate"* has the meaning set forth in Section 3.1.

*"Dilution"* means, as of any date of determination, a percentage, based upon the experience of the immediately prior six months, that is the result of dividing the Dollar Equivalent amount of (a) bad debt write-downs, discounts, advertising allowances, credits, or other dilutive items with respect to Borrower's Eligible Accounts during such period by (b) Borrower's billings with respect to Accounts during such period.

*"Dilution Reserve"* has the meaning set forth in the definition of Accounts Advance Rate.

*"Disqualified Equity Interests"* means any equity interests that, by their terms (or by the terms of any security or other equity interest into which they are convertible or for which they are exchangeable) or upon the happening of any event or condition, (a) mature or are mandatorily redeemable, pursuant to a sinking fund obligation or otherwise (except as a result of a change of control or asset sale so long as any rights of the holders thereof upon the occurrence of a change of control or asset sale event shall be subject to the prior repayment in full of the Obligations the termination of all of Lender's commitments to extend Revolving Loans or any other credit accommodation under the Loan Documents), (b) are redeemable at the option of the holder thereof (except as a result of a change of control or asset sale so long as any rights of the holders thereof upon the occurrence of a change of control or asset sale event shall be subject to the prior repayment in full of the Obligations the termination of all of Lender's commitments to extend Revolving Loans or any other credit accommodation under the Loan Documents), in whole or in part, (c) provide for scheduled mandatory payments of dividends in cash or (d) are or become convertible into or exchangeable for Indebtedness or any other equity interests that would constitute Disqualified Equity Interests, in each case, prior to the date that is 181 days after the Scheduled Maturity Date at any time in effect.

*"Dollar Equivalent"* means, at any time, (a) as to any amount denominated in Dollars, the amount thereof at such time, and (b) as to any amount denominated in a currency other than Dollars, the equivalent amount in Dollars as determined by Lender at such time that such amount could be converted into Dollars by Lender according to prevailing exchange rates selected by Lender.

*"Dollars"* or *"$"* means United States Dollars.

*"Disregarded Domestic Subsidiary"* means a Subsidiary that (i) is treated as a disregarded entity for U.S. federal income tax purposes and (ii) holds no properties other than equity (and a de minimis amount of other assets related thereto) in one or more Foreign Subsidiaries.

*"EBITDA"* means, for the applicable period, for the Loan Parties on a consolidated basis, the sum of (a) Net Income, plus (b) Interest Expense deducted in the calculation of such Net Income, plus (c) taxes on income, whether paid, payable or accrued, deducted in the calculation of

such Net Income, plus (d) depreciation expense deducted in the calculation of such Net Income and plus (e) amortization expense deducted in the calculation of such Net Income, plus (f) to the extent deducted in the calculation of such Net Income, transaction costs incurred on or prior to the date that is 30 days after the Closing Date related to the documentation of the Loan Documents and the Closing Date Acquisition in an aggregate amount not to exceed $870,000.

*"Eligible Account"* means, at any time of determination, an Account owned by a Loan Party Obligor which satisfies the general criteria set forth below and which is otherwise acceptable to Lender in its sole discretion; *provided*, that Lender may, in its Permitted Discretion, change the general criteria for acceptability of Eligible Accounts and shall notify Borrower of such change promptly thereafter. An Account shall be deemed to meet the current general criteria if:

(i)  neither the Account Debtor nor any of its Affiliates is an Affiliate of any Loan Party;

(ii)  it does not remain unpaid more than the earlier to occur of (A) ninety (90) days after the original invoice date or (B) sixty (60) days after the original invoice due;

(iii)  the Account Debtor or its Affiliates are not past due (or past any of applicable dates referenced in clause (ii) above) on other Accounts owing to all Loan Party Obligors comprising more than 25% of all of the Accounts owing to the Loan Party Obligors by such Account Debtor or its Affiliates;

(iv)  all Accounts owing by the Account Debtor or its Affiliates do not represent more than 20% of all otherwise Eligible Accounts; *provided*, that Accounts which are deemed to be ineligible solely by reason of this clause (iv) shall be considered Eligible Accounts to the extent of the amount thereof which does not exceed 20% of all otherwise Eligible Accounts);

(v)  no covenant, representation or warranty contained in this Agreement or any other Loan Document with respect to such Account (including any of the representations set forth in Section 7.4) has been breached in any material respect;

(vi)  the Account is not subject to any contra relationship, counterclaim, dispute or contractual set-off; *provided*, that any reduction to the amount of Eligible Accounts made pursuant to this clause (vi) shall be the maximum amount of such contra, counterclaim, dispute or set-off, as asserted or claimed by the applicable counterparty, or, if such amount is not readily discernible, as determined by Lender in its Permitted Discretion;

(vii)  the Account Debtor's chief executive office or principal place of business is located (a) in the United States or Canada or (b) outside the United States or Canada if, in any case under this clause (b), (x)(A) the sale is fully backed by a letter of credit, guaranty or acceptance acceptable to Lender in its sole discretion and, if backed by a letter of credit, such letter of credit has been issued or confirmed by a bank satisfactory to Lender in its sole discretion, is sufficient to cover such Account and, if required by Lender, the original of such letter of credit has been delivered to Lender or Lender's agent and the issuer thereof notified of the assignment of the proceeds of such letter of credit to Lender or (B) such Account is subject to credit insurance payable to Lender issued by an insurer and on terms, conditions and in an amount acceptable to Lender in its sole discretion and (y) Lender has consented in writing to the inclusion of such Account as an Eligible Account in its sole discretion;

(viii)  it is payable solely in Dollars;

-4-

(ix)     it is absolutely owing to the applicable Loan Party Obligor and does not arise from a sale on a bill-and-hold, guarantied sale, sale-or-return, sale-on-approval, consignment, retainage or any other repurchase or return basis or consist of progress billings;

(x)     Lender shall have verified the Account in a manner reasonably satisfactory to Lender;

(xi)     the Account Debtor is not the United States of America or any state or political subdivision (or any department, agency or instrumentality thereof), unless the applicable Loan Party Obligor has complied with the Assignment of Claims Act of 1940 (31 U.S.C. §203 et seq.) or other applicable similar state or local law in a manner satisfactory to Lender;

(xii)     it is at all times subject to Lender's duly perfected, first-priority security interest and to no other Lien that is not a Permitted Lien, and the goods (to the extent such Account arises from the sale of goods) giving rise to such Account (A) were not, at the time of sale, subject to any Lien except Permitted Liens and (B) have been sold by the applicable Loan Party Obligor to the Account Debtor in the ordinary course of such Loan Party Obligor's business and delivered to and accepted by the Account Debtor, or the services giving rise to such Account have been performed by the applicable Loan Party Obligor and accepted by the Account Debtor in the ordinary course of such Loan Party Obligor's business;

(xiii)     the Account is not evidenced by Chattel Paper or an Instrument of any kind (unless such Chattel Paper or Instrument is delivered to Lender in accordance with Section 5.2) and has not been reduced to judgment;

(xiv)     the Account Debtor's total indebtedness to such Loan Party Obligor does not exceed the amount of any credit limit established by such Loan Party Obligor or Lender and the Account Debtor is otherwise deemed to be creditworthy by Lender; *provided*, that Accounts which are deemed to be ineligible solely by reason of this clause (xiv) shall be considered Eligible Accounts to the extent the amount of such Accounts does not exceed the lower of such credit limits;

(xv)     there are no facts or circumstances existing, or which could reasonably be anticipated to occur, which might result in any material adverse change in the Account Debtor's financial condition or materially impair or delay the collectability of all or any portion of such Account;

(xvi)     Lender has been furnished with all documents and other information pertaining to such Account which Lender has reasonably requested, or which such Loan Party Obligor is obligated to deliver to Lender, pursuant to this Agreement;

(xvii)     such Loan Party Obligor has not made an agreement with the Account Debtor to extend the time of payment thereof beyond the time periods set forth in clause (ii) above;

(xviii)     such Loan Party Obligor has not posted a surety or other bond in respect of the contract under which such Account arose; and

(xix)     the Account Debtor is not subject to any proceeding seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar applicable law.

*"Eligible Intellectual Property"* means, at any time of determination, United States registered Intellectual Property owned by the Loan Party Obligors which is included in the most recent appraisal of the Intellectual Property of the Loan Party Obligors received by Lender in form and substance acceptable to Lender, which is addressed to Lender and upon which Lender is expressly permitted to rely, that complies in all material respects with each of the representations and warranties respecting Intellectual Property made in the Loan Documents and which is otherwise acceptable to Lender in its sole discretion; *provided*, that unless and until (i) Lender obtains such an appraisal and (ii) either (x) an Event of Default or (y) the first anniversary of the Closing Date has occurred, the net orderly liquidation value of Eligible Intellectual Property shall be deemed to be $7,000,000, minus the amount of any mandatory prepayments required to be made pursuant to Section 2.6(a) as a result of the disposition or other loss of any Intellectual Property.

*"ERISA"* means the Employee Retirement Income Security Act of 1974 and all rules, regulations and orders promulgated thereunder.

*"ERISA Affiliate"* means any trade or business (whether or not incorporated) under common control with a Loan Party within the meaning of Section 414(b) or (c) of the Code (and Sections 414(m) and (o) of the Code for purposes of provisions relating to Section 412 of the Code and Section 302 of ERISA).

*"ERISA Event"* means: (a) a Reportable Event with respect to a Pension Plan; (b) the withdrawal of any Loan Party or any ERISA Affiliate from a Pension Plan subject to Section 4063 of ERISA during a plan year in which such entity was a *"substantial employer"* as defined in Section 4001(a)(2) of ERISA or a cessation of operations that is treated as such a withdrawal under Section 4062(e) of ERISA; (c) a complete or partial withdrawal by a Loan Party or any ERISA Affiliate from a Multiemployer Plan or notification that a Multiemployer Plan is in reorganization; (d) the filing of a notice of intent to terminate, the treatment of a Pension Plan amendment as a termination under Section 4041 or 4041A of ERISA; (e) the institution by the PBGC of proceedings to terminate a Pension Plan; (f) any event or condition which constitutes grounds under Section 4042 of ERISA for the termination of, or the appointment of a trustee to administer, any Pension Plan; (g) the determination that any Pension Plan is considered an at-risk plan or a plan in endangered or critical status within the meaning of Sections 430, 431 and 432 of the Code or Sections 303, 304 and 305 of ERISA; or (h) the imposition of any liability under Title IV of ERISA, other than for PBGC premiums due but not delinquent under Section 4007 of ERISA, upon a Loan Party or any ERISA Affiliate.

*"Event of Default"* has the meaning set forth in Section 11.1.

*"Excess Availability"* means the amount, calculated at any date, equal to the difference of (a) the lesser of (i) the Maximum Revolving Facility Amount, minus Reserves against the Maximum Revolving Facility Amount, and (ii) the Borrowing Base minus Reserves against the Borrowing Base, and minus (b) the outstanding balance of all Revolving Loans.

*"Excluded Property"* means each of the following: (i) any permit, lease, license, contract or other agreement (or any equipment owned by any Loan Party Obligor that is subject to a purchase money Lien or a Capitalized Lease that is permitted pursuant to this Agreement) to which any Loan Party Obligor is a party, which permit, lease, license, contract or other agreement (and in the case of any such equipment, the contract or other agreement in which the purchase money Lien is granted or the applicable Capitalized Lease) prohibits the creation by such Loan Party Obligor of a Lien thereon, but only, in each case, to the extent, and for so long as, such prohibition is not removed, terminated or rendered unenforceable or otherwise deemed ineffective by the UCC (including Sections 9-406, 9-407, 9-408 or 9-409 thereof) or any other applicable law and with respect to any such equipment, for so long as the Indebtedness secured by the applicable Lien or the applicable

Capitalized Lease has not been repaid in full, (ii) any intent-to-use trademark or service mark application if granting such Lien or the exercise of Lender's remedies under the Loan Documents would result in an assignment of such application to Lender that would be deemed to invalidate, void, cancel or abandon such application; provided, that the foregoing exclusion shall in no way be construed to include an amendment to allege use or statement of use and (iii) any voting stock (within the meaning of Treasury Regulations § 1.956-2(c)(2)) in excess of 65% of the outstanding voting stock of any Foreign Subsidiary or Disregarded Domestic Subsidiary which, pursuant to the terms of this Agreement, is not required to guaranty the Obligations.  For the avoidance of doubt, any and all proceeds, products, substitutions or replacements of any property described in clauses (i), (ii) and (iii) above shall not constitute Excluded Property (unless such proceeds, products, substitutions or replacements would itself constitute property described in clauses (i), (ii) or (iii) above).

*"Excluded Taxes"* means any of the following Taxes imposed on or with respect to a Recipient or required to be withheld or deducted from a payment to a Recipient: (a) Taxes imposed on or measured by net income (however denominated), franchise Taxes, and branch profits Taxes, in each case, imposed as a result of such Recipient being organized under the laws of, or having its principal office or, in the case of Lender, its Lending Office located in, the jurisdiction imposing such Tax (or any political subdivision thereof); (b) in the case of a Non-U.S. Recipient (as defined in Section 13(e)), U.S. federal withholding Taxes imposed on amounts payable to or for the account of such Non-U.S. Recipient with respect to an applicable interest in a Revolving Loan or commitment pursuant to a law in effect on the date on which Non-U.S. Recipient becomes a party to this Agreement or acquires a participation, except in each case to the extent that, pursuant to Section 13 amounts with respect to such Taxes were payable either to such Non-U.S. Recipient assignor (or Lender granting such participation) immediately before such assignment or grant of participation; (c) United States federal withholding Taxes that would not have been imposed but for such Recipient's failure to comply with Section 13(e) (except where the failure to comply with Section 13(e) was the result of a change in law, ruling, regulation, treaty, directive, or interpretation thereof by a Governmental Authority after the date the Recipient became a party to this Agreement or a Participant) and (d) any U.S. federal withholding Taxes imposed pursuant to FATCA.

*"Extraordinary Receipts"* means any cash or cash equivalents received by or paid to or for the account of any Loan Party not in the ordinary course of business, including amounts received in respect of foreign, United States, state or local tax refunds, purchase price adjustments, indemnification payments and pension plan reversions.

*"FATCA"* means Sections 1471 through 1474 of the Code, as of the date of this Agreement (or any amended or successor version that is substantively comparable and not materially more onerous to comply with) and any current or future regulations or official interpretations thereof.

*"Fee Letter"* means that certain letter agreement regarding fees dated as of the Closing Date between Lender and Borrower.

*"FIRREA"* means the Financial Institutions Reform, Recovery and Enforcement Act of 1989, as amended.

*"Fiscal Year"* means the fiscal year of Borrower which ends on December 31 of each year.

*"Fixed Charges"* means, for the period in question, on a consolidated basis, the sum of (a) all principal payments scheduled or required to be made during or with respect to such period in respect of Indebtedness of the Loan Parties (but excluding mandatory prepayments of the Obligations), plus (b) all Interest Expense of the Loan Parties for such period paid or required to be paid in cash during such period, plus (c) all taxes of the Loan Parties paid or required to be paid for

such period and plus (d) all cash distributions, dividends, redemptions and other cash payments made or required to be made during such period with respect to equity securities issued by any Loan Party.

*"Foreign Subsidiary"* means any Subsidiary that is not incorporated or organized under the laws of a State within the United States of America or the District of Columbia, and that is a *"controlled foreign corporation"* within the meaning of Section 957 of the Code with respect to which a Loan Party is a *"U.S. shareholder"* within the meaning of Section 951(b) of the Code. Unless the context indicates otherwise, references to a Foreign Subsidiary shall be deemed to refer to a Foreign Subsidiary of Borrower.

*"FRB"* means the Board of Governors of the Federal Reserve System or any successor thereto.

*"GAAP"* means generally accepted accounting principles set forth from time to time in the opinions and pronouncements of the Accounting Principles Board and the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board (or agencies with similar functions of comparable stature and authority within the United States accounting profession) which are applicable to the circumstances as of the date of determination, in each case consistently applied.

*"Governing Documents"* means, with respect to any Person, the certificate of incorporation, articles of incorporation, certificate of formation, certificate of limited partnership, by-laws, operating agreement, limited liability company agreement, limited partnership agreement or other similar governance document of such Person.

*"Governmental Authority"* means the government of the United States of America or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supra-national bodies such as the European Union or the European Central Bank).

*"Guaranty"* or *"Guarantied"*, as applied to any Indebtedness, liability or other obligation, means (a) a guaranty, directly or indirectly, in any manner, including by way of endorsement (other than endorsements of negotiable instruments for collection in the ordinary course of business), of any part or all of such Indebtedness, liability or obligation and (b) an agreement, contingent or otherwise, and whether or not constituting a guaranty, assuring, or intended to assure, the payment or performance (or payment of damages in the event of non-performance) of any part or all of such Indebtedness, liability or obligation by any means (including the purchase of securities or obligations, the purchase or sale of property or services or the supplying of funds).

*"Indebtedness"* means (without duplication), with respect to any Person, (a) all obligations or liabilities, contingent or otherwise, for borrowed money, (b) all obligations represented by promissory notes, bonds, debentures or the like, or on which interest charges are customarily paid, (c) all liabilities secured by any Lien on property owned or acquired, whether or not such liability shall have been assumed, (d) all obligations of such Person under conditional sale or other title-retention agreements relating to property or assets purchased by such Person, (e) all obligations of such Person issued or assumed as the deferred purchase price of property or services (excluding trade payables which are not ninety days past the invoice date incurred in the ordinary course of business, but including the maximum potential amount payable under any earn-out or similar obligations), (f) all Capitalized Leases of such Person, (g) all obligations (contingent or otherwise) of such Person as an account party or applicant in respect of letters of credit and bankers' acceptances or in respect of financial or other hedging obligations, (h) all equity interests issued by such Person subject to

-8-

repurchase or redemption at any time on or prior to the Scheduled Maturity Date, other than voluntary repurchases or redemptions that are at the sole option of such Person and other than the Warrant, (i) all principal outstanding under any synthetic lease, off-balance sheet loan or similar financing product and (j) all Guaranties, endorsements (other than for collection in the ordinary course of business) and other contingent obligations in respect of the obligations of others.

*"Indemnified Taxes"* means (a) Taxes, other than Excluded Taxes, imposed on or with respect to any payment made by or on account of any obligation of any Loan Party under any Loan Document and (b) to the extent not otherwise described in clause (a), Other Taxes.

*"Intellectual Property"* means the collective reference to all rights, priorities and privileges relating to intellectual property, whether arising under United States, multinational or foreign laws or otherwise, including copyrights, copyright licenses, patents, patent licenses, trademarks and trademark licenses and all rights to sue at law or in equity for any infringement or other impairment thereof, including the right to receive all proceeds and damages therefrom.

*"Intellectual Property Advance Rate"* means 90%.

*"Interest Expense"* means, for the applicable period, for the Loan Parties on a consolidated basis, total interest expense (including interest attributable to Capitalized Leases in accordance with GAAP) and fees with respect to outstanding Indebtedness.

*"Investment Affiliate"* means any fund or investment vehicle that (a) is organized by a Person for the purpose of making equity or debt investments in one or more companies and (b) is controlled by, or under common control with, such Person. For purposes of this definition *"control"* means the power to direct or cause the direction of management and policies of a Person, whether by contract or otherwise.

*"Investment Property"* means the collective reference to (a) all *"investment property"* as such term is defined in Section 9-102 of the UCC, (b) all *"financial assets"* as such term is defined in Section 8-102(a)(9) of the UCC and (c) whether or not constituting *"investment property"* as so defined, all Pledged Equity.

*"Issuers"* means the collective reference to each issuer of Investment Property.

*"Judgment Currency"* has the meaning set forth in Section 10.3(b).

*"Lender"* has the meaning set forth in the preamble to this Agreement.

*"Lien"* means any mortgage, deed of trust, pledge, hypothecation, assignment, charge, deposit arrangement, encumbrance, easement, lien (statutory or other), security interest or other security arrangement and any other preference, priority, or preferential arrangement in the nature of a security interest of any kind or nature whatsoever, including any conditional sale contract or other title-retention agreement, the interest of a lessor under a capital lease and any synthetic or other financing lease having substantially the same economic effect as any of the foregoing.

*"Loan Account"* has the meaning set forth in Section 3.4.

*"Loan Documents"* means, collectively, this Agreement and all notes, guaranties, security agreements, mortgages, certificates, landlord's agreements, Control Agreements, Personal Guaranties, the Fee Letter, the Warrant, and all other agreements, documents and instruments now or hereafter executed or delivered by Borrower, any Loan Party, or any Other Obligor in connection with, or to evidence the transactions contemplated by, this Agreement.

*"Loan Guaranty"* means Section 12.

*"Loan Party"* means, individually, Borrower, or any Subsidiary; and *"Loan Parties"* means, collectively, Borrower and all Subsidiaries.

*"Loan Party Obligor"* means, individually, Borrower or any Obligor that is a Loan Party; and *"Loan Party Obligors"* means, collectively, Borrower and each Loan Party Obligor.

*"Loans"* means, collectively, the Revolving Loans and any Term Loan.

*"Lock Box"* has the meaning set forth in Section 6.1.

*"Master Licensing Agreement"* means one or more license agreements for the worldwide rights (or any part thereof) to use any one or more trademarks of the Loan Parties in connection with adult-themed clubs.

*"Material Adverse Effect"* means any event, act, omission, condition or circumstance which, which individually or in the aggregate, has or could reasonably be expected to have a material adverse effect on (a) the business, operations, properties, assets or condition, financial or otherwise, of any Loan Party or any Other Obligor, as applicable, (b) the ability of any Loan Party or any Other Obligor, as applicable, to perform any of its obligations under any of the Loan Documents or (c) the validity or enforceability of, or Lender's rights and remedies under, any of the Loan Documents.

*"Material Contract"* means has the meaning set forth in Section 7.18.

*"Maturity Date"* means the Scheduled Maturity Date (or, if earlier, the Termination Date), or such earlier date as the Obligations may be accelerated in accordance with the terms of this Agreement (including pursuant to Section 11.2).

*"Maximum Lawful Rate"* has the meaning set forth in Section 3.5.

*"Maximum Liability"* has the meaning set forth in Section 12.9.

*"Maximum Revolving Facility Amount"* means \$6,000,000.

*"Multiemployer Plan"* means any employee benefit plan of the type described in Section 4001(a)(3) of ERISA, to which a Loan Party or any ERISA Affiliate makes or is obligated to make contributions, or during the preceding five plan years, has made or been obligated to make contributions.

*"Net Income"* means, for the applicable period, for Borrower individually or for the Loan Parties on a consolidated basis, as applicable, the net income (or loss) of Borrower individually or of the Loan Parties on a consolidated basis, as applicable, for such period, excluding any gains or non-cash losses from dispositions, any extraordinary gains or extraordinary non-cash losses and any gains or non-cash losses from discontinued operations, in each case of Borrower individually or of the Loan Parties on a consolidated basis, as applicable, for such period.

*"Non-Paying Guarantor"* has the meaning set forth in Section 12.10.

*"Non-U.S. Recipient"* has the meaning set forth in Section 13(e)(ii).

*"Notice of Borrowing"* has the meaning set forth in Section 2.3.

*"Obligations"* means all present and future Loans, advances, debts, liabilities, fees, expenses, obligations, guaranties, covenants, duties and indebtedness at any time owing by Borrower or any Loan Party Obligor to Lender, whether evidenced by this Agreement, any other Loan Document or otherwise, whether arising from an extension of credit, guaranty, indemnification or otherwise, whether direct or indirect (including those acquired by assignment and any participation by Lender in Borrower's indebtedness owing to others), whether absolute or contingent, whether due or to become due and whether arising before or after the commencement of a proceeding under the Bankruptcy Code or any similar statute.

*"Obligor"* means any guarantor, endorser, acceptor, surety or other Person liable on, or with respect to, any of the Obligations or who is the owner of any property which is security for any of the Obligations.

*"Other Obligor"* means any Obligor other than any Loan Party Obligor.

*"Other Taxes"* means all present or future stamp, court or documentary, property, excise, intangible, recording, filing or similar Taxes that arise from any payment made under, from the execution, delivery, performance, enforcement or registration of, from the receipt or perfection of a security interest under, or otherwise with respect to, any Loan Document.

*"Participant"* has the meaning set forth in Section 14.10.

*"Paying Guarantor"* has the meaning set forth in Section 12.10.

*"PBGC"* means the Pension Benefit Guaranty Corporation.

*"Pension Act"* means the Pension Protection Act of 2006.

*"Pension Funding Rules"* means the rules of the Code and ERISA regarding minimum required contributions (including any installment payment thereof) to Pension Plans and Multiemployer Plans and set forth in, with respect to plan years ending prior to the effective date of the Pension Act, Section 412 of the Code and Section 302 of ERISA, each as in effect prior to the Pension Act and, thereafter, Section 412, 430, 431, 432 and 436 of the Code and Sections 302, 303, 304 and 305 of ERISA, and any sections of the Code or ERISA related thereto that are enacted after the date of this Agreement.

*"Pension Plan"* means any employee pension benefit plan (including a Multiple Employer Plan or a Multiemployer Plan) that is maintained or is contributed to by a Loan Party and any ERISA Affiliate and is either covered by Title IV of ERISA or is subject to the minimum funding standards under Section 412 of the Code.

*"Permitted Discretion"* means a determination made by Lender in the exercise of reasonable (from the perspective of an asset-based secured lender) business judgment.

*"Permitted Indebtedness"* means: (a) the Obligations; (b) the Indebtedness existing on the date hereof described in Section 7 of the Perfection Certificate; in each case along with extensions, refinancings, modifications, amendments and restatements thereof; *provided*, that (i) the principal amount thereof is not increased, (ii) if such Indebtedness is subordinated to any or all of the Obligations, the applicable subordination terms shall not be modified without the prior written consent of Lender and (iii) the terms thereof are not modified to impose more burdensome terms upon any Loan Party; (c) capitalized leases and purchase-money Indebtedness secured by Permitted Liens in an aggregate amount not exceeding $50,000 at any time outstanding; and (d) Indebtedness incurred as a result of endorsing negotiable instruments received in the ordinary course of business.

*"Permitted Liens"* means (a) purchase-money security interests in specific items of Equipment securing Permitted Indebtedness described under clause (c) of the definition of Permitted Indebtedness; (b) liens for taxes, fees, assessments, or other governmental charges or levies, either not delinquent or being contested in good faith by appropriate proceedings (which proceedings have the effect of preventing the enforcement of such lien) for which adequate reserves in accordance with GAAP are being maintained provided the same have no priority over any of Lender's security interests; (c) liens of materialmen, mechanics, carriers, or other similar liens arising in the ordinary course of business and securing obligations which are not delinquent or are being contested in good faith by appropriate proceedings (which proceedings have the effect of preventing the enforcement of such lien) for which adequate reserves in accordance with GAAP are being maintained; (d) liens which constitute banker's liens, rights of set-off, or similar rights as to deposit accounts or other funds maintained with a bank or other financial institution (but only to the extent such banker's liens, rights of set-off or other rights are in respect of customary service charges relative to such deposit accounts and other funds, and not in respect of any loans or other extensions of credit by such bank or other financial institution to any Loan Party); and (e) cash deposits or pledges to secure the payment of worker's compensation, unemployment insurance, or other social security benefits or obligations, public or statutory obligations, surety or appeal bonds, bid or performance bonds, or other obligations of a like nature incurred in the ordinary course of business.

*"Person"* means any individual, sole proprietorship, partnership, joint venture, limited liability company, trust, unincorporated organization, association, corporation, government or any agency or political division thereof, or any other entity.

*"Personal Guaranties"* means the Guaranty Agreement dated as of the Closing Date executed by Kelly Holland in favor of Lender.

*"PIK Rate"* means a rate per annum of 5.00%.

*"Plan"* means any employee benefit plan within the meaning of Section 3(3) of ERISA (including a Pension Plan) maintained for employees of any Loan Party or any such plan to which any Loan Party (or with respect to any plan subject to Section 412 of the Code or Section 302 or Title IV of ERISA, any ERISA Affiliate) is required to contribute on behalf of any of its employees.

*"Pledged Equity"* means the equity interests listed on Sections 1(f) and 1(g) of the Perfection Certificate, together with any other equity interests, certificates, options, or rights or instruments of any nature whatsoever in respect of the equity interests of any Person that may be issued or granted to, or held by, any Loan Party Obligor while this Agreement is in effect, and including, to the extent attributable to, or otherwise related to, such pledged equity interests, all of such Loan Party Obligor's (a) interests in the profits and losses of each Issuer, (b) rights and interests to receive distributions of each Issuer's assets and properties and (c) rights and interests, if any, to participate in the management or each Issuer related to such pledged equity interests.

*"Prepayment Event"* means: (a) any sale (other than sales of inventory in the ordinary course of business), transfer or other disposition (including pursuant to a sale and leaseback transaction or any Master Licensing Agreement) of any property or asset of any Loan Party Obligor (excluding licenses of intellectual property in the ordinary course of business (but not pursuant to any Master Licensing Agreement) and transactions contemplated by the Closing Date Acquisition Agreement); (b) any casualty or other insured damage to, or any taking under power of eminent domain or by condemnation or similar proceeding of, any property or asset of any of any Loan Party Obligor; (c) the issuance by any Loan Party to any Person (other than to another Loan Party and other than issuances by Borrower permitted hereunder) of any equity interests after the Closing Date, or the receipt by any Loan Party of any capital contribution from any Person (other than from another Loan

-12-

Party) after the Closing Date; (d) the incurrence by any Loan Party of any Indebtedness not permitted by this Agreement; and (e) the receipt by any Loan Party of any Extraordinary Receipts.

*"Protective Advances"* has the meaning set forth in Section 2.2.

*"Qualified Cash"* means, as of any date of determination, the amount of immediately available unencumbered cash on hand of Borrower that is in a Deposit Account and is maintained by a branch office of the bank or securities intermediary located within the United States.

*"Recipient"* means any Lender, Participant, or any other recipient of any payment to be made by or on account of any Obligation of any Loan Party under this Agreement or any other Loan Document, as applicable.

*"Register"* has the meaning set forth in Section 14.9(a).

*"Released Parties"* has the meaning set forth in Section 10.1.

*"Reportable Event"* means any of the events set forth in Section 4043(c) of ERISA, other than events for which the thirty day notice period has been waived.

*"Reserves"* has the meaning set forth in Section 2.1(b).

*"Restricted Accounts"* means Deposit Accounts (a) established and used (and at all times will be used) solely for the purpose of paying current payroll obligations of Loan Parties (and which do not (and will not at any time) contain any deposits other than those necessary to fund current payroll), in each case in the ordinary course of business, or (b) maintained (and at all times will be maintained) solely in connection with an employee benefit plan, but solely to the extent that all funds on deposit therein are solely held for the benefit of, and owned by, employees (and will continue to be so held and owned) pursuant to such plan.

*"Revolving Loans"* has the meaning set forth in Section 2.1(a).

*"Scheduled Maturity Date"* means February 19, 2017.

*"Securities Act"* means the Securities Act of 1933, as amended.

*"Sellers"* means, collectively, FriendFinder Networks, Inc., a Delaware corporation, and Streamray, Inc., a Nevada corporation.

*"Stated Rate"* has the meaning set forth in Section 3.5.

*"Subsidiary"* means any corporation or other entity of which a Person owns, directly or indirectly, through one or more intermediaries, more than 50% of the capital stock or other equity interest at the time of determination. Unless the context indicates otherwise, references to a Subsidiary shall be deemed to refer to a Subsidiary of Borrower.

*"Tangible Net Worth"* shall have the meaning set forth in Section 9.3.

*"Taxes"* means all present or future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto.

*"Term Loan"* has the meaning set forth in Section 2.1(c).

*"Termination Date"* means the date on which all of the Obligations have been paid in full in cash and all of Lender's lending commitments under this Agreement and under each of the other Loan Documents have been terminated.

*"UCC"* means, at any given time, the Uniform Commercial Code as adopted and in effect at such time in the State of Illinois or other applicable jurisdiction.

*"Warrant"* shall mean the Common Stock Purchase Warrant to be issued by Borrower to the Lender on the Closing Date.

### 1.2.   Accounting Terms and Determinations.

Unless otherwise specified herein, all accounting terms used herein shall be interpreted, all accounting determinations hereunder (including determinations made pursuant to the exhibits hereto) shall be made, and all financial statements required to be delivered hereunder shall be prepared on a consolidated basis in accordance with GAAP consistently applied. If at any time any change in GAAP would affect the computation of any financial ratio or financial requirement set forth in any Loan Document, and either Borrower or Lender shall so request, Lender and Borrower shall negotiate in good faith to amend such ratio or requirement to preserve the original intent thereof in light of such change in GAAP; *provided* that, until so amended, (a) such ratio or requirement shall continue to be computed in accordance with GAAP prior to such change therein and (b) Borrower shall provide to Lender financial statements and other documents required under this Agreement and the other Loan Documents which include a reconciliation between calculations of such ratio or requirement made before and after giving effect to such change in GAAP. Notwithstanding any other provision contained herein, all terms of an accounting or financial nature used herein shall be construed, and all computations of amounts and ratios referred to herein shall be made, without giving effect to any election under Statement of Financial Accounting Standards 159 (Codification of Accounting Standards 825-10) to value any Indebtedness or other liabilities of any Loan Party at *"fair value"*, as defined therein.

Notwithstanding anything to the contrary contained in the paragraph above or the definitions of Capital Expenditures or Capitalized Leases, in the event of a change in GAAP after the Closing Date requiring all leases to be capitalized, only those leases (assuming for purposes of this paragraph that they were in existence on the Closing Date) that would constitute Capitalized Leases on the Closing Date shall be considered Capitalized Leases (and all other such leases shall constitute operating leases) and all calculations and deliverables under this Agreement or the other Loan Documents shall be made in accordance therewith (other than the financial statements delivered pursuant to this Agreement; *provided* that all such financial statements delivered to Lender in accordance with the terms of this Agreement after the date of such change in GAAP shall contain a schedule showing the adjustments necessary to reconcile such financial statements with GAAP as in effect immediately prior to such change).

### 1.3.   Other Definitional Provisions and References.

References in this Agreement to *"Articles"*, *"Sections"*, *"Annexes"*, *"Exhibits"* or *"Schedules"* shall be to Articles, Sections, Annexes, Exhibits or Schedules of or to this Agreement unless otherwise specifically provided. Any term defined herein may be used in the singular or plural. *"Include"*, *"includes"* and *"including"* shall be deemed to be followed by *"without limitation"*. *"Or"* shall be construed to mean *"and/or"*. Except as otherwise specified or limited herein, references to any Person include the successors and assigns of such Person. References *"from"* or *"through"* any date mean, unless otherwise specified, *"from and including"* or *"through and including"*, respectively. Unless otherwise specified herein, the settlement of all payments and fundings hereunder between or among the parties hereto shall be made in lawful money of the United

States and in immediately available funds. Time is of the essence for each performance obligation of the Loan Parties under this Agreement and each Loan Document. All amounts used for purposes of financial calculations required to be made herein shall be without duplication. References to any statute or act shall include all related current regulations and all amendments and any successor statutes, acts and regulations. References to any agreement, instrument or document (a) shall include all schedules, exhibits, annexes and other attachments thereto and (b) shall be construed as referring to such agreement, instrument or other document as from time to time amended, amended and restated, restated, supplemented or otherwise modified (subject to any restrictions on such amendments, restatements, supplements or modifications set forth herein or in any other Loan Document). The words *"asset"* and *"property"* shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights. Unless otherwise specified herein Dollar ($) baskets set forth in the representations and warranty, covenants and event of default provisions of this Agreement (and other similar baskets) are calculated as of each date of measurement by the Dollar Equivalents thereof as of such date of measurement.

## 2. LOANS.

### 2.1. Amount of Loans.

(a)   **Revolving Loans.** Subject to the terms and conditions of this Agreement, Lender will, from time to time prior to the Maturity Date, at Borrower's request, make revolving loans to Borrower (*"Revolving Loans"*); *provided*, that after giving effect to each such Revolving Loan, the sum of the outstanding balance of all Revolving Loans will not exceed the lesser of (x) the Maximum Revolving Facility Amount and (y) the Borrowing Base. All Revolving Loans shall be made in and repayable in Dollars.

(b)   **Reserves.** Lender may, with or without notice to Borrower, from time to time establish and revise reserves against the Borrowing Base and the Maximum Revolving Facility Amount in such amounts and of such types as Lender deems appropriate in its Permitted Discretion (*"Reserves"*) to reflect (i) events, conditions, contingencies or risks which affect or may reasonably be expected to affect (A) the Collateral or its value, or the security interests and other rights of Lender in the Collateral or (B) the assets, business or prospects of Borrower or any Loan Party Obligor (including the Dilution Reserve), (ii) Lender's good faith concern that any Collateral report or financial information furnished by or on behalf of Borrower or any Loan Party Obligor to Lender is or may have been incomplete, inaccurate or misleading in any material respect, (iii) any fact or circumstance which Lender determines in good faith constitutes, or could reasonably be expected to constitute, a Default or Event of Default, or (iv) any other events or circumstances which Lender determines in good faith make the establishment or revision of a Reserve prudent. In no event shall the establishment of a Reserve in respect of a particular actual or contingent liability obligate Lender to make advances to pay such liability or otherwise obligate Lender with respect thereto.

(c)   **Term Loan.** Subject to the terms and conditions contained in this Agreement, Lender will, on the Closing Date, make a term loan to Borrower in the initial principal amount of $3,000,000 (the *"Term Loan"*). The Term Loan shall be advanced in a single borrowing on the Closing Date, and any principal amounts repaid in respect of the Term Loan may not be reborrowed. The Term Loan shall be made in and repayable in Dollars.

**2.2.   Protective Advances.** Notwithstanding any contrary provision of this Agreement or any other Loan Document, at any time (a) after the occurrence and during the continuance of a Default or Event of Default or (b) that any of the other applicable conditions precedent set forth in Section 4 or otherwise are not satisfied, Lender is authorized by Borrower, from time to time, in Lender's sole

discretion, to make such Revolving Loans to, or for the benefit of, Borrower, as Lender in its sole discretion deems necessary or desirable (i) to preserve or protect the Collateral, or any portion thereof, or (ii) to enhance the likelihood of repayment of the Obligations (the Revolving Loans described in this Section 2.2 shall be referred to as *"Protective Advances"*).  Notwithstanding any contrary provision of this Agreement or any other Loan Document, Lender may disburse the proceeds of any Protective Advance to Borrower or to such other Person(s) as Lender determines in its sole discretion.   All Protective Advances shall be payable immediately upon demand.

      **2.3.**    **Notice of Borrowing; Manner of Revolving Loan Borrowing.**  Borrower shall request each Revolving Loan by submitting a Notice of Borrowing to Lender substantially in the form of Exhibit A hereto (each such request a *"Notice of Borrowing"*).  Subject to the terms and conditions of this Agreement, Lender shall, except as provided in Section 2.2, deliver the amount of the Revolving Loan requested in the Notice of Borrowing for credit to any account of Borrower as Borrower may specify at a bank acceptable to Lender (*provided*, that such account must be one identified on Section 3 of the Perfection Certificate and approved by Lender as an account to be used for funding of loan proceeds) by wire transfer of immediately available funds (a) on the same day if the Notice of Borrowing is received by Lender on or before 10:00 a.m. Central Time on a Business Day or (b) on the immediately following Business Day if the Notice of Borrowing is received by Lender after 10:00 a.m. Central Time on a Business Day or on a day that is not a Business Day.  Lender shall charge to the Revolving Loan Lender's usual and customary fees for the wire transfer of each Loan.

      **2.4.**    **[Intentionally Omitted.]**

      **2.5.**    **Repayment.**

      (a)    **Revolving Loans.**  If at any time for any reason whatsoever (including as a result of currency fluctuations), the outstanding balance of all Revolving Loans exceeds the lesser of (x) the Maximum Revolving Facility Amount and (y) the Borrowing Base, Borrower will immediately pay to Lender such amounts as shall cause Borrower to eliminate such excess.

      (b)    **Term Loan.**  Principal of the Term Loan shall be repaid in equal consecutive monthly installments of $41,666.66, payable on the first day of each calendar month commencing March 1, 2016, with the entire unpaid balance due and payable on the Maturity Date.

      (c)    **Maturity Date Payments.**  All remaining outstanding monetary Obligations (including, all accrued and unpaid fees described in Section 3.2) shall be payable in full on the Maturity Date.

      **2.6.**    **Prepayments / Voluntary Termination.**

      (a)    **Certain Mandatory Prepayment Events.**  Borrower shall be required to prepay the outstanding principal balance of the Loans upon the occurrence of each and every Prepayment Event (such prepayment to be made on any date thereafter on which proceeds pertaining thereto are received by any Loan Party), in each case without any demand or notice from Lender or any other Person, all of which is hereby expressly waived by Borrower, in the amount of 100% of the proceeds (net of documented reasonable out-of-pocket costs and expenses incurred in connection with the collection of such proceeds, in each case payable to Persons that are not Affiliates of any Loan Party, and net of estimated taxes incurred as a result of such Prepayment Event) received by any Loan Party with respect to such Prepayment Event.  Prepayments of the Loans made pursuant to this Section 2.6(a) shall be applied in the manner set forth in Section 6.2 (disregarding for such purpose any instruction as to application provided by the Borrower).

(b)     **Voluntary Termination of Loan Facilities.** Borrower may, on at least ten days prior written notice received by Lender, permanently terminate the Revolving Loan facilities by repaying all of the outstanding Obligations, including all principal, interest and fees with respect to the Revolving Loans and the Term Loan. From and after such date of termination, Lender shall have no obligation whatsoever to extend any additional Revolving Loans or make available any other extension of credit, and all of its lending commitments hereunder shall be terminated.

(c)     **Voluntary Prepayment of the Term Loan.** Borrower may, on at least ten days prior written notice received by Lender, prepay all or any portion of the Term Loan.

### 2.7.    Obligations Unconditional.

(a)     The payment and performance of all Obligations shall constitute the absolute and unconditional obligations of each Loan Party Obligor, and shall be independent of any defense or right of set-off, recoupment or counterclaim that any Loan Party Obligor or any other Person might otherwise have against Lender or any other Person. All payments required (other than by Lender) by this Agreement or the other Loan Documents shall be made in Dollars (unless payment in a different currency is expressly provided otherwise in the applicable Loan Document) and paid free of any deductions or withholdings for any taxes or other amounts and without abatement, diminution or set-off. If any Loan Party Obligor is required by applicable law to make such a deduction or withholding from a payment under this Agreement or under any other Loan Document, such Loan Party Obligor shall pay to Lender such additional amount as shall be necessary to ensure that, after the making of such deduction or withholding, Lender receives (free from any liability in respect of any such deduction or withholding) a net sum equal to the sum which it would have received and so retained had no such deduction or withholding been made or required to be made. Each Loan Party Obligor shall (a) pay the full amount of any deduction or withholding that it is required to make by law, to the relevant authority within the payment period set by applicable law and (b) promptly after any such payment, deliver to Lender an original (or certified copy) official receipt issued by the relevant authority in respect of the amount withheld or deducted or, if the relevant authority does not issue such official receipts, such other evidence of payment of the amount withheld or deducted as is reasonably acceptable to Lender.

(b)     If, at any time and from time to time after the Closing Date (or at any time before or after the Closing Date with respect to (x) the Dodd-Frank Wall Street Reform and Consumer Protection Act or (y) Basel III or any similar accord promulgated by the Bank for International Settlements, the Basel Committee on Banking Supervision (or any similar authority) and, in each case, all requests, rules, regulations, guidelines or directives thereunder or issued in connection therewith), (a) any change in any existing law, regulation, treaty or directive or in the interpretation or application thereof, (b) any new law, regulation, treaty or directive enacted or application thereof or (c) compliance by Lender with any request or directive (whether or not having the force of law) from any Governmental Authority, central bank or comparable agency (i) subjects Lender to any tax, levy, impost, deduction, assessment, charge or withholding of any kind whatsoever with respect to any Loan Document, or changes the basis of taxation of payments to Lender of any amount payable thereunder (except for net income taxes, or franchise taxes imposed in lieu of net income taxes, imposed generally by federal, state, local or other taxing authorities with respect to interest or fees payable hereunder or under any other Loan Document or changes in the rate of tax on the overall net income of Lender or its members) or (ii) imposes, modifies or deems applicable any reserve, special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by Lender or (iii) imposes on Lender any other condition or increased cost in connection with the transactions contemplated thereby or participations therein, and the result of any of the foregoing is to increase the cost to Lender of making or continuing any Loan or to reduce any amount receivable hereunder or under any other Loan Documents, then, in each such case, Borrower shall promptly pay to Lender, when notified to do so by Lender, any additional amounts necessary to compensate Lender, on an after-tax basis, for such additional cost or reduced amount as determined by

Lender. Each such notice of additional amounts payable pursuant to this Section 2.7(b) submitted by Lender to Borrower shall, absent manifest error, be final, conclusive and binding for all purposes.

(c)     This Section 2.7 shall remain operative even after the Termination Date and shall survive the payment in full of all of the Loans.

**2.8.     Reversal of Payments.** To the extent that any payment or payments made to or received by Lender pursuant to this Agreement or any other Loan Document are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to any trustee, receiver or other Person under any state, federal or other bankruptcy or other such applicable law, then, to the extent thereof, such amounts (and all Liens, rights and remedies relating thereto) shall be revived as Obligations (secured by all such Liens) and continue in full force and effect under this Agreement and under the other Loan Documents as if such payment or payments bad not been received by Lender. This Section 2.8 shall remain operative even after the Termination Date and shall survive the payment in full of all of the Obligations.

## 3.     INTEREST AND FEES; LOAN ACCOUNT.

**3.1.     Interest.** All Loans and other monetary Obligations shall bear interest at the Cash Rate, plus the PIK Rate; *provided*, that after the occurrence and during the continuation of an Event of Default, all Loans and other monetary Obligations shall bear interest at a rate per annum equal to two (2) percentage points in excess of the rate otherwise applicable thereto (the *"Default Rate"*). Accrued interest shall be payable (a) on the first day of each month in arrears, (b) upon any prepayment of Loans in accordance with Section 2.6(a), (c) upon any prepayment of the Loans in accordance with Section 2.6(b), and (d) on the Maturity Date; *provided*, that interest accruing at the PIK Rate shall continue to accrue and not be payable in cash in connection with an interest payment pursuant to clause (a) or (b) above. After the occurrence and during the continuance of an Event of Default, all interest (including interest accruing at the PIK Rate) shall be payable in cash on demand. To the extent not paid in cash when due, interest accruing at the PIK Rate shall be added to the outstanding principal balance of the Term Loan on the date of such required payment.

**3.2.     Fees.** Borrower shall pay Lender each of the fees and other obligations set forth in the Fee Letter on the dates provided therein, which fees are in addition to all fees and other sums payable by Borrower or any other Person to Lender under this Agreement or under any other Loan Document and, in each case, are not refundable once paid.

**3.3.     Computation of Interest and Fees.** All interest and fees shall be calculated daily on the outstanding monetary Obligations based on the actual number of days elapsed in a year of 360 days.

**3.4.     Loan Account; Monthly Accountings.** Lender shall maintain a loan account for Borrower reflecting all outstanding Loans, along with interest accrued thereon and such other items reflected therein (the *"Loan Account"*), and shall provide Borrower with a monthly accounting reflecting the activity in the Loan Account. Each accounting shall be deemed correct, accurate and binding on Borrower and an account stated (except for reverses and reapplications of payments made and corrections of errors discovered by Lender), unless Borrower notifies Lender in writing to the contrary within thirty days after such account is rendered, describing the nature of any alleged errors or omissions. However, Lender's failure to maintain the Loan Account or to provide any such accounting shall not affect the legality or binding nature of any of the Obligations. Interest, fees and other monetary Obligations due and owing under this Agreement may, in Lender's discretion, be charged to the Loan Account, and will thereafter be deemed to be Revolving Loans and will bear interest at the same rate as other Revolving Loans (except for interest accruing at the PIK Rate, which shall be added to the outstanding balance of the Term Loan in accordance with Section 3.1).

**3.5.    Further Obligations; Maximum Lawful Rate.**    With respect to all monetary Obligations for which the interest rate is not otherwise specified herein (whether such Obligations arise hereunder or under any other Loan Document, or otherwise), such Obligations shall bear interest at the rate(s) in effect from time to time with respect to the Revolving Loans and shall be payable upon demand by Lender. In no event shall the interest charged with respect to any Loan or any other Obligation exceed the maximum amount permitted under applicable law. Notwithstanding anything to the contrary herein or elsewhere, if at any time the rate of interest payable or other amounts hereunder or under any other Loan Document (the *"Stated Rate"*) would exceed the highest rate of interest or other amount permitted under any applicable law to be charged (the *"Maximum Lawful Rate"*), then for so long as the Maximum Lawful Rate would be so exceeded, the rate of interest and other amounts payable shall be equal to the Maximum Lawful Rate; *provided*, that if at any time thereafter the Stated Rate is less than the Maximum Lawful Rate, Borrower shall, to the extent permitted by applicable law, continue to pay interest and such other amounts at the Maximum Lawful Rate until such time as the total interest and other such amounts received is equal to the total interest and other such amounts which would have been received had the Stated Rate been (but for the operation of this provision) the interest rate payable or such other amounts payable. Thereafter, the interest rate and such other amounts payable shall be the Stated Rate unless and until the Stated Rate again would exceed the Maximum Lawful Rate, in which event this provision shall again apply. In no event shall the total interest or other such amounts received by Lender exceed the amount which it could lawfully have received had the interest and other such amounts been calculated for the full term hereof at the Maximum Lawful Rate. If, notwithstanding the prior sentence, Lender has received interest or other such amounts hereunder in excess of the Maximum Lawful Rate, such excess amount shall be applied to the reduction of the principal balance of the Loans or to other Obligations (other than interest) payable hereunder, and if no such principal or other Obligations are then outstanding, such excess or part thereof remaining shall be paid to Borrower. In computing interest payable with reference to the Maximum Lawful Rate applicable to any Lender, such interest shall be calculated at a daily rate equal to the Maximum Lawful Rate divided by the number of days in the year in which such calculation is made.

## 4.    CONDITIONS PRECEDENT.

### 4.1.    Conditions to Initial Loans.

Lender's obligation to fund the initial Loans is subject to the following conditions precedent (as well as any other conditions set forth in this Agreement or any other Loan Document), all of which must be satisfied in a manner acceptable to Lender (and as applicable, pursuant to documentation which in each case is in form and substance acceptable to Lender):

(a)    each Loan Party Obligor shall have duly executed and/or delivered, or, as applicable, shall have caused such other applicable Persons to have duly executed and or delivered, to Lender such agreements, instruments, documents, proxies and certificates as Lender may require, including such other agreements, instruments, documents and certificates listed on the closing checklist attached hereto as Exhibit B (other than any such items identified as "Post-Closing Items");

(b)    Lender shall have completed its business and legal due diligence pertaining to the Loan Parties and their respective businesses and assets, with results thereof satisfactory to Lender in its sole discretion;

(c)    Lender's obligations and commitments under this Agreement shall have been approved by Lender's Credit Committee;

(d)    after giving effect to such Loans, as well as to the payment of all trade payables older than sixty days past due and the consummation of all transactions contemplated hereby to occur on

the Closing Date, closing costs and any book overdraft, Excess Availability plus Qualified Cash shall be no less than $750,000;

(e) no event shall have occurred which has had, or could reasonably be expected to have, a Material Adverse Effect on any Loan Party, as determined by Lender in its sole discretion, determined in good faith;

(f) Borrower shall have paid to Lender all fees due on the date hereof under the Fee Letter, and shall have paid or reimbursed Lender for all of Lender's costs, charges and expenses incurred through the Closing Date (and in connection herewith, Borrower hereby irrevocably authorizes Lender to charge such fees, costs, charges and expenses as Revolving Loans); and

(g) the Closing Date Acquisition shall have been consummated pursuant to the terms of the Closing Date Acquisition Agreement.

**4.2. Conditions to all Loans.** Lender shall not be obligated to fund any Loans, unless the following conditions are satisfied:

(a) Borrower shall have provided to Lender such information as Lender may reasonably require in order to determine the Borrowing Base (including the items set forth in Section 7.15(a), (b) and (c) (as applicable)), as of such borrowing or issue date, after giving effect to such Loans;

(b) each of the representations and warranties set forth in this Agreement and in the other Loan Documents shall be true and correct in all material respects as of the date such Loan is made (or, to the extent any representations or warranties are expressly made solely as of an earlier date, such representations and warranties shall be true and correct in all material respects as of such earlier date), both before and after giving effect thereto; and

(c) no Default or Event of Default shall be in existence, both before and after giving effect thereto.

Each request (or deemed request) by Borrower for funding of a Loan shall constitute a representation by Borrower that the foregoing conditions are satisfied on the date of such request and on the date of such funding or issuance. As an additional condition to any funding, issuance or grant, Lender shall have received such other information, documents, instruments and agreements as it reasonably requests in connection therewith.

## 5. COLLATERAL.

**5.1. Grant of Security Interest.** To secure the full payment and performance of all of the Obligations, each Loan Party Obligor hereby assigns to Lender and grants to Lender a continuing security interest in all property of each Loan Party Obligor, whether tangible or intangible, real or personal, now or hereafter owned, existing, acquired or arising and wherever now or hereafter located, and whether or not eligible for lending purposes, including: (a) all Accounts (whether or not Eligible Accounts) and all Goods whose sale, lease or other disposition by any Loan Party Obligor has given rise to Accounts and have been returned to, or repossessed or stopped in transit by, any Loan Party Obligor; (b) all Chattel Paper (including Electronic Chattel Paper), Instruments, Documents, and General Intangibles (including all patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, registrations, licenses, software, franchises, customer lists, tax refund claims, claims against carriers and shippers, guaranty claims, contracts rights, payment intangibles, security interests, security deposits and rights to indemnification); (c) all Inventory; (d) all Goods, including Equipment, Farm Products, Health-Care-Insurance Receivables, vehicles, and Fixtures; (e) all Investment Property, including all rights, privileges, authority, and powers of each Loan Party Obligor as

an owner or as a holder of Pledged Equity, including all economic rights, all control rights, authority and powers, and all status rights of each Loan Party Obligor as a member, equity holder or shareholder, as applicable, of each Issuer; (f) all Deposit Accounts, bank accounts, deposits and cash; (g) all Letter-of-Credit Rights; (h) all Commercial Tort Claims listed in Section 2 of the Perfection Certificate; (i) all Supporting Obligations; (j) any other property of any Loan Party Obligor now or hereafter in the possession, custody or control of Lender or any agent or any parent, Affiliate or Subsidiary of Lender or any Participant with Lender in the Loans, for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise) and (k) all additions and accessions to, substitutions for, and replacements, products and Proceeds of the foregoing property, including proceeds of all insurance policies insuring the foregoing property, and all of each Loan Party Obligor's books and records relating to any of the foregoing and to any Loan Party's business. Notwithstanding the foregoing, the grant of security set forth in this Section 5.1 shall not include any Excluded Property.

**5.2.    Possessory Collateral.** Promptly, but in any event no later than five Business Days after any Loan Party Obligor's receipt of any portion of the Collateral evidenced by an agreement, Instrument or Document, including any Tangible Chattel Paper and any Investment Property consisting of certificated securities, such Loan Party Obligor shall deliver the original thereof to Lender together with an appropriate endorsement or other specific evidence of assignment thereof to Lender (in form and substance acceptable to Lender). If an endorsement or assignment of any such items shall not be made for any reason, Lender is hereby irrevocably authorized, as attorney and agent-in-fact (coupled with an interest) for each Loan Party Obligor, to endorse or assign the same on such Loan Party Obligor's behalf.

**5.3.    Further Assurances.** Each Loan Party Obligor shall, at its own cost and expense, promptly and duly take, execute, acknowledge and deliver (or cause each other applicable Person to take, execute, acknowledge and deliver) all such further acts, documents, agreements and instruments as may from time to time be necessary or desirable or as Lender may from time to time require in order to (a) carry out the intent and purposes of the Loan Documents and the transactions contemplated thereby, (b) establish, create, preserve, protect and perfect a first priority lien (subject only to Permitted Liens) in favor of Lender in all real and personal property (wherever located) from time to time owned by the Loan Party Obligors and in all capital stock and other equity from time to time issued by the Loan Parties (including appraisals of real property in compliance with FIRREA), (c) cause each Subsidiary of Borrower to guaranty all of the Obligations, all pursuant to documentation that is in form and substance reasonably satisfactory to Lender and (d) facilitate the collection of the Collateral. Without limiting the foregoing, each Loan Party Obligor shall, at its own cost and expense, promptly and duly take, execute, acknowledge and deliver (or cause each other applicable Person to take, execute, acknowledge and deliver) to Lender all promissory notes, security agreements, agreements with landlords, mortgagees and processors and other bailees, subordination and intercreditor agreements and other agreements, instruments and documents, in each case in form and substance acceptable to Lender, as Lender may request from time to time to perfect, protect and maintain Lender's security interests in the Collateral, including the required priority thereof, and to fully carry out the transactions contemplated by the Loan Documents.

**5.4.    UCC Financing Statements.** Each Loan Party Obligor authorizes Lender to file, transmit or communicate, as applicable, from time to time, Uniform Commercial Code financing statements, along with amendments and modifications thereto, in all filing offices selected by Lender, listing such Loan Party Obligor as the debtor and Lender as the secured party, and describing the collateral covered thereby in such manner as Lender may elect, including using descriptions such as "all personal property of debtor" or "all assets of debtor", or words of similar effect, in each case without such Loan Party Obligor's signature. Each Loan Party Obligor also hereby ratifies its authorization for Lender to have filed, in any filing office, any financing statements filed prior to the date hereof.

## 6. CERTAIN PROVISIONS REGARDING ACCOUNTS, INVENTORY, COLLECTIONS AND APPLICATIONS OF PAYMENTS.

**6.1.    Lock Boxes and Blocked Accounts.** Each Loan Party Obligor hereby represents and warrants that all Deposit Accounts and all other depositary and other accounts maintained by each Loan Party Obligor as of the Closing Date are described in Section 3 of the Perfection Certificate, which description includes for each such account the name of the Loan Party Obligor maintaining the account, the name of the financial institution at which the account is maintained, the account number and the purpose of the account. After the Closing Date, no Loan Party Obligor shall open any new Deposit Account or any other depositary or other account without the prior written consent of Lender and without updating Section 3 of the Perfection Certificate to reflect such Deposit Account or other account. No Deposit Account or other account of any Loan Party Obligor shall at any time constitute a Restricted Account other than accounts expressly indicated on Section 3 of the Perfection Certificate as being Restricted Accounts (and each Loan Party Obligor hereby represents and warrants that each such account shall at all times meet the requirements set forth in the definition of Restricted Account to qualify as a Restricted Account). Each Loan Party Obligor will, at its expense, establish (and revise from time to time as Lender may require) procedures acceptable to Lender, in Lender's sole discretion, for the collection of checks, wire transfers and all other proceeds of all of such Loan Party Obligor's Accounts and other Collateral (*"Collections"*), which shall include (a) directing all Account Debtors to send all Account proceeds (i) directly to a post office box designated by Lender either in the name of such Loan Party Obligor (but as to which Lender has exclusive access) or, at Lender's option following the occurrence of an Event of Default, in the name of Lender (a *"Lock Box"*) or (ii) in the case of wire transfers, to a Blocked Account and (b) depositing all Collections received by such Loan Party Obligor into one or more bank accounts maintained in the name of such Loan Party Obligor (but as to which Lender has exclusive access) or, at Lender's option, in the name of Lender (each, a *"Blocked Account"*), under an arrangement acceptable to Lender with a depository bank acceptable to Lender, pursuant to which all funds deposited into each Blocked Account are to be transferred to Lender in such manner, and with such frequency, as Lender shall specify. Each Loan Party Obligor agrees to execute, and to cause its depository banks and other account holders to execute, such Control Agreements as Lender shall require from time to time in connection with the foregoing, all in form and substance acceptable to Lender; *provided*, that notwithstanding the foregoing, no Loan Party Obligor shall be obligated to deliver a Control Agreement to Lender or comply with the requirements set forth in clauses (a) and (b) of the preceding sentence (i) with respect to any Restricted Account or (ii) during the first 30 days after the Closing Date.

**6.2.    Application of Payments.** All amounts paid to or received by Lender in respect of monetary Obligations, from whatever source (whether from Borrower or any other Loan Party Obligor pursuant to such other Loan Party Obligor's guaranty of the Obligations, any realization upon any Collateral or otherwise) shall, unless otherwise directed by Borrower with respect to any particular payment (unless an Event of Default shall then be continuing, in which event Lender may disregard Borrower's direction) be applied by Lender to the Obligations in such order as Lender may elect, and absent such election shall be applied as follows:

(i)    **FIRST,** to reimburse Lender for all out-of-pocket costs and expenses, and all indemnified losses, incurred by Lender which are reimbursable to Lender in accordance with this Agreement or any of the other Loan Documents;

(ii)    **SECOND,** to any accrued but unpaid interest on any Protective Advances;

(iii)    **THIRD,** to the outstanding principal of any Protective Advances;

(iv)    **FOURTH**, to any accrued but unpaid fees owing to Lender under this Agreement and/or any other Loan Documents;

(v)    **FIFTH**, to any unpaid accrued interest on the Obligations;

(vi)    **SIXTH**, (a) with respect to mandatory prepayments made pursuant to Section 2.6(a), (I) if such prepayment arises from a disposition, casualty event or otherwise from proceeds of Intellectual Property or Eligible Accounts, FIRST to the outstanding principal of the Revolving Loans then outstanding, and SECOND to the outstanding principal of the Term Loan and (II) for any prepayment to which the preceding clause (I) is not applicable, FIRST to the outstanding principal of the Term Loan, and SECOND to the outstanding principal of the Revolving Loans, and (b) with respect to any amounts paid or received to which the preceding clause (a) is not applicable, to the outstanding principal of the Loans on a pro rata basis as between the Loans; and

(vii)    **SEVENTH**, to the payment of any other outstanding Obligations; and after payment in full in cash of all of the outstanding monetary Obligations, any further amounts paid to or received by Lender in respect of the Obligations (so long as no monetary Obligations are outstanding) shall be paid over to Borrower or such other Person(s) as may be legally entitled thereto.

Notwithstanding anything to the contrary set forth herein, any prepayment applied to the outstanding principal of the Term Loan shall be applied to the remaining installments thereof (including any bullet payment due at maturity) in the inverse order of maturity.

For purposes of determining the Borrowing Base, such amounts will be credited to the Loan Account and the Collateral balances to which they relate upon Lender's receipt of an advice from Lender's Bank (set on Annex I) that such items have been credited to Lender's account at Lender's Bank (or upon Lender's deposit thereof at Lender's Bank in the case of payments received by Lender in kind), in each case subject to final payment and collection. However, for purposes of computing interest on the Obligations, such items shall be deemed applied by Lender five Business Days after Lender's receipt of advice of deposit thereof at Lender's Bank.

**6.3.    Notification; Verification.**  Lender or its designee may, from time to time, whether or not a Default or Event of Default has occurred, verify directly with the Account Debtors of the Loan Party Obligors (or by any manner and through any medium Lender considers advisable) the validity, amount and other matters relating to the Accounts and Chattel Paper of the Loan Party Obligors, by means of mail, telephone or otherwise, either in the name of the applicable Loan Party Obligor or Lender or such other name as Lender may choose. Lender or its designee may, from time to time, after the occurrence and during the continuance of an Event of Default: (a) notify Account Debtors of the Loan Party Obligors that Lender has a security interest in the Accounts of the Loan Party Obligors and direct such Account Debtors to make payment thereof directly to Lender; and (b) demand, collect or enforce payment of any Accounts and Chattel Paper (but without any duty to do so). Each Loan Party Obligor hereby authorizes Account Debtors to make payments directly to Lender and to rely on notice from Lender without further inquiry. Lender may on behalf of each Loan Party Obligor endorse all items of payment received by Lender that are payable to such Loan Party Obligor for the purposes described above.

**6.4.    Power of Attorney.**

Without limiting any of Lender's other rights under this Agreement or any other Loan Document, each Loan Party Obligor hereby grants to Lender an irrevocable power of attorney, coupled with an interest, authorizing and permitting Lender (acting through any of its officers, employees, attorneys or agents), at Lender's option but without obligation, with or without notice to such Loan Party Obligor, and

-23-

at each Loan Party Obligor's expense, to do any or all of the following, in such Loan Party Obligor's name or otherwise:

(a)     at any time, whether or not an Event of Default has occurred or is continuing (except as otherwise provided herein), (i) execute on behalf of such Loan Party Obligor any documents that Lender may, in its sole discretion, deem advisable in order to perfect, protect and maintain Lender's security interests, and priority thereof, in the Collateral and to fully consummate all the transactions contemplated by this Agreement and the other Loan Documents (including such financing statements and continuation financing statements, and amendments or other modifications thereto, as Lender shall deem necessary or appropriate) and, upon the occurrence and during the continuance of an Event of Default, to notify Account Debtors of the Loan Party Obligors in the manner contemplated by Section 6.3, (ii) endorse such Loan Party Obligor's name on all checks and other forms of remittances received by Lender, (iii) pay any sums required on account of such Loan Party Obligor's taxes or to secure the release of any Liens therefor, (iv) pay any amounts necessary to obtain, or maintain in effect, any of the insurance described in Section 7.14, (v) receive and otherwise take control in any manner of any cash or non-cash items of payment or Proceeds of Collateral, (vi) receive, open and dispose of all mail addressed to such Loan Party Obligor at any post office box or lockbox maintained by Lender for such Loan Party Obligor or at any other business premises of Lender and (vii) endorse or assign to Lender on such Loan Party Obligor's behalf any portion of Collateral evidenced by an agreement, Instrument or Document if an endorsement or assignment of any such items is not made by such Loan Party Obligor pursuant to Section 5.2; and

(b)     at any time, after the occurrence and during the continuance of an Event of Default, (i) execute on behalf of such Loan Party Obligor any document exercising, transferring or assigning any option to purchase, sell or otherwise dispose of or lease (as lessor or lessee) any real or personal property which is part of the Collateral or in which Lender has an interest, (ii) execute on behalf of such Loan Party Obligor any invoices relating to any Accounts, any draft against any Account Debtor, any proof of claim in bankruptcy, any notice of Lien or claim, and any assignment or satisfaction of mechanic's, materialman's or other Lien, (iii) execute on behalf of such Loan Party Obligor any notice to any Account Debtor, (iv) pay, contest or settle any Lien, charge, encumbrance, security interest and adverse claim in or to any of the Collateral, or any judgment based thereon, or otherwise take any action to terminate or discharge the same, (v) grant extensions of time to pay, compromise claims relating to, and settle Accounts, Chattel Paper and General Intangibles for less than face value and execute all releases and other documents in connection therewith, (vi) settle and adjust, and give releases of, any insurance claim that relates to any of the Collateral and obtain payment therefor, (vii) instruct any third party having custody or control of any Collateral or books or records belonging to, or relating to, such Loan Party Obligor to give Lender the same rights of access and other rights with respect thereto as Lender has under this Agreement or any other Loan Document, (viii) change the address for delivery of such Loan Party Obligor's mail, (ix) vote any right or interest with respect to any Investment Property, (x) instruct any Account Debtor to make all payments due to any Loan Party Obligor directly to Lender, and (xi) use any Intellectual Property of such Loan Party Obligor (including any licenses of such Intellectual Property), including but not limited to any labels, patents, trademarks, trade names, URLs, domain names, industrial designs, copyrights, or advertising matter, in preparing for sale, advertising for sale, or selling Inventory or other Collateral and to collect any amounts due under Accounts, contracts or negotiable Collateral of such Loan Party Obligor.

Any and all sums paid, and any and all costs, expenses, liabilities, obligations and reasonable attorneys' fees incurred, by Lender with respect to the foregoing shall be added to and become part of the Obligations, shall be payable on demand, and shall bear interest at a rate equal to the highest interest rate applicable to any of the Obligations. Each Loan Party Obligor agrees that Lender's rights under the foregoing power of attorney and any of Lender's other rights under this Agreement or the

other Loan Documents shall not be construed to indicate that Lender is in control of the business, management or properties of any Loan Party Obligor.

**6.5.    Disputes.** Each Loan Party Obligor shall promptly notify Lender of any dispute or claim relating to its Accounts to the extent the value associated with such dispute or claim exceeds $10,000. Each Loan Party Obligor agrees that it will not, without Lender's prior written consent, compromise or settle any of its Accounts for less than the full amount thereof, grant any extension of time for payment of any of its Accounts, release (in whole or in part) any Account Debtor or other person liable for the payment of any of its Accounts or grant any credits, discounts, allowances, deductions, return authorizations or the like with respect to any of its Accounts; except (unless otherwise directed by Lender during the existence of a Default or an Event of Default) such Loan Party Obligor may take any of such actions in the ordinary course of its business consistent with past practices, provided that Borrower promptly reports the same to Lender.

**6.6.    Invoices.** At Lender's request, each Loan Party Obligor will cause all invoices and statements that it sends to Account Debtors or other third parties to be marked, in a manner satisfactory to Lender, to reflect Lender's security interest therein and payment instructions.

**6.7.    Inventory.**

(a)    **Third Party Locations.** No Loan Party Obligor will, without Lender's prior written consent, at any time, store any Inventory with any warehouseman or other third party other than as set forth in Section 1(d) of the Perfection Certificate.

(b)    **Sale on Return, etc.** No Loan Party Obligor will, without Lender's prior written consent, at any time, sell any Inventory on a sale-or-return, guarantied sale, consignment, or other contingent basis.

(c)    **Fair Labor Standards Act.** Each Loan Party Obligor represents, warrants and covenants that, at all times, all of the Inventory of each Loan Party Obligor has been, at all times will be, produced only in accordance with the Fair Labor Standards Act of 1938 and all rules, regulations and orders promulgated thereunder.

**7.    REPRESENTATIONS, WARRANTIES AND AFFIRMATIVE COVENANTS.**

To induce Lender to enter into this Agreement, each Loan Party Obligor represents, warrants and covenants as follows (it being understood and agreed that (a) each such representation and warranty (i) will be made as of the date hereof and be deemed remade as of each date on which any Loan is made (except to the extent any such representation or warranty expressly relates only to any earlier or specified date, in which case such representation or warranty will be made as of such earlier or specified date) and (ii) shall not be affected by any knowledge of, or any investigation by, Lender and (b) each such covenant shall continuously apply with respect to all times commencing on the date hereof and continuing until the Termination Date):

**7.1.    Existence and Authority.** Each Loan Party is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization (which jurisdiction is identified in Section 1(a) of the Perfection Certificate) and is qualified to do business in each jurisdiction in which the operation of its business requires that it be qualified (which each such jurisdiction is identified in Section 1(a) of the Perfection Certificate). Each Loan Party has all requisite power and authority to own and operate its properties, to carry on its business as now conducted and as proposed to be conducted, to enter into the Loan Documents to which it is a party and to carry out the transactions contemplated thereby. The execution, delivery and performance by each Loan Party Obligor of this Agreement and all of the other Loan Documents to which such Loan Party Obligor is a party have been duly and validly

authorized, do not violate such Loan Party Obligor's Governing Documents or any law or any agreement or instrument or any court order which is binding upon any Loan Party or its property, do not constitute grounds for acceleration of any Indebtedness or obligation under any agreement or instrument which is binding upon any Loan Party or its property, and do not require the consent of any Person. No Loan Party is required to obtain any government approval, consent, or authorization from, or to file any declaration or statement with, any Governmental Authority in connection with or as a condition to the execution, delivery or performance of any of the Loan Documents. This Agreement and each of the other Loan Documents have been duly executed and delivered by, and are enforceable against, each of the Loan Party Obligors who have signed them, in accordance with their respective terms. Section 1(f) of the Perfection Certificate sets forth the ownership of Borrower and its Subsidiaries.

**7.2.    Names; Trade Names and Styles.** The name of each Loan Party Obligor set forth on Section 1(b) of the Perfection Certificate is its correct and complete legal name as of the date hereof, and no Loan Party Obligor has used any other name at any time in the past five years, or at any time will use any other name, in any tax filing made in any jurisdiction. Listed in Section 1(b) of the Perfection Certificate are all prior names used by each Loan Party Obligor at any time in the past five years and all of the present and prior trade names used by any Loan Party Obligor at any time in the past five years. Borrower shall give Lender at least thirty days' prior written notice (and will deliver an updated Section 1(b) of the Perfection Certificate to reflect the same) before it or any other Loan Party Obligor changes its legal name or does business under any other name.

**7.3.    Title to Collateral; Third Party Locations; Permitted Liens.** Each Loan Party Obligor has, and at all times will continue to have, good and marketable title to all of the Collateral. The Collateral now is, and at all times will remain, free and clear of any and all Liens, except for Permitted Liens. Lender now has, and will at all times continue to have, a first-priority perfected and enforceable security interest in all of the Collateral, subject only to the Permitted Liens, and each Loan Party Obligor will at all times defend Lender and the Collateral against all claims of others. None of the Collateral which is Equipment is, or will at any time, be affixed to any real property in such a manner, or with such intent, as to become a fixture. Upon Lender's request after the Closing Date, Borrower shall use good faith efforts to obtain a landlord's waiver in form and substance satisfactory to Lender with respect to any real property lease or sublease for which any Loan Party Obligor is or will be a lessee or sublessee. Upon Lender's request after the Closing Date, Borrower shall use good faith efforts to obtain a warehouseman's waiver in form and substance satisfactory to Lender, with respect to any warehouse at which any Loan Party Obligor is or will at any time be a bailor of any Goods. Prior to causing or permitting any Collateral to at any time be located upon premises in which any third party (including any landlord, warehouseman, or otherwise) has an interest, Borrower shall notify Lender and the applicable Loan Party Obligor shall cause each such third party to execute and deliver to Lender, in form and substance acceptable to Lender, such waivers, collateral access agreements, and subordinations as Lender shall specify, so as to, among other things, ensure that Lender's rights in the Collateral are, and will at all times continue to be, superior to the rights of any such third party and that Lender has access to such Collateral. Each applicable Loan Party Obligor will keep at all times in full force and effect, and will comply at all times with all the terms of, any lease of real property where any of the Collateral now or in the future may be located.

**7.4.    Accounts and Chattel Paper.** As of each date reported by Borrower, all Accounts which Borrower has then reported to Lender as then being Eligible Accounts comply in all respects with the criteria for eligibility set forth in the definition of Eligible Accounts. All such Accounts, and all Chattel Paper owned by any Loan Party Obligor, are genuine and in all respects what they purport to be, arise out of a completed, bona fide and unconditional and non-contingent sale and delivery of goods or rendition of services by Borrower in the ordinary course of its business and in accordance with the terms and conditions of all purchase orders, contracts or other documents relating thereto, each Account Debtor thereunder had the capacity to contract at the time any contract or other document giving rise to such

Accounts and Chattel Paper were executed, and the transactions giving rise to such Accounts and Chattel Paper comply with all applicable laws and governmental rules and regulations.

**7.5.   Electronic Chattel Paper.**   To the extent that any Loan Party Obligor obtains or maintains any Electronic Chattel Paper, such Loan Party Obligor shall at all times create, store and assign the record or records comprising the Electronic Chattel Paper in such a manner that (a) a single authoritative copy of the record or records exists which is unique, identifiable and except as otherwise provided below, unalterable, (b) the authoritative copy identifies Lender as the assignee of the record or records, (c) the authoritative copy is communicated to and maintained by Lender or its designated custodian, (d) copies or revisions that add or change an identified assignee of the authoritative copy can only be made with the participation of Lender, (c) each copy of the authoritative copy and any copy of a copy is readily identifiable as a copy that is not the authoritative copy and (f) any revision of the authoritative copy is readily identifiable as an authorized or unauthorized revision.

**7.6.   Capitalization; Investment Property.**

(a)    No Loan Party, directly or indirectly, owns, or shall at any time own, any capital stock or other equity interests of any other Person except as set forth in Sections 1(f) and 1(g) of the Perfection Certificate, which Sections list all Investment Property owned by each Loan Party Obligor.

(b)    None of the Pledged Equity has been issued or otherwise transferred in violation of the Securities Act, or other applicable laws of any jurisdiction to which such issuance or transfer may be subject.

(c)    The Pledged Equity pledged by each Loan Party Obligor hereunder constitutes all of the issued and outstanding equity interests of each Issuer owned by such Loan Party Obligor.

(d)    All of the Pledged Equity has been duly and validly issued and is fully paid and non-assessable, and the holders thereof are not entitled to any preemptive, first refusal or other similar rights. There are no outstanding options, warrants or similar agreements, documents, or instruments with respect to any of the Pledged Equity.

(e)    Each Loan Party Obligor shall, at the request of Lender, cause each Issuer to amend or otherwise modify its Governing Documents, books, records, and related agreements, documents and instruments, as applicable, to reflect the rights and interests of Lender hereunder, and to the extent required to enable and empower Lender to exercise and enforce its rights and remedies hereunder in respect of the Pledged Equity and other Investment Property.

(f)    Each Loan Party Obligor will take any and all actions required or reasonably requested by Lender, from time to time, to (i) cause Lender to obtain exclusive control of any Investment Property in a manner acceptable to Lender and (ii) obtain from any Issuers and such other Persons as Lender shall specify, for the benefit of Lender, written confirmation of Lender's exclusive control over such Investment Property and take such other actions as Lender may request to perfect Lender's security interest in any Investment Property. For purposes of this Section 7.6, Lender shall have exclusive control of Investment Property if (A) pursuant to Section 5.2, such Investment Property consists of certificated securities and the applicable Loan Party Obligor delivers such certificated securities to Lender (with all appropriate endorsements), (B) such Investment Property consists of uncertificated securities and either (x) the applicable Loan Party Obligor delivers such uncertificated securities to Lender or (y) the Issuer thereof agrees, pursuant to documentation in form and substance satisfactory to Lender, that it will comply with instructions originated by Lender without further consent by the applicable Loan Party Obligor and (C) such Investment Property consists of security entitlements and either (x) Lender becomes the entitlement holder thereof or (y) the appropriate securities intermediary agrees, pursuant to documentation in form and substance satisfactory to Lender, that it will comply with entitlement orders

originated by Lender without further consent by the applicable Loan Party Obligor. Each Loan Party Obligor that is a limited liability company or a partnership hereby represents and warrants that it has not, and at no time will, elect pursuant to the provisions of Section 8-103 of the UCC to provide that its equity interests are securities governed by Article 8 of the UCC.

(g)     No Loan Party owns, or has any present intention of acquiring, any *"margin security"* or any *"margin stock"* within the meaning of Regulations T, U or X of the Board of Governors of the Federal Reserve System (herein called *"margin security"* and *"margin stock"*). None of the proceeds of the Loans will be used, directly or indirectly, for the purpose of purchasing or carrying, or for the purpose of reducing or retiring any Indebtedness which was originally incurred to purchase or carry, any margin security or margin stock or for any other purpose which might constitute the transactions contemplated hereby a *"purpose credit"* within the meaning of said Regulations T, U or X, or cause this Agreement to violate any other regulation of the Board of Governors of the Federal Reserve System or the Exchange Act, or any rules or regulations promulgated under such statutes.

(h)     No Loan Party Obligor shall vote to enable, or take any other action to cause or to permit, any Issuer to issue any equity interests of any nature, or to issue any other securities or interests convertible into or granting the right to purchase or exchange for any equity interests of any nature of any Issuer.

(i)     No Loan Party Obligor shall take, or fail to take, any action that would in any manner impair the value or the enforceability of Lender's Lien on any of the Investment Property, or any of Lender's rights or remedies under this Agreement or any other Loan Document with respect to any of the Investment Property.

(j)     In the case of any Loan Party Obligor which is an Issuer, such Issuer agrees that the terms of Section 11.3(g)(iii) shall apply to such Loan Party Obligor with respect to all actions that may be required of it pursuant to such Section 11.3(g)(iii) regarding the Investment Property issued by it.

**7.7.**     **Commercial Tort Claims.** As of the Closing Date, no Loan Party Obligor has any Commercial Tort Claims pending other than those listed in Section 2 of the Perfection Certificate. Each Loan Party Obligor shall promptly (but in any case no later than five Business Days thereafter) notify Lender in writing upon incurring or otherwise obtaining a Commercial Tort Claim after the Closing Date against any third party with a value in excess of $10,000. Such notice shall constitute such Loan Party Obligor's authorization to amend such Section 2 to add such Commercial Tort Claim and shall automatically be deemed to amend such Section 2 to include such Commercial Tort Claim.

**7.8.**     **Jurisdiction of Organization; Location of Collateral.** Sections 1(c) and 1(d) of the Perfection Certificate set forth (a) each place of business of each Loan Party Obligor (including its chief executive office), (b) all locations where all Inventory, Equipment, and other Collateral owned by each Loan Party Obligor is kept and (c) whether each such Collateral location and place of business (including each Loan Party Obligor's chief executive office) is owned by a Loan Party or leased (and if leased, specifies the complete name and notice address of each lessor). No Collateral is located outside the United States or in the possession of any lessor, bailee, warehouseman or consignee, except as expressly indicated in Sections 1(c), 1(d) and 3 (with respect to Deposit Accounts maintained outside the United States) of the Perfection Certificate. Each Loan Party Obligor will give Lender at least thirty days' prior written notice before changing its jurisdiction of organization, opening any additional place of business, changing its chief executive office or the location of its books and records, or moving any of the Collateral to a location other than one of the locations set forth in Sections 1(c) and 1(d) of the Perfection Certificate, and will execute and deliver all financing statements, landlord waivers, collateral access agreements, mortgages, and all other agreements, instruments and documents which Lender shall require in connection therewith prior to making such change, all in form and substance satisfactory to Lender.

Without the prior written consent of Lender, no Loan Party Obligor will at any time change its jurisdiction of organization.

### 7.9.    Financial Statements and Reports; Solvency.

(a)    All financial statements delivered to Lender by or on behalf of any Loan Party have been, and at all times will be, prepared in conformity with GAAP and completely and fairly reflect the financial condition of each Loan Party covered thereby, at the times and for the periods therein stated.

(b)    As of the date hereof (after giving effect to the Loans to be made on the date hereof, and the consummation of the transactions contemplated hereby), and as of each other day that any Loan is made (after giving effect thereto), (i) the fair saleable value of all of the assets and properties of the Loan Parties, taken as a whole, exceeds the aggregate liabilities and Indebtedness of the Loan Parties, taken as a whole, including contingent liabilities, (ii) the Loan Parties, taken as a whole, are solvent and able to pay their debts as they come due, (iii) the Loan Parties, take as a whole, have sufficient capital to carry on their business as now conducted and as proposed to be conducted, (iv) no Loan Party is contemplating either the liquidation of all or any substantial portion of its assets or property, or the filing of any petition under any state, federal, or other bankruptcy or insolvency law and (v) no Loan Party has knowledge of any Person contemplating the filing of any such petition against any Loan Party.

**7.10.    Tax Returns and Payments; Pension Contributions.** Each Loan Party has timely filed all tax returns and reports required by applicable law, has timely paid all applicable Taxes, assessments, deposits and contributions owing by such Loan Party and will timely pay all such items in the future as they became due and payable. Each Loan Party may, however, defer payment of any contested taxes; *provided,* that such Loan Party (a) in good faith contests its obligation to pay such Taxes by appropriate proceedings promptly and diligently instituted and conducted, (b) notifies Lender in writing of the commencement of, and any material development in, the proceedings, (c) posts bonds or takes any other steps required to keep the contested taxes from becoming a Lien upon any of the Collateral and (d) maintains adequate reserves therefor in conformity with GAAP. No Loan Party is aware of any claims or adjustments proposed for any prior tax years that could result in additional taxes becoming due and payable by any Loan Party. Each Plan is in compliance in all material respects with the applicable provisions of ERISA, the Code and other applicable laws. Each Plan that is intended to be a qualified plan under Section 401(a) of the Code has received a favorable determination letter or opinion letter from the Internal Revenue Service to the effect that the form of such Plan is qualified under Section 401(a) of the Code and the trust related thereto has been determined by the Internal Revenue Service to be exempt from federal income tax under Section 501(a) of the Code, or an application for such a letter is currently being processed by the Internal Revenue Service. To the best knowledge of each Loan Party, nothing has occurred that would prevent or cause the loss of such tax-qualified status. There are no pending or, to the best knowledge of any Loan Party, threatened claims, actions or lawsuits, or action by any Governmental Authority, with respect to any Plan that could reasonably be expected to result in liabilities individually or in the aggregate in excess of $100,000 of any Loan Party. There has been no prohibited transaction or violation of the fiduciary responsibility rules with respect to any Plan that has resulted or could reasonably be expected to result in liabilities individually or in the aggregate of any Loan Party in excess of $100,000. No ERISA Event has occurred, and no Loan Party is aware of any fact, event or circumstance that could reasonably be expected to constitute or result in an ERISA Event with respect to any Pension Plan, in each case that could reasonably be expected to result in liabilities individually or in the aggregate in excess of $100,000. Each Loan Party and each ERISA Affiliate has met all applicable requirements under the Pension Funding Rules in respect of each Pension Plan, and no waiver of the minimum funding standards under the Pension Funding Rules has been applied for or obtained, in each case except as could not reasonably be expected to result in liabilities individually or in the aggregate to the Loan Parties in excess of $100,000. As of the most recent valuation date for any Pension Plan, the funding target attainment percentage (as defined in Section 430(d)(2) of the Code) is 60% or higher and

no Loan Party knows of any facts or circumstances that could reasonably be expected to cause the funding target attainment percentage for any such plan to drop below 60% as of the most recent valuation date. No Loan Party or any ERISA Affiliate has incurred any liability to the PBGC other than for the payment of premiums, and there are no premium payments which have become due that are unpaid, except as could not reasonably be expected to result in liabilities individually or in the aggregate to the Loan Parties in excess of $100,000. No Loan Party or any ERISA Affiliate has engaged in a transaction that could be subject to Section 4069 or Section 4212(c) of ERISA except as could not reasonably be expected to result in liabilities individually or in the aggregate to the Loan Parties in excess of $100,000. No Pension Plan has been terminated by the plan administrator thereof or by the PBGC, and no event or circumstance has occurred or exists that could reasonably be expected to cause the PBGC to institute proceedings under Title IV of ERISA to terminate any Pension Plan, except as could not reasonably be expected to result in liabilities individually or in the aggregate to the Loan Parties in excess of $100,000.

### 7.11.    Compliance with Laws; Intellectual Property; Licenses.

(a)    Each Loan Party has complied, and will continue at all times to comply, in all material respects with all provisions of all applicable laws and regulations, including those relating to the ownership of real or personal property, the conduct and licensing of each Loan Party's business, the payment and withholding of Taxes, ERISA and other employee matters, safety and environmental matters, and laws relating to child pornography, including, without limitation, 18 U.S.C. §§ 2251 through 2260.

(b)    No Loan Party has received written notice of default or violation, or is in default or violation, with respect to any judgment, order, writ, injunction, decree, demand or assessment issued by any court or any federal, state, local, municipal or other Governmental Authority relating to any aspect of any Loan Party's business, affairs, properties or assets. No Loan Party has received written notice of or been charged with, or is, to the knowledge of any Loan Party, under investigation with respect to, any violation in any material respect of any provision of any applicable law.

(c)    No Loan Party Obligor owns any registered Intellectual Property, except as set forth in Section 4 of the Perfection Certificate. Each Loan Party Obligor shall promptly (but in any event within thirty days thereafter) notify Lender in writing of any additional Intellectual Property rights acquired or arising after the Closing Date and shall submit to Lender a supplement to Section 4 of the Perfection Certificate to reflect such additional rights; *provided*, that such Loan Party Obligor's failure to do so shall not impair Lender's security interest therein. Each Loan Party Obligor shall execute a separate security agreement granting Lender a security interest in such Intellectual Property (whether owned on the Closing Date or thereafter), in form and substance acceptable to Lender and suitable for recording such security interest in such Intellectual Property with the United States Patent and Trademark Office, United States Copyright Office, or any Intellectual Property registrar in any other jurisdiction as applicable; *provided*, that such Loan Party Obligor's failure to do so shall not impair Lender's security interest therein. Each Loan Party owns or has, and will at all times continue to own or have, the valid right to use all material patents, trademarks, copyrights, software, computer programs, equipment designs, network designs, equipment configurations, technology and other Intellectual Property used, marketed and sold in such Loan Party's business, and each Loan Party is in compliance, and will continue at all times to comply, in all material respects with all licenses, user agreements and other such agreements regarding the use of Intellectual Property. No Loan Party has any knowledge that, or has received any notice claiming that, any of such Intellectual Property infringes upon or violates the rights of any other Person.

(d)    Each Loan Party has and will continue at all times to have, all federal, state, local and other licenses and permits required to be maintained in connection with such Loan Party's business operations, and all such licenses and permits are valid and in full force and effect. Each Loan Party has, and will continue at all times to have, complied with the requirements of such licenses and permits in all

material respects, and has received no written notice of any pending or threatened proceedings for the suspension, termination, revocation or limitation thereof. No Loan Party is aware of any facts or conditions that could reasonably be expected to cause or permit any of such licenses or permits to be voided, revoked or withdrawn.

**7.12.    Litigation.** Section 1(e) of the Perfection Certificate discloses all claims, proceedings, litigation or investigations pending or (to the best of each Loan Party Obligor's knowledge) threatened against any Loan Party as of the Closing Date. There is no claim, suit, litigation, proceeding or investigation pending or (to the best of each Loan Party Obligor's knowledge) threatened by or against or affecting any Loan Party in any court or before any Governmental Authority (or any basis therefor known to any Loan Party Obligor) which may result, either separately or in the aggregate, in liability in excess of $100,000 for the Loan Parties, in any Material Adverse Effect, or in any material impairment in the ability of any Loan Party to carry on its business in substantially the same manner as it is now being conducted.

**7.13.    Use of Proceeds.** All proceeds of all Loans shall be used solely (a) for the repayment of indebtedness owing by the Borrower and the other Loan Party Obligors on the Closing Date, (b) for the payment of amounts due on the Closing Date in connection with the Closing Date Acquisition, (c) to pay the fees, costs, and expenses incurred in connection with this Agreement, the other Loan Documents, the Closing Date Acquisition Agreement and the transactions contemplated hereby and thereby, and (d) for Borrower's working capital purposes. All proceeds of all Revolving Loans will be used solely for lawful business purposes.

**7.14.    Insurance.**

(a)    Each Loan Party will at all times carry property, liability and other insurance, with insurers reasonably acceptable to Lender, in such form and amounts, and with such deductibles and other provisions, as Lender shall require, and Borrower will provide Lender with evidence satisfactory to Lender that such insurance is, at all times, in full force and effect. A true and complete listing of such insurance as of the Closing Date, including issuers, coverages and deductibles, is set forth in Section 5 of the Perfection Certificate. Each property insurance policy shall name Lender as lender loss payee and shall contain a lender's loss payable endorsement in form acceptable to Lender, each liability insurance policy shall name Lender as an additional insured, and each business interruption insurance policy shall be collaterally assigned to Lender, all in form and substance satisfactory to Lender. All policies of insurance shall provide that they may not be cancelled or changed without at least thirty days' prior written notice to Lender, and shall otherwise be in form and substance satisfactory to Lender. Borrower shall advise Lender promptly of any policy cancellation, non-renewal, reduction, or material amendment with respect to any insurance policies maintained by any Loan Party or any receipt by any Loan Party of any notice from any insurance carrier regarding any intended or threatened cancellation, non-renewal, reduction or material amendment of any of such policies, and Borrower shall promptly deliver to Lender copies of all notices and related documentation received by any Loan Party in connection with the same.

(b)    Borrower shall deliver to Lender no later than fifteen days prior to the expiration of any then current insurance policies, insurance certificates evidencing renewal of all such insurance policies required by this Section 7.14. Borrower shall deliver to Lender, upon Lender's request, certificates evidencing such insurance coverage in such form as Lender shall specify.

(c)    **IF ANY LOAN PARTY AT ANY TIME OR TIMES HEREAFTER SHALL FAIL TO OBTAIN OR MAINTAIN ANY OF THE POLICIES OF INSURANCE REQUIRED ABOVE (AND PROVIDE EVIDENCE THEREOF TO LENDER) OR TO PAY ANY PREMIUM RELATING THERETO, THEN LENDER, WITHOUT WAIVING OR RELEASING ANY OBLIGATION OR DEFAULT BY BORROWER HEREUNDER, MAY (BUT SHALL BE UNDER**

NO OBLIGATION TO) OBTAIN AND MAINTAIN SUCH POLICIES OF INSURANCE AND PAY SUCH PREMIUMS AND TAKE SUCH OTHER ACTIONS WITH RESPECT THERETO AS LENDER DEEMS ADVISABLE UPON NOTICE TO BORROWER. SUCH INSURANCE, IF OBTAINED BY LENDER, MAY, BUT NEED NOT, PROTECT ANY LOAN PARTY'S INTERESTS OR PAY ANY CLAIM MADE BY OR AGAINST ANY LOAN PARTY WITH RESPECT TO THE COLLATERAL. SUCH INSURANCE MAY BE MORE EXPENSIVE THAN THE COST OF INSURANCE ANY LOAN PARTY MAY BE ABLE TO OBTAIN ON ITS OWN AND MAY BE CANCELLED ONLY UPON THE APPLICABLE LOAN PARTY PROVIDING EVIDENCE THAT IT HAS OBTAINED THE INSURANCE AS REQUIRED ABOVE. ALL SUMS DISBURSED BY LENDER IN CONNECTION WITH ANY SUCH ACTIONS, INCLUDING COURT COSTS, EXPENSES, OTHER CHARGES RELATING THERETO AND REASONABLE ATTORNEY COSTS, SHALL CONSTITUTE LOANS HEREUNDER, SHALL BE PAYABLE ON DEMAND BY BORROWER TO LENDER AND, UNTIL PAID, SHALL BEAR INTEREST AT THE HIGHEST RATE THEN APPLICABLE TO LOANS HEREUNDER. THIS PROVISION SHALL CONSTITUTE THE NOTICE TO THE APPLICABLE LOAN PARTY REQUIRED PURSUANT TO PARAGRAPH (3) OF SECTION 180/10 OF CHAPTER 815 OF THE ILLINOIS COMPILED STATUTES (2004).

7.15.    **Financial, Collateral and Other Reporting / Notices.** Each Loan Party has kept, and will at all times keep, adequate records and books of account with respect to its business activities and the Collateral in which proper entries are made in accordance with GAAP reflecting all its financial transactions. Each Loan Party Obligor will cause to be prepared and furnished to Lender, in each case in a form and in such detail as is reasonably acceptable to Lender the following items (the items to be provided under this Section 7.15 shall be delivered to Lender in writing):

(a)    **Annual Financial Statements.** Not later than ninety days after the close of each Fiscal Year, unqualified, audited financial statements of each Loan Party as of the end of such Fiscal Year, including balance sheet, income statement, and statement of cash flow for such Fiscal Year, in each case on a consolidated and consolidating basis, certified by a firm of independent certified public accountants of recognized standing selected by Borrower but reasonably acceptable to Lender, together with a copy of any management letter issued in connection therewith. Concurrently with the delivery of such financial statements, Borrower shall deliver to Lender a Compliance Certificate, indicating whether (i) Borrower is in compliance with each of the covenants specified in Section 9, and setting forth a detailed calculation of such covenants and (ii) any Default or Event of Default is then in existence;

(b)    **Interim Financial Statements.** Not later than thirty days after the end of each month hereafter, including the last month of each Fiscal Year, unaudited interim financial statements of each Loan Party as of the end of such month and of the portion of such Fiscal Year then elapsed, including balance sheet, income statement, statement of cash flow, and results of their respective operations during such month and the then-elapsed portion of the Fiscal Year, together with comparative figures for the same periods in the immediately preceding Fiscal Year and the corresponding figures from the budget for the Fiscal Year covered by such financial statements, in each case on a consolidated and consolidating basis, certified by the principal financial officer of Borrower as prepared in accordance with GAAP and fairly presenting the consolidated financial position and results of operations (including management discussion and analysis of such results) of each Loan Party for such month and period subject only to changes from ordinary course year-end audit adjustments and except that such statements need not contain footnotes. Concurrently with the delivery of such financial statements, Borrower shall deliver to Lender a Compliance Certificate, indicating whether (i) Borrower is in compliance with each of the covenants specified in Section 9, and setting forth a detailed calculation of such covenants, and (ii) any Default or Event of Default is then in existence;

(c) **Borrowing Base / Collateral Reports / Insurance Certificates / Perfection Certificates / Other Items.** The items described on Annex II hereto by the respective dates set forth therein.

(d) **Projections, Etc.** Not later than thirty days prior to the end of each Fiscal Year, monthly business projections for the following Fiscal Year for the Loan Parties on a consolidated and consolidating basis, which projections shall include for each such period Borrowing Base projections, profit and loss projections, balance sheet projections, income statement projections and cash flow projections;

(e) **Shareholder Reports, Etc.** Promptly after the sending or filing thereof, as the case may be, copies of any proxy statements, financial statements or reports which each Loan Party has made available to its shareholders and copies of any regular, periodic and special reports or registration statements which any Loan Party files with the Securities and Exchange Commission or any Governmental Authority which may be substituted therefor, or any national securities exchange;

(f) **ERISA Reports.** Copies of any annual report to be filed pursuant to the requirements of ERISA in connection with each plan subject thereto promptly upon request by Lender and in addition, each Loan Party shall promptly notify Lender upon having knowledge of any ERISA Event; and

(g) **Tax Returns.** Each federal and state income tax return filed by any Loan Party or Other Obligor promptly (but in no event later than ten days following the filing of such return), together with such supporting documentation as is supplied to the applicable tax authority with such return and proof of payment of any amounts owing with respect to such return.

(h) **Notification of Certain Changes.** Promptly (and in no case later than the earlier of (i) three Business Days after such Loan Party Obligor obtaining actual knowledge of the occurrence of any of the following and (ii) such other date that such information is required to be delivered pursuant to this Agreement or any other Loan Document) notification to Lender in writing of (A) the occurrence of any Default or Event of Default, (B) the occurrence of any event that has had, or may have, a Material Adverse Effect, (C) any change in any Loan Party's officers or directors (except those nominated by Lender), (D) any investigation, action, suit, proceeding or claim (or any material development with respect to any existing investigation, action, suit, proceeding or claim) relating to any Loan Party, any officer or director of a Loan Party, the Collateral or which may result in an adverse impact upon any Loan Party's business, assets or financial condition, (E) any material loss or damage to the Collateral, (F) any event or the existence of any circumstance that has resulted in, or could reasonably be expected to result in, any material adverse change in the business or financial affairs of any Loan Party, any Default, or any Event of Default, or which would make any representation or warranty previously made by any Loan Party to Lender untrue in any material respect or constitute a material breach if such representation or warranty was then being made, (G) any actual or alleged breaches of any Material Contract or termination or threat to terminate any Material Contract or any material amendment to or modification of a Material Contract, or the execution of any new Material Contract by any Loan Party and (H) any change in any Loan Party's certified accountant. In the event of each such notice under this Section 7.15(h), Borrower shall give notice to Lender of the action or actions that each Loan Party has taken, is taking, or proposes to take with respect to the event or events giving rise to such notice obligation.

(i) **Other Information.** Promptly upon request, such other data and information (financial and otherwise) as Lender, from time to time, may reasonably request, bearing upon or related to the Collateral or each Loan Party's and each Other Obligor's business or financial condition or results of operations.

**7.16.    Litigation Cooperation.** Should any third-party suit, regulatory action, or any other judicial, administrative, or similar proceeding be instituted by or against Lender with respect to any Collateral or in any manner relating to any Loan Party, this Agreement, any other Loan Document or the transactions contemplated hereby, each Loan Party Obligor shall, without expense to Lender, make available each Loan Party, such Loan Party's officers, employees and agents, and any Loan Party's books and records, without charge, to the extent that Lender may deem them reasonably necessary in order to prosecute or defend any such suit or proceeding.

**7.17.    Maintenance of Collateral, Etc.** Each Loan Party Obligor will maintain all of the Collateral in good working condition, ordinary wear and tear excepted, and no Loan Party Obligor will use the Collateral for any unlawful purpose.

**7.18.    Material Contracts.** Except as expressly disclosed in Section 1(h) of the Perfection Certificate, no Loan Party is (a) a party to any contract which has had or could reasonably be expected to have a Material Adverse Effect or (b) in default in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in (x) any contract to which it is a party or by which any of its assets or properties is bound, which default, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect or result in liabilities in excess of $50,000 or (y) any Material Contract. Except for the contracts and other agreements listed in Section 1(h) of the Perfection Certificate, no Loan Party is party, as of the Closing Date, to any (i) employment agreements covering the management of any Loan Party, (ii) collective bargaining agreements or other labor agreements covering any employees of any Loan Party, (iii) agreements for managerial, consulting or similar services to which any Loan Party is a party or by which it is bound, (iv) agreements regarding any Loan Party, its assets or operations or any investment therein to which any of its equity holders is a party, (v) patent licenses, trademark licenses, copyright licenses or other lease or license agreements to which any Loan Party is a party, either as lessor or lessee, or as licensor or licensee, (vi) distribution, marketing or supply agreements to which any Loan Party is a party, (vii) customer agreements to which any Loan Party is a party (in each case with respect to any contract of the type described in the preceding clauses (i), (iii), (iv), (v), (vi) and (vii) requiring payments of more than $50,000 in the aggregate in any Fiscal Year), (viii) partnership agreements to which any Loan Party is a partner, limited liability company agreements to which any Loan Party is a member or manager, or joint venture agreements to which any Loan Party is a party, (ix) real estate leases, or (x) any other contract to which any Loan Party is a party, in each case with respect to this clause (x) the breach, nonperformance or cancellation of which, could reasonably be expected to have a Material Adverse Effect; (each such contract and agreement, described in the preceding clauses (i) to (x), a *"Material Contract"*).

**7.19.    No Default.** No Default or Event of Default has occurred and is continuing.

**7.20.    No Material Adverse Change.** Since the Closing Date, there has been no material adverse change in the financial condition, business, operations, or properties of any Loan Party or any Other Obligor.

**7.21.    Full Disclosure.** No report, notice, certificate, information or other statement delivered or made (including, in electronic form) by or on behalf of any Loan Party, any Other Obligor or any of their respective Affiliates to Lender in connection with this Agreement or any other Loan Document contains or will at any time contain any untrue statement of a material fact, or omits or will at any time omit to state any material fact necessary to make any statements contained herein or therein not misleading. Except for matters of a general economic or political nature which do not affect any Loan Party or any Other Obligor uniquely, there is no fact presently known to any Loan Party Obligor which has not been disclosed to Lender, which has had or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

**7.22. Sensitive Payments.** No Loan Party (a) has made or will at any time make any contributions, payments or gifts to or for the private use of any governmental official, employee or agent where either the payment or the purpose of such contribution, payment or gift is illegal under the applicable laws of the United States or the jurisdiction in which made or any other applicable jurisdiction, (b) has established or maintained or will at any time establish or maintain any unrecorded fund or asset for any purpose or made any false or artificial entries on its books, (c) has made or will at any time make any payments to any Person with the intention that any part of such payment was to be used for any purpose other than that described in the documents supporting the payment or (d) has engaged in or will at any time engage in any *"trading with the enemy"* or other transactions violating any rules or regulations of the Office of Foreign Assets Control or any similar applicable laws, rules or regulations.

**7.23. Borrower as Holding Company.** Borrower does not and shall not at any time (a) engage in any business activities other than serving as a passive holding company for its Subsidiaries, (b) have any material assets other than the outstanding shares of equity interests issued by its direct Subsidiaries, or (c) have any material liabilities other than the Obligations.

**7.24. Access to Collateral, Books and Records.** At reasonable times, Lender and its representatives or agents shall have the right to inspect the Collateral and to examine and copy each Loan Party's books and records. Each Loan Party Obligor agrees to give Lender access to any or all of such Loan Party Obligor's, and each of its Subsidiaries', premises to enable Lender to conduct such inspections and examinations. Such inspections and examinations shall be at Borrower's expense and the charge therefor shall be $1,250 per person per day (or such higher amount as shall represent Lender's then current standard charge), plus out-of-pocket expenses ; *provided* that Borrower shall only be required to reimburse Lender for up to two such inspections and examinations in any Fiscal Year plus any additional inspections and examinations that are conducted during the existence of an Event of Default. Lender may, at Borrower's expense, use each Loan Party's personnel, computer and other equipment, programs, printed output and computer readable media, supplies and premises for the collection, sale or other disposition of Collateral to the extent Lender, in its Permitted Discretion, deems appropriate. Each Loan Party Obligor hereby irrevocably authorizes all accountants and third parties to disclose and deliver to Lender, at Borrower's expense, all financial information, books and records, work papers, management reports and other information in their possession regarding the Loan Parties.

**7.25. Appraisals.** Each Loan Party Obligor will permit Lender and each of its representatives or agents to conduct appraisals and valuations of the Collateral at such times and intervals as Lender may designate in its Permitted Discretion (including any appraisals that may be required to comply with FIRREA). Such appraisals and valuations shall be at Borrower's expense; *provided,* that Borrower shall only be required to reimburse Lender for up to one appraisal and valuation in any Fiscal Year plus any additional appraisals and valuations that are conducted during the existence of an Event of Default.

**7.26. Key-man Insurance.** Within thirty (30) days after the Closing Date, Borrower shall (a) obtain and thereafter maintain in effect and cause to be delivered to the Lender evidence of a current, valid and fully paid key man term life insurance policy in the amount of at least $7,000,000 that insures the life of Kelly Holland, for so long as she is the Chief Executive Officer (or any role with similar responsibilities and functions) of Borrower, for a term of at least one (1) year and in any event expiring later than the Scheduled Maturity Date at any time in effect, under policies of insurance in form and substance reasonably satisfactory to Lender, it being understood that any such policy initially delivered to and accepted by Lender hereunder is acceptable to Lender; (b) deliver to Lender the original of each of such policies of insurance and evidence of payment of all premiums therefor; (c) collaterally assign each such policy to Lender and, if applicable, name Lender as loss payee thereunder and (d) take such other action with respect thereto as Lender shall require. Each such policy of insurance shall name Borrower as the sole named beneficiary thereof and shall contain endorsements providing that (x) such policy may not be altered, amended, modified or canceled except after 30 days' prior written notice to Lender, and (y) the

beneficiary of such policy may not be changed, or additional beneficiaries named, without Lender's prior written consent. If Borrower at any time or times hereafter shall fail to obtain or maintain any of the policies of insurance required above or to pay any premium in whole or in part relating thereto, then Lender, without waiving or releasing any obligation of Borrower or Default or Event of Default arising therefrom, may at any time or times thereafter (but shall be under no obligation to do so) obtain and maintain such policies of insurance and pay such premiums and take any other action with respect thereto which Lender deems advisable.

**8.    NEGATIVE COVENANTS.** No Loan Party Obligor shall, and no Loan Party Obligor shall permit any other Loan Party to, without Lender's prior written consent:

(a)    (i) merge or consolidate with another Person, form any new Subsidiary or acquire any interest in any Person; *provided* that any Subsidiary of Borrower that is a Loan Party Obligor may merge with another Loan Party Obligor so long as Borrower is the survivor of any merger involving Borrower; or (ii) form or acquire any interest in any new Subsidiary unless such Subsidiary becomes a party hereto as a Loan Party Obligor;

(b)    acquire any assets with a value in excess of $50,000 in any single transaction or series of related transactions, except in the ordinary course of business and as otherwise expressly permitted by this Agreement;

(c)    enter into any material transaction outside the ordinary course of business that is not expressly permitted by this Agreement;

(d)    sell, transfer, return, or dispose of any Collateral or other assets with an aggregate value in excess of $100,000 in any fiscal year, except that each Loan Party may sell Inventory and may enter into licenses of intellectual property (other than any Master Licensing Agreement), in each case, in the ordinary course of its business;

(e)    make any loans to, or investments in, any Affiliate or other Person in the form of money or other assets; *provided,* that Borrower and each other Loan Party Obligor may make loans and investments in its wholly-owned domestic Subsidiaries that are Loan Party Obligors;

(f)    incur any Indebtedness other than the Obligations and Permitted Indebtedness;

(g)    create, incur, assume or suffer to exist any Lien or other encumbrance of any nature whatsoever on any of its assets whether now or hereafter owned, other than Liens in favor of Lender to secure the Obligations and Permitted Liens;

(h)    guaranty or otherwise become liable with respect to the obligations of another party or entity (other than (i) the Obligations and (ii) any other obligations that such Loan Party Obligor would be permitted under this Agreement to incur as the primary obligor with respect thereto);

(i)    pay or declare any dividends or other distributions on any Loan Party's stock or other equity interest (except for dividends payable solely in capital stock or other equity interests of such Loan Party and dividends and distributions (i) by a Loan Party that is not a Loan Party Obligor to any other Loan Party and (ii) by a Loan Party Obligor to another Loan Party Obligor);

(j)    redeem, retire, purchase or otherwise acquire, directly or indirectly, any of Borrower's capital stock or other equity interests other than pursuant to the Warrant;

(k)    make any change in any Loan Party's capital structure, except (i) to the extent expressly permitted pursuant to another clause of this Section 8 and (ii) the Borrower may issue equity

interests, and securities convertible into equity interests, in each case other than Disqualified Equity Interests and to the extent not otherwise prohibited hereunder, so long as such issuance does not result in a Change of Control;

(l)     dissolve or elect to dissolve;

(m)     engage, directly or indirectly, in a business other than the business which is being conducted on the date hereof, wind up its business operations or cease substantially all, or any material portion, of its normal business operations, or suffer any material disruption, interruption or discontinuance of a material portion of its normal business operations;

(n)     pay any principal or other amount on any Indebtedness that is contractually subordinated to Lender in violation of the applicable subordination or intercreditor agreement;

(o)     enter into any transaction with an Affiliate (other than another Loan Party Obligor) other than on arms-length terms disclosed to Lender in writing;

(p)     change its jurisdiction of organization or enter into any transaction which has the effect of changing its jurisdiction of organization except as provided for in Section 7.8;

(q)     agree, consent, permit or otherwise undertake to amend or otherwise modify any of the terms or provisions of any Loan Party's Governing Documents, except for such amendments or other modifications required by applicable law or that are not adverse to Lender, and then, only to the extent such amendments or other modifications are fully disclosed in writing to Lender no less than five Business Days prior to being effectuated;

(r)     enter into or assume any agreement prohibiting the creation or assumption of any Lien to secure the Obligations upon its properties or assets, whether now owned or hereafter acquired; or

(s)     create or otherwise cause or suffer to exist or become effective any encumbrance or restriction (other than any Loan Documents) of any kind on the ability of any such Person to pay or make any dividends or distributions to Borrower, to pay any of the Obligations, to make loans or advances or to transfer any of its property or assets to Borrower.

**9.     FINANCIAL COVENANTS.** Each Loan Party Obligor shall at all times comply with the following Financial Covenants:

**9.1.     Fixed Charge Coverage Ratio.** Borrower shall not permit the ratio of (a) EBITDA for each period set forth below, minus unfinanced Capital Expenditures (which shall not include the 2016 Website CapEx) of the Loan Parties on a consolidated basis for such period, to (b) Fixed Charges for such period to be less than the ratio set forth below for such period:

| Period | Ratio |
|---|---|
| the seven-month period ended September 30, 2016 | 0.70:1.00 |
| the eight-month period ended October 31, 2016 | 0.78:1.00 |
| the nine-month period ended November 30, 2016 | 0.90:1.00 |
| the ten-month period ended December 31, 2016 | 1.00:1.00 |

| the eleven-month period ended January 31, 2017 | 1.09:1.00 |
| the twelve-month period ended February 28, 2017, and the twelve-month period ended on the last day of each month thereafter | 1.20:1.00 |

**9.2.** **Minimum EBITDA.** Borrower shall not permit EBITDA for any period set forth below to be less than the corresponding amount set forth below for such period:

| Period | Amount |
|--------|--------|
| Closing Date through July 31, 2016 | $498,000 |
| Closing Date through August 31, 2016 | $599,000 |
| Closing Date through September 30, 2016 | $731,000 |
| Closing Date through October 31, 2016 | $932,000 |
| Closing Date through November 30, 2016 | $1,212,000 |
| Closing Date through December 31, 2016 | $1,471,000 |
| Closing Date through February 19, 2017 | $2,122,000 |

**9.3.** **Minimum Tangible Net Worth.** Borrower and Lender shall negotiate in good faith to agree on a required minimum Tangible Net Worth (as defined below) covenant (which shall be measured and tested monthly) on or before the date that is 90 days after the Closing Date and upon reaching agreement shall amend this Agreement to insert such covenant.

*"Tangible Net Worth"* shall mean, as to the Loan Parties, at any time, in accordance with GAAP (except as otherwise specifically set forth below), on a consolidated basis for the Loan Parties, the amount equal to the sum of: (a) the aggregate net book value of all assets of the Loan Parties (excluding the value of patents, trademarks, tradenames, copyrights, licenses, goodwill, leasehold improvements, prepaid assets and other intangible assets), calculating the book value of inventory for this purpose on a first-in-first-out basis, after deducting from such book values all appropriate reserves in accordance with GAAP (including all reserves for doubtful receivables, obsolescence, depreciation and amortization) minus (b) the aggregate amount of Indebtedness and other liabilities of the Loan Parties (including tax and other proper accruals).

## 10.   RELEASE, LIMITATION OF LIABILITY AND INDEMNITY.

**10.1.** **Release.** Borrower and each other Loan Party Obligor on behalf of itself and its successors, assigns, heirs and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Lender and any and all Participants and Affiliates, and their respective successors and assigns, and their respective directors, officers, employees, attorneys and agents and any other Person affiliated with or representing Lender (collectively, the *"Released Parties"*) of and from any and all liability, including all actual or potential claims, demands or causes of action of any kind, nature or description whatsoever, whether arising in law or equity or under contract or tort or under any state or federal law or otherwise, which Borrower or any Loan Party or any of their successors, assigns or other legal representatives has had, now has or has made claim to have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever, including

-38-

any liability arising from acts or omissions pertaining to the transactions contemplated by this Agreement and the other Loan Documents, whether based on errors of judgment or mistake of law or fact, from the beginning of time to and including the Closing Date, whether such claims, demands and causes of action are matured or known or unknown. Notwithstanding any provision in this Agreement to the contrary, this Section 10.1 shall remain operative even after the Termination Date and shall survive the payment in full of all of the Obligations. Such release is made on the date hereof and remade upon each request for a Loan by Borrower.

**10.2. Limitation of Liability.** In no circumstance will any of the Released Parties be liable for lost profits or other special, punitive, or consequential damages. Notwithstanding any provision in this Agreement to the contrary, this Section 10.2 shall remain operative even after the Termination Date and shall survive the payment in full of all of the Obligations.

**10.3. Indemnity.** Each Loan Party Obligor hereby agrees to indemnify the Released Parties and hold them harmless from and against any and all claims, debts, liabilities, demands, obligations, actions, causes of action, penalties, costs and expenses (including attorneys' fees), of every nature, character and description, which the Released Parties may sustain or incur based upon or arising out of any of the transactions contemplated by this Agreement or any other Loan Documents or any of the Obligations, or any other matter, cause or thing whatsoever, occurred, done, omitted or suffered to be done by Lender relating to any Loan Party or the Obligations (except any such amounts sustained or incurred solely as the result of the gross negligence or willful misconduct of such Released Parties, as finally determined by a court of competent jurisdiction). Notwithstanding any provision in this Agreement to the contrary, this Section 10.3 shall remain operative even after the Termination Date and shall survive the payment in full of all of the Obligations.

## 11. EVENTS OF DEFAULT AND REMEDIES.

**11.1. Events of Default.** The occurrence of any of the following events shall constitute an *"Event of Default"*:

(a) **Payment.** If any Loan Party Obligor or any Other Obligor fails to pay to Lender, when due, (i) any payment of principal or interest or any fees set forth in the Fee Letter or (ii) any other monetary Obligation required under this Agreement or any other Loan Document, and, solely with respect to this clause (ii), such failure continues for a period of 5 Business Days;

(b) **Breaches of Representations and Warranties.** If any warranty, representation, statement, report or certificate made or delivered to Lender by or on behalf of any Loan Party or any Other Obligor is untrue or misleading in any material respect;

(c) **Breaches of Covenants.** If any Loan Party or any Other Obligor breaches any covenant or obligation contained in this Agreement or any other Loan Document;

(d) **Judgment.** If one or more judgments aggregating in excess of $100,000 is obtained against any Loan Party or any Other Obligor which remains unstayed for more than thirty days or is enforced;

(e) **Cross-Default.** If any default occurs and is continuing with respect to any Indebtedness (other than the Obligations) of any Loan Party or any Other Obligor if (i) such default shall consist of the failure to pay such Indebtedness when due, whether by acceleration or otherwise or (ii) the effect of such default is to permit the holder, with or without notice or lapse of time or both, to accelerate the maturity of any such Indebtedness or to cause such Indebtedness to become due prior to the stated maturity thereof (without regard to the existence of any subordination or intercreditor agreements);

(f) **Death or Dissolution**.   The dissolution, death, termination of existence, insolvency or business failure or suspension or cessation of business as usual of any Loan Party or any Other Obligor (or of any general partner of any Loan Party or any Other Obligor if it is a partnership);

(g) **Voluntary Bankruptcy or Similar Proceedings**. If any Loan Party or any Other Obligor shall apply for or consent to the appointment of a receiver, trustee, custodian or liquidator of it or any of its properties, admit in writing its inability to pay its debts as they mature, make a general assignment for the benefit of creditors, be adjudicated a bankrupt or insolvent or be the subject of an order for relief under the Bankruptcy Code or under any bankruptcy or insolvency law of a foreign jurisdiction, or file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against it in any proceeding under any such law, or take or permit to be taken any action in furtherance of or for the purpose of effecting any of the foregoing;

(h) **Involuntary Bankruptcy or Similar Proceedings.** The commencement of an involuntary case or other proceeding against any Loan Party or any Other Obligor seeking liquidation, reorganization or other relief with respect to it or its debts under any bankruptcy, insolvency or other similar applicable law or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, or if an order for relief is entered against any Loan Party or any Other Obligor under any bankruptcy, insolvency or other similar applicable law as now or hereafter in effect; *provided*, that if such commencement of proceedings is involuntary, such action shall not constitute an Event of Default unless such proceedings are not dismissed within sixty days after the commencement of such proceedings, though Lender shall have no obligation to make Revolving Loans to Borrower during such sixty day period or, if earlier, until such proceedings are dismissed;

(i) **Revocation or Termination of Guaranty or Security Documents**. The actual or attempted revocation or termination of, or limitation or denial of liability under, any guaranty of any of the Obligations, or any security document securing any of the Obligations, by any Loan Party or Other Obligor;

(j) **Subordinated Indebtedness**. If any Loan Party or Other Obligor makes any payment on account of any Indebtedness or obligation which has been contractually subordinated to the Obligations other than payments which are not prohibited by the applicable subordination provisions pertaining thereto, or if any Person who has subordinated such Indebtedness or obligations attempts to limit or terminate any applicable subordination provisions pertaining thereto;

(k) **Criminal Indictment or Proceedings**. If there is any actual or threatened indictment of any Loan Party, any Loan Party's officers, any Other Obligor or any Other Obligor's officers under any criminal statute or commencement or threatened commencement of criminal or civil proceedings against any such Person;

(l) **Change of Control**. If (i) Kelly Holland and her Investment Affiliates cease to, directly or indirectly, own and control at least 51% of the outstanding equity interests of Borrower on a fully diluted basis, (ii) Kelly Holland and her Investment Affiliates and Lender cease, collectively, to possess the right to elect (through contract, ownership of voting securities or otherwise) at all times a majority of the board of directors (or similar governing body) of Borrower and to direct the management policies and decisions of Borrower, or (iii) Borrower ceases to, directly or indirectly, own and control 100% of each class of the outstanding equity interests of each other Loan Party;

(m) **Change of Management.** If Kelly Holland ceases to be employed as, and actively perform the duties of, the chief executive officer of Borrower, unless a successor is appointed

-40-

within sixty days after the termination of such individual's employment and such successor is reasonably satisfactory to Lender;

(n) **Material Adverse Effect.** The occurrence of a Material Adverse Effect;

(o) **Invalid Liens.** If any Lien purported to be created by any Loan Document shall cease to be a valid perfected first priority Lien (subject only to any priority accorded by law to Permitted Liens) on any material portion of the Collateral, or any Loan Party or any Other Obligor shall assert in writing that any Lien purported to be created by any Loan Document is not a valid perfected first-priority lien (subject only to any priority accorded by law to Permitted Liens) on the assets or properties purported to be covered thereby;

(p) **Termination of Loan Documents.** If any of the Loan Documents shall cease to be in full force and effect (other than as a result of the discharge thereof in accordance with the terms thereof or by written agreement of all parties thereto);

(q) [Intentionally Omitted];

(r) **Loss of Collateral.** The loss, theft, damage or destruction of any of the Collateral in an amount in excess of $100,000 in the aggregate (except to the extent covered by insurance pursuant to which the insurer has not denied coverage) for all such events during any Fiscal Year as determined by Lender in its sole discretion determined in good faith, or (except as permitted hereby) the sale, lease or furnishing under a contract of service of, any of the Collateral;

(s) [Intentionally Omitted]; or

(t) **Plans.** (i) An ERISA Event occurs with respect to a Pension Plan or Multiemployer Plan which has resulted or could reasonably be expected to result in liability of any Loan Party or any Subsidiary under Title IV of ERISA to the Pension Plan, Multiemployer Plan or the PBGC in an aggregate amount in excess of $100,000, (ii) the existence of any Lien under Section 430(k) or Section 6321 of the Code or Section 303(k) or Section 4068 of ERISA on any assets of a Loan Party, or (iii) a Loan Party or any ERISA Affiliate fails to pay when due, after the expiration of any applicable grace period, any installment payment with respect to its withdrawal liability under Section 4201 of ERISA under a Multiemployer Plan in an aggregate amount in excess of $100,000.

**11.2. Remedies with Respect to Lending Commitments/Acceleration, Etc.** Upon the occurrence and during the continuance of an Event of Default, Lender may, in Lender's sole discretion (a) terminate all or any portion of its commitment to lend to or extend credit to Borrower under this Agreement and/or any other Loan Document, without prior notice to any Loan Party and/or (b) demand payment in full of all or any portion of the Obligations (whether or not payable on demand prior to such Event of Default), and/or (c) take any and all other and further actions and avail itself of any and all rights and remedies available to Lender under this Agreement, any other Loan Document, under law or in equity. Notwithstanding the foregoing sentence, upon the occurrence of any Event of Default described in Section 11.1(g) or Section 11.1(h), without notice, demand or other action by Lender all of the Obligations shall immediately become due and payable whether or not payable on demand prior to such Event of Default.

**11.3. Remedies with Respect to Collateral.** Without limiting any rights or remedies Lender may have pursuant to this Agreement, the other Loan Documents, under applicable law or otherwise, upon the occurrence and during the continuation of an Event of Default:

(a) **Any and All Remedies.** Lender may take any and all actions and avail itself of any and all rights and remedies available to Lender under this Agreement, any other Loan Document,

under law or in equity, and the rights and remedies herein and therein provided shall be cumulative and not exclusive of any rights or remedies provided by applicable law or otherwise.

(b)     **Collections; Modifications of Terms.**  Lender may, but shall be under no obligation to: (i) notify all appropriate parties that the Collateral, or any part thereof, has been assigned to, or is subject to a security interest in favor of, Lender; (ii) demand, sue for, collect and give receipts for and take all necessary or desirable steps to collect any Collateral or Proceeds in its or any Loan Party Obligor's name, and apply any such collections against the Obligations as Lender may elect; (iii) take control of any Collateral and any cash and non-cash Proceeds of any Collateral; (iv) enforce, compromise, extend, renew settle or discharge any rights or benefits of each Loan Party Obligor with respect to or in and to any Collateral, or deal with the Collateral as Lender may deem advisable; and (v) make any compromises, exchanges, substitutions or surrenders of Collateral Lender deems necessary or proper in its reasonable discretion, including extending the time of payment, permitting payment in installments, or otherwise modifying the terms or rights relating to any of the Collateral, all of which may be effected without notice to, consent of, or any other action of any Loan Party and without otherwise discharging or affecting the Obligations, the Collateral or the security interests granted to Lender under this Agreement or any other Loan Document.

(c)     **Insurance.**  Lender may file proofs of loss and claim with respect to any of the Collateral with the appropriate insurer, and may endorse in its own and each Loan Party Obligor's name any checks or drafts constituting Proceeds of insurance.  Any Proceeds of insurance received by Lender may be applied by Lender against payment of all or any portion of the Obligations as Lender may elect in its reasonable discretion.

(d)     **Possession and Assembly of Collateral.**  Lender may take possession of the Collateral and/or, without removal, render each Loan Party Obligor's Equipment unusable.  Upon Lender's request, each Loan Party Obligor shall assemble the Collateral and make it available to Lender at one or more places designated by Lender.

(e)     **Set-off.**  Lender may and, without any notice to, consent of or any other action by any Loan Party (such notice, consent or other action being expressly waived), set-off or apply (i) any and all deposits (general or special, time or demand, provisional or final) at any time held by or for the account of Lender or any Affiliate of Lender and (ii) any Indebtedness at any time owing by Lender or any Affiliate of Lender or any Participant in the Loans to or for the credit or the account of any Loan Party Obligor to the repayment of the Obligations, irrespective of whether any demand for payment of the Obligations has been made.

(f)     **Disposition of Collateral.**

(i)     *Sale, Lease, etc. of Collateral.*  Lender may, without demand, advertising or notice, all of which each Loan Party Obligor hereby waives (except as the same may be required by the UCC or other applicable law and is not waivable under the UCC or such other applicable law), at any time or times in one or more public or private sales or other dispositions, for cash, on credit or otherwise, at such prices and upon such terms as determined by Lender (provided such price and terms are commercially reasonable within the meaning of the UCC to the extent such sale or other disposition is subject to the UCC requirements that such sale or other disposition must be commercially reasonable), (A) sell, lease, license or otherwise dispose of any and all Collateral and/or (B) deliver and grant options to a third party to purchase, lease, license or otherwise dispose of any and all Collateral.  Lender may sell, lease, license or otherwise dispose of any Collateral in its then-present condition or following any preparation or processing deemed necessary by Lender in its reasonable discretion.  Lender may be the purchaser at any such public or private sale or other disposition of Collateral, and in such case Lender may make payment of all or any portion of the purchase price therefor by the application

-42-

of all or any portion of the Obligations due to Lender to the purchase price payable in connection with such sale or disposition. Lender may, if it deems it reasonable, postpone or adjourn any sale or other disposition of any Collateral from time to time by an announcement at the time and place of the sale or disposition to be so postponed or adjourned without being required to give a new notice of sale or disposition; *provided*, that Lender shall provide the applicable Loan Party Obligor with written notice of the time and place of such postponed or adjourned sale or disposition. Each Loan Party Obligor hereby acknowledges and agrees that Lender's compliance with any requirements of applicable law in connection with a sale, lease, license or other disposition of Collateral will not be considered to adversely affect the commercial reasonableness of any sale, lease, license or other disposition of such Collateral.

(ii)     *Deficiency.* Each Loan Party Obligor shall remain liable for all amounts of the Obligations remaining unpaid as a result of any deficiency of the Proceeds of the sale, lease, license or other disposition of Collateral after such Proceeds are applied to the Obligations as provided in this Agreement.

(iii)    *Warranties; Sales on Credit.*    Lender may sell, lease, license or otherwise dispose of the Collateral without giving any warranties and may specifically disclaim any and all warranties, including but not limited to warranties of title, possession, merchantability and fitness. Each Loan Party Obligor hereby acknowledges and agrees that Lender's disclaimer of any and all warranties in connection with a sale, lease, license or other disposition of Collateral will not be considered to adversely affect the commercial reasonableness of any such disposition of the Collateral. If Lender sells, leases, licenses or otherwise disposes of any of the Collateral on credit, Borrower will be credited only with payments actually made in cash by the recipient of such Collateral and received by Lender and applied to the Obligations. If any Person fails to pay for Collateral acquired pursuant this Section 11.3(f) on credit, Lender may re-offer the Collateral for sale, lease, license or other disposition.

(iv)     *License.* Lender is hereby granted a license or other right to use, without liability for royalties or any other charge, each Loan Party Obligor's Intellectual Property, including but not limited to, any labels, patents, trademarks, trade names, URLs, domain names, industrial designs, copyrights, and advertising matter, whether owned by any Loan Party Obligor or with respect to which any Loan Party Obligor has rights under license, sublicense, or other agreements, as it pertains to the Collateral, in preparing for sale, advertising for sale and selling any Collateral, and each Loan Party Obligor's rights under all licenses and all franchise agreements shall inure to the benefit of Lender.

(g)     **Investment Property; Voting and Other Rights; Irrevocable Proxy.**

(i)     All rights of each Loan Party Obligor to exercise any of the voting and other consensual rights which it would otherwise be entitled to exercise in accordance with the terms hereof with respect to any Investment Property, and to receive any dividends, payments, and other distributions which it would otherwise be authorized to receive and retain in accordance with the terms hereof with respect to any Investment Property, shall immediately, at the election of Lender (without requiring any notice) cease, and all such rights shall thereupon become vested solely in Lender, and Lender (personally or through an agent) shall thereupon be solely authorized and empowered, without notice, to (A) transfer and register in its name, or in the name of its nominee, the whole or any part of the Investment Property, it being acknowledged by each Loan Party Obligor that any such transfer and registration may be effected by Lender through its irrevocable appointment as attorney-in-fact pursuant to Section 11.3(g)(ii) and Section 6.4, (B) exchange certificates or instruments representing or evidencing Investment Property for certificates or instruments of smaller or larger denominations, (C) exercise the voting and all other rights as a holder with respect to all or any portion of the Investment Property (including all

-43-

economic rights, all control rights, authority and powers, and all status rights of each Loan Party Obligor as a member or as a shareholder (as applicable) of the Issuer), (D) collect and receive all dividends and other payments and distributions made thereon, (E) notify the parties obligated on any Investment Property to make payment to Lender of any amounts due or to become due thereunder, (F) endorse instruments in the name of each Loan Party Obligor to allow collection of any Investment Property, (G) enforce collection of any of the Investment Property by suit or otherwise, and surrender, release, or exchange all or any part thereof, or compromise or renew for any period (whether or not longer than the original period) any liabilities of any nature of any Person with respect thereto, (H) consummate any sales of Investment Property or exercise any other rights as set forth in Section 11.3(f), (I) otherwise act with respect to the Investment Property as though Lender was the outright owner thereof and (J) exercise any other rights or remedies Lender may have under the UCC, other applicable law or otherwise.

(ii) EACH LOAN PARTY OBLIGOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS LENDER AS ITS PROXY AND ATTORNEY-IN-FACT FOR SUCH LOAN PARTY OBLIGOR WITH RESPECT TO ALL OF EACH SUCH LOAN PARTY OBLIGOR'S INVESTMENT PROPERTY WITH THE RIGHT, DURING THE CONTINUANCE OF AN EVENT OF DEFAULT, WITHOUT NOTICE, TO TAKE ANY OF THE FOLLOWING ACTIONS: (A) TRANSFER AND REGISTER IN LENDER'S NAME, OR IN THE NAME OF ITS NOMINEE, THE WHOLE OR ANY PART OF THE INVESTMENT PROPERTY, (B) VOTE THE PLEDGED EQUITY, WITH FULL POWER OF SUBSTITUTION TO DO SO, (C) RECEIVE AND COLLECT ANY DIVIDEND OR ANY OTHER PAYMENT OR DISTRIBUTION IN RESPECT OF, OR IN EXCHANGE FOR, THE INVESTMENT PROPERTY OR ANY PORTION THEREOF, TO GIVE FULL DISCHARGE FOR THE SAME AND TO INDORSE ANY INSTRUMENT MADE PAYABLE TO ANY LOAN PARTY OBLIGOR FOR THE SAME, (D) EXERCISE ALL OTHER RIGHTS, POWERS, PRIVILEGES, AND REMEDIES (INCLUDING ALL ECONOMIC RIGHTS, ALL CONTROL RIGHTS, AUTHORITY AND POWERS, AND ALL STATUS RIGHTS OF EACH LOAN PARTY OBLIGOR AS A MEMBER OR AS A SHAREHOLDER (AS APPLICABLE) OF THE ISSUER) TO WHICH A HOLDER OF THE PLEDGED COLLATERAL WOULD BE ENTITLED (INCLUDING, WITH RESPECT TO THE PLEDGED EQUITY, GIVING OR WITHHOLDING WRITTEN CONSENTS OF MEMBERS OR SHAREHOLDERS, CALLING SPECIAL MEETINGS OF MEMBERS OR SHAREHOLDERS, AND VOTING AT SUCH MEETINGS), AND (E) TAKE ANY ACTION AND TO EXECUTE ANY INSTRUMENT WHICH LENDER MAY DEEM NECESSARY OR ADVISABLE TO ACCOMPLISH THE PURPOSES OF THIS AGREEMENT. THE APPOINTMENT OF LENDER AS PROXY AND ATTORNEY-IN-FACT IS COUPLED WITH AN INTEREST AND SHALL BE VALID AND IRREVOCABLE UNTIL (x) ALL OF THE OBLIGATIONS HAVE BEEN INDEFEASIBLY PAID IN FULL IN CASH IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, (y) LENDER HAS NO FURTHER OBLIGATIONS UNDER THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, AND (z) THE COMMITMENTS UNDER THIS AGREEMENT HAVE EXPIRED OR HAVE BEEN TERMINATED (IT BEING UNDERSTOOD AND AGREED THAT SUCH OBLIGATIONS WILL BE AUTOMATICALLY REINSTATED IF AT ANY TIME PAYMENT, IN WHOLE OR IN PART, OF ANY OF THE OBLIGATIONS IS RESCINDED OR MUST OTHERWISE BE RESTORED OR RETURNED BY LENDER FOR ANY REASON WHATSOEVER, INCLUDING AS A PREFERENCE, FRAUDULENT CONVEYANCE, OR OTHERWISE UNDER ANY BANKRUPTCY, INSOLVENCY, OR SIMILAR LAW, ALL AS THOUGH SUCH PAYMENT HAD NOT BEEN MADE; IT BEING FURTHER UNDERSTOOD THAT IN THE EVENT PAYMENT OF ALL OR ANY PART OF THE OBLIGATIONS IS RESCINDED OR MUST BE RESTORED OR RETURNED, ALL REASONABLE OUT-OF-POCKET COSTS AND EXPENSES (INCLUDING ALL REASONABLE ATTORNEYS' FEES

AND DISBURSEMENTS) INCURRED BY LENDER IN DEFENDING AND ENFORCING SUCH REINSTATEMENT SHALL HEREBY BE DEEMED TO BE INCLUDED AS A PART OF THE OBLIGATIONS). SUCH APPOINTMENT OF LENDER AS PROXY AND AS ATTORNEY-IN-FACT SHALL BE VALID AND IRREVOCABLE AS PROVIDED HEREIN NOTWITHSTANDING ANY LIMITATIONS TO THE CONTRARY SET FORTH IN ANY GOVERNING DOCUMENTS OF ANY LOAN PARTY OBLIGOR, ANY ISSUER, OR OTHERWISE.

(iii)    In order to further effect the foregoing transfer of rights in favor of Lender, during the continuance of an Event of Default, each Loan Party Obligor hereby authorizes and instructs each Issuer of Investment Property pledged by such Loan Party Obligor to comply with any instruction received by such Issuer from Lender without any other or further instruction from such Loan Party Obligor, and each Loan Party Obligor acknowledges and agrees that each Issuer shall be fully protected in so complying, and to pay any dividends, distributions, or other payments with respect to any of the Investment Property directly to Lender.

(iv)    Upon exercise of the proxy set forth herein, all prior proxies given by any Loan Party Obligor with respect to any of the Pledged Equity or other Investment Property, other than to Lender, are hereby revoked, and no subsequent proxies, other than to Lender will be given with respect to any of the Pledged Equity or any of the other Investment Property unless Lender otherwise subsequently agrees in writing. Lender, as proxy, will be empowered and may exercise the irrevocable proxy to vote the Pledged Equity and the other Investment Property at any and all times during the existence of an Event of Default, including, at any meeting of shareholders or members, as the case may be, however called, and at any adjournment thereof, or in any action by written consent, and may waive any notice otherwise required in connection therewith. To the fullest extent permitted by applicable law, Lender shall have no agency, fiduciary or other implied duties to any Loan Party Obligor, any Issuer, any Loan Party or any other Person when acting in its capacity as such proxy or attorney-in-fact. Each Loan Party Obligor hereby waives and releases any claims that it may otherwise have against Lender with respect to any breach, or alleged breach, of any such agency, fiduciary or other duty.

(v)    Any transfer to Lender or its nominee, or registration in the name of Lender or its nominee, of the whole or any part of the Investment Property shall be made solely for purposes of effectuating voting or other consensual rights with respect to the Investment Property in accordance with the terms of this Agreement and is not intended to effectuate any transfer of ownership of any of the Investment Property unless Lender expressly agrees to the contrary in writing. Notwithstanding the delivery by Lender of any instruction to any Issuer or any exercise by Lender of an irrevocable proxy or otherwise, Lender shall not be deemed the owner of, or assume any obligations or any liabilities whatsoever of the owner or holder of, any Investment Property unless and until Lender expressly accepts such obligations in a duly authorized and executed writing and agrees in writing to become bound by the applicable Governing Documents or otherwise becomes the owner thereof under applicable law (including through a sale as described in Section 11.3(f)). The execution and delivery of this Agreement shall not subject Lender to, or transfer or pass to Lender, or in any way affect or modify, the liability of any Loan Party Obligor under the Governing Documents of any Issuer or any related agreements, documents, or instruments or otherwise. In no event shall the execution and delivery of this Agreement by Lender, or the exercise by Lender of any rights hereunder or assigned hereby, constitute an assumption of any liability or obligation whatsoever of any Loan Party Obligor to, under, or in connection with any of the Governing Documents of any Issuer or any related agreements, documents, or instruments or otherwise.

(h)    **Election of Remedies.** Lender shall have the right in Lender's sole discretion to determine which rights, security, Liens or remedies Lender may at any time pursue, foreclose upon, relinquish, subordinate, modify or take any other action with respect to, without in any way impairing, modifying or affecting any of Lender's other rights, security, Liens or remedies with respect to any Collateral or any of Lender's rights or remedies under this Agreement or any other Loan Document.

(i)    **Lender's Obligations.** Each Loan Party Obligor agrees that Lender shall not have any obligation to preserve rights to any Collateral against prior parties or to marshal any Collateral of any kind for the benefit of any other creditor of any Loan Party Obligor or any other Person. Lender shall not be responsible to any Loan Party Obligor or any other Person for loss or damage resulting from Lender's failure to enforce its Liens or collect any Collateral or Proceeds or any monies due or to become due under the Obligations or any other liability or obligation of any Loan Party Obligor to Lender.

(j)    **Waiver of Rights by Loan Party Obligors.** Except as otherwise expressly provided for in this Agreement or by non-waivable applicable law, each Loan Party waives (i) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by Lender on which any Loan Party Obligor may in any way be liable, and hereby ratifies and confirms whatever Lender may do in this regard, (ii) all rights to notice and a hearing prior to Lender's taking possession or control of, or to Lender's replevy, attachment or levy upon, the Collateral or any bond or security which might be required by any court prior to allowing Lender to exercise any of its remedies and (iii) the benefit of all valuation, appraisal, marshaling and exemption laws.

## 12.    LOAN GUARANTY.

**12.1.    Guaranty.** Each Loan Party Obligor hereby agrees that it is jointly and severally liable for, and absolutely and unconditionally guaranties to Lender, the prompt payment when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter, all of the Obligations and all costs and expenses, including all court costs and attorneys' and paralegals' fees (including allocated costs of in-house counsel and paralegals) and expenses paid or incurred by Lender in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, Borrower, any Loan Party Obligor or any Other Obligor of all or any part of the Obligations (and such costs and expenses paid or incurred shall be deemed to be included in the Obligations). Each Loan Party Obligor further agrees that the Obligations may be extended or renewed in whole or in part without notice to or further assent from it, and that it remains bound upon its guaranty notwithstanding any such extension or renewal. All terms of this Loan Guaranty apply to and may be enforced by or on behalf of any branch or Affiliate of Lender that extended any portion of the Obligations.

**12.2.    Guaranty of Payment.** This Loan Guaranty is a guaranty of payment and not of collection. Each Loan Party Obligor waives any right to require Lender to sue or otherwise take action against Borrower, any other Loan Party Obligor, any Other Obligor, or any other Person obligated for all or any part of the Obligations, or otherwise to enforce its payment against any Collateral securing all or any part of the Obligations.

### 12.3.    No Discharge or Diminishment of Loan Guaranty.

(a)    Except as otherwise expressly provided for herein, the obligations of each Loan Party Obligor hereunder are unconditional and absolute and not subject to any reduction, limitation, impairment or termination for any reason (other than the indefeasible payment in full in cash of all of the Obligations), including: (i) any claim of waiver, release, extension, renewal, settlement, surrender, alteration, or compromise of any of the Obligations, by operation of law or otherwise; (ii) any change in

the corporate existence, structure or ownership of Borrower or any Obligor; (iii) any insolvency, bankruptcy, reorganization or other similar proceeding affecting Borrower or any Obligor or their respective assets or any resulting release or discharge of any obligation of Borrower or any Obligor; or (iv) the existence of any claim, setoff or other rights which any Loan Party Obligor may have at any time against Borrower, any Obligor, Lender, or any other Person, whether in connection herewith or in any unrelated transactions.

(b)     The obligations of each Loan Party Obligor hereunder are not subject to any defense or setoff, counterclaim, recoupment, or termination whatsoever by reason of the invalidity, illegality or unenforceability of any of the Obligations or otherwise, or any provision of applicable law or regulation purporting to prohibit payment by Borrower or any Obligor of the Obligations or any part thereof.

(c)     Further, the obligations of any Loan Party Obligor hereunder shall not be discharged or impaired or otherwise affected by: (i) the failure of Lender to assert any claim or demand or to enforce any remedy with respect to all or any part of the Obligations; (ii) any waiver or modification of or supplement to any provision of any agreement relating to the Obligations; (iii) any release, non-perfection or invalidity of any indirect or direct security for all or any part of the Obligations or all or any part of any obligations of any Obligor; (iv) any action or failure to act by Lender with respect to any Collateral; or (v) any default, failure or delay, willful or otherwise, in the payment or performance of any of the Obligations, or any other circumstance, act, omission or delay that might in any manner or to any extent vary the risk of such Loan Party Obligor or that would otherwise operate as a discharge of any Loan Party Obligor as a matter of law or equity (other than the indefeasible payment in full in cash of all of the Obligations).

**12.4.   Defenses Waived.** To the fullest extent permitted by applicable law, each Loan Party Obligor hereby waives any defense based on or arising out of any defense of any Loan Party Obligor or the unenforceability of all or any part of the Obligations from any cause, or the cessation from any cause of the liability of any Loan Party Obligor, other than the indefeasible payment in full in cash of all of the Obligations. Without limiting the generality of the foregoing, each Loan Party Obligor irrevocably waives acceptance hereof, presentment, demand, protest and, to the fullest extent permitted by law, any notice not provided for herein, as well as any requirement that at any time any action be taken by any Person against Borrower, any Obligor, or any other Person. Each Loan Party Obligor confirms that it is not a surety under any state law and shall not raise any such law as a defense to its obligations hereunder. Lender may, at its election, foreclose on any Collateral held by it by one or more judicial or nonjudicial sales, accept an assignment of any such Collateral in lieu of foreclosure or otherwise act or fail to act with respect to any Collateral, compromise or adjust any part of the Obligations, make any other accommodation with Borrower or any Obligor or exercise any other right or remedy available to it against Borrower or any Obligor, without affecting or impairing in any way the liability of any Loan Party Obligor under this Loan Guaranty except to the extent the Obligations have been fully and indefeasibly paid in cash. To the fullest extent permitted by applicable law, each Loan Party Obligor waives any defense arising out of any such election even though that election may operate, pursuant to applicable law, to impair or extinguish any right of reimbursement or subrogation or other right or remedy of any Loan Party Obligor against Borrower or any Obligor or any security.

**12.5.   Rights of Subrogation.** No Loan Party Obligor will assert any right, claim or cause of action, including a claim of subrogation, contribution or indemnification that it has against Borrower or any Obligor, or any Collateral, until the Termination Date.

**12.6.   Reinstatement; Stay of Acceleration.** If at any time any payment of any portion of the Obligations is rescinded or must otherwise be restored or returned upon the insolvency, bankruptcy or reorganization of Borrower or any other Person, or otherwise, each Loan Party Obligor's obligations under this Loan Guaranty with respect to that payment shall be reinstated at such time as though the

payment had not been made and whether or not Lender is in possession of this Loan Guaranty. If acceleration of the time for payment of any of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of Borrower, all such amounts otherwise subject to acceleration under the terms of any agreement relating to the Obligations shall nonetheless be payable by the Loan Party Obligors forthwith on demand by Lender. This Section 12.6 shall remain operative even after the Termination Date and shall survive the payment in full of all of the Obligations.

**12.7. Information.** Each Loan Party Obligor assumes all responsibility for being and keeping itself informed of Borrower's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Obligations and the nature, scope and extent of the risks that each Loan Party Obligor assumes and incurs under this Loan Guaranty, and agrees that Lender shall not have any duty to advise any Loan Party Obligor of information known to it regarding those circumstances or risks.

**12.8. Termination.** To the maximum extent permitted by law, each Loan Party Obligor hereby waives any right to revoke this Loan Guaranty as to future Obligations. If such a revocation is effective notwithstanding the foregoing waiver, each Loan Party Obligor acknowledges and agrees that (a) no such revocation shall be effective until written notice thereof has been received by Lender, (b) no such revocation shall apply to any Obligations in existence on the date of receipt by Lender of such written notice (including any subsequent continuation, extension, or renewal thereof, or change in the interest rate, payment terms or other terms and conditions thereof), (c) no such revocation shall apply to any Obligations made or created after such date to the extent made or created pursuant to a legally binding commitment of Lender, (d) no payment by Borrower, any other Loan Party Obligor, or from any other source, prior to the date of Lender's receipt of written notice of such revocation shall reduce the maximum obligation of any Loan Party Obligor hereunder and (e) any payment, by Borrower or from any source other than a Loan Party Obligor which has made such a revocation, made subsequent to the date of such revocation, shall first be applied to that portion of the Obligations as to which the revocation is effective and which are not, therefore, guarantied hereunder, and to the extent so applied shall not reduce the maximum obligation of any Loan Party Obligor hereunder.

**12.9. Maximum Liability.** The provisions of this Loan Guaranty are severable, and in any action or proceeding involving any state corporate law, or any state, federal or foreign bankruptcy, insolvency, reorganization or other law affecting the rights of creditors generally, if the obligations of any Loan Party Obligor under this Loan Guaranty would otherwise be held or determined to be avoidable, invalid or unenforceable on account of the amount of such Loan Party Obligor's liability under this Loan Guaranty, then, notwithstanding any other provision of this Loan Guaranty to the contrary, the amount of such liability shall, without any further action by the Loan Party Obligors or Lender, be automatically limited and reduced to the highest amount that is valid and enforceable as determined in such action or proceeding (such highest amount determined hereunder being the relevant Loan Party Obligor's *"Maximum Liability"*). This Section 12.09 with respect to the Maximum Liability of each Loan Party Obligor is intended solely to preserve the rights of Lender to the maximum extent not subject to avoidance under applicable law, and no Loan Party Obligor or any other Person shall have any right or claim under this Section with respect to such Maximum Liability, except to the extent necessary so that the obligations of any Loan Party Obligor hereunder shall not be rendered voidable under applicable law. Each Loan Party Obligor agrees that the Obligations may at any time and from time to time exceed the Maximum Liability of each Loan Party Obligor without impairing this Loan Guaranty or affecting the rights and remedies of Lender hereunder; *provided,* that nothing in this sentence shall be construed to increase any Loan Party Obligor's obligations hereunder beyond its Maximum Liability.

**12.10. Contribution.** In the event any Loan Party Obligor shall make any payment or payments under this Loan Guaranty or shall suffer any loss as a result of any realization upon any collateral granted by it to secure its obligations under this Loan Guaranty (such Loan Party Obligor a *"Paying Guarantor"*), each other Loan Party Obligor (each a *"Non-Paying Guarantor"*) shall contribute to such Paying

Guarantor an amount equal to such Non-Paying Guarantor's *"Applicable Percentage"* of such payment or payments made, or losses suffered, by such Paying Guarantor. For purposes of this Section 12.10, each Non-Paying Guarantor's *"Applicable Percentage"* with respect to any such payment or loss by a Paying Guarantor shall be determined as of the date on which such payment or loss was made by reference to the ratio of (x) such Non-Paying Guarantor's Maximum Liability as of such date (without giving effect to any right to receive, or obligation to make, any contribution hereunder) or, if such Non-Paying Guarantor's Maximum Liability has not been determined, the aggregate amount of all monies received by such Non-Paying Guarantor from Borrower after the date hereof (whether by loan, capital infusion or by other means) to (y) the aggregate Maximum Liability of all Loan Party Obligors hereunder (including such Paying Guarantor) as of such date (without giving effect to any right to receive, or obligation to make, any contribution hereunder), or to the extent that a Maximum Liability has not been determined for any Loan Party Obligor, the aggregate amount of all monies received by such Loan Party Obligors from Borrower after the date hereof (whether by loan, capital infusion or by other means). Nothing in this provision shall affect any Loan Party Obligor's several liability for the entire amount of the Obligations (up to such Loan Party Obligor's Maximum Liability). Each of the Loan Party Obligors covenants and agrees that its right to receive any contribution under this Loan Guaranty from a Non-Paying Guarantor shall be subordinate and junior in right of payment to the payment in full in cash of all of the Obligations. This provision is for the benefit of Lender and the Loan Party Obligors and may be enforced by any one, or more, or all of them, in accordance with the terms hereof.

**12.11. Liability Cumulative.** The liability of each Loan Party Obligor under this Section 12 is in addition to and shall be cumulative with all liabilities of each Loan Party Obligor to Lender under this Agreement and the other Loan Documents to which such Loan Party Obligor is a party or in respect of any obligations or liabilities of the other Loan Parties, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

## 13. PAYMENTS FREE OF TAXES; OBLIGATION TO WITHHOLD; PAYMENTS ON ACCOUNT OF TAXES.

(a) Any and all payments by or on account of any obligation of the Loan Party Obligors hereunder or under any other Loan Document shall to the extent permitted by applicable laws be made free and clear of and without reduction or withholding for any Taxes. If, however, applicable laws require the Loan Party Obligors to withhold or deduct any Tax, such Tax shall be withheld or deducted in accordance with such laws as the case may be, upon the basis of the information and documentation to be delivered pursuant to subsection (e) below.

(b) If any Loan Party Obligor shall be required by applicable law to withhold or deduct any Taxes from any payment, then (i) such Loan Party Obligor shall withhold or make such deductions as are required based upon the information and documentation it has received pursuant to subsection (e) below, (ii) such Loan Party Obligor shall timely pay the full amount withheld or deducted to the relevant Governmental Authority in accordance with the applicable law and (iii) to the extent that the withholding or deduction is made on account of Indemnified Taxes, the sum payable by the Loan Party Obligors shall be increased as necessary so that after any required withholding or the making of all required deductions (including deductions applicable to additional sums payable under this Section) the Recipient receives an amount equal to the sum it would have received had no such withholding or deduction been made. Upon request by Lender or other Recipient, Borrower shall deliver to Lender or such other Recipient, as the case may be, the original or a certified copy of a receipt issued by such Governmental Authority evidencing such payment of Indemnified Taxes, a copy of any return required by applicable law to report such payment or other evidence of such payment reasonably satisfactory to Lender or such other Recipient, as the case may be.

(c)      Without limiting the provisions of subsections (a) and (b) above, the Loan Party Obligors shall timely pay any Other Taxes to the relevant Governmental Authority in accordance with applicable law.

(d)      Without limiting the provisions of subsections (a) through (c) above, each Loan Party Obligor shall, and does hereby, on a joint and several basis, indemnify Lender and each other Recipient (and their respective directors, officers, employees, affiliates and agents) and shall make payment in respect thereof within ten days after demand therefor, for the full amount of any Indemnified Taxes and Other Taxes (including Indemnified Taxes and Other Taxes imposed or asserted on or attributable to amounts payable under this Section) paid or incurred by Lender or any other Recipient on account of, or in connection with any Loan Document or a breach by a Loan Party Obligor thereof, and any penalties, interest and related expenses and losses arising therefrom or with respect thereto (including the fees, charges and disbursements of any counsel or other tax advisor for Lender or any other Recipient (or their respective directors, officers, employees, affiliates, and agents)), whether or not such Indemnified Taxes or Other Taxes were correctly or legally imposed or asserted by the relevant Governmental Authority. A certificate as to the amount of any such payment or liability delivered to Borrower shall be conclusive absent manifest error. Notwithstanding any provision in this Agreement to the contrary, this Section 13 shall remain operative even after the Termination Date and shall survive the payment in full of all of the Obligations.

(e)      Lender shall deliver to Borrower and each Participant shall deliver to Lender, at the time or times prescribed by applicable laws, such properly completed and executed documentation prescribed by applicable laws or by the taxing authorities of any jurisdiction and such other reasonably requested information as will permit Borrower or Lender, as the case may be, to determine (x) whether or not payments made hereunder or under any other Loan Document are subject to Taxes, (y) if applicable, the required rate of withholding or deduction and (z) such Lender's or Participant's entitlement to any available exemption from, or reduction of, applicable Taxes in respect of all payments to be made to such Recipient by the Loan Party Obligors pursuant to this Agreement or otherwise to establish such Recipient's status for withholding tax purposes in the applicable jurisdiction; *provided,* that each Recipient shall only be required to deliver such documentation as it may legally provide. Without limiting the generality of the foregoing, if a Borrower is resident for tax purposes in the United States:

(i)      Lender (or Participant) that is a *"United States person"* within the meaning of Section 7701(a)(30) of the Code shall deliver to Borrower (or Lender granting a participation as applicable) an executed original of Internal Revenue Service Form W-9 or such other documentation or information prescribed by applicable law or reasonably requested by Borrower (or Lender granting a participation) as will enable Borrower (or Lender granting a participation) as the case may be, to determine whether or not Lender (or Participant) is subject to backup withholding or information reporting requirements under the Code;

(ii)      Lender (or Participant) that is not a *"United States person"* within the meaning of Section 7701(a)(30) of the Code (a *"Non-U.S. Recipient"*) shall deliver to Borrower (and Lender granting a participation in case the Non-U.S. Recipient is a Participant) on or prior to the date on which such Non-U.S. Person becomes a party to this Agreement or a Participant (and from time to time thereafter upon the reasonable request of Borrower or Lender but only if such Non-U.S. Recipient is legally entitled to do so), whichever of the following is applicable: (A) executed originals of Internal Revenue Service Form W-8BEN claiming eligibility for benefits of an income tax treaty to which the United States is a party; (B) executed originals of Internal Revenue Service Form W-8ECI; (C) executed originals of Internal Revenue Service Form W-8IMY and all required supporting documentation; (D) each Non-U.S. Recipient claiming the benefits of the exemption for portfolio interest under section 881(c) of the Code, shall provide (x) a certificate to the effect that such Non-U.S. Recipient is not (1) a *"bank"* within the meaning of

section 881(c)(3)(A) of the Code, (2) a *"10 percent shareholder"* of Borrower within the meaning of section 881(c)(3)(B) of the Code, or (3) a *"controlled foreign corporation"* described in section 881(c)(3)(C) of the Code and (y) executed originals of Internal Revenue Service Form W-8BEN; and/or (E) executed originals of any other form prescribed by applicable law (including FATCA) as a basis for claiming exemption from or a reduction in United States Federal withholding tax together with such supplementary documentation as may be prescribed by applicable law to permit Borrower or Lender to determine the withholding or deduction required to be made. Each Non-U.S. Recipient shall promptly notify Borrower (or any Lender granting a participation if the Non-U.S. Recipient is a Participant) of any change in circumstances which would modify or render invalid any claimed exemption or reduction.

## 14.    GENERAL PROVISIONS.

### 14.1.   Notices.

All notices, requests, demands and other communications under or in respect of this Agreement or any transactions hereunder shall be in writing and shall be personally delivered or mailed (by prepaid registered or certified mail, return receipt requested), sent by prepaid recognized overnight courier service, or by email to the applicable party at its address or email address indicated below,

If to Lender:

EXWORKS CAPITAL FUND I, L.P.
333 W. Wacker Drive, Suite 1620
Chicago, IL 60606
Attention: Robert Richardson
Email: rrichardson@exworkscapital.com

with a copy to:

GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
Attention: Richard Kohn
Email: richard.kohn@goldbergkohn.com

If to Borrower or any other Loan Party:

PENTHOUSE GLOBAL MEDIA, INC.
8944 Mason Street
Chatsworth, CA 91311
Attention: Kelly Holland
Email: chickmedia@gmail.com

with a copy to:

HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Attention: Barry L. Dastin
Email: barry.dastin@hoganlovells.com

or, as to each party, at such other address as shall be designated by such party in a written notice to the other party delivered as aforesaid. All such notices, requests, demands and other communications shall be deemed given (i) when personally delivered, (ii) three Business Days after being deposited in the mails with postage prepaid (by registered or certified mail, return receipt requested), (iii) one Business Day after being delivered to the overnight courier service, if prepaid and sent overnight delivery, addressed as aforesaid and with all charges prepaid or billed to the account of the sender or (iv) when sent by email transmission to an email address designated by such addressee and the sender receives a confirmation of transmission.

**14.2.** **Severability.** If any provision of this Agreement or any other Loan Document is held invalid or unenforceable, either in its entirety or by virtue of its scope or application to given circumstances, such provision shall thereupon be deemed modified only to the extent necessary to render same valid, or not applicable to given circumstances, or excised from this Agreement or such other Loan Document, as the situation may require, and this Agreement and the other Loan Documents shall be construed and enforced as if such provision had been included herein as so modified in scope or application, or had not been included herein or therein, as the case may be.

**14.3.** **Integration.** This Agreement and the other Loan Documents represent the final, entire and complete agreement between each Loan Party party hereto and thereto and Lender and supersede all prior and contemporaneous negotiations, oral representations and agreements, all of which are merged and integrated into this Agreement. THERE ARE NO ORAL UNDERSTANDINGS, REPRESENTATIONS OR AGREEMENTS BETWEEN THE PARTIES THAT ARE NOT SET FORTH IN THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS.

**14.4.** **Waivers.** The failure of Lender at any time or times to require any Loan Party to strictly comply with any of the provisions of this Agreement or any other Loan Documents shall not waive or diminish any right of Lender later to demand and receive strict compliance therewith. Any waiver of any default shall not waive or affect any other default, whether prior or subsequent, and whether or not similar. None of the provisions of this Agreement or any other Loan Document shall be deemed to have been waived by any act or knowledge of Lender or its agents or employees, but only by a specific written waiver signed by an authorized officer of Lender and delivered to Borrower. Once an Event of Default shall have occurred, it shall be deemed to continue to exist and not be cured or waived unless specifically waived in writing by an authorized officer of Lender and delivered to Borrower. Each Loan Party Obligor waives demand, protest, notice of protest and notice of default or dishonor, notice of payment and nonpayment, release, compromise, settlement, extension or renewal of any commercial paper, Instrument, Account, General Intangible, Document, Chattel Paper, Investment Property or guaranty at any time held by Lender on which such Loan Party Obligor is or may in any way be liable, and notice of any action taken by Lender, unless expressly required by this Agreement, and notice of acceptance hereof.

**14.5.** **Amendment.** This Agreement may not be amended or modified except in a writing executed by Borrower, the Loan Party Obligors party hereto (to the extent such amendment is directly adverse to such Loan Party Obligor), and Lender.

**14.6.** **Time of Essence.** Time is of the essence in the performance by each Loan Party Obligor of each and every obligation under this Agreement and the other Loan Documents.

**14.7.** **Expenses, Fee and Costs Reimbursement.** Borrower hereby agrees to promptly pay (a) all reasonable, documented out of pocket costs and expenses of Lender (including the out of pocket fees, costs and expenses of legal counsel to, and appraisers, accountants, consultants and other professionals and advisors retained by or on behalf of, Lender) in connection with (i) all loan proposals and commitments pertaining to the transactions contemplated hereby (whether or not such transactions are consummated), (ii) the examination, review, due diligence investigation, documentation, negotiation, and closing of the transactions contemplated by the Loan Documents (whether or not such transactions are

consummated), (iii) the creation, perfection and maintenance of Liens pursuant to the Loan Documents, (iv) the performance by Lender of its rights and remedies under the Loan Documents, (v) the administration of the Loans (including usual and customary fees for wire transfers and other transfers or payments received by Lender on account of any of the Obligations) and Loan Documents, (vi) any amendments, modifications, consents and waivers to and/or under any and all Loan Documents (whether or not such amendments, modifications, consents or waivers are consummated), (vii) any periodic public record searches conducted by or at the request of Lender (including, title investigations and public records searches), pending litigation and tax lien searches and searches of applicable corporate, limited liability company, partnership and related records concerning the continued existence, organization and good standing of certain Persons), (viii) protecting, storing, insuring, handling, maintaining, auditing, examining, valuing or selling any Collateral, (ix) any litigation, dispute, suit or proceeding relating to any Loan Document and (x) any workout, collection, bankruptcy, insolvency and other enforcement proceedings under any and all of the Loan Documents (it being agreed that such costs and expenses may include the costs and expenses of workout consultants, investment bankers, financial consultants, appraisers, valuation firms and other professionals and advisors retained by or on behalf of Lender), and (b) without limiting the preceding clause (a), all out of pocket costs and expenses of Lender in connection with Lender's reservation of funds in anticipation of the funding of the initial Loans to be made hereunder. Any fees, costs and expenses owing by Borrower or other Loan Party Obligor hereunder shall be due and payable within three days after written demand therefor.

**14.8.   Benefit of Agreement; Assignability.**   The provisions of this Agreement shall be binding upon and inure to the benefit of the respective successors, assigns, heirs, beneficiaries and representatives of Borrower, each other Loan Party Obligor party hereto and Lender; *provided,* that neither Borrower nor any other Loan Party Obligor may assign or transfer any of its rights under this Agreement without the prior written consent of Lender, and any prohibited assignment shall be void. No consent by Lender to any assignment shall release any Loan Party Obligor from its liability for any of the Obligations. Lender shall have the right to assign all or any of its rights and obligations under the Loan Documents to one or more other Persons (provided, that, so long as no Event of Default under Section 11.1(a), (g) or (h) has occurred, no such assignee shall be a direct competitor of any Loan Party), and each Loan Party Obligor agrees to execute all agreements, instruments and documents requested by Lender in connection with each such assignments. Notwithstanding any provision of this Agreement or any other Loan Document to the contrary, Lender may at any time pledge or grant a security interest in all or any portion of its rights under this Agreement and the other Loan Documents to secure any obligations of Lender, including any pledge or grant to secure obligations to a Federal Reserve Bank.

**14.9.   Recordation of Assignment.**   In respect of any assignment of all or any portion of any Lender's interest in this Agreement or any other Loan Documents at any time and from time to time, the following provisions shall be applicable:

(a)   Borrower, or any agent appointed by Borrower, shall maintain a register (the *"Register"*) in which there shall be recorded the name and address of each Person holding any Loans or any commitment to lend hereunder, and the principal amount and stated interest payable to such Person hereunder or committed by such Person under such Person's lending commitment. Borrower hereby irrevocably appoints Lender (and/or any subsequent Lender appointed by Lender then maintaining the Register) as Borrower's non-fiduciary agent for the purpose of maintaining the Register.

(b)   In connection with any negotiation, transfer or assignment as aforesaid, the transferor/assignor shall deliver to Lender then maintaining the Register an assignment and assumption agreement executed by the transferor/assignor and the transferee/assignee, setting forth the specifics of the subject transaction, including the amount and nature of Obligations and lending commitments being transferred or assigned (and being assumed, as applicable), and the proposed effective date of such transfer or assignment and the related assumption (if applicable).

(c)     Subject to receipt of any required tax forms reasonably required by Lender, such Person shall record the subject transfer, assignment and assumption in the Register. Anything contained in this Agreement or other Loan Document to the contrary notwithstanding, no negotiation, transfer or assignment shall be effective until it is recorded in the Register pursuant to this Section 14.9(c). The entries in the Register shall be conclusive and binding for all purposes, absent manifest error; and Borrower and each Lender shall treat each Person whose name is recorded in the Register as a Lender hereunder for all purposes of this Agreement and the other Loan Documents. The Register shall be available for inspection by Borrower and each Lender at any reasonable time and from time to time upon reasonable prior notice.

**14.10. Participations.** Anything in this Agreement or any other Loan Document to the contrary notwithstanding, Lender may, at any time and from time to time, without in any manner affecting or impairing the validity of any Obligations, sell to one or more Persons (provided, that, so long as no Event of Default under Section 11.1(a), (g) or (h) has occurred, no such participant shall be a direct competitor of any Loan Party) participating interests in its Loans, commitments or other interests hereunder or under any other Loan Document (any such Person, a *"Participant"*). In the event of a sale by Lender of a participating interest to a Participant, (a) such Lender's obligations hereunder and under the other Loan Documents shall remain unchanged for all purposes, (b) Borrower and Lender shall continue to deal solely and directly with each other in connection with Lender's rights and obligations hereunder and under the other Loan Documents and (c) all amounts payable by Borrower shall be determined as if Lender had not sold such participation and shall be paid directly to Lender; *provided,* that a Participant shall be entitled to the benefits of Section 13 as if it were a Lender if Borrower is notified of the Participation and the Participant complies with Section 13. Borrower agrees that if amounts outstanding under this Agreement or any other Loan Document are due and payable (as a result of acceleration or otherwise), each Participant shall be deemed to have the right of set-off in respect of its participating interest in amounts owing under this Agreement and the other Loan Documents to the same extent as if the amount of its participating interest were owing directly to it as a Lender under this Agreement; *provided,* that such right of set-off shall not be exercised without the prior written consent of Lender and shall be subject to the obligation of each Participant to share with Lender its share thereof. Borrower also agrees that each Participant shall be entitled to the benefits of Section 14.9 as if it were Lender. Notwithstanding the granting of any such participating interests, (i) Borrower shall look solely to Lender for all purposes of this Agreement, the Loan Documents and the transactions contemplated hereby, (ii) Borrower shall at all times have the right to rely upon any amendments, waivers or consents signed by Lender as being binding upon all of the Participants and (iii) all communications in respect of this Agreement and such transactions shall remain solely between Borrower and Lender (exclusive of Participants) hereunder. If Lender grants a participation hereunder, Lender shall maintain, as a non-fiduciary agent of Borrower, a register as to the participations granted and transferred under this Section containing the same information specified in Section 14.9 on the Register as if each Participant were a Lender to the extent required to cause the Loans to be in registered form for the purposes of Sections 163(F), 165(J), 871, 881, and 4701 of the Code.

**14.11. Headings; Construction.** Section and subsection headings are used in this Agreement only for convenience and do not affect the meanings of the provisions that they precede. The existence of any covenant or required delivery set forth herein that takes place after the Scheduled Maturity Date shall not be construed to imply any intent to extend the Scheduled Maturity Date set forth herein.

**14.12. USA PATRIOT Act Notification.** Lender hereby notifies the Loan Parties that pursuant to the requirements of the USA PATRIOT Act, it may be required to obtain, verify and record certain information and documentation that identifies such Person, which information may include the name and address of each such Person and such other information that will allow Lender to identify such Persons in accordance with the USA PATRIOT Act.

**14.13. Counterparts; Fax/Email Signatures.** This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same agreement. This Agreement may be executed by signatures delivered by facsimile or electronic mail, each of which shall be fully binding on the signing party.

**14.14. GOVERNING LAW.** THIS AGREEMENT, ALONG WITH ALL OTHER LOAN DOCUMENTS (UNLESS EXPRESSLY PROVIDED OTHERWISE IN SUCH OTHER LOAN DOCUMENT) SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF ILLINOIS APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED THEREIN WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES. FURTHER, THE LAW OF THE STATE OF ILLINOIS SHALL APPLY TO ALL DISPUTES OR CONTROVERSIES ARISING OUT OF OR CONNECTED TO OR WITH THIS AGREEMENT AND ALL SUCH OTHER LOAN DOCUMENTS WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES.

**14.15. CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL; CONSENT TO SERVICE OF PROCESS.** ANY LEGAL ACTION, SUIT OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT SHALL BE BROUGHT EXCLUSIVELY IN THE COURTS OF THE STATE OF ILLINOIS IN THE COUNTY OF COOK OR IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS OR IN ANY OTHER COURT (IN ANY JURISDICTION) SELECTED BY THE LENDER IN ITS SOLE DISCRETION, AND BORROWER AND EACH OTHER LOAN PARTY OBLIGOR HEREBY ACCEPTS FOR ITSELF AND IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFOREMENTIONED COURTS. BORROWER AND EACH OTHER LOAN PARTY OBLIGOR HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION, INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS, OR BASED ON 28 U.S.C. § 1404, WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING AND ADJUDICATION OF ANY SUCH ACTION, SUIT OR PROCEEDING IN ANY OF THE AFOREMENTIONED COURTS AND AMENDMENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT. BORROWER AND EACH OTHER LOAN PARTY OBLIGOR HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR UNDER ANY AMENDMENT, WAIVER, AMENDMENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY FINANCING RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE OTHER TRANSACTION DOCUMENTS, AND AGREES THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. BORROWER AND EACH OTHER LOAN PARTY OBLIGOR HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON BORROWER OR ANY OTHER LOAN PARTY OBLIGOR AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED MAIL (RETURN RECEIPT REQUESTED) DIRECTED TO BORROWER'S NOTICE ADDRESS (ON BEHALF OF BORROWER OR SUCH LOAN PARTY OBLIGOR) SET FORTH IN SECTION 14.1 AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED FIVE DAYS AFTER THE SAME SHALL HAVE BEEN SO DEPOSITED IN THE MAIL, OR, AT THE LENDER'S OPTION, BY SERVICE UPON BORROWER OR ANY OTHER LOAN PARTY OBLIGOR IN ANY OTHER MANNER PROVIDED UNDER THE RULES OF ANY SUCH COURTS.

**14.16. Publication.** Borrower and each other Loan Party Obligor consents to the publication by Lender of a tombstone, press releases or similar advertising material relating to the financing transactions

contemplated by this Agreement, and Lender reserves the right to provide to industry trade organizations information necessary and customary for inclusion in league table measurements.

**14.17. Confidentiality.** Lender agrees to use commercially reasonable efforts not to disclose Confidential Information to any Person without the prior consent of Borrower; *provided*, that nothing herein contained shall limit any disclosure of the tax structure of the transactions contemplated hereby, or the disclosure of any information (a) to the extent required by applicable law, statute, rule, regulation or judicial process or in connection with the exercise of any right or remedy under any Loan Document, or as may be required in connection with the examination, audit or similar investigation of the Lender or any of its Affiliates, (b) to examiners, auditors, accountants or any regulatory authority, (c) to the officers, partners, managers, directors, employees, agents and advisors (including independent auditors, lawyers and counsel) of the Lender or any of its Affiliates, (d) in connection with any litigation or dispute which relates to this Agreement or any other Loan Document to which the Lender is a party or is otherwise subject, (e) to a subsidiary or Affiliate of the Lender, (f) to any assignee or participant (or prospective assignee or participant) which agrees to be bound by this Section 14.17 and (g) to any lender or other funding source of the Lender (each reference to Lender in the foregoing clauses shall be deemed to include (i) the actual and prospective assignees and participants referred to in clause (f) and the lenders and other funding sources referred to in clause (g), as applicable for purposes of this Section 14.17), and further *provided*, that in no event shall Lender be obligated or required to return any materials furnished by or on behalf of Borrower or any other Loan Party or Obligor. The obligations of the Lender under this Section 14.17 shall supersede and replace the obligations of Lender under any confidentiality letter or provision in respect of this financing or any other financing previously signed and delivered by Lender to Borrower or any of its Affiliates.

**[Signature page follows]**

IN WITNESS WHEREOF, Borrower, each other Loan Party Obligor party hereto, and Lender have signed this Agreement as of the date first set forth above.

**Borrower:**

PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation

By: _____
Name: _____
Title: _CEO_

**Loan Party Obligors:**

GMCI INTERNET OPERATIONS, INC.

By: _____
Name: _____
Title: _CEO_

GMI ON-LINE VENTURES, LTD.

By: _____
Name: _____
Title: _CEO_

GENERAL MEDIA COMMUNICATIONS, INC.

By: _____
Name: _____
Title: _CEO_

GENERAL MEDIA ENTERTAINMENT, INC.

By: _____
Name: _____
Title: _CEO_

PMGI HOLDINGS INC.

By: _____
Name: _____
Title: _CEO_

PENTHOUSE DIGITAL MEDIA PRODUCTIONS INC.

By:
Name: Kelly Holland
Title: CEO

PENTHOUSE IMAGES ACQUISITIONS, LTD.

By:
Name: Kelly Holland
Title: CEO

PURE ENTERTAINMENT TELECOMMUNICATIONS, INC.

By:
Name: Kelly Holland
Title: CEO

XVHUB GROUP INC.

By:
Name: Kelly Holland
Title: CEO

DANNI ASHE, INC.

By:
Name: Kelly Holland
Title: CEO

STREAMRAY STUDIOS INC.

By:
Name: Kelly Holland
Title: CEO

TAN DOOR MEDIA INC.

By:
Name: Kelly Holland
Title: CEO

**Lender:**

**EXWORKS CAPITAL FUND I, L.P.**

By: _____

Name: Robert Richardson

Its:   Authorized Signatory

# EXHIBIT "D"

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| GISELLA MELENDES 800-331-3282 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| KFILING@WOLTERSKLUWER.COM |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

P.O. BOX 29071
GLENDALE, CA 91209-9071
US

Delaware Department of State
U.C.C. Filing Section
Filed: 04:43 PM 07/19/2016
U.C.C. Initial Filing No: 2016 1015641

Service Request No: 20160969556

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PENTHOUSE GLOBAL MEDIA, INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8944 MASON AVENUE | CHATSWORTH | CA | 91311 | US |

2. DEBTOR'S NAME Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| EXPRESS CAPITAL FUND I, L.P. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 333 W. WACKER DRIVE, SUITE 1620 | CHICAGO | IL | 60606 | US |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
|---|

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable) ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DR-0-52610409-51137061

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 167510394703
File Date  : 19-Feb-2016

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   23577 - GOLDBERG

```
CT Lien Solutions                  52611229
P.O. Box 29071
Glendale, CA  91209-9071           CALI
```

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| DANNI ASHE, INC. | | | | |

| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8944 Mason Avenue | Chatsworth | CA | 91311 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ExWorks Capital Fund I, L.P. | | | | |

| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 333 W. Wacker Drive, Suite 1620 | Chicago | IL | 60606 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
52611229        7467.002 (23577)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)** 23577 - GOLDBERG KOHN

CT Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

52611144

NYNY

File with: Secretary of State, NY

CT Lien Solutions
Representation of filing

This filing is Completed
File Number : 201602195202772
File Date  : 19-Feb-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| GMCI INTERNET OPERATIONS, INC. | | | | | |

| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 8944 Mason Avenue | | Chatsworth | CA | 91311 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | CORPORATION | NY | | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |

| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| | | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ExWorks Capital Fund I, L.P. | | | | | |

| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 333 W. Wacker Drive, Suite 1620 | | Chicago | IL | 60606 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**
All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | | ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 | |

**8. OPTIONAL FILER REFERENCE DATA**
52611144     7467.002 (23577)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)  (REV 05/22/02)

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
GISELLA MELENDEZ 800-331-3282

B. E-MAIL CONTACT AT FILER (optional)
EFILING@HOLDERRELOWER.COM

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

P.O. BOX 29071
GLENDALE, CA 91209-9071
US

Delaware Department of State
U.C.C. Filing Section
Filed: 04:45 PM 02/19/2016
U.C.C. Initial Filing No: 2016 1015732

Service Request No: 20160969649

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| GMI ON-LINE VENTURES, LTD. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8944 MASON AVENUE | CHATSWORTH | CA | 91311 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2b. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| EXPRESS CAPITAL FUND I, L.P. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 333 N. WACKER DRIVE, SUITE 1620 | CHICAGO | IL | 60606 | US |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

5. Check only if applicable and check only one box. Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
DE-0-52510445-51137082

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
| --- |
| Phone: (800) 331-3282 Fax: (818) 662-4141 |

B. SEND ACKNOWLEDGMENT TO (Name and Address)    23577 - GOLDBERG KOHN

```
CT Lien Solutions
P.O. Box 29071                     52611101
Glendale, CA 91209-9071             NYNY
```

File with: Secretary of State, NY

CT Lien Solutions
Representation of filing

This filing is Completed
File Number : 201602195202722
File Date  : 19-Feb-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
| --- | --- | --- | --- | --- | --- |
| General Media Communications, Inc. | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | | |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 8944 Mason Avenue | | Chatsworth | CA | 91311 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
| --- | --- | --- | --- | --- | --- |
| | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | | |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | | |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
| --- | --- | --- | --- | --- | --- |
| ExWorks Capital Fund I, L.P. | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | | | | | |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 333 W. Wacker Drive, Suite 1620 | | Chicago | IL | 60606 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
| --- | --- | --- | --- | --- | --- | --- |
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   (if applicable) | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
52611101           7467.002 (23577)

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)   (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

CT Lien Solutions
Representation of filing

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone: (800) 331-3262 Fax: (818) 662-4141

B. SEND ACKNOWLEDGMENT TO (Name and Address)    23577 - GOLDBERG KOHN

This filing is Completed
File Number : 201602195202784
File Date : 19-Feb-2016

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

52611125

NYNY

File with: Secretary of State, NY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME  General Media Entertainment, Inc. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS  8944 Mason Avenue | CITY  Chatsworth | STATE  CA | POSTAL CODE  91311 | COUNTRY  USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION  CORPORATION | 1f. JURISDICTION OF ORGANIZATION  NY | 1g. ORGANIZATIONAL ID #, if any  ☒ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any  ☐ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME  ExWorks Capital Fund I, L.P. | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS  333 W. Wacker Drive, Suite 1620 | CITY  Chicago | STATE  IL | POSTAL CODE  60606 | COUNTRY  USA |

4. This FINANCING STATEMENT covers the following collateral:
All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum    [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 | |

8. OPTIONAL FILER REFERENCE DATA
52611125        7467.002 (23577)

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
GISELLA MELENDEZ 800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**
EFILING@WOLTERSKLUWER.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

P.O. BOX 29071

GLENDALE, CA 91209-9071

US

Delaware Department of State
U.C.C. Filing Section
Filed: 04:45 PM 02/19/2016
U.C.C. Initial Filing No: 2016 1015708

Service Request No:  20160969644

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| BMGE HOLDINGS INC. | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 8944 MASON AVENUE | CHATSWORTH | | CA | 91311 | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 2b. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| | | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)  Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| EXPRESS CAPITAL FUND I, L.P. | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 333 W. WACKER DRIVE, SUITE 1620 | CHICAGO | | IL | 60606 | US |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or
arising, together with all proceeds thereof.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:   ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility   **6b.** Check only if applicable and check only one box   ☐ Agricultural Lien   ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):**   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
EK-0-52610948-51137094

International Association of Commercial Administrators

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)** 23577 - GOLDBERG KOHN

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

52611166

NYNY

File with: Secretary of State, NY

CT Lien Solutions
Representation of filing

This filing is Completed
File Number : 201602195202760
File Date : 19-Feb-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| PENTHOUSE DIGITAL MEDIA PRODUCTIONS INC. | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 8944 Mason Avenue | | Chatsworth | CA | 91311 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | NY | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ExWorks Capital Fund I, L.P. | | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|---|

| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|
| 333 W. Wacker Drive, Suite 1620 | | Chicago | IL | 60606 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
52611168                    7467.002 (23577)

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)  (REV. 05/22/02)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| Phone: (800) 331-3282 Fax: (818) 562-4141 |

| B. SEND ACKNOWLEDGMENT TO: (Name and Address)    23577 - GOLDBERG KOHN |
|---|

```
CT Lien Solutions
P.O. Box 29071                    52611195
Glendale, CA  91209-9071         NYNY
```

File with: Secretary of State, NY

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 201502195202809
File Date  : 19-Feb-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | Penthouse Images Acquisitions, Ltd. | | | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8944 Mason Avenue | Chatsworth | CA | 91311 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | NY | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | | | | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | ExWorks Capital Fund I, L.P. | | | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 333 W. Wacker Drive, Suite 1620 | Chicago | IL | 60606 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

52611195        7467.002 (23577)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| Phone: (800) 331-3282 Fax: (818) 662-4141 |

B. SEND ACKNOWLEDGMENT TO: (Name and Address)    23577 - GOLDBERG KOHN

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

52611210

NYNY

File with: Secretary of State, NY

CT Lien Solutions
Representation of filing

This filing is Completed
File Number : 201602195202796
File Date : 19-Feb-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| Pure Entertainment Telecommunications, Inc. | | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | | COUNTRY |
| 8944 Mason Avenue | | Chatsworth | CA | 91311 | | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any | | ☒ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| ExWorks Capital Fund I, L.P. | | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | | COUNTRY |
| 333 W. Wacker Drive, Suite 1620 | | Chicago | IL | 60606 | | USA |

4. This FINANCING STATEMENT covers the following collateral:

All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

52611210        7467.002 (23577)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1)  (REV 05/22/02)

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 23577 - GOLDBERG

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

52611244

CALI

File with: Secretary of State, CA

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 167510398242
File Date   : 19-Feb-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| STREAMRAY STUDIOS INC. | | | | |

| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8944 Mason Avenue | Chatsworth | CA | 91311 | USA |

2. **DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| ExWorks Capital Fund I, L.P. | | | | |

| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 333 W. Wacker Drive, Suite 1620 | Chicago | IL | 60606 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:

All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
52611244          7467.002 (23577)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

CT Lien Solutions
Representation of filing

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**This filing is Completed**
File Number : 167510398505
File Date : 19-Feb-2016

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**    23577 - GOLDBERG

┌ CT Lien Solutions
  P.O. Box 29071
  Glendale, CA  91209-9071

52611258

CALI

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| TAN DOOR MEDIA INC. | | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8944 Mason Avenue | Chatsworth | CA | 91311 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| ExWorks Capital Fund I, L.P. | | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|---|
| | | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 333 W. Wacker Drive, Suite 1620 | Chicago | IL | 60606 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor, wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
52611258          7467.002 (23577)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

# EXHIBIT "E"

▮▮▮▮▮
▮▮▮▮▮
▮▮▮▮▮

## UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
STEPHEN A. WEISS 310-400-0110

**B. E-MAIL CONTACT AT FILER** (optional)
SWEISS@CKRLAW.COM

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

┌ 1800 CENTURY PARK EAST                    ┐
  14TH FLOOR
  LOS ANGELES, CALIFORNIA 90067

└                                            ┘

Delaware Department of State
U.C.C. Filing Section
Filed: 01:08 PM 11/22/2017
U.C.C. Initial Filing No: 2016 1015641
Amendment No: 2017 7764311
Service Request No: 20177214299

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20161015641 (filed 02/19/2016)

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                                    **AND** Check one of these three boxes to:
This Change effects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DREAM MEDIA CORPORATION | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10990 Wilshire Boulevard, Penthouse | Los Angeles | CA | 90036 | US |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Filed with Delaware Department of State; Debtor: PENTHOUSE GLOBAL MEDIA, INC.

International Association of Commercial Administrators (IACA)
**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
STEPHEN A. WEISS 310-400-0110

**B. E-MAIL CONTACT AT FILER (optional)**
SWEISS@CKRLAW.COM

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

1800 CENTURY PARK EAST
14TH FLOOR
LOS ANGELES, CALIFORNIA 90067

**1776181834**

**11/22/2017 12:35**

**FILED**
CALIFORNIA
SECRETARY OF STATE
$0$

65588070004   UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
16-7510394703 (02/19/2016)

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in Item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in Item 7a or 7b, and address of Assignee in Item 7c and name of Assignor in Item 9
For partial assignment, complete Items 7 and 9 and also indicate affected collateral in Item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check only one of these two boxes:           AND Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record     ☐ CHANGE name and/or address: Complete    ☐ ADD name: Complete item    ☐ DELETE name: Give record name
                                                                Item 6a or 6b; and Item 7a or 7b and Item 7c       7a or 7b, and Item 7c       to be deleted in Item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DREAM MEDIA CORPORATION | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10990 Wilshire Boulevard, Penthouse | Los Angeles | CA | 90035 | US |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:**
Filed with California Secretary of State; Debtor: DANNI ASHE, INC.

UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)



**SECRETARY OF STATE**

**STATE OF CALIFORNIA**

## UCC Amendment Acknowledgement

11/27/2017

Page 1 of 1

| | |
|---|---|
| Filing Fee: | $10.00 |
| Special Handling Fee: | $6.00 |
| Total Fee: | $16.00 |

The California Secretary of State's Office has received and filed your document. The information stated below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Amendment Type: **Assignment**    File Date: 11/22/2017    File Time: **12:35**

Amendment Filing #: **17-76181830**

Original Filing Number: **16-7510398242**    Lapse Date: 02/19/2021

Secured Party(ies):
ORGANIZATION            **DREAM MEDIA CORPORATION**
                        **10990 WILSHIRE BOULEVARD, PENTHOUSE LOS ANGELES**
                        **CA USA 90036**

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC ARTICLE 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

UNIFORM COMMERCIAL CODE E 1500 11TH STREET, 2ND FL · SACRAMENTO, CA 95814 · PO BOX 942835 · SACRAMENTO, CA 94235-0001 · (916) 653-3516 · HTTP://WWW.SOS.CA.GOV

PROGRAMS  ARCHIVES, BUSINESS PROGRAMS, ELECTIONS, INFORMATION TECHNOLOGY, CALIFORNIA STATE HISTORY MUSEUM,
MANAGEMENT SERVICES, SAFE AT HOME, DOMESTIC PARTNERS REGISTER, NOTARY PUBLIC, POLITICAL REFORM

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**1776181830**

**11/22/2017 12:35**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

65586070002  UCC 3 FILING

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
STEPHEN A. WEISS 310-400-0110

**B. E-MAIL CONTACT AT FILER** (optional)
SWEISS@CKRLAW.COM

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

┌
1800 CENTURY PARK EAST
14TH FLOOR
LOS ANGELES, CALIFORNIA 90067
┘

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
16-7510398242 (02/19/2016)

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND    Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DREAM MEDIA CORPORATION | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10990 Wilshire Boulevard, Penthouse | Los Angeles | CA | 90036 | US |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:**
Filed with California Secretary of State; Debtor: STREAMRAY STUDIOS INC.

UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
STEPHEN A. WEISS 310-400-0110

**B. E-MAIL CONTACT AT FILER (optional)**
SWEISS@CKRLAW.COM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**
1800 CENTURY PARK EAST
14TH FLOOR
LOS ANGELES, CALIFORNIA 90067

1776181832
11/22/2017  12:35
FILED
CALIFORNIA
SECRETARY OF STATE
SOS
85586070003  UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
16-7510398505 (02/19/2016)

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**
Check **one** of these two boxes:                    AND Check **one** of these three boxes to:
This Change affects ☐ Debtor **or** ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only **one** name (6a or 6b)

**6a. ORGANIZATION'S NAME**
EXWORKS CAPITAL FUND I, L.P.

OR    **6b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**
DREAM MEDIA CORPORATION

OR    **7b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**7c. MAILING ADDRESS**
10990 Wilshire Boulevard, Penthouse | **CITY** Los Angeles | **STATE** CA | **POSTAL CODE** 90036 | **COUNTRY** US

**8.** ☐ **COLLATERAL CHANGE:** Also check **one** of these four boxes:  ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME**
EXWORKS CAPITAL FUND I, L.P.

OR    **9b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

**10. OPTIONAL FILER REFERENCE DATA:**
Filed with California Secretary of State; Debtor: TAN DOOR MEDIA INC.

UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**STEPHEN A. WEISS 310-400-0110**

B. E-MAIL CONTACT AT FILER (optional)
**SWEISS@CKRLAW.COM**

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ **1800 CENTURY PARK EAST**
**14TH FLOOR**
**LOS ANGELES, CALIFORNIA 90067** ⌐

Delaware Department of State
U.C.C. Filing Section
Filed: 01:12 PM 11/22/2017
U.C.C. Initial Filing No: 2016 1015708
Amendment No: 2017 7764592
Service Request No: 20177214394

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| **20161015708 (filed 02/19/2016)** | (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ **ASSIGNMENT** (full or partial) Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:        AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME |
|---|
| **EXWORKS CAPITAL FUND I, L.P.** |

| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|
| **DREAM MEDIA CORPORATION** |

| OR | 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|---|
| | INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **10990 Wilshire Boulevard, Penthouse** | **Los Angeles** | **CA** | **90036** | **US** |

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral.   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME |
|---|
| **EXWORKS CAPITAL FUND I, L.P.** |

| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| | | | | |

10. OPTIONAL FILER REFERENCE DATA:
**Filed with Delaware Department of State; Debtor: PMGI HOLDINGS INC.**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

11/22/2017   13:01                                    (FAX)845 818 3588          P.003/003

302432                    2017 NOV 22  PM 1:30

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
**STEPHEN A. WEISS** 310-400-0110

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
┌                                        ┐
  1800 CENTURY PARK EAST
  14TH FLOOR
  LOS ANGELES, CALIFORNIA 90067


└                                        ┘
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #<br>2016021952027 22 (02/19/2016) | 1b. This FINANCING STATEMENT AMENDMENT is<br>☐ to be filed [for record] (or recorded) in the<br>REAL ESTATE RECORDS. |
|---|---|

| 2. | ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
|---|---|

| 3. | ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
|---|---|

| 4. | ☑ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9. |
|---|---|

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor _or_ ☐ Secured Party of record. Check only _one_ of these two boxes.
Also check _one_ of the following three boxes _and_ provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable). |
|---|---|---|

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME<br>**EXWORKS CAPITAL FUND I, L.P.** | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME<br>**DREAM MEDIA CORPORATION** | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS<br>10990 Wilshire Boulevard, Penthouse | CITY<br>Los Angeles | STATE<br>CA | POSTAL CODE<br>90036 | COUNTRY<br>US |
|---|---|---|---|---|

| 7d. ADD'L INFO RE<br>ORGANIZATION<br>DEBTOR | 7e. TYPE OF ORGANIZATION<br>Corporation | 7f. JURISDICTION OF ORGANIZATION<br>Delaware | 7g. ORGANIZATIONAL ID #, if any<br>☑ NONE |
|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only _one_ box.
Describe collateral ☐ deleted _or_ ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

| 9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment. | | | |
|---|---|---|---|
| | 9a. ORGANIZATION'S NAME<br>**EXWORKS CAPITAL FUND I, L.P.** | | | |
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
Filed with New York Department of State; Debtor: GENERAL MEDIA COMMUNICATIONS, INC.

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

FILING NUMBER: 201711220572970

11/22/2017    12:57                                    (FAX)845 818 3588                    P.003/003

███████████████
███████████████
███████████████
███████████████

302429                          2017 NOV 22  PM 1:30

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
STEPHEN A. WEISS 310-400-0110

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

    ┌
    1800 CENTURY PARK EAST
    14TH FLOOR
    LOS ANGELES, CALIFORNIA 90067

    └

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 201602195202796 (02/19/2016) | |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable). |
|---|---|---|

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DREAM MEDIA CORPORATION | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10990 Wilshire Boulevard, Penthouse | Los Angeles | CA | 90036 | US |

| 7d. ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | Corporation | Delaware | ☑ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXWORKS CAPITAL FUND I, L.P. | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

10. OPTIONAL FILER REFERENCE DATA
Filed with New York Department of State; Debtor: PURE ENTERTAINMENT TELECOMMUNICATIONS, INC.

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

FILING NUMBER: 201711220572817

11/22/2017    12:58                                    (FAX)845 818 3588                    P.003/003

302430                    2017 NOV 22  PM 1: 30

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
STEPHEN A. WEISS 310-400-0110

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

1800 CENTURY PARK EAST
14TH FLOOR
LOS ANGELES, CALIFORNIA 90067

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
201602195202760 (02/19/2016)

**1b.** This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ **ASSIGNMENT (full or partial):** Give name of assignee in Item 7a or 7b and address of assignee in Item 7c; and also give name of assignor in Item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in Items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.   ☐ DELETE name: Give record name to be deleted in Item 6a or 6b.   ☐ ADD name: Complete Item 7a or 7b, and also Item 7c; also complete Items 7e-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

**6a. ORGANIZATION'S NAME**
EXWORKS CAPITAL FUND I, L.P.

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

**7a. ORGANIZATION'S NAME**
DREAM MEDIA CORPORATION

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 10990 Wilshire Boulevard, Penthouse | Los Angeles | CA | 90036 | US |

| 7d. ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | Corporation | Delaware | ☑ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

8. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**9a. ORGANIZATION'S NAME**
EXWORKS CAPITAL FUND I, L.P.

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. **OPTIONAL FILER REFERENCE DATA**
Filed with New York Department of State; Debtor: PENTHOUSE DIGITAL MEDIA PRODUCTIONS INC.

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

FILING NUMBER:  201711220572843

11/22/2017   13:00                                (FAX)645 818 3588              P.003/003

302431                    2017 NOV 22  PM 1:30

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
STEPHEN A. WEISS 310-400-0110

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

1800 CENTURY PARK EAST
14TH FLOOR
LOS ANGELES, CALIFORNIA 90067

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
201602195202809 (02/19/2016)

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: ...

3. ☐ CONTINUATION: ...

4. ☑ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME
EXWORKS CAPITAL FUND I, L.P.

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME
DREAM MEDIA CORPORATION

7c. MAILING ADDRESS
10990 Wilshire Boulevard, Penthouse   | CITY Los Angeles | STATE CA | POSTAL CODE 90036 | COUNTRY US

Corporation | Delaware | ☑ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT
9a. ORGANIZATION'S NAME
EXWORKS CAPITAL FUND I, L.P.

10. OPTIONAL FILER REFERENCE DATA
Filed with New York Department of State; Debtor: PENTHOUSE IMAGES ACQUISITIONS, LTD.

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

FILING NUMBER: 201711220572906

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**STEPHEN A. WEISS 310-400-0110**

B. E-MAIL CONTACT AT FILER (optional)
**SWEISS@CKRLAW.COM**

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> **1800 CENTURY PARK EAST
> 14TH FLOOR
> LOS ANGELES, CALIFORNIA 90067**

**Delaware Department of State
U.C.C. Filing Section
Filed: 01:14 PM 11/22/2017
U.C.C. Initial Filing No: 2017 1567103
Amendment No: 2017 7764709
Service Request No:  20177214476**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
**20171567103 (filed 03/09/2017)**

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ **ASSIGNMENT** (full or partial)  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address  Complete item 6a or 6b; and item 7a or 7b and item 7c

☐ ADD name. Complete item 7a or 7b, and item 7c

☐ DELETE name. Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME
**EXWORKS CAPITAL FUND I, L.P.**

| OR | 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|----|--------------------------|---------------------|-------------------------------|--------|
|    |                          |                     |                               |        |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
**DREAM MEDIA CORPORATION**

| OR | 7b. INDIVIDUAL'S SURNAME |
|----|--------------------------|
|    | INDIVIDUAL'S FIRST PERSONAL NAME |
|    | INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| **10990 Wilshire Boulevard, Penthouse** | **Los Angeles** | **CA** | **90036** | **US** |

8. ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes.   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

9. NAME of SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
**EXWORKS CAPITAL FUND I, L.P.**

| OR | 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|----|--------------------------|---------------------|-------------------------------|--------|
|    |                          |                     |                               |        |

10. OPTIONAL FILER REFERENCE DATA:
**Filed with Delaware Department of State; Debtor: PENTHOUSE GLOBAL LICENSING, INC.**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# EXHIBIT "F"



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

FEBRUARY 23, 2016

PTAS

NANCY BROUGHER, PARALEGAL
GOLDBERG KOHN LTD.
55 EAST MONROE STREET, SUITE 3300
CHICAGO, IL 60603

# 900354921

UNITED STATES PATENT AND TRADEMARK OFFICE
NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT RECORDATION BRANCH
OF THE U.S. PATENT AND TRADEMARK OFFICE. A COMPLETE COPY IS AVAILABLE AT THE
ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE. THE INFORMATION
CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA PRESENT IN THE PATENT
AND TRADEMARK ASSIGNMENT SYSTEM. IF YOU SHOULD FIND ANY ERRORS OR HAVE
QUESTIONS CONCERNING THIS NOTICE, YOU MAY CONTACT THE ASSIGNMENT RECORDATION
BRANCH AT 571-272-3350. PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT
AND TRADEMARK OFFICE, MAIL STOP: ASSIGNMENT RECORDATION BRANCH, P.O. BOX
1450, ALEXANDRIA, VA 22313.

RECORDATION DATE: 02/22/2016          REEL/FRAME: 5736/0493
                                      NUMBER OF PAGES: 11

BRIEF: SECURITY INTEREST

DOCKET NUMBER:    7467.002

ASSIGNOR:
  GENERAL MEDIA COMMUNICATIONS, INC.    DOC DATE: 02/19/2016
                                        CITIZENSHIP: NEW YORK
                                        ENTITY: CORPORATION

ASSIGNOR:
  PENTHOUSE DIGITAL MEDIA PRODUCTIONS   DOC DATE: 02/19/2016
    INC.                                CITIZENSHIP: NEW YORK
                                        ENTITY: CORPORATION

ASSIGNOR:
  DANNI ASHE, INC.                      DOC DATE: 02/19/2016
                                        CITIZENSHIP: CALIFORNIA
                                        ENTITY: CORPORATION

ASSIGNOR:
  TAN DOOR MEDIA INC.                   DOC DATE: 02/19/2016
                                        CITIZENSHIP: CALIFORNIA
                                        ENTITY: CORPORATION

5736/0493 PAGE 2


ASSIGNEE:
  EXWORKS CAPITAL FUND I, L.P.            CITIZENSHIP: DELAWARE
                                         ENTITY: LIMITED PARTNERSHIP
  333 W. WACKER DRIVE, SUITE 1620
  CHICAGO, ILLINOIS 60606

SERIAL NUMBER: 72305841                  FILING DATE: 07/25/1968
REGISTRATION NUMBER: 880922              REGISTRATION DATE: 11/18/1969
MARK: PENTHOUSE
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73082103                  FILING DATE: 03/30/1976
REGISTRATION NUMBER: 1064636             REGISTRATION DATE: 04/26/1977
MARK: PENTHOUSE
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73107871                  FILING DATE: 11/26/1976
REGISTRATION NUMBER: 1073618             REGISTRATION DATE: 09/20/1977
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
             /NUMBER(S)

SERIAL NUMBER: 73108030                  FILING DATE: 11/29/1976
REGISTRATION NUMBER: 1074534             REGISTRATION DATE: 10/04/1977
MARK: PENTHOUSE
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73109664                  FILING DATE: 12/15/1976
REGISTRATION NUMBER: 1128612             REGISTRATION DATE: 01/01/1980
MARK: PET OF THE MONTH
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73113263                  FILING DATE: 01/21/1977
REGISTRATION NUMBER: 1121403             REGISTRATION DATE: 07/03/1979
MARK: PET OF THE YEAR
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73142573                  FILING DATE: 09/26/1977
REGISTRATION NUMBER: 1104321             REGISTRATION DATE: 10/17/1978
MARK: VARIATIONS
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73384236                  FILING DATE: 09/08/1982
REGISTRATION NUMBER: 1289736             REGISTRATION DATE: 08/14/1984
MARK: PENTHOUSE PETS
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73409098                  FILING DATE: 01/12/1983
REGISTRATION NUMBER: 1292185             REGISTRATION DATE: 08/28/1984
MARK: FORUM
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 73485102                  FILING DATE: 06/14/1984
REGISTRATION NUMBER: 1323231             REGISTRATION DATE: 03/05/1985
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
             /NUMBER(S)

5736/0493 PAGE 3


SERIAL NUMBER: 73485147                    FILING DATE: 06/14/1984
REGISTRATION NUMBER: 1323232               REGISTRATION DATE: 03/05/1985
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
             /NUMBER(S)

SERIAL NUMBER: 75252445                    FILING DATE: 03/05/1997
REGISTRATION NUMBER: 2185045               REGISTRATION DATE: 08/25/1998
MARK: VARIATIONS
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75412709                    FILING DATE: 12/31/1997
REGISTRATION NUMBER: 2390741               REGISTRATION DATE: 10/03/2000
MARK: DANNI'S HARD DRIVE
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75575441                    FILING DATE: 10/21/1998
REGISTRATION NUMBER: 2435702               REGISTRATION DATE: 03/13/2001
MARK: PENTHOUSE
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851315                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2615735               REGISTRATION DATE: 09/03/2002
MARK: DANNI'S
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851316                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2448894               REGISTRATION DATE: 05/08/2001
MARK: DANNI'S
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851317                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2628750               REGISTRATION DATE: 10/01/2002
MARK: HONEST BRA
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851318                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2707425               REGISTRATION DATE: 04/15/2003
MARK: HONEST BRA
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851319                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2579543               REGISTRATION DATE: 06/11/2002
MARK: CYBERBEAUTIES
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851320                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2628751               REGISTRATION DATE: 10/01/2002
MARK: CYBERBEAUTIES
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851321                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2628752               REGISTRATION DATE: 10/01/2002
MARK: NAUGHTY NEWBIES
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851322                    FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2579544               REGISTRATION DATE: 06/11/2002
MARK: NAUGHTY NEWBIES
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

5736/0493 PAGE 4


SERIAL NUMBER: 75851324                FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2610234           REGISTRATION DATE: 08/20/2002
MARK: RETROGIRLS
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851370                FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2579545           REGISTRATION DATE: 06/11/2002
MARK: SEXUAL PRIME
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851371                FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2628753           REGISTRATION DATE: 10/01/2002
MARK: SEXUAL PRIME
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851372                FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2465215           REGISTRATION DATE: 07/03/2001
MARK: BOOB BOWL
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851387                FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2605312           REGISTRATION DATE: 08/06/2002
MARK: DANNI.COM
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 75851390                FILING DATE: 11/17/1999
REGISTRATION NUMBER: 2636095           REGISTRATION DATE: 10/15/2002
MARK: NETFETISH
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 76315680                FILING DATE: 09/21/2001
REGISTRATION NUMBER: 2701927           REGISTRATION DATE: 04/01/2003
MARK: THE GIRLS OF PENTHOUSE
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 76407565                FILING DATE: 05/14/2002
REGISTRATION NUMBER: 2686386           REGISTRATION DATE: 02/11/2003
MARK: PENTHOUSE
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 76437896                FILING DATE: 08/02/2002
REGISTRATION NUMBER: 2721206           REGISTRATION DATE: 06/03/2003
MARK: VARIATIONS
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 76518441                FILING DATE: 05/19/2003
REGISTRATION NUMBER: 2810417           REGISTRATION DATE: 02/03/2004
MARK: THE PENTHOUSE CLUB
DRAWING TYPE: AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S)
           /NUMBER(S)

SERIAL NUMBER: 76581658                FILING DATE: 03/16/2004
REGISTRATION NUMBER: 3007070           REGISTRATION DATE: 10/18/2005
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

5736/0493 PAGE 5


SERIAL NUMBER: 76629990              FILING DATE: 01/31/2005
REGISTRATION NUMBER: 3067272         REGISTRATION DATE: 03/14/2006
MARK: PENTHOUSE
DRAWING TYPE: AN ILLUSTRATION DRAWING WITH WORD(S) /LETTER(S)/ NUMBER(S) IN
             STYLIZED FORM

SERIAL NUMBER: 76630019              FILING DATE: 01/31/2005
REGISTRATION NUMBER: 3052849         REGISTRATION DATE: 01/31/2006
MARK: VARIATIONS
DRAWING TYPE: AN ILLUSTRATION DRAWING WITH WORD(S) /LETTER(S)/ NUMBER(S) IN
             STYLIZED FORM

SERIAL NUMBER: 76630020              FILING DATE: 01/31/2005
REGISTRATION NUMBER: 3052850         REGISTRATION DATE: 01/31/2006
MARK: THE GIRLS OF PENTHOUSE
DRAWING TYPE: AN ILLUSTRATION DRAWING WITH WORD(S) /LETTER(S)/ NUMBER(S) IN
             STYLIZED FORM

SERIAL NUMBER: 76630021              FILING DATE: 01/31/2005
REGISTRATION NUMBER: 3052851         REGISTRATION DATE: 01/31/2006
MARK: PENTHOUSE LETTERS
DRAWING TYPE: AN ILLUSTRATION DRAWING WITH WORD(S) /LETTER(S)/ NUMBER(S) IN
             STYLIZED FORM

SERIAL NUMBER: 76637792              FILING DATE: 05/03/2005
REGISTRATION NUMBER: 3273185         REGISTRATION DATE: 08/07/2007
MARK: WHERE THE MAGAZINE COMES TO LIFE!
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 76637794              FILING DATE: 05/03/2005
REGISTRATION NUMBER: 3778363         REGISTRATION DATE: 04/20/2010
MARK: THE PENTHOUSE CLUB
DRAWING TYPE: AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S)
             /NUMBER(S)

SERIAL NUMBER: 76640450              FILING DATE: 06/08/2005
REGISTRATION NUMBER: 3147297         REGISTRATION DATE: 09/26/2006
MARK: THE INTERNATIONAL MAGAZINE FOR MEN
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 76640451              FILING DATE: 06/08/2005
REGISTRATION NUMBER: 3289312         REGISTRATION DATE: 09/11/2007
MARK: PENTHOUSESTORE.COM
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 76640865              FILING DATE: 06/14/2005
REGISTRATION NUMBER: 3167205         REGISTRATION DATE: 11/07/2006
MARK: VARIATIONS.COM
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 76640867              FILING DATE: 06/14/2005
REGISTRATION NUMBER: 3221067         REGISTRATION DATE: 03/27/2007
MARK: PENTHOUSELETTERS.COM
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 76642290              FILING DATE: 07/06/2005
REGISTRATION NUMBER: 3512920         REGISTRATION DATE: 10/07/2008
MARK: PENTHOUSE LINGERIE
DRAWING TYPE: STANDARD CHARACTER MARK

5736/0493 PAGE 6

SERIAL NUMBER: 76978782                    FILING DATE: 04/15/2005
REGISTRATION NUMBER: 3431806               REGISTRATION DATE: 05/20/2008
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
              /NUMBER(S)

SERIAL NUMBER: 76979022                    FILING DATE: 04/15/2005
REGISTRATION NUMBER: 3728779               REGISTRATION DATE: 12/22/2009
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77053023                    FILING DATE: 11/29/2006
REGISTRATION NUMBER: 3436911               REGISTRATION DATE: 05/27/2008
MARK: LIFE ON TOP
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77220396                    FILING DATE: 07/02/2007
REGISTRATION NUMBER: 3388487               REGISTRATION DATE: 02/26/2008
MARK: THE MAGAZINE OF SEXUAL MARVELS
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77471653                    FILING DATE: 05/12/2008
REGISTRATION NUMBER: 3625761               REGISTRATION DATE: 05/26/2009
MARK: PENTHOUSE LETTERS
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77471683                    FILING DATE: 05/12/2008
REGISTRATION NUMBER: 3668322               REGISTRATION DATE: 08/18/2009
MARK: PENTHOUSE FORUM
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77558292                    FILING DATE: 08/28/2008
REGISTRATION NUMBER: 4283222               REGISTRATION DATE: 01/29/2013
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
              /NUMBER(S)

SERIAL NUMBER: 77560546                    FILING DATE: 09/02/2008
REGISTRATION NUMBER: 3638217               REGISTRATION DATE: 06/16/2009
MARK: PENTHOUSE LETTERS
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77653907                    FILING DATE: 01/21/2009
REGISTRATION NUMBER: 4135808               REGISTRATION DATE: 05/01/2012
MARK: LIFE ON TOP
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77653918                    FILING DATE: 01/21/2009
REGISTRATION NUMBER: 4094055               REGISTRATION DATE: 01/31/2012
MARK: LIFE ON TOP
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77700800                    FILING DATE: 03/27/2009
REGISTRATION NUMBER: 3695628               REGISTRATION DATE: 10/13/2009
MARK: DAMMO
DRAWING TYPE: STANDARD CHARACTER MARK

5736/0493 PAGE 7

SERIAL NUMBER: 77703378                    FILING DATE: 03/31/2009
REGISTRATION NUMBER: 3698477               REGISTRATION DATE: 10/20/2009
MARK: PENTHOUSE HD
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77978806                    FILING DATE: 04/27/2007
REGISTRATION NUMBER: 3779465               REGISTRATION DATE: 04/20/2010
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 77983118                    FILING DATE: 03/29/2007
REGISTRATION NUMBER: 4154587               REGISTRATION DATE: 06/05/2012
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 78065369                    FILING DATE: 05/23/2001
REGISTRATION NUMBER: 2705458               REGISTRATION DATE: 04/08/2003
MARK: DANNI.COM
DRAWING TYPE: TYPESET WORD(S) /LETTER(S) /NUMBER(S)

SERIAL NUMBER: 78078011                    FILING DATE: 08/07/2001
REGISTRATION NUMBER: 2694151               REGISTRATION DATE: 03/04/2003
MARK: DA
DRAWING TYPE: AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S)
            /NUMBER(S)

SERIAL NUMBER: 78078014                    FILING DATE: 08/07/2001
REGISTRATION NUMBER: 2698825               REGISTRATION DATE: 03/18/2003
MARK: DANNI.COM
DRAWING TYPE: AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S)
            /NUMBER(S)

SERIAL NUMBER: 78484794                    FILING DATE: 09/16/2004
REGISTRATION NUMBER: 3015504               REGISTRATION DATE: 11/15/2005
MARK: JKP
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 78839680                    FILING DATE: 03/17/2006
REGISTRATION NUMBER: 3690682               REGISTRATION DATE: 09/29/2009
MARK: FREE YOUR FANTASIES
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 78844506                    FILING DATE: 03/23/2006
REGISTRATION NUMBER: 3641290               REGISTRATION DATE: 06/16/2009
MARK: PENTHOUSE TV
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 78879329                    FILING DATE: 05/09/2006
REGISTRATION NUMBER: 3548339               REGISTRATION DATE: 12/16/2008
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 78921446                    FILING DATE: 06/30/2006
REGISTRATION NUMBER: 3302408               REGISTRATION DATE: 10/02/2007
MARK: DANNIGIRL
DRAWING TYPE: STANDARD CHARACTER MARK

5736/0493 PAGE 8

SERIAL NUMBER: 78980435                        FILING DATE: 03/23/2006
REGISTRATION NUMBER: 3600434                   REGISTRATION DATE: 03/31/2009
MARK: PENTHOUSE TV
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85411383                        FILING DATE: 08/31/2011
REGISTRATION NUMBER: 4135170                   REGISTRATION DATE: 05/01/2012
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85430651                        FILING DATE: 09/23/2011
REGISTRATION NUMBER: 4645457                   REGISTRATION DATE: 11/25/2014
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85454447                        FILING DATE: 10/24/2011
REGISTRATION NUMBER: 4142774                   REGISTRATION DATE: 05/15/2012
MARK: HOTBOX
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85456362                        FILING DATE: 10/26/2011
REGISTRATION NUMBER: 4258930                   REGISTRATION DATE: 12/11/2012
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85497015                        FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4498546                   REGISTRATION DATE: 03/18/2014
MARK: PENTHOUSE MAG
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85497024                        FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4179403                   REGISTRATION DATE: 07/24/2012
MARK: PENTHOUSE.COM
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85497128                        FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4189969                   REGISTRATION DATE: 08/14/2012
MARK: PENTHOUSE LETTERS
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85497146                        FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4186232                   REGISTRATION DATE: 08/07/2012
MARK: PENTHOUSE FORUM
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85497223                        FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4314172                   REGISTRATION DATE: 04/02/2013
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85497311                        FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4277035                   REGISTRATION DATE: 01/15/2013
MARK: DANNI
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85497386                        FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4808739                   REGISTRATION DATE: 09/08/2015
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

5736/0493 PAGE 9


SERIAL NUMBER: 85497631              FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4227739         REGISTRATION DATE: 10/16/2012
MARK: MISHA
DRAWING TYPE: STANDARD CHARACTER MARK


SERIAL NUMBER: 85497703              FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4846266         REGISTRATION DATE: 11/03/2015
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
             /NUMBER(S)


SERIAL NUMBER: 85498080              FILING DATE: 12/17/2011
REGISTRATION NUMBER: 4186310         REGISTRATION DATE: 08/07/2012
MARK: PENTHOUSE SHOES
DRAWING TYPE: STANDARD CHARACTER MARK


SERIAL NUMBER: 85498119              FILING DATE: 12/17/2011
REGISTRATION NUMBER: 4526195         REGISTRATION DATE: 05/06/2014
MARK: PET CONFESSIONS
DRAWING TYPE: STANDARD CHARACTER MARK


SERIAL NUMBER: 85498128              FILING DATE: 12/17/2011
REGISTRATION NUMBER: 4335810         REGISTRATION DATE: 05/14/2013
MARK: PENTHOUSEFORUM.COM
DRAWING TYPE: STANDARD CHARACTER MARK


SERIAL NUMBER: 85498467              FILING DATE: 12/19/2011
REGISTRATION NUMBER: 4186344         REGISTRATION DATE: 08/07/2012
MARK: VARIATIONS
DRAWING TYPE: AN ILLUSTRATION DRAWING WITH WORD(S) /LETTER(S)/ NUMBER(S) IN
             STYLIZED FORM


SERIAL NUMBER: 85509200              FILING DATE: 01/05/2012
REGISTRATION NUMBER: 4194118         REGISTRATION DATE: 08/21/2012
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK


SERIAL NUMBER: 85815464              FILING DATE: 01/04/2013
REGISTRATION NUMBER: 4383782         REGISTRATION DATE: 08/13/2013
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
             /NUMBER(S)


SERIAL NUMBER: 85820066              FILING DATE: 01/10/2013
REGISTRATION NUMBER: 4531747         REGISTRATION DATE: 05/20/2014
MARK: THE INTERNATIONAL MEN'S MAGAZINE
DRAWING TYPE: STANDARD CHARACTER MARK


SERIAL NUMBER: 85847201              FILING DATE: 02/12/2013
REGISTRATION NUMBER: 4782367         REGISTRATION DATE: 07/28/2015
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK


SERIAL NUMBER: 85859216              FILING DATE: 02/25/2013
REGISTRATION NUMBER: 4548739         REGISTRATION DATE: 06/10/2014
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

5736/0493 PAGE 10

SERIAL NUMBER: 85976195                 FILING DATE: 11/05/2010
REGISTRATION NUMBER: 4255423            REGISTRATION DATE: 12/04/2012
MARK: PENTHOUSE 3D
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85977778                 FILING DATE: 09/23/2011
REGISTRATION NUMBER: 4259336            REGISTRATION DATE: 12/11/2012
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85978433                 FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4310726            REGISTRATION DATE: 03/26/2013
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85978463                 FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4310731            REGISTRATION DATE: 03/26/2013
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
            /NUMBER(S)

SERIAL NUMBER: 85978464                 FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4310732            REGISTRATION DATE: 03/26/2013
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
            /NUMBER(S)

SERIAL NUMBER: 85978517                 FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4310737            REGISTRATION DATE: 03/26/2013
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85978532                 FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4319011            REGISTRATION DATE: 04/09/2013
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85978536                 FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4310739            REGISTRATION DATE: 03/26/2013
MARK:
DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
            /NUMBER(S)

SERIAL NUMBER: 85978559                 FILING DATE: 12/16/2011
REGISTRATION NUMBER: 4310741            REGISTRATION DATE: 03/26/2013
MARK: PENTHOUSE
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 85979239                 FILING DATE: 12/17/2011
REGISTRATION NUMBER: 4362488            REGISTRATION DATE: 07/02/2013
MARK: JILL KELLY PRODUCTIONS
DRAWING TYPE: STANDARD CHARACTER MARK

SERIAL NUMBER: 86097512                 FILING DATE: 10/22/2013
REGISTRATION NUMBER: 4882056            REGISTRATION DATE: 01/05/2016
MARK: CYBERPETS
DRAWING TYPE: STANDARD CHARACTER MARK

5736/0493 PAGE 11


        SERIAL NUMBER: 86297847              FILING DATE: 06/02/2014
        REGISTRATION NUMBER: 4860517         REGISTRATION DATE: 11/24/2015
        MARK: SEX ACADEMY
        DRAWING TYPE: STANDARD CHARACTER MARK

        SERIAL NUMBER: 86435388              FILING DATE: 10/27/2014
        REGISTRATION NUMBER: 4787483         REGISTRATION DATE: 08/04/2015
        MARK:
        DRAWING TYPE: AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)
                 /NUMBER(S)

        SERIAL NUMBER: 86803795              FILING DATE: 10/29/2015
        REGISTRATION NUMBER:                 REGISTRATIQN DATE:
        MARK: CALIGULA
        DRAWING TYPE: STANDARD CHARACTER MARK


        ASSIGNMENT RECORDATION BRANCH
        PUBLIC RECORDS DIVISION

**900354921    02/22/2016**

# TRADEMARK ASSIGNMENT COVER SHEET

Electronic Version v1.1                                                                    ETAS ID: TM373989
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | SECURITY INTEREST |

## CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| GENERAL MEDIA COMMUNICATIONS, INC. | | 02/19/2016 | CORPORATION: NEW YORK |
| PENTHOUSE DIGITAL MEDIA PRODUCTIONS INC. | | 02/19/2016 | CORPORATION: NEW YORK |
| DANNI ASHE, INC. | | 02/19/2016 | CORPORATION: CALIFORNIA |
| TAN DOOR MEDIA INC. | | 02/19/2016 | CORPORATION: CALIFORNIA |

## RECEIVING PARTY DATA

| | |
|---|---|
| Name: | EXWORKS CAPITAL FUND I, L.P. |
| Street Address: | 333 W. Wacker Drive, Suite 1620 |
| City: | Chicago |
| State/Country: | ILLINOIS |
| Postal Code: | 60606 |
| Entity Type: | LIMITED PARTNERSHIP: DELAWARE |

## PROPERTY NUMBERS Total: 103

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 0880922 | PENTHOUSE |
| Registration Number: | 1064636 | PENTHOUSE |
| Registration Number: | 1073618 | |
| Registration Number: | 1074534 | PENTHOUSE |
| Registration Number: | 1128612 | PET OF THE MONTH |
| Registration Number: | 1121403 | PET OF THE YEAR |
| Registration Number: | 1104321 | VARIATIONS |
| Registration Number: | 1289736 | PENTHOUSE PETS |
| Registration Number: | 1292185 | FORUM |
| Registration Number: | 1323231 | |
| Registration Number: | 1323232 | |
| Registration Number: | 2185045 | VARIATIONS |
| Registration Number: | 2390741 | DANNI'S HARD DRIVE |
| Registration Number: | 2435702 | PENTHOUSE |
| Registration Number: | 2615735 | DANNI'S |

OP $2590.00 0880922

**TRADEMARK SECURITY AGREEMENT**

TRADEMARK SECURITY AGREEMENT, dated as of February 19, 2016, by each of the parties signatory hereto as a "Grantor" (each a "Grantor" and collectively "Grantors"), in favor of EXWORKS CAPITAL FUND I, L.P. ("Lender").

## W I T N E S S E T H:

WHEREAS, pursuant to that certain Loan and Security Agreement dated as of the date hereof by and among Grantors, the other Loan Party Obligors party thereto and Lender (including all annexes, exhibits or schedules thereto, as from time to time amended, restated, supplemented or otherwise modified, the "Loan Agreement"), Lender has agreed to make certain Loans to or for the benefit of each Grantor, subject to the terms and conditions set forth therein; and

WHEREAS, pursuant to the Loan Agreement, each Grantor is required to execute and deliver to Lender this Trademark Security Agreement;

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Grantor hereby agrees as follows:

    1.    DEFINED TERMS.

    (a)    All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

    (b)    Trademarks means (a) all trademarks, trade names, corporate names, company names, business names, fictitious business names, trade styles, service marks, logos and other source or business identifiers, and all goodwill associated therewith, now existing or hereafter adopted or acquired, all registrations and recordings thereof, and all applications in connection therewith, whether in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country or any political subdivision thereof, or otherwise, and all common-law rights related thereto, including any of the foregoing referred to in Schedule I hereto, and (b) the right to obtain all renewals thereof.

    2.    GRANT OF SECURITY INTEREST IN TRADEMARK COLLATERAL. Each Grantor hereby grants to Lender, a continuing first priority security interest in all of such Grantor's right, title and interest in, to and under the following, whether presently existing or hereafter created or acquired (exclusive of any "intent-to-use" Trademarks to the extent that the grant of a security interest therein would impair the validity or enforceability of such intent-to-use Trademark under applicable federal law) (collectively, the "Trademark Collateral"):

    (a)    all of its Trademarks to which it is a party, including those referred to on Schedule I hereto;

    (b)    all reissues, continuations or extensions of the foregoing;

    (c)    all goodwill of the business connected with the use of, and symbolized by, each such Trademark; and

(d)   all proceeds of the foregoing, including, without limitation, any claim by such Grantor against third parties for past, present or future (i) infringement or dilution of any such Trademark, or (ii) injury to the goodwill associated with any such Trademark.

3.   REPRESENTATION AND WARRANTY AND COVENANT.  Each Grantor hereby represents and warrants to Lender that Schedule 1 lists all registered Trademarks owned by such Grantor in its own name on the date hereof. Each Grantor (either itself or through licensees) will (i) continue to use each Trademark on each and every trademark class of goods applicable to its current line as reflected in its current catalogs, brochures and price lists in order to maintain such Trademark in full force free from any claim of abandonment for non-use, (ii) maintain as in the past the quality of products and services offered under such Trademark, (iii) use such Trademark with the appropriate notice of registration and all other notices and legends required by applicable law, (iv) not adopt or use any mark which is confusingly similar or a colorable imitation of such Trademark unless Lender shall obtain a first priority perfected security interest in such mark pursuant to this Agreement, and (v) not (and not permit any licensee or sublicensee thereof to) do any act or knowingly omit to do any act whereby such Trademark may become invalidated or impaired in any way. Each Grantor will notify Lender immediately if it knows, or has reason to know, that any application or registration relating to any Trademark may become forfeited, abandoned or dedicated to the public, or of any adverse determination or development (including the institution of, or any such determination or development in, any proceeding in the United States Patent and Trademark Office or any court or tribunal in any country) regarding, such Grantor's ownership of, or the validity of, any Trademark or such Grantor's right to register the same or to own and maintain the same.

4.   LOAN AGREEMENT.   The security interests granted pursuant to this Trademark Security Agreement are granted in conjunction with the security interests granted to Lender pursuant to the Loan Agreement. Each Grantor hereby acknowledges and affirms that the rights and remedies of Lender with respect to the security interest in the Trademark Collateral made and granted hereby are more fully set forth in the Loan Agreement, the terms and provisions of which are incorporated by reference herein as if fully set forth herein.

*[signature pages follow]*

-2-

IN WITNESS WHEREOF, Each Grantor has caused this Trademark Security Agreement to be executed and delivered by its duly authorized officer as of the date first set forth above.

<u>GRANTORS:</u>

PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation

By: _____
Name: _Kelly Holland_____
Title: _CEO_____

GMCI INTERNET OPERATIONS, INC.

By: _____
Name: _Kelly Holland_____
Title: _CEO_____

GMI ON-LINE VENTURES, LTD.

By: _____
Name: _Kelly Holland_____
Title: _CEO_____

GENERAL MEDIA COMMUNICATIONS, INC.

By: _____
Name: _Kelly Holland_____
Title: _CEO_____

GENERAL MEDIA ENTERTAINMENT, INC.

By: _____
Name: _Kelly Holland_____
Title: _CEO_____

PMGI HOLDINGS INC.

By: _____
Name: _Kelly Holland_____
Title: _CEO_____

PENTHOUSE DIGITAL MEDIA PRODUCTIONS INC.

By:
Name: Kelly Holland
Title: CEO

PENTHOUSE IMAGES ACQUISITIONS, LTD.

By:
Name: Kelly Holland
Title: CEO

PURE ENTERTAINMENT TELECOMMUNICATIONS, INC.

By:
Name: Kelly Holland
Title: CEO

XVHUB GROUP INC.

By:
Name: Kelly Holland
Title: CEO

DANNI ASHE, INC.

By:
Name: Kelly Holland
Title: CEO

STREAMRAY STUDIOS INC.

By:
Name: Kelly Holland
Title: CEO

TAN DOOR MEDIA INC.

By:
Name: Kelly Holland
Title: CEO

Signature Page to Trademark Security Agreement

ACCEPTED AND ACKNOWLEDGED BY:

EXWORKS CAPITAL FUND I, L.P.

By: _____

Name: Robert Richardson

Title: Vice President


By: _____

Name: _____

Title: _____

**SCHEDULE I**
**to**
**TRADEMARK SECURITY AGREEMENT**

| MARK | SERIAL NUMBER | REGIS. NUMBER | OWNER INFORMATION |
|---|---|---|---|
| PENTHOUSE | 72305841 | 0880922 | General Media Communications, Inc. |
| PENTHOUSE | 73082103 | 1064636 | General Media Communications, Inc. |
| None (Design only) | 73107871 | 1073618 | General Media Communications, Inc. |
| PENTHOUSE | 73108030 | 1074534 | General Media Communications, Inc. |
| PET OF THE MONTH | 73109664 | 1128612 | General Media Communications, Inc. |
| PET OF THE YEAR | 73113263 | 1121403 | General Media Communications, Inc. |
| VARIATIONS | 73142573 | 1104321 | General Media Communications, Inc. |
| PENTHOUSE PETS | 73384236 | 1289736 | General Media Communications, Inc. |
| FORUM | 73409098 | 1292185 | General Media Communications, Inc. |
| None (Design only) | 73485102 | 1323231 | General Media Communications, Inc. |
| None (Design only) | 73485147 | 1323232 | General Media Communications, Inc. |
| VARIATIONS | 75252445 | 2185045 | General Media Communications, Inc. |
| DANNI'S HARD DRIVE | 75412709 | 2390741 | Danni Ashe, Inc. |
| PENTHOUSE | 75575441 | 2435702 | General Media Communications, Inc. |
| DANNI'S | 75851315 | 2615735 | Danni Ashe, Inc. |
| DANNI'S | 75851316 | 2448894 | Danni Ashe, Inc. |
| HONEST BRA | 75851317 | 2628750 | Danni Ashe, Inc. |
| HONEST BRA | 75851318 | 2707425 | Danni Ashe, Inc. |
| CYBERBEAUTIES | 75851319 | 2579543 | Danni Ashe, Inc. |
| CYBERBEAUTIES | 75851320 | 2628751 | Danni Ashe, Inc. |
| NAUGHTY NEWBIES | 75851321 | 2628752 | Danni Ashe, Inc. |
| NAUGHTY NEWBIES | 75851322 | 2579544 | Danni Ashe, Inc. |
| RETROGIRLS | 75851324 | 2610234 | Danni Ashe, Inc. |
| SEXUAL PRIME | 75851370 | 2579545 | Danni Ashe, Inc. |
| SEXUAL PRIME | 75851371 | 2628753 | Danni Ashe, Inc. |
| BOOB BOWL | 75851372 | 2465215 | Danni Ashe, Inc. |
| DANNI.COM | 75851387 | 2605312 | Danni Ashe, Inc. |
| NETFETISH | 75851390 | 2636095 | Danni Ashe, Inc. |
| THE GIRLS OF PENTHOUSE | 76315680 | 2701927 | General Media Communications, Inc. |
| PENTHOUSE | 76407565 | 2686386 | General Media Communications, Inc. |
| VARIATIONS | 76437896 | 2721206 | General Media Communications, Inc. |
| THE PENTHOUSE CLUB | 76518441 | 2810417 | General Media Communications, Inc. |
| PENTHOUSE | 76581658 | 3007070 | General Media Communications, Inc. |
| PENTHOUSE | 76629990 | 3067272 | General Media Communications, Inc. |
| VARIATIONS | 76630019 | 3052849 | General Media Communications, Inc. |
| THE GIRLS OF PENTHOUSE | 76630020 | 3052850 | General Media Communications, Inc. |
| PENTHOUSE LETTERS | 76630021 | 3052851 | General Media Communications, Inc. |
| WHERE THE MAGAZINE COMES TO LIFE! | 76637792 | 3273185 | General Media Communications, Inc. |
| THE PENTHOUSE CLUB | 76637794 | 3778363 | General Media Communications, Inc. |
| THE INTERNATIONAL MAGAZINE FOR MEN | 76640450 | 3147297 | General Media Communications, Inc. |

| MARK | SERIAL NUMBER | REGIS. NUMBER | OWNER INFORMATION |
|---|---|---|---|
| PENTHOUSESTORE.COM | 76640451 | 3289312 | General Media Communications, Inc. |
| VARIATIONS.COM | 76640865 | 3167205 | General Media Communications, Inc. |
| PENTHOUSELETTERS.COM | 76640867 | 3221067 | General Media Communications, Inc. |
| PENTHOUSE LINGERIE | 76642290 | 3512920 | General Media Communications, Inc. |
| None (Design only) | 76978782 | 3431806 | General Media Communications, Inc. |
| PENTHOUSE | 76979022 | 3728779 | General Media Communications, Inc. |
| LIFE ON TOP | 77053023 | 3436911 | General Media Communications, Inc. |
| THE MAGAZINE OF SEXUAL MARVELS | 77220396 | 3388487 | General Media Communications, Inc. |
| PENTHOUSE LETTERS | 77471653 | 3625761 | General Media Communications, Inc. |
| PENTHOUSE FORUM | 77471683 | 3668322 | General Media Communications, Inc. |
| None (Design only) | 77558292 | 4283222 | General Media Communications, Inc. |
| PENTHOUSE LETTERS | 77560546 | 3638217 | General Media Communications, Inc. |
| LIFE ON TOP | 77653907 | 4135808 | General Media Communications, Inc. |
| LIFE ON TOP | 77653918 | 4094055 | General Media Communications, Inc. |
| DAMMO | 77700800 | 3695628 | Tan Door Media Inc. |
| PENTHOUSE HD | 77703378 | 3698477 | General Media Communications, Inc. |
| PENTHOUSE | 77978806 | 3779465 | General Media Communications, Inc. |
| PENTHOUSE | 77983118 | 4154587 | General Media Communications, Inc. |
| DANNI.COM | 78065369 | 2705458 | Danni Ashe, Inc. |
| DA | 78078011 | 2694151 | Danni Ashe, Inc. |
| DANNI.COM | 78078014 | 2698825 | Danni Ashe, Inc. |
| JKP | 78484794 | 3015504 | Penthouse Digital Media Productions, Inc. |
| FREE YOUR FANTASIES | 78839680 | 3690682 | General Media Communications, Inc. |
| PENTHOUSE TV | 78844506 | 3641290 | General Media Communications, Inc. |
| PENTHOUSE | 78879329 | 3548339 | General Media Communications, Inc. |
| DANNIGIRL | 78921446 | 3302408 | Danni Ashe, Inc. |
| PENTHOUSE TV | 78980435 | 3600434 | General Media Communications, Inc. |
| PENTHOUSE | 85411383 | 4135170 | General Media Communications, Inc. |
| PENTHOUSE | 85430651 | 4645457 | General Media Communications, Inc. |
| HOTBOX | 85454447 | 4142774 | General Media Communications, Inc. |
| PENTHOUSE | 85456362 | 4258930 | General Media Communications, Inc. |
| PENTHOUSE MAG | 85497015 | 4498546 | General Media Communications, Inc. |
| PENTHOUSE.COM | 85497024 | 4179403 | General Media Communications, Inc. |
| PENTHOUSE LETTERS | 85497128 | 4189969 | General Media Communications, Inc. |
| PENTHOUSE FORUM | 85497146 | 4186232 | General Media Communications, Inc. |
| PENTHOUSE | 85497223 | 4314172 | General Media Communications, Inc. |
| DANNI | 85497311 | 4277035 | Danni Ashe, Inc. |
| PENTHOUSE | 85497386 | 4808739 | General Media Communications, Inc. |
| MISHA | 85497631 | 4227739 | Danni Ashe, Inc. |
| None (Design only) | 85497703 | 4846266 | General Media Communications, Inc. |
| PENTHOUSE SHOES | 85498080 | 4186310 | General Media Communications, Inc. |
| PET CONFESSIONS | 85498119 | 4526195 | General Media Communications, Inc. |
| PENTHOUSEFORUM.COM | 85498128 | 4335810 | General Media Communications, Inc. |
| VARIATIONS | 85498467 | 4186344 | General Media Communications, Inc. |

| MARK | SERIAL NUMBER | REGIS. NUMBER | OWNER INFORMATION |
|---|---|---|---|
| PENTHOUSE | 85509200 | 4194118 | General Media Communications, Inc. |
| None (Design only) | 85815464 | 4383782 | General Media Communications, Inc. |
| THE INTERNATIONAL MEN'S MAGAZINE | 85820066 | 4531747 | General Media Communications, Inc. |
| PENTHOUSE | 85847201 | 4782367 | General Media Communications, Inc. |
| PENTHOUSE | 85859216 | 4548739 | General Media Communications, Inc. |
| PENTHOUSE 3D | 85976195 | 4255423 | General Media Communications, Inc. |
| PENTHOUSE | 85977778 | 4259336 | General Media Communications, Inc. |
| PENTHOUSE | 85978433 | 4310726 | General Media Communications, Inc. |
| None (Design only) | 85978463 | 4310731 | General Media Communications, Inc. |
| None (Design only) | 85978464 | 4310732 | General Media Communications, Inc. |
| PENTHOUSE | 85978517 | 4310737 | General Media Communications, Inc. |
| PENTHOUSE | 85978532 | 4319011 | General Media Communications, Inc. |
| None (Design Only) | 85978536 | 4310739 | General Media Communications, Inc. |
| PENTHOUSE | 85978559 | 4310741 | General Media Communications, Inc. |
| JILL KELLY PRODUCTIONS | 85979239 | 4362488 | Penthouse Digital Media Productions, Inc. |
| CYBERPETS | 86097512 | 4882056 | General Media Communications, Inc. |
| SEX ACADEMY | 86297847 | 4860517 | Penthouse Digital Media Productions, Inc. |
| None (Design only) | 86435388 | 4787483 | General Media Communications, Inc. |
| CALIGULA | 86803795 | NA | General Media Communications, Inc. |

# EXHIBIT "G"

# Certificate of Recordation



This is to certify that the attached document was recorded
on the date and in the place shown below.

This certificate is issued under the seal of the
United States Copyright Office.

*Maria A. Pallante*

United States Register of Copyrights and Director

March 23, 2016

Date Of Recordation

9915                           493

Volume                      Doc. No.

⊙ **Form DCS** (Document Cover Sheet)
**For Recordation of Documents under 17 U.S.C. §205**

~~subject to change. For~~ ~~the Copyright Office website at~~ ~~ight.gov, write the Copyright Office,~~ ~~5000 or 1-877-476-0778 (toll free).~~

**UNITED STATES COPYRIGHT OFFICE**

Volume __9915__   Document __493__

Privacy Act Notice: Sections 205 and 705 of title 17 of the United States Code authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for recordation. By providing this information, you are agreeing to routine uses of the information that include publication to give legal notice of your recordation pursuant to 17 U.S.C. §§ 205 and 705. The information will appear in the Office's online Public Catalog. If you do not provide the information requested, recordation may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

Volume _____   Document _____

Date of recordation   M __MAR 23 2016__
(ASSIGNED BY THE COPYRIGHT OFFICE)

Funds received _____

**DO NOT WRITE ABOVE THIS LINE · SEE INSTRUCTIONS**

---

*To the Register of Copyrights: Please record the accompanying original document or its properly certified copy.*

| **1** | First party name given in the document | Penthouse Global Media, Inc. |
|---|---|---|
| **2** | First title given in the document | (IMPORTANT: Please read instruction for this and other spaces.) Penthouse, Vol. 1, Sept. 1969. By Penthouse International, Ltd. |
| **3** | Total number of titles in the document | 2306 |
| **4** | Return receipt requested | ☐ If checked, please enclose a self-addressed postage-paid envelope. |
| **5** | Electronic title list enclosed | ☐ If checked, please enclose an acceptable digital storage medium containing a properly formatted title list. |
| **6** | Amount of fee calculated | $8190.00 + $550.00 |
| **7** | Fee enclosed | ☐ Check          ☐ Money order |
| | | ☐ Fee authorized to be charged to Copyright Office deposit account |
| | | Deposit account number _____ |
| | | Deposit account name _____ |
| **8** | Completeness of document | ☑ All attachments referenced in this document are included. |
| | | ☐ One or more attachments referenced in this document is missing but (a) the attachment is completely unavailable for recordation; (b) the attachment is not essential to the identification of the subject matter of the document; and (c) it would be impossible or wholly impracticable to have the parties to the document sign or initial a deletion of the reference to the attachment. |
| **9** | Certification of photocopied documents | Complete this certification if a photocopy of the original signed document is being submitted instead of the document bearing the actual original signature. **NOTE:** This space may not be used for documents that require an official certification. I declare under penalty of perjury that the accompanying document is a true and correct copy of the original document. |
| | | Signature _____   Date _____ |
| | | Duly authorized agent of _____ |
| **10** | Return to | Name   IP Research Plus |
| | | Number/street   21 Tadcaster Circle          Apt/suite _____ |
| | | City   Waldorf          State   MD     Zip   20602 |
| | | Phone number   301-638-0511          Fax number _____ |
| | | Email _____ |

**SEND TO:** *Library of Congress, Copyright Office-DOC, 101 Independence Avenue SE, Washington, DC 20559-6000*

**INCLUDE ALL OF THESE TOGETHER:** (1) two copies of this form; (2) payment from a deposit account or by check/money order payable to *Register of Copyrights;* (3) your document; (4) if a return receipt is requested, a self-addressed postage-paid envelope; (5) if enclosing an electronic title list, an acceptable digital storage medium containing a title list in the prescribed format.

FORM DCS   REVIEWED 11/2014   Printed on recycled paper

V8915 0493 P 1

## COPYRIGHT SECURITY AGREEMENT

COPYRIGHT SECURITY AGREEMENT, dated as of February 12, 2016, by each of the parties signatory hereto as a "Grantor" (each a "Grantor" and collectively "Grantors"), in favor of EXWORKS CAPITAL FUND I, L.P. ("Lender").

## WITNESSETH:

WHEREAS, pursuant to that certain Loan and Security Agreement dated as of the date hereof by and among Grantors, the other Loan Party Obligors party thereto and Lender (including all annexes, exhibits or schedules thereto, as from time to time amended, restated, supplemented or otherwise modified, the "Loan Agreement"), Lender has agreed to make certain Loans to or for the benefit of each Grantor, subject to the terms and conditions set forth therein; and

WHEREAS, pursuant to the Loan Agreement, each Grantor is required to execute and deliver to Lender this Copyright Security Agreement;

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Grantor hereby agrees as follows:

1.    DEFINED TERMS.

(a)    All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

(b)    Copyrights means all copyrights arising under the laws of the United States, any other country or any political subdivision thereof, whether registered or unregistered and whether published or unpublished, including those listed on Schedule I, all registrations and recordings thereof, and all applications in connection therewith, including all registrations, recordings and applications in the United States Copyright Office, and the right to obtain all renewals of any of the foregoing.

2.    GRANT OF SECURITY INTEREST IN COPYRIGHT COLLATERAL.  Each Grantor hereby grants to Lender, a continuing first priority security interest in all of such Grantor's right, title and interest in, to and under the following, whether presently existing or hereafter created or acquired (collectively, the "Copyright Collateral"):

(a)    all of its Copyrights referred to on Schedule I hereto;

(b)    all reissues, continuations or extensions of the foregoing;

(c)    all products and proceeds of the foregoing, including, without limitation, any claim by such Grantor against third parties for past, present or future infringement or dilution of any Copyright.

V9915 D493 P 2

3.    REPRESENTATION AND WARRANTY AND COVENANT.  Each Grantor hereby represents and warrants to Lender that Schedule I lists all registered Copyrights and owned by such Grantor in its own name on the date hereof. Each Grantor (either itself or through licensees) (i) will employ each Copyright and (ii) will not (and will not permit any licensee or sublicensee thereof to) do any act or knowingly omit to do any act whereby any material portion of the Copyrights may become invalidated or otherwise impaired.  Such Grantor will not (either itself or through licensees) do any act whereby any material portion of the Copyrights may fall into the public domain. Each Grantor will notify Lender immediately if it knows, or has reason to know, that any application or registration relating to any Copyright may become forfeited, abandoned or dedicated to the public, or of any adverse determination or development (including the institution of, or any such determination or development in, any proceeding in the the United States Copyright Office or any court or tribunal in any country) regarding, such Grantor's ownership of, or the validity of, any Copyright or such Grantor's right to register the same or to own and maintain the same.

4.    LOAN AGREEMENT.  The security interests granted pursuant to this Copyright Security Agreement are granted in conjunction with the security interests granted to Lender pursuant to the Loan Agreement.  Each Grantor hereby acknowledges and affirms that the rights and remedies of Lender with respect to the security interest in the Copyright Collateral made and granted hereby are more fully set forth in the Loan Agreement, the terms and provisions of which are incorporated by reference herein as if fully set forth herein.

*[signature pages follow]*

V0015 D493 P 3

IN WITNESS WHEREOF, Each Grantor has caused this Copyright Security Agreement
to be executed and delivered by its duly authorized officer as of the date first set forth above.

GRANTORS:

PENTHOUSE GLOBAL MEDIA, INC., a Delaware
corporation

By:
Name: Kelly Holland
Title: CEO

GMCI INTERNET OPERATIONS, INC.

By:
Name: Kelly Holland
Title: CEO

GMI ON-LINE VENTURES, LTD.

By:
Name: Kelly Holland
Title: CEO

GENERAL MEDIA COMMUNICATIONS, INC.

By:
Name: Kelly Holland
Title: CEO

GENERAL MEDIA ENTERTAINMENT, INC.

By:
Name: Kelly Holland
Title: CEO

PMGI HOLDINGS INC.

By:
Name: Kelly Holland
Title: CEO

V9915 D493 P4

PENTHOUSE DIGITAL MEDIA PRODUCTIONS INC.

By: _____
Name: Kelly Holland
Title: CEO

PENTHOUSE IMAGES ACQUISITIONS, LTD.

By: _____
Name: Kelly Holland
Title: CEO

PURE ENTERTAINMENT TELECOMMUNICATIONS, INC.

By: _____
Name: Kelly Holland
Title: CEO

XVHUB GROUP INC.

By: _____
Name: Kelly Holland
Title: CEO

DANNI ASHE, INC.

By: _____
Name: Kelly Holland
Title: CEO

STREAMRAY STUDIOS INC.

By: _____
Name: Kelly Holland
Title: CEO

TAN DOOR MEDIA INC.

By: _____
Name: Kelly Holland
Title: CEO

Signature Page to Copyright Security Agreement

V9915 D493 P 5

ACCEPTED AND ACKNOWLEDGED BY:

EXWORKS CAPITAL FUND I, L.P.

By: _____
Name: Robert Richardson
Title: Vice President

V8915 D493 P 6

## SCHEDULE I
### To
## COPYRIGHT SECURITY AGREEMENT

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1. | Penthouse. Vol. 1, no. 1, Sept. 1969. By Penthouse International, Ltd. | RE0000765293 | 11/26/97 |
| 2. | Penthouse. Vol. 1, no. 2, Oct. 1969. By Penthouse International, Ltd. | RE0000765294 | 11/26/97 |
| 3. | Penthouse. Vol. 1, no. 3, Nov. 1969. By Penthouse International, Ltd. | RE0000765295 | 11/26/97 |
| 4. | Penthouse. Vol. 1, no. 4, Dec. 1969. By Penthouse International, Ltd. | RE0000765296 | 11/26/97 |
| 5. | Penthouse. Vol. 1, no. 5, Jan. 1970. By Penthouse International, Ltd. | RE0000765297 | 11/26/97 |
| 6. | Penthouse. Vol. 1, no. 10, June 1970. By Penthouse International, Ltd. | RE0000667866 | 03/29/99 |
| 7. | Penthouse. Vol. 1, no. 11, July 1970. By Penthouse International, Ltd. | RE0000667867 | 03/29/99 |
| 8. | Penthouse. Vol. 1, no. 12, Aug. 1970. By Penthouse International, Ltd. | RE0000667869 | 03/29/99 |
| 9. | Penthouse. Vol. 1, no. 6, Feb. 1970. By Penthouse International, Ltd. | RE0000667876 | 03/29/99 |
| 10. | Penthouse. Vol. 1, no. 7, Mar. 1970. By Penthouse International, Ltd. | RE0000667875 | 03/29/99 |
| 11. | Penthouse. Vol. 1, no. 8, Apr. 1970. By Penthouse International, Ltd. | RE0000667877 | 03/29/99 |
| 12. | Penthouse. Vol. 1, no. 9, May 1970. By Penthouse International, Ltd. | RE0000667868 | 03/29/99 |
| 13. | Penthouse. Vol. 2, no. 1, Sept. 1970. By Penthouse International, Ltd. | RE0000667874 | 03/29/99 |
| 14. | Penthouse. Vol. 2, no. 2, Oct. 1970. By Penthouse International, Ltd. | RE0000667873 | 03/29/99 |
| 15. | Penthouse. Vol. 2, no. 3, Nov. 1970. By Penthouse International, Ltd. | RE0000667872 | 03/29/99 |
| 16. | Penthouse. Vol. 2, no. 4, Dec. 1970. By Penthouse International, Ltd. | RE0000667871 | 03/29/99 |
| 17. | Penthouse. Vol. 2, no. 5, Jan. 1971. By Penthouse International, Ltd. | RE0000667870 | 03/29/99 |
| 18. | Penthouse. Vol. 2, no. 10, June 1971 / by Penthouse International, Ltd. | RE0000930308 | 02/01/07 |
| 19. | Penthouse. Vol. 2, no. 11, July 1971 / by Penthouse International, Ltd. | RE0000930029 | 02/01/07 |
| 20. | Penthouse. Vol. 2, no. 12, Aug. 1971 / by Penthouse International, Ltd. | RE0000930030 | 02/01/07 |
| 21. | Penthouse. Vol. 2, no. 6, Feb. 1971 / by Penthouse International, Ltd. | RE0000930031 | 02/01/07 |
| 22. | Penthouse. Vol. 2, no. 7, Mar. 1971 / by Penthouse International, Ltd. | RE0000930321 | 02/01/07 |

V9916 0493 P 7

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 23. | Penthouse. Vol. 2, no. 8, Apr. 1971 / by Penthouse International, Ltd. | RE0000930322 | 02/01/07 |
| 24. | Penthouse. Vol. 2, no. 9, May 1971 / by Penthouse International, Ltd. | RE0000930320 | 02/01/07 |
| 25. | Penthouse. Vol. 3, no. 1, Sept. 1971 / by Penthouse International, Ltd. | RE0000930034 | 02/01/07 |
| 26. | Penthouse. Vol. 3, no. 2, Oct. 1971 / by Penthouse International, Ltd. | RE0000930033 | 02/01/07 |
| 27. | Penthouse. Vol. 3, no. 3, Nov. 1971 / by Penthouse International, Ltd. | RE0000930035 | 02/01/07 |
| 28. | Penthouse. Vol. 3, no. 4, Dec. 1971 / by Penthouse International, Ltd. | RE0000930032 | 02/01/07 |
| 29. | Penthouse. Vol. 3, no. 10, June 1972 / by Penthouse International, Ltd. | RE0000930310 | 02/02/07 |
| 30. | Penthouse. Vol. 3, no. 11, July 1972 / by Penthouse International, Ltd. | RE0000930309 | 02/02/07 |
| 31. | Penthouse. Vol. 3, no. 12, Aug. 1972 / by Penthouse International, Ltd. | RE0000930312 | 02/02/07 |
| 32. | Penthouse. Vol. 3, no. 6, February 1972 / by Penthouse International, Ltd. | RE0000930313 | 02/02/07 |
| 33. | Penthouse. Vol. 3, no. 7, Mar. 1972 / by Penthouse International, Ltd. | RE0000930315 | 02/02/07 |
| 34. | Penthouse. Vol. 3, no. 8, Apr. 1972 / by Penthouse International, Ltd. | RE0000930314 | 02/02/07 |
| 35. | Penthouse. Vol. 3, no. 9, May 1972 / by Penthouse International, Ltd. | RE0000930311 | 02/02/07 |
| 36. | Penthouse. Vol. 4, no. 1, Sept. 1972 / by Penthouse International, Ltd. | RE0000930307 | 02/02/07 |
| 37. | Penthouse. Vol. 4, no. 2, Oct. 1972 / by Penthouse International, Ltd. | RE0000930324 | 02/02/07 |
| 38. | Penthouse. Vol. 4, no. 3, Nov. 1972 / by Penthouse International, Ltd. | RE0000930325 | 02/02/07 |
| 39. | Penthouse. Vol. 4, no. 4, Dec. 1972 / by Penthouse International, Ltd. | RE0000930323 | 02/02/07 |
| 40. | Penthouse. Vol. 5, no. 5, Jan. 1974 / by Penthouse International, Ltd. | RE0000930316 | 03/29/07 |
| 41. | Penthouse. Vol. 5, no. 6, Feb. 1974 / by Penthouse International, Ltd. | RE0000930317 | 03/29/07 |
| 42. | Penthouse. Vol. 5, no. 7, Mar. 1974 / by Penthouse International, Ltd. | RE0000930318 | 03/29/07 |
| 43. | Penthouse. Vol. 5, no. 8, Apr. 1974 / by Penthouse International, Ltd. | RE0000930319 | 03/29/07 |
| 44. | Penthouse the international magazine for men. Vol. 7, no. 5, Jan. 1976 / Penthouse International, Ltd. | RE0000930939 | 09/12/08 |
| 45. | Penthouse the international magazine for men. Vol. 7, no. 10, June 1976 / Penthouse International, Ltd. | RE0000930944 | 09/12/08 |
| 46. | Penthouse the international magazine for men. Vol. 7, no. 11, July 1976 / Penthouse International, Ltd. | RE0000930945 | 09/12/08 |

V9915 D493 P 8

| No. | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 47. | Penthouse the international magazine for men. Vol. 7, no. 12, Aug. 1976 / Penthouse International, Ltd. | RE0000930946 | 09/12/08 |
| 48. | Penthouse the international magazine for men. Vol. 7, no. 6, Feb. 1976 / Penthouse International, Ltd. | RE0000930940 | 09/12/08 |
| 49. | Penthouse the international magazine for men. Vol. 7, no. 7, Mar. 1976 / Penthouse International, Ltd. | RE0000930941 | 09/12/08 |
| 50. | Penthouse the international magazine for men. Vol. 7, no. 8, Apr. 1976 / Penthouse International, Ltd. | RE0000930942 | 09/12/08 |
| 51. | Penthouse the international magazine for men. Vol. 7, no. 9, May 1976 / Penthouse International, Ltd. | RE0000930943 | 09/12/08 |
| 52. | Penthouse the international magazine for men. Vol. 8, no. 1, Sept. 1976 / Penthouse International, Ltd. | RE0000930947 | 09/12/08 |
| 53. | Penthouse the international magazine for men. Vol. 8, no. 2, Oct. 1976 / Penthouse International, Ltd. | RE0000930948 | 09/12/08 |
| 54. | Penthouse the international magazine for men. Vol. 8, no. 3, Nov. 1976 / Penthouse International, Ltd. | RE0000930949 | 09/12/08 |
| 55. | Penthouse the international magazine for men. Vol. 8, no. 4, Dec. 1976 / Penthouse International, Ltd. | RE0000930950 | 09/12/08 |
| 56. | Letters to Penthouse I : there's nothing like the first time / edited by Edward Springer. | TX0005290698 | 10/16/00 |
| 57. | More letters from Penthouse. By Penthouse International, Inc. | TX0005495525 | 10/20/00 |
| 58. | Letters to Penthouse III. By editors of Penthouse Magazine. | TX0005495526 | 10/20/00 |
| 59. | Gina LaMarca, Pet of the Year. | VA0000824631 | 10/21/96 |
| 60. | Alex Taylor publicity photograph. | VA0000848022 | 01/06/97 |
| 61. | Letters to Penthouse IV. By Penthouse International, Ltd. | TX0005495533 | 10/20/00 |
| 62. | Penthouse pet Brandi Lee Braxton. | VA0000786857 | 10/21/96 |
| 63. | Letters to Penthouse V. By Penthouse International, Ltd. | TX0005495532 | 10/20/00 |
| 64. | Best of Penthouse Forum letters. | TX0004248596 | 1996 |
| 65. | Best of Penthouse Forum letters. | TX0004226847 | 1996 |
| 66. | Best of Penthouse Forum letters. | TX0004269233 | 1996 |
| 67. | Best of Penthouse Forum letters. | TX0004269331 | 1996 |
| 68. | Best of Penthouse Forum letters. | TX0004269564 | 1996 |
| 69. | Classic Forum. | TX0004269231 | 1996 |
| 70. | Classic Forum. | TX0004269332 | 1996 |
| 71. | Classic Forum. | TX0004269335 | 1996 |
| 72. | Classic Forum. | TX0004269334 | 1996 |
| 73. | Classic Forum. | TX0004269559 | 1996 |
| 74. | Drag Racing Monthly. | TX0004270907 | 1996 |
| 75. | Drag Racing Monthly. | TX0004316092 | 1996 |

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 76. | Drag Racing Monthly. | TX0004335317 | 1996 |
| 77. | Drag Racing Monthly. | TX0004349882 | 1996 |
| 78. | Drag Racing Monthly. | TX0004394723 | 1996 |
| 79. | Drag Racing Monthly. | TX0004405749 | 1996 |
| 80. | Drag Racing Monthly. | TX0004405746 | 1996 |
| 81. | Forum : the pleasuring of America. | TX0004248643 | 1996 |
| 82. | Forum : the pleasuring of America. | TX0004269475 | 1996 |
| 83. | Forum : the pleasuring of America. | TX0004269473 | 1996 |
| 84. | Girls of Penthouse. | TX0004248665 | 1996 |
| 85. | Girls of Penthouse. | TX0004248669 | 1996 |
| 86. | Girls of Penthouse. | TX0004226831 | 1996 |
| 87. | Girls of Penthouse. | TX0004226795 | 1996 |
| 88. | Girls of Penthouse. | TX0004226794 | 1996 |
| 89. | Girls of Penthouse. | TX0004269376 | 1996 |
| 90. | Girls of Penthouse. | TX0004269288 | 1996 |
| 91. | Girls of Penthouse. | TX0004269371 | 1996 |
| 92. | Girls of Penthouse. | TX0004269452 | 1996 |
| 93. | Girls of Penthouse. | TX0004269437 | 1996 |
| 94. | Girls of Penthouse. | TX0004269526 | 1996 |
| 95. | Girls of Penthouse. | TX0004269525 | 1996 |
| 96. | Letters to Penthouse VI. By Penthouse International, Ltd. | TX0005495531 | 10/20/00 |
| 97. | Penthouse comix : the international illustrated magazine for men. | TX0004248664 | 1996 |
| 98. | Penthouse comix : the international illustrated magazine for men. | TX0004226815 | 1996 |
| 99. | Penthouse comix : the international illustrated magazine for men. | TX0004269259 | 1996 |
| 100. | Penthouse comix : the international illustrated magazine for men. | TX0004555563 | 1996 |
| 101. | Penthouse comix : the international illustrated magazine for men. | TX0004269432 | 1996 |
| 102. | Penthouse comix : the international illustrated magazine for men. | TX0004269439 | 1996 |
| 103. | Penthouse comix : the international illustrated magazine for men. | TX0004269515 | 1996 |
| 104. | Penthouse comix : the international illustrated magazine for men. | TX0004269524 | 1996 |
| 105. | Penthouse Forum. | TX0004248598 | 1996 |

V9916 U493 P 10

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|------|-----------------|---------------------|------|
| 106. | Penthouse Forum. | TX0004226843 | 1996 |
| 107. | Penthouse Forum. | TX0004226818 | 1996 |
| 108. | Penthouse Forum. | TX0004226842 | 1996 |
| 109. | Penthouse Forum. | TX0004269566 | 1996 |
| 110. | Penthouse Hot Talk : the voice of America. | TX0004248683 | 1996 |
| 111. | Penthouse Hot Talk : the voice of America. | TX0004248682 | 1996 |
| 112. | Penthouse Hot Talk : the voice of America. | TX0004248681 | 1996 |
| 113. | Penthouse Hot Talk : the voice of America. | TX0004226841 | 1996 |
| 114. | Penthouse Hot Talk : the voice of America. | TX0004226778 | 1996 |
| 115. | Penthouse Hot Talk : the voice of America. | TX0004269227 | 1996 |
| 116. | Penthouse Hot Talk : the voice of America. | TX0004269283 | 1996 |
| 117. | Penthouse Hot Talk : the voice of America. | TX0004269285 | 1996 |
| 118. | Penthouse Hot Talk : the voice of America. | TX0004269978 | 1996 |
| 119. | Penthouse Hot Talk : the voice of America. | TX0004269440 | 1996 |
| 120. | Penthouse Hot Talk : the voice of America. | TX0004269523 | 1996 |
| 121. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004248635 | 1996 |
| 122. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269147 | 1996 |
| 123. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004248639 | 1996 |
| 124. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004226789 | 1996 |
| 125. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004226797 | 1996 |
| 126. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004226801 | 1996 |
| 127. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269235 | 1996 |
| 128. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269368 | 1996 |
| 129. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269299 | 1996 |
| 130. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269296 | 1996 |
| 131. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269480 | 1996 |
| 132. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269426 | 1996 |
| 133. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269438 | 1996 |

V9915 D493 P 11

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 134. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269517 | 1996 |
| 135. | Penthouse max. | TX0004269260 | 1996 |
| 136. | Penthouse max. | TX0004269864 | 1996 |
| 137. | Penthouse men's adventure comix : the illustrated pulp magazine for men. | TX0004269130 | 1996 |
| 138. | Penthouse men's adventure comix : the illustrated pulp magazine for men. | TX0004226785 | 1996 |
| 139. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004248670 | 1996 |
| 140. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004226832 | 1996 |
| 141. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004248640 | 1996 |
| 142. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004226828 | 1996 |
| 143. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004226802 | 1996 |
| 144. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269228 | 1996 |
| 145. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269366 | 1996 |
| 146. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269373 | 1996 |
| 147. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269380 | 1996 |
| 148. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269427 | 1996 |
| 149. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269436 | 1996 |
| 150. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269536 | 1996 |
| 151. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004248599 | 1996 |
| 152. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004248644 | 1996 |
| 153. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004248645 | 1996 |
| 154. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004226844 | 1996 |
| 155. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004226846 | 1996 |
| 156. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269232 | 1996 |
| 157. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269336 | 1996 |
| 158. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269333 | 1996 |
| 159. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004270095 | 1996 |
| 160. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269472 | 1996 |
| 161. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269478 | 1996 |

V9915 D493 P 12

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 162. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269561 | 1996 |
| 163. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269560 | 1996 |
| 164. | Variations best. | TX0004248595 | 1996 |
| 165. | Variations best. | TX0004269972 | 1996 |
| 166. | Variations best. | TX0004269496 | 1996 |
| 167. | Variations best. | TX0004269565 | 1996 |
| 168. | Best of Penthouse Forum letters. | TX0004269810 | 1997 |
| 169. | Best of Penthouse Forum letters. | TX0004270096 | 1997 |
| 170. | Best of Penthouse Forum letters. | TX0004270074 | 1997 |
| 171. | Best of Penthouse Forum letters. | TX0004555662 | 1997 |
| 172. | Forum, Aug. 3, 1993 | TX 3-641-707 | 1993 |
| 173. | Forum, Aug. 31, 1993 | TX 3-636-164 | 1993 |
| 174. | Forum, Oct. 5, 1993 | TX 3-639-173 | 1993 |
| 175. | Forum, Nov. 2, 1993 | TX 3-639-176 | 1993 |
| 176. | Forum, Nov. 30, 1993 | TX 3-741-151 | 1993 |
| 177. | Forum, Jan. 14, 1994 | TX 3-786-574 | 1994 |
| 178. | Forum, Feb. 1, 1994 | TX 3-724-415 | 1994 |
| 179. | Forum, Mar. 8, 1994 | TX 3-724-409 | 1994 |
| 180. | Forum, Apr. 5, 1994 | TX 3-953-723 | 1994 |
| 181. | Forum, May 3, 1994 | TX 3-724-667 | 1994 |
| 182. | Forum, May 31, 1994 | TX 3-724-563 | 1994 |
| 183. | Forum, July 5, 1994 | TX 3-616-726 | 1994 |
| 184. | Forum, Aug. 2, 1994 | TX 3-616-727 | 1994 |
| 185. | Forum, Sept. 6, 1994 | TX 4-015-217 | 1994 |
| 186. | Forum, Oct. 4, 1994 | TX 4-015-218 | 1994 |
| 187. | Forum, Nov. 1, 1994 | TX 4-015-223 | 1994 |
| 188. | Forum, Nov. 29, 1994 | TX 4-015-271 | 1994 |
| 189. | Forum, Dec. 20, 1994 / | TX 4-018-214 | 1994 |
| 190. | Forum, Jan. 24, 1995 | TX 4-015-267 | 1995 |
| 191. | Forum, Feb. 21, 1995 | TX 4-083-365 | 1995 |
| 192. | Forum, Mar. 21, 1995 | TX 4-045-654 | 1995 |
| 193. | Forum, Apr. 11, 1995 | TX 4-045-685 | 1995 |
| 194. | Forum, May 16, 1995 | TX 4-083-357 | 1995 |

V9916 D493 P 13

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 195. | Forum, June 13, 1995 | TX 4-135-748 | 1995 |
| 196. | Forum, July 11, 1995 | TX 4-135-749 | 1995 |
| 197. | Forum, Aug. 9, 1995 | TX 4-174-838 | 1995 |
| 198. | Forum, Sept. 5, 1995 | TX 4-174-839 | 1995 |
| 199. | The best of Forum letters, Sept. 14, 1993 | TX 3-639-165 | 1993 |
| 200. | The best of Forum letters, Dec. 28, 1993 | TX 3-741-152 | 1993 |
| 201. | The best of Forum letters, Feb. 22, 1994 | TX 3-724-411 | 1994 |
| 202. | The best of Forum letters, June 14, 1994 | TX 3-724-565 | 1994 |
| 203. | The best of Forum letters, Aug. 16, 1994 | TX 3-616-728 | 1994 |
| 204. | The best of Forum letters, Sept. 20, 1994 | TX 4-015-272 | 1994 |
| 205. | The best of Forum letters, Dec. 13, 1994 | TX 4-015-279 | 1994 |
| 206. | The best of Forum letters, Jan. 31, 1995 | TX 4-015-266 | 1995 |
| 207. | The best of Forum letters, Apr. 25, 1995 | TX 4-083-359 | 1995 |
| 208. | The best of Forum letters, June 30, 1995 | TX 4-135-375 | 1995 |
| 209. | The best of Forum letters, Sept. 19, 1995 | TX 4-174-840 | 1995 |
| 210. | The girls of Penthouse, Aug. 17, 1993 | TX 3-641-727 | 1993 |
| 211. | The girls of Penthouse, Sept. 17, 1993 | TX 3-724-421 | 1993 |
| 212. | The girls of Penthouse, Oct. 26, 1993 | TX 3-639-147 | 1998 |
| 213. | The girls of Penthouse, Nov. 30, 1993 | TX 3-639-127 | 1993 |
| 214. | The girls of Penthouse, Jan. 11, 1994 | TX 3-741-107 | 1994 |
| 215. | The girls of Penthouse, Feb. 8, 1994 | TX 3-724-382 | 1994 |
| 216. | The girls of Penthouse, Mar. 15, 1994 | TX 3-953-731 | 1994 |
| 217. | The girls of Penthouse, Apr. 19, 1994 | TX 3-724-668 | 1994 |
| 218. | The girls of Penthouse, June 28, 1994 | TX 3-616-691 | 1994 |
| 219. | The girls of Penthouse, Aug. 9, 1994 | TX 3-616-713 | 1994 |
| 220. | The girls of Penthouse, Nov. 22, 1994 | TX 4-018-200 | 1994 |
| 221. | The girls of Penthouse, Sept. 13, 1994 | TX 3-959-951 | 1994 |
| 222. | The girls of Penthouse, Sept. 13, 1994 | TX 4-045-715 | 1994 |
| 223. | The girls of Penthouse, Oct. 18, 1994 | TX 3-959-973 | 1994 |
| 224. | The girls of Penthouse, Dec. 20, 1994 | TX 4-015-308 | 1994 |
| 225. | The girls of Penthouse, Jan. 17, 1995 | TX 4-083-353 | 1995 |
| 226. | The girls of Penthouse, Feb. 21, 1995 | TX 4-045-667 | 1995 |
| 227. | The girls of Penthouse, Mar. 21, 1995 | TX 4-045-650 | 1995 |

V9915 D493 P 14

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 228. | The girls of Penthouse, Apr. 18, 1995 | TX 4-083-284 | 1995 |
| 229. | The girls of Penthouse, May 16, 1995 | TX 4-135-754 | 1995 |
| 230. | The girls of Penthouse, July 18, 1995 | TX 4-174-899 | 1995 |
| 231. | The girls of Penthouse, Aug. 15, 1995 | TX 4-174-895 | 1995 |
| 232. | Penthouse, July 27, 1993 | TX 3-641-725 | 1993 |
| 233. | Penthouse, Aug. 31, 1993 | TX 3-641-722 | 1993 |
| 234. | Penthouse, Sept. 28, 1993 | TX 3-639-131 | 1993 |
| 235. | Penthouse, Oct. 26, 1993 | TX 3-639-160 | 1993 |
| 236. | Penthouse, Nov. 30, 1993 | TX 3-741-103 | 1993 |
| 237. | Penthouse, Jan. 4, 1994 | TX 3-741-111 | 1994 |
| 238. | Penthouse, Feb. 1, 1994 | TX 3-724-381 | 1994 |
| 239. | Penthouse, Mar. 1, 1994 | TX 3-724-391 | 1994 |
| 240. | Penthouse, Apr. 5, 1944 | TX 3-724-679 | 1994 |
| 241. | Penthouse, May 3, 1994 | TX 3-724-588 | 1994 |
| 242. | Penthouse, June 7, 1994 | TX 3-724-532 | 1994 |
| 243. | Penthouse, July 5, 1994 | TX 3-616-684 | 1994 |
| 244. | Penthouse, Aug. 2, 1994 | TX 3-616-663 | 1994 |
| 245. | Penthouse, Sept. 6, 1994 | TX 3-960-008 | 1994 |
| 246. | Penthouse, Oct. 4, 1994 | TX 3-960-006 | 1994 |
| 247. | Penthouse, Nov. 8, 1995 | TX 4-015-354 | 1995 |
| 248. | Penthouse, Jan. 3, 1995 | TX 4-015-327 | 1995 |
| 249. | Penthouse, Jan. 31, 1995 | TX 4-045-704 | 1995 |
| 250. | Penthouse, Feb. 28, 1995 | TX 4-045-641 | 1995 |
| 251. | Penthouse, Apr. 4, 1995 | TX 4-045-670 | 1995 |
| 252. | Penthouse, Aug. 1, 1995 | TX 4-174-877 | 1995 |
| 253. | Penthouse, May 2, 1995 | TX 4-091-622 | 1995 |
| 254. | Penthouse, May 30, 1995 | TX 4-135-714 | 1995 |
| 255. | Penthouse, June 27, 1995 | TX 4-135-695 | 1995 |
| 256. | Penthouse, Sept. 5, 1995 | TX 4-174-903 | 1995 |
| 257. | Penthouse hot talk, July 13, 1993 | TX 3-564-067 | 1993 |
| 258. | Penthouse hot talk, Aug. 17, 1993 | TX 3-641-726 | 1993 |
| 259. | Penthouse hot talk, Sept. 21, 1993 | TX 3-641-748 | 1993 |
| 260. | Penthouse hot talk, Oct. 26, 1993 | TX 3-639-159 | 1993 |

V9915 D493 P 15

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 261. | Penthouse hot talk, Dec. 30, 1993 | TX 3-741-491 | 1993 |
| 262. | Penthouse hot talk, Feb. 1, 1994 | TX 3-724-457 | 1994 |
| 263. | Penthouse hot talk, Mar. 8, 1994 | TX 3-724-678 | 1994 |
| 264. | Penthouse hot talk, Apr. 12, 1994 | TX 3-724-666 | 1994 |
| 265. | Penthouse hot talk, May 17, 1994 | TX 3-724-533 | 1994 |
| 266. | Penthouse hot talk, June 28, 1994 | TX 3-616-721 | 1994 |
| 267. | Penthouse hot talk, July 26, 1994 | TX 3-616-693 | 1994 |
| 268. | Penthouse hot talk, Oct. 4, 1994 | TX 4-015-224 | 1994 |
| 269. | Penthouse hot talk, Oct. 4, 1994 | TX 4-015-222 | 1994 |
| 270. | Penthouse hot talk, Nov. 8, 1994 | TX 4-015-161 | 1994 |
| 271. | Penthouse hot talk, Jan. 10, 1995 | TX 4-083-352 | 1995 |
| 272. | Penthouse hot talk, Mar. 7, 1995 | TX 4-045-651 | 1995 |
| 273. | Penthouse hot talk, Mar. 7, 1995 | TX 4-045-652 | 1995 |
| 274. | Penthouse hot talk, May 9, 1995 | TX 4-135-755 | 1995 |
| 275. | Penthouse hot talk, June 6, 1995 | TX 4-135-711 | 1995 |
| 276. | Penthouse hot talk, July 4, 1995 | TX 4-174-970 | 1995 |
| 277. | Penthouse hot talk, Aug. 8, 1995 | TX 4-174-893 | 1995 |
| 278. | Penthouse letters, July 20, 1993 | TX 3-641-779 | 1993 |
| 279. | Penthouse letters, Aug. 17, 1993 | TX 3-641-750 | 1993 |
| 280. | Penthouse letters, Oct. 12, 1993 | TX 3-639-161 | 1993 |
| 281. | Penthouse letters, Dec. 7, 1993 | TX 3-741-127 | 1993 |
| 282. | Penthouse letters, Jan. 4, 1994 | TX 3-741-110 | 1994 |
| 283. | Penthouse letters, Apr. 26, 1994 | TX 3-724-587 | 1994 |
| 284. | Penthouse letters, Feb. 1, 1994 | TX 3-724-390 | 1994 |
| 285. | Penthouse letters, Mar. 1, 1994 | TX 3-724-387 | 1994 |
| 286. | Penthouse letters, Mar. 29, 1994 | TX 3-953-727 | 1994 |
| 287. | Penthouse letters, May 17, 1994 | TX 3-724-534 | 1994 |
| 288. | Penthouse letters, June 21, 1994 | TX 3-616-682 | 1994 |
| 289. | Penthouse letters, July 19, 1994 | TX 3-616-694 | 1994 |
| 290. | Penthouse letters, Aug. 16, 1994 | TX 3-960-018 | 1994 |
| 291. | Penthouse letters, Sept. 13, 1994 | TX 3-960-019 | 1994 |
| 292. | Penthouse letters, Nov. 8, 1994 | TX 3-960-017 | 1994 |
| 293. | Penthouse letters, Dec. 6, 1994 | TX 4-015-160 | 1994 |

V3915 D493 P 16

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 294. | Penthouse letters, Dec. 13, 1994 | TX 4-018-220 | 1994 |
| 295. | Penthouse letters, Jan. 3, 1995 | TX 4-015-326 | 1995 |
| 296. | Penthouse letters, Feb. 28, 1995 | TX 4-045-626 | 1995 |
| 297. | Penthouse letters, Apr. 25, 1995 | TX 4-083-279 | 1995 |
| 298. | Penthouse letters, May 23, 1995 | TX 4-135-712 | 1995 |
| 299. | Penthouse letters, June 20, 1995 | TX 4-135-722 | 1995 |
| 300. | Penthouse letters, July 18, 1995 | TX 4-174-892 | 1995 |
| 301. | Penthouse letters, Aug. 15, 1995 | TX 4-174-906 | 1995 |
| 302. | Variations, Aug. 17, 1993 | TX 3-641-706 | 1993 |
| 303. | Variations, Sept. 21, 1993 | TX 3-639-166 | 1993 |
| 304. | Variations, Oct. 19, 1993 | TX 3-639-172 | 1993 |
| 305. | Variations, Oct. 19, 1993 | TX 3-639-169 | 1993 |
| 306. | Variations, Nov. 23, 1993 | TX 3-639-170 | 1993 |
| 307. | Variations, Dec. 21, 1993 | TX 3-741-154 | 1993 |
| 308. | Variations, Jan. 18, 1994 | TX 3-786-573 | 1994 |
| 309. | Variations, Feb. 15, 1994 | TX 3-724-413 | 1994 |
| 310. | Variations, Mar. 15, 1994 | TX 3-724-414 | 1994 |
| 311. | Variations, Apr. 26, 1994 | TX 3-724-648 | 1994 |
| 312. | Variations, Apr. 12, 1994 | TX 3-724-647 | 1994 |
| 313. | Variations, May 17, 1994 | TX 3-724-562 | 1994 |
| 314. | Variations, Oct. 25, 1994 | TX 4-015-281 | 1994 |
| 315. | Variations, June 21, 1994 | TX 3-724-564 | 1994 |
| 316. | Variations, July 19, 1994 | TX 3-616-683 | 1994 |
| 317. | Variations, Sept. 20, 1994 | TX 4-015-278 | 1994 |
| 318. | Variations, Nov. 1, 1994 | TX 4-015-280 | 1994 |
| 319. | Variations, Nov. 22, 1994 | TX 4-015-270 | 1994 |
| 320. | Variations, Jan. 17, 1995 | TX 4-015-277 | 1995 |
| 321. | Variations, Feb. 14, 1995 | TX 4-045-759 | 1995 |
| 322. | Variations, Mar. 7, 1995 | TX 4-045-624 | 1995 |
| 323. | Variations, Mar. 14, 1995 | TX 4-083-361 | 1995 |
| 324. | Variations, Apr. 11, 1995 | TX 4-045-684 | 1995 |
| 325. | Variations, June 6, 1995 | TX 4-135-747 | 1995 |
| 326. | Variations, July 4, 1995 | TX 4-135-746 | 1995 |

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 327. | Variations, Aug. 1, 1995 | TX 4-174-939 | 1995 |
| 328. | Variations, Aug. 15, 1995 | TX 4-174-938 | 1995 |
| 329. | Variations, Aug. 29, 1995 | TX 4-174-841 | 1995 |
| 330. | Forum : the pleasuring of America. | TX0004269729 | 1997 |
| 331. | Forum : the pleasuring of America. | TX0004269808 | 1997 |
| 332. | Forum : the pleasuring of America. | TX0004269809 | 1997 |
| 333. | Forum : the pleasuring of America. | TX0004269969 | 1997 |
| 334. | Forum : the pleasuring of America. | TX0004269968 | 1997 |
| 335. | Forum : the pleasuring of America. | TX0004270098 | 1997 |
| 336. | Forum : the pleasuring of America. | TX0004270102 | 1997 |
| 337. | Forum : the pleasuring of America. | TX0004555656 | 1997 |
| 338. | Forum : the pleasuring of America. | TX0004555795 | 1997 |
| 339. | Forum : the pleasuring of America. | TX0004555797 | 1997 |
| 340. | Girls of Penthouse. | TX0004269842 | 1997 |
| 341. | Girls of Penthouse. | TX0004269841 | 1997 |
| 342. | Girls of Penthouse. | TX0004269851 | 1997 |
| 343. | Girls of Penthouse. | TX0004269998 | 1997 |
| 344. | Girls of Penthouse. | TX0004269990 | 1997 |
| 345. | Girls of Penthouse. | TX0004555556 | 1997 |
| 346. | Girls of Penthouse. | TX0004555549 | 1997 |
| 347. | Girls of Penthouse. | TX0004555585 | 1997 |
| 348. | Girls of Penthouse. | TX0004555623 | 1997 |
| 349. | Girls of Penthouse. | TX0004555780 | 1997 |
| 350. | Girls of Penthouse. | TX0004555866 | 1997 |
| 351. | Girls of Penthouse. | TX0004555867 | 1997 |
| 352. | Letters to Penthouse 7. By Penthouse International, Ltd. | TX0005390492 | 10/20/00 |
| 353. | Letters to Penthouse 7.: celebrate the rites of passion / by the editors of Penthouse magazines | TX0004598210 | 04/30/97 |
| 354. | Penthouse comix : the international illustrated magazine for men. | TX0004269833 | 1997 |
| 355. | Penthouse comix : the international illustrated magazine for men. | TX0004269804 | 1997 |
| 356. | Penthouse comix : the international illustrated magazine for men. | TX0004270005 | 1997 |
| 357. | Penthouse comix : the international illustrated magazine for men. | TX0004270007 | 1997 |

-12-

| NUMBER | COPYRIGHT/TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 358. | Penthouse comix : the international illustrated magazine for men. | TX0004270003 | 1997 |
| 359. | Penthouse comix : the international illustrated magazine for men. | TX0004555564 | 1997 |
| 360. | Penthouse comix : the international illustrated magazine for men. | TX0004555631 | 1997 |
| 361. | Penthouse comix : the international illustrated magazine for men. | TX0004555791 | 1997 |
| 362. | Penthouse comix : the international illustrated magazine for men. | TX0004555796 | 1997 |
| 363. | Penthouse Forum. | TX0004556386 | 1997 |
| 364. | Penthouse Forum. | TX0004555701 | 1997 |
| 365. | Penthouse Hot Talk : the voice of America. | TX0004269529 | 1997 |
| 366. | Penthouse Hot Talk : the voice of America. | TX0004269806 | 1997 |
| 367. | Penthouse Hot Talk : the voice of America. | TX0004269835 | 1997 |
| 368. | Penthouse Hot Talk : the voice of America. | TX0004269999 | 1997 |
| 369. | Penthouse Hot Talk : the voice of America. | TX0004270008 | 1997 |
| 370. | Penthouse Hot Talk : the voice of America. | TX0004270015 | 1997 |
| 371. | Penthouse Hot Talk : the voice of America. | TX0004555550 | 1997 |
| 372. | Penthouse Hot Talk : the voice of America. | TX0004270054 | 1997 |
| 373. | Penthouse Hot Talk : the voice of America. | TX0004555617 | 1997 |
| 374. | Penthouse Hot Talk : the voice of America. | TX0004555679 | 1997 |
| 375. | Penthouse Hot Talk : the voice of America. | TX0004555738 | 1997 |
| 376. | Penthouse Hot Talk : the voice of America. | TX0004555704 | 1997 |
| 377. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269519 | 1997 |
| 378. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269834 | 1997 |
| 379. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004269837 | 1997 |
| 380. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004270006 | 1997 |
| 381. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004270004 | 1997 |
| 382. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004270107 | 1997 |
| 383. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004270109 | 1997 |
| 384. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004270084 | 1997 |
| 385. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004555613 | 1997 |

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 386. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004555588 | 1997 |
| 387. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004555705 | 1997 |
| 388. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004555706 | 1997 |
| 389. | Penthouse max. | TX0004269727 | 1997 |
| 390. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269534 | 1997 |
| 391. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269805 | 1997 |
| 392. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269850 | 1997 |
| 393. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269852 | 1997 |
| 394. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004269980 | 1997 |
| 395. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556388 | 1997 |
| 396. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555553 | 1997 |
| 397. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555565 | 1997 |
| 398. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555586 | 1997 |
| 399. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555590 | 1997 |
| 400. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555786 | 1997 |
| 401. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269731 | 1997 |
| 402. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269814 | 1997 |
| 403. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269812 | 1997 |
| 404. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004270071 | 1997 |
| 405. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269970 | 1997 |
| 406. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269971 | 1997 |
| 407. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004269862 | 1997 |
| 408. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004270101 | 1997 |
| 409. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555661 | 1997 |
| 410. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555659 | 1997 |
| 411. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555793 | 1997 |
| 412. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555794 | 1997 |
| 413. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555792 | 1997 |

V9916 D493 P 20

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 414. | Variations best. | TX0004269811 | 1997 |
| 415. | Variations best. | TX0004270073 | 1997 |
| 416. | Variations best. | TX0004812588 | 1997 |
| 417. | Best of Penthouse Forum letters. | TX0004556018 | 1998 |
| 418. | Best of Penthouse Forum letters. | TX0004556232 | 1998 |
| 419. | Best of Penthouse Forum letters. | TX0004812399 | 1998 |
| 420. | Forum : the pleasuring of America. | TX0004555915 | 1998 |
| 421. | Forum : the pleasuring of America. | TX0004555912 | 1998 |
| 422. | Forum : the pleasuring of America. | TX0004555911 | 1998 |
| 423. | Forum : the pleasuring of America. | TX0004556086 | 1998 |
| 424. | Forum : the pleasuring of America. | TX0004556083 | 1998 |
| 425. | Forum : the pleasuring of America. | TX0004556087 | 1998 |
| 426. | Forum : the pleasuring of America. | TX0004556231 | 1998 |
| 427. | Forum : the pleasuring of America. | TX0004556391 | 1998 |
| 428. | Forum : the pleasuring of America. | TX0004556396 | 1998 |
| 429. | Forum : the pleasuring of America. | TX0004556470 | 1998 |
| 430. | Forum : the pleasuring of America. | TX0004812400 | 1998 |
| 431. | Girls of Penthouse. | TX0004555865 | 1998 |
| 432. | Girls of Penthouse. | TX0004555887 | 1998 |
| 433. | Girls of Penthouse. | TX0004555988 | 1998 |
| 434. | Girls of Penthouse. | TX0004556183 | 1998 |
| 435. | Girls of Penthouse. | TX0004556182 | 1998 |
| 436. | Girls of Penthouse. | TX0004556181 | 1998 |
| 437. | Girls of Penthouse. | TX0004556316 | 1998 |
| 438. | Girls of Penthouse. | TX0004556489 | 1998 |
| 439. | Girls of Penthouse. | TX0004556493 | 1998 |
| 440. | Letters to Penthouse VIII / the editors of Penthouse magazine. | TX0004555842 | 03/05/98 |
| 441. | Penthouse comix : the international illustrated magazine for men. | TX0004555923 | 1998 |
| 442. | Penthouse comix : the international illustrated magazine for men. | TX0004555961 | 1998 |
| 443. | Penthouse comix : the international illustrated magazine for men. | TX0004556024 | 1998 |
| 444. | Penthouse comix : the international illustrated magazine for men. | TX0004556387 | 1998 |

V9916 D493 P 21

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 445. | Penthouse comix : the international illustrated magazine for men. | TX0004556167 | 1998 |
| 446. | Penthouse Forum. | TX0004812581 | 1998 |
| 447. | Penthouse Hot Talk : the voice of America. | TX0004555949 | 1998 |
| 448. | Penthouse Hot Talk : the voice of America. | TX0004555970 | 1998 |
| 449. | Penthouse Hot Talk : the voice of America. | TX0004555963 | 1998 |
| 450. | Penthouse Hot Talk : the voice of America. | TX0004556175 | 1998 |
| 451. | Penthouse Hot Talk : the voice of America. | TX0004556106 | 1998 |
| 452. | Penthouse Hot Talk : the voice of America. | TX0004556166 | 1998 |
| 453. | Penthouse Hot Talk : the voice of America. | TX0004556237 | 1998 |
| 454. | Penthouse Hot Talk : the voice of America. | TX0004556437 | 1998 |
| 455. | Penthouse Hot Talk : the voice of America. | TX0004556499 | 1998 |
| 456. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004555919 | 1998 |
| 457. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004555857 | 1998 |
| 458. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004555966 | 1998 |
| 459. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556009 | 1998 |
| 460. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556105 | 1998 |
| 461. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556132 | 1998 |
| 462. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556174 | 1998 |
| 463. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556255 | 1998 |
| 464. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556432 | 1998 |
| 465. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556431 | 1998 |
| 466. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004556486 | 1998 |
| 467. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812419 | 1998 |
| 468. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812498 | 1998 |
| 469. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555964 | 1998 |
| 470. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555921 | 1998 |
| 471. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004555948 | 1998 |

V3915 D493 P 22

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 472. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556000 | 1998 |
| 473. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556107 | 1998 |
| 474. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556165 | 1998 |
| 475. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556238 | 1998 |
| 476. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556288 | 1998 |
| 477. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556422 | 1998 |
| 478. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004556522 | 1998 |
| 479. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812404 | 1998 |
| 480. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555913 | 1998 |
| 481. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555920 | 1998 |
| 482. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004555910 | 1998 |
| 483. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004556085 | 1998 |
| 484. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813080 | 1998 |
| 485. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004556088 | 1998 |
| 486. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004556233 | 1998 |
| 487. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004556393 | 1998 |
| 488. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004556395 | 1998 |
| 489. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004556469 | 1998 |
| 490. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812398 | 1998 |
| 491. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812580 | 1998 |
| 492. | Variations best. | TX0004555922 | 1998 |
| 493. | Variations best. | TX0004556084 | 1998 |
| 494. | Variations best. | TX0004556397 | 1998 |
| 495. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0004813309 | 1999 |
| 496. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0004813131 | 1999 |
| 497. | Best of Penthouse Forum letters. | TX0004812612 | 1999 |
| 498. | Best of Penthouse Forum letters. | TX0004813135 | 1999 |
| 499. | Forum : the pleasuring of America. | TX0004813313 | 1999 |
| 500. | Forum : the pleasuring of America. | TX0004813310 | 1999 |

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 501. | Forum : the pleasuring of America. | TX0004812613 | 1999 |
| 502. | Forum : the pleasuring of America. | TX0004812611 | 1999 |
| 503. | Forum : the pleasuring of America. | TX0004812875 | 1999 |
| 504. | Forum : the pleasuring of America. | TX0004812871 | 1999 |
| 505. | Forum : the pleasuring of America. | TX0004812869 | 1999 |
| 506. | Forum : the pleasuring of America. | TX0004812872 | 1999 |
| 507. | Forum : the pleasuring of America. | TX0004813014 | 1999 |
| 508. | Forum : the pleasuring of America. | TX0004813013 | 1999 |
| 509. | Forum : the pleasuring of America. | TX0005172339 | 1999 |
| 510. | Forum : the pleasuring of America. | TX0004813132 | 1999 |
| 511. | Girls of Penthouse. | TX0004812516 | 1999 |
| 512. | Girls of Penthouse. | TX0004812644 | 1999 |
| 513. | Girls of Penthouse. | TX0004812798 | 1999 |
| 514. | Girls of Penthouse. | TX0004812834 | 1999 |
| 515. | Girls of Penthouse. | TX0004812930 | 1999 |
| 516. | Girls of Penthouse. | TX0004813120 | 1999 |
| 517. | Letters to Penthouse, 9 / editors of Penthouse magazine. | TX0005120270 | 11/17/99 |
| 518. | Mind & muscle power. | TX0005035629 | 1999 |
| 519. | Penthouse Forum. | TX0004812584 | 1999 |
| 520. | Penthouse Forum. | TX0004812585 | 1999 |
| 521. | Penthouse Hot Talk : the voice of America. | TX0004812534 | 1999 |
| 522. | Penthouse Hot Talk : the voice of America. | TX0004812680 | 1999 |
| 523. | Penthouse Hot Talk : the voice of America. | TX0004812800 | 1999 |
| 524. | Penthouse Hot Talk : the voice of America. | TX0004812764 | 1999 |
| 525. | Penthouse Hot Talk : the voice of America. | TX0004812936 | 1999 |
| 526. | Penthouse Hot Talk : the voice of America. | TX0004812965 | 1999 |
| 527. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812512 | 1999 |
| 528. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812490 | 1999 |
| 529. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004813361 | 1999 |
| 530. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812528 | 1999 |
| 531. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812639 | 1999 |

V9915 D493 P 24

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 532. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812730 | 1999 |
| 533. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812848 | 1999 |
| 534. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812784 | 1999 |
| 535. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004813165 | 1999 |
| 536. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004813098 | 1999 |
| 537. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004813072 | 1999 |
| 538. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812908 | 1999 |
| 539. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004812949 | 1999 |
| 540. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812507 | 1999 |
| 541. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812569 | 1999 |
| 542. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812527 | 1999 |
| 543. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812660 | 1999 |
| 544. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812796 | 1999 |
| 545. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812765 | 1999 |
| 546. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004813191 | 1999 |
| 547. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004813028 | 1999 |
| 548. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004813027 | 1999 |
| 549. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812909 | 1999 |
| 550. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004812970 | 1999 |
| 551. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812589 | 1999 |
| 552. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812587 | 1999 |
| 553. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813308 | 1999 |
| 554. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812583 | 1999 |
| 555. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812615 | 1999 |
| 556. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812877 | 1999 |
| 557. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812873 | 1999 |

V99 TS D493 P 25

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 558. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812876 | 1999 |
| 559. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004812868 | 1999 |
| 560. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813017 | 1999 |
| 561. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813011 | 1999 |
| 562. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813016 | 1999 |
| 563. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813012 | 1999 |
| 564. | Variations best. | TX0004812586 | 1999 |
| 565. | Variations best. | TX0004812878 | 1999 |
| 566. | Variations best. | TX0005000355 | 1999 |
| 567. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005172251 | 2000 |
| 568. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005201615 | 2000 |
| 569. | Forum : the pleasuring of America. | TX0005110884 | 2000 |
| 570. | Forum : the pleasuring of America. | TX0005172245 | 2000 |
| 571. | Forum : the pleasuring of America. | TX0005172252 | 2000 |
| 572. | Forum : the pleasuring of America. | TX0005172338 | 2000 |
| 573. | Forum : the pleasuring of America. | TX0005172263 | 2000 |
| 574. | Forum : the pleasuring of America. | TX0005201613 | 2000 |
| 575. | Forum : the pleasuring of America. | TX0005201614 | 2000 |
| 576. | Forum : the pleasuring of America. | TX0005217542 | 2000 |
| 577. | Girls of Penthouse. | TX0004813376 | 2000 |
| 578. | Girls of Penthouse. | TX0005110840 | 2000 |
| 579. | Girls of Penthouse. | TX0005172204 | 2000 |
| 580. | Girls of Penthouse. | TX0005172260 | 2000 |
| 581. | Girls of Penthouse. | TX0005201625 | 2000 |
| 582. | Girls of Penthouse. | TX0005217549 | 2000 |
| 583. | Letters to Penthouse X. By the editors of Penthouse Magazine. | TX0005346525 | 10/20/00 |
| 584. | Letters to Penthouse X : the hottest stories American loves to read--a perfect ten and rated X / the editors of Penthouse magazine [authors of a work made for hire] | TX0005110894 | 05/12/00 |
| 585. | Letters to Penthouse XI : where your wildest fantasies come true / the editors of Penthouse magazine. | TX0005286309 | 12/14/00 |
| 586. | Mind & muscle power. | TX0005063055 | 2000 |
| 587. | Mind & muscle power. | TX0005082015 | 2000 |

V9916 D493 P 26

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|------|------|------|------|
| 588. | Mind & muscle power. | TX0005095019 | 2000 |
| 589. | Mind & muscle power. | TX0005153447 | 2000 |
| 590. | Mind & muscle power. | TX0005148491 | 2000 |
| 591. | Mind & muscle power. | TX0005170696 | 2000 |
| 592. | Mind & muscle power. | TX0005178612 | 2000 |
| 593. | Penthouse Forum. | TX0004813211 | 2000 |
| 594. | Penthouse Forum. | TX0005110888 | 2000 |
| 595. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004813181 | 2000 |
| 596. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004813265 | 2000 |
| 597. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0004813332 | 2000 |
| 598. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005110878 | 2000 |
| 599. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005172288 | 2000 |
| 600. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005172203 | 2000 |
| 601. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005172254 | 2000 |
| 602. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005172256 | 2000 |
| 603. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005172320 | 2000 |
| 604. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005172321 | 2000 |
| 605. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005201628 | 2000 |
| 606. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005217551 | 2000 |
| 607. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004813289 | 2000 |
| 608. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004813266 | 2000 |
| 609. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0004813357 | 2000 |
| 610. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005110867 | 2000 |
| 611. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005110879 | 2000 |
| 612. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005110832 | 2000 |
| 613. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005172265 | 2000 |

V9918 0493 P 27

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 614. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005172253 | 2000 |
| 615. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005172274 | 2000 |
| 616. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005201626 | 2000 |
| 617. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005201629 | 2000 |
| 618. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005201627 | 2000 |
| 619. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813212 | 2000 |
| 620. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0004813210 | 2000 |
| 621. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005110882 | 2000 |
| 622. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005110886 | 2000 |
| 623. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005172246 | 2000 |
| 624. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005172247 | 2000 |
| 625. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005451680 | 2000 |
| 626. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005172262 | 2000 |
| 627. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005201616 | 2000 |
| 628. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005201617 | 2000 |
| 629. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005217541 | 2000 |
| 630. | Variations best. | TX0004813213 | 2000 |
| 631. | Variations best. | TX0005110883 | 2000 |
| 632. | Variations best. | TX0005172340 | 2000 |
| 633. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005328451 | 2001 |
| 634. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005328621 | 2001 |
| 635. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005451879 | 2001 |
| 636. | Between the sheets : a collection of erotic bedtime stories / by the Editors of Penthouse Magazine. | TX0005361625 | 08/03/01 |
| 637. | Forum : the pleasuring of America. | TX0005217543 | 2001 |
| 638. | Forum : the pleasuring of America. | TX0005237864 | 2001 |
| 639. | Forum : the pleasuring of America. | TX0005328452 | 2001 |
| 640. | Forum : the pleasuring of America. | TX0005328513 | 2001 |
| 641. | Forum : the pleasuring of America. | TX0005328514 | 2001 |
| 642. | Forum : the pleasuring of America. | TX0005328537 | 2001 |
| 643. | Forum : the pleasuring of America. | TX0005328618 | 2001 |

V8915 D493 P 28

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 644. | Forum : the pleasuring of America. | TX0005328619 | 2001 |
| 645. | Forum : the pleasuring of America. | TX0005328620 | 2001 |
| 646. | Forum : the pleasuring of America. | TX0005386513 | 2001 |
| 647. | Forum : the pleasuring of America. | TX0005451790 | 2001 |
| 648. | Girls of Penthouse. | TX0005237849 | 2001 |
| 649. | Girls of Penthouse. | TX0005328455 | 2001 |
| 650. | Girls of Penthouse. | TX0005328517 | 2001 |
| 651. | Girls of Penthouse. | TX0005328539 | 2001 |
| 652. | Girls of Penthouse. | TX0005328628 | 2001 |
| 653. | Girls of Penthouse. | TX0005386518 | 2001 |
| 654. | Girls of Penthouse. | TX0005451868 | 2001 |
| 655. | Girls of Penthouse. | TX0005451864 | 2001 |
| 656. | Letters to Penthouse : 13 / the editors of Penthouse magazine. | TX0005432741 | 08/10/01 |
| 657. | Letters to Penthouse : 14 / the editors of Penthouse magazine. | TX0005485222 | 02/08/02 |
| 658. | Letters to Penthouse XII / the editors of Penthouse magazine. | TX0005372807 | 04/13/01 |
| 659. | Penthouse Forum. | TX0005451985 | 2001 |
| 660. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005073009 | 2001 |
| 661. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005237861 | 2001 |
| 662. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005237862 | 2001 |
| 663. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005293819 | 2001 |
| 664. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005328520 | 2001 |
| 665. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005328521 | 2001 |
| 666. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005328540 | 2001 |
| 667. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005328632 | 2001 |
| 668. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005328633 | 2001 |
| 669. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005328634 | 2001 |
| 670. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005386517 | 2001 |
| 671. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451691 | 2001 |

V9916 D493 P 29

| No. | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 672. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451873 | 2001 |
| 673. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005217550 | 2001 |
| 674. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005237863 | 2001 |
| 675. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005237860 | 2001 |
| 676. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005328454 | 2001 |
| 677. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005328518 | 2001 |
| 678. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005328519 | 2001 |
| 679. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005328631 | 2001 |
| 680. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005328629 | 2001 |
| 681. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005328630 | 2001 |
| 682. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005386516 | 2001 |
| 683. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005451870 | 2001 |
| 684. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005451690 | 2001 |
| 685. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005073008 | 2001 |
| 686. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005237846 | 2001 |
| 687. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005237847 | 2001 |
| 688. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005328453 | 2001 |
| 689. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005328515 | 2001 |
| 690. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005328538 | 2001 |
| 691. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005328622 | 2001 |
| 692. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005328623 | 2001 |
| 693. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005328624 | 2001 |
| 694. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005386515 | 2001 |
| 695. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005582774 | 2001 |
| 696. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005451883 | 2001 |
| 697. | Variations best. | TX0005237848 | 2001 |
| 698. | Variations best. | TX0005386566 | 2001 |
| 699. | Variations best. | TX0005386514 | 2001 |

-24-

V9915 D493 P 30

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 700. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005451986 | 2002 |
| 701. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005785311 | 2002 |
| 702. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005452321 | 2002 |
| 703. | Forum : the pleasuring of America. | TX0005451880 | 2002 |
| 704. | Forum : the pleasuring of America. | TX0005451881 | 2002 |
| 705. | Forum : the pleasuring of America. | TX0005451882 | 2002 |
| 706. | Forum : the pleasuring of America. | TX0005785306 | 2002 |
| 707. | Forum : the pleasuring of America. | TX0005452174 | 2002 |
| 708. | Forum : the pleasuring of America. | TX0005785307 | 2002 |
| 709. | Forum : the pleasuring of America. | TX0005785308 | 2002 |
| 710. | Forum : the pleasuring of America. | TX0005452255 | 2002 |
| 711. | Forum : the pleasuring of America. | TX0005452256 | 2002 |
| 712. | Forum : the pleasuring of America. | TX0005452257 | 2002 |
| 713. | Forum : the pleasuring of America. | TX0005452258 | 2002 |
| 714. | Girls of Penthouse. | TX0005451865 | 2002 |
| 715. | Girls of Penthouse. | TX0005451866 | 2002 |
| 716. | Girls of Penthouse. | TX0005451869 | 2002 |
| 717. | Girls of Penthouse. | TX0005451867 | 2002 |
| 718. | Girls of Penthouse. | TX0005451988 | 2002 |
| 719. | Girls of Penthouse. | TX0005785300 | 2002 |
| 720. | Girls of Penthouse. | TX0005452263 | 2002 |
| 721. | Girls of Penthouse. | TX0005785301 | 2002 |
| 722. | Girls of Penthouse. Black label. | TX0005452262 | 2002 |
| 723. | Girls of Penthouse. Black label. | TX0005452264 | 2002 |
| 724. | Letters to penhouse XVI | TX0005594457 | 08/15/02 |
| 725. | Letters to Penthouse : 17 / the editors of Penthouse magazine. | TX0005675034 | 12/27/02 |
| 726. | Letters to Penthouse XV / the editors of Penthouse magazine. | TX0005511603 | 04/17/02 |
| 727. | Penthouse Forum. | TX0005785310 | 2002 |
| 728. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451874 | 2002 |
| 729. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005785302 | 2002 |

V9915 D483 P 31

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 730. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451875 | 2002 |
| 731. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005785303 | 2002 |
| 732. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451989 | 2002 |
| 733. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451879 | 2002 |
| 734. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451876 | 2002 |
| 735. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005451990 | 2002 |
| 736. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005785304 | 2002 |
| 737. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452269 | 2002 |
| 738. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452270 | 2002 |
| 739. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452270 | 2002 |
| 740. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452272 | 2002 |
| 741. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005785305 | 2002 |
| 742. | Penthouse : naughty by nature / the editors of Penthouse magazine. | TX0005485219 | 02/08/02 |
| 743. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005551770 | 2002 |
| 744. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005451987 | 2002 |
| 745. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005451871 | 2002 |
| 746. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005785296 | 2002 |
| 747. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005451872 | 2002 |
| 748. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005451934 | 2002 |
| 749. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005785297 | 2002 |
| 750. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005785298 | 2002 |
| 751. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452265 | 2002 |
| 752. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452266 | 2002 |
| 753. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452267 | 2002 |

V9918 D493 P 32

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 754. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452268 | 2002 |
| 755. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005785299 | 2002 |
| 756. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005451884 | 2002 |
| 757. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005451885 | 2002 |
| 758. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005785312 | 2002 |
| 759. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005451878 | 2002 |
| 760. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005785313 | 2002 |
| 761. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005785314 | 2002 |
| 762. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005785317 | 2002 |
| 763. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005452259 | 2002 |
| 764. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005452260 | 2002 |
| 765. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005452261 | 2002 |
| 766. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005785315 | 2002 |
| 767. | Variations best. | TX0005451877 | 2002 |
| 768. | Variations best. | TX0005451886 | 2002 |
| 769. | Variations best. | TX0005452330 | 2002 |
| 770. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005452325 | 2003 |
| 771. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005909911 | 2003 |
| 772. | Forum : the pleasuring of America. | TX0005452405 | 2003 |
| 773. | Forum : the pleasuring of America. | TX0005785309 | 2003 |
| 774. | Forum : the pleasuring of America. | TX0005909904 | 2003 |
| 775. | Forum : the pleasuring of America. | TX0005909905 | 2003 |
| 776. | Forum : the pleasuring of America. | TX0005909906 | 2003 |
| 777. | Forum : the pleasuring of America. | TX0005909907 | 2003 |
| 778. | Girls of Penthouse. | TX0005452335 | 2003 |
| 779. | Girls of Penthouse. | TX0005452336 | 2003 |
| 780. | Girls of Penthouse. | TX0005452407 | 2003 |
| 781. | Girls of Penthouse. | TX0005802046 | 2003 |
| 782. | Girls of Penthouse. | TX0005909920 | 2003 |
| 783. | Girls of Penthouse. | TX0005802259 | 2003 |
| 784. | Girls of Penthouse. | TX0005909921 | 2003 |

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 785. | Girls of Penthouse. | TX0005805560 | 2003 |
| 786. | Girls of Penthouse. | TX0005909967 | 2003 |
| 787. | Girls of Penthouse. Black label. | TX0005909922 | 2003 |
| 788. | Girls of Penthouse. Black label. | TX0005802261 | 2003 |
| 789. | Letters to Penthouse XIX : let's get the party started / editors of Penthouse Magazine. | TX0005857880 | 12/11/03 |
| 790. | Letters to Penthouse XVIII : the hottest sex just this side of legal! / by the editors of Penthouse Magazine. | TX0005772404 | 08/11/03 |
| 791. | Penthouse erotic video guide : the best of the XXX over 400 adult films reviewed / edited by Eric Danville. | TX0005744482 | 05/07/03 |
| 792. | Penthouse Forum. | TX0005452322 | 2003 |
| 793. | Penthouse Forum. | TX0005452323 | 2003 |
| 794. | Penthouse Forum. | TX0005452324 | 2003 |
| 795. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452337 | 2003 |
| 796. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452338 | 2003 |
| 797. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452339 | 2003 |
| 798. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452340 | 2003 |
| 799. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005452488 | 2003 |
| 800. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005802047 | 2003 |
| 801. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005909923 | 2003 |
| 802. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005909969 | 2003 |
| 803. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005909924 | 2003 |
| 804. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005909925 | 2003 |
| 805. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452331 | 2003 |
| 806. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452332 | 2003 |
| 807. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452333 | 2003 |
| 808. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452334 | 2003 |
| 809. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005452487 | 2003 |
| 810. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005802045 | 2003 |

V9815 D493 P 34

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 811. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005802255 | 2003 |
| 812. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005802256 | 2003 |
| 813. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005802257 | 2003 |
| 814. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005802258 | 2003 |
| 815. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005909960 | 2003 |
| 816. | Penthouse variations / by the editors of Penthouse magazine. | TX0005893465 | 12/11/03 |
| 817. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005452327 | 2003 |
| 818. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005452328 | 2003 |
| 819. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005452329 | 2003 |
| 820. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005452406 | 2003 |
| 821. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005785316 | 2003 |
| 822. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005909913 | 2003 |
| 823. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005909914 | 2003 |
| 824. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005909962 | 2003 |
| 825. | Variations best. | TX0005452326 | 2003 |
| 826. | Variations best. | TX0005909915 | 2003 |
| 827. | Variations best. | TX0005909916 | 2003 |
| 828. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005909912 | 2004 |
| 829. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005910051 | 2004 |
| 830. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0005910230 | 2004 |
| 831. | Best of Penthouse Forum letters. | TX0006114680 | 2004 |
| 832. | Forum : the pleasuring of America. | TX0005909908 | 2004 |
| 833. | Forum : the pleasuring of America. | TX0005909909 | 2004 |
| 834. | Forum : the pleasuring of America. | TX0005909910 | 2004 |
| 835. | Forum : the pleasuring of America. | TX0006116489 | 2004 |
| 836. | Forum : the pleasuring of America. | TX0006114679 | 2004 |
| 837. | Girls of Penthouse. | TX0006114672 | 2004 |
| 838. | Girls of Penthouse. | TX0005909968 | 2004 |
| 839. | Girls of Penthouse. | TX0005910059 | 2004 |
| 840. | Girls of Penthouse. | TX0005910060 | 2004 |

V99TS D493 P 36

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 841. | Girls of Penthouse. | TX0005910237 | 2004 |
| 842. | Girls of Penthouse. | TX0006114670 | 2004 |
| 843. | Girls of Penthouse. | TX0006114671 | 2004 |
| 844. | Letters to Penthouse XX : girl on girl! / the editors of Penthouse Magazine. | TX0006012114 | 08/03/04 |
| 845. | Letters to Penthouse XXI : when wild meets raunchy / the editors of Penthouse Magazine. | TX0006127183 | 02/07/05 |
| 846. | Penthouse Forum. | TX0005910048 | 2004 |
| 847. | Penthouse Forum. | TX0005910049 | 2004 |
| 848. | Penthouse Forum. | TX0005910050 | 2004 |
| 849. | Penthouse Forum. | TX0005910227 | 2004 |
| 850. | Penthouse Forum. | TX0005910228 | 2004 |
| 851. | Penthouse Forum. | TX0005910229 | 2004 |
| 852. | Penthouse Forum. | TX0005910312 | 2004 |
| 853. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005909926 | 2004 |
| 854. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005909927 | 2004 |
| 855. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005909970 | 2004 |
| 856. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005910061 | 2004 |
| 857. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005910062 | 2004 |
| 858. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005910063 | 2004 |
| 859. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005910064 | 2004 |
| 860. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005910238 | 2004 |
| 861. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005910239 | 2004 |
| 862. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0005910240 | 2004 |
| 863. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114673 | 2004 |
| 864. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114674 | 2004 |
| 865. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114675 | 2004 |
| 866. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005909961 | 2004 |
| 867. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005909966 | 2004 |

V99151493 P 36

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 868. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005910055 | 2004 |
| 869. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005910056 | 2004 |
| 870. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005910057 | 2004 |
| 871. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005910058 | 2004 |
| 872. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005910224 | 2004 |
| 873. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005910225 | 2004 |
| 874. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0005910226 | 2004 |
| 875. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006114665 | 2004 |
| 876. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006114666 | 2004 |
| 877. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005909963 | 2004 |
| 878. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005909964 | 2004 |
| 879. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005909965 | 2004 |
| 880. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910047 | 2004 |
| 881. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910052 | 2004 |
| 882. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910053 | 2004 |
| 883. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910231 | 2004 |
| 884. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910232 | 2004 |
| 885. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910233 | 2004 |
| 886. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910310 | 2004 |
| 887. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0005910311 | 2004 |
| 888. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114681 | 2004 |
| 889. | Variations best. | TX0005909917 | 2004 |
| 890. | Variations best. | TX0005910054 | 2004 |
| 891. | Variations best. | TX0005910234 | 2004 |
| 892. | Views from the top and bottom / the editors of Penthouse Magazine. | TX0006106457 | 02/07/05 |
| 893. | Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0006115021 | 2005 |
| 894. | Best of Penthouse Forum letters. | TX0006346181 | 2005 |
| 895. | Best of Penthouse Forum letters. | TX0006346174 | 2005 |
| 896. | Forum : the pleasuring of America. | TX0006114754 | 2005 |

V8915 D493 P 37

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 897. | Forum : the pleasuring of America. | TX0006114755 | 2005 |
| 898. | Forum : the pleasuring of America. | TX0006114756 | 2005 |
| 899. | Forum : the pleasuring of America. | TX0006114757 | 2005 |
| 900. | Forum : the pleasuring of America. | TX0006115018 | 2005 |
| 901. | Forum : the pleasuring of America. | TX0006115019 | 2005 |
| 902. | Forum : the pleasuring of America. | TX0006115020 | 2005 |
| 903. | Girls of Penthouse. | TX0006114765 | 2005 |
| 904. | Girls of Penthouse. | TX0006115014 | 2005 |
| 905. | Girls of Penthouse. | TX0006313085 | 2005 |
| 906. | Girls of Penthouse. | TX0006203658 | 2005 |
| 907. | Girls of Penthouse. | TX0006317357 | 2005 |
| 908. | Penthouse Forum. | TX0006313165 | 2005 |
| 909. | Penthouse Forum. | TX0006313166 | 2005 |
| 910. | Penthouse Forum. | TX0006313168 | 2005 |
| 911. | Penthouse Forum. | TX0006313169 | 2005 |
| 912. | Penthouse Forum. | TX0006346171 | 2005 |
| 913. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114676 | 2005 |
| 914. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114677 | 2005 |
| 915. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114678 | 2005 |
| 916. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114764 | 2005 |
| 917. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006114824 | 2005 |
| 918. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006115015 | 2005 |
| 919. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006115016 | 2005 |
| 920. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006115017 | 2005 |
| 921. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313086 | 2005 |
| 922. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313087 | 2005 |
| 923. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313081 | 2005 |
| 924. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313080 | 2005 |
| 925. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313046 | 2005 |

V9915 D493 P 38

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| | al.]. | | |
| 926. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006114667 | 2005 |
| 927. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006114668 | 2005 |
| 928. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006114669 | 2005 |
| 929. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006114822 | 2005 |
| 930. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006114823 | 2005 |
| 931. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006115011 | 2005 |
| 932. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006115012 | 2005 |
| 933. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006115013 | 2005 |
| 934. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006203662 | 2005 |
| 935. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006313084 | 2005 |
| 936. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006313088 | 2005 |
| 937. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006313083 | 2005 |
| 938. | Penthouse unleashed : sex tips. | TX0006188200 | 06/03/05 |
| 939. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114759 | 2005 |
| 940. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114760 | 2005 |
| 941. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114764 | 2005 |
| 942. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114762 | 2005 |
| 943. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114922 | 2005 |
| 944. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114923 | 2005 |
| 945. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006115022 | 2005 |
| 946. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006114924 | 2005 |
| 947. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006313170 | 2005 |
| 948. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203674 | 2005 |
| 949. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203671 | 2005 |
| 950. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006313159 | 2005 |
| 951. | True confessions / the editors of Penthouse magazine. | TX0006305998 | 09/26/05 |
| 952. | Variations best. | TX0006114763 | 2005 |
| 953. | Variations best. | TX0006115023 | 2005 |

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 954. | Variations best. | TX0006346175 | 2005 |
| 955. | Best of Penthouse Forum letters. | TX0006203676 | 2006 |
| 956. | Best of Penthouse Forum letters. | TX0006497028 | 2006 |
| 957. | Girls of Penthouse. | TX0006355061 | 2006 |
| 958. | Girls of Penthouse. | TX0006346117 | 2006 |
| 959. | Girls of Penthouse. | TX0006203645 | 2006 |
| 960. | Girls of Penthouse. | TX0006203690 | 2006 |
| 961. | Girls of Penthouse. | TX0006203686 | 2006 |
| 962. | Girls of Penthouse. | TX0006545441 | 2006 |
| 963. | Letters to Pethouse XXVI : destination S-E-X. | TX0006509639 | 02/08/07 |
| 964. | Penthouse Forum. | TX0006346172 | 2006 |
| 965. | Penthouse Forum. | TX0006346170 | 2006 |
| 966. | Penthouse Forum. | TX0006346177 | 2006 |
| 967. | Penthouse Forum. | TX0006346180 | 2006 |
| 968. | Penthouse Forum. | TX0006203588 | 2006 |
| 969. | Penthouse Forum. | TX0006203591 | 2006 |
| 970. | Penthouse Forum. | TX0006203751 | 2006 |
| 971. | Penthouse Forum. | TX0006203673 | 2006 |
| 972. | Penthouse Forum. | TX0006203753 | 2006 |
| 973. | Penthouse Forum. | TX0006203755 | 2006 |
| 974. | Penthouse Forum. | TX0006543199 | 2006 |
| 975. | Penthouse international pets. | VA0001380277 | 09/18/06 |
| 976. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313047 | 2006 |
| 977. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313048 | 2006 |
| 978. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006313049 | 2006 |
| 979. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006346120 | 2006 |
| 980. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006346131 | 2006 |
| 981. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006203630 | 2006 |
| 982. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006203619 | 2006 |
| 983. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006203643 | 2006 |

V9915 D493 P 40

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 984. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006203692 | 2006 |
| 985. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006203691 | 2006 |
| 986. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006203689 | 2006 |
| 987. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006497035 | 2006 |
| 988. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006313053 | 2006 |
| 989. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006313052 | 2006 |
| 990. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006346130 | 2006 |
| 991. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006346129 | 2006 |
| 992. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006203631 | 2006 |
| 993. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006203644 | 2006 |
| 994. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006203618 | 2006 |
| 995. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006203663 | 2006 |
| 996. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006203664 | 2006 |
| 997. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006203687 | 2006 |
| 998. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006497049 | 2006 |
| 999. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006497050 | 2006 |
| 1000. | Penthouse uncensored VI : ultimate erotica. | TX0006518360 | 01/29/07 |
| 1001. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006313160 | 2006 |
| 1002. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006313161 | 2006 |
| 1003. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006346176 | 2006 |
| 1004. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006346179 | 2006 |
| 1005. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203589 | 2006 |
| 1006. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203594 | 2006 |
| 1007. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203590 | 2006 |
| 1008. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203752 | 2006 |
| 1009. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203754 | 2006 |
| 1010. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006203757 | 2006 |

V0015 D493 P 41

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 1011. Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006497027 | 2006 |
| 1012. Shay Laren: Image #P 21555-1 (004) | VA0001688971 | 11/10/09 |
| 1013. Variations best. | TX0006346173 | 2006 |
| 1014. Variations best. | TX0006417740 | 2006 |
| 1015. Variations best. | TX0006203756 | 2006 |
| 1016. Andie Valetino: Image # PV-431-2 (003) | VA0001688969 | 11/10/09 |
| 1017. Best of Forum letters / executive editor, John Heidenry ... [et al.]]. | TX0006816929 | 2007 |
| 1018. Best of Penthouse Forum letters. | TX0006591516 | 2007 |
| 1019. Best of Penthouse Forum letters. | TX0006971411 | 2007 |
| 1020. BEST OF PENTHOUSE FORUM LETTERS #109. [Published: 2007-07-24. Issue: vol. 20, no. 4] | TX0006816929 | 08/01/07 |
| 1021. Girls of Penthouse. | TX0006578026 | 2007 |
| 1022. Girls of Penthouse. | TX0006543287 | 2007 |
| 1023. Girls of Penthouse. | TX0006590223 | 2007 |
| 1024. Girls of Penthouse. | TX0006848068 | 2007 |
| 1025. Girls of Penthouse. | TX0006826449 | 2007 |
| 1026. Girls of Penthouse. | TX0006890634 | 2007 |
| 1027. Girls of Penthouse. | TX0006967780 | 2007 |
| 1028. Heather Vandeven PH-21594-4 (009) | VA0001688970 | 11/10/09 |
| 1029. LETTERS TO PENTHOUSE XXVIII: THREESOMES, FOURSOMES, AND MORESOMES. | TX0006833480 | 09/06/07 |
| 1030. Penthouse Forum. | TX0006543202 | 2007 |
| 1031. Penthouse Forum. | TX0006595005 | 2007 |
| 1032. Penthouse Forum. | TX0006595003 | 2007 |
| 1033. Penthouse Forum. | TX0006595007 | 2007 |
| 1034. Penthouse Forum. | TX0006578039 | 2007 |
| 1035. Penthouse Forum. | TX0006590213 | 2007 |
| 1036. Penthouse Forum. | TX0006840896 | 2007 |
| 1037. Penthouse Forum. | TX0006836441 | 2007 |
| 1038. Penthouse Forum. | TX0006890614 | 2007 |
| 1039. Penthouse Forum. | TX0006890600 | 2007 |
| 1040. Penthouse Forum. | TX0006967757 | 2007 |
| 1041. PENTHOUSE FORUM. [Published: 2007-07-10. Issue: vol. 37, no. 8, August 2007] | TX0006840896 | 08/01/07 |

V9915 D493 P 42

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1042. | PENTHOUSE FORUM. [Published: 2007-12-11. Issue: vol. 38, no. 1, January 2008] | TX0006967757 | 08/01/15 |
| 1043. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006545436 | 2007 |
| 1044. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006545450 | 2007 |
| 1045. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006543286 | 2007 |
| 1046. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006594993 | 2007 |
| 1047. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006543293 | 2007 |
| 1048. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006590222 | 2007 |
| 1049. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006590207 | 2007 |
| 1050. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006819525 | 2007 |
| 1051. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006825568 | 2007 |
| 1052. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006890627 | 2007 |
| 1053. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006890626 | 2007 |
| 1054. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006967804 | 2007 |
| 1055. | PENTHOUSE LETTERS. [Published: 2007-11-06. Issue: vol. 25, no. 13, Holiday 2007] | TX0006890626 | 11/23/07 |
| 1056. | PENTHOUSE. [Published: 2007-07-10. Issue: vol. 38, no. 12, August 2007] | TX0006816938 | 08/01/07 |
| 1057. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006545437 | 2007 |
| 1058. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006543285 | 2007 |
| 1059. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006543292 | 2007 |
| 1060. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006578033 | 2007 |
| 1061. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006590224 | 2007 |
| 1062. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006816938 | 2007 |
| 1063. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006836446 | 2007 |
| 1064. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006890623 | 2007 |
| 1065. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006890630 | 2007 |

V9915 D493 P 43

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATES |
|---|---|---|---|
| 1066. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006971417 | 2007 |
| 1067. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006543200 | 2007 |
| 1068. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006595004 | 2007 |
| 1069. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006595002 | 2007 |
| 1070. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006590214 | 2007 |
| 1071. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006578040 | 2007 |
| 1072. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006590212 | 2007 |
| 1073. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006816933 | 2007 |
| 1074. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006826432 | 2007 |
| 1075. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006890620 | 2007 |
| 1076. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006890603 | 2007 |
| 1077. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006971408 | 2007 |
| 1078. | PENTHOUSE VARIATIONS. [Published: 2007-07-10. Issue: vol. 29, no. 8, August 2007] | TX0006816933 | 08/01/07 |
| 1079. | Variations best. | TX0006543201 | 2007 |
| 1080. | Variations best. | TX0006591517 | 2007 |
| 1081. | Variations best. | TX0006890610 | 2007 |
| 1082. | Best of Penthouse Forum letters. | TX0006848117 | 2008 |
| 1083. | Best of Penthouse Forum letters. | TX0006881935 | 2008 |
| 1084. | Best of Penthouse Forum letters. | TX0006946957 | 2008 |
| 1085. | BEST OF PENTHOUSE FORUM LETTERS #115. [Published: 2008-07-22. Issue: vol. 21, no. 4] | TX0006881935 | 08/25/08 |
| 1086. | BEST OF VARIATIONS #114. [Published: 2008-05-20. Issue: vol. 21, no. 3] | TX0007082939 | 06/06/08 |
| 1087. | BEST OF VARIATIONS. [Published: 2008-09-23. Issue: vol. 21, no. 5] | TX0006881940 | 09/26/08 |
| 1088. | Girls of Penthouse. | TX0006881949 | 2008 |
| 1089. | Girls of Penthouse. | TX0006856685 | 2008 |
| 1090. | Girls of Penthouse. | TX0006881954 | 2008 |
| 1091. | Girls of Penthouse. | TX0006890026 | 2008 |
| 1092. | LETTERS TO PENTHOUSE XXX: Extreme Sex, Maximum Pleasure. | TX0006983201 | 03/07/08 |
| 1093. | Letters to the Penthouse XXXI: Serving It Up Hot and Dirty. | TX0007239358 | 05/19/08 |
| 1094. | Penthouse Forum. | TX0006835868 | 2008 |
| 1095. | Penthouse Forum. | TX0006881944 | 2008 |

-38-

V9915 D493 P 44

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1096. | Penthouse Forum. | TX0006848541 | 2008 |
| 1097. | Penthouse Forum. | TX0006848060 | 2008 |
| 1098. | Penthouse Forum. | TX0006856682 | 2008 |
| 1099. | Penthouse Forum. | TX0006871480 | 2008 |
| 1100. | Penthouse Forum. | TX0006881939 | 2008 |
| 1101. | Penthouse Forum. | TX0006881933 | 2008 |
| 1102. | Penthouse Forum. | TX0006994240 | 2008 |
| 1103. | PENTHOUSE FORUM. [Published: 2008-05-13. Issue: vol. 38, no. 6, June 2008] | TX0007103809 | 05/27/08 |
| 1104. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006881967 | 2008 |
| 1105. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006881946 | 2008 |
| 1106. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006848084 | 2008 |
| 1107. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006848132 | 2008 |
| 1108. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006848052 | 2008 |
| 1109. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006856694 | 2008 |
| 1110. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006881965 | 2008 |
| 1111. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006881952 | 2008 |
| 1112. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006881951 | 2008 |
| 1113. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006881963 | 2008 |
| 1114. | Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006972441 | 2008 |
| 1115. | PENTHOUSE. [Published: 2008-05-20. Issue: vol. 39, no. 10, June 2008] | TX0007104353 | 05/27/08 |
| 1116. | PENTHOUSE. [Published: 2008-07-15. Issue: vol. 39, no. 12, August 2008] | TX0007082591 | 07/17/08 |
| 1117. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006835882 | 2008 |
| 1118. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006848080 | 2008 |
| 1119. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006848096 | 2008 |
| 1120. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0009848040 | 2008 |
| 1121. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006871594 | 2008 |

V9915 D493 P 45

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1122. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006881955 | 2008 |
| 1123. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006881961 | 2008 |
| 1124. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006972444 | 2008 |
| 1125. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006835883 | 2008 |
| 1126. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006881943 | 2008 |
| 1127. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006848105 | 2008 |
| 1128. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006848127 | 2008 |
| 1129. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006848122 | 2008 |
| 1130. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006856676 | 2008 |
| 1131. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006881936 | 2008 |
| 1132. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006881932 | 2008 |
| 1133. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006890034 | 2008 |
| 1134. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006915650 | 2008 |
| 1135. | THOUSE FORUM. [Published: 2008-10-07. Issue: vol. 38, no. 11, November 2008] | TX0007193320 | 11/03/08 |
| 1136. | THOUSE LETTERS. [Published: 2008-10-14. Issue: vol. 26, no. 12, December 2008] | TX0007193341 | 11/03/08 |
| 1137. | THOUSE. [Published: 2008-10-14. Issue: vol. 40, no. 3, November 2008] | TX0007193335 | 11/03/08 |
| 1138. | THOUSE VARIATIONS. [Published: 2008-09-30. Issue: vol. 30, no. 11, November 2008] | TX0007193327 | 11/03/08 |
| 1139. | Variations best. | TX0006851763 | 2008 |
| 1140. | Variations best. | TX0006881940 | 2008 |
| 1141. | Letters to Penthouse XXXV: Naughty Pleasure Parties Revealed. | TX0007066719 | 10/13/09 |
| 1142. | BEST OF PENTHOUSE FORUM LETTERS #123. [Published: 2009-11-24. Issue: vol. 22, no. 6] | TX0007180777 | 02/24/10 |
| 1143. | BEST OF PENTHOUSE FORUM LETTERS. [Published: 2009-07-21. Issue: vol. 22, no. 4] | TX0007082948 | 09/14/09 |
| 1144. | BEST OF VARIATIONS #122. [Published: 2009-09-22. Issue: vol. 22, no. 5, November 2009] | TX0007178665 | 12/28/09 |
| 1145. | Girls of Penthouse. | TX0006933898 | 2009 |
| 1146. | Girls of Penthouse. | TX0006946933 | 2009 |
| 1147. | Girls of Penthouse. | TX0006965535 | 2009 |
| 1148. | Girls of Penthouse. | TX0006969033 | 2009 |
| 1149. | GIRLS OF PENTHOUSE. [Published: 2009-10-20. Issue: vol. 33, no. 6, Nov/Dec. 2009] | TX0007178610 | 12/28/09 |
| 1150. | GIRLS OF PENTHOUSE. [Published: 2009-12-22. | TX0007181399 | 02/24/10 |

V9515 D493 P 46

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| Issue: vol. 34, no. 1, January/February 2010] | | |
| 1151. Life on Top. | TXu001627675 | 02/24/09 |
| 1152. PENTHOUSE 4 1 5 January 2010 Monthly. [Published: 2009-12-15. Issue: vol. 41, no. 5, January 2010] | TX0007180743 | 02/24/10 |
| 1153. Penthouse Forum. | TX0006915668 | 2009 |
| 1154. Penthouse Forum. | TX0006933970 | 2009 |
| 1155. Penthouse Forum. | TX0006946961 | 2009 |
| 1156. Penthouse Forum. | TX0006965565 | 2009 |
| 1157. Penthouse Forum. | TX0006965556 | 2009 |
| 1158. PENTHOUSE FORUM. [Published: 2009-07-14. Issue: vol. 39, no. 8, August 2009] | TX0007082942 | 09/14/09 |
| 1159. PENTHOUSE FORUM. [Published: 2009-09-22. Issue: vol. 39, no. 10, Oct/Nov. 2009] | TX0007178659 | 12/28/09 |
| 1160. PENTHOUSE FORUM. [Published: 2009-10-20. Issue: vol. 39, no. 12, December 2009] | TX0007180767 | 02/24/10 |
| 1161. PENTHOUSE FORUM. [Published: 2009-12-08. Issue: vol. 40, no. 1, January 2010] | TX0007180766 | 02/24/10 |
| 1162. Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006915581 | 2009 |
| 1163. Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006933879 | 2009 |
| 1164. Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006933877 | 2009 |
| 1165. Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006946936 | 2009 |
| 1166. Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006965436 | 2009 |
| 1167. Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006965528 | 2009 |
| 1168. Penthouse letters / Don Myrus, editorial director ... [et al.]. | TX0006965523 | 2009 |
| 1169. PENTHOUSE LETTERS. [Published: 2009-07-21. Issue: vol. 27, no. 9, September 2009] | TX0007083027 | 09/14/09 |
| 1170. PENTHOUSE LETTERS. [Published: 2009-08-18. Issue: vol. 27, no. 10, October 2009] | TX0007083017 | 09/14/09 |
| 1171. PENTHOUSE LETTERS. [Published: 2009-09-15. Issue: vol. 27, no. 11, November 2009] | TX0007178600 | 12/28/09 |
| 1172. PENTHOUSE LETTERS. [Published: 2009-10-13. Issue: vol. 27, no. 12, December 2009] | TX0007178604 | 12/28/09 |
| 1173. PENTHOUSE LETTERS. [Published: 2009-12-08. Issue: vol. 28, no. 1, January 2010] | TX0007180761 | 02/24/10 |
| 1174. PENTHOUSE. [Published: 2009-09-15. Issue: vol. 41, no. 2, October 2009] | TX0007178599 | 12/28/09 |
| 1175. PENTHOUSE. [Published: 2009-10-13. Issue: vol. 41, no. 3, November 2009] | TX0007178619 | 12/28/09 |

V9915 D493 P 47

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1176. | PENTHOUSE. [Published: 2009-11-10. Issue: vol. 41, no. 4, December 2009] | TX0007235571 | 02/24/10 |
| 1177. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.] | TX0006915580 | 2009 |
| 1178. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.] | TX0006933883 | 2009 |
| 1179. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006946928 | 2009 |
| 1180. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006946939 | 2009 |
| 1181. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006965515 | 2009 |
| 1182. | Penthouse : the international magazine for men / editor-in-chief, Bob Guccione ... [et al.]. | TX0006965536 | 2009 |
| 1183. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006915651 | 2009 |
| 1184. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006933966 | 2009 |
| 1185. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006933874 | 2009 |
| 1186. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006946954 | 2009 |
| 1187. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006946963 | 2009 |
| 1188. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006965553 | 2009 |
| 1189. | Penthouse Variations / editor, Derek Manley ... [et al.]. | TX0006965548 | 2009 |
| 1190. | PENTHOUSE VARIATIONS. [Published: 2009-09-01. Issue: vol. 31, no. 10, October 2009] | TX0007082943 | 09/14/09 |
| 1191. | PENTHOUSE VARIATIONS. [Published: 2009-09-29. Issue: vol. 31, no. 11, November 2009] | TX0007178668 | 12/28/09 |
| 1192. | PENTHOUSE VARIATIONS. [Published: 2009-10-27. Issue: vol. 31, no. 12, December 2009] | TX0007178576 | 12/28/09 |
| 1193. | PENTHOUSE VARIATIONS. [Published: 2009-12-01. Issue: vol. 32, no. 1, January 2010] | TX0007180736 | 02/24/10 |
| 1194. | Variations best. | TX0006915673 | 2009 |
| 1195. | Variations best. | TX0006965559 | 2009 |
| 1196. | Letters to Penthouse XXXVI: Sultry Passions, Sinful Desires. | TX0007184288 | 06/03/10 |
| 1197. | BEST OF FORUM LETTERS #129. [Published: 2010-11-23. Issue: vol. 23, no. 6] | TX0007352434 | 01/19/11 |
| 1198. | BEST OF PENTHOUSE FORUM LETTERS # 127. [Published: 2010-07-20. Issue: vol. 23, no. 4, July 2010] | TX0007221177 | 08/16/10 |
| 1199. | BEST OF VARIATIONS # 124. [Published: 2010-01-19. Issue: vol. 23, no. 1] | TX0007178458 | 04/05/10 |
| 1200. | BEST OF VARIATIONS #128. [Published: 2010-09-21. Issue: vol. 23, no. 5] | TX0007261813 | 10/20/10 |
| 1201. | General Media Communicaitons, Inc.. [Published: 2010-03-16. Issue: vol. 23, no. 2] | TX0007177988 | 05/27/10 |
| 1202. | GIRLS OF PENTHOUSE : 4. [Published: 2010-06-15. | TX0008028735 | 08/16/10 |

V9915 D493 P 48

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| | Issue: vol. 33, no. 4, July/August 2010] | | |
| 1203. | GIRLS OF PENTHOUSE. [Published: 2010-02-16. Issue: vol. 34, no. 2, March/April 2010] | TX0007178637 | 04/05/10 |
| 1204. | GIRLS OF PENTHOUSE. [Published: 2010-04-13. Issue: vol. 33, no. 6, May/June 2010] | TX0007177901 | 05/27/10 |
| 1205. | GIRLS OF PENTHOUSE. [Published: 2010-08-17. Issue: vol. 33, no. 10, Sept/Oct. 2010] | TX0007261775 | 10/20/10 |
| 1206. | GIRLS OF PENTHOUSE. [Published: 2010-10-12. Issue: vol. 33, no. 6, Nov/Dec 2010] | TX0007352261 | 01/19/11 |
| 1207. | GIRLS OF PENTHOUSE. [Published: 2010-12-07. Issue: vol. 35, no. 1, Jan/Feb 2011] | TX0007352183 | 01/19/11 |
| 1208. | HOT CITY NIGHTS. | TX0007325387 | 01/14/11 |
| 1209. | Letters to Penthouse XXXVII/: Naughty Intentions and Dirty Deeds. | TX0007214481 | 08/11/10 |
| 1210. | Letters To Penthouse xxxviii: Exposed. | TX0007300867 | 11/10/10 |
| 1211. | PENTHOUSE FORUM. [Published: 2010-01-12. Issue: vol. 40, no. 2, February 2010] | TX0007180772 | 02/24/10 |
| 1212. | PENTHOUSE FORUM. [Published: 2010-02-16. Issue: vol. 40, no. 3, March 2010] | TX0007178469 | 04/05/10 |
| 1213. | PENTHOUSE FORUM. [Published: 2010-03-23. Issue: vol. 40, no. 5, April/May 2010] | TX0007177977 | 05/27/10 |
| 1214. | PENTHOUSE FORUM. [Published: 2010-05-04. Issue: vol. 40, no. 6, June 2010] | TX0007178033 | 05/27/10 |
| 1215. | PENTHOUSE FORUM. [Published: 2010-06-08. Issue: vol. 40, no. 7, July 2010] | TX0007221196 | 08/16/10 |
| 1216. | PENTHOUSE FORUM. [Published: 2010-07-13. Issue: vol. 40, no. 8, August 2010] | TX0007261814 | 10/20/10 |
| 1217. | PENTHOUSE FORUM. [Published: 2010-08-17. Issue: vol. 40, no. 8, September 2010] | TX0007261818 | 10/20/10 |
| 1218. | PENTHOUSE FORUM. [Published: 2010-09-21. Issue: vol. 40, no. 9, October 2010] | TX0007261820 | 10/20/10 |
| 1219. | PENTHOUSE FORUM. [Published: 2010-10-19. Issue: vol. 40, no. 10, Nov/Dec 2010] | TX0007352418 | 01/19/11 |
| 1220. | PENTHOUSE FORUM. [Published: 2010-12-07. Issue: vol. 41, no. 1, January 2011] | TX0007352453 | 01/19/11 |
| 1221. | PENTHOUSE LETTERS. [Published: 2010-01-05. Issue: vol. 28, no. 2, February 2010] | TX0007180760 | 02/24/10 |
| 1222. | PENTHOUSE LETTERS. [Published: 2010-02-02. Issue: vol. 28, no. 3, March 2010] | TX0007178626 | 04/05/10 |
| 1223. | PENTHOUSE LETTERS. [Published: 2010-03-02. Issue: vol. 28, no. 4, April 2010] | TX0007178632 | 04/05/10 |
| 1224. | PENTHOUSE LETTERS. [Published: 2010-03-30. Issue: vol. 28, no. 5, May 2010] | TX0007177899 | 05/27/10 |
| 1225. | PENTHOUSE LETTERS. [Published: 2010-04-27. Issue: vol. 28, no. 6, JUNE 2010] | TX0007177891 | 05/27/10 |
| 1226. | PENTHOUSE LETTERS. [Published: 2010-05-25. Issue: vol. 28, no. 7, July 2010] | TX0007221116 | 08/16/10 |

V98 16 D453 P 49

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1227. | PENTHOUSE LETTERS. [Published: 2010-06-22. Issue: vol. 28, no. 8, August 2010] | TX0007221119 | 08/16/10 |
| 1228. | PENTHOUSE LETTERS. [Published: 2010-07-20. Issue: vol. 28, no. 9, September 2010] | TX0007261771 | 10/20/10 |
| 1229. | PENTHOUSE LETTERS. [Published: 2010-08-17. Issue: vol. 28, no. 10, October 2010] | TX0007261779 | 10/20/10 |
| 1230. | PENTHOUSE LETTERS. [Published: 2010-09-14. Issue: vol. 28, no. 11, November 2010] | TX0007261765 | 10/20/10 |
| 1231. | PENTHOUSE LETTERS. [Published: 2010-10-12. Issue: vol. 28, no. 12, December 2010] | TX0007352230 | 01/19/11 |
| 1232. | PENTHOUSE LETTERS. [Published: 2010-11-09. Issue: vol. 29, no. 1, January 2011] | TX0007352256 | 01/19/11 |
| 1233. | PENTHOUSE LETTERS. [Published: 2010-12-07. Issue: vol. 28, no. 13, Holiday 2010] | TX0007352248 | 01/19/11 |
| 1234. | PENTHOUSE. [Published: 2010-01-19. Issue: vol. 41, no. 6, February 2010] | TX0007180739 | 02/24/10 |
| 1235. | PENTHOUSE. [Published: 2010-02-16. Issue: vol. 41, no. 7, March 2010] | TX0007178621 | 04/05/10 |
| 1236. | PENTHOUSE. [Published: 2010-03-16. Issue: vol. 41, no. 8, April 2010] | TX0007177912 | 05/27/10 |
| 1237. | PENTHOUSE. [Published: 2010-03-16. Issue: vol. 41, no. 8, April 2010] | TX0007178643 | 04/05/10 |
| 1238. | PENTHOUSE. [Published: 2010-04-20. Issue: vol. 41, no. 9, May 2010] | TX0007177940 | 05/27/10 |
| 1239. | PENTHOUSE. [Published: 2010-05-25. Issue: vol. 41, no. 10, June 2010] | TX0007221133 | 08/16/10 |
| 1240. | PENTHOUSE. [Published: 2010-06-29. Issue: vol. 41, no. 11, July/August 2010] | TX0007221037 | 08/16/10 |
| 1241. | PENTHOUSE. [Published: 2010-08-03. Issue: vol. 42, no. 1, September 2010] | TX0007261768 | 10/20/10 |
| 1242. | PENTHOUSE. [Published: 2010-09-07. Issue: ] | TX0007261796 | 10/20/10 |
| 1243. | PENTHOUSE. [Published: 2010-10-05. Issue: vol. 42, no. 3, November 2010] | TX0007261778 | 10/20/10 |
| 1244. | PENTHOUSE. [Published: 2010-11-09. Issue: vol. 42, no. 4, December 2010] | TX0007352209 | 01/19/11 |
| 1245. | PENTHOUSE. [Published: 2010-12-14. Issue: vol. 42, no. 5, January 2011] | TX0007352253 | 01/19/11 |
| 1246. | Penthouse Uncensored VII: Erotica Unbound. | TX0007235363 | 08/17/10 |
| 1247. | PENTHOUSE VARIATIONS. [Published: 2010-01-05. Issue: vol. 32, no. 2, February 2010] | TX0007180781 | 02/24/10 |
| 1248. | PENTHOUSE VARIATIONS. [Published: 2010-02-02. Issue: vol. 32, no. 3, March 2010] | TX0007178462 | 04/05/10 |
| 1249. | PENTHOUSE VARIATIONS. [Published: 2010-03-02. Issue: vol. 32, no. 4, April 2010] | TX0007178452 | 04/05/10 |
| 1250. | PENTHOUSE VARIATIONS. [Published: 2010-03-30. Issue: vol. 32, no. 5, May 2010] | TX0007178037 | 05/27/10 |
| 1251. | PENTHOUSE VARIATIONS. [Published: 2010-06-01. Issue: vol. 32, no. 7, July 2010] | TX0007221170 | 08/16/10 |

V9915 D493 P 50

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1252. | PENTHOUSE VARIATIONS. [Published: 2010-06-29. Issue: vol. 32, no. 8, August 2010] | TX0007221191 | 08/16/10 |
| 1253. | PENTHOUSE VARIATIONS. [Published: 2010-07-27. Issue: vol. 32, no. 9, September 2010] | TX0007261809 | 10/20/10 |
| 1254. | PENTHOUSE VARIATIONS. [Published: 2010-08-31. Issue: vol. 32, no. 10, October 2010] | TX0007261804 | 10/20/10 |
| 1255. | PENTHOUSE VARIATIONS. [Published: 2010-09-28. Issue: vol. 32, no. 11, November 2010] | TX0007261811 | 10/20/10 |
| 1256. | PENTHOUSE VARIATIONS. [Published: 2010-11-30. Issue: vol. 33, no. 1, January 2011] | TX0007352288 | 01/19/11 |
| 1257. | PENTHOUSE VARIATIONS. [Published: 2010-11-30. Issue: vol. 33, no. 1, January 2011] | TX0007352276 | 01/19/11 |
| 1258. | VARIATIONS BEST LETTERS #126. [Published: 2010-05-18. Issue: vol. 23, no. 3] | TX0007178001 | 05/27/10 |
| 1259. | BEST OF PENTHOUSE FORUM LETTERS # 131. [Published: 2011-03-15. Issue: vol. 24, no. 2] | TX0007381772 | 04/01/11 |
| 1260. | BEST OF PENTHOUSE FORUM LETTERS #133. [Published: 2011-07-19. Issue: vol. 24, no. 4] | TX0007453763 | 09/21/11 |
| 1261. | BEST OF PENTHOUSE FORUM LETTERS #135. [Published: 2011-11-22. Issue: vol. 24, no. 6] | TX0007490200 | 11/28/11 |
| 1262. | BEST OF VARIATIONS # 132. [Published: 2011-05-17. Issue: vol. 24, no. 3] | TX0007381756 | 06/24/11 |
| 1263. | BEST OF VARIATIONS #130. [Published: 2011-01-18. Issue: vol. 24, no. 1] | TX0007381765 | 04/01/11 |
| 1264. | BEST OF VARIATIONS #134. [Published: 2011-09-20. Issue: vol. 24, no. 5] | TX0007490184 | 11/28/11 |
| 1265. | FORUM. [Published: 2011-01-11. Issue: vol. 41, no. 2, February 2011] | TX0007381767 | 04/01/11 |
| 1266. | FORUM. [Published: 2011-02-15. Issue: vol. 41, no. 3, March 2011] | TX0007381768 | 04/01/11 |
| 1267. | FORUM. [Published: 2011-03-22. Issue: vol. 41, no. 4, April/May 2011] | TX0007381791 | 04/01/11 |
| 1268. | GIRLS OF PENTHOUSE Monthly. [Published: 2011-04-05. Issue: vol. 34, no. 3, May/June 2011] | TX0007381674 | 06/24/11 |
| 1269. | GIRLS OF PENTHOUSE. [Published: 2011-02-08. Issue: vol. 33, no. 2, March/April 2011] | TX0007381738 | 04/01/11 |
| 1270. | GIRLS OF PENTHOUSE. [Published: 2011-06-07. Issue: vol. 35, no. 4, July/August 2011] | TX0007381678 | 06/24/11 |
| 1271. | GIRLS OF PENTHOUSE. [Published: 2011-08-09. Issue: vol. 35, no. 5, September/October 2011] | TX0007453752 | 09/21/11 |
| 1272. | GIRLS OF PENTHOUSE. [Published: 2011-10-11. Issue: vol. 35, no. 6, Nov/Dec 2011] | TX0007490123 | 11/28/11 |
| 1273. | Girls of Penthouse. [Published: 2011-12-06. Issue: vol. 36, no. 1, January/February 2012] | TX0007490082 | 12/27/11 |
| 1274. | Letters to Penthouse XXXX: Extreme Sex Beyond the Tripple X. | TX0007452110 | 11/23/11 |
| 1275. | Letters to Penthouse XXXXI: Wives Gone Wild. | TX0007458104 | 11/23/11 |
| 1276. | PENTHOUSE FORUM. [Published: 2011-05-03. Issue: | TX0007381801 | 06/24/11 |

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| | vol. 41, no. 5, June 2011] | | |
| 1277. | PENTHOUSE FORUM. [Published: 2011-06-07. Issue: vol. 41, no. 6, July 2011] | TX0007453768 | 09/21/11 |
| 1278. | PENTHOUSE FORUM. [Published: 2011-07-12. Issue: vol. 41, no. 7, August 2011] | TX0007453777 | 09/21/11 |
| 1279. | PENTHOUSE FORUM. [Published: 2011-08-16. Issue: vol. 41, no. 8, September 2011] | TX0007490177 | 11/28/11 |
| 1280. | PENTHOUSE FORUM. [Published: 2011-08-16. Issue: vol. 41, no. 8, September 2011] | TX0007453758 | 09/21/11 |
| 1281. | PENTHOUSE FORUM. [Published: 2011-09-20. Issue: vol. 41, no. 9, October 2011] | TX0007490216 | 11/28/11 |
| 1282. | PENTHOUSE FORUM. [Published: 2011-10-18. Issue: vol. 41, no. 10, Nov/Dec 2011] | TX0007490190 | 11/28/11 |
| 1283. | Penthouse Forum. [Published: 2011-12-06. Issue: vol. 42, no. 1] | TX0007490166 | 12/27/11 |
| 1284. | PENTHOUSE LETTERS. [Published: 2011-01-04. Issue: vol. 29, no. 2, February 2011] | TX0007381722 | 04/01/11 |
| 1285. | PENTHOUSE LETTERS. [Published: 2011-02-01. Issue: vol. 29, no. 3, March 2011] | TX0007381717 | 04/01/11 |
| 1286. | Penthouse Letters. [Published: 2011-03-01. Issue: vol. 29, no. 4, April 2011] | TX0007511945 | 03/28/12 |
| 1287. | PENTHOUSE LETTERS. [Published: 2011-03-29. Issue: vol. 29, no. 5, May 2011] | TX0007381697 | 06/24/11 |
| 1288. | PENTHOUSE LETTERS. [Published: 2011-04-26. Issue: vol. 29, no. 6, June 2011] | TX0007381667 | 06/24/11 |
| 1289. | PENTHOUSE LETTERS. [Published: 2011-05-24. Issue: vol. 29, no. 7, July 2011] | TX0007381669 | 06/24/11 |
| 1290. | Penthouse Letters. [Published: 2011-06-21. Issue: vol. 29, no. 8, August 2011] | TX0007453741 | 09/21/11 |
| 1291. | PENTHOUSE LETTERS. [Published: 2011-07-19. Issue: vol. 29, no. 9, September 2011] | TX0007453734 | 09/21/11 |
| 1292. | Penthouse Letters. [Published: 2011-08-16. Issue: vol. 29, no. 10, October 2011] | TX0007453746 | 09/21/11 |
| 1293. | PENTHOUSE LETTERS. [Published: 2011-09-13. Issue: vol. 29, no. 11, November 2011] | TX0007490235 | 11/28/11 |
| 1294. | Penthouse Letters. [Published: 2011-10-11. Issue: vol. 29, no. 12, December 2011] | TX0007490111 | 11/28/11 |
| 1295. | Penthouse Letters. [Published: 2011-12-06. Issue: vol. 30, no. 1] | TX0007490076 | 12/27/11 |
| 1296. | PENTHOUSE. [Published: 2011-01-18. Issue: vol. 42, no. 6, February 2011] | TX0007381705 | 04/01/11 |
| 1297. | PENTHOUSE. [Published: 2011-02-15. Issue: vol. 42, no. 7, March 2011] | TX0007381724 | 04/01/11 |
| 1298. | PENTHOUSE. [Published: 2011-03-15. Issue: vol. 42, no. 8, April 2011] | TX0007381707 | 04/01/11 |
| 1299. | PENTHOUSE. [Published: 2011-04-12. Issue: vol. 42, no. 9, May 2011] | TX0007381628 | 06/24/11 |
| 1300. | PENTHOUSE. [Published: 2011-05-10. Issue: vol. 42, no. 10, June 2011] | TX0007381691 | 06/24/11 |

V8915 D493 P 52

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1301. | PENTHOUSE. [Published: 2011-06-14. Issue: vol. 42, no. 11, July/August 2011] | TX0007381686 | 06/24/11 |
| 1302. | PENTHOUSE. [Published: 2011-08-09. Issue: vol. 43, no. 1, September 2011] | TX0007453721 | 09/21/11 |
| 1303. | PENTHOUSE. [Published: 2011-09-13. Issue: vol. 43, no. 2, November 2011] | TX0007490224 | 11/28/11 |
| 1304. | PENTHOUSE. [Published: 2011-09-13. Issue: vol. 43, no. 2, October 2011] | TX0007490250 | 11/28/11 |
| 1305. | Penthouse. [Published: 2011-11-08. Issue: vol. 43, no. 4, December 2011] | TX0007490100 | 12/27/11 |
| 1306. | Penthouse. [Published: 2011-12-13. Issue: vol. 43, no. 5] | TX0007490088 | 12/27/11 |
| 1307. | Penthouse Variations / by General Media Communication, Inc. [Published: 2010-11-30. Issue: vol. 33, no. 1, January 2011]. | TX0006790234 | 03/27/12 |
| 1308. | PENTHOUSE VARIATIONS. [Published: 2011-03-29. Issue: vol. 33, no. 5, May 2011] | TX0007381763 | 06/24/11 |
| 1309. | PENTHOUSE VARIATIONS. [Published: 2011-04-26. Issue: vol. 33, no. 6, June 2011] | TX0007381758 | 06/24/11 |
| 1310. | PENTHOUSE VARIATIONS. [Published: 2011-05-31. Issue: vol. 33, no. 7, July 2011] | TX0007381760 | 06/24/11 |
| 1311. | PENTHOUSE VARIATIONS. [Published: 2011-06-28. Issue: vol. 33, no. 8, August 2011] | TX0007453780 | 09/21/11 |
| 1312. | PENTHOUSE VARIATIONS. [Published: 2011-07-26. Issue: vol. 33, no. 9, September 2011] | TX0007453757 | 09/21/11 |
| 1313. | PENTHOUSE VARIATIONS. [Published: 2011-08-30. Issue: vol. 33, no. 10, October 2011] | TX0007490173 | 11/28/11 |
| 1314. | PENTHOUSE VARIATIONS. [Published: 2011-09-27. Issue: vol. 33, no. 11, November 2011] | TX0007490207 | 11/28/11 |
| 1315. | PENTHOUSE VARIATIONS. [Published: 2011-10-25. Issue: vol. 33, no. 12, December 2012] | TX0007490180 | 11/28/11 |
| 1316. | Penthouse Variations. [Published: 2011-10-25. Issue: vol. 33, no. 12, December 2012] / by General Media Communications, Inc. | TX0006789505 | 03/27/12 |
| 1317. | Penthouse Variations. [Published: 2011-11-29. Issue: vol. 34, no. 1, January 2011] | TX0007490162 | 12/27/11 |
| 1318. | VARIATIONS. [Published: 2011-01-04. Issue: vol. 33, no. 2, February 2011] | TX0007381775 | 04/01/11 |
| 1319. | VARIATIONS. [Published: 2011-02-01. Issue: vol. 33, no. 3, March 2011] | TX0007381786 | 04/01/11 |
| 1320. | VARIATIONS. [Published: 2011-03-01. Issue: vol. 33, no. 4, April 2011] | TX0007381794 | 04/01/11 |
| 1321. | Letters To Penthouse XXXXII. | TX0007550068 | 06/08/12 |
| 1322. | Best of Forum Letters. [Published: 2012-03-13. Issue: vol. 25, no. 2, #137] | TX0007515417 | 03/19/12 |
| 1323. | Best of Penthouse Forum Letters #139. [Published: 2012-07-17. Issue: vol. 25, no. 4, #139] | TX0007572325 | 08/06/12 |
| 1324. | Best of Penthouse Forum Letters #141. [Published: 2012-11-20. Issue: vol. 25, no. 6, 2012] | TX0007619977 | 12/03/12 |

V9915 D493 P 53

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 1325. | Best of Variations. [Published: 2012-01-17. Issue: vol. 25, no. 1, #136] | TX0007509113 | 02/24/12 |
| 1326. | Best of Variations. [Published: 2012-05-15. Issue: vol. 25, no. 3, #138] | TX0007547242 | 06/04/12 |
| 1327. | Best of Variations. [Published: 2012-09-18. Issue: vol. 25, no. 5, #140] | TX0007606367 | 10/31/12 |
| 1328. | Girls of Penthouse. [Published: 2012-02-07. Issue: vol. 36, no. 2, March/April 2012] | TX0007509085 | 02/24/12 |
| 1329. | Girls of Penthouse. [Published: 2012-04-03. Issue: vol. 36, no. 3, May/June 2012] | TX0007515430 | 04/09/12 |
| 1330. | Girls of Penthouse. [Published: 2012-06-05. Issue: vol. 36, no. 4, July/Aug 2012] | TX0007572310 | 07/02/12 |
| 1331. | Girls of Penthouse. [Published: 2012-08-07. Issue: vol. 36, no. 5, September/October 2012] | TX0007592071 | 09/13/12 |
| 1332. | Girls of Penthouse. [Published: 2012-10-09. Issue: vol. 36, no. 6, November/December 2012] | TX0007606346 | 10/31/12 |
| 1333. | Girls of Penthouse. [Published: 2012-12-04. Issue: vol. 37, no. 1, January/February 2013] | TX0007633433 | 12/21/12 |
| 1334. | LETTERS TO PENTHOUSE XXX QUICKIES: LABORS OF LUST. | TX0007772987 | 07/10/13 |
| 1335. | Letters to Penthouse XXX Quickies: Spanked, Teased & Pleased. | TX0007772982 | 07/10/13 |
| 1336. | Letters to Penthouse XXX Quickies: The Gang Bangs Here. | TX0007772977 | 07/10/13 |
| 1337. | Letters to Penthouse XXXXIII: Go Sex Yourself. | TX0007593800 | 09/10/12 |
| 1338. | Letters to Penthouse XXXXIV: Exposed: Unexpected Horny Hookups. | TX0007608849 | 09/07/12 |
| 1339. | Penthouse Forum. [Published: 2012-01-10. Issue: vol. 42, no. 2, February 2012] | TX0007509102 | 02/08/12 |
| 1340. | Penthouse Forum. [Published: 2012-02-14. Issue: vol. 42, no. 3, March 2012] | TX0007509114 | 02/24/12 |
| 1341. | Penthouse Forum. [Published: 2012-03-20. Issue: vol. 42, no. 4, April/May 2012] | TX0007544480 | 04/09/12 |
| 1342. | Penthouse Forum. [Published: 2012-05-01. Issue: vol. 42, no. 5, June 2012] | TX0007547227 | 05/11/12 |
| 1343. | Penthouse Forum. [Published: 2012-06-05. Issue: vol. 42, no. 6, July 2012] | TX0007572321 | 07/02/12 |
| 1344. | Penthouse Forum. [Published: 2012-07-10. Issue: vol. 42, no. 7, August 2012] | TX0007572329 | 08/06/12 |
| 1345. | Penthouse Forum. [Published: 2012-08-14. Issue: vol. 42, no. 8, September 2012] | TX0007592084 | 09/13/12 |
| 1346. | Penthouse Forum. [Published: 2012-09-18. Issue: vol. 42, no. 9, October 2012] | TX0007606356 | 10/31/12 |
| 1347. | Penthouse Forum. [Published: 2012-10-16. Issue: vol. 42, no. 10, November/December 2012] | TX0007606368 | 10/31/12 |
| 1348. | Penthouse Forum. [Published: 2012-12-04. Issue: vol. 43, no. 1, January 2013] | TX0007633424 | 12/21/12 |
| 1349. | Penthouse Letters. [Published: 2012-01-03. Issue: vol. | TX0007509092 | 02/08/12 |

V9915 D493 P 54

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| | 30, no. 2, February 2012] | | |
| 1350. | Penthouse Letters. [Published: 2012-01-31. Issue: vol. 30, no. 3, March 2012] | TX0007509082 | 02/24/12 |
| 1351. | Penthouse Letters. [Published: 2012-02-28. Issue: vol. 30, no. 4, April 2012] | TX0007515420 | 03/19/12 |
| 1352. | Penthouse Letters. [Published: 2012-03-27. Issue: vol. 30, no. 5, May 2012] | TX0007515432 | 04/09/12 |
| 1353. | Penthouse Letters. [Published: 2012-04-24. Issue: vol. 30, no. 6, June 2012] | TX0007547247 | 05/11/12 |
| 1354. | Penthouse Letters. [Published: 2012-05-22. Issue: vol. 30, no. 7, July 2012] | TX0007547267 | 06/04/12 |
| 1355. | Penthouse Letters. [Published: 2012-06-19. Issue: vol. 30, no. 8, August 2012] | TX0007572313 | 07/02/12 |
| 1356. | Penthouse Letters. [Published: 2012-07-17. Issue: vol. 30, no. 9, September 2012] | TX0007572294 | 08/06/12 |
| 1357. | Penthouse Letters. [Published: 2012-08-14. Issue: vol. 30, no. 10, October 2012] | TX0007592074 | 09/13/12 |
| 1358. | Penthouse Letters. [Published: 2012-09-11. Issue: vol. 30, no. 11, November 2012] | TX0007606341 | 10/31/12 |
| 1359. | Penthouse Letters. [Published: 2012-10-09. Issue: vol. 30, no. 12, December 2012] | TX0007619976 | 12/03/12 |
| 1360. | Penthouse Letters. [Published: 2012-11-06. Issue: vol. 30, no. 13, Holiday 2012] | TX0007619981 | 12/03/12 |
| 1361. | Penthouse Letters. [Published: 2012-12-04. Issue: vol. 31, no. 1, January 2013] | TX0007633436 | 12/21/12 |
| 1362. | Penthouse. [Published: 2012-01-17. Issue: vol. 43, no. 6, February 2012] | TX0007509094 | 02/08/12 |
| 1363. | Penthouse. [Published: 2012-02-14. Issue: vol. 43, no. 7, March 2012] | TX0007509086 | 02/24/12 |
| 1364. | Penthouse. [Published: 2012-03-13. Issue: vol. 43, no. 8, April 2012] | TX0007515418 | 03/19/12 |
| 1365. | Penthouse. [Published: 2012-04-17. Issue: vol. 43, no. 9, May 2012] | TX0007547252 | 05/11/12 |
| 1366. | Penthouse. [Published: 2012-05-22. Issue: vol. 43, no. 10, June 2012] | TX0007547258 | 06/04/12 |
| 1367. | Penthouse. [Published: 2012-06-26. Issue: vol. 43, no. 11, July/Aug 2012] | TX0007572300 | 07/02/12 |
| 1368. | Penthouse. [Published: 2012-07-31. Issue: vol. 44, no. 1, September 2012] | TX0007572296 | 08/06/12 |
| 1369. | Penthouse. [Published: 2012-09-04. Issue: vol. 44, no. 2, October 2012] | TX0007592069 | 09/13/12 |
| 1370. | Penthouse. [Published: 2012-10-02. Issue: vol. 44, no. 3, November 2012] | TX0007606339 | 10/31/12 |
| 1371. | Penthouse. [Published: 2012-11-06. Issue: vol. 44, no. 4, December 2012] | TX0007619975 | 12/03/12 |
| 1372. | Penthouse. [Published: 2012-12-11. Issue: vol. 44, no. 5, January 2013] | TX0007633428 | 12/21/12 |
| 1373. | Penthouse Variations. [Published: 2012-01-03. Issue: vol. 34, no. 2, February 2012] | TX0007509110 | 02/08/12 |

V9915 D493 P 55

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1374. | Penthouse Variations. [Published: 2012-01-31. Issue: vol. 34, no. 3, March 2012] | TX0007509115 | 02/24/12 |
| 1375. | Penthouse Variations. [Published: 2012-02-28. Issue: vol. 34, no. 4, April 2012] | TX0007515416 | 03/19/12 |
| 1376. | Penthouse Variations. [Published: 2012-03-27. Issue: vol. 34, no. 5, May 2012] | TX0007515429 | 04/09/12 |
| 1377. | Penthouse Variations. [Published: 2012-04-24. Issue: vol. 34, no. 6, June 2012] | TX0007547232 | 05/11/12 |
| 1378. | Penthouse Variations. [Published: 2012-05-29. Issue: vol. 34, no. 7, July 2012] | TX0007547240 | 06/04/12 |
| 1379. | Penthouse Variations. [Published: 2012-06-26. Issue: vol. 34, no. 8, August 2012] | TX0007572318 | 07/02/12 |
| 1380. | Penthouse Variations. [Published: 2012-07-24. Issue: vol. 34, no. 9, September 2012] | TX0007572327 | 08/06/12 |
| 1381. | Penthouse Variations. [Published: 2012-08-28. Issue: vol. 34, no. 10, October 2012] | TX0007592089 | 09/13/12 |
| 1382. | Penthouse Variations. [Published: 2012-10-23. Issue: vol. 34, no. 12, December 2012] | TX0007619978 | 12/03/12 |
| 1383. | Penthouse Variations. [Published: 2012-10-25. Issue: vol. 34, no. 11, November 2012] | TX0007606352 | 10/31/12 |
| 1384. | Penthouse Variations. [Published: 2012-11-27. Issue: vol. 35, no. 1, January 2013] | TX0007633422 | 12/21/12 |
| 1385. | Penthouse Presents Wives Behaving Badly. | TX0007775520 | 07/24/13 |
| 1386. | Penthouse Presents Working Stiff. | TX0007775359 | 07/24/13 |
| 1387. | Penthouse. [Published: 2013-01-15. Issue: vol. 44, no. 6, February 2013] | TX0007643645 | 01/25/13 |
| 1388. | Penthouse. [Published: 2013-02-19. Issue: vol. 44, no. 7, March 2013] | TX0007673057 | 03/25/13 |
| 1389. | Penthouse. [Published: 2013-03-19. Issue: vol. 44, no. 8, April 2013] | TX0007693921 | 05/14/13 |
| 1390. | Penthouse. [Published: 2013-04-16. Issue: vol. 44, no. 9, May 2013] | TX0007693955 | 05/14/13 |
| 1391. | Penthouse. [Published: 2013-05-21. Issue: vol. 44, no. 10, June 2013] | TX0007700452 | 06/21/13 |
| 1392. | Penthouse. [Published: 2013-06-25. Issue: vol. 44, no. 11, July/August 2013] | TX0007731417 | 07/29/13 |
| 1393. | Penthouse. [Published: 2013-07-30. Issue: vol. 44, no. 12, September 2013] | TX0007737950 | 08/30/13 |
| 1394. | Penthouse. [Published: 2013-09-03. Issue: vol. 45, no. 2, October 2013] | TX0007771449 | 10/28/13 |
| 1395. | Penthouse. [Published: 2013-10-01. Issue: vol. 45, no. 3, November 2013] | TX0007771459 | 10/28/13 |
| 1396. | Penthouse. [Published: 2013-11-05. Issue: vol. 45, no. 4, December 2013] | TX0007819558 | 12/09/13 |
| 1397. | Penthouse. [Published: 2013-12-10. Issue: vol. 45, no. 5, January 2014] | TX0007795105 | 12/17/13 |
| 1398. | Penthouse Variations Presents Dirty Deeds. | TX0007745169 | 05/16/13 |

V9915 D493 P 56

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1399. | Penthouse Variations Presents Kinky Couples. | TX0007754707 | 03/20/13 |
| 1400. | Penthouse Variations Presents Orgies. | TX0007834398 | 12/16/13 |
| 1401. | Penthouse Variations Presents Taste of Bliss. | TX0007775358 | 07/24/13 |
| 1402. | Penthouse Variations Presents Tough Girls. | TX0007745171 | 05/16/13 |
| 1403. | Penthouse Variations Presents Wanton Wives. | TX0007754696 | 03/20/13 |
| 1404. | Penthouse Variations Presents Wicked Wives. | TX0007775096 | 07/24/13 |
| 1405. | Penthouse Variations Presents YES, Ma'am! | TX0007754705 | 03/20/13 |
| 1406. | Penthouse Variations. [Published: 2013-01-01. Issue: vol. 35, no. 2, February 2013] | TX0007643627 | 01/25/13 |
| 1407. | Penthouse Variations. [Published: 2013-01-29. Issue: vol. 35, no. 3, March 2013] | TX0007673066 | 03/25/13 |
| 1408. | Penthouse Variations. [Published: 2013-02-26. Issue: vol. 35, no. 4, April 2013] | TX0007673059 | 03/25/13 |
| 1409. | Penthouse Variations. [Published: 2013-03-26. Issue: vol. 35, no. 5, May 2013] | TX0007693940 | 05/14/13 |
| 1410. | Penthouse Variations. [Published: 2013-04-23. Issue: vol. 35, no. 6, June 2013] | TX0007693945 | 05/14/13 |
| 1411. | Penthouse Variations. [Published: 2013-05-28. Issue: vol. 35, no. 7, July 2013] | TX0007700468 | 06/21/13 |
| 1412. | Penthouse Variations. [Published: 2013-06-25. Issue: vol. 35, no. 8, August 2013] | TX0007731409 | 07/29/13 |
| 1413. | Penthouse Variations. [Published: 2013-07-23. Issue: vol. 35, no. 9, September 2013] | TX0007731412 | 07/29/13 |
| 1414. | Penthouse Variations. [Published: 2013-08-27. Issue: vol. 35, no. 10, October 2013] | TX0007737955 | 08/30/13 |
| 1415. | Penthouse Variations. [Published: 2013-09-24. Issue: vol. 35, no. 11, November 2013] | TX0007771455 | 10/28/13 |
| 1416. | Penthouse Variations. [Published: 2013-10-22. Issue: vol. 35, no. 12, December 2013] | TX0007771458 | 10/28/13 |
| 1417. | Penthouse Variations. [Published: 2013-11-26. Issue: vol. 36, no. 1, January 2014] | TX0007795107 | 12/17/13 |
| 1418. | Penthouse Variations. [Published: 2013-12-31. Issue: vol. 36, no. 2, February 2014] | TX0007819568 | 02/12/14 |
| 1419. | Best of Penthouse Forum Letters. [Published: 2013-03-12. Issue: vol. 26, no. 2, #143] | TX0007673062 | 03/25/13 |
| 1420. | Best of Penthouse Forum. [Published: 2013-07-16. Issue: vol. 26, no. 4, 145] | TX0007731408 | 07/29/13 |
| 1421. | Best of Penthouse Forum. [Published: 2013-11-19. Issue: vol. 26, no. 6, #147] | TX0007819573 | 12/09/13 |
| 1422. | Best of Variations. [Published: 2013-01-15. Issue: vol. 26, no. 1, #142] | TX0007643640 | 01/25/13 |
| 1423. | Best of Variations. [Published: 2013-05-14. Issue: vol. 26, no. 3, 144] | TX0007700471 | 06/21/13 |
| 1424. | Best of Variations. [Published: 2013-09-17. Issue: vol. 26, no. 5, 146] | TX0007771457 | 10/28/13 |

V9915 D493 P 57

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1425. | Girls of Penthouse. [Published: 2013-02-05. Issue: vol. 37, no. 2, March/April 2013] | TX0007673042 | 03/25/13 |
| 1426. | Girls of Penthouse. [Published: 2013-04-02. Issue: vol. 37, no. 3, May/June 2013] | TX0007693901 | 05/14/13 |
| 1427. | Girls of Penthouse. [Published: 2013-06-04. Issue: vol. 37, no. 3, July/August 2013] | TX0007700459 | 06/21/13 |
| 1428. | Girls of Penthouse. [Published: 2013-08-06. Issue: vol. 37, no. 5, September/October 2013] | TX0007737947 | 08/30/13 |
| 1429. | Girls of Penthouse. [Published: 2013-10-08. Issue: vol. 37, no. 5, November/December 2013] | TX0007771467 | 10/28/13 |
| 1430. | Girls of Penthouse. [Published: 2013-12-03. Issue: vol. 37, no. 5, January/February 2013] | TX0007795102 | 12/17/13 |
| 1431. | Letters to Penthouse XXXXV: Please Me, Spank Me. | TX0007672766 | 03/20/13 |
| 1432. | Letters to Penthouse XXXXVI: Dirty Dares & Red-hot Hookups. | TX0007812869 | 11/22/13 |
| 1433. | LETTERS TO PENTHOUSE XXXXVII: SEXXX ON THE JOB. [Published: 2013-10-29. Issue: ] | TX0007840027 | 02/07/14 |
| 1434. | Penthouse Forum Presents Bad Girls. | TX0007754706 | 03/20/13 |
| 1435. | Penthouse Forum Presents Deep-Throat Diaries. | TX0007834415 | 12/16/13 |
| 1436. | Penthouse Forum Presents Exhibitionism. | TX0007775516 | 07/24/13 |
| 1437. | Penthouse Forum Presents Lust. | TX0007745174 | 05/16/13 |
| 1438. | Penthouse Forum Presents No Girls Allowed! | TX0007834414 | 12/16/13 |
| 1439. | Penthouse Forum Presents Wild Wives. | TX0007775518 | 07/24/13 |
| 1440. | Penthouse Forum. [Published: 2013-01-08. Issue: vol. 43, no. 2, February 2013] | TX0007643630 | 01/25/13 |
| 1441. | Penthouse Forum. [Published: 2013-02-12. Issue: vol. 43, no. 3, March 2013] | TX0007673068 | 03/25/13 |
| 1442. | Penthouse Forum. [Published: 2013-03-19. Issue: vol. 43, no. 4, April/May 2013] | TX0007693948 | 05/14/13 |
| 1443. | Penthouse Forum. [Published: 2013-04-30. Issue: vol. 43, no. 5, June 2013] | TX0007693952 | 05/14/13 |
| 1444. | Penthouse Forum. [Published: 2013-06-04. Issue: vol. 43, no. 6, July 2013] | TX0007700473 | 06/21/13 |
| 1445. | Penthouse Forum. [Published: 2013-07-09. Issue: vol. 43, no. 7, August 2013] | TX0007731410 | 07/29/13 |
| 1446. | Penthouse Forum. [Published: 2013-08-13. Issue: vol. 43, no. 8, September 2013] | TX0007737959 | 08/30/13 |
| 1447. | Penthouse Forum. [Published: 2013-09-17. Issue: vol. 43, no. 9, October 2013] | TX0007771454 | 10/28/13 |
| 1448. | Penthouse Forum. [Published: 2013-10-22. Issue: vol. 43, no. 10, November/December 2013] | TX0007771453 | 10/28/13 |
| 1449. | Penthouse Forum. [Published: 2013-12-03. Issue: vol. 44, no. 1, January 2014] | TX0007795108 | 12/17/13 |
| 1450. | Penthouse Letters. [Published: 2013-01-01. Issue: vol. 31, no. 2, February 2013] | TX0007643649 | 01/25/13 |

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1451. | Penthouse Letters. [Published: 2013-01-29. Issue: vol. 31, no. 3, March 2013] | TX0007673048 | 03/25/13 |
| 1452. | Penthouse Letters. [Published: 2013-02-26. Issue: vol. 31, no. 4, April 2013] | TX0007673053 | 03/25/13 |
| 1453. | Penthouse Letters. [Published: 2013-03-26. Issue: vol. 31, no. 5, May 2013] | TX0007693963 | 05/14/13 |
| 1454. | Penthouse Letters. [Published: 2013-04-23. Issue: vol. 31, no. 6, June 2013] | TX0007693971 | 05/14/13 |
| 1455. | Penthouse Letters. [Published: 2013-05-21. Issue: vol. 31, no. 7, July 2013] | TX0007700467 | 06/21/13 |
| 1456. | Penthouse Letters. [Published: 2013-06-18. Issue: vol. 31, no. 8, August 2013] | TX0007731418 | 07/29/13 |
| 1457. | Penthouse Letters. [Published: 2013-07-16. Issue: vol. 31, no. 9, September 2013] | TX0007731419 | 07/29/13 |
| 1458. | Penthouse Letters. [Published: 2013-08-13. Issue: vol. 31, no. 10, October 2013] | TX0007737945 | 08/30/13 |
| 1459. | Penthouse Letters. [Published: 2013-09-10. Issue: vol. 31, no. 11, November 2013] | TX0007771469 | 10/28/13 |
| 1460. | Penthouse Letters. [Published: 2013-10-08. Issue: vol. 31, no. 12, December 2013] | TX0007771471 | 10/28/13 |
| 1461. | Penthouse Letters. [Published: 2013-11-05. Issue: vol. 31, no. 13, Holiday 2013] | TX0007819555 | 12/09/13 |
| 1462. | Penthouse Letters. [Published: 2013-12-03. Issue: vol. 32, no. 1, January 2014] | TX0007795101 | 12/17/13 |
| 1463. | Penthouse Letters. [Published: 2013-12-31. Issue: vol. 32, no. 2, 12/31/2013] | TX0007878663 | 04/16/14 |
| 1464. | Penthouse Presents Anal Antics. | TX0007754702 | 03/20/13 |
| 1465. | Penthouse Presents Cougars on the Prowl. | TX0007834410 | 12/16/13 |
| 1466. | Penthouse Presents Different Strokes. | TX0007745177 | 05/16/13 |
| 1467. | Penthouse Presents Sloppy Seconds. | TX0007754704 | 03/20/13 |
| 1468. | Penthouse Presents Someone's Watching. | TX0007775360 | 07/24/13 |
| 1469. | Penthouse Presents Stepping Out. | TX0007834401 | 12/16/13 |
| 1470. | Penthouse Presents Take Her, She's Mine. | TX0007775356 | 07/24/13 |
| 1471. | Penthouse Presents There's a First Time for Everything. | TX0007834403 | 12/16/13 |
| 1472. | Penthouse. [Published: 2014-12-09. Issue: vol. 46, no. 5, January 2015] | TX0007985519 | 01/21/15 |
| 1473. | Penthouse. [Published: 2014-12-31. Issue: vol. 46, no. 6, February 2015] | TX0007970784 | 01/20/15 |
| 1474. | Penthouse: The Perfect Woman. | PA0001956418 | 06/22/15 |
| 1475. | Penthouse Varations. [Published: 2014-06-24. Issue: vol. 36, no. 8, August 2014] | TX0007911673 | 08/13/14 |
| 1476. | Penthouse Variations At Her Service. | TX0007899520 | 03/21/14 |
| 1477. | Penthouse Variations Presents Sexercise. | TX0008076462 | 10/14/14 |

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1478. | Penthouse Variations. [Published: 2014-01-28. Issue: vol. 36, no. 3, March 2014] | TX0007819574 | 02/12/14 |
| 1479. | Penthouse Variations. [Published: 2014-02-25. Issue: vol. 36, no. 4, April 2014] | TX0007837596 | 03/28/14 |
| 1480. | Penthouse Variations. [Published: 2014-03-25. Issue: vol. 36, no. 5, May 2014] | TX0007899266 | 07/31/14 |
| 1481. | Penthouse Variations. [Published: 2014-04-22. Issue: vol. 36, no. 2, June 2014] | TX0007894172 | 06/11/14 |
| 1482. | Penthouse Variations. [Published: 2014-05-27. Issue: vol. 36, no. 7, July 2014] | TX0007878752 | 06/10/14 |
| 1483. | Penthouse Variations. [Published: 2014-07-22. Issue: vol. 36, no. 9, September 2014] | TX0007911679 | 08/13/14 |
| 1484. | Penthouse Variations. [Published: 2014-08-26. Issue: vol. 36, no. 10, October 2014] | TX0007918358 | 09/18/14 |
| 1485. | Variations 2015. [Published: 2014-11-25. Issue: vol. 37, no. 1, January 2015] | TX0007984965 | 01/21/15 |
| 1486. | Variations Best #152. [Published: 2014-09-16. Issue: vol. 27, no. 5, #152] | TX0007970814 | 01/20/15 |
| 1487. | Variations. [Published: 2014-09-23. Issue: vol. 36, no. 11, November 2014] | TX0007984962 | 01/21/15 |
| 1488. | Variations. [Published: 2014-10-21. Issue: vol. 36, no. 12, December 2014] | TX0007984967 | 01/21/15 |
| 1489. | Variations. [Published: 2014-12-30. Issue: vol. 37, no. 2, February 2015] | TX0007992361 | 02/09/15 |
| 1490. | Best of Forum Letters. [Published: 2014-11-18. Issue: vol. 27, no. 6, #153] | TX0007970807 | 01/20/15 |
| 1491. | Best of Penthouse Forum Letters #149. [Published: 2014-03-11. Issue: vol. 27, no. 2, 2014] | TX0007838824 | 06/28/14 |
| 1492. | Best of Penthouse Forum Letters. [Published: 2014-07-15. Issue: vol. 27, no. 4, #151] | TX0007911670 | 08/13/14 |
| 1493. | Best of Variations. [Published: 2014-01-14. Issue: vol. 27, no. 1] | TX0007819570 | 02/12/14 |
| 1494. | Best of Variations. [Published: 2014-05-13. Issue: vol. 27, no. 3, #150] | TX0007884826 | 06/10/14 |
| 1495. | Forum. [Published: 2014-09-16. Issue: vol. 44, October 2014] | TX0007970834 | 01/22/15 |
| 1496. | Forum. [Published: 2014-10-21. Issue: vol. 44, no. 10, November/December 2014] | TX0007970809 | 01/20/15 |
| 1497. | Forum. [Published: 2014-12-02. Issue: vol. 45, no. 1, January 2015] | TX0007970805 | 01/20/15 |
| 1498. | Girls of Penthouse. [Published: 2014-02-04. Issue: vol. 38, no. 2, March/April 2014] | TX0007825865 | 02/12/14 |
| 1499. | Girls of Penthouse. [Published: 2014-04-01. Issue: vol. 38, no. 3, May/June 2014] | TX0007967723 | 06/09/14 |
| 1500. | Girls of Penthouse. [Published: 2014-06-03. Issue: vol. 38, no. 4, July/August 2014] | TX0007878657 | 06/10/14 |
| 1501. | Girls of Penthouse. [Published: 2014-08-05. Issue: vol. 38, no. 5, September/October 2014] | TX0007970799 | 01/27/15 |

V99TS D493 P 60

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1502. | Girls of Penthouse. [Published: 2014-08-05. Issue: vol. 38, no. 5, September/October 2014] | TX0007911660 | 08/13/14 |
| 1503. | Girls of Penthouse. [Published: 2014-10-07. Issue: vol. 38, no. 6, November/December] | TX0007970767 | 01/23/15 |
| 1504. | Girls of Penthouse. [Published: 2014-12-02. Issue: vol. 39, no. 1, January/February 2015] | TX0007970769 | 01/23/15 |
| 1505. | Letters to Penthouse XXXXIX: Sinful Sexxxploits. | TX0008073667 | 08/29/14 |
| 1506. | Letters to Penthouse XXXXVIII: Down and Dirty Lust. | TX0007886751 | 04/01/14 |
| 1507. | Penthouse Forum Presents May/December Mamas. | TX0007906259 | 04/16/14 |
| 1508. | Penthouse Forum. [Published: 2014-01-07. Issue: vol. 44, no. 2, February 2014] | TX0007967720 | 05/16/14 |
| 1509. | Penthouse Forum. [Published: 2014-02-11. Issue: vol. 44, no. 3, March 2014] | TX0007838822 | 03/28/14 |
| 1510. | Penthouse Forum. [Published: 2014-04-29. Issue: vol. 44, no. 5, June 2014] | TX0007894171 | 06/11/14 |
| 1511. | Penthouse Forum. [Published: 2014-06-03. Issue: vol. 44, no. 6, July 2014] | TX0007894168 | 06/11/14 |
| 1512. | Penthouse Forum. [Published: 2014-07-08. Issue: vol. 44, no. 7, August 2014] | TX0007911320 | 08/13/14 |
| 1513. | Penthouse Forum. [Published: 2014-08-12. Issue: vol. 44, no. 8, September 2014] | TX0007918361 | 09/18/14 |
| 1514. | Penthouse Forum Special Anniversary Edition. [Published: 2014-03-18. Issue: vol. 44, no. 4, April/May 2014] | TX0007967721 | 06/09/14 |
| 1515. | Penthouse Letters Presents Cream-Pie Surprise! | TX0008076457 | 10/14/14 |
| 1516. | Penthouse Letters Presents Horny Housewives. | TX0007949495 | 08/12/14 |
| 1517. | Penthouse Letters Presents Mmm, MILF! | TX0007949503 | 08/12/14 |
| 1518. | Penthouse Letters Presents Swinging & Swapping. | TX0007949488 | 08/12/14 |
| 1519. | Penthouse Letters. [Published: 2014-01-28. Issue: vol. 32, no. 3, March 2014] | TX0007819547 | 02/12/14 |
| 1520. | Penthouse Letters. [Published: 2014-02-25. Issue: vol. 32, no. 4, April 2014] | TX0007838829 | 03/28/14 |
| 1521. | Penthouse Letters. [Published: 2014-03-25. Issue: vol. 32, no. 5, May 2014] | TX0007899397 | 08/14/14 |
| 1522. | Penthouse Letters. [Published: 2014-04-22. Issue: vol. 32, no. 6, June 2014] | TX0007894188 | 06/11/14 |
| 1523. | Penthouse Letters. [Published: 2014-05-20. Issue: vol. 32, no. 7, July 2014] | TX0007878654 | 06/10/14 |
| 1524. | Penthouse Letters. [Published: 2014-06-17. Issue: vol. 32, no. 8, August 2014] | TX0007911669 | 08/13/14 |
| 1525. | Penthouse Letters. [Published: 2014-07-15. Issue: vol. 32, no. 9, September 2014] | TX0007911662 | 08/13/14 |
| 1526. | Penthouse Letters. [Published: 2014-09-02. Issue: vol. 32, no. 10, October 2014] | TX0007918339 | 09/18/14 |
| 1527. | Penthouse Letters. [Published: 2014-09-09. Issue: vol. 32, no. 11, November 2014] | TX0007970802 | 01/27/15 |

V9915 D493 P 61

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 1528. | Penthouse Letters. [Published: 2014-09-09. Issue: vol. 32, no. 11, November 2014] | TX0007918344 | 09/18/14 |
| 1529. | Penthouse Letters. [Published: 2014-10-07. Issue: vol. 32, no. 12, December 2014] | TX0007970791 | 01/20/15 |
| 1530. | Penthouse Letters. [Published: 2014-11-04. Issue: vol. 32, no. 13, December 2014] | TX0007970770 | 01/23/15 |
| 1531. | Penthouse Letters. [Published: 2014-12-02. Issue: vol. 33, no. 1, January 2015] | TX0007970766 | 01/20/15 |
| 1532. | Penthouse Letters. [Published: 2014-12-31. Issue: vol. 33, no. 2, February 2015] | TX0007975661 | 01/21/15 |
| 1533. | Penthouse Presents Three-for-All. | TX0007899625 | 03/21/14 |
| 1534. | Penthouse Presents Working Stiff Vol. 2. | TX0007949507 | 08/12/14 |
| 1535. | Penthouse. [Published: 2014-01-14. Issue: vol. 45, no. 6, February 2014] | TX0007819544 | 02/12/14 |
| 1536. | Penthouse. [Published: 2014-02-18. Issue: vol. 45, no. 7, March 2014] | TX0007838828 | 03/28/14 |
| 1537. | Penthouse. [Published: 2014-03-18. Issue: vol. 45, no. 8, April 2014] | TX0007838825 | 03/28/14 |
| 1538. | Penthouse. [Published: 2014-04-15. Issue: vol. 45, no. 9, May 2014] | TX0007878684 | 04/18/14 |
| 1539. | Penthouse. [Published: 2014-05-20. Issue: vol. 45, no. 10, June 2014] | TX0007894191 | 06/11/14 |
| 1540. | Penthouse. [Published: 2014-06-24. Issue: vol. 45, no. 11, July/August 2014] | TX0007911652 | 08/13/14 |
| 1541. | Penthouse. [Published: 2014-07-29. Issue: vol. 46, no. 1, September 2014] | TX0007911663 | 08/13/14 |
| 1542. | Penthouse. [Published: 2014-09-02. Issue: vol. 46, no. 2, October 2014] | TX0007923747 | 09/19/14 |
| 1543. | Penthouse. [Published: 2014-09-30. Issue: vol. 46, no. 3, November 2014] | TX0007970796 | 01/20/15 |
| 1544. | Penthouse. [Published: 2014-11-11. Issue: vol. 46, no. 4, December 2014] | TX0007970792 | 01/20/15 |
| 1545. | Best of Forum #157. [Published: 2015-07-14. Issue: vol. 28, no. 4, July 2015] | TX0008061557 | 07/17/15 |
| 1546. | Best of Forum. [Published: 2015-03-10. Issue: vol. 155, no. 28, #155] | TX0008003646 | 03/30/15 |
| 1547. | Best of Forum. [Published: 2015-11-17. Issue: vol. 28, no. 6, #159] | TX0008133069 | 12/02/15 |
| 1548. | Forum. [Published: 2015-01-06. Issue: vol. 45, no. 2, February 2015] | TX0007986768 | 02/10/15 |
| 1549. | Forum. [Published: 2015-02-10. Issue: vol. 45, no. 3, March 2015] | TX0007996200 | 03/03/15 |
| 1550. | Forum. [Published: 2015-03-17. Issue: vol. 45, no. 4, April/May 2015] | TX0008003665 | 03/30/15 |
| 1551. | Forum. [Published: 2015-04-28. Issue: vol. 45, no. 5, June 2015] | TX0008096094 | 05/12/15 |
| 1552. | Forum. [Published: 2015-06-02. Issue: vol. 45, no. 6, July 2015] | TX0008055361 | 06/11/15 |

V9915 D493 P 62

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1553. | Forum. [Published: 2015-07-07. Issue: vol. 45, no. 7, August 2015] | TX0008100329 | 08/20/15 |
| 1554. | Forum. [Published: 2015-08-11. Issue: vol. 45, no. 8, September] | TX0008096093 | 08/21/15 |
| 1555. | Forum. [Published: 2015-09-15. Issue: vol. 45, no. 9, October] | TX0008108577 | 10/09/15 |
| 1556. | Forum. [Published: 2015-10-20. Issue: vol. 45, no. 10, November/December] | TX0008145444 | 12/02/15 |
| 1557. | Girls of Penthouse. [Published: 2015-02-03. Issue: vol. 39, no. 2, March/April] | TX0007986130 | 03/03/15 |
| 1558. | Girls of Penthouse. [Published: 2015-03-31. Issue: vol. 39, no. 3, May/June 2015] | TX0008019513 | 04/23/15 |
| 1559. | Girls of Penthouse. [Published: 2015-06-02. Issue: vol. 39, no. 1069-3122, July/August] | TX0008055349 | 06/24/15 |
| 1560. | Girls of Penthouse. [Published: 2015-07-07. Issue: vol. 39, no. 5, September/October] | TX0008100343 | 08/20/15 |
| 1561. | Girls of Penthouse. [Published: 2015-10-06. Issue: vol. 39, no. 6, Nov/Dec] | TX0008108564 | 10/09/15 |
| 1562. | LETTERS TO PENTHOUSE VOL. 50: SHE'S WILD! SHE'S HORNY! SHE'S MARRIED? | TX0008130179 | 07/08/15 |
| 1563. | LETTERS TO PENTHOUSE Vol. 51: BACK DOOR ADVENTURES. | TX0008139483 | 10/21/15 |
| 1564. | Penthouse Holiday Issue. [Published: 2015-11-17. Issue: vol. 47, no. 4, December 2015] | TX0008133061 | 12/02/15 |
| 1565. | Penthouse Letters. [Published: 2015-01-27. Issue: vol. 33, no. 3, March 2015] | TX0007986132 | 03/03/15 |
| 1566. | Penthouse Letters. [Published: 2015-02-24. Issue: vol. 33, no. 4, April 2015] | TX0008003687 | 03/30/15 |
| 1567. | Penthouse Letters. [Published: 2015-03-24. Issue: vol. 33, no. 5, May 2015] | TX0008055333 | 04/24/15 |
| 1568. | Penthouse Letters. [Published: 2015-04-21. Issue: vol. 33, no. 6, June 2015] | TX0008096095 | 05/12/15 |
| 1569. | Penthouse Letters. [Published: 2015-05-19. Issue: vol. 33, no. 7, July 2015] | TX0008055350 | 06/24/15 |
| 1570. | Penthouse Letters. [Published: 2015-08-11. Issue: vol. 33, no. 10, October 2015] | TX0008096090 | 08/21/15 |
| 1571. | Penthouse Letters. [Published: 2015-09-08. Issue: vol. 33, no. 11, November 2015] | TX0008108572 | 10/09/15 |
| 1572. | Penthouse Letters. [Published: 2015-10-06. Issue: vol. 33, no. 12, December 2015] | TX0008108569 | 10/09/15 |
| 1573. | Penthouse Letters. [Published: 2015-11-03. Issue: vol. 33, no. 13, Holiday 2015] | TX0008133050 | 12/02/15 |
| 1574. | Penthouse. [Published: 2015-02-17. Issue: vol. 46, no. 7, March 2015] | TX0007996217 | 03/03/15 |
| 1575. | Penthouse. [Published: 2015-03-24. Issue: vol. 46, no. 8, April 2015] | TX0008019514 | 04/23/15 |
| 1576. | Penthouse. [Published: 2015-06-02. Issue: vol. 46, no. 10, June 2015] | TX0008055345 | 06/24/15 |

V9915 D493 P 63

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1577. | Penthouse. [Published: 2015-07-07. Issue: vol. 46, no. 11, July/August] | TX0008061559 | 07/17/15 |
| 1578. | Penthouse. [Published: 2015-08-11. Issue: vol. 47, no. 1, September 2015] | TX0008096091 | 08/21/15 |
| 1579. | Penthouse. [Published: 2015-09-15. Issue: vol. 47, no. 2, October 2015] | TX0008108565 | 10/09/15 |
| 1580. | Penthouse. [Published: 2015-10-13. Issue: vol. 47, no. 3, November 2015] | TX0008145458 | 12/02/15 |
| 1581. | Penthouse Variations. [Published: 2015-02-24. Issue: vol. 37, no. 4, April 2015] | TX0008003648 | 03/30/15 |
| 1582. | Penthouse Variations. [Published: 2015-03-24. Issue: vol. 37, no. 5, May 2015] | TX0008019498 | 04/23/15 |
| 1583. | Penthouse Variations. [Published: 2015-04-21. Issue: vol. 37, no. 6, June 2015] | TX0008055357 | 05/15/15 |
| 1584. | Variations Best. [Published: 2015-01-13. Issue: vol. 28, no. 1, #154 2015] | TX0007970811 | 01/20/15 |
| 1585. | Variations Best. [Published: 2015-05-12. Issue: vol. 28, no. 3, 156] | TX0008055356 | 05/22/15 |
| 1586. | Variations Best. [Published: 2015-09-15. Issue: vol. 28, no. 5, #158] | TX0008108582 | 10/09/15 |
| 1587. | Variations. [Published: 2015-01-27. Issue: vol. 37, no. 3, March 2015] | TX0007996208 | 03/03/15 |
| 1588. | Variations. [Published: 2015-05-26. Issue: vol. 37, no. 7, July 2015] | TX0008055363 | 06/11/15 |
| 1589. | Variations. [Published: 2015-06-23. Issue: vol. 37, no. 8, August 2015] | TX0008055359 | 07/17/15 |
| 1590. | Variations. [Published: 2015-07-07. Issue: vol. 37, no. 9, September 2015] | TX0008100335 | 08/20/15 |
| 1591. | Variations. [Published: 2015-09-22. Issue: vol. 37, no. 11, November 2015] | TX0008108581 | 10/09/15 |
| 1592. | Variations. [Published: 2015-10-20. Issue: vol. 37, no. 12, December 2015] | TX0008145440 | 12/02/15 |
| 1593. | Variations. [Published: 2015-11-24. Issue: vol. 38, no. 1, January 2016] | TX0008133073 | 12/02/15 |
| 1594. | Danni.com presents adult stars unleashed featuring Asia Carrera. | PA0001098730 | 12/31/01 |
| 1595. | Danni.com presents Naked sex stars / featuring Jenna Jameson. | PA0001086241 | 12/10/01 |
| 1596. | Danni.com presents Danni's busty naturals featuring Nadine Jansen. | PA0001103043 | 07/18/02 |
| 1597. | Danni.com presents Danni's naughty pinups featuring Danni Ashe. | PA0001096772 | 04/08/02 |
| 1598. | Danni.com presents Veronika Zemanova. | PA0001122779 | 12/06/02 |
| 1599. | Danni.com presents Virtual lap dancers. | PA0001138719 | 01/16/03 |
| 1600. | Raw, wet & raunchy. | PA0001103044 | 08/14/02 |
| 1601. | Danni.com presents Busty bombshells. | PA0001194742 | 04/08/03 |

V9916 D493 P 64

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1602. | Danni.com presents Danni's wet adventures. | PA0001194743 | 07/23/03 |
| 1603. | Danni.com presents Naughty newbies. | PA0001151058 | 05/07/03 |
| 1604. | Danni Ashe presents Danni's busty nurses. | PA0001232249 | 06/25/04 |
| 1605. | Danni Ashe presents "Danni's football parties." | PA0001275391 | 03/25/05 |
| 1606. | Danni Ashe presents Danni's international beauties. | PA0001252064 | 11/12/04 |
| 1607. | Danni Ashe presents Ebony bombshells. | PA0001275387 | 03/23/05 |
| 1608. | Danni Ashe presents Virtual lap dancers 2.0. | PA0001252059 | 11/12/04 |
| 1609. | Danni's busty naturals, the brunettes. | PA0001247509 | 09/02/04 |
| 1610. | Danni's hard cut by invitation only. | PA0001252065 | 11/12/04 |
| 1611. | Danni's Hard Cut presents "Football fantasies." | PA0001275397 | 03/25/05 |
| 1612. | Danni Ashe presents busty Latin bombshell. | PA0001335789 | 06/05/06 |
| 1613. | Danni Ashe presents "Danni's exotic beauties." | PA0001276567 | 03/23/05 |
| 1614. | Danni Ashe presents Danni's hardbody bombshells. | PA0001276566 | 03/25/05 |
| 1615. | Dannis busty dream tales. | PA0001265628 | 04/12/05 |
| 1616. | Danni's Hard Cut presents "Alien love fantasy and other sex tales." | PA0001275399 | 03/25/05 |
| 1617. | Danni's Hardcut presents Topsy turvy. | PA0001290070 | 04/12/05 |
| 1618. | Squirting showers : vol. 1. | PA0001373741 | 02/02/07 |
| 1619. | Danni Ashe presents honest bra. | PA0001335790 | 06/05/06 |
| 1620. | Danni Ashe presents voyeur fantasies. | PA0001335792 | 06/05/06 |
| 1621. | DanniHardCut presents Anal adventures : no. 1, Sorority sisters. | PA0001343728 | 10/31/06 |
| 1622. | DanniHardCut presents sex university. | PA0001335791 | 06/05/06 |
| 1623. | DanniHardcut presents The boobs of Hazzard 2--back to the ranch. | PA0001350146 | 09/04/06 |
| 1624. | DanniHardCut presents the lusty busty pussy patrol. | PA0001335788 | 06/05/06 |
| 1625. | DanniHardCut presents The sexxxing. | PA0001368430 | 03/02/07 |
| 1626. | Danni's House of milfs : vol. 1. | PA0001366945 | 02/02/07 |
| 1627. | Toys & strap-ons. | PA0001366948 | 02/05/07 |
| 1628. | Penthouse.com content CD : no. 03-27-01. | VA0001084549 | 06/19/01 |
| 1629. | [Penthouse.com content CD no. 08-23-01] | VA0001135417 | 11/15/01 |
| 1630. | [Penthouse.com content CD no. 10-31-01] | VA0001135370 | 11/15/01 |
| 1631. | Penthouse.com : July 26, 2001. | VA0001098290 | 09/04/01 |
| 1632. | Penthouse.com : June 12, 2001. | VA0001098289 | 09/04/01 |
| 1633. | Penthouse.com : June 18, 2001. | VA0001098291 | 09/04/01 |

V9916 D493 P 66

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1634. | Penthouse.com : no. 12-17-01. | VA0001135437 | 03/11/02 |
| 1635. | Penthouse.com. | VA0001084574 | 06/19/01 |
| 1636. | Penthouse.com. | VA0001114566 | 04/10/01 |
| 1637. | Penthouse.com. | VA0001114567 | 04/10/01 |
| 1638. | Penthouse.com. | VA0001114573 | 11/15/01 |
| 1639. | Penthouse.com. | VA0001201827 | 07/11/02 |
| 1640. | Penthouse.com, 4-27-2001. | VA0001084577 | 06/15/01 |
| 1641. | Penthouse.com, 5-15-2001. | VA0001084578 | 08/09/01 |
| 1642. | Penthouse.com, 5-22-01. | VA0001084576 | 08/09/01 |
| 1643. | Penthouse.com : Aug. 28, 2001. | VA0001114481 | 11/15/01 |
| 1644. | Penthouse.com content CD : no. 02-13-01. | VA0001077676 | 04/24/01 |
| 1645. | [Penthouse.com (content CD--01/15/02 to 10/15/02)] | VA0001177136 | 11/06/02 |
| 1646. | Great pet hunt : pt. 2. | PA0000864400 | 09/22/97 |
| 1647. | 25th anniversary Pet of the Year spectacular. | PA0000816185 | 10/10/97 |
| 1648. | Party with the pets. | PA0000816146 | 10/10/97 |
| 1649. | Pet of the year winners, Sasha, Vinni, Leslie Glass. | PA0000816213 | 10/10/97 |
| 1650. | 1995 pet of the year playoff. | PA0000816212 | 10/10/97 |
| 1651. | Behind the scenes. | PA0000798917 | 06/10/96 |
| 1652. | Earl Miller's girls of Europe. | PA0000798916 | 06/10/96 |
| 1653. | International amateur video. | PA0000798915 | 06/10/95 |
| 1654. | Pet of the year playoff--Andi, Sue, Bonita, Levena, Tiffany. | PA0000798918 | 06/10/96 |
| 1655. | Swimsuit video 2. | PA0000799530 | 06/12/96 |
| 1656. | Women in & out of uniform. | PA0000799531 | 06/12/96 |
| 1657. | All access. | PA0000829434 | 01/28/97 |
| 1658. | Art of massage. | PA0000809434 | 06/12/96 |
| 1659. | Girls of Penthouse : vol. 2. | PA0000864399 | 09/22/97 |
| 1660. | Miami hot talk. | PA0000798919 | 06/14/96 |
| 1661. | Nude beach party. | PA0000840824 | 01/28/97 |
| 1662. | Nude gym. | PA0000840825 | 01/28/97 |
| 1663. | Penthouse on campus. | PA0000799532 | 06/12/96 |
| 1664. | Pet of the year playoff 1996. | PA0000864405 | 09/22/97 |
| 1665. | Sex off the runway. | PA0000860982 | 10/10/97 |

V8915 D493 P 66

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1666. | Sexiest amateur video centerfolds 2. | PA0000835914 | 01/28/97 |
| 1667. | Ultimate pet games. | PA0000798828 | 06/14/96 |
| 1668. | Ultimate pet games. | PA0000967823 | 01/18/00 |
| 1669. | Wild weekend with the pets. | PA0000840773 | 01/28/97 |
| 1670. | Fire and ice. | PA0000859108 | 07/08/97 |
| 1671. | Lipstick girls. | PA0000864411 | 08/11/97 |
| 1672. | Lost treasures. | PA0000830761 | 07/08/97 |
| 1673. | Luscious ladies. | PA0000864410 | 08/11/97 |
| 1674. | Penthouse confessions. | PA0000897688 | 04/28/98 |
| 1675. | Pet of the Year playoff : Julia, Paige, Diane, Lexus. | PA0000897692 | 07/08/97 |
| 1676. | Secret lives, secret desires. | PA0000830762 | 07/08/97 |
| 1677. | Showgirls of Penthouse. | PA0000897686 | 04/28/98 |
| 1678. | Sun, surf & centerfolds. | PA0000983495 | 02/22/00 |
| 1679. | Venus descending. | PA0000864404 | 08/11/97 |
| 1680. | Amazing Amazon beauties. | PA0000976178 | 01/18/00 |
| 1681. | Pet of the Year & friends. | PA0000897693 | 04/28/98 |
| 1682. | Pet of the Year playoff. | PA0000967825 | 01/18/00 |
| 1683. | Tropical spice. | PA0000976255 | 01/18/00 |
| 1684. | World of Philip Mond. | PA0000897690 | 04/28/98 |
| 1685. | 30 pets 60. | PA0000983503 | 02/22/00 |
| 1686. | Behind the scenes at the swimsuit calendar photo shoot. | PA0000976135 | 01/18/00 |
| 1687. | Girls of the zodiac. | PA0000983496 | 02/22/00 |
| 1688. | Island girls. | PA0000976173 | 01/18/00 |
| 1689. | Keys to fantasy. | PA0000976174 | 01/18/00 |
| 1690. | Lingerie party. | PA0000983504 | 02/22/00 |
| 1691. | Pet of the Year 2000 winner. | PA0000983501 | 02/22/00 |
| 1692. | Pet of the Year and friends starring Nikie St. Gilles. | PA0000967826 | 01/18/00 |
| 1693. | Pet of the Year playoff 2000. | PA0000983497 | 02/22/00 |
| 1694. | Sultry sensations. | PA0000976126 | 01/18/00 |
| 1695. | Casting call. | PA0001086873 | 12/31/01 |
| 1696. | Harlots of hell. | PA0001086867 | 12/31/01 |
| 1697. | Working women. | PA0001086243 | 12/31/01 |
| 1698. | All new pet workout. | PA0001086238 | 12/31/01 |

V9915 D493 P 67

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1699. | Beach babes. | PA0001086240 | 12/31/01 |
| 1700. | Casting call : no. 2. | PA0001086877 | 12/30/01 |
| 1701. | Dear diary. | PA0001086866 | 12/31/01 |
| 1702. | Fashion and fantasies. | PA0001086875 | 12/31/01 |
| 1703. | Gentlemen's Club. | PA0001086242 | 12/31/01 |
| 1704. | Girls of Penthouse : vol. 4. | PA0001086081 | 01/07/02 |
| 1705. | Girls on girls next door. | PA0001086872 | 01/31/02 |
| 1706. | Pet of the year playoff 2001. | PA0001086874 | 12/31/01 |
| 1707. | Pet of the year winner 2001. | PA0001086863 | 12/31/01 |
| 1708. | Pets in paradise. | PA0001086239 | 12/31/01 |
| 1709. | Sexiest amateur video centerfolds : no. 3. | PA0001086887 | 12/31/01 |
| 1710. | Sexiest amateur video centerfolds : no. 4. | PA0001086886 | 12/31/01 |
| 1711. | Sweetheart murders. | PA0001086878 | 12/31/01 |
| 1712. | Girls of Cote d'Azur. | PA0001080300 | 06/20/02 |
| 1713. | Pet of the year 2002. | PA0001089787 | 06/20/02 |
| 1714. | Pet of the year playoff 2002. | PA0001233111 | 07/15/04 |
| 1715. | College cuties. | PA0001217681 | 03/12/04 |
| 1716. | Jezebelle and friends. | PA0001223109 | 04/09/04 |
| 1717. | Penthouse fetish : virtual harem--9 circles of pleasures. | PA0001233090 | 07/15/04 |
| 1718. | Pet of the year 2003. | PA0001263904 | 11/03/04 |
| 1719. | Pet of the year 2004. | PA0001263902 | 11/04/04 |
| 1720. | Pet of the year play-off 2003. | PA0001223110 | 04/09/04 |
| 1721. | Pet of the year play-off 2004. | PA0001217761 | 03/12/04 |
| 1722. | Pets in paradise 2. | PA0001233093 | 07/15/04 |
| 1723. | Showers of lust. | PA0001217770 | 03/12/04 |
| 1724. | South of the Border. | PA0001263903 | 11/04/04 |
| 1725. | Starlet villa. | PA0001223106 | 04/05/04 |
| 1726. | Studio girl. | PA0001223111 | 04/05/04 |
| 1727. | Sweet chocolate. | PA0001263909 | 11/04/04 |
| 1728. | Thrill seekers. | PA0001233103 | 07/15/04 |
| 1729. | Girlfriends. | PA0001263905 | 11/03/04 |
| 1730. | Labor of lust. | PA0001295160 | 09/12/05 |
| 1731. | Pet of the year play-off 2005. | PA0001295161 | 09/12/05 |

V9915 D493 P 68

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|------|------------------|---------------------|------|
| 1732. | Bedroom fantasies. | PA0001295165 | 09/12/05 |
| 1733. | Caligula: The Imperial Edition. | PA0001737842 | 05/26/09 |
| 1734. | Passport to paradise: Hawaii. By Penthouse Video, Inc. | PA0000626565 | 02/22/93 |
| 1735. | Penthouse centerfold, Amy Lynn. | PA0000541599 | 10/10/91 |
| 1736. | Penthouse centerfold Amy Lynn. By Penthouse Video, Inc. | PA0000626569 | 02/22/93 |
| 1737. | Penthouse centerfold, Julie Strain. | PA0000533220 | 06/28/91 |
| 1738. | Penthouse centerfold, Julie Strain. By Penthouse Video, Inc. | PA0000549358 | 11/12/91 |
| 1739. | Penthouse centerfold Julie Strain. By Penthouse Video, Inc. | PA0000626567 | 02/22/93 |
| 1740. | 1991 pet of the year playoff. | PA0000554761 | 11/04/91 |
| 1741. | 1991 pet of the year playoff. By Penthouse Video, Inc. | PA0000626564 | 02/22/93 |
| 1742. | Dream cars, fantasy women. | PA0000549231 | 07/02/91 |
| 1743. | Dream cars, fantasy women. By Penthouse Video, Inc. | PA0000626570 | 02/22/93 |
| 1744. | Fast cars, fantasy women. | PA0000548819 | 11/04/91 |
| 1745. | Fast cars, fantasy women. By Penthouse Video, Inc. | PA0000626571 | 02/22/93 |
| 1746. | P-A-S-S-P-O-R-T to paradise H-A-W-A-I-I. By Penthouse Video, Inc. | PA0000550295 | 11/01/91 |
| 1747. | P.A.S.S.P.O.R.T. to paradise: H.A.W.A.I.I. By Penthouse Video, Inc. | PA0000626566 | 02/22/93 |
| 1748. | Passport to paradise, Hawaii. | PA0000533214 | 06/07/91 |
| 1749. | Passport to paradise, Hawaii. | PA0000548824 | 11/04/91 |
| 1750. | Pet of the year winners, 1992. | PA0000598895 | 11/02/92 |
| 1751. | Pet of the year winners 1992. By Penthouse Video, Inc. | PA0000642730 | 04/05/93 |
| 1752. | Pet of the year winners, 1992. By Penthouse Video, Inc. | PA0000665529 | 09/21/93 |
| 1753. | Ready to ride. | PA0000591255 | 11/02/92 |
| 1754. | Ready to ride. By Penthouse Video, Inc. | PA0000626572 | 02/22/93 |
| 1755. | Satin & lace : an erotic history of lingerie. | PA0000564364 | 02/28/92 |
| 1756. | Satin & lace, an erotic history of lingerie. By Penthouse Video, Inc. | PA0000626568 | 02/22/93 |
| 1757. | 1992 pet of the year playoff. | PA0000598894 | 11/02/92 |
| 1758. | 1992 pet of the year playoff. By Penthouse Video, Inc. | PA0000642729 | 04/05/93 |
| 1759. | 1992 pet of the year playoff. By Penthouse Video, Inc. | PA0000665528 | 09/21/93 |
| 1760. | Great pet hunt : pt. I. | VA0000543132 | 11/02/92 |
| 1761. | Great pet hunt. Pt. I. By Penthouse Financial Services, N.V. | VA0000570157 | 03/18/93 |

V9915 D493 P 69

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1762. | Great pet hunt. Pt. I. By Penthouse Financial Services, N.V. | VA0000630190 | 09/21/93 |
| 1763. | Paradise revisited. | PA0000598892 | 11/02/92 |
| 1764. | Paradise revisited. By Penthouse Video, Inc. | PA0000642728 | 04/05/93 |
| 1765. | Paradise revisited. By Penthouse Video, Inc. | PA0000665531 | 09/21/93 |
| 1766. | Kama Sutra : the art of making love. | PA0000683457 | 09/20/93 |
| 1767. | Pet of the year winners : Julie Strain/Mahalia. | PA0000657868 | 05/23/95 |
| 1768. | Pet of year play-off. | PA0000657747 | 12/05/94 |
| 1769. | Satin and lace : no. 2, Hollywood undercover. | PA0000618526 | 05/17/93 |
| 1770. | All pet workout. | PA0000748503 | 08/14/95 |
| 1771. | Art of desire. | PA0000618544 | 05/17/93 |
| 1772. | Penthouse forum letters : vol. 1. | PA0000618543 | 05/17/93 |
| 1773. | 25th anniversary swimsuit video. | PA0000712800 | 12/06/94 |
| 1774. | All-pet workout. | PA0000663845 | 09/20/93 |
| 1775. | Classics : vol. 1. | PA0000618474 | 05/24/93 |
| 1776. | Pet of the year playoff Gina, Natalie, Seana & Sharon (1994) | PA0000756061 | 07/11/95 |
| 1777. | Sexiest amateur video centerfold. | PA0000756077 | 07/11/95 |
| 1778. | Penthouse 25th anniversary swimsuit video. | PA0000748513 | 08/14/95 |
| 1779. | Classics : vol. 2. | PA0000657827 | 12/15/94 |
| 1780. | Dream girls. | PA0000657834 | 04/07/95 |
| 1781. | Girls of Penthouse : vol. 3. | PA0000756074 | 07/11/95 |
| 1782. | Kama Sutra II. | PA0000756076 | 07/11/95 |
| 1783. | Pet of the year winners 1995. | PA0000756073 | 07/11/95 |
| 1784. | Pet rocks. | PA0000756063 | 07/11/95 |
| 1785. | Penthouse letters : bad wives. | PA0001366746 | 02/02/07 |
| 1786. | Penthouse letters : night nurses. | PA0001366734 | 02/02/07 |
| 1787. | Penthouse underground : filthy. | PA0001335277 | 02/02/07 |
| 1788. | Penthouse variations : flesh and fantasy. | PA0001335325 | 02/02/07 |
| 1789. | Penthouse variations : stiletto. | PA0001366735 | 02/02/07 |
| 1790. | Vamps. | PA0001366728 | 02/02/07 |
| 1791. | 100% JILL. | PA0001590403 | 09/11/07 |
| 1792. | 100% SYLVIA. | PA0001590047 | 09/11/07 |
| 1793. | Bitches. | PA0001366894 | 03/13/07 |

V9916 D493 P 70

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1794. | BOOTY CALL. | PA0001622776 | 02/01/08 |
| 1795. | BRAZILIAN BACKDOOR BOOTY. | PA0001611330 | 12/12/07 |
| 1796. | COMING OF AGE. | PA0001590054 | 09/11/07 |
| 1797. | DRIPPING FUCKING WET. | PA0001590050 | 09/11/07 |
| 1798. | DRIPPING FUCKING WET 2. | PA0001588982 | 09/11/07 |
| 1799. | DRIPPING WET 5, KRAZY IN KAUAI. | PA0001590045 | 09/11/07 |
| 1800. | EXXXTRA CREDIT. | PA0001622768 | 02/01/08 |
| 1801. | GLAM TRASH. | PA0001588846 | 09/13/07 |
| 1802. | JUST A GIRL. | PA0001588841 | 09/13/07 |
| 1803. | MISSING PERSONS. | PA0001588849 | 09/13/07 |
| 1804. | My First Girlfriend : They Wanted it to be Special. | PA0001588842 | 09/13/07 |
| 1805. | MY IMAGINARY LIFE. | PA0001588834 | 09/13/07 |
| 1806. | NEIGHBORS. | PA0001611356 | 12/12/07 |
| 1807. | Penthouse : Brazilian heat. | PA0001375460 | 04/05/07 |
| 1808. | PENTHOUSE FORUM: DIRTY DIVAS. | PA0001594734 | 11/30/07 |
| 1809. | PENTHOUSE FORUM: MY FRESHMAN YEAR. | PA0001594755 | 11/30/07 |
| 1810. | PENTHOUSE FORUM: SEXUAL REVOLUTION. | PA0001594736 | 11/30/07 |
| 1811. | Penthouse : killer klub girlz : Killer klub girlz | PA0001390460 | 06/05/07 |
| 1812. | PENTHOUSE: LATIN EXTASY. | PA0001594718 | 11/30/07 |
| 1813. | PENTHOUSE LETTERS. | PA0001633515 | 04/11/08 |
| 1814. | Penthouse letters : dripping wet. | PA0001383108 | 06/22/07 |
| 1815. | Penthouse letters : hot pink. | PA0001375444 | 04/05/07 |
| 1816. | Penthouse letters : in deep. | PA0001366892 | 03/13/07 |
| 1817. | Penthouse letters : my best friend's Mom. | PA0001366890 | 03/13/07 |
| 1818. | PENTHOUSE LETTERS, MY NEIGHBOR'S WIFE. | PA0001624741 | 11/30/07 |
| 1819. | Penthouse letters : Shameless. | PA0001383159 | 06/22/07 |
| 1820. | Penthouse letters : Sub-urban sex. | PA0001383152 | 06/05/07 |
| 1821. | Penthouse letters : the boss : The boss. | PA0001390462 | 06/05/07 |
| 1822. | PENTHOUSE LETTERS, THE BOTTOM DRAWER. | PA0001624748 | 11/30/07 |
| 1823. | PENTHOUSE LETTERS: THERE GOES THE NEIGHBORHOOD. | PA0001594728 | 11/30/07 |
| 1824. | Penthouse : out of control. | PA0001375454 | 04/05/07 |
| 1825. | Penthouse : raunchy rio. | PA0001383151 | 06/05/07 |

V9915 D493 P 71

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1826. | Penthouse : slave to sin. | PA0001383149 | 06/05/07 |
| 1827. | PENTHOUSE: THE HOUSE ON LOVERS LANE. | PA0001594759 | 11/30/07 |
| 1828. | Penthouse underground : drive. | PA0001366895 | 03/13/07 |
| 1829. | Penthouse underground : klub slutz. | PA0001366889 | 03/13/07 |
| 1830. | Penthouse variations : Bad 2 the bone. | PA0001383150 | 06/05/07 |
| 1831. | Penthouse variations : fetish diaries. | PA0001366893 | 03/13/07 |
| 1832. | Penthouse variations : naughty girls. | PA0001375447 | 04/05/07 |
| 1833. | Penthouse variations : Strange dreams. | PA0001375476 | 04/05/07 |
| 1834. | Penthouse variations : uniform bad bahavior : Uniform bad behavior | PA0001390461 | 06/05/07 |
| 1835. | POWER PLAY. | PA0001588838 | 09/13/07 |
| 1836. | POWER SEX. | PA0001590057 | 09/11/07 |
| 1837. | SERVICE WITH A SMILE. | PA0001589461 | 09/13/07 |
| 1838. | SEX TO DIE FOR. | PA0001588839 | 09/13/07 |
| 1839. | SLICK. | PA0001588853 | 09/13/07 |
| 1840. | SLIPPERY WHEN WET. | PA0001588830 | 09/13/07 |
| 1841. | SLUMBER PARTY. | PA0001622760 | 02/01/08 |
| 1842. | SLUTS OF THE NYLE 3. | PA0001588983 | 09/11/07 |
| 1843. | SMUT PEDDLER / PENTHOUSE DIGITAL MEDIA PRODUCTIONS INC ; Penthouse Digital Media Productions Inc. | PA0001589458 | 09/13/07 |
| 1844. | SPEAKEASY. | PA0001622755 | 02/01/08 |
| 1845. | THE BOSS' DAUGHTER. | PA0001588833 | 09/13/07 |
| 1846. | THE FRAT HOUSE. | PA0001611345 | 12/12/07 |
| 1847. | Timeless. | PA0001366891 | 03/13/07 |
| 1848. | TRASHY. | PA0001588986 | 09/11/07 |
| 1849. | WEB MISTRESS. | PA0001588981 | 09/11/07 |
| 1850. | TWISTED TAILS. | PA0001775513 | 10/09/08 |
| 1851. | WHEN THE CAT'S AWAY. | PA0001775509 | 10/09/08 |
| 1852. | BAD GIRLS, INK. | PA0001699426 | 12/19/08 |
| 1853. | BOOTCAMP : SEX SURVIVAL WEEKEND. | PA0001629990 | 04/11/08 |
| 1854. | CANDY 69. | PA0001630001 | 04/11/08 |
| 1855. | CHEATING AFFAIRS. | PA0001635953 | 05/12/08 |
| 1856. | COUGAR CLUB : The Hunt is On. | PA0001635956 | 05/12/08 |

V9916 D493 P72

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1857. | DEEP IN THE BUSH. | PA0001635961 | 05/12/08 |
| 1858. | DREAM MACHINE. | PA0001629996 | 04/11/08 |
| 1859. | DREAMS & DESIRES. | PA0001775506 | 10/09/08 |
| 1860. | DUDE THAT'S MY MOM!!! | PA0001622782 | 02/01/08 |
| 1861. | FLESH DESIRES. | PA0001635960 | 05/12/08 |
| 1862. | FOX TROT. | PA0001635954 | 05/12/08 |
| 1863. | FRESHMAN FIRST TIMERS. | PA0001699423 | 12/19/08 |
| 1864. | IDENTITY. | PA0001694479 | 03/12/09 |
| 1865. | IMPULSIVE. | PA0001699425 | 12/19/08 |
| 1866. | LAYOVER. | PA0001699424 | 12/19/08 |
| 1867. | LUCKY STIFF. | PA0001699428 | 12/19/08 |
| 1868. | MISS BLACKWOOD DIARIES. | PA0001699422 | 12/19/08 |
| 1869. | PENTHOUSE: BRING ME THE HEAD OF SHAWNA LENEE. | PA0001754747 | 02/26/09 |
| 1870. | PENTHOUSE: FLESHDANCE. | PA0001755407 | 09/09/08 |
| 1871. | PENTHOUSE FORUM. | PA0001630008 | 04/11/08 |
| 1872. | Penthouse Forum: Erica's Fantasies. | PA0001754755 | 02/26/09 |
| 1873. | PENTHOUSE FORUM: HOUSEWIVES HUNTING HOUSEWIVES. | PA0001644161 | 07/10/08 |
| 1874. | PENTHOUSE FORUM: MY SECRET GIRLFRIEND. | PA0001644163 | 07/10/08 |
| 1875. | PENTHOUSE FORUM: SOUTHERN EXXXPOSURE. | PA0001755437 | 09/09/08 |
| 1876. | PENTHOUSE FORUM: VIRGIN DIARIES. | PA0001755432 | 09/09/08 |
| 1877. | PENTHOUSE LETTERS: BREAKING & ENTERING. | PA0001644269 | 07/10/08 |
| 1878. | PENTHOUSE LETTERS: CLOSE SHAVE. | PA0001644179 | 07/10/08 |
| 1879. | PENTHOUSE LETTERS : DIRTY LITTLE SECRETS. | PA0001629985 | 04/11/08 |
| 1880. | PENTHOUSE LETTERS : ONE NIGHT STAND. | PA0001633516 | 04/11/08 |
| 1881. | PENTHOUSE LETTERS : SEX IN DANGEROUS PLACES. | PA0001635963 | 05/12/08 |
| 1882. | PENTHOUSE LETTERS : SHEER DESIRES. | PA0001630004 | 04/11/08 |
| 1883. | PENTHOUSE LETTERS: THE PERFECT FANTASY. | PA0001754750 | 02/26/09 |
| 1884. | PENTHOUSE LETTERS: WICKED WIVES A VOYEUR'S DIARY. | PA0001755406 | 09/09/08 |
| 1885. | PENTHOUSE: LIAR'S CLUB. | PA0001754753 | 02/26/09 |
| 1886. | PENTHOUSE: LOOKING GLASS. | PA0001644266 | 07/10/08 |
| 1887. | PENTHOUSE: POSSESSED. | PA0001644286 | 07/10/08 |

V9S15 D493 P 73

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 1888. | PENTHOUSE: REMODELED. | PA0001644268 | 07/10/08 |
| 1889. | PENTHOUSE: STUFF DREAMS ARE MADE OF. | PA0001755408 | 09/09/08 |
| 1890. | PENTHOUSE VARIATIONS: MY PLEASURE PET. | PA0001765455 | 09/09/08 |
| 1891. | PENTHOUSE VARIATIONS : PILLOW TALK. | PA0001630019 | 04/11/08 |
| 1892. | PENTHOUSE VARIATIONS: PLEASURE DOME. | PA0001755409 | 09/09/08 |
| 1893. | PENTHOUSE VARIATIONS: SLAVE FOR A NIGHT. | PA0001644287 | 07/10/08 |
| 1894. | Penthouse Variations: The Footman. | PA0001754751 | 02/26/09 |
| 1895. | PENTHOUSE VARIATIONS: TIED UP. | PA0001644208 | 07/10/08 |
| 1896. | PENTHOUSE: WHERE THERE'S SMOKE. | PA0001755410 | 09/09/08 |
| 1897. | PENTHOUSE: WHO'S KILLING THE PETS? | PA0001644283 | 07/10/08 |
| 1898. | PICTURESQUE. | PA0001622754 | 02/01/08 |
| 1899. | REXXX. | PA0001622762 | 02/01/08 |
| 1900. | ROUTE 66. | PA0001635959 | 05/12/08 |
| 1901. | SCANDALOUS. | PA0001699420 | 12/19/08 |
| 1902. | SEX OVER EASY. | PA0001622778 | 02/01/08 |
| 1903. | SPIKED HEELS. | PA0001693531 | 03/12/09 |
| 1904. | SPRING FLING. | PA0001775515 | 10/09/08 |
| 1905. | PIN-UP. | PA0001693537 | 03/12/09 |
| 1906. | SEX PARTY. | PA0001693538 | 03/12/09 |
| 1907. | Traderz. | PA0001693528 | 03/12/09 |
| 1908. | WATCH ME. | PA0001693529 | 03/12/09 |
| 1909. | BEDSIDE MANNERS. | PA0001728661 | 05/18/09 |
| 1910. | BEHIND THE CYBER DOOR. | PA0001693534 | 03/12/09 |
| 1911. | BLONDE & BRILLIANT. | PA0001693536 | 03/12/09 |
| 1912. | COUGAR CRUISIN'. | PA0001693535 | 03/12/09 |
| 1913. | FRIENDS WITH BENEFITS. | PA0001693533 | 03/12/09 |
| 1914. | GIRL'S GUIDE TO GIRLS. | PA0001728664 | 05/18/09 |
| 1915. | KINKY COUGARS. | PA0001693539 | 03/12/09 |
| 1916. | LAST CALL. | PA0001693532 | 03/12/09 |
| 1917. | NETCHIXXX. | PA0001693530 | 03/12/09 |
| 1918. | PENTHOUSE: 18 AND DANGEROUS. | PA0001676709 | 01/15/10 |
| 1919. | PENTHOUSE: ADULTFRIENDFINDER.COM'S GUIDE TO THREESOMES. | PA0001673471 | 10/02/09 |

V9915 D493 P 74

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1920. | PENTHOUSE: ANOTHER MAN'S MILF. | PA0001676779 | 01/15/10 |
| 1921. | PENTHOUSE: BOOBY TRAP. | PA0001673330 | 10/02/09 |
| 1922. | PENTHOUSE: CAMS.COM: CONFESSIONS OF A CAM GIRL. | PA0001682729 | 11/17/09 |
| 1923. | PENTHOUSE: DR. ZDROCKS GUIDE TO GREAT SEX. | PA0001676788 | 01/15/10 |
| 1924. | PENTHOUSE: DRILL BABY DRILL. | PA0001673348 | 10/02/09 |
| 1925. | PENTHOUSE: EVERYBODY NEEDS MILF. | PA0001673356 | 10/02/09 |
| 1926. | PENTHOUSE FORUM: MY TEACHER'S A MILF. | PA0001715199 | 07/31/09 |
| 1927. | PENTHOUSE FORUM: MY WIFE & MY MISTRESS. | PA0001673364 | 10/02/09 |
| 1928. | PENTHOUSE FORUM: SECRET DIARY OF A CAM GIRL. | PA0001751526 | 03/12/09 |
| 1929. | PENTHOUSE FORUM: SECRET DIARY OF A SECRETARY. | PA0001715201 | 07/31/09 |
| 1930. | PENTHOUSE FORUM: THE PENTHOUSE PET'S GUIDE TO BLOWJOBS. | PA0001682668 | 11/17/09 |
| 1931. | PENTHOUSE FORUM: WHITE TRASH. | PA0001682663 | 11/17/09 |
| 1932. | PENTHOUSE: HOW I DID A MILF. | PA0001677043 | 01/15/10 |
| 1933. | PENTHOUSE: KORPORATE KOUGARS. | PA0001673324 | 10/02/09 |
| 1934. | PENTHOUSE LETTERS: CONFESSIONS OF A CHEATING HOUSEWIFE. | PA0001715188 | 07/31/09 |
| 1935. | PENTHOUSE LETTERS: DIARY OF A HORNY HOUSEWIFE. | PA0001682727 | 11/17/09 |
| 1936. | PENTHOUSE LETTERS: FRENCH CONFESSIONS. | PA0001715174 | 07/31/09 |
| 1937. | PENTHOUSE LETTERS: NAUGHTY NURSE NANCY. | PA0001728622 | 05/18/09 |
| 1938. | PENTHOUSE LETTERS: ORIENTAL BABYSITTERS. | PA0001673464 | 10/02/09 |
| 1939. | PENTHOUSE LETTERS: SIDELINE SLUTS: CHEERLEADER CONFESSIONS. | PA0001673499 | 10/02/09 |
| 1940. | PENTHOUSE LETTERS: SPORTIN' BIG BOOBS. | PA0001676784 | 01/15/10 |
| 1941. | PENTHOUSE LETTERS: UNCONTROLLABLE. | PA0001676773 | 01/15/10 |
| 1942. | Penthouse Letters: Wives' Secret Fantasies. | PA0001728658 | 05/18/09 |
| 1943. | PENTHOUSE: MIKE'S DIRTY MOVIE. | PA0001715168 | 07/31/09 |
| 1944. | PENTHOUSE: MILF AND COOKIES. | PA0001715164 | 07/31/09 |
| 1945. | PENTHOUSE: MY WIFE'S A TRAMP. | PA0001682713 | 11/17/09 |
| 1946. | PENTHOUSE: SECRETS OF A TROPHY WIFE. | PA0001682662 | 11/17/09 |
| 1947. | PENTHOUSE: SEX WITH STRANGERS. | PA0001715159 | 07/31/09 |
| 1948. | PENTHOUSE: SHE-DEVILED. | PA0001715166 | 07/31/09 |
| 1949. | PENTHOUSE: SMALL TOWN. | PA0001728659 | 05/18/09 |

V9918 D493 P 75

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1950. | PENTHOUSE: SORORITY SEX SCANDALS. | PA0001682716 | 11/17/09 |
| 1951. | PENTHOUSE:STATUESQUE. | PA0001676715 | 01/15/10 |
| 1952. | PENTHOUSE: THE ITCH. | PA0001693527 | 03/12/09 |
| 1953. | PENTHOUSE: THE SCREW CLUB. | PA0001677040 | 11/17/09 |
| 1954. | PENTHOUSE VARIATIONS: ALL NIGHT AT THE DDD DINER. | PA0001682661 | 11/17/09 |
| 1955. | PENTHOUSE VARIATIONS: BLONDES IN BLACK LEATHER. | PA0001728623 | 05/18/09 |
| 1956. | PENTHOUSE VARIATIONS: MILFS IN HIGH HEELS. | PA0001673335 | 10/02/09 |
| 1957. | PENTHOUSE VARIATIONS: NAUGHTY CHEERLEADERS. | PA0001715175 | 07/31/09 |
| 1958. | PENTHOUSE VARIATIONS: SEX SECRETS OF A DIRTY BLONDE. | PA0001759400 | 11/17/09 |
| 1959. | PENTHOUSE VARIATIONS: SINFUL. | PA0001715190 | 07/31/09 |
| 1960. | PENTHOUSE VARIATIONS: THE FETISH MANSION. | PA0001682670 | 11/17/09 |
| 1961. | PENTHOUSE VARIATIONS: THE MAKING OF A MILF. | PA0001676776 | 01/15/10 |
| 1962. | Penthouse Variations: The Scarlet Manor. | PA0001728626 | 05/18/09 |
| 1963. | PENTHOUSE VARIATIONS: TITS TO DIE FOR. | PA0001673340 | 10/02/09 |
| 1964. | PENTHOUSE: YOU, ME, THEM. | PA0001728657 | 05/18/09 |
| 1965. | PENTHOUSE FORUM: CHEATING CELEBRITY SPORTS WIVES. | PA0001705857 | 07/28/10 |
| 1966. | ADULT FRIENDFINDER.COM'S GUIDE TO GETTING GIRLS. | PA0001715136 | 09/24/10 |
| 1967. | BARCELONA CHIC. | PA0001733742 | 12/08/10 |
| 1968. | BUSTY BLONDES. | PA0001733739 | 12/08/10 |
| 1969. | CAMS.COM: REAL COUPLES. | PA0001705941 | 07/28/10 |
| 1970. | EURO GIRL TOUR. | PA0001733758 | 12/08/10 |
| 1971. | EURO GLAM TRAMPS. | PA0001733761 | 12/08/10 |
| 1972. | FOOT FETISHES EXPOSED. | PA0001733735 | 12/08/10 |
| 1973. | GIRLS OF PRAGUE. | PA0001715134 | 09/24/10 |
| 1974. | HO HO HO. | PA0001733738 | 12/08/10 |
| 1975. | MULTIPLE ORGASMS. | PA0001733757 | 12/08/10 |
| 1976. | NURSES 101. | PA0001733743 | 12/08/10 |
| 1977. | PENTHOUSE: 5 FILTHY FETISHES. | PA0001717374 | 05/07/10 |
| 1978. | PENTHOUSE: ASIAN EROTIC DREAMS. | PA0001717372 | 05/07/10 |
| 1979. | Penthouse - Average Dick. | PA0001781529 | 01/30/12 |

V9916 D493 P 76

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 1980. | PENTHOUSE: BIG BUST COUGARS. | PA0001705939 | 07/28/10 |
| 1981. | PENTHOUSE: CHEATING SEX. | PA0001717367 | 05/07/10 |
| 1982. | PENTHOUSE: COUGARS CRUSIN' COEDS. | PA0001705853 | 07/28/10 |
| 1983. | PENTHOUSE FORUM: BANGIN'IN THE WOODS. | PA0001715151 | 09/24/10 |
| 1984. | PENTHOUSE FORUM: BIG BOTTOM BRAZIL. | PA0001717362 | 05/07/10 |
| 1985. | PENTHOUSE FORUM: BRAZILIAN BEAUTIES. | PA0001705723 | 0728/10 |
| 1986. | PENTHOUSE FORUM: GIRLS WHO WANT GIRLS. | PA0001705906 | 07/28/10 |
| 1987. | PENTHOUSE FORUM: KITTENS VS. COUGARS. | PA0001705729 | 07/28/10 |
| 1988. | PENTHOUSE FORUM: ON CALL. | PA0001706251 | 07/28/10 |
| 1989. | PENTHOUSE FORUM: PANDORA'S XXX TOY BOX. | PA0001715141 | 09/24/10 |
| 1990. | PENTHOUSE: GHOST FUCKERS. | PA0001715121 | 09/24/10 |
| 1991. | PENTHOUSE: IMMORAL HOTEL. | PA0001705742 | 07/28/10 |
| 1992. | PENTHOUSE: INTEROFFICE INTERCOURSE. | PA0001717369 | 05/07/10 |
| 1993. | PENTHOUSE LETTERS 30 DIRTY YEARS. | PA0001715132 | 09/24/10 |
| 1994. | PENTHOUSE LETTERS: OPPOSITES ATTRACT. | PA0001705862 | 07/28/10 |
| 1995. | PENTHOUSE LETTERS: SEX OBSESSED. | PA0001705908 | 07/28/10 |
| 1996. | PENTHOUSE LETTERS: WIFE SWAPPING. | PA0001717365 | 05/07/10 |
| 1997. | PENTHOUSE LETTERS: WOMEN WHO WANT SEX. | PA0001705889 | 07/28/10 |
| 1998. | PENTHOUSE: MAXIMUM CLIMAX. | PA0001715131 | 09/24/10 |
| 1999. | Penthouse - Naughty Wives Sex Club. | PA0001781621 | 01/30/12 |
| 2000. | PENTHOUSE: PROFESSIONAL GIRLS. | PA0001717373 | 05/07/10 |
| 2001. | PENTHOUSE: PUBIC ENEMY. | PA0001677044 | 01/15/10 |
| 2002. | PENTHOUSE: SCORNED. | PA0001717370 | 05/07/10 |
| 2003. | PENTHOUSE: SEX AFTER DARK. | PA0001715155 | 09/24/10 |
| 2004. | PENTHOUSE: SEX BARCELONA STYLE. | PA0001715130 | 09/24/10 |
| 2005. | PENTHOUSE: SEX DRIVEN. | PA0001717363 | 05/07/10 |
| 2006. | PENTHOUSE: SEXY SEDUCTIVE HOUSEWIVES. | PA0001705903 | 07/28/10 |
| 2007. | PENTHOUSE: SUPERTAIL AND THE EVIL WANG. | PA0001705884 | 07/28/10 |
| 2008. | PENTHOUSE VARIATIONS: FETISH FUCKING. | PA0001717375 | 05/07/10 |
| 2009. | PENTHOUSE VARIATIONS: FOOT FANTASY FREAKS. | PA0001705935 | 07/28/10 |
| 2010. | PENTHOUSE VARIATIONS: INSIDE THE BOOBY HATCH. | PA0001705910 | 07/28/10 |
| 2011. | PENTHOUSE VARIATIONS: TALES OF TWISTED SEX. | PA0001715122 | 09/24/10 |

V9915 D493 P 77

| COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|
| 2012. | PENTHOUSE VARIATIONS: THE CONTESSA'S CHATEAU OF PLEASURE. | PA0001677048 | 01/15/10 |
| 2013. | PENTHOUSE: VERY BAD WIVES. | PA0001705737 | 07/28/10 |
| 2014. | PENTHOUSE'S HARDCORE LATINAS. | PA0001747651 | 06/06/11 |
| 2015. | PENTHOUSE'S HEAVY PET-TING. | PA0001705899 | 07/28/10 |
| 2016. | PINK PLEASURES. | PA0001733703 | 12/08/10 |
| 2017. | SEX ON THE JOB. | PA0001733763 | 12/08/10 |
| 2018. | SEX SHOP. | PA0001733736 | 12/08/10 |
| 2019. | SISTERS WHO SIN. | PA0001733741 | 12/08/10 |
| 2020. | Penthouse - This Thing Called Sex. | PA0001781543 | 01/30/12 |
| 2021. | PENTHOUSE VARIATIONS: ASS BANDITS. | PA0001772947 | 11/18/11 |
| 2022. | PENTHOUSE VARIATIONS: ASSRAGEOUS. | PA0001772962 | 11/18/11 |
| 2023. | PENTHOUSE VARIATIONS: BLACK THAI AFFAIR. | PA0001761326 | 08/15/11 |
| 2024. | PENTHOUSE VARIATIONS: FOOT FUCKERS. | PA0001772953 | 11/18/11 |
| 2025. | PENTHOUSE VARIATIONS: KINKY SEX. | PA0001740189 | 03/28/11 |
| 2026. | PENTHOUSE VARIATIONS: NAUGHTY & NICE. | PA0001740192 | 03/28/11 |
| 2027. | PENTHOUSE VARIATIONS: PENTHOUSE NURSES. | PA0001747648 | 06/06/11 |
| 2028. | PENTHOUSE VARIATIONS: RAUNCHY. | PA0001747658 | 06/06/11 |
| 2029. | PENTHOUSE VARIATIONS: YOUR MOM'S A COUGAR. | PA0001761325 | 08/15/11 |
| 2030. | PENTHOUSE: WEBSITE WIVES. | PA0001761322 | 08/15/11 |
| 2031. | PENTHOUSE'S EVERYBODY LOVES NIKKI BENZ. | PA0001747653 | 06/06/11 |
| 2032. | PENTHOUSE: 10 THINGS I HATE ABOUT LOVE. | PA0001772792 | 11/18/11 |
| 2033. | PENTHOUSE 3D: REAL PORN STARS OF CHATSWORTH. | PA0001747671 | 06/06/11 |
| 2034. | Penthouse - All Access. | PA0001781667 | 01/30/12 |
| 2035. | Penthouse - Bad Ass Girls. | PA0001781516 | 01/30/12 |
| 2036. | Penthouse - Flawless Brunettes. | PA0001804757 | 04/05/12 |
| 2037. | PENTHOUSE: EVERYBODY LOVES AUDREY BITONI. | PA0001740194 | 03/28/11 |
| 2038. | PENTHOUSE: HEAVY PET-TING 2. | PA0001740183 | 03/28/11 |
| 2039. | PENTHOUSE LETTERS: BIG BOOB BLONDES. | PA0001740191 | 03/28/11 |
| 2040. | PENTHOUSE: THE ORGASM. | PA0001740188 | 03/28/11 |
| 2041. | PENTHOUSE: THE PICKUP PLAYER. | PA0001740193 | 03/28/11 |
| 2042. | PENTHOUSE LETTERS: PENTHOUSE VACATION. | PA0001747662 | 06/06/11 |

V9915 D493 P 78

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2043. | PENTHOUSE LETTERS: TOYS IN HER BOX. | PA0001747655 | 06/06/11 |
| 2044. | PENTHOUSE: NEWLYWED SINNERS. | PA0001747660 | 06/06/11 |
| 2045. | PENTHOUSE: REAL PORN STARS OF CHATSWORTH (2 DISC SET) | PA0001747729 | 06/06/11 |
| 2046. | PENTHOUSE: ROUTE 69. | PA0001747657 | 06/06/11 |
| 2047. | PENTHOUSE: SCREWED. | PA0001747659 | 06/06/11 |
| 2048. | PENTHOUSE FORUM: LOOSE. | PA0001761320 | 08/15/11 |
| 2049. | PENTHOUSE FORUM: SEXUAL MAKEOVER. | PA0001761323 | 08/15/11 |
| 2050. | PENTHOUSE FORUM: SWINGING. | PA0001761319 | 08/15/11 |
| 2051. | PENTHOUSE LETTERS: CAUGHT FROM BEHIND. | PA0001761317 | 08/15/11 |
| 2052. | PENTHOUSE LETTERS: CHEATING. | PA0001761321 | 08/15/11 |
| 2053. | PENTHOUSE LETTERS: FASTER. | PA0001761318 | 08/15/11 |
| 2054. | PENTHOUSE LETTERS: MY MOM'S BEST FRIEND. | PA0001761316 | 08/15/11 |
| 2055. | PENTHOUSE LETTERS: YOUR MOM'S HOT. | PA0001761327 | 08/15/11 |
| 2056. | PENTHOUSE: THE GODDESSES. | PA0001761324 | 08/15/11 |
| 2057. | PENTHOUSE: PENTHOUSE'S GUIDE TO SEX POSITIONS. | PA0001772946 | 11/18/11 |
| 2058. | Penthouse - Beautiful Darkness. | PA0001781515 | 01/30/12 |
| 2059. | Penthouse - Behind the Curtains. | PA0001781662 | 01/30/12 |
| 2060. | Penthouse - College Dazed. | PA0001781527 | 01/30/12 |
| 2061. | Penthouse - Fallout Chixxx. | PA0001781670 | 01/30/12 |
| 2062. | Penthouse - Fantasies Become Reality. | PA0001781520 | 01/30/12 |
| 2063. | Penthouse - Foot Fuckers. | PA0001781509 | 01/30/12 |
| 2064. | Penthouse - Hot Bods. | PA0001781690 | 01/30/12 |
| 2065. | Penthouse - Hot Nude Divorcees Gone Lesbo. | PA0001781660 | 01/30/12 |
| 2066. | Penthouse - Insubordination. | PA0001781526 | 01/30/12 |
| 2067. | Penthouse - Nylon Nymphs. | PA0001781511 | 01/30/12 |
| 2068. | Penthouse - Sex Bombs. | PA0001781664 | 01/30/12 |
| 2069. | Penthouse - Milf on Milf Sex. | PA0001781610 | 02/09/12 |
| 2070. | Penthouse - MILF Shake. | PA0001781647 | 02/09/12 |
| 2071. | Penthouse - Sex Swap. | PA0001781654 | 02/09/12 |
| 2072. | Penthouse - So Good it Squirts. | PA0001781652 | 02/09/12 |
| 2073. | Penthouse - The Next Porn Star. | PA0001781608 | 02/09/12 |
| 2074. | Penthouse - Asian Invasion. | PA0001804756 | 04/05/12 |

V9915 D493 P 79

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2075. | Penthouse - Crazy Sex. | PA0001804750 | 04/05/12 |
| 2076. | Penthouse - Fetish Playground. | PA0001804759 | 04/05/12 |
| 2077. | Penthouse - Kung Fu Vixen. | PA0001804751 | 04/05/12 |
| 2078. | Penthouse - Lil Lustinas. | PA0001804758 | 04/05/12 |
| 2079. | Penthouse - Lost in Lustland. | PA0001804752 | 04/05/12 |
| 2080. | Penthouse - Naughty Sex Affairs. | PA0001804754 | 04/05/12 |
| 2081. | Penthouse - Sex Crazed. | PA0001804753 | 04/05/12 |
| 2082. | Penthouse - Sex Reality. | PA0001804755 | 04/05/12 |
| 2083. | Penthouse - Sexy Alternative Sluts. | PA0001805228 | 04/05/12 |
| 2084. | Penthouse - The Key Party. | PA0001804748 | 04/05/12 |
| 2085. | Penthouse - Flash Banging. | PA0001804744 | 06/05/12 |
| 2086. | Penthouse - Juicy Bubble Butts. | PA0001804742 | 06/05/12 |
| 2087. | Penthouse - Latin Lust. | PA0001804738 | 06/05/12 |
| 2088. | Penthouse - Voluptuous Vixens. | PA0001825253 | 10/29/12 |
| 2089. | Penthouse - Chixxx In Heat. | PA0001825257 | 10/29/12 |
| 2090. | Penthouse - Hoops, Sex & Sweat. | PA0001825260 | 10/29/12 |
| 2091. | Penthouse - Illicit Affairs. | PA0001825262 | 10/29/12 |
| 2092. | Penthouse - Runway Nymphs. | PA0001825256 | 10/29/12 |
| 2093. | Penthouse - Sex Alley. | PA0001825254 | 10/29/12 |
| 2094. | Penthouse - Sex Hungry Babysitters. | PA0001825259 | 10/29/12 |
| 2095. | Penthouse - Sexy Big Boob Blondes. | PA0001825258 | 10/29/12 |
| 2096. | Penthouse: Booty Queens. | PA0001832257 | 01/07/13 |
| 2097. | Penthouse: Hot Fucking Orgasms. | PA0001832253 | 01/07/13 |
| 2098. | Penthouse: Hot Girls on Long Poles. | PA0001832250 | 01/07/13 |
| 2099. | Penthouse: Latin Babysitters. | PA0001832252 | 01/07/13 |
| 2100. | Penthouse: Perfect Bubble Butts. | PA0001832249 | 01/07/13 |
| 2101. | Penthouse: Suck My Toes. | PA0001832256 | 01/07/13 |
| 2102. | Penthouse: Super Sluts. | PA0001832254 | 01/07/13 |
| 2103. | Penthouse: Wild Sex Affairs. | PA0001832344 | 01/15/13 |
| 2104. | Penthouse: Big Dicks Little Chicks. | PA0001832345 | 01/15/13 |
| 2105. | Penthouse: Brunettes Like Big Cock. | PA0001832348 | 01/15/13 |
| 2106. | Penthouse: Filthy Hardcore Girls. | PA0001832347 | 01/15/13 |
| 2107. | Penthouse: Oversex. | PA0001860949 | 07/22/13 |

V9915 D493 P 80

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2108. | Penthouse: Sextopia. | PA0001860933 | 07/22/13 |
| 2109. | Penthouse: Totally Jackable. | PA0001860940 | 07/22/13 |
| 2110. | Penthouse: All Natural Busty Coeds. | PA0001860927 | 07/22/13 |
| 2111. | Penthouse: Dirty Little Latinas. | PA0001860937 | 07/22/13 |
| 2112. | Penthouse: Extreme Fuck Fantasies. | PA0001860943 | 07/22/13 |
| 2113. | Penthouse: Fuck Me Pumps. | PA0001860929 | 07/22/13 |
| 2114. | Penthouse: Gloryhole Peepshow. | PA0001860941 | 07/22/13 |
| 2115. | Penthouse: Mahogany Mommas & Mocha Men. | PA0001860946 | 07/22/13 |
| 2116. | Penthouse: MILF'S Get it Their Way. | PA0001860930 | 07/22/13 |
| 2117. | Penthouse: My Fucking Wife. | PA0001860926 | 07/22/13 |
| 2118. | Penthouse: Phoenix Marie's Guide to Anal Sex. | PA0001891620 | 02/20/14 |
| 2119. | Penthouse: Sexual Appetite. | PA0001891623 | 02/20/14 |
| 2120. | Penthouse: Sweet and Sassy Sex Talk. | PA0001891614 | 02/20/14 |
| 2121. | Penthouse: The Neighborhood Tramp. | PA0001891632 | 02/20/14 |
| 2122. | Penthouse: Vicious Vixens. | PA0001891617 | 02/20/14 |
| 2123. | Penthouse: Best Sorority Blowjobs. | PA0001891608 | 02/20/14 |
| 2124. | Penthouse: Bikini Secrets. | PA0001891633 | 02/20/14 |
| 2125. | Penthouse: MILF Maneaters vs. College Carnivores. | PA0001891615 | 02/20/14 |
| 2126. | Penthouse: Naked Hotel. | PA0001891618 | 02/20/14 |
| 2127. | Penthouse: No Tan Lines Allowed. | PA0001891624 | 02/20/14 |
| 2128. | Penthouse: Bass Line Booty. | PA0001914833 | 06/26/14 |
| 2129. | Penthouse: MILF Nannies vs. Campus Babysitters. | PA0001914849 | 06/26/14 |
| 2130. | Penthouse: Totally Titty Fucking Domination. | PA0001914823 | 06/26/14 |
| 2131. | Penthouse: Super Secret Sex. | PA0001914737 | 06/26/14 |
| 2132. | Penthouse: The Filthy Girls of Penthouse. | PA0001914739 | 06/26/14 |
| 2133. | Penthouse: The Sexbots: First Penetration. | PA0001914845 | 06/26/14 |
| 2134. | Penthouse: Tits, Toes, Pussy, Ass & Cum. | PA0001914793 | 06/26/14 |
| 2135. | Penthouse: All Natural Brunettes Get Dirty. | PA0001914797 | 06/26/14 |
| 2136. | Penthouse: Ass Seen on TV. | PA0001914685 | 06/26/14 |
| 2137. | Penthouse: Beatin' Cheeks. | PA0001914735 | 06/26/14 |
| 2138. | Penthouse: Black Fetish Models. | PA0001914794 | 06/26/14 |
| 2139. | Penthouse: College Girls Diary. | PA0001914683 | 06/26/14 |
| 2140. | Penthouse: Fit Fucks. | PA0001914799 | 06/26/14 |

V8915 D493 P 81

| r | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2141. | Penthouse: Fuck This. | PA0001914687 | 06/26/14 |
| 2142. | Penthouse: Hardcore Erotic Massage. | PA0001914688 | 06/26/14 |
| 2143. | Penthouse: Hot Hardcore Lessons. | PA0001914827 | 06/26/14 |
| 2144. | Penthouse: Laly's Hardcore Wet Dreamz. | PA0001914851 | 06/26/14 |
| 2145. | Penthouse: MILF Fuckers. | PA0001914841 | 06/26/14 |
| 2146. | Penthouse: Natasha Nice's Fetish Party. | PA0001914682 | 06/26/14 |
| 2147. | Penthouse: Sexxxtra Credit. | PA0001928655 | 10/08/14 |
| 2148. | Penthouse: The Fuck-It List. | PA0001928654 | 10/08/14 |
| 2149. | Penthouse: Phoenix Marie's Dirty Hardcore Fantasies. | PA0001928693 | 10/08/14 |
| 2150. | Penthouse: Two Hot for Words. | PA0001928673 | 10/08/14 |
| 2151. | Penthouse: Wild Sex Toys. | PA0001928691 | 10/08/14 |
| 2152. | Penthouse: Dirty Politics. | PA0001928695 | 10/08/14 |
| 2153. | Penthouse: Hardcore Couples. | PA0001928686 | 10/08/14 |
| 2154. | Penthouse: Beautiful Disaster. | PA0001928657 | 10/08/14 |
| 2155. | Penthouse: Sex Massage. | PA0001928651 | 10/08/14 |
| 2156. | Penthouse: Divorcees Gone Lesbo. | PA0001928672 | 10/09/14 |
| 2157. | Penthouse: Sexy Alternative Sluts. | PA0001928698 | 10/09/14 |
| 2158. | Penthouse: Social Media Status. | PA0001928652 | 10/09/14 |
| 2159. | Penthouse: Techno Sluts. | PA0001928659 | 10/09/14 |
| 2160. | Penthouse: That Cock's Too Big for TV. | PA0001928653 | 10/09/14 |
| 2161. | Penthouse: Foot Confessions. | PA0001928688 | 10/09/14 |
| 2162. | Penthouse: Girls and Toys. | PA0001928682 | 10/09/14 |
| 2163. | Penthouse: Nut'n But Fuck'n. | PA0001928656 | 10/09/14 |
| 2164. | Penthouse: Bad Ass Beautiful. | PA0001928685 | 10/09/14 |
| 2165. | Penthouse: Blonde Politics. | PA0001928697 | 10/09/14 |
| 2166. | Penthouse: Celebrity Hardcore Cam. | PA0001928658 | 10/09/14 |
| 2167. | Penthouse: Fine Ass Brunettes. | PA0001928681 | 10/09/14 |
| 2168. | Penthouse: Hot Teen Amateurs. | PA0001928675 | 10/09/14 |
| 2169. | Penthouse: Penthouse Cock Teasers. | PA0001928650 | 10/09/14 |
| 2170. | Penthouse: Petites and their Meats. | PA0001928687 | 10/09/14 |
| 2171. | Penthouse: Voyeur Sex. | PA0001928674 | 10/09/14 |
| 2172. | Penthouse: He's Old Enough To Be My Dad. | PA0001948594 | 03/21/15 |
| 2173. | Penthouse : Poker-Night. | PA0001945227 | 03/30/15 |

V9915 D493 P 82

| ＃ | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2174. | Penthouse: The Naughty Office. | PA0001948591 | 03/30/15 |
| 2175. | Penthouse: Hardcore Illicit Lovers. | PA0001948588 | 03/31/15 |
| 2176. | Penthouse: Lusty Sex - Crazed Babes. | PA0001941900 | 03/31/15 |
| 2177. | Penthouse: The Titty Bar. | PA0001941899 | 03/31/15 |
| 2178. | Penthouse: Anal Attraction. | PA0001941897 | 03/31/15 |
| 2179. | Penthouse: Chocolate Flavored Kisses. | PA0001941898 | 03/31/15 |
| 2180. | Penthouse: Cougar & Kitten Tales. | PA0001948609 | 03/31/15 |
| 2181. | Penthouse: First Class Tits. | PA0001941893 | 03/31/15 |
| 2182. | Penthouse: Latin Girls Exposed. | PA0001941896 | 03/31/15 |
| 2183. | Penthouse: Latina Fever. | PA0001948585 | 03/31/15 |
| 2184. | Penthouse: My Dirty Secrets. | PA0001941894 | 03/31/15 |
| 2185. | Penthouse: The Babysitter's Blog. | PA0001941895 | 03/31/15 |
| 2186. | Penthouse: Web Cam Girls Exposed. | PA0001948608 | 03/31/15 |
| 2187. | Penthouse: Handy Girls. | PA0001956404 | 05/27/15 |
| 2188. | Penthouse: Soaked Desires. | PA0001956349 | 05/27/15 |
| 2189. | Penthouse: A Love Affair. | PA0001951426 | 06/11/15 |
| 2190. | Penthouse: A Sensual Mind. | PA0001951414 | 06/11/15 |
| 2191. | Penthouse: Asian Sorority Sex Clubs. | PA0001951427 | 06/11/15 |
| 2192. | Penthouse: Budapest Kiss. | PA0001951417 | 06/11/15 |
| 2193. | Penthouse: California Dreaming. | PA0001951418 | 06/11/15 |
| 2194. | Penthouse: Ebony Queens. | PA0001951421 | 06/11/15 |
| 2195. | Penthouse: Fucking Older Guys. | PA0001951419 | 06/11/15 |
| 2196. | Penthouse: House of Secrets. | PA0001951428 | 06/11/15 |
| 2197. | Penthouse: Nymphs. | PA0001951404 | 06/11/15 |
| 2198. | Penthouse: Penthouse Affairs. | PA0001951408 | 06/11/15 |
| 2199. | Penthouse: Pin Up Beauties. | PA0001951410 | 06/11/15 |
| 2200. | Penthouse: Sex Academy: Erotic Massage for Couples. | PA0001951412 | 06/11/15 |
| 2201. | Penthouse: Sex Academy: Ultimate Oral Sex. | PA0001951406 | 06/11/15 |
| 2202. | Penthouse: Sexual Positions Academy. | PA0001951424 | 06/11/15 |
| 2203. | Penthouse: Spring Break Hookups. | PA0001951416 | 06/11/15 |
| 2204. | Penthouse: Strangers and Lovers. | PA0001951405 | 06/11/15 |
| 2205. | Penthouse: VIP Massage. | PA0001951409 | 06/11/15 |
| 2206. | Penthouse: Bitches Behind Bars. | PA0001961750 | 06/19/15 |

V9915 D493 P'83

| | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2207. | Penthouse: Booty Bash. | PA0001961751 | 06/19/15 |
| 2208. | Penthouse: On the Air Sex Affair. | PA0001961754 | 06/19/15 |
| 2209. | Penthouse: Penthouse Petland. | PA0001961747 | 06/19/15 |
| 2210. | Penthouse: Pinup Fusion. | PA0001961753 | 06/19/15 |
| 2211. | Penthouse: Summer Getaway. | PA0001961755 | 06/19/15 |
| 2212. | Penthouse: Lingerie Days. | PA0001961745 | 06/19/15 |
| 2213. | Penthouse: Just Fuck Me. | PA0001961746 | 06/19/15 |
| 2214. | Penthouse: In the Hole. | PA0001961744 | 06/22/15 |
| 2215. | Penthouse: Slut Junkies. | PA0001961737 | 06/22/15 |
| 2216. | Penthouse: Shake that Ass. | PA0001961739 | 06/22/15 |
| 2217. | Penthouse: Anal Quest. | PA0001961742 | 06/22/15 |
| 2218. | Penthouse: Fantasy Girls. | PA0001956420 | 06/22/15 |
| 2219. | Penthouse: Interracial Fever. | PA0001961741 | 06/22/15 |
| 2220. | Penthouse: Amateur Couples. | PA0001956345 | 06/22/15 |
| 2221. | Penthouse: Bad Dads. | PA0001956346 | 06/22/15 |
| 2222. | Penthouse: Bedroom Bitches. | PA0001956421 | 06/22/15 |
| 2223. | Penthouse: Every Which Way. | PA0001956348 | 06/22/15 |
| 2224. | Penthouse: Horny Wet & All Brunette. | PA0001956412 | 06/22/15 |
| 2225. | Penthouse: Picture Perfect Pussy. | PA0001961740 | 06/22/15 |
| 2226. | Penthouse: Pussy Whipped. | PA0001956373 | 06/22/15 |
| 2227. | Penthouse: Sex a La Carte. | PA0001956342 | 06/22/15 |
| 2228. | Penthouse: The Casting Couch. | PA0001956347 | 06/22/15 |
| 2229. | Penthouse: The Sexy Coed Big Booty Princess. | PA0001956359 | 06/22/15 |
| 2230. | Penthouse: Bad Babysitter. | PA0001950140 | 06/24/15 |
| 2231. | Penthouse: Sit on My Face. | PA0001950139 | 06/24/15 |
| 2232. | Penthouse: Porn Star Party. | PA0001950138 | 06/24/15 |
| 2233. | Penthouse: Sexy Brunettes. | PA0001956411 | 06/24/15 |
| 2234. | Penthouse: The Babysitter. | PA0001956380 | 06/25/15 |
| 2235. | Penthouse: Voveur's Diary. | PA0001956343 | 06/25/15 |
| 2236. | Penthouse: Hot Dripping Fantasies. | PA0001956407 | 06/25/15 |
| 2237. | Penthouse: Hot Sorority Sisters. | PA0001956419 | 06/25/15 |
| 2238. | Penthouse: Inked. | PA0001956415 | 06/25/15 |
| 2239. | Penthouse: Hard Drive. | PA0001956423 | 07/06/15 |

V9915 D493 P 84

| 繼 | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2240. | Penthouse: Hardcore Sexual Massage. | PA0001956379 | 07/06/15 |
| 2241. | Penthouse: Angie Savage & Friends. | PA0001956414 | 07/06/15 |
| 2242. | Penthouse: Bad Girls in Uniform. | PA0001956403 | 07/06/15 |
| 2243. | Penthouse: Blondes Around the Studio. | PA0001956405 | 07/06/15 |
| 2244. | Penthouse: Bodies in Motion. | PA0001956377 | 07/06/15 |
| 2245. | Penthouse: Busty Bar Hookups. | PA0001956360 | 07/06/15 |
| 2246. | Penthouse: College Coeds Get Broken In. | PA0001949769 | 07/06/15 |
| 2247. | Penthouse: Filthy Amateurs Like it Uncensored. | PA0001956422 | 07/06/15 |
| 2248. | Penthouse: Fuck A Cop. | PA0001949768 | 07/06/15 |
| 2249. | Penthouse: Girls of Penthouse: Hot & Horny. | PA0001956413 | 07/06/15 |
| 2250. | Penthouse: Hot Sexy Singles. | PA0001956417 | 07/06/15 |
| 2251. | Penthouse: Hot Wet Asian Pussy. | PA0001949774 | 07/06/15 |
| 2252. | Penthouse: Amateur Brunette Blowjobs. | PA0001956344 | 07/06/15 |
| 2253. | Penthouse: Bad Advice. | PA0001956378 | 07/06/15 |
| 2254. | Penthouse: Between the Sheets 2. | PA0001956406 | 07/06/15 |
| 2255. | Penthouse: Blonde Babes Get it Done. | PA0001956374 | 07/06/15 |
| 2256. | Penthouse: Booty Bonanza. | PA0001956376 | 07/06/15 |
| 2257. | Penthouse: Chanel Preston's Lesbian Sex Party. | PA0001956375 | 07/06/15 |
| 2258. | Penthouse: Color me Horny. | PA0001949778 | 07/06/15 |
| 2259. | Penthouse: For the Love of Cum. | PA0001956351 | 07/06/15 |
| 2260. | Penthouse: Fuck Toys. | PA0001956408 | 07/06/15 |
| 2261. | Penthouse: Girls Will Be Girls. | PA0001956409 | 07/06/15 |
| 2262. | Penthouse: Going Somewhere? Cum on Me Honey. | PA0001956410 | 07/06/15 |
| 2263. | Penthouse: Hot Horny Hookups. | PA0001949776 | 07/06/15 |
| 2264. | Penthouse: The Blonde Squad. | PA0001949773 | 07/06/15 |
| 2265. | Penthouse: Between the Sheets 4. | PA0001949775 | 07/06/15 |
| 2266. | Penthouse: Between the Sheets 5. | PA0001949771 | 07/06/15 |
| 2267. | Penthouse: Intimate Adventures. | PA0001956388 | 07/06/15 |
| 2268. | Penthouse: Masturbate Theatre. | PA0001957296 | 07/17/15 |
| 2269. | Penthouse: Money Talks. | PA0001956425 | 07/17/15 |
| 2270. | Penthouse: Cheating Wives Caught on Tape. | PA0001956569 | 07/17/15 |
| 2271. | Penthouse: Dream Sex. | PA0001956557 | 07/17/15 |
| 2272. | Penthouse: Hot Sexy Tamales. | PA0001956570 | 07/17/15 |

V9515 D493 P 85

| # | COPYRIGHT TITLE | REGISTRATION NUMBER | DATE |
|---|---|---|---|
| 2273. | Penthouse: Pretty Filthy. | PA0001957286 | 07/17/15 |
| 2274. | Penthouse: Student Bodies. | PA0001956571 | 07/17/15 |
| 2275. | Penthouse: Penthouse Party with the Penthouse Pets. | PA0001957281 | 07/17/15 |
| 2276. | Penthouse: Sexy XXXmas Stories. | PA0001957289 | 07/17/15 |
| 2277. | Penthouse: The Power of Ass. | PA0001957288 | 07/17/15 |
| 2278. | Penthouse: Wet Dream Vixens. | PA0001957279 | 07/17/15 |
| 2279. | Penthouse: Amateur Porn Stars. | PA0001956563 | 07/17/15 |
| 2280. | Penthouse: Getting Down & Dirty. | PA0001957282 | 07/17/15 |
| 2281. | Penthouse: Krazy Fuckerz. | PA0001956473 | 07/17/15 |
| 2282. | Penthouse: My Hard Cock Rules the School. | PA0001957291 | 07/17/15 |
| 2283. | Penthouse: A Kink for Every Day of the Week. | PA0001957280 | 07/17/15 |
| 2284. | Penthouse: Brea Bennett's Dirty Stories. | PA0001956561 | 07/17/15 |
| 2285. | Penthouse: Lesbian Confessions. | PA0001956560 | 07/17/15 |
| 2286. | Penthouse: Lesbian Takeover. | PA0001956474 | 07/17/15 |
| 2287. | Penthouse: Milf Matches & Teen Snatches. | PA0001957287 | 07/17/15 |
| 2288. | Penthouse: My Hungarian Girlfriend. | PA0001957283 | 07/17/15 |
| 2289. | Penthouse: Penthouse Presents Penthouse's Book of sex . | PA0001957290 | 07/17/15 |
| 2290. | Penthouse: Pet Retreat. | PA0001956566 | 07/17/15 |
| 2291. | Penthouse: Pinned Up Pussies. | PA0001957285 | 07/17/15 |
| 2292. | Penthouse: Steampunk Alternasluts. | PA0001956475 | 07/17/15 |
| 2293. | Penthouse: Sugar Daddies. | PA0001956556 | 07/17/15 |
| 2294. | Penthouse: The Other Woman. | PA0001956559 | 07/17/15 |
| 2295. | Penthouse: Urban Booty Fantasies. | PA0001956558 | 07/17/15 |
| 2296. | Penthouse: Young & Exposed. | PA0001957278 | 07/17/15 |
| 2297. | Penthouse: Young Girls. | PA0001957295 | 07/17/15 |
| 2298. | Penthouse: Euro Adventures: Sex in Prague. | PA0001957284 | 07/17/15 |
| 2299. | Penthouse: Laly's Angels. | PA0001957294 | 07/17/15 |
| 2300. | Penthouse: Between the Sheets 3. | PA0001956016 | 08/21/15 |
| 2301. | Penthouse: Between the Sheets 6. | PA0001956014 | 08/21/15 |
| 2302. | Penthouse: Deeper Into Love. | PA0001956017 | 08/21/15 |
| 2303. | Penthouse: Garden of Envy. | PA0001956009 | 08/21/15 |
| 2304. | Penthouse: How to Train Your Pornstar. | PA0001956019 | 08/21/15 |
| 2305. | Penthouse: Inked. | PA0001956012 | 08/21/15 |

V99Y5 D493 P 86

| | COPYRIGHT TITLE | | REGISTRATION NUMBER | DATE |
|---|---|---|---|---|
| 2306. | Penthouse: Perfection. | | PA0001967554 | 12/02/15 |

# EXHIBIT "H"

1  WEISS & SPEES LLP
   Michael H. Weiss (SBN 107481)
2  mw@weissandspees.com
3  Laura J. Meltzer (SBN 151889)
   1925 Century Park East, Suite 650
4  Los Angeles, California 90067
   Telephone: 424-245-3100
5  Facsimile: 424-217-4160

6  [Proposed] Attorneys for Debtor and Debtor in
7  Possession

8              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
9              SAN FERNANDO VALLEY DIVISION

10
   In re                                    Case No. 1:18-bk-10098-MB
11
   PENTHOUSE GLOBAL MEDIA, INC.,            Ch. 11
12
13                                          **MOTION OF DEBTOR AND DEBTOR
           Debtor                           IN POSSESSION FOR JOINT
14                                          ADMINISTRATION PURSUANT TO
                                            FED.R.BANK.P. 1015 AND LBR 9013-
15                                          1(q); DECLARATION OF CATHERINE
                                            BRANDT**
16
                                            [No Hearing Required]
17
                                            [Order Approving Joint Administration
18                                          Lodged Concurrently]
19

20         Penthouse Global Media, Inc., Debtor and Debtor in Possession ("PGMI") hereby moves

21  for entry of an order for joint administration pursuant to Fed.R.Bank.P. 1015 and Local

22  Bankruptcy Rule 9013-1(q).

23         1.    Debtor filed its Petition for Relief under Chapter 11 on January 11, 2018.

24         2.    The following Petitions for Relief under Chapter 11 were filed on January 11,

25  2018:

26
   | **DEBTOR**                             | Case No.    |
   | -------------------------------------- | ----------- |
27 | Penthouse Global Broadcasting, Inc.    | 1:18-10099  |
   | Penthouse Global Licensing, Inc.       | 1:18-10101  |
28 | Penthouse Global Digital, Inc.         | 1:18-10102  |
   | Penthouse Global Publishing, Inc.      | 1:18-10103  |

s:\penthouse\penthouse global media, inc [parent]\motion for joint administration v. 2 1.12.18.docx

| Gmi Online Ventures, Ltd., a New York corporation | 1:18-10104 |
| Penthouse Digital Media Productions, Inc., a New York corporation | 1:18-10105 |
| Tan Door Media, Inc., a California corporation | 1:18-10106 |
| Penthouse Images Acquisitions, Ltd. | 1:18-10107 |
| Pure Entertainment Telecommunications, Inc. (Fka For Your Ears Only, Ltd.), a New York corporation | 1:18-10108 |
| XVHUB Group, Inc. (fka Giant Swallowtail Inc., a Delaware corporation | 1:18-10109 |
| General Media Communications, Inc. | 1:18-10110 |
| General Media Entertainment, Inc. (Fka Penthouse Video, Inc.) | 1:18-10111 |
| Danni Ashe, Inc., A California Corporation | 1:18-10112 |
| Streamray Studios, Inc., a California corporation | 1:18-10113 |

3.    All of the cases have been assigned to the Hon. Martin Barash.

4.    PGMI is the parent company of each of the above debtors and debtors in possession listed in paragraph 2.  Brandt Declaration, ¶ 2.

5.    There are blanket liens from lenders that encumber all of the Debtors in these cases.  Brandt Decl., ¶ 3.

6.    Joint administration of the cases is warranted, will ease the administrative burden for the court and the parties, and will protect creditors of the different estates against potential conflicts of interest because of the blanket liens. Brandt Decl., ¶ 4.

WHEREFORE, PGMI requests entry of an order approving joint administration with the cases listed in paragraph 2 above.

Dated: January 12, 2018

WEISS & SPEES, LLP
By: /s/*Michael H. Weiss*
[Proposed] Attorneys for Debtor and Debtor in Possession

WEISS & SPEES, LLP
1925 Century Park East, Suite 650
Los Angeles, CA 90067-2701
Tel: (424) 245-3100

- 2 -

**DECLARATION OF CATHERINE BRANDT**

I, CATHERINE BRANDT declare:

1.      I am the Chief Operating Officer of Debtor, Penthouse Global Media, Inc. ("PGMI"). I have personal knowledge of the facts set forth herein and would competently testify thereto.

2.      PGMI is the parent company of each of the above debtors and debtors in possession listed in paragraph 2 of the Motion.

3.      There are blanket liens from lenders that encumber all of the Debtors in these cases.

4.      Joint administration of the cases is warranted, will ease the administrative burden for the court and the parties, and will protect creditors of the different estates against potential conflicts of interest because of the blanket liens.

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and that this declaration was executed on this 12th day of January 2018 at Chatsworth, California.

Catherine Brandt

- 3 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1925 Century Park East, Suite 650, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR JOINT ADMINISTRATION PURSUANT TO FED.R.BANK.P. 1015 AND LBR 9013-1(q); DECLARATION OF CATHERINE BRANDT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 15, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Krikor J Meshefejian    kjm@lnbrb.com
S Margaux Ross    margaux.ross@usdoj.gov
Michael St James    ecf@stjames-law.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com
Beth Ann R Young    bry@lnbyb.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 15, 2018 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

U.S. Mail: Hon. Martin R. Barash, U.S. Bankruptcy Judge, 21041 Burbank Boulevard, Courtroom 303, Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/15/2018 | Laura J. Meltzer | /S/ Laura J. Meltzer |
|-----------|------------------|----------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "I"

## DECLARATION OF ADAM LEVIN

## IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, Adam E. Levin, declare as follows:

1.    I am the Chief Executive Officer of Dream Media Corporation, the in this action ("Dream Media"), and, if called upon to testify, I could and would testify competently thereto.

2.    On November 21, 2017, pursuant to that certain Assignment and Assumption Agreement between Dream Media and ExWorks Capital Fund I, L.P. ("ExWorks"), Dream Media acquired all right, title and interest of ExWorks as the Lender, in and to the loans which are the subject of this action (the "Loan Assignment").    In connection with the Loan Assignment, Dream Media and ExWorks also entered into that certain Assignment of Security Interest in Copyrights ("Security Assignment"), pursuant to which the security interests conveyed by Penthouse Global Media Inc. ("PMGI") and each of the other Debtors in these jointly administered chapter 11 bankruptcy cases (collectively with PMGI, the "Debtors") to ExWorks in connection with the First Note, Second Note and Loan Agreement (as defined in the Motion) and as set forth in the Copyright Security Agreement recorded in the United States Copyright Office on March 23, 2016 at Volume 9915, Document Number 493 ("Copyright Recording") was also assigned to Dream Media.

3.    For the past 10 years, I have been actively involved in buying and selling assets such as those which comprise the Collateral for Dream Media's loans to the Debtors.  I have reviewed the patents, trademarks and copyrights, as well as the film library, and am experienced in how these assets are valued and monetized in the open market place.

4.    As part of Dream Media's acquisition of the ExWorks Loan Assignment, I valued the Debtors' assets which comprise the Collateral subject to the Security Agreement.  Part of my analysis included the fact that in 2016, PMGI acquired all of the assets of the

Penthouse Group of Companies for the sum of $6,500,000, which was fund by the Loans made by ExWorks, leaving the balance of those Loans for closing costs and working capital. In or about 2016, the purchase price paid by PMGI approximated the total value of the Collateral.

5. Shortly after Debtors' acquisition of the Collateral in 2016, Debtors sold a large portion of the assets through that certain Club License Transaction reflected in the Second Amendment to Loan Agreement, thereby reducing the Debtors' asset pool by the sum of at least $2,000,000, and also reducing the cash flow of the company by the sum of $1,500,000 annually; and by extension, reducing the value of the Collateral as well. I believe that these assets sold through the Club License Transaction were the most valuable part of Debtors' company.

6. In addition to the foregoing, since the acquisition and inception of the Loans, PMGI has reported losses in excess of $2,000,000, which was funded with the assets of the company, adversely impacting the value of the Collateral. Based upon the nature of the remaining Collateral, I believe that the fair market value is estimated to be less than $6,000,000.

7. It is also my opinion that the Collateral continues to decline in value because of Debtors' mismanagement as evidenced by the Debtors' prior fraud and on-going losses, as well as Debtors' inability to operate its businesses effectively, and the Debtors' lack of financial resources to protect and preserve the Collateral.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 29th day of January, 2018 in Los Angeles, California.

_____
ADAM E. LEVIN

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 24, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Krikor J Meshefejian     kjm@lnbrb.com
- S Margaux Ross     margaux.ross@usdoj.gov
- Michael St James     ecf@stjames-law.com
- Howard Steinberg     steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov
- Michael H Weiss     mw@weissandspees.com, lm@weissandspees.com
- Beth Ann R Young     bry@lnbyb.com

**2. SERVED BY UNITED STATES MAIL**: On **January 24, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

S Margaux Ross
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Debtor (Lead)
Penthouse Global Media, Inc., et al.
8944 Mason Ave.
Chatsworth, CA 91311

☒ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 24, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☒ *Service information continued on attached page* **SERVED BY EMAIL**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 24, 2018 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                         **F 9013-3.1.PROOF.SERVICE**

## SERVICE BY U.S. MAIL AND/OR E-MAIL

# Mailing list top 20 creditors

## Penthouse Global Media, Inc.

EXWORKS Capital Funds I LP
333 W Wacker Drive Suite 1620
Chicago, IL 60606

DREAM MEDIA Corporation
10990 Wilshire Blvd Penthouse
Los Angeles, CA 90024

Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

Bayard, P.A.
222 Delaware Ave., Suite 900
P. O. Box 25130
Wilmington, DE 19899

TGG Accounting
10188 Telesis Court, Suite 130
San Diego, CA 92121

Hogan Lovells US, LLP
1999 Avenue of The Stars, Suite 1400
Los Angeles, CA 90067

Squar Milner LLP
4100 Newport Place, Suite 600
Newport Beach, CA 92660

Miller Law Group
111 Sutter Street, Suite 700
San Francisco, CA 94104

Sedgwick, LLP
2301 McGee Street, Suite 500
Kansas City, MO 64108-2662

Allen, Dyer, Dopplet, Milbrath & Gilchris
255 South Orange Ave., Suite 1401
Orlando, FL 32801

Bressler Law PLLC IOLTA Account
3 West 35th Street, 9th Floor
New York, NY 10001

Premium Assignment Corporation/Marsh USA
P. O. Box 8000
Tallahassee, FL 32314-8000

California Choice Benefit Administrators
721 South Parker, Suite 200
Orange, CA 92868

Tom Fox
P. O. Box 2402
Santa Cruz, CA 95063

Total Records Information Management LLC
371 Starke Road
Carlstadt, NJ 07072

Iron Mountain
1000 Campus Drive
Collegeville, PA 19426

Akerman LLP
601 West Fifth Street, Suite 300
Los Angeles, CA 90071

GRM Information Management Services, Inc.
P. O. Box 35539
Newark, NJ 07193-5539

C.Hocquel Inc.
8310 Jayseel Street
Sunland, CA 91040

Allgemeines Treuunternehmen (ATU)
Aeulestrasse 5 P. O. Box 83
9490 Vaduz
Furstentum, Liechtenstein

DSS Consulting Corporation
638 Lindero Canyon Road, Suite 117
Oak Park, CA 91377

Nextgen Reporting
999 Old Eagle School, Suite 118
Wayne, PA 19087

## Penthouse Global Broadcasting, Inc.

M7 Group
L1246 2 rue Albert Borschette
Luxembourg

Basmedia B.V.
Pluggematen2
8331TV
Steenwijk, The Netherlands

Mile High
8148 Devonshire
Ville Mont-Royal
Quebec, Canada H4P2K3

Elle et Lui, LLC
761 S. Rainbow # 120
Las Vegas, NV 89145

Interactive Media AG
Einsiedlestrasse 23
CH-8834 Schindellegi SZ
Switzerland

PHE, Inc.
302 Meadowland Drive
Hillsborough, NC 27278

Art Attack Productions/ReVideo Inc.
10945 Old Santa Susana Pass
Chatsworth, CA 91311

Fluffy White Dog Media
8033 Sunset Blvd., Suite 308
Los Angeles, CA 90046

Priority Workforce
2170 S Towne Center Pl, # 350
Anaheim, CA 92806

FedEx
P. O. Box 7221
Pasadena, CA 91109-7321

SESAC, Inc.
35 Music Square E
Nashville, TN 37203

Digital Media Consultants, LLC
21781 Ventura Blvd., Suite 644
Woodland Hills, CA 91364

Jason Bekoski
168 E. Port Hueneme Road
Port Hueneme, CA 93041

Arkena SAS
15 Rue Cognacq-Jay
75007 Paris, France

Combat Zone
9909 Topanga Canyon Blvd., #20
Chatsworth, CA 91311

Szili Miklos
Adademia Korut 67
6000, Kecskemet, Hungary

Emily Palan
2412 Delancey Place
Philadelphia, PA 19103

Bizarre Video
21621 Nordhoff St., Suite B
Chatsworth, CA 91311

Nathanael Kalfa Consulting
Chaussee de Gand, 443
1080 Brussels, Belgium

Verizon – UpLynk
13031 W Jefferson Blvd., Bldg 900
Los Angeles, CA 90094

## Penthouse Global Licensing, Inc.

Pryor Cashman LLP
7 Times Square
New York, NY 10036

Max J. Sprecher, Law Office of
5850 Canoga Ave., 4th Floor
Woodland Hills, CA 91367

Corsearch
P. O. Box 4349
Carol Stream, IL 60197-4349

E.D. Publications Inc.
2431 Estancia Blvd., Bldg B
Clearwater, FL 33761-2608

Dennemeyer & Associates
55, rue des Bruyeres
L-1274 Howald, Luxembourg

## Penthouse Global Digital, Inc.

MojoHost
30300 Telegraph Road, Suite 300
Bingham Farms, MI 48025

Mannassi IT Solutions
22222 Sherman Way, Suite 206
Canoga Park, CA 91303

Ninja Partners, Inc.
1621 E. 6th Street, Suite 1130
Austin, TX 78702

NetNames USA Inc.
2711 Centerville Rd
Wilmington, DE 19808

Corporation Service Company
P. O. Box 13397
Philadelphia, PA 19101-3397

Cyber Pro Hosting
P. O. Box 26203
Milwaukee, WI 53226

WebDot Calm
237 Town Center West, # 267
Santa Maria, CA 93458

Hollywood Vaults Inc.
742 Seward Street
Hollywood, CA 90038

Philip Tranker
adenamediacorp@gmail.com
David Tanguay
537 Rue Helene-Baillargeon
Montreal, Quebec H2J4E8
Canada

Christine Pevarnik
2863 Brookside Drive
Mobile, AL 36693

Qisheng Wu
adenamediacorp@gmail.com

Vladyslav Plashchevatyi
xfive@setds.net

Sergio Freixas
deicox@gmail.com

SternDoor Inc.
affiliate@idealgasm.com

Arash Dadashzadeh
contact@pornixe.com

EX Situ Marketing
penthousepartners@thebestpartner.com
Marcella Monteleon
Marcym25@sweetspicy.com

Steven Moser
601 Stevens St., SW
Watertown, MN 55388

Kelly Publishing
255 S Rengstorff Ave., Apt 132
Mountain View, CA 94040

## Penthouse Global Publishing, Inc.

Creel Printing
6330 West Sunset Road
Las Vegas, NV 89118

Palm Coast Data LLC
11 Commerce Blvd.
Palm Coast, FL 32164

DVD Factory
7230 Coldwater Canyon
North Hollywood, CA 91605

Barbara F. Pizio
2342 82nd Street, Apt 3
Brooklyn, NY 11214

Zinio, LLC
75 Remittance Dr., Dept 6825
Chicago, IL 60675-6825

Edgewood Paper
115A Floral Vale Blvd.
Yardley, PA 19067-5529
Hudson News Distributors, LLC
701-705 Jefferson Road
Parsippany, NJ 07054

PR Newswire Association LLC
G.P.O. Box 5897
New York, NY 10087-5897

Getty Images
P. O. Box 953604
St. Louise, MO 63195-3604

V&M Design/Amanda Flores
13226 Azores Ave
Sylmar, CA 91342

Todd Francis
4328 Grand View Blvd.
Los Angeles, CA 90066

Philip J. Hanrahan Jr.
6031 N lake Drive
Whitefish Bay, WI 53217

Alan Dershowitz Consulting LLC
1675 N. Military Trail, 5th floor
Boca Raton, FL 33486

Pretty Things Press
P. O. Box 55
Point Reyes Station, CA 94956

Thomas Morton
288 Graham Ave., #1
Brooklyn, NY 11211

Drew Millard
115 W Woodridge Drive
Durham, NC 27707

Michael Hingston
11203-71 Avenue
Edmonton, AB
Canada, AB T6G 0A5

Apparel Brand Consultants LLC
97-05 24th Avenue
East Elmhurst, NY 11369

Disgraceful Inc.
24303 Woolsey Cyn Rd, Spc 31
West Hills, CA 91304

Matt Gallagher
112 Withers Street, Apt 2
Brooklyn, NY 11211