Michael H. Weiss (State Bar Number 107481)
mw@weissandspees.com
Laura J. Meltzer (State Bar Number 151889)
lm@weissandspees.com
WEISS & SPEES, LLP
1925 Century Park East, Suite 650
Los Angeles, CA 90067-2701
Telephone: 424-245-3100
Facsimile: 424-245-3199

[Proposed] Attorneys for Debtors and Debtors in Possession
Penthouse Global Media, Inc. et al.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| IN RE<br>    PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation<br><br>    Debtor. | Case No. 1:18-bk-10098-MB<br><br>Chapter 11<br>Jointly Administered With: |
| In re:<br>   Penthouse Global Broadcasting, Inc.<br>   Penthouse Global Licensing, Inc.<br>   Penthouse Global Digital, Inc.<br>   Penthouse Global Publishing, Inc.<br>   GMI Online Ventures, Ltd.<br>   Penthouse Digital Media Productions, Inc.<br>   Tan Door Media, Inc.<br>   Penthouse Images Acquisitions, Ltd.<br>   Pure Entertainment Telecommunications, Inc.<br>   XVHUB Group, Inc.<br>   General Media Communications, Inc.<br>   General Media Entertainment, Inc.<br>   Danni Ashe, Inc.<br>   Streamray Studios, Inc.<br><br>   ☒ Affects All Debtors<br>   ☐ Affects<br>   ☐ Affects<br>   ☐ Affects<br>   ☐ Affects<br>☐ See attached for additional Debtors | Case No. 1:18-bk-10099-MB<br>Case No. 1:18-bk-10101-MB<br>Case No. 1:18-bk-10102-MB<br>Case No. 1:18-bk-10103-MB<br>Case No. 1:18-bk-10104-MB<br>Case No. 1:18-bk-10105-MB<br>Case No. 1:18-bk-10106-MB<br>Case No. 1:18-bk-10107-MB<br>Case No. 1:18-bk-10108-MB<br>Case No. 1:18-bk-10109-MB<br>Case No. 1:18-bk-10110-MB<br>Case No. 1:18-bk-10111-MB<br>Case No. 1:18-bk-10112-MB<br>Case No. 1:18-bk-10113-MB<br><br>**CORRECTED MOTION FOR AUTHORITY TO ENTER INTO LICENSE AGREEMENT WITH ANDROCLES ENTERTAINMENT, PVY LTD. OUTSIDE THE ORDINARY COURSE OF BUSINESS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing:<br>Date:    FEBRUARY 5, 2018<br>Time:   1:00 P.M.<br>Place:   Room 303<br>           21041 Burbank Blv.<br>           Woodland Hills, CA |

s:\penthouse\androcles\[corrected] motion for authority ot enter into license outside the ordinary course of business.docx

1

> **PLEASE NOTE:** This corrected motion has been altered to reflect the pagination in the Corrected "Corrected Declarations of Kelly Holland, Catherine Brandt and Keith Whitworth Re: Motions For Approval Of Licensing Agreement Out of The Ordinary Course Of Business and For Interim Use Of Cash Collateral [Bates Stamped Exhibits] Filed by Debtor Penthouse Global Media, Inc. (RE: related document(s) Motion for Authority to Enter Into License Agreement With Androcles Entertainment, PVY Ltd., Outside the Ordinary course of Business; memorandum of Points and Authorities, Motion For Order (A) Granting (I) Use of Cash Collateral, (II) Adequate Protection, and (III) Other Related Relief: And (B) Establishing a Final Hearing Pursuant to Bankruptcy Rule 4001; Memorandum of Points and Authorities) [Dkt. No. 96].
>
> Otherwise, the original motion [Dkt No. 70] is unchanged.
>
> Each page of the Corrected Declaration is Bates-stamped in the lower right hand corner. Page references to the "Corrected Declarations" are to the Bates-stamped pages.

TO THE HONORABLE MARTIN BARASH; THE OFFICE OF THE UNITED STATES TRUSTEE; THE TWENTY LARGEST UNSECURED CREDITORS OF THE ABOVE-CAPTIONED DEBTOR; THE SECURED CREDITOR OF THE ABOVE-CAPTIONED DEBTORS; AND OTHER PARTIES ENTITLED TO NOTICE:

PLEASE TAKE NOTICE that, pursuant to Local Bankruptcy Rule 9075-1, 11 U.S.C. § 363(b), and Rule 9014 of the Federal Rules of Bankruptcy Procedure, Debtor Penthouse Global Media, Inc., a Delaware corporation, hereby moves this Court by this emergency motion (the "Motion") for an order approving that certain Trademark, Trade-Name and Copyright Agreement (the "License Agreement") by between Debtor, as Licensor, and Androcles Entertainment PTY LTD ("Androcles"), as licensee out of the ordinary course of business pursuant to 11 U.S.C. § 363(b). A copy of the License Agreement is attached as Exhibit "1" to the declarations that accompanying the Motion.

The License Agreement will provide $1,000,000 of working capital to Debtor over the next four months and will allow Debtor to breathing room necessary to propose a plan of reorganization. The License Agreement is a bridge to an initial coin offering ("ICO") to be sponsored by Androcles. If the ICO is successful, Debtor stands to earn at least another $1,000,000 and perhaps significantly more from the offering. Given that the License Agreement

requires no further expenditure of capital or would not interfere with Debtor's current licensing activities, the License Agreement has a sound business purpose and represents the proper use of Debtor's business judgment.

Debtor requires emergency relief because as set forth in the accompanying declarations, Debtor will run out of cash as early as February 6, 2018 without the infusion of funds from the License Agreement. The Motion is based upon the following points and authorities, the accompany exhibits and declarations of Kelly Holland, Catherine Brandt and Keith Whitworth, any argument presented by counsel at any hearing on the Motion and the papers and pleading filed with this Court.

Dated: February 1, 2018

WEISS & SPEES, LLP
/s/*Michael H. Weiss*
Michael H. Weiss
[Proposed] Attorneys for Debtors and Debtors in Possession Penthouse Global Media, Inc. et al.

Case No. 1:18-bk-10098-MB    3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.　INTRODUCTION

Debtor owns the legendary Penthouse brand, an icon in adult entertainment for over 50 years. Debtor has entered into a license agreement (Exhibit "1") with Androcles Entertainment PTY, Ltd., an Australian company ("Androcles"), that will permit Debtor and its brand to return to its creative core derived from its founder Bob Guccione.  The license will allow Debtor to access both substantial revenue and cutting edge block chain technology that allow Debtor to substantially increase its revenue and brand value.  This transaction will pave the way to a highly successful reorganization.

Androcles chose Debtor in large part because it believes in its management's taste and insight to what works and what does not work in adult entertainment.  On a more prosaic level, the License Agreement will permit Debtor to maintain positive cash flow to allow it to reorganize.  For these reasons, Debtor submits that the transaction has a sound business reason and presents the prudent exercise of business judgment by Debtor's management.

## II.　DESCRIPTION OF THE LICENSE AGREEMENT

Debtor has entered into a nonexclusive license to use its trade name, trademarks and copyrights to facilitate an initial coin offering ("ICO") sponsored by Androcles and its affiliates. An ICO is a fundraising mechanism in which new projects sell their underlying crypto tokens in exchange for bitcoin or similar crypto currencies in a manner similar to an IPO. See www.nasdaq.com/article/what-is-an-ico-cm830484.  The ICO contemplated by the License Agreement has the following terms:

- Androcles pays nonrefundable license fee of $1,000,000 in five monthly installments starting in February 2018.
- Debtor grants a nonexclusive license of its trademarks, trade name and copyrights to Androcles in perpetuity.
- Androcles has an option to purchase the licensed property subject to rights of first and last refusal.

- The fees paid by Androcles will be subject to 5% withholding tax if paid out of Australia.
- The ICO will occur only after close of an unrelated ITO that Debtor has endorsed on June 28, 2018 unless said ITO is abandoned before that date.
- Debtor has endorsed that ITO on a nonexclusive basis.
- Debtor will report on a weekly basis to Androcles about its finances.
- The ICO will comply with US securities laws and the JOBS ACT.
- The offering costs of the ICO, estimated to $1,600,000 with $400,000 for block chain development will be paid from the ICO proceeds and such costs will be paid by Androcles, not Debtor.
- The ICO will create additional license fees equal to 10% of the net proceeds of the ICO.
- Debtor will enter into a 50/50 revenue share for use of its content by the ICO.
- The agreement must be approved by the Court.
- Androcles has sole and exclusive discretion to proceed with the ICO.
- Kelly Holland agrees to "front" for the ICO, subject to a further agreement for compensation and duties.
- If Debtor ceases operation or converts to chapter 7 before all of the instalment payments are made, all future license payments will be suspended pending the ICO.
- If the ICO proceeds, the estate will receive any unpaid amount of the instalments.

The financial "waterfall" from the License Agreement is summarized in Table 1, the last page of the License Agreement.

## III. DEBTORS HAVE THE AUTHORITY TO ENTER INTO THE LICENSE AGREEMENT.

### A. Debtors have authority to enter into the License Agreement.

Section 363(a) of the Bankruptcy Code authorizes a debtor in possession to use, sell or lease property of the estate in the ordinary course of business without further of the court. See,

e.g., *Bagus v. Clark (In re Buyer's Club Markets, Inc.)*, 5 F.3d 455, 457 (10th Cir. 1993) ("The Code takes cognizance of the fact that if a debtor had to seek court approval to pay for every expense incurred during the normal course of its affairs, the debtor would be in court more than in business."). The intellectual property that is the basis of the proposed license is clearly property of the estate. Penthouse regularly licenses its trademark on a non-exclusive basis. ***Corrected Declaration at 3.*** The License Agreement contemplates a non-exclusive license. ***Corrected Declaration at 12***. However, the agreement has a number of unusual features that takes it outside of the ordinary course of business, such as the following:

- Androcles can suspend payments of the $1,000,000 license fees if Kelly Holland ceases to be board member, the sole shareholder or offer her shares for sale with certain rights of first and last refusal to Androcles, ***Corrected Declaration at 14***;
- Androcles can suspend payments of the $1,000,000 license fee should Debtor cease operations or a trustee be appointed, ***Corrected Declaration at 15-16***;
- If Androcles suspends payments, the unpaid portion of the $1,000,000 license fee will be paid out of the proceeds of the contemplated ICO, ***Corrected Declaration at 16***;
- If Androcles elects not to proceed with the ICO, it will still have liability for any unpaid portion of the $1,000,000 license fee, ***Corrected Declaration at 16-17***;
- Debtor and Ms. Holland have to indemnify Androcles for damages for not proceeding with the ICO if they breach the License Agreement, ***Corrected Declaration at 17***;
- Debtor can transfer the trademarks, trade-name and copyrights license to Androcles subject to rights of first and last refusal, ***Corrected Declaration at 20-21***; and

- Other than the rights licensed, Debtor has no duty or to contribute to the ICO, *Corrected Declaration at 23*;
- Other than its rights to payment from the ICO proceeds described on page 7, Schedule 3 and in Table 1, Debtor has no rights to the technology behind the ICO or the ICO itself, *Corrected Declaration at 23*.

Given these factors, Debtors believe that Court approval is required under section 363(b) of the Bankruptcy Code. The test for whether a transaction falls outside of the ordinary course of business is tested under two standards: the horizontal standard and the vertical standard. The horizontal standard looks at the industry in which a debtor operates. The vertical standard looks at a debtor's past practices. See *Burlington Northern R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 704-05 (9th Cir. 1988). Given the unique nature of an ICO, the License Agreement differs in certain material respects from Debtors' past practices and the entertainment industry generally. As such, it falls outside the ordinary course of business under either standard. In any event, the License Agreement requires court approval itself. License Agreement at p. 4.

### B. Entering into the license agreement is a reasonable and prudent use of Debtors' business judgment.

In determining whether a court should and can approve a transaction such as the License Agreement, recent authority focuses whether the transaction has sound business reason that represents the exercise of prudent business judgment. Cases tend focus on whether a sale, or in this case a license, has a sound business reason supported by sound exercise of business judgment. Courts independently consider a debtor in possession's business judgment to determine whether it is reasonable. Thus, courts are discouraged from substituting their own judgment for that of the debtor in possession. Rather, the determination is restricted to whether the judgment is reasonable and supported by sound business justification. 3 *Collier on Bankruptcy* ¶ 363.02 (16th ed. 2017).

**C. The License Agreement represents a reasonable and prudent exercise of Debtors' business judgment because it confers a substantial benefit on the estate.**

The License Agreement is non-exclusive. Thus, it does not impair any rights in any other license. Thus, it will not restrict Debtor's ability to license its intellectual property in other channels, including this one. The License Agreement adds considerable revenue at no additional cost. *Corrected Declaration at 3*. As noted above, it also presents an opportunity for Debtor to receive substantial additional revenue beyond the initial license fee of $1,000,000, while otherwise leaving Debtors' existing business wholly intact and stronger because of the additional revenues. *Corrected Declaration at 3*. It is hard to imagine a more reasonable and beneficial transaction. Thus, the License Agreement has a sound business reason – it allows Debtor to survive and grow. It also demonstrates the exercise of sound business judgment for that same reason.

Debtor is mindful that where a transaction benefits an insider, either directly or indirectly, the Court will more carefully examine whether the transaction unfairly benefits the insider at the expense of creditors. *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 424 (Bankr. S.D. Tex. 2009) ("a debtor-in-possession must exercise fiduciary duty in determining whether and how to propose a sale of assets. If entities that control the debtor will benefit, or will potentially benefit, from the sale the court must carefully consider whether it is also appropriate to defer to their business judgment.")

The License Agreement contains provisions that appear to solely benefit Ms. Holland, the Debtor's president, because it gives Androcles the right to suspend payment if Debtor ceases to operate, Ms. Holland ceases to control the shares of Debtor and ceases to employ Ms. Holland as the CEO. *Corrected Declaration at15.* First, if any of those events do occur it will only operate to suspend, not terminate, payment of the $1,000,000 until the ICO in fact funds. Id. Second, Androcles' insistence that Ms. Holland stay on is rooted in the fact that the value it perceives in the Penthouse brand is derived in some important part from the aesthetic decisions that Ms. Holland makes about the content Penthouse produces, licenses or acquires. It is, therefore, perfectly

reasonable for Androcles to create incentives for her to remain with the company.

The License is not a sale of all of Debtor's assets; it adds to Debtor's assets. As such, it does not impair the rights of creditors under any plan. Rather, it opens a pathway to reorganization. Indeed, given Debtor's dire cash position, it will save Debtor from liquidation. These are exactly the types of considerations that have lead courts to approve out of the ordinary course transactions in the past. *In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) ("the settlement does not dispose of virtually all of [Debtor]'s assets, leaving "little prospect or occasion for further reorganization." Instead it disposes of one particular "asset," ... which is not so much the crown jewel of [Debtor]'s estate but its white elephant. ... The removal of [the asset] from the estate will facilitate [Debtor]'s reorganization, and will do so without denigrating the rights of the unsecured trade creditors.")

## IV. CONCLUSION

For the reasons stated above, it is manifest that the License Agreement is an enormous benefit to the estate and its creditors. It represents an unmistakably reasonable exercise of business judgment by Debtor and should therefore be approved.

Dated: February 1, 2018

WEISS & SPEES, LLP
/s/ *Michael H. Weiss*
Michael H. Weiss
Attorneys for Debtors and Debtors in Possession
Penthouse Global Media, Inc. et al.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1925 Century Park East, suite 650, Los Angeles, CA 90069

A true and correct copy of the foregoing document entitled:

**CORRECTED** MOTION FOR AUTHORITY TO ENTER INTO LICENSE AGREEMENT WITH ANDROCLES ENTERTAINMENT, PVY LTD. OUTSIDE THE ORDINARY COURSE OF BUSINESS; MEMORANDUM OF POINTS AND AUTHORITIES
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 1, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Krikor J Meshefejian    kjm@lnbrb.com
Aram Ordubegian    ordubegian.aram@arentfox.com
S Margaux Ross    margaux.ross@usdoj.gov
Michael St James    ecf@stjames-law.com
Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;lisa.spencer@bbklaw.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com
Beth Ann R Young    bry@lnbyb.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, 2018 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 1, 2018 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
Messenger: Hon. Martin Barash, U.S. Bankruptcy Court, 21041 Burbank Boulevard, Courtroom 303, Woodland Hills, CA 91367
Email: See attached Service list

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/1/2018 | Laura J. Meltzer | /S/ Laura J. Meltzer |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                              **F 9013-3.1.PROOF.SERVICE**

# SERVICE LIST SECURED CREDITORS, CREDITORS COMMITTEE AND

# REQUESTS FOR SPECIAL NOTICE

**SECURED CREDITORS:**
EXWORKS Capital Funds I LP
Robert Richardson
333 W Wacker Drive Suite 1620
Chicago, IL 60606
RRichardson@exworkscapital.com


DREAM MEDIA Corporation
Adam Levin
10990 Wilshire Blvd Penthouse
Los Angeles, CA 90024
adam@orevacapital.com

Beth Ann R Young     bry@lnbyb.com


**CREDITORS COMMITTEE:**

DVD Factory Inc.
Steve Kalson
7230 Coldwater Canyon Ave.
North Hollywood, CA 91605
Tel: (818) 432-5782
Fax: (818) 432-5783
ty@dvdfactoryinc.com
Steve-dvd@hotmail.com

LSC Communications US, LLC / Creel Printing
Dan Pevonk
4101 Winfield Rd.
Warrenville, IL 60555
Tel: (630) 821-3108
Fax: (630) 821-3093
dan.pevonka@lsccom.com

TGG
Matthew A. Garrett, CEO
10188 Telesis Court, Suite 130
San Diego, CA 92121
Tel: (760) 697-1033
matt.garrett@tgg-accounting.com

s:\penthouse\jt. admin. service lists, etc\service lists\service list secured cred., creditors comm. and req. for spec. notice 2.1.18.docx

Miller Law Group
Walter M. Stella
111 Sutter Street
San Francisco, CA 94104
Tel: (415) 464-4300
wms@millerlawgroup.com

Palm Coast Data
Neil Gordon
11 Commerce Blvd.
Palm Coast, FL 32164
Tel: (386) 447-6431
Fax: (386) 447-2625
gordon.neil@palmcoastdata.com

### ECF

Krikor J Meshefejian    kjm@lnbrb.com
Michael St James    ecf@stjames-law.com
Howard Steinberg    steinbergh@gtlaw.com
pearsallt@gtlaw.com;
laik@gtlaw.com
Cathy Ta    cathy.ta@bbklaw.com
Arthur.Johnston@bbklaw.com
lisa.spencer@bbklaw.com

### REQUESTS FOR SPECIAL NOTICE

Aram Ordubegian
aram.ordubegian@arentfox.com

Robert M. Hirsh
robert.hirsh@arentfox.com

Mark A. Mintz
Mmintz@joneswalker.com

Joseph E. Bain
jbain@joneswalker.com