1  RON BENDER (SBN 143364)
   BETH ANN R. YOUNG (SBN 143945)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
   Los Angeles, California 90067
   Telephone: (310) 229-1234; Facsimile: (310) 229-1244
4  Email: rb@lnbyb.com; bry@lnbyb.com; kjm@lnbyb.com

5  Attorneys for Dream Media Corporation

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>PENTHOUSE GLOBAL MEDIA, INC.,<br><br>          Debtor.<br><br>In re:<br>PENTHOUSE GLOBAL BROADCASTING, INC.<br>PENTHOUSE GLOBAL LICENSING, INC.<br>PENTHOUSE GLOBAL DIGITAL, INC.<br>PENTHOUSE GLOBAL PUBLISHING, INC.<br>GMI ONLINE VENTURES, LTD.<br>PENTHOUSE DIGITAL MEDIA PRODUCTIONS, INC.<br>TAN DOOR MEDIA, INC.<br>PENTHOUSE IMAGES ACQUISITIONS, LTD.<br>PURE ENTERTAINMENT TELECOMMUNICATIONS, INC., fka For Your Ears Only, Ltd.<br>XVHUB Group, Inc., fka Giant Swallowtail Inc.<br>GENERAL MEDIA COMMUNICATIONS, INC.<br>GENERAL MEDIA ENTERTAINMENT, INC., fka Penthouse Video, Inc.<br>DANNI ASHE, INC.<br>STREAMRAY STUDIOS, INC.,<br><br>          Debtors.<br><br> X  Affects all Debtors | Lead Case No.: 1:18-bk-10098-MB<br><br>Jointly administered with:<br><br>Case No.: 1:18-bk-10099-MB<br>Case No: 1:18-bk-10101-MB<br>Case No: 1:18-bk-10102-MB<br>Case No: 1:18-bk-10103-MB<br>Case No: 1:18-bk-10104-MB<br>Case No: 1:18-bk-10105-MB<br>Case No: 1:18-bk-10106-MB<br>Case No. 1:18-bk-10107-MB<br>Case No. 1:18-bk-10108-MB<br>Case No. 1:18-bk-10109-MB<br>Case No. 1:18-bk-10110-MB<br>Case No. 1:18-bk-10111-MB<br>Case No. 1:18-bk-10112-MB<br>Case No. 1:18-bk-10113-MB<br><br>Chapter 11 Cases<br><br>PRELIMINARY OPPOSITION TO DEBTORS' MOTION FOR USE OF CASH COLLATERAL<br><br>Date: February 5, 2018<br>Time: 1:00 pm<br>Place: Courtroom 303<br>   21041 Burbank Boulevard<br>   Woodland Hills, CA 91367 |

Although the Order setting the hearing on Debtors' Motion to Use Cash Collateral (the "Motion") provided that any opposition to the Motion could be presented orally at the hearing on February 5, 2018 (the "Hearing"), because of the numerous concerns regarding the requested relief, Secured Creditor, Dream Media Corporation ("Dream Media"), hereby submits its Preliminary Opposition to Debtors' Motion. Dream Media reserves the right to present further opposition to the Motion at the Hearing.

## I.

## **SUMMARY OF ARGUMENT**

Almost three weeks into the Debtors' chapter 11 bankruptcy cases, with no commitment of any legitimate post-petition financing on the horizon,[1] the only evidence of record shows a track record of significant losses during Debtors' barely 24 months of operations. The Motion lacks any evidence that Dream Media's security interest would be adequately protected if use of cash collateral was permitted; and the gratuitous statement by Mr. Whitworth is not a substitute for actual evidence that Dream Media is adequately protected.

Indeed, the projections set forth in the Debtors' Cash Flow (Ex. "2" to the Omnibus Declarations of Holland, Brandt and Whitworth, Docket No. 72) are largely unintelligible because of the way they are presented, but erroneously presumes that the first $200,000 payment is delivered by Androcles by February 2, 2018, which is not possible, and given the massive defects in the proposed License Agreement, unlikely to ever come to fruition.[2] Apparently, the only interest being adequately protected is that of insiders, where the Cash

---

[1] Concurrently herewith, Dream Media has filed its preliminary opposition to the Debtors' Motion for Authority to Enter Into License Agreement with Androcles Entertainment, PVY, LTD (the "Motion for Authority to Enter Into License Agreement") which outlines in detail the defects in the proposed License Agreement and forms the basis for the assertion that Debtors have no viable source of post-petition financing.

[2] See, Opposition to Motion for Authority to Enter Into License Agreement, filed concurrently herewith.

2

Flow terminates any payment to Dream Media[3] in deference to insider compensation of approximately $37,000 per month.[4]

Dream Media does not consent to the Debtors' use of its cash collateral, and as a matter of law, Debtors cannot overcome the burden of proof required for use of cash collateral over the secured creditor's objections. Even with the Androcles transaction, which Dream Media would have a security interest in, because (a) it is likely that the Androcles transaction is not approved or never funds; (b) the Debtor will burn through any amounts paid by Androcles to operate the case (which is otherwise running in the negative); and (c) Androcles' License Fees are capped at $1,000,000 after which it holds the License "in perpetuity" with no further payment obligation, the Androcles transaction is not a source of adequate protection.

Dream Media is the only secured creditor of the chapter 11 Debtors, and holds "blanket liens that encumber all of the Debtors in these cases."[5] While there is a serious question whether Dream Media's predecessor was fraudulently induced to make or extend the maturity date of the loans to Debtors based upon the falsified books and records (which will be an issue to resolve later), there is no question but that the value of Dream Media's collateral is not protected and continued use of cash collateral threatens Dream Media's adequate protection. Indeed, Debtors acknowledge that they will continue to suffer losses during the next four months of at least $500,000 without the Androcles funding. And on each of the 15 petitions filed by the Debtors, Debtors readily admit that "[a]fter administrative expenses are paid, no funds will be available for distribution to unsecured creditors." Thus, the forecast is not

---

[3] During the post-petition period, with the consent of Debtors, Dream Media continued to sweep one of the Debtors' accounts, collecting the nominal sum of $29,900, which sweep Debtors now seek to terminate along with the requested use of cash collateral. (Brandt Decl. at ¶5(a).) The monthly loan payment owing to Dream Media, which Debtors have not made since June 2017, exceeds $110,000 and the nominal sum received from the periodic sweeps is not tantamount to adequate protection.

[4] See, Insider Compensation Applications for Holland, Brandt and Whitworth, Docket Nos. 75, 76 and 77.)

[5] See, Debtors' Motion for Joint Administration, filed January 15, 2018. [Docket No. 15.]

3

encouraging and the purpose of these chapter 11 cases is unclear. But use of cash collateral under these circumstances should be denied.

## II.

## STATEMENT OF FACTS

Debtors are currently indebted to Dream Media under a Loan Agreement and certain amendments thereto, for an amount of $10,283,760.09 (the "Indebtedness") as of January 8, 2018. At Exhibit "6" of Debtors' Omnibus Declarations, Debtors admit that the combined sum of the principal balance of the loans owing to Dream Media is the sum of $9,631,276 and that more than $759,357 of interest is unpaid as of December 31, 2017. Since then, more interest has accrued and remains unpaid. Yet, Debtors propose that no payments shall be made to Dream Media, notwithstanding use of its cash collateral, while insiders receive salary of approximately $37,000 per month.

The Whitworth Declaration does not explain what he describes as "serious accounting irregularities in 2017," nor does Mr. Whitworth identify what "adjustments" were made by TGG to the Debtors' books and records, or what "subsequent adjustments" Mr. Whitworth made to the Debtors' books and records, underscoring the lack of any reliability in the numbers proffered. Important but missing information includes (a) a description of the "accounting irregularities" and what dollar amount is ascribed to it; (b) the nature of the adjustments made by TGG, and how that equalizes or otherwise corrects the prior "accounting irregularities;" and (c) the nature of the "subsequent adjustments" made by Mr. Whitworth, and why he made those further adjustments and how that impacts a snapshot of the Debtors' financial condition. Indeed, the Court and estate are left guessing as to what happened during the Debtors' limited 24 months of operations under Ms. Holland's direction. All the Court and the estate are told is that during 2016 (when the Debtors only operated the companies for approximately 9 months) the Debtors suffered losses of $700,000 and then in 2017, through July 2017, the Debtors

4

suffered further losses of $2,100,000. Why should the Court and the creditors trust Mr. Whitworth's numbers, and what is the foundation for which they could possibly be deemed to be reliable? No information is provided in this regard, and certainly no information to support the blanket statement that Dream Media is adequately protected while the Debtors pay insiders more than $37,000 per month and continue to run the company into the ground.

### III.

### **DREAM MEDIA LACKS ADQUATE PROTECTION**

Under § 363(c)(2), a debtor may not use cash collateral unless consented to by the entity that has an interest in the cash collateral or with court authorization. Section 363(e) provides that on request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition the use "as is necessary to provide adequate protection of such interest." The debtor has the burden of proof on the issue of adequate protection. § 363(p)(1). In re Scottsdale Med. Pavilion, 159 B.R. 295 (B.A.P. 9th Cir. 1993), aff'd, 52 F.3d 244 (9th Cir. 1995).

The Code does not define adequate protection but sets forth three alternative non-exclusive methods by which adequate protection may be provided when required under §363: (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. § 361. The determination of adequate protection is a question of fact for the trial court. *In re Bear River Orchards,* 56 B.R. 976, 979 (Bankr.E.D.Calif.1986). In re Pac. Lifestyle Homes, Inc., No. 08-45328, 2009 WL 688908, at *8 (Bankr. W.D. Wash. Mar. 16, 2009). Remarkably, Debtors are offering none of these to Dream Media in exchange for use of its cash collateral. Although not offered, a replacement lien on the Androcles' transaction (which, if approved, is already subject to Dream Media's security interest) is entirely elusive, since the revenue that it will generate

5

will be spent in four months on Debtors' operations, and will not generate any further funds for the estate thereafter.

The pertinent inquiry to ascertain whether Dream Media's security interest is adequately protected requires a determination of the value of Dream Media's interest and whether the Debtors' proposed use of their cash collateral would impair that interest. (*In re Dynaco Corp.*, 162 B.R. 389, 394 (1993).) Adequate protection takes many forms, but "must be determined based upon equitable considerations arising from the particular facts of each proceeding." (*Id.*) In assessing the need for adequate protection:

> If the debtors make a solid showing that their continued operation of their business during the relevant period will pose no serious danger of such a decline, there is no need for any additional adequate protection in terms of 'new money' to be infused into the enterprise by the equity holders or junior creditors to protect the secured creditor's present position in the collateral. *On the other hand, if the evidence before the Court establishes that a permanent decline in the soft collateral level is likely, the Court generally will require infusion of cash by the investors in the enterprise to assure adequate protection of the security interest involved, under the rubric that the Court not allow the debtors to 'risk other people's money' to salvage their own position.* (Emphasis added.)

(*In re Dynaco Corp.*, 162 B.R. 389, 394 - 395 (1993).)

Here, without question, the only evidence of record is that there has been a continued decline in the collateral. Debtors fail to show any evidence that would support a finding that "continued operation of their business during the relevant period will pose no serious danger of such a decline." In the Debtors' Status Report filed on January 24, 2018 [Docket No. 55], Debtors admitted they have no idea what the value of the Collateral is at the present time stating

that: "[t]he value of those assets is not known with any specificity." Apparently, in an effort to raise an issue of valuation, Debtors went on to state that "[a]n appraisal done in late 2014 indicated that the value of the intellectual property was approximately $17,000,000." Now, remarkably, Mr. Whitworth has determined, only 5 days later, that the value of the collateral is the specific sum of $11,840,350. (See, Motion at pages 7, lines 24 – 28.) So which of the Debtors' assertions of value is correct? Both are suspect, and neither is reliable because they lack any foundation. Although Mr. Whitworth contends that the Brand Value remains at $7,000,000, there is no evidence as to how this number was derived. The single stated premise is that this was the amount stated in the February 2016 loan documents and the "Debtors continue to operate in the same manner" since that loan. The problem with this, all of which negatively impacts that valuation, is at least three-fold: (1) Debtors have failed to operate the company responsibly (i.e., the admitted, rampant internal accounting fraud); (2) Debtors have failed to operate the company at a profit (two years of evidence showing operational losses in the millions of dollars); and (3) the manner of operation is not relevant to the determination of value. Yet, Mr. Whitworth mentions none of these critical facts and his stated opinion of value is entirely suspect.[6]

In evaluating adequate protection in the context of a cash collateral request, courts have applied a three-step approach to determine whether the proposed adequate protection provided the creditor with the value of his bargained for rights. In order to encourage reorganization, the courts must be flexible in applying the adequate protection standard. This flexibility, however, must not operate to the detriment of the secured creditor's interest. In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2)

---

[6] There also is no evidence to support the contention that the "film library" is valued at $4,073,324, or reasons why Mr. Whitworth projects that it will increase in value. What is the market data or other indicia that he relies upon for this projection? No such information is provided, and the valuation is entirely suspect and does not support the claim of adequate protection.

identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. In re Pac. Lifestyle Homes, Inc., No. 08-45328, 2009 WL 688908, at *10 (Bankr. W.D. Wash. Mar. 16, 2009) (citation omitted). No analysis is provided in the Motion or any of the Declarations. Instead, blanket statements of "adequate protection" are set forth without any foundation. Certainly, the inherent risks in the Androcles' transaction should have been addressed. However, the fact remains that without the infusion of money now, the Debtors have no ability to operate and the risk to Dream Media of continued loss to its collateral is a foregone conclusion. Other than the Androcles' transaction, which raises a host of problems and seems remote and unlikely to fund, even if approved (which also seems unlikely given the defects inherent in the nature of that transaction), the Debtors have indicated no other source of funds and no ability to operate their businesses. Thus, use of cash collateral should be denied.

### IV.

### **CONCLUSION**

Based upon the foregoing, and good cause appearing thereon, Dream Media respectfully requests that the Court deny the Motion.

Dated: February 2, 2018                Levene, Neale, Bender, Yoo & Brill L.L.P.


By:   /s/ *Beth Ann R. Young*
      Ron Bender
      Beth Ann R. Young
      Krikor J. Meshefejian
      Attorneys for Dream Media Corporation

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **PRELIMINARY OPPOSITION TO DEBTORS' MOTION FOR USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 2, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Krikor J Meshefejian    kjm@lnbrb.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Michael St James    ecf@stjames-law.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com
- Beth Ann R Young    bry@lnbyb.com

**2. SERVED BY UNITED STATES MAIL**: On **February 2, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 2, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 2, 2018 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**