BUCHALTER
A Professional Corporation
JEFFREY K. GARFINKLE (SBN: 153496)
MIRCO J. HAAG (SBN: 316111)
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email:  mhaag@buchalter.com

Attorneys for Creditor
Easy Online Solutions, Ltd. d/b/a MojoHost

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:18-bk-10098-MB |
| PENTHOUSE GLOBAL MEDIA, INC., et al., | Chapter 11 |
| Debtors. | (Jointly Administered) |
| | **DECLARATION OF BRAD MITCHELL IN SUPPORT OF MOTION FOR ADEQUATE PROTECTION OF AN INTERNET SERVICE PROVIDER AS A UTILITY PURSUANT TO 11 U.S.C. § 366** |
| | [Motion filed concurrently herewith] |
| | [Hearing Set by Notice] |

///

///

///

///

///

///

///

///

///

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1

**DECLARATION IN SUPPORT OF MOTION FOR ADEQUATE PROTECTION OF AN INTERNET SERVICE PROVIDER AS A UTILITY PURSUANT TO 11 U.S.C. § 366**

BN 32142710v1

1

**Declaration of Brad Mitchell**

2

I, BRAD MITCHELL, declare as follows:

3    1.    I am the CEO of Easy Online Solutions, Ltd. d/b/a MojoHost ("MojoHost").

4    2.    MojoHost is the internet service provider ("ISP") for Penthouse Global Digital,

5    Inc. A copy of that agreement is attached as **Exhibit A**.

6    3.    Debtor owed MojoHost approximately $50,000.00 as of January 11, 2018.

7    4.    MojoHost's charges accrue at the rate of approximately $12,500.00 per month.

8    5.    No payments have been made to MojoHost since January 11, 2018.

9

10    DATED:  March 12, 2018        By: _____
                                              Brad Mitchell

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

2

**DECLARATION IN SUPPORT OF MOTION FOR ADEQUATE PROTECTION OF AN
INTERNET SERVICE PROVIDER AS A UTILITY PURSUANT TO 11 U.S.C. § 366**

BN 32142710v1

# EXHIBIT A

# EXHIBIT A

**Created:** March 16, 2015
**Last Updated: April 5**, 2015

## MASTER SERVICES AGREEMENT

This master services agreement is between **Easy Online Solutions, Ltd.**, a Michigan corporation, doing business as MojoHost ("**MojoHost**"), and the customer identified on the service order or that signs this agreement ("**Customer**").

MojoHost provides various computer infrastructure and related services to customers, including (1) bare metal servers, (2) managed dedicated hosting, (3) virtual private servers, (4) public and private clouds, (5) content delivery network (CDN), (6) shared hosting, (7) colocation, (8) wholesale bandwidth, and (9) corporate email solutions.

Customer wants to order one or more of these services from MojoHost.

MojoHost wants to provide the requested services to Customer subject to the terms of this agreement, which includes the (1) service level agreement ("**SLA**"), (2) privacy policy, (3) IP address policy, (4) acceptable use policy ("**AUP**"), (5) service order, and (6) any relevant appendices.

The parties thus agree as follows:

1. **Services**

Contingent on Customer's satisfaction of any MojoHost credit approval requirements and MojoHost's verification of the information provided by Customer, MojoHost will use commercially reasonable efforts to provide the services requested to Customer according to the specifications and timeframes listed in the service order and the terms of this agreement so long as Customer is not otherwise in breach of this agreement and has made all payments required under this agreement. Unless otherwise stated in this agreement or in the service order, Customer is solely responsible for all costs and expenses to provide all equipment, hardware, cabling, and software required to access or receive the services. MojoHost may change, discontinue, add, modify, re-price, or remove features or functionality from the services on notice to Customer as provided in this agreement. It is Customer's responsibility to check for notices on a frequent basis. If Customer continues to use the services following any change, MojoHost will deem this continued use as Customer's acceptance of the change unless Customer provides timely written notice objecting to the changes as provided in this agreement. MojoHost reserves the right to modify or relocate its network and facilities used to provide the services to accommodate evolving technology, increased network demand, and provide enhanced services. These activities will not adversely affect the provision of services. Relevant third parties may provide third-party services and MojoHost is not responsible for the provision of third-party services.

2. **Privacy**

The privacy policy available on the website governs the collection and use of personally identifiable information ("**PII**").

3.  **Customer's Use of and Access to the Services**

3.1    *Age and Capacity.* Customer must be at least 18-years old or otherwise have the legal capacity to order services. If Customer is ordering services on behalf of an employer, company, or other legal entity, Customer states that Customer has the legal right and authority to order the services and be bound to this agreement.

3.2    *Rights to Use Services.* Subject to the terms of this agreement, MojoHost grants Customer a nonexclusive, nontransferable, non-sublicenseable (except if required to exercise rights under section 3.2(B)), revocable right in the services solely to:

3.2(A)    Use and access the services for internal purposes; and

3.2(B)    Use the services to create, offer, and provide the customer offerings.

3.3    *Customer Obligations.* Customer will do each of the following:

3.3(A)    Deliver customer content using the supporting encoding format specified in the service order (if applicable);

3.3(B)    Comply with all applicable foreign and United States laws, including the Foreign Corrupt Practices Act (FCPA) and international anticorruption laws, and the Digital Millennium Copyright Act (DMCA) and intellectual property laws;

3.3(C)    Pay the fees for the services when due;

3.3(D)    Use reasonable security precautions for providing access to the services by its employees or other individuals to whom it provides access;

3.3(E)    Cooperate with MojoHost's or its affiliate's investigation of outages, security problems, and any suspected breach of this agreement;

3.3(F)    Comply with all license terms or terms of use for any software, content, service, or website (including customer content) that Customer uses or accesses when using the services;

3.3(G)    Give MojoHost true, accurate, current, and complete account information;

3.3(H)    Keep Customer's account information up to date;

3.3(I)    Be responsible for the use of the services by Customer and customer end users and any other person to whom Customer has given access to the services or customer offering;

3.3(J)    Comply with all third-party service ("***TPS***") agreements;

3.3(K)    Comply—and ensure its customer end users comply—with MojoHost's AUP and not otherwise use the services for the distribution of any material that

2

MojoHost considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable;

3.3(L)  Use commercially reasonable efforts to prevent unauthorized access to or use of the services, and immediately notify MojoHost of any known or suspected unauthorized use of Customer's account, the services, or any other breach of security;

3.3(M)  Where Customer provides customer offering as permitted under this agreement, enter into an agreement with customer end users that includes the relevant terms of this agreement and releases MojoHost and its affiliates from any liability for damages or losses customer end users may incur from using the customer offering; and

3.3(N)  Reasonably comply with any request by MojoHost to cooperate with any third-party audit, including software audits.

3.4  *Customer Prohibitions.* Customer will not do any of the following:

3.4(A)  Use the services in any situation where failure or fault of the services could lead to death or serious bodily injury of any person, or to physical or environmental damage. For example, Customer will not use, or permit any other person to use, the services for aircraft or other modes of human mass transportation, nuclear or chemical facilities, or Class III medical devices under the Federal Food, Drug, and Cosmetic Act;

3.4(B)  Copy, transfer, reverse engineer, disassemble, decompile, create derivative works of, or, except as part of an authorized customer offering, allow third party access to the services;

3.4(C)  Remove any proprietary notices or labels contained in or placed by the services;

3.4(D)  Use, post, transmit, or introduce any device, software, or routine that interferes or attempts to interfere with the operation of the services;

3.4(E)  Take any action that imposes an unreasonable or disproportionately large load on the infrastructure of the services' systems or networks, or any systems or networks connected to the services; or

3.4(F)  Resell any of the services alone to any third party without receiving written consent from MojoHost, which will not be unreasonably withheld.

3.5  *Special Terms for Third-Party Services.* If Customer orders third-party services under TPS agreements, MojoHost is not responsible for the third-party services and the provider of the third-party service is solely responsible for providing the third-party services. However, the following provisions of this agreement will apply to the third-party services: sections 8, 9, 10, 11, 15, and 16. In addition, if MojoHost provides or

3

resells certain software and services to Customer, Customer may be bound by additional terms imposed by applicable third-party resellers or licensors, which are incorporated in this agreement by reference.

4. **Payment**

4.1    *Fees.* Customer will pay MojoHost in U.S. dollars the fees for the services listed on the service order. If the service order does not specify the fees, Customer will pay the fees for the relevant services at MojoHost's then-current rates. Unless otherwise provided in the service order, all fees for the provision of services (except as provided below for additional service fees and one-time fees) are due monthly in advance of Customer's receipt of the services. Customer will pay the fees to MojoHost in the amounts stated in the service order no later than the due date. MojoHost will endeavor to invoice Customer on a monthly basis, but reserves the right to bill at such later time or times as may be reasonably necessary in the discretion of MojoHost. The amount due may be adjusted by addition of services, upgrade of services, discontinuance of services, or downgrade of services, and through the use of SLA credits. Customer understands that charges for bundled services will be "unbundled" if Customer cancels any part of the bundle of services. The fees for additional or upgraded services for which MojoHost accepts the service order on the anniversary billing date will be due on the anniversary billing date. The fees for additional or upgraded services for which MojoHost accepts the order after the anniversary billing date will be pro-rated on a calendar day basis to the next anniversary billing date and billed as a one-time pro-rata charge on the next anniversary billing date.

4.2    *Additional Service Fees; One-Time Fees.* For fees for additional services such as Content Delivery Network (CDN) overages, bandwidth use overages, and backup overages, payment will be due on the next anniversary billing date. If Customer exceeds the minimum bandwidth commitment in a given calendar month, MojoHost will charge Customer for the excess bandwidth over the minimum bandwidth commitment at the usage rate reflected in the service order. MojoHost calculates excess bandwidth as the difference between the total usage—as determined by MojoHost using the industry standard 95th percentile calculation method—and the minimum bandwidth commitment unless the parties agree to a different billing arrangement in the service order, such as per-gigabyte billing for bandwidth based on actual customer content transferred. MojoHost will bill overage charges for burst bandwidth, if not specified in the service order, at MojoHost's prevailing rate. One-time fees, such as setup fees, bandwidth, storage, administrative fees, and late fees are due when invoiced, or as otherwise agreed by MojoHost.

4.3    *Special Construction or Acquisition Fees.* If MojoHost is required to specially construct or acquire equipment or facilities from a third party to provide the services and the costs are not included in the monthly fees for the affected services, the parties will agree in writing on the charges applicable to the construction or acquisition before the undertaking of the activity by MojoHost. If Customer terminates this agreement or any service order involving special construction or acquisition after the acceptance of a service order, but before MojoHost makes the service available to Customer,

4

Customer will reimburse MojoHost for all unpaid costs and expenses incurred by MojoHost in connection with the special construction or acquisition up to the time of termination.

4.4   **Payment Methods.** Customer will pay all fees using a payment method that is maintained on file with MojoHost, such as credit card, ACH electronic fund transfer, or any other method approved by MojoHost. Customer hereby authorizes MojoHost to automatically charge Customer's payment method on file with MojoHost on or before the applicable due date. If Customer's payment method is a physical check or money order, Customer authorizes MojoHost either to use information from the check to make a one-time electronic transfer from Customer's account as soon as the same day Customer makes payment, or to process Customer's check as a check transaction in which case Customer may not receive the check back from Customer's financial institution. Customer will provide and maintain valid and accurate billing information and contact information. Customer will be responsible for all fees, including processing fees, associated with making payment via wire transfer to MojoHost.

4.5   *Taxes*

4.5(A)   All prices and fees specified in or referred to in this agreement are stated exclusive of any tax, including withholding tax, sales, use, value added, levies, import and custom duties, excise, or other similar or equivalent taxes imposed on the supply of services.

4.5(B)   Customer will pay any sales, use, levies, excise, withholding taxes, or similar charges, direct or indirect, applicable or to become applicable, which are levied because of the supply of the services. Neither party will be liable for the other party's taxes based on income.

4.5(C)   If withholding tax applies to any payments for services made under this agreement, Customer may deduct the withholding taxes and pay the withholding taxes to the appropriate tax authority. Customer will provide MojoHost an official receipt for any taxes withheld and must notify MojoHost before payment that Customer is required to pay the withholding tax. Customer will pay to MojoHost any additional amount to ensure that MojoHost receives the full amount of the invoice.

4.5(D)   If MojoHost has the legal obligation to pay or collect taxes for which Customer is responsible under this section, MojoHost will charge the appropriate amount to Customer and Customer will pay this amount in addition to the amount of the invoice unless Customer provides MojoHost with a valid tax exemption certificate authorized by the appropriate taxing authority.

4.5(E)   The parties will cooperate, where possible, to minimize the amount of withholding tax due by making advance clearance applications under the relevant double taxation treaties (where applicable) to the relevant tax

5

authority to reduce the rate of withholding tax or exempt entirely this amount if applicable. Regardless, Customer will account for any tax withheld to the tax authorities on a timely basis.

4.6     *SLA Credits.* Customer will only use SLA credits, if issued to Customer's account, to offset future charges for services as provided in the SLA. Customer will not sell, convert to cash, or transfer SLA credits to third parties or affiliates. SLA credits will expire on the termination of this agreement.

4.7     *Late Fees; Reconnection Fees.* Customer's failure to pay the fees on the due date will result in the assessment of a $50 late fee for each month Customer is late. In addition, if any portion of the fees remains unpaid 30 days or more beyond the due date, MojoHost will also charge interest at the greater of 2% per month or the maximum permitted by law. If MojoHost has suspended Customer's access to the services over the public network as provided in section 15, Customer will incur a $250 reconnection fee. These fees will be due on receipt, and MojoHost will not reconnect any services to Customer until full payment of these fees.

4.8     *Credit Approval; Security Deposit; Possessory Lien.* Customer will provide MojoHost with credit information as requested, and delivery of services is subject to credit approval by MojoHost. If Customer is required to pay MojoHost a security deposit, MojoHost may, without further notice to Customer and without prejudice to MojoHost's other remedies, apply part or all of the security deposit toward the cure of any default. If MojoHost does so, Customer will—within five business days after written demand—pay MojoHost an amount equal to the amount applied to restore the security deposit to its original amount. MojoHost may deposit the security deposit in an account with its own funds and Customer will not be entitled to receive interest on the security deposit. MojoHost will return any part of the security deposit not used within 30 days after the termination of this agreement, after MojoHost applies the security deposit to any outstanding amounts due to MojoHost. In addition, **MojoHost may retain—as collateral for unpaid fees and penalties—Customer's equipment, domains, customer content, or other assets in MojoHost's possession**.

4.9     *Refunds and Disputes.* All fees Customer pays for services to MojoHost are nonrefundable. If Customer believes that an invoice has errors or is incorrect, Customer's sole remedy is to seek SLA credits by notifying MojoHost within 30 days of receiving the disputed invoice with a full explanation of the basis of the disputed charges. Customer accepts as correct any invoice Customer does not dispute under this section within 30 days of receiving the invoice and will not dispute the invoice later. Customer will not chargeback credit-card payments to MojoHost. Any chargeback will result in an additional payment to MojoHost of up to $500, which is a reasonable estimate of MojoHost's additional administrative costs. Returned checks, including electronic checks, will be subject to a returned check fee of $25 or the highest amount permitted by law, whichever is lower. **Customer is responsible for all fees and costs (including actual legal fees, court costs, and collection agency fees) incurred by MojoHost in collecting its fees.**

6

4.10 **No Setoff.** Customer will not withhold payment of any amounts due under this agreement because of any setoff of any claim or dispute with MojoHost, whether relating to MojoHost's breach, bankruptcy, or otherwise.

4.11 **Third-Party Subpoena Fees.** If MojoHost receives a subpoena, court order, or other valid legal process or request, including a request from a governmental agency, seeking information concerning Customer, Customer will pay MojoHost's actual costs, expenses, and fees incurred in connection with providing a response, including actual legal costs, expenses, and fees incurred in connection with the request.

## 5. **Ownership of Website**

5.1 Customer acknowledges that MojoHost (or its licensors) owns all legal right, title, and interest in the website and the services provided by MojoHost, including all intellectual property or other proprietary rights that subsist in the website and services (whether those rights are registered or unregistered, and wherever in the world those rights may exist).

5.2 As between Customer and MojoHost, MojoHost or its licensors owns all materials on the website, including graphics, user and visual interfaces, images, software, applications, and text, as well as the design, structure, selection, coordination, expression, "look and feel," and arrangement of the website and its content (except for any customer content). In addition, MojoHost or its licensors owns the domain names, trademarks, service marks, proprietary logos, and other distinctive brand features found on the website.

## 6. **Intellectual Property**

6.1 Customer states that the customer content and Customer's use of the services will not infringe the intellectual-property rights of MojoHost or any third party.

6.2 Customer acknowledges that MojoHost or its licensors owns all right, title, and interest in any technology, including the software that is part of or provided with the services and any trademarks or service marks of MojoHost.

6.3 Unless otherwise specifically provided in this agreement, Customer will not distribute or authorize others to distribute MojoHost intellectual property in any manner without the advance written consent of MojoHost. As provided in section 3.3(B), Customer will comply with the DMCA in providing the customer offering. In addition, Customer will cooperate with MojoHost in responding to any DMCA notices received by MojoHost regarding customer offering and customer content. MojoHost may disable or terminate Customer's account or the accounts of customer end users who may be repeat infringers. MojoHost will handle allegations of infringement according to its DMCA notice policy, which MojoHost may amend on one or more occasions. MojoHost may charge an administrative fee of $100 for the processing of each notice pursuant to the DMCA that it receives that is related to Customer.

7

7. **Backup and Security**

7.1    MojoHost will maintain reasonable and appropriate measures related to physical security to protect customer content.

7.2    Except for responsibility for physical security and unless MojoHost agrees otherwise in writing, Customer will be solely responsible for data maintenance, integrity, retention, security, and backup of customer content. Customer will be solely responsible for undertaking measures to: (1) prevent any loss or damage to customer content; (2) maintain independent archival and backup copies of customer content; and (3) ensure the security, confidentiality, and integrity of customer content. MojoHost will have no liability to Customer or any other person for loss, damage, integrity, usability, accessibility, or destruction of any customer content except in the case of MojoHost's gross negligence or willful and wanton misconduct.

7.3    Customer will use reasonable security precautions for providing access to the services by its employees or other individuals to whom it provides access, whether for Customer's internal business purposes or as a customer offering. Customer will be solely responsible for ensuring the confidentiality and security of all account usernames and passwords, and for all user conduct regarding the account credentials. Customer will implement internal protocols and procedures whereby terminated personnel will no longer be able to access any Customer username or password. All passwords Customer or its personnel use must be smart, secure combinations of characters and not be comprised solely of dictionary words.

7.4    If Customer transfers or is otherwise involved in the transfer of any customer content (whether for its business or otherwise) over the public network or private networks, then Customer is solely responsible for compliance with all applicable laws in all applicable regions or countries regarding the security, privacy, legality, or safe handling of the customer content.

8. **Loss Payment (also known as Indemnification)**

8.1    *In General*. Customer must pay MojoHost for any actual or alleged loss of MojoHost's that is caused by:

    8.1(A)    Customer's use of the services or third-party services;

    8.1(B)    Any breach or alleged breach by Customer of this agreement;

    8.1(C)    Any violation or alleged violation by Customer—including any person given access or customer end users—of another's rights, including any actual or alleged infringement or misappropriation of another's copyright, patent, trademark, service mark, privacy, identity, trade secret, confidential information, or other proprietary right;

    8.1(D)    Customer or customer end users' actual or alleged damage to the website or services; or

8

8.1(E)  Any actual or alleged violation or noncompliance by Customer or customer end users with any applicable law in any jurisdiction.

But Customer need not pay if the actual or alleged loss was caused by MojoHost's gross negligence or intentional misconduct.

8.2  *Definitions*

8.2(A)  ***Loss*** means an amount that MojoHost is legally responsible for or pays in any form. Amounts include, for example, a judgment, a settlement, a fine, damages, injunctive relief, staff compensation, a decrease in property value, and expenses for defending against a claim for a loss (including fees for legal counsel, expert witnesses, and other advisers). A loss can be tangible or intangible; can arise from bodily injury, property damage, or other causes; can be based on tort, breach of contract, or any other theory or recovery; and includes incidental, direct, and consequential damages.

8.2(B)  A loss is ***caused by*** an event if the loss would not have occurred without the event, even if the event is not a proximate cause of the loss.

8.3  ***MojoHost's Duty to Notify***. MojoHost must notify Customer before the 30th business day after MojoHost knows or should reasonably have known of a claim for a loss that Customer might be obligated to pay. MojoHost's failure to timely notify does not terminate Customer's obligation, except if the failure prejudices Customer's ability to defend the claim or mitigate losses.

8.4  ***Legal Defense of a Claim***. MojoHost has control over defending a claim for a loss (including settling it), unless MojoHost directs Customer to control the defense. MojoHost and Customer must cooperate with each other in good faith on a claim.

8.5  ***No Exclusivity***. MojoHost's rights under this section do not affect other rights that MojoHost might have.

9.  **Disclaimer of Warranties**

9.1  Customer acknowledges that inherent risks exist in Internet connectivity and that the use of the services could result in the loss of Customer privacy, confidential information, data, and property. MojoHost does not and cannot control the flow of information to or from its network and other portions of the Internet. MojoHost has no obligation to provide security or protection for Customer's privacy, confidential information, or data other than as specifically stated in this agreement. Customer's use of the website and services is entirely at Customer's own discretion and risk. MojoHost furnishes the website and services "as is" and without warranties or conditions, statutory or otherwise, of any kind.

9.2  MojoHost:

9

9.2(A)    Expressly disclaims all warranties—whether express, implied, or statutory—including warranties of (1) noninfringement, (2) title, (3) merchantability, (4) fitness for a particular purpose, (5) quiet enjoyment, (6) absence of viruses, (7) results, (8) workmanlike effort, (9) quality, (10) noninterference, and (11) accuracy of informational content;

9.2(B)    Expressly disclaims all warranties—whether express, implied, or statutory—arising from a court of dealing, usage, or trade practice;

9.2(C)    Does not warrant that the services will meet Customer's requirements, expectations, or that their operation will be timely, uninterrupted, secure, or error-free, or that any defects will be corrected; and

9.2(D)    Does not warrant or make any representation regarding the use or the results of the use of the services in terms of its accuracy, suitability, reliability, timeliness, completeness, or otherwise.

9.3    Customer assumes total responsibility for Customer's and customer end users' use of the services.

## 10. Disclaimer of Damages

10.1    Except as required by law or caused by MojoHost's gross negligence or willful and wanton misconduct, MojoHost will not be liable to Customer for any special, indirect, incidental, punitive, exemplary, reliance, or consequential damages of any kind.

10.2    This disclaimer includes compensation, reimbursement, or damages arising out of—or relating to—(1) the use of, or loss of use of, the services; (2) loss of profits; (3) loss of goodwill; (4) loss of, or damage to, data or content (including customer content); (5) cost of procurement of substitute goods or services; (6) subsequent or other commercial loss; or (7) for any other reason of any kind.

10.3    This disclaimer applies regardless of theory of liability and even if Customer advised MojoHost of the possibility of these damages.

## 11. Limitation of Liability

11.1    Unless required by law or caused by MojoHost's gross negligence or willful and wanton misconduct, MojoHost will not be liable to Customer for breach of any express or implied warranty or condition, breach of contract, negligence, strict liability, or any other legal theory related to the website or services.

11.2    If—despite section 11.1—MojoHost is found liable to Customer for any damage or loss arising out of the services, MojoHost's total cumulative liability to Customer will not exceed the amount of fees Customer actually paid MojoHost for the services during the three-month period immediately before the occurrence of the event-giving rise to MojoHost's liability.

10

12. **Allocation of Liability**

The parties acknowledge that the disclaimer of warranties, disclaimer of damages, limitations of liability, and allocation of risk here are an essential element of the bargain between the parties, without which MojoHost would not have entered into this agreement. MojoHost's pricing reflects this allocation of risk and these limitations.

13. **Dispute Resolution**

13.1    *In General.* Each party will allow the other a reasonable opportunity to comply before it claims that the other has not met the obligations under this agreement. The parties will first meet and negotiate with each other in good faith to attempt to resolve all disputes between the parties relating to this agreement.

13.2    *Litigation Election.* Either party may elect to litigate the following type of case or controversy: (1) an action seeking equitable relief or (2) a suit to compel compliance with this dispute resolution provision. MojoHost may elect to litigate billing or payment disputes or collection matters.

13.3    *Mediation.* If the parties cannot settle a dispute through negotiation within a period of 30 days, then either party may, by notice to the other party and the American Arbitration Association, demand mediation under the Commercial Mediation Rules of the American Arbitration Association. The parties will conduct the mediation in Oakland County, Michigan, United States of America. Each party will bear its own costs in mediation and the parties will share equally between them all third-party mediation costs unless the parties agree otherwise in writing.

13.4    *Arbitration*

13.4(A)    If the parties fail to settle within 30 days after service of a written demand for mediation, the parties will settle any unresolved dispute arising out of or relating to this agreement, or the breach of it, by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. A single arbitrator will preside over the arbitration and issue a final award on all issues submitted to the arbitrator. The parties will conduct the arbitration at a site located in Oakland County, Michigan, United States of America. The parties will bear equally the costs of arbitration, including the fees and expenses of the arbitrator, and each party will bear the costs associated with its case, subject to the arbitrator's right to award costs and fees to the prevailing party.

13.4(B)    This section and the arbitrator's authority to grant relief are subject to (1) the Federal Arbitration Act, 9 U.S.C. §§ 1–16, *et seq.*; (2) the provisions of this agreement; and (3) the American Arbitration Association Code of Ethics for Arbitrators in Commercial Disputes. The arbitrator may not award punitive or exemplary damages, or damages otherwise limited or excluded in this agreement, and the arbitrator's decision will be final and binding. Any court

11

of competent jurisdiction may confirm and enforce the arbitrator's award. The Federal Arbitration Act will govern any post-award proceedings.

13.4(C)    Unless required by law, neither a party nor an arbitrator will disclose the existence, content, or results of any arbitration under this agreement without the advance written consent of both parties.

13.5    ***MojoHost's Right to Injunctive Relief.*** Customer acknowledges that Customer's breach of sections 3.2, 3.3, 3.4, or violation of any terms of the AUP would cause irreparable injury to MojoHost. Customer agrees that if a breach occurs, MojoHost will be entitled to seek temporary and preliminary injunctive relief without the necessity of proving actual damages or posting any bond or other security.

13.6    ***Waiver of Jury Trial.*** As part of their consideration for this agreement, both parties waive the right to a trial by jury for any dispute arising between the parties that is related to the subject matter of this agreement. This waiver will be enforceable up to and including the day that trial is to start, and even if the arbitration provision of this section is waived.

13.7    ***Limited Time to Bring Claims.*** No party will bring a legal action, regardless of form, arising out of or related to this agreement more than one-year after the cause of action arose. After one-year, any legal action arising out of or related to this agreement lapses.

## 14. Trademarks

14.1    During the term of this agreement, Customer grants MojoHost a nonexclusive, worldwide, royalty-free, fully paid-up license to (1) use Customer's trademarks, service marks, logos, or trade name for MojoHost's provision of services (including support of services) to Customer; and (2) to list Customer as a customer of the services by MojoHost or its designees.

14.2    The license granted in section 14.1 includes the right to sublicense to affiliates and any third parties providing all or part of the services on behalf of MojoHost to achieve the license.

## 15. Suspension

15.1    MojoHost may suspend provision of services to Customer without liability if:

15.1(A)    MojoHost reasonably believes that the services are being used, have been used, or will be used by Customer in violation of this agreement or any applicable law in any jurisdiction;

15.1(B)    Customer does not cooperate with MojoHost's investigation of any suspected violation of this agreement or any applicable law in any jurisdiction;

12

15.1(C)    MojoHost reasonably believes that services provided to Customer have been accessed or manipulated by a third party without Customer's consent or in violation of this agreement;

15.1(D)    MojoHost reasonably believes that suspension of the services is necessary to protect MojoHost's network or other MojoHost customers;

15.1(E)    A payment for the services is overdue by more than five days including the anniversary billing date;

15.1(F)    The continued use of the services by Customer may adversely impact the services, systems, or content of any other MojoHost customer;

15.1(G)    MojoHost reasonably believes that the use of the services by Customer may subject MojoHost, its affiliates, or any third party to liability; or

15.1(H)    Law requires suspension.

MojoHost will give Customer reasonable advance notice of a suspension under this section and a chance to cure the grounds on which the suspension are based. However, MojoHost will not give reasonable advance notice if it determines in its reasonable commercial judgment that a suspension on shorter or contemporaneous notice is necessary to protect MojoHost or its other customers from operational, security, or other risk, or a court or other judicial body orders the suspension. For purposes of this section, MojoHost will treat a violation of the flow-through provision the same as a violation of this agreement.

15.2    If MojoHost suspends Customer's right to access or use all or parts of the services:

15.2(A)    Customer remains responsible for all fees and charges Customer has incurred through the date of suspension;

15.2(B)    Customer remains responsible for any applicable fees and charges for any services to which Customer has continued to have access, as well as applicable data storage fees and charges, and fees and charges for in-process tasks completed after the date of suspension;

15.2(C)    Customer will not be entitled to any SLA credits under the SLA for any period of suspension; and

15.2(D)    MojoHost may terminate Customer's access to customer content stored in the services during a suspension, and MojoHost will not be liable to Customer for any damages or losses Customer may incur because of the suspension.

## 16. **Term and Termination**

16.1    *Term*

13

16.1(A)   *Initial Term*. The initial term of this agreement is one year unless otherwise specified in the service order. It begins on the effective date of this agreement.

16.1(B)   *Renewal Term*. After the initial term expires, this agreement will automatically renew for successive one-year periods unless otherwise specified in the service order until terminated by either party on 28-days advance written notice before the expiration of the then-current term.

16.2   **Termination**

16.2(A)   *Termination for Convenience; Early Termination Fee*. Either party may terminate this agreement for convenience by giving written notice at least 28 days before the expiration of the then-current term. If Customer terminates this agreement for convenience more than 28 days before the expiration of the current term, Customer may elect to continue the services until the expiration of the current term or terminate the services before the end of the current term. Customer acknowledges that MojoHost based the amount of the monthly recurring fee for services on Customer's agreement to pay the monthly recurring fee for the entire term of each service order. Customer acknowledges that MojoHost's damages from any termination before the end of the current term is difficult to ascertain. For that reason, if Customer elects to terminate the services before the end of the current term, Customer will pay MojoHost the amount due for the remainder of the current term within five days after the effective date of the termination. Thus, Customer must pay for the entire current term regardless when Customer terminates this agreement and regardless whether Customer uses the services for the entire current term. Both parties acknowledge that this provision establishes liquidated damages and is not intended as a penalty.

16.2(B)   *Termination for Breach*. MojoHost may terminate this agreement immediately on notice if:

16.2(B)(1)   MojoHost discovers that Customer provided MojoHost with inaccurate or incomplete account information or inaccurate or incomplete information about Customer's proposed use of the services;

16.2(B)(2)   If Customer is an individual, Customer was not at least 18-years old or did not have the legal capacity to enter into this agreement, install, or accept services when Customer submitted the order, or if Customer is an entity, the individual submitting the order for Customer did not have the legal right or authority to enter into this agreement, install, or accept services on behalf of Customer;

16.2(B)(3)   Customer failed to timely pay an invoiced amount, and Customer does not pay the undisputed overdue amount within five days of the due date;

14

16.2(B)(4)  Customer's use of the services or a customer end user's use of the customer offering violates this agreement, and Customer fails to remedy this violation within five days of MojoHost's written notice;

16.2(B)(5)  Customer or a customer end user violates the AUP;

16.2(B)(6)  Customer's account has been suspended for 30 days or more;

16.2(B)(7)  Customer has multiple violations of this agreement; or

16.2(B)(8)  Customer fails to comply with any other provision of this agreement and does not remedy the failure within 30 days of MojoHost's notice to Customer describing the failure.

MojoHost will notify Customer in writing of termination under this section unless MojoHost determines, in its reasonable commercial judgment, that a termination on shorter or contemporaneous notice is necessary to protect its or its other customers from operational, security, or other risks. MojoHost will deem a breach of the flow-through provision as a breach of this agreement.

16.3  *Effect of Termination; Access to Customer Content*

16.3(A)  On termination of this agreement, Customer must discontinue use of the services and relinquish use of the IP addresses and server names assigned to Customer by MojoHost and any other materials provided to Customer by MojoHost for the services, including pointing the DNS for Customer domain names away from the services. MojoHost will have no obligation to provide any transition services or access to data except as expressly stated in this agreement. Termination of this agreement will not affect the right of MojoHost to receive or recover any fees or other charges Customer owed to MojoHost before termination, as well as all fees or other charges Customer owed for the remainder of the then-current term.

16.3(B)  The deletion of customer content is automatic on termination of this agreement. Thus, unless MojoHost determines otherwise, Customer will not have access to customer content, and MojoHost may immediately erase or delete customer content from its computer infrastructure after the effective date of termination of this agreement.

## 17. Confidentiality

17.1  Each party will hold in confidence information relating to the other that is known to be confidential or proprietary, or which a party has clearly marked as confidential or proprietary. A party will not disclose or use the other party's confidential information unless disclosure or use is necessary to the performance of the services.

15

17.2    The obligations of confidentiality in section 17.1 will not apply to (1) information that is independently developed by the nondisclosing party, (2) lawfully becomes a part of the public domain, or (3) of which the nondisclosing party gained knowledge or possession free of any confidentiality obligation.

17.3    MojoHost may disclose information, including information that Customer, or customer end users, may consider confidential, in order to comply with a court order, subpoena, summons, discovery request, warrant, regulation, or governmental request. MojoHost assumes no obligation to inform Customer, or a customer end user, that MojoHost has provided the information according to a legal request. In some cases, the law may prohibit MojoHost from giving notice. MojoHost may also disclose this information when it is necessary for it to protect its business, or others, from harm.

18.    **U.S. Government Customers and U.S. Government Rights**

18.1    MojoHost provides services for ultimate federal government end use solely under the following license rights to use, modify, reproduce, release, perform, display, or disclose: Government technical data and software rights related to the services include only those rights customarily provided to the public as defined in this agreement. This customary commercial license is provided under the Federal Acquisition Regulation ("*FAR*") at 48 C.F.R. 12.211 (Technical Data) and 48 C.F.R. 12.212 (Software) for civilian agencies of the federal government, and, for Department of Defense transactions, the Defense Federal Acquisition Regulation Supplement ("*DFARS*") at 48 C.F.R. 252.227-7015 (Technical Data – Commercial Items), 48 C.F.R. 227.7202-3 (Rights in Commercial Computer Software or Computer Software Documentation).

18.2    This U.S. Government Rights clause—consistent with 48 C.F.R. 12.211, 48 C.F.R. 27.212 (federal civilian agencies), or 48 C.F.R. 227.7202-4 (DoD agencies)—is in lieu of, and supersedes, any other FAR, DFARS, or other clause or provision that addresses federal governmental rights in computer software, computer software documentation, or technical data related to any services provided under this agreement.

18.3    If a government agency has a need for rights not conveyed under this section, it must negotiate with MojoHost to determine if acceptable terms for transferring those rights exist, and if so, MojoHost must agree to a mutually acceptable written addendum to this agreement specifically conveying those rights.

19.    **Equipment**

19.1    MojoHost is not responsible for loss or damage to Customer's equipment and property (if any) stored or installed in a MojoHost data center facility or other MojoHost location. Customer will maintain insurance coverage on its equipment and property stored or installed at a MojoHost data center facility or other MojoHost location that covers any type of loss and includes a waiver of subrogation clause. MojoHost will not be liable for damage to or loss of any of Customer's equipment resulting from any cause, other than MojoHost's gross negligence or willful misconduct and then only in an amount not to exceed the replacement value of the damaged equipment, not to exceed the limits stated above. On termination of this

agreement, Customer must arrange with MojoHost to remove its equipment from any MojoHost data center facility or other MojoHost location within 30 days of the termination of this agreement. If Customer fails to do so, Customer forfeits this equipment to MojoHost and MojoHost may dispose of this equipment without any liability to Customer, although MojoHost may recover any reasonable costs of disposition from Customer and Customer will reimburse MojoHost for these costs promptly on receipt of an invoice.

19.2    Customer will have no interest in any equipment supplied by MojoHost other than the right to use that equipment during the term while payments are current. Customer will be liable to MojoHost for any damage to this equipment caused by Customer or Customer's representatives, agents, employees, or contractors.

20. **Miscellaneous**

20.1    *Insurance*. Each party will maintain commercial general liability, property, casualty, and business interruption insurance with individual policy limits of not less than $1,000,000 per occurrence. Customer's insurance will be primary over MojoHost's insurance. Customer waives, and will require its insurers to waive, any rights of subrogation against MojoHost, its agents, directors, and employees.

20.2    *Assignment and Delegation*. MojoHost may assign any rights or delegate any performance under this agreement without notice to or consent by Customer. Customer may not assign any rights or delegate any performance under this agreement, except with the advance written consent of MojoHost. All Customer assignments of rights are prohibited under this section, whether they are voluntary or involuntary, by merger, consolidation, dissolution, operation of law, or any other manner. For purposes of this section, (1) a "change of control" is deemed an assignment of rights; and (2) "merger" refers to any merger in which Customer participates, regardless of whether it is the surviving or disappearing entity. Any purported Customer assignment of rights or delegation of performance in violation of this section is void.

20.3    *Waiver*. If a party fails to require the other to perform any term of this agreement, that failure does not prevent that party from later enforcing that term. If a party waives the other's breach of a term, that waiver is not treated as waiving a later breach of that term. No waiver by any party of any of the provisions of this agreement will be effective unless in writing and signed by the waiving party. The parties may waive compliance with this provision only in a writing signed by both parties.

20.4    *Severability*. If any provision of this agreement is determined to be invalid, illegal, or unenforceable, the remaining provisions of this agreement remain in full force, if the essential terms of this agreement for each party remain valid, binding, and enforceable.

20.5    *Notices*

17

20.5(A)  *Billing Disputes*. Customer must submit a dispute of any invoiced charges to MojoHost by email at billing@MojoHost.com or at any other address MojoHost specifies in writing for addressing billing disputes.

20.5(B)  *Discontinuing Service*. Customer must submit written notice to discontinue a service to MojoHost by email at billing@MojoHost.com or at any other address MojoHost specifies in writing for giving notice of discontinuing service.

20.5(C)  *Other Matters*. All other notices and other communications required or permitted under this agreement must be in writing and must be delivered personally or sent by certified or registered mail, or by overnight courier, postage prepaid, to the party's address listed below:

**MojoHost:**                                          **Customer:**

Easy Online Solutions, Ltd.                 _____
Attn: President                                    _____
30300 Telegraph Rd., Ste. 300             _____
Bingham Farms, MI 48025                    _____

A party may change this address by notice to the other party as stated in this agreement. A notice is considered as having been given (1) on the day of personal delivery, or (2) two days after the date of mailing. Notices must be given in the English language.

20.6  ***Cumulative Remedies***. All rights and remedies provided in this agreement are cumulative and not exclusive, and the assertion by a party of any right or remedy will not preclude the assertion by the party of any other rights or the seeking of any other remedies available at law, in equity, by statute, in any other agreement between the parties, or otherwise.

20.7  ***Legal Costs and Fees***. If a party breaches this agreement, the breaching party will reimburse the nonbreaching party for all actual legal costs and fees incurred in enforcing this agreement.

20.8  ***Choice of Law***. The parties have signed and entered into this agreement in the State of Michigan. The laws of the State of Michigan—without giving effect to its conflicts of law principles—govern all matters arising out of or relating to this agreement, including its validity, interpretation, construction, performance, and enforcement.

20.9  ***Designation of Forum; Waiver of Forum Non Conveniens***. Except as provided in section 13, a party bringing a legal action or proceeding against any other party arising out of or relating to this agreement or the transactions it contemplates will bring the legal action or proceeding in the United States District Court for the Eastern District of Michigan or in any court of the State of Michigan where jurisdiction and venue is proper. Each party consents to the exclusive jurisdiction of (1) the United States District Court for the Eastern District of Michigan and its appellate courts, and (2) any

18

court of the State of Michigan where jurisdiction and venue is proper and its appellate courts, for all legal actions and proceedings arising out of or relating to this agreement or the transactions it contemplates. Each party acknowledges that the exclusive choice of forum stated in this section does not prohibit the enforcement of any judgment obtained in that forum or any other appropriate forum.

Each party waives (1) any objection which it may now or later have to the laying of venue of any legal action or proceeding arising out of or relating to this agreement brought in any court of the State of Michigan, or the United States District Court for the Eastern District of Michigan, and (2) any claim that any action or proceeding brought in any of these courts has been brought in an inconvenient forum.

20.10   ***Export Matters.*** If Customer chooses to use these services, Customer does so on Customer's own initiative and is responsible for complying with applicable laws. Customer will comply with all restrictions and regulations of the U.S. Department of Commerce and any other United States or foreign agencies and authorities regarding Customer's and customer end users' use of these services. Customer will not, in violation of any laws, transfer, or authorize the transfer of, any services (1) into, or for the benefit of, an entity located in any U.S. or U.N. embargoed countries; or (2) to anyone on the U.S. Treasury Department's List of Specially Designated Nationals, or the U.S. Commerce Department's Table of Denial Orders or Entity List of proliferation concern, or the U.S. State Department's Debarred Parties List. By using these services, Customer states that Customer and customer end users are not located in, under the control of, or a national or resident of any of these countries or on any list. In addition, Customer and customer end users will not use the services for the development, design, manufacture, production, stockpiling, or use of nuclear, chemical, or biological weapons; weapons of mass destruction; or missiles; in a country listed in Country Groups D:4 and D:3, as stated in Supplement No. 1 to the Part 740 of the United States Export Administration Regulations. Customer assumes responsibility for compliance with laws applicable to export, re-export, or import of products, technology, or technical data provided under this agreement and for obtaining required export and import authorizations. Customer and customer end users will not transfer to or through the services any data, materials, or other items controlled for export under the International Traffic in Arms Regulations ("***ITAR Data***") or other applicable laws unless MojoHost has agreed to the transfer and (1) Customer has provided MojoHost at least 10 days' advance written notice that ITAR Data will be transferred to or through the services, (2) Customer or customer end user has received advance written authorization from the U.S. Government to transfer the ITAR Data to MojoHost, and (3) Customer agrees to help MojoHost to enable it to obtain U.S. Government permission. Customer is responsible, and will reimburse MojoHost, for all costs, expenses, or damages MojoHost incurs in connection with Customer and customer end user transfer of ITAR Data.

20.11   ***Force Majeure.*** Except for MojoHost's rights under sections 15 and 16, no party will breach this agreement if the failure to perform the obligation is due to an event beyond that party's control. Events beyond a party's control include: (1) significant failure of a part of the power grid, (2) sabotage, (3) denial of service attack, (4) significant failure

of the Internet, (5) natural disaster, (6) war, (7) riot, (8) insurrection, (9) epidemic, (10) strikes or other organized labor actions, (11) terrorism, or (12) other events of a magnitude or type for which precautions are not generally taken in the industry. The party suffering a force majeure event must give prompt written notice to the other party, stating the period the occurrence is expected to continue, and will use diligent efforts to end the failure or delay and ensure the effects of the force majeure event are minimized. However, if the force majeure event continues beyond 30 days, the performing party may elect to terminate this agreement without incurring any liability.

20.12    **Feedback.** MojoHost encourages Customer to provide feedback about the services. However, MojoHost will not treat as confidential any suggestion or idea provided by Customer, and nothing in this agreement or in the parties' dealings arising out of or related to this agreement will restrict MojoHost's right to use, profit from, disclose, publish, or otherwise exploit any feedback, without compensation to Customer.

20.13    **Third-Party Beneficiaries.** This agreement does not and the parties do not intend it to confer any rights or remedies on any person other than the parties to this agreement. Unless otherwise agreed in writing, MojoHost will provide support only to Customer. MojoHost will not provide support to a customer end user, customer affiliate, third party, or third party affiliate to whom Customer provides access to use the services or the customer offering.

20.14    **Relationship of the Parties.** The parties' relationship is that of independent contractors and not business partners. Nothing in this agreement creates a partnership, joint venture, agency, franchise, or employment relationship between the parties and the parties expressly disclaim the existence of any of these relationships between them. Neither of the parties is the agent for the other, and neither party has the right to bind the other to any agreement with a third party.

20.15    **Common Carrier.** MojoHost and Customer agree that MojoHost (1) is solely acting as a common carrier in its capacity of providing services under this agreement, (2) is not a publisher of any material or information, and (3) has no right to edit or censor the material at the servers in use by the Customer. MojoHost is not responsible nor preapproves any of Customer's customer content. MojoHost will consider all material Customer submits for publication publicly accessible. MojoHost does not screen in advance Customer's material submitted to MojoHost for publication. MojoHost's publication of material submitted by Customer does not create any express or implied approval by MojoHost of this material, nor does it indicate that this material complies with the terms of this agreement.

20.16    **Publicity; Marketing.** MojoHost may reference Customer's entering into this agreement and its status as a customer in its marketing materials and in sales presentations. Subject to MojoHost's marketing rights, neither party may issue a news release, public announcement, advertisement, or other form of publicity relating to this agreement or the services without the advance written approval of the other party. Customer will direct any request for approval to MojoHost's Legal Department. Customer will not (1) market to customer end users or prospective customer end users

20

using MojoHost's name, (2) represent to customer end users or prospective customer end users that they are or will become MojoHost customers, or (3) indicate to customer end users or prospective customer end users that Customer has any relationship with MojoHost other than that resulting from Customer's purchase of services.

20.17   *Counterparts.* The parties may sign this agreement in any number of counterparts. The parties will deem each counterpart an original and all counterparts, when taken together, will form the same agreement.

20.18   *Signatures; Electronic Signatures.* The parties may sign this agreement by fax or electronically instead of an original signature. The parties will treat fax or electronic signatures as original signatures that bind them to this agreement. Customer agrees that any affirmation, assent, or agreement Customer transmits through the website in response to a prompt is binding. Customer understands that when Customer clicks on an "I agree," "I consent," or other similarly worded "button" or entry field using a mouse, keystroke, or other computer device, Customer's agreement or consent will be legally binding and enforceable, and constitute the legal equivalent of Customer's handwritten signature.

20.19   *Successors and Assigns.* This agreement inures to the benefit of, and is binding on, the parties and their respective successors and assigns. This section does not address, directly or indirectly, whether a party may assign its rights or delegate its performance under this agreement.

20.20   *Further Assurances.* Each party will take any actions, or sign any documents, necessary to effect or facilitate the purpose of this agreement.

20.21   *Voluntary Agreement.* The parties have signed this agreement voluntarily and for valid reasons, and in doing so do not and have not relied on any statement or promise by any other party, except those expressed in this agreement. The parties acknowledge that they have carefully read this agreement, discussed it with their attorneys or other advisors, understand all of the terms, and agree to be bound by it. The parties have relied on the advice of their attorneys or other advisors about the terms of this agreement, and waive any claim that the terms should be construed against the drafter.

20.22   *Entity Authority.* Each person signing this agreement on behalf of any entity states that he or she has full authority to sign this agreement on behalf of the entity and that party has taken all necessary actions. In addition, each entity party states that this agreement does not violate or breach that party's articles of incorporation, articles of organization, bylaws, operating agreement, or any other agreement or law by which that party is bound.

20.23   *Survival.* All provisions of this agreement that by their nature are intended to survive termination of this agreement will survive termination of this agreement.

20.24   *Language.* The official language of this agreement will be the English language and no translation into any other language may be used in its interpretation. All services,

support, notices, designations, specifications, and communications will be provided in the English language.

20.25 **_Entire Agreement_**. This agreement makes up the sole agreement of the parties concerning its subject matter. It supersedes all earlier written or oral discussions, negotiations, proposals, undertakings, understandings, and agreements between the parties concerning the transactions contemplated in this agreement. No party may use any of the earlier or contemporaneous negotiations, preliminary drafts, or previous versions of this agreement leading up to its signature and not stated in this agreement to construe or affect the validity of this agreement. No conditions, definitions, representations, or warranties concerning the subject matter other than as expressly stated in this agreement will bind either party. Each party acknowledges that no party made or relied on a representation, inducement, or condition not stated in this agreement.

20.26 **_Amendment._** MojoHost may change the terms of this agreement on one or more occasions. MojoHost will use commercially reasonable efforts to notify Customer through the website of any changes. Changes will become effective when posted on the website. However, changes will not apply to ongoing disputes or to disputes arising out of events occurring before the posted changes. It is Customer's responsibility periodically to check the website for changes. If Customer continues to use the services following any change, MojoHost will deem Customer's continued use as acceptance of the change unless Customer notifies MojoHost in writing of Customer's disagreement within 15 days of the change. In Customer's written notice to MojoHost, Customer must identify each change Customer disagrees with and the nature of Customer's disagreement with each change identified. MojoHost will contact Customer within the next five business days to address Customer's issues and try to reach a mutually amicable resolution. If MojoHost is unable to resolve Customer's disagreement with the changes, MojoHost may terminate this agreement effective immediately (without any further charge to Customer) or terminate the agreement effective at the end of the then-current term without the changes taking effect. MojoHost must approve in writing any changes requested by Customer to any of the terms of this agreement.

21. **Usages.** In this agreement, unless otherwise stated or the context otherwise requires, the following usages apply:

21.1 Actions permitted under this agreement may be taken at any time and from time to time in the actor's sole discretion.

21.2 References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

21.3 References to numbered sections in this agreement also refer to all included sections. For example, references to section 6 also refer to sections 6.1, 6.1(A), etc.

21.4    In computing any period of time under this agreement, the day of the act, event, or default from which the designated period of time begins to run will be included, unless it is a Saturday, Sunday, or legal holiday. In that case, the period will begin to run on the next day that is not a Saturday, Sunday, or legal holiday, and the period will run until the end of the next day afterwards that is not a Saturday, Sunday, or legal holiday.

21.5    In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

21.6    References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

21.7    "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

21.8    "Including" means "including, but not limited to."

21.9    Garner's Modern American Usage (3d ed. 2009) applies to interpret usage, grammar, and syntax not otherwise addressed by this section.

22. **Definitions.** As used in this agreement, the following definitions—whether or not capitalized—apply:

22.1    "*Acceptable Use Policy*" or "*AUP*" means the acceptable use policy available on the website.

22.2    "*Account information*" means billing information, contact information, payment information, and any other information of a similar nature provided to MojoHost by Customer.

22.3    "*ACH*" means Automated Clearing House.

22.4    "*Affiliate*" means any legal entity that a party controls, that controls a party, or that is under common control with a party. For this definition, "control" means the ability to affect—directly or indirectly—the policies, management, and operations of an entity through the beneficial ownership of the securities or shares entitled to vote in the election of the directors—or, in the case of an entity that is not a corporation, of the election of the corresponding management authority—in the entity of (1) more than 50% of the securities or shares, or (2) the lesser percentage of securities or shares as is the maximum ownership permitted in the country where the entity exists.

22.5    "*Agreement*" means (1) this master services agreement ("MSA"), (2) SLA, (3) privacy policy, (4) IP address policy, (5) AUP, (6) service order, and (7) any relevant appendices. If any conflict or inconsistency exists between or among these documents, the documents will govern in the following order of priority: (1) service order; (2) SLA;

(3) any relevant appendices to the MSA; (4) MSA; (5) AUP; (6) privacy policy; and (7) IP address policy.

22.6  "*Anniversary billing date*" means the date of the month of the effective date except as provided in this definition. For example, if the effective date is July 15, 2015, then the anniversary billing date is the 15th of the month. If the anniversary billing date is a day in a month that does not exist in each month (e.g., the 31st), then the anniversary billing date will be the last day of the month. For example, if the anniversary billing date is the 31st, then in February, April, June, September, and November, the anniversary billing date will be February 28 or 29, depending on the year, and the 30th for April, June, September, and November.

22.7  "*Bandwidth*" means the measured rate of bits per second transferred from MojoHost from and to Customer's equipment.

22.8  "*Burst bandwidth*" means the amount of bandwidth in excess of the minimum bandwidth commitment.

22.9  "*Business day*" means Monday through Friday, 8:00 a.m. to 5:00 p.m., Eastern Standard Time, excluding any U.S. Federal holiday.

22.10  "*Commercially reasonable efforts*" mean the efforts that a prudent person desirous of achieving a result would use in similar circumstances to achieve that result as expeditiously as possible. However, a person required to use commercially reasonable efforts under this agreement will not be required to take actions that would result in a material adverse change in the benefits to that person under this agreement or to dispose of or make any change to its business, expend any material funds, or incur any other material burden.

22.11  "*Confidential information*" means generally any information that is maintained in confidence by or on behalf of either party (each, a disclosing party) and made available to another party (each, a receiving party), by or on behalf of the disclosing party, in connection with the parties' dealings under this agreement, during the term of this agreement. However, a disclosing party will not need to designate information as confidential information if the nature of the information makes it generally considered confidential commercially, which includes information that relates to: (1) trade secrets or know-how; (2) finance or accounting; (3) technology, research, or development; (4) internal processes or procedures; (5) business, operations, or planning of it; (6) sales or marketing strategies; (7) the terms of any agreement, and the discussions, negotiations, or proposals related to it, including this agreement. MojoHost's confidential information includes unpublished pricing information and terms of service, audit reports, compliance and certification reports, security reports, product development plans, data center designs, server configuration designs, and other proprietary information. Confidential information does not include Customer's customer content that is hosted, stored, or transmitted using the services.

22.12    "*Content delivery network*" or "*CDN*" means the network comprised of the physical hardware and software used by MojoHost to deliver customer content such as digital audio, video, or computer software over the Internet.

22.13    "*Customer*" means the individual or entity that (1) orders services; (2) pays for the services; and (3) agrees to the terms of this agreement by clicking or checking the box presented with this agreement, installing or using the services, or electronically or manually signing this agreement.

22.14    "*Customer content*" means all data, software, and information, including data text, software, scripts, video, sound, music, graphics, and images that Customer or its affiliates create, upload, or transfer in connection with the services.

22.15    "*Customer end user*" means a third party or its affiliate that is an end user of a customer offering.

22.16    "*Customer offering*" means services created by Customer based in whole or in part on the services, which authorized third parties use.

22.17    "*Data center*" means a MojoHost data center facility or facilities.

22.18    "*Due date*" means the recurring date on which fees are due as stated in the service order.

22.19    "*Effective date*" means the date on which the Customer accepts this agreement by clicking or checking the box presented with this agreement, installing or using the services, or electronically or manually signing this agreement.

22.20    "*EFT*" means electronic fund transfer, also known as direct debit or BACS payment.

22.21    "*Feedback*" means any suggestions, comments, improvements, or other feedback about the services that Customer or any affiliate provides to MojoHost directly or indirectly through either a MojoHost-controlled website or email address.

22.22    "*Fees*" means those amounts due to MojoHost in exchange for the performance of the services as stated in the service order.

22.23    "*Flow-through provisions*" mean the terms of agreements for services provided by third parties that are included in this agreement as required by providers of those services. The flow-through provisions apply only to the relevant services provided by third parties. The services provided by third parties are part of the services and are subject to the terms of this agreement as well as the flow-through provisions.

22.24    "*Initial term*" means the one-year period beginning on the effective date unless otherwise specified in the service order.

22.25    "*Intellectual property*" means inventions, concepts, techniques, plans, designs, methodologies, procedures, programs, approaches, ideas, know-how, computer

25

software, technology, writings, graphics, other works of authorship, trademarks, service marks, logos, trade names, and (in the case of the last four) the goodwill associated with each.

22.26  "*Intellectual-property right*" means any intellectual-property right or industrial-property right existing by law at the relevant time anywhere in the world, including the right to sue for present or past infringement of it. "Intellectual-property right" includes: (1) all rights (whether registered or unregistered) in: trade secrets; confidential information; inventions, patents; trademarks, service marks, and trade names; Internet domain names; copyrights; designs; rights of publicity; and mask works; (2) any application then pending for an intellectual-property right, including an application for a patent or to register a copyright or trademark; (3) any right to file an application for an intellectual-property right; and (4) any right to claim priority for an application for an intellectual-property right.

22.27  "*Internet protocol*" or "*IP*" means the basic rules and encoding specifications for sending data on the Internet.

22.28  "*IP address policy*" means the policy available on the website governing the use and provision of any IP addresses.

22.29  "*Law*" means all applicable provisions of a constitution, statute, regulation, ordinance, rule, judgment, order, or other obligation, requirement, or prohibition having legally-binding effect at the relevant time.

22.30  "*Minimum bandwidth commitment*" means the minimum amount of bandwidth that MojoHost charges to Customer each month at the base price listed in the service order (irrespective e of actual use in a given month).

22.31  "*MojoHost*" means Easy Online Solutions, Ltd., a Michigan corporation, doing business as MojoHost.

22.32  "*Parties*" means MojoHost and Customer, each individually a "party."

22.33  "*Payment method*" means the instrument acceptable to MojoHost for payment of fees to MojoHost.

22.34  "*Person*" means an individual or an entity (including partnerships and other associations, whether incorporated or unincorporated).

22.35  "*Personally identifiable information*" or "*PII*" means information that can be used to identify, contact, or locate a single person or that can be used with other sources to uniquely identify a single individual.

22.36  "*Privacy policy*" means the privacy policy available on the website.

22.37  "*Private network*" means the portion of MojoHost's network that provides Customer with secure private network connectivity from Customer's private backend network

directly to Customer servers and data storage devices on MojoHost's internal network and to other services.

22.38  "*Public network*" means the portion of MojoHost's network that provides public Internet access to Customer servers and data storage services on MojoHost's network.

22.39  "*Renewal term*" means the year-to-year period (unless otherwise specified in the service order) beginning after the last day of the initial term or the renewal term until terminated.

22.40  "*Service order*" means orders for specific services on MojoHost's standard service order forms that may include a new order for a service or an upgrade or a downgrade of a service. Each service order will be issued and accepted by the parties according to the terms of this agreement. Each service order will contain specific provisions for fees, payment terms, features, locations, descriptions of service, duration, and other terms as appropriate. Service orders do not apply to third-party services.

22.41  "*Services*" mean those services MojoHost will provide to Customer as listed in the service order or added by Customer in the future.

22.42  "*Service level agreement*" or "*SLA*" means the service level agreement available on the website.

22.43  "*SLA credits*" mean the credits for applicable qualifying service downtime as described in the SLA.

22.44  "*Term*" means the initial term plus any renewal term.

22.45  "*Third party*" means an individual or an entity that is not a Customer, MojoHost, or an affiliate of MojoHost.

22.46  "*Third-party services*" mean services that third parties provide directly to Customer. The definition of "services" does not include third-party services.

22.47  "*Third-party service agreements*" or "*TPS agreements*" mean agreements for third-party services that are directly between the Customer and the provider of the third-party services. These agreements are separate and independent from this agreement and MojoHost is not a party to these agreements.

22.48  "*Website*" means www.MojoHost.com (or any other location as MojoHost may designate).

**[Signatures on Next Page]**

27

By clicking or checking the box presented with this agreement, signing the service order, or installing or using the services, Customer agrees that (1) Customer has accepted this agreement in its entirety, (2) agrees to be bound by this agreement (as amended on or more occasions as provided in section 20.26), (3) if Customer is an individual, then the individual states that the individual has the legal right to enter into this agreement and if Customer is an entity, then the individual who agrees to this agreements state that the individual has the authority to bind the entity, and (4) this agreement constitutes a binding and enforceable obligation between MojoHost and Customer. The most current version of this agreement is located on the website at http://www.mojohost.com/legal. If Customer does not agree with all the terms of this agreement and does not agree to be bound by this agreement, please do not click or check the box presented with this agreement, sign the service order, or install or use the services.

The parties signed this agreement on the effective date. Despite the signature blocks below, MojoHost and Customer acknowledge that they are already bound to the terms of this agreement and that manually signing this agreement is for record keeping purposes only. Manually signing this agreement does not amend or supersede any of the existing terms of this agreement.

**MojoHost:**

**Easy Online Solutions, Ltd.,**
a Michigan corporation

By: _____
_____
Its: _____

**Customer:**

_____
_____

*Or*

_____,
a _____

By: _____
_____
Its: _____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

18400 Von Karman Avenue, Suite 800
Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF BRAD MITCHELL IN SUPPORT OF MOTION FOR ADEQUATE PROTECTION OF AN INTERNET SERVICE PROVIDER AS A UTILITY PURSUANT TO 11 U.S.C. § 366**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 13, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) March 13, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 13, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☑  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 13, 2018 | Danielle Cyrankowski | /s/ Danielle Cyrankowski |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
BN 32166078v1

**F 9013-3.1.PROOF.SERVICE**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Ron Bender**    rb@lnbyb.com
- **Linda F Cantor**    lcantor@pszjlaw.com, lcantor@pszjlaw.com
- **Russell Clementson**    russell.clementson@usdoj.gov
- **James A Dumas**    jdumas@dumas-law.com, jdumas@ecf.inforuptcy.com
- **Allan B Gelbard**    xxxesq@aol.com, Allan@GelbardLaw.com
- **David Keith Gottlieb (TR)**    dkgtrustee@dkgallc.com,
  dgottlieb@iq7technology.com,rjohnson@dkgallc.com,akuras@dkgallc.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Alan I Nahmias**    anahmias@mbnlawyers.com, jdale@mbnlawyers.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- **S Margaux Ross**    margaux.ross@usdoj.gov
- **Michael St James**    ecf@stjames-law.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- **Cathy Ta**    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;lisa.spencer@bbklaw.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Michael H Weiss**    mw@weissandspees.com, lm@weissandspees.com
- **Christopher K.S. Wong**    christopher.wong@arentfox.com
- **Beth Ann R Young**    bry@lnbyb.com


**SERVED BY UNITED STATES MAIL**:

S Margaux Ross
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Debtor (Lead)
Penthouse Global Media, Inc., et al.
8944 Mason Ave.
Chatsworth, CA 91311

The Official Committee of Unsecured Creditors
c/o Hamid R. Rafatjoo
Raines Feldman LLP
1800 Avenue of the Stars
12th Floor
Los Angeles, CA 90067

**SERVED BY PERSONAL DELIVERY:**

Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**
BN 32166078v1