1  Linda F. Cantor (CA Bar No. 153762)
2  Jeffrey L. Kandel (CA Bar No. 115832)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California  90067-4100
4  Telephone: 310/277-6910
   Facsimile:  310/201-0760
5  lcantor@pszjlaw.com
   jkandel@pszjlaw.com
6  Counsel for David K. Gottlieb, Chapter 11 Trustee

7                  UNITED STATES BANKRUPTCY COURT
8                  CENTRAL DISTRICT OF CALIFORNIA
                   SAN FERNANDO VALLEY DIVISION
9

| | |
|---|---|
| 10  In re: | Case No. 1:18-bk-10098-MB |
| 11      PENTHOUSE GLOBAL MEDIA, INC., a | Chapter 11 |
| 12      Delaware corporation | Jointly Administered With: |
| 13      Debtor. | Case No. 1:18-bk-10099-MB, Case No. 1:18-bk-10101-MB, Case No. 1:18-bk-10102-MB, |
| In re: | Case No. 1:18-bk-10103-MB, Case No. 1:18-bk-10104-MB, Case No. 1:18-bk-10105-MB, |
| 14  PENTHOUSE GLOBAL BROADCASTING, | Case No. 1:18-bk-10106-MB, Case No. 1:18-bk-10107-MB, Case No. 1:18-bk-10108-MB, |
| 15  INC., PENTHOUSE GLOBAL LICENSING, INC., PENTHOUSE GLOBAL DIGITAL, INC., | Case No. 1:18-bk-10109-MB, Case No. 1:18-bk-10110-MB, Case No. 1:18-bk-10111-MB, |
| 16  PENTHOUSE GLOBAL PUBLISHING, INC. GMI ONLINE VENTURES, LTD., PENTHOUSE | Case No. 1:18-bk-10112-MB and Case No. 1:18-bk-10113-MB |

17  DIGITAL MEDIA PRODUCTIONS, INC., TAN
    DOOR MEDIA, INC., PENTHOUSE IMAGES
18  ACQUISITIONS, LTD., PURE
    ENTERTAINMENT TELECOMMUNICATIONS,        **NOTICE OF MOTION AND MOTION OF**
19  INC., XVHUB GROUP, INC., GENERAL MEDIA    **DAVID K. GOTTLIEB, CHAPTER 11**
    COMMUNICATIONS, INC., GENERAL MEDIA       **TRUSTEE, FOR ORDER CONVERTING**
20  ENTERTAINMENT, INC., DANNI ASHE, INC.     **CASES TO CHAPTER 7 NUNC PRO**
                                              **TUNC TO MARCH 6, 2018;**
21  STREAMRAY STUDIOS, INC.,                  **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES AND DECLARATION OF**
22      ☒ Affects All Debtors                 **DAVID GOTTLIEB AND WALTER**
                                              **BOWSER IN SUPPORT THEREOF**
23      ☐ Affects:
        ☐ Affects
24      ☐ Affects                             Hearing:
        ☐ Affects                             Date:     TO BE DETERMINED
25      ☐ See attached for additional Debtors Time:     TO BE DETERMINED
                                              Place:    Courtroom 303
26                                                      21041 Burbank Blvd.
27                                                      Woodland Hills, CA  91367
28

DOCS_LA:313495.5 32277/001

1      **TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY**

2 **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTORS, THE**

3 **SECURED CREDITOR, PARTIES REQUESTING SPECIAL NOTICE AND PARTIES IN**

4 **INTEREST:**

5      **PLEASE TAKE NOTICE** that David K. Gottlieb, the duly appointed chapter 11 trustee

6 ("Trustee") for the estate of Penthouse Global Media, Inc. and its debtor subsidiaries (collectively,

7 the "Debtors"), has filed the within motion ("Motion") for entry of an order converting these chapter

8 11 cases to cases under chapter 7 of the Bankruptcy Code, nunc pro tunc to March 6, 2018 (the

9 "Trustee Appointment Date"), the date of the Trustee's appointment. The grounds for the Motion

10 are that the Debtors are administratively insolvent and are operating at an ongoing loss, and there is

11 no reasonable likelihood of the Debtors' rehabilitation. The Trustee believes it is in the best interest

12 of these estates (collectively, "Estates") to operate the Debtors' businesses in a chapter 7 proceeding

13 until an auction can be held to sell the Debtors' assets and such sale is consummated. The Trustee

14 further believes that conversion nunc pro tunc to the Trustee Appointment Date is appropriate in

15 order to ensure payment of ordinary course expenses incurred by the Estates after the Trustee

16 Appointment Date and to properly compensate the professionals who are assisting the Trustee to

17 administer the Estates.

18      **PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion

19 and Motion, the accompanying Memorandum of Points and Authorities and the supporting

20 Declaration of Walter Bowser, a Director with the Province firm, proposed financial advisor to the

21 Trustee (the "Bowser Declaration") and the Declaration of David K. Gottlieb (the "Gottlieb

22 Declaration") attached hereto (collectively, the "Motion Pleadings"), the record in these cases and

23 any other evidence before the Court prior to or at the hearing on the Motion, and all matters of which

24 this Court may properly take judicial notice. If you wish to obtain a copy of the Motion Pleadings,

25 please contact the office of proposed counsel for the Trustee, attn.: Jeffrey L. Kandel by phone at

26 (310) 277-6910 or by e-mail at jkandel@pszjlaw.com.

27      **PLEASE TAKE FURTHER NOTICE** that the Trustee shall request that the Court hear the

28 Motion on an expedited basis. Once a hearing on the Motion has been set, the Trustee will send a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  separate notice to all creditors and known parties in interest advising them of the date and time of the

2  hearing on the Motion and the deadline for filing any response or opposition to the Motion.  The

3  failure to properly file and serve an opposition in accordance with the schedule set by the Court may

4  be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the

5  Motion.

6        **WHEREFORE**, the Trustee respectfully requests that this Court enter an order: (a)

7  converting these cases to cases under chapter 7 of the Bankruptcy Code, nunc pro tunc to March 6,

8  2018, and (b) granting such other and further relief as is just and proper under the circumstances.

9

Dated:    April 12, 2018              PACHULSKI STANG ZIEHL & JONES LLP

10

11                           By   */s/ Linda F. Cantor*

12                                Linda F. Cantor

13                                Proposed Counsel for David K. Gottlieb,
Chapter 11 Trustee

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

**A.    Background of the Debtors' Businesses**

Pursuant to the Debtors' First Status Report filed January 24, 2018 [Dkt. No. 55][1], the Debtors' primary assets are its intellectual property which includes Penthouse™, the iconic men's brand founded by Robert Guccione in 1965.  The lead Debtor in these cases is Penthouse Global Media, Inc. ("PGMI") which owns the shares of the fourteen other Debtor entities.  The sole shareholder of PGMI is Kelly Holland.  PGMI is comprised of four operating divisions: the broadcasting division (Penthouse Global Broadcasting, Inc. and its divisions General Media Entertainment Inc., Penthouse Digital Media, Inc. and Pure Entertainment Telecommunications), publishing (Penthouse Global Publishing, Inc.), licensing (Penthouse Global Licensing, Inc.) and digital (Penthouse Global Digital, Inc., operating websites).  Pursuant to their schedules of assets and liabilities, other Debtor subsidiaries of PGMI have no assets.  Debtors' secured creditor is Dream Media Corporation ("Dream Media"), assignee of ExWorks Capital Fund I, Ltd., which asserts a secured claim of approximately $10.4 million as of the petition date.  Unsecured trade debt is scheduled by the Debtors to be approximately $3,000,000 to $3,500,000.

**B.    Procedural Background of the Cases**

The Debtors commenced these cases by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 11, 2018.  On March 6, 2018, David K. Gottlieb was appointed chapter 11 trustee of the Debtors' Estates (*see* Docket No. 236) and has since, *inter alia*, met with Debtors' personnel, opened bank accounts, employed professionals (subject to court approval), conferred with creditors including Debtors' secured lender Dream Media and Debtors' landlord, reviewed the Court record in these Cases, analyzed the Debtor's financial condition and operating status, and assessed whether the Debtors can continue in operation.  Gottlieb Declaration at ¶4. *See also generally Initial Status Report By Chapter 11 Trustee Of*

---

[1] The Trustee respectfully requests that the Court take judicial notice of the pleadings filed in these cases pursuant to Federal Rule of Evidence 201.

*Penthouse Global Media, Inc., Et Al.; Declaration Of David K. Gottlieb* [Docket No. 244].

**C.**    **Operations and Accounting Matters**

The Trustee and his proposed financial advisors and counsel met extensively with the Debtors' CEO, Kelly Holland, and met with accounting staff regarding day-to-day operations. Bowser Declaration at ¶ 3. For the first five (5) weeks after the Trustee Appointment Date, David Roberts and Walter Bowser, members of the Trustee's proposed financial advisory firm Province, Inc. ("Province") worked full time on-site at the Debtors' premises on a daily basis (including weekends) reviewing and reconciling the Debtors' books and records, analyzing cash flow and developing projections. *Id.* at ¶3. This was a time intensive task because the Debtors' books and records were in disarray, for example:

a.    The historical records for 2016 and 2017 were incomplete and reportedly inaccurate. The prior CFO was terminated for cause in September 2017; the other accounting staff also resigned or otherwise ended their employment with the Debtors around this same time creating a vacuum of institutional knowledge within the accounting organization, which includes among other things, unfamiliarity with customers and vendors, and the chart of accounts. This sudden and extensive turnover of staff resulted in numerous recording errors and subsequent correcting adjustments when such errors were discovered. The accounting staff has limited availability because of family and other health-related issues. Each member of the current accounting staff has less than 6 months' tenure with the Debtors. *Id.* at ¶3.a.

b.    Many of the reports in the accounting system are out of synch because cash postings of collections against receivables; payment posting to payables; invoicing customers and entering vendor invoices into payables are not performed on a timely basis. *Id.* at ¶3.b.

c.    After the dismissal of the former CFO and in a race against the tax filing deadline, the Debtors engaged an outside accounting firm to assist them in filing their 2016 tax returns. To compile the accounting data required for the tax returns, this firm made multiple summarizing adjusting entries to the books that aggregated numerous transactions, which subsequently makes it impossible to review the details of these entries, consequently many historical details were lost that might have reduced the amount of time required to assess the situation. *Id.* at ¶3.c.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

d.    Province encountered hundreds of entries to the cash receipts and disbursements journal with blank descriptions for the payor, which required Province to resort to bank statements and invoices to test the accuracy of certain revenue streams in the cash projections. *Id.* at ¶3.d.

e.    Starting in November 2017, the Debtors' current accounting staff and CFO reconstructed much of and continue their efforts to reconstruct the books and records; however, the books and records have not been audited and given their history cannot be relied on at face value. *Id.* at ¶3.e.

f.    Given the state of the Debtors' general ledgers, source documents have to be reviewed to investigate many transactions. Province compiled cash receipts and disbursements from the Debtors' books and records. Although the amounts of the transactions are available and are believed to generally reconcile to the bank statements – many of the transactions, particularly cash receipts do not have names associated with them making it difficult to determine the nature of the transactions. To investigate, other reports or source documents need to be reviewed and analyzed. *Id.* at ¶3.f.

g.    Source files for vendors are frequently incomplete and in some cases cannot be located. *Id.* at ¶3.g.

h.    The Debtors did not establish a new set of books and records starting with the petition date to record post-petition activity. Fundamental reporting systems and processes for tracking cash, payables, and receivables had to be modified or established to meet the needs of the Trustee. *Id.* at ¶3.h.

i.    The Debtors use QuickBooks as their accounting system, which requires a separate data file for each of the five operational debtor entities. Because only one entity's data file can be open at a time, this causes excessive delay in recording transactions. *Id.* at ¶3.i.

j.    Because many payments are made by Penthouse Global Media, Inc., the accounting methods used by the company require extensive use of intercompany transactions. Again, because only one entity's data file can be open at a time, it is not unusual to find only one side of a transaction recorded on a certain entity, while the recording of the same transaction on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   the correspondent entity is waiting to be recorded. *Id.* at ¶3.j.

2         k.      It appears that after the departure of the former CFO and his staff, there has been

3   a general lack of a sense of ownership for the records from top to bottom and, on a day-to-day

4   basis, Debtors have maintained a reactive rather than proactive role in the management of their

5   accounting records. *Id.* at ¶3.k.

6         Based upon Province's lengthy and detailed analysis of the Debtors' books and

7   accounting records, including a review of 2017 revenues and expenses, bank statements, and

8   numerous discussions with Debtors' management, Province prepared cash flow projections for

9   the period March 7 through June 2018 (the "Projections"). A copy of the Projections is

10  appended to the Bowser Declaration as **Exhibit A**. As shown on the Projections, the Debtors are

11  not meeting their obligations as they come due on a post-petition basis, resulting in a diminution

12  of the value of the Debtors' assets.   Bowser Declaration at ¶4.

13        The Projections show that Debtors' ongoing expenses of operating their businesses

14  exceed the income generated by such operation.  Approximately $400,000 of post-petition

15  operating obligations incurred between January 11 and March 5, 2018 remain unpaid.

16  Professional fees incurred prior to the Trustee's appointment amount to approximately $305,755.

17  According to the Projections, the Debtors will lose approximately $732,000 over the next three

18  months.  Accordingly, there exists a substantial or continuing loss to or diminution of the estates.

19  Based upon the Debtors' current operations and as confirmed by the Projections, there is

20  currently no reasonable likelihood of rehabilitation of the Debtors' businesses. *Id.* at ¶5.

21        Based upon the Projections and his consultations with Province, the Trustee has

22  determined that there exists no reasonable prospect of rehabilitating the Debtors' operations

23  through a chapter 11 plan of reorganization.  Gottlieb Declaration at ¶9.

24  **D.    Use of Cash Collateral**

25        To address pressing operating needs, the Trustee and Dream Media agreed to the terms of

26  orders for use of cash collateral pursuant to budgets prepared by Province the Trustee's financial

27  advisors.  The Trustee requested and Dream Media consented to the Trustee's use of cash

28  collateral for the periods (a) March 13, 2018 through March 20, 2018, pursuant to *the Order*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  *Approving Trustee's Use of Cash Collateral Through March 20, 2018* [Dkt. No.248], (b) March

2  21, 2018 through March 28, 2018, pursuant to the *Order Approving Trustee's Continued Use of*

3  *Cash Collateral Through March 28, 2018* [Dkt. No.276]; and (c) March 29, 2018 through April

4  14, 2018 pursuant to the *Order Approving Trustee's Continued Use of Cash Collateral Through*

5  *April 14, 2018* [Dkt. No. 294].

6  **E.    Insurance**

7      The Estates' prior insurance policies terminated February 18, 2018 and were renewed by

8  the Debtors under a thirty (30) day binder until March 20, 2018, with the intent of financing the

9  premiums for those renewed policies.  Once the Trustee was appointed, he obtained authority on

10  an emergency basis to enter into an insurance premium financing agreement with AFCO

11  Acceptance Corporation to finance $85,676.43 of the $141,214.22 annual premium for the

12  renewed policies.  See *Order Approving Emergency Motion Of Chapter 11 Trustee Of Penthouse*

13  *Global Media, Inc. For Order Authorizing It To Enter Into Insurance Premium Finance*

14  *Agreement With AFCO Acceptance Corporation* dated March 16, 2018 [Dkt. No. 264].  Both

15  before and after obtaining authorization to finance Debtors' insurance, the Trustee's proposed

16  counsel had discussions with Debtors' insurance broker, Marsh, regarding the appointment of the

17  Trustee and its effect on coverage and pricing under the Debtors' various policies.  While the

18  terms and pricing of the policies for Auto, General Liability, Property and Workers

19  Compensation remained consistent with the proposed premium financing agreement, Marsh

20  informed the Trustee that Lloyds of London, the insurers for Media/Cyber liability coverage,

21  insisted on changing the terms of the policy, increasing the premium and requiring the posting of

22  $150,000 collateral to satisfy the self-insured retention obligation.[2]  Gottlieb Declaration at ¶6.

23      Since March 16, 2018, extensive negotiations have ensued between the Trustee's

24  professionals, Marsh and Lloyds of London over the policy terms, the length of coverage and the

25  insurer's collateral requirements, but Lloyds of London remained unwilling to drop its collateral

26  requirements without increasing the premiums (allegedly due to the Trustee's appointment).

27

28

---

[2] The Media/Cyber policy traditionally covers liability associated with the publishing, broadcasting and distribution of adult-related content issued by the insured, as well as privacy and security losses. Unlike the other policies, it is a claims made policy, and not an occurrence based policy.

DOCS_LA:313495.5 32277/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   During these negotiations, the other placed insurance has remained in place subject to the

2   payment of the premium due.  On April 4, 2018, the Trustee was informed that the estates'

3   general liability insurance would lapse for failure to pay unless the AFCO financing agreement

4   was signed and funded on April 5, 2018.  To prevent the loss of insurance, on April 5, 2018, the

5   Trustee agreed to pay the installment due under a revised premium financing agreement covering

6   Auto, General Liability, Property and Workers Compensation premiums due, but not the Lloyds

7   of London Media/Cyber liability policy.  The Trustee did not renew coverage for that policy

8   because Lloyds of London's failure to adhere to the original terms of the binder, the financial

9   burden of the new terms for payment, and the understanding from Marsh that this coverage had

10  had no prior claims in the last several years.  *Id.* at ¶7.

11         Upon conversion of these cases, any Media/Cyber liability claims would likely constitute

12  either pre-petition or chapter 11 pre-conversion administrative claims, were any to be made.  *Id.*

13  at ¶7.  After conversion of these Cases, the Trustee will seek approval to operate the Debtors

14  businesses under chapter 7 of the Bankruptcy Code for the limited period of time necessary to

15  conduct an auction process and consummate a sale of the Debtors' assets.  The Trustee will also

16  address the return of premiums to the extent permitted under the finance agreement.  *Id.* at ¶8.

17  **F.**    **Restructuring / Sale Prospects**

18         As discussed above, Province has determined that the Debtors are not meeting their

19  obligations as they become due and the estates are becoming increasingly administratively insolvent

20  during these cases.  Bowser Declaration at ¶¶4 - 5.  The Trustee cannot propose a chapter 11 plan

21  based on the Debtors' current and projected operating income.  Gottlieb Declaration at ¶9.  The

22  Trustee has been advised that certain parties have an interest in proposing a chapter 11 plan for the

23  Debtors.  Absent the submission of a feasible chapter 11 plan by a party or entity with evidence of

24  the ability to implement such plan in the near term, the Trustee cannot continue to operate these

25  increasingly insolvent chapter 11 estates.  *Id.*  Provided the Court grants the Motion, if a feasible

26  plan and disclosure statement are filed in the near future, these cases can always be reconverted to

27  chapter 11 to allow the plan process to proceed.  *Id.*

28         Because reorganization is not feasible, the Trustee will seek to sell the estates' assets.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Gottlieb Declaration at ¶10. Various parties have indicated an interest in purchasing the

2   Debtors' assets. The Trustee anticipates filing a motion to approve sale procedures, retain an

3   investment banker and approve a sale of the Debtors' assets with the goal of completing such

4   sale in or before June 2018. *Id.* The Projections indicate that the estates will have sufficient

5   funds to operate for that limited time period. However, there will be insufficient operating

6   income to pay all accrued and unpaid administrative chapter 11 claims. The Trustee anticipates

7   that chapter 11 administrative claims will be addressed after a sale of the assets has been

8   completed and the Trustee has administered the chapter 7 cases. The Trustee has been in

9   discussions with Dream Media as to its claim, sale and credit bidding matters. *Id.*

10  **G.    Retention of Professionals**

11        The Trustee filed his applications to retain Province as his financial advisors and

12  Pachulski Stang Ziehl & Jones LLP as his legal counsel. See Docket Nos. 292 and 297,

13  respectively. The Trustee is reviewing Debtors' pending litigation and will determine whether to

14  retain current special counsel in those matters. The Trustee may retain special counsel to advise

15  him concerning intellectual property issues and matters relating to the nuances of Debtors'

16  operations. Gottlieb Declaration at ¶11.

17                                    **II.**

18                              **ARGUMENT**

19  **A.    The Trustee has Examined the Debtors' Businesses and the Likelihood of
          Rehabilitation, and Recommends, Pursuant to Section 1106(a) of the Bankruptcy Code,**
20  **Conversion of the Cases.**

21        Upon appointment of a chapter 11 trustee, the trustee is required to "investigate

22  the…financial condition of the debtor, the operation of the debtor's business and the desirability

23  of the continuance of such business…." 11 U.S.C. §1106(a)(3). Following such investigation, a

24  trustee is to either file a plan as soon as possible, report why a plan will not be filed, or

25  recommend conversion or dismissal of the case. 11 U.S.C. §1106(a)(5).

26        As described below and in the Bowser Declaration, the Trustee has performed the

27  investigation required by Bankruptcy Code section 1106(a)(3) and recommends conversion

28  pursuant to Bankruptcy Code section 1106(a)(5).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.    Conversion of These Cases to Chapter 7 is Warranted Under Section 1112(b) of the Bankruptcy Code.**

Pursuant to section 1112(b) of the Bankruptcy Code, a court shall convert a Chapter 11 case to a Chapter 7 case for cause on request of a party in interest and after notice and a hearing. 11 U.S.C. § 1112(b); *see also In re Rubenstein*, 71 B.R. 777, 778 (9th Cir. B.A.P. 1987).  Section 1112(b) of the Bankruptcy Code provides in pertinent part that:

> (b) (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court ***shall*** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—
>
> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.
>
> . . .
>
> (4) For purposes of this subsection, the term "cause" includes—
>
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> . . .

11 U.S.C. § 1112(b) (2006) (emphasis added).

Historically, under section 1112(b) of the Bankruptcy Code, bankruptcy courts are given wide discretion to convert a case to chapter 7 for cause. *In re Koerner*, 800 F.2d 1358, 1367 (5th

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Cir. 1986).  However, the BAPCPA revisions to section 1112(b) make conversion or dismissal

2    <u>mandatory</u> upon a finding of "cause".  Section 1112(b) sets forth a list of items that constitute

3    "cause" for conversion or dismissal.  Courts have generally held that this list is not exclusive.  *In*

4    *re Products Int'l Co.*, 395 B.R. 101, 110 (Bankr. D. Ariz. 2008); see also 11 U.S.C. § 102(3),

5    which provides that "[i]n this title 'includes' and 'including' are not limiting."

6    **C.    The Debtors Have no Reasonable Likelihood of Rehabilitation.**

7            Under section 1112(b)(1), cause exists to convert or dismiss where there is both

8    continuing loss to, or diminution of, the estate and absence of a reasonable likelihood of

9    rehabilitation.  *Johnston*, 149 B.R. at 162; *In re Citi-Toledo Partners*, 170 B.R. 602, 606 (Bankr.

10   N.D. Ohio 1994).  Diminution of an estate exists where, for example, the debtor's business has

11   ceased or the debtor's liabilities outstrip its assets.  *Toledo Partners*, 170 B.R. at 606; *In re CCN*

12   *Realty Corp.*, 23 B.R. 261, 262 (Bankr. S.D.N.Y. 1982).  Courts may find that there has been a

13   diminution of the estate where it is shown that "the estate is suffering some diminution in value."

14   *Toledo Partners*, 170 B.R. at 606 (*citing In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)).

15           A debtor lacks "a reasonable likelihood of rehabilitation" where, for example, it lacks

16   income, operating funds, employees, or "continuing revenue-generating activity."  *See Citi-*

17   *Toledo Partners*, 170 B.R. at 606-07, 609; *see also In re Johnston* 149 B.R. at 162 (debtor lacked

18   income); *In Great American Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn.

19   1992) (debtor lacked operating funds).  Moreover, the fact that a liquidating plan could

20   conceivably be proffered should not result in a finding that "a reasonable likelihood of

21   rehabilitation" exists.  "Although the Bankruptcy Code contemplates liquidating plans of

22   reorganization in certain circumstances, the Court cannot equate the determination of whether

23   [the debtor] possesses a reasonable likelihood of rehabilitation with [the debtor's] ability to

24   effectuate a liquidating plan."  *Toledo Partners*, 170 B.R. at 607.  *See also In re Winshall*

25   *Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) ("The purpose of Chapter 11 reorganization

26   is to assist financially distressed business enterprises by providing them with breathing space in

27   which to return to a viable state ... . '[I]f there is not a potentially viable business in place worthy

28   of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre ...' ") (citation

omitted).  Where a court finds "no reasonable possibility of reorganization," it need not delay conversion. *Johnston*, 149 B.R. at 162.  Where there is no reasonable possibility of an effective reorganization, the bankruptcy court is not compelled to wait a certain period of time, to the detriment of creditors, before ordering conversion of the case. *See Stage I Land Co. v. U.S. Dept. of H.U.D.*, 71 B.R. 225, 231 (D. Minn. 1986) (chapter 11 case should be dismissed at the outset for cause where no reasonable possibility of a reorganization exists); *In re Economy Cab & Tool Co. Inc.*, 44 B.R. 721, 724 (Bankr. D. Minn. 1984) (chapter 11 case may be converted in early stages of proceeding where movant can show that there is "no more than a 'hopeless and unrealistic prospect' of rehabilitation").

Province has analyzed the Debtors' operations and determined that the Debtors are not meeting their obligations as they come due on a post-petition basis.  Bowser Declaration ¶4. Simply put, the Debtors are losing money; approximately $400,000 of post-petition operational obligations incurred between January 11 and March 5, 2018 remain unpaid and the Trustee is informed and believes that professional fees incurred prior to his appointment amount to approximately $305,000. *Id.* at ¶5.  Debtors' ongoing expenses of operating their businesses exceed the income generated by such operation.  Pursuant to the projections prepared by Province, the Debtors will lose $732,000 over the next three months. *Id.* Accordingly, the Trustee and his professionals have determined that there exists "a substantial or continuing loss to or diminution of the estate" and that, further, there is currently no "reasonable likelihood of rehabilitation" of the Debtors' businesses.  Gottlieb Declaration at ¶13; Bowser Declaration at ¶5.  Instead, the Trustee intends to continue operations under chapter 7 just long enough to conduct an auction of the Debtors' assets, within ninety (90) days after filing a motion to approve sale procedures, retain investment banker and approve a sale of the Debtors' assets. Gottlieb Declaration at ¶10.

**D.    Conversion to Chapter 7, Not Dismissal, is in the Best Interests of Creditors.**

Conversion of these cases is in the best interests of creditors.  Conversion to chapter 7 will provide a fiduciary in the chapter 7 trustee who can expediently analyze causes of action and utilize its powers under the Bankruptcy Code in an effort to recover and liquidate assets in a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  manner designed to maximize values for the benefit of the estate. Dismissal, on the other hand,

2  makes little sense given that bbankruptcy will provide a forum for the filing and administration

3  of creditor claims. In a chapter 7 case, the trustee may analyze the viability of third party claims

4  and avoidance actions that may be initiated for the benefit of all similarly situated creditors.

5  Given the requirement that the Court convert or dismiss the case upon a showing of cause,

6  conversion is the only realistic alternative in this instance.

7  **E.     Conversion Nunc Pro Tunc to the Trustee Appointment Date is Warranted.**

8         Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order,

9  process, or judgment that is necessary or appropriate to carry out the provisions of this title." As a

10  leading commentator has noted, all courts, federal and state, have a broad and inherent power 'over

11  their own process, to prevent abuses, oppression and injustice,' 'as not to produce hardship'; and to

12  do 'substantial justice.' 1 Moore's Federal Practice ¶0.60[60], p. 638, citing *Gumbel v. Pitkin*, 124

13  U.S. 131. 144 (1888); *Ownbey v. Morgan*, 256 U.S. 94, 110 (1921); *RFC v. Prudence S.A. Group*,

14  311 U.S. 597, 582-33 (1941); and *Broughton v. Voss*, 634 F.2d 880 (5th Cir. 1981). Similarly, in the

15  bankruptcy context, "[e]very court has an inherent power to enforce its lawful orders by appropriate

16  means. That power is also conferred on the Court by section 105(a)". 2 Collier on Bankruptcy

17  §105.03, p. 105-10 (15th Ed. 1995).

18         Retroactive conversion of a chapter 11 case to a chapter 7 case may be authorized pursuant to

19  the court's inherent powers as codified in section 105 of the Bankruptcy Code. *See, e.g.*, *Mitan v.*

20  *Duval (In re Mitan)*, 573 F.3d 237 (6th Cir. 2009) (affirming bankruptcy court's retroactive

21  conversion of chapter 11 case to chapter 7 pursuant to a nunc pro tunc order covering more than two

22  years). See also *In re International Philanthropic Foundation dba Granada Hills Community*

23  *Hospital*, Case No. 1:02-bk-20579-AG (Bankr. C.D. Cal. July 29, 2003) [Dkt. No. 326].

24         The Trustee was appointed in these Cases pursuant to order of this court entered March 6,

25  2018, and professionals employed by him (subject to court order) began immediate, intensive work

26  to provide services for the benefit of the Estates. Gottlieb Declaration ¶12. Two members of the

27  Province firm have worked full time at the Debtors' premises for several weeks (including

28  weekends) to review and make sense of the Debtors' book s, records and to develop projections.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Bowser Declaration ¶3.  Their analysis was made very difficult due to the state of the Debtors'

2    accounting records at the time of the Trustee's appointment.  *Id.*  Neither the Trustee, nor the

3    professionals he immediately and predictably employed, could have known of the existence of (a)

4    approximately a four hundred thousand dollars ($400,000) in unpaid post-petition costs and

5    expenses through the Trustee Appointment Date, (b) approximately three hundred five thousand

6    dollars ($305,000) of chapter 11 profession fees incurred over that same period, and (c) continuing

7    losses to the Debtors on an ongoing basis, absent their in-depth review of the Debtors' books and

8    records, analysis of receivables and payables and the development of projections based on such

9    analysis.  The Debtors' revenues are currently insufficient to pay all ongoing operating expenses, let

10   alone the accrued and unpaid chapter 11 administrative expenses.  The Trustee cannot continue to

11   incur chapter 11 expenses which will render the estates increasingly administratively insolvent on an

12   operating basis.

13         The Trustee believes it is in the best interest of these Estates to operate the Debtors'

14   businesses in a chapter 7 proceeding until such time as an auction can be held to sell the Debtors'

15   assets and such sale is consummated.  The Trustee further believes that conversion nunc pro tunc to

16   the Trustee Appointment Date is appropriate in order to ensure payment of ordinary course expenses

17   incurred by the Estates after the Trustee Appointment Date and to properly compensate the

18   professionals who are assisting the Trustee to administer the Estates.  Accordingly, in furtherance of

19   this court's order appointing the Trustee and in order to "not produce hardship",  the Trustee

20   requests that an order of conversion, if one is entered, be effective nunc pro tunc to March 6, 2018,

21   the date of his appointment.[3]

22

23

24

25

26

27

---

28   [3] However, in the event the Court determines not to convert the cases as of the Trustee Appointment Date, the Trustee
requests the conversion be granted as of the filing date of the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## III.

2

## CONCLUSION

3          For the reasons set forth herein, the Trustee respectfully requests that the Court (a)

4    convert these cases to cases under chapter 7 of the Bankruptcy Code, nunc pro tunc to March 6,

5    2018, and (b) grant such other and further relief as the Court deems just and appropriate.

6

7    Dated: April 12, 2018                      **PACHULSKI STANG ZIEHL & JONES LLP**

                                                 */s/ Linda F. Cantor*
8                                                _____
                                                 Linda F. Cantor
9
                                                 Proposed Counsel for David K. Gottlieb,
10                                               Chapter 11 Trustee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# DECLARATION OF DAVID GOTTLIEB

I, David Gottlieb, declare as follows:

1.      I am the duly appointed chapter 11 trustee ("Trustee") of the estates of Penthouse Global Media, Inc. ("PGMI") and its affiliated debtor entities whose cases are being jointly administered with the PGMI case.

2.      Unless otherwise indicated, all facts set forth in this Declaration are based on either (a) my personal knowledge, (b) information gathered by professionals rendering services to me), (c) my review of relevant documents including, without limitation, the court file in these Cases, or (d) my opinion based upon my experience and knowledge of the circumstances as described in the Motion.  If I were called to testify thereto, I could and would competently do so.

3.      I make this Declaration in support of the preceding *Notice Of Motion and Motion Of David K. Gottlieb, Chapter 11 Trustee, For Order Converting Case To Chapter 7 Nunc Pro Tunc To March 6, 2018* (the "Motion").  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

4.      The Debtors commenced these cases by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on January 11, 2018.  On March 6, 2018, I was appointed chapter 11 trustee of the Debtors' Estates (*see* Docket No. 236) and has since, *inter alia*, met with Debtors' personnel, opened bank accounts, employed professionals (subject to court approval), conferred with creditors including Debtors' secured lender Dream Media Corporation ("Dream Media") and Debtors' landlord, reviewed the Court record in these Cases, analyzed the Debtor's financial condition and operating status, and assessed whether the Debtors can continue in operation over a month's period of time.

5.      To address pressing operating needs, I have entered into agreements with Dream Media with regards to use of Dream Media's alleged cash collateral pursuant to budgets prepared by Province the Trustee's financial advisors.  As Trustee, I requested and Dream Media consented to these estates' use of cash collateral for the periods (a) March 13, 2018 through March 20, 2018, pursuant to *the Order Approving Trustee's Use of Cash Collateral Through*

*March 20, 2018* [Dkt. No.248], (b) March 21, 2018 through March 28, 2018, pursuant to the *Order Approving Trustee's Continued Use of Cash Collateral Through March 28, 2018* [Dkt. No.276]; and (c) March 29, 2018 through April 14, 2018 pursuant to the *Order Approving Trustee's Continued Use of Cash Collateral Through April 14, 2018* [Dkt. No. 294].

6.      The Estates' prior insurance policies terminated February 18, 2018 and were renewed by the Debtors under a thirty (30) day binder until March 20, 2018, with the intent of financing the premiums for those renewed policies. Once I was appointed, I obtained authority on an emergency basis to enter into an insurance premium financing agreement with AFCO Acceptance Corporation to finance $85,676.43 of the $141,214.22 annual premium for the renewed policies. See *Order Approving Emergency Motion Of Chapter 11 Trustee Of Penthouse Global Media, Inc. For Order Authorizing It To Enter Into Insurance Premium Finance Agreement With AFCO Acceptance Corporation* dated March 16, 2018 [Dkt. No. 264]. Both before and after obtaining authorization to finance Debtors' insurance, my proposed counsel had discussions with Debtors' insurance broker, Marsh, regarding my appointment and its effect on coverage and pricing under the Debtors' various policies. While the terms and pricing of the policies for Auto, General Liability, Property and Workers Compensation remained consistent with the proposed premium financing agreement, Marsh informed my counsel that Lloyds of London, the insurers for Media/Cyber liability coverage, insisted on changing the terms of the policy, increasing the premium and requiring the posting of $150,000 collateral to satisfy the self-insured retention obligation.[4]

7.      Since March 16, 2018, my professionals and I engaged in extensive negotiations with Marsh and Lloyds of London over the policy terms, the length of coverage and the insurer's collateral requirements, but Lloyds of London remained unwilling to drop its collateral requirements without increasing the premiums (allegedly due to my appointment as Trustee). During these negotiations, the other placed insurance has remained in place subject to the payment of the premium due. On April 4, 2018, I was informed that the estates' general liability

---

[4] The Media/Cyber policy traditionally covers liability associated with the publishing, broadcasting and distribution of adult-related content issued by the insured, as well as privacy and security losses. Unlike the other policies, it is a claims made policy, and not an occurrence based policy.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

insurance would lapse for failure to pay unless the AFCO financing agreement was signed and funded on April 5, 2018. To prevent the loss of insurance, on April 5, 2018, I agreed to pay the installment due under a revised premium financing agreement covering Auto, General Liability, Property and Workers Compensation premiums due, but not the Lloyds of London Media/Cyber liability policy. I did not renew coverage for that policy because Lloyds of London's failure to adhere to the original terms of the binder, the financial burden of the new terms for payment, and the understanding from Marsh that this coverage had had no prior claims in the last several years. Upon conversion of these cases, any Media/Cyber liability claims would likely constitute either pre-petition or chapter 11 pre-conversion administrative claims, were any to be made.

8.    After conversion of these Cases, I will seek approval to operate the Debtors' businesses under chapter 7 of the Bankruptcy Code for the limited period of time necessary to conduct an auction process and consummate a sale of the Debtors' assets. I will also address the return of premiums to the extent permitted under the finance agreement at that time.

9.    As discussed in the Motion, I have been informed by Province that they have determined that the Debtors are not meeting their obligations as they become due and the estates are becoming increasingly administratively insolvent during these cases. I cannot, in my capacity as Trustee, propose a chapter 11 plan based on the Debtors' current and projected operating income. I have been advised that certain parties have an interest in proposing a chapter 11 plan for the Debtors. However, absent the submission of a feasible chapter 11 plan by a party or entity with evidence of the ability to implement such plan in the near term, I cannot continue to operate increasingly insolvent chapter 11 estates. Provided the Court grants the Motion, if a feasible plan and disclosure statement are filed in short order, these cases can always be reconverted to chapter 11 to allow the plan process to proceed.

10.    Because reorganization is not feasible, I will be seeking to sell the estates' assets. Various parties have indicated an interest in purchasing the Debtors' assets. I anticipate filing a motion to approve sale procedures, retain an investment banker and approve a sale of the Debtors' assets with the goal of completing such sale in or before June 2018. Province's projections indicate that the estates will have sufficient funds to operate for that limited time

1  period assuming continued use of cash collateral.   However, there will be insufficient operating

2  income to pay all accrued and unpaid administrative chapter 11 claims.  I anticipate that chapter

3  11 administrative claims will be addressed after a sale of the assets has been completed and I

4  have fully administered the chapter 7 cases.  I have been in discussions with Dream Media as to

5  its claim, sale and credit bidding matters and continued use of cash collateral.

6  11.    I filed applications to retain Province as my financial advisors and Pachulski

7  Stang Ziehl & Jones LLP as my legal counsel.  I am reviewing Debtors' pending litigation and

8  will determine whether to retain current special counsel in those matters.  I may retain special

9  counsel to advise me concerning intellectual property issues and matters relating to the nuances

10  of Debtors' operations.

11  12.    At my direction, David Roberts and Walter Bowser, members of Province, my

12  proposed financial advisory firm met extensively with the Debtors' CEO, Kelly Holland, and

13  met with accounting staff regarding day-to-day operations.  For the first five weeks after my

14  appointment, David Roberts and Walter Bowser worked full time on-site at the Debtors'

15  premises on a daily basis (including weekends) reviewing and reconciling the Debtors' books

16  and records, analyzing cash flow and developing projections.  I have been apprised of the

17  Debtors' operations and staffing needs, and I am reviewing cost savings measures with the

18  Debtors' CEO.

19  13.    In consultation with David Roberts and Walter Bowser and based upon their

20  analysis and projections, I am informed and believe that (i) approximately $400,000 of post-

21  petition obligations remain unpaid (excluding professional fees incurred prior to the Trutsee

22  Appointment Date that are estimated to be $305,000), (ii) the Debtors will continue to experience

23  ongoing losses from operations, and (iii) based upon their current financial condition, there exists

24  no reasonable prospect of rehabilitating the Debtors' operations through a chapter 11 plan of

25  reorganization.  I cannot continue to incur chapter 11 expenses which will render the estates

26  increasingly administratively insolvent on an operating basis.

27  14.    I believe it is in the best interest of these Estates to operate the Debtors'

28  businesses in a chapter 7 proceeding until such time as an auction can be held to sell the Debtors'

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313495.5 32277/001                    4

1  assets and such sale is consummated. I also believe that conversion nunc pro tunc to the Trustee

2  Appointment Date is appropriate in order to ensure payment of ordinary course expenses

3  incurred by the Estates after the Trustee Appointment Date and to properly compensate the

4  professionals who are assisting me to administer the Estates. Accordingly, in furtherance of this

5  court's order appointing me as Trustee and in order to "not produce hardship", I request that an

6  order of conversion, if one is entered, be effective nunc pro tunc to March 6, 2018, the date of

7  my appointment. However, in the event the Court determines not to convert as of the Trustee

8  Appointment Date, I request the conversion be granted as of the filing date of the Motion.

9       I declare under penalty of perjury under the laws of the United States of America that the

10  forgoing is true and correct.

11       Executed this 12th day of April, 2018, at Encino, California.

12

13  David Gottlieb

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

## DECLARATION OF WALTER BOWSER

I, Walter Bowser, declare as follows:

1.      I am a Director with the firm of Province, Inc., proposed financial advisory firm for David K. Gottlieb, solely in his capacity as the duly appointed chapter 11 trustee (the "Trustee") in the above-captioned bankruptcy cases.  I am a certified public accountant and a member in good standing in the American Institute of Certified Public Accountants and also a Certified Fraud Examiner and member in good standing of the Association of Certified Fraud Examiners..  I received my M.B.A. at Carnegie Mellon University in 1989 and I have over 28 years of experience providing consulting and accounting services to clients in a broad range of industries, including performing the role of CFO.  Over the course of my career, I have prepared hundreds of financial projections, including cash flow projections for clients in bankruptcy proceedings.

2.      I am authorized to make this Declaration in support of the preceding *Notice of Motion and Motion of David K. Gottlieb, Chapter 11 Trustee, For Order Converting Case to Chapter 7 Nunc Pro Tunc To March 6, 2018* (the "Motion").  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.  Except as otherwise stated, each of the facts set forth in this Declaration are based on either (a) my personal knowledge, (b) information gathered by professionals working with me, (c) my review of relevant documents, or (d) my opinion based upon my experience and knowledge of the circumstances, as described in the Motion.  If I were called to testify thereto, I could and would competently do so.

3.      Beginning on the day after his appointment, I along with my colleague David Roberts and the Trustee's proposed counsel met extensively with the Debtors' CEO, Kelly Holland, and with the Debtors' accounting and other staff members regarding day-to-day operations and the Debtors' financial management.   For the first five weeks after the Trustee Appointment Date, David Roberts and I worked full time on-site at the Debtors' premises on a daily basis (including weekends) reviewing and reconciling the Debtors' books and records, analyzing cash flow and developing projections.  This was a time intensive task because the

Debtors' books and records were in disarray, for example:

    a.  The historical records for 2016 and 2017 were incomplete and reportedly inaccurate.   The prior CFO was terminated for cause in September 2017; the other accounting staff also resigned or otherwise ended their employment with the Debtors around this same time creating a vacuum of institutional knowledge within the accounting organization, which includes among other things, unfamiliarity with customers and vendors, and the chart of accounts. This sudden and extensive turnover of staff resulted in numerous recording errors and subsequent correcting adjustments when such errors were discovered.  The accounting staff has limited availability because of family and other health-related issues.  Each member of the current accounting staff has less than 6 months' tenure with Penthouse.

    b.  Many of the reports in the accounting system are out of synch because cash postings of collections against receivables; payment posting to payables; invoicing customers and entering vendor invoices into payables are not performed on a timely basis.

    c.  After the dismissal of the former CFO and in a race against the tax filing deadline, the Debtors engaged an outside accounting firm to assist them in filing their 2016 tax returns.  To compile the acounting data required for the tax returns, this firm made multiple summarizing adjusting entries to the books that aggregated numerous transactions, which subsequently makes it impossible to review the details of these entries, consequently many historical details were lost that might have reduced the amount of time required to assess the situation.

    d.  We encountered hundreds of entries to the cash receipts and disbursements journal with blank descriptions for the payor, which required us to resort to bank statements and invoices to test the accuracy of certain revenue streams in the cash projections.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

e. Starting in November 2017, the Debtors' current accounting staff and CFO reconstructed much of and continue their efforts to reconstruct the books and records; however, the books and records have not been audited and given their history cannot be relied on at face value.

f. Given the state of the Debtors' general ledgers, source documents have to be reviewed to investigate many transactions.  Province compiled cash receipts and disbursements from the Debtors' books and records.  Although the amounts of the transactions are available and are believed to generally reconcile to the bank statements – many of the transactions, particularly cash receipts do not have names associated with them making it difficult to determine the nature of the transactions.  To investigate, other reports or source documents need to be reviewed and analyzed.

g. Source files for vendors are frequently incomplete and in some cases cannot be located.

h. The Debtors did not establish a new set of books and records starting with the petition date to record post-petition activity.  Fundamental reporting systems and processes for tracking cash, payables, and receivables had to be modified or established to meet the needs of the Trustee.

i. The Debtors use QuickBooks as their accounting system, which requires a separate data file for each of the five operational debtor entities.  Because only one entity's data file can be open at a time, this causes excessive delay in recording transactions.

j. Because many payments are made by Penthouse Global Media, Inc., the accounting methods used by the company require extensive use of intercompany transactions.  Again, because only one entity's data file can be open at a time, it is not unusual to find only one side of a transaction recorded on a certain entity, while the recording of the same transaction on the correspondent entity is waiting to be recorded.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

k.   It appears that after the departure of the former CFO and his staff, there has

been a general lack of a sense of ownership for the records from top to bottom

and, on a day-to-day basis, Debtors have maintained a reactive rather than

proactive role in the management of their accounting records.

4.    Based upon a lengthy and detailed analysis of the Debtors' books and accounting

records, including a review of 2017 revenues and expenses, bank statements, and numerous

discussions with Debtors' management, we prepared cash flow projections for the period March

7 through June 2018 (the "Projections").  A true and correct copy of the Projections is appended

hereto as **Exhibit A**.  To the best of my knowledge and understanding of the Debtors' operations

and based on my review of 2017 revenues and expenses, bank statements, and numerous

discussions with Debtors' management, the Projections accurately reflect the Debtors' operations

from March 7 through June 2018.  As shown on the Projections, the Debtors are not meeting

their obligations as they come due on a post-petition basis, resulting in a diminution of the value

of the Debtors' assets.

5.    The Projections show that Debtors' ongoing expenses of operating their

businesses exceed the income generated by such operation.  Approximately $400,000 of post-

petition operating obligations incurred between January 11 and March 5, 2018 remain unpaid.  I

am also informed and believe that professional fees incurred prior to the Trustee's appointment

amount to approximately $305,755.  According to the Projections, the Debtors will lose

approximately $732,000 over the next three months.  Accordingly, there exists a substantial or

continuing loss to or diminution of the estates.  Based upon the Debtors' current operations and

as confirmed by the Projections, there is currently no reasonable likelihood of rehabilitation of

the Debtors' businesses.

I declare under penalty of perjury under the laws of the United States of America that the

forgoing is true and correct.

Executed this 12th day of April, 2018, at Los Angeles, California.

Walter Bowser

# Exhibit A

# In Re: Penthouse Global Media, Inc. et al (Lead Case No. 1:18-10098-MB)
## Analysis - Estimated Post-petition Revenues and Expenses (01-11-18 to 06-30-18)

| | From 01-11-18 to 03-05-18 | | | | From 03-06-18 to 06-30-18 | | | | | Post-petition Grand Total |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| | Jan | Feb | Mar 1 to 5 | Subtotal | Mar 6 to 31 | April | May | June | Subtotal | |
| **REVENUES (Note 1)** | | | | | | | | | | |
| Broadcast | $ 178,870 | $ 287,063 | $ 10,180 | $ 476,113 | $ 382,529 | $ 357,490 | $ 370,595 | $ 410,556 | $ 1,521,171 | $ 1,997,283 |
| Digital | 97,584 | 78,732 | 9,018 | 185,333 | 96,309 | 128,973 | 116,181 | 116,181 | 457,644 | 642,978 |
| Publishing | 188,445 | 116,460 | 2,133 | 307,038 | 199,352 | 168,882 | 188,706 | 155,706 | 712,645 | 1,019,683 |
| Licensing | 71,983 | 2,258 | - | 74,241 | 7,515 | 53,413 | 1,000 | 1,000 | 62,928 | 137,169 |
| **Total Revenues** | 536,882 | 484,512 | 21,331 | 1,042,725 | 685,705 | 708,758 | 676,482 | 683,444 | 2,754,388 | 3,797,113 |
| **OPERATING EXPENSES (Note 1)** | | | | | | | | | | |
| Payroll & taxes | 93,061 | 134,172 | - | 227,234 | 144,634 | 186,194 | 82,000 | 246,000 | 658,828 | 886,062 |
| Rent | - | 22,411 | 37,183 | 59,594 | 22,411 | - | 22,411 | 22,411 | 67,234 | 126,829 |
| Corporate expenses | 26,165 | 17,855 | 2,576 | 46,596 | 35,017 | 61,155 | 34,353 | 58,119 | 188,644 | 235,240 |
| Insurance | 27,362 | 25,183 | 28,763 | 81,308 | 53,968 | 116,384 | 64,439 | 44,706 | 279,496 | 360,805 |
| Broadcast costs | 41,503 | 114,317 | 18,500 | 174,320 | 101,839 | 92,546 | 170,338 | 143,073 | 507,795 | 682,116 |
| Publishing costs | 84,421 | 183,356 | 28,777 | 296,554 | 139,210 | 173,795 | 189,220 | 212,182 | 714,407 | 1,010,961 |
| Digital costs | 5,129 | 12,160 | - | 17,289 | 68,906 | 46,148 | 50,353 | 50,741 | 216,148 | 233,436 |
| Outside legal for IP | - | - | - | - | - | 15,500 | 20,000 | 10,000 | 45,500 | 45,500 |
| Miscellaneous expenses | 155,352 | 248 | - | 155,599 | 6,711 | 45,000 | 60,000 | 60,000 | 171,711 | 327,311 |
| **Total Operating Expenses** | 432,993 | 509,703 | 115,800 | 1,058,495 | 572,697 | 736,722 | 693,114 | 847,232 | 2,849,764 | 3,908,259 |
| **Net Cash Basis Operating Income (Loss)** | 103,889 | (25,191) | (94,468) | (15,770) | 113,009 | (27,964) | (16,632) | (163,789) | (95,376) | (111,146) |
| **ACCRUED REVENUES AND EXPENSES** | | | | | | | | | | |
| Accrued revenues | 43,670 | 35,744 | 17,685 | 97,099 | (74,938) | (51,342) | (64,447) | (119,150) | (309,877) | (212,778) |
| Accrued expenses | (348,054) | 23,200 | (76,597) | (401,451) | 73,241 | (108,172) | (16,632) | (163,789) | (215,351) | (616,802) |
| **Change in Accrued Revenues and Expenses** | (304,384) | 58,944 | (58,912) | (304,352) | (1,697) | (159,514) | (81,079) | (282,939) | (525,228) | (829,580) |
| **Net Accrual Basis Operating Income (Loss)** | $ (200,495) | $ 33,753 | $ (153,380) | $ (320,122) | $ 111,312 | $ (187,478) | $ (97,711) | $ (446,727) | $ (620,604) | $ (940,726) |
| **ADMINISTRATIVE EXPENSES (Note 1)** | | | | | | | | | | |
| Debtor counsel (Note 2) | 72,863 | 112,757 | 20,135 | 205,755 | - | - | - | - | - | 205,755 |
| UCC counsel | - | 80,000 | 20,000 | 100,000 | 20,968 | 25,000 | 25,000 | 25,000 | 95,968 | 195,968 |
| Special Litigation I | - | - | - | - | - | 6,000 | 30,000 | 30,000 | 66,000 | 66,000 |
| Special Litigation II | - | - | - | - | - | - | 3,050 | 3,050 | 6,100 | 6,100 |
| UST Quarterly fee | - | - | - | - | - | 20,346 | - | - | 20,346 | 20,346 |
| Ch.11 Trustee bond | - | - | - | - | 5,000 | - | - | - | 5,000 | 5,000 |
| Trustee | - | - | - | - | 31,885 | 29,688 | 19,173 | 24,097 | 104,843 | 104,843 |
| Trustee counsel | - | - | - | - | 264,266 | 100,021 | 75,000 | 50,000 | 489,288 | 489,288 |
| Trustee's financial advisor | - | - | - | - | 170,000 | 100,000 | 50,000 | 30,000 | 350,000 | 350,000 |
| **Total Administrative Expenses** | 72,863 | 192,757 | 40,135 | 305,755 | 492,119 | 281,055 | 202,223 | 162,147 | 1,137,544 | 1,443,299 |
| **NON-OPERATING RECEIPTS (DISBURSEMENTS)** | | | | | | | | | | |
| Humboldt credit card reserve | - | - | - | - | 368,191 | 50,000 | - | - | 418,191 | 418,191 |
| Eworks interest | (38,533) | (34,844) | - | (73,377) | - | - | - | - | - | (73,377) |
| **Total Non-operating Receipts (Disbursements)** | (38,533) | (34,844) | - | (73,377) | 368,191 | 50,000 | - | - | 418,191 | 344,814 |
| **Net Expenses in Excess of Receipts** | $ (311,891) | $ (193,848) | $ (193,515) | $ (699,254) | $ (12,616) | $ (418,533) | $ (299,934) | $ (608,874) | $ (1,339,957) | $ (2,039,211) |

**In Re: Penthouse Global Media, Inc. et al** (Lead Case No. 1:18-10098-MB)

Analysis - Estimated Post-petition Revenues and Expenses (01-11-18 to 06-30-18)

| | From 01-11-18 to 03-05-18 | | | | From 03-06-18 to 06-30-18 | | | | | Post-petition Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | Jan | Feb | Mar 1 to 5 | Subtotal | Mar 6 to 31 | April | May | June | Subtotal | |
| **WORKING CAPITAL SUMMARY** | | | | | | | | | | |
| **CASH** | | | | | | | | | | |
| Cash - beginning book balance | $ 152,219 | $ 217,575 | $ 157,540 | $ 152,219 | $ 63,072 | $ 171,081 | $ 175,496 | $ 175,496 | $ 63,072 | $ 152,219 |
| Cash receipts from operations | 536,882 | 484,512 | 21,331 | 1,042,725 | 685,705 | 708,758 | 676,482 | 683,444 | 2,754,388 | 3,797,113 |
| Cash disbursements for operations | (432,993) | (509,703) | (115,800) | (1,058,495) | (572,697) | (683,996) | (676,482) | (683,444) | (2,616,618) | (3,675,113) |
| Cash disbursements for non-operations | (38,533) | (34,844) | | (73,377) | (5,000) | (20,346) | | | (25,346) | (98,723) |
| Cash - ending book balance | $ 217,575 | $ 157,540 | $ 63,072 | $ 63,072 | $ 171,081 | $ 175,496 | $ 175,496 | $ 175,496 | $ 175,496 | $ 175,496 |
| **ACCOUNTS RECEIVABLE** | | | | | | | | | | |
| Beginning balance | $ 456,781 | $ 500,451 | $ 536,195 | $ 456,781 | $ 553,880 | $ 478,942 | $ 427,600 | $ 363,153 | $ 553,880 | $ 456,781 |
| Sales on account | 222,540 | 322,807 | 27,865 | 573,212 | 307,591 | 306,148 | 306,148 | 291,406 | 1,211,294 | 1,784,505 |
| Collections | (178,870) | (287,063) | (10,180) | (476,113) | (382,529) | (357,490) | (370,595) | (410,556) | (1,521,171) | (1,997,283) |
| Ending balance | 500,451 | 536,195 | 553,880 | 553,880 | 478,942 | 427,600 | 363,153 | 244,003 | 244,003 | 244,003 |
| **POST-PETITION A/P** | | | | | | | | | | |
| Post-petition accrued - beginning balance | $ - | $ 348,054 | $ 324,854 | $ - | $ 401,451 | $ 328,210 | $ 436,381 | $ 453,013 | $ 401,451 | $ - |
| Post-petition expenses | 348,054 | | 76,597 | 424,651 | 103,031 | 137,969 | 16,632 | 163,789 | 421,421 | 846,072 |
| Post-petition payments (included in operations) | | (23,200) | | (23,200) | (176,272) | (29,788) | | | (206,070) | (229,270) |
| Post-petition accrued - ending balance | 348,054 | 324,854 | 401,451 | 401,451 | 328,210 | 436,381 | 453,013 | 616,802 | 616,802 | 616,802 |
| **RESTRICTED CASH** | | | | | | | | | | |
| Beginning balance | $ - | $ - | $ - | $ - | $ - | $ 368,191 | $ 418,191 | $ 418,191 | $ - | $ - |
| Humboldt credit card reserve recoveries | | | | | 368,191 | 50,000 | | | 418,191 | 418,191 |
| Ending balance | - | - | - | - | 368,191 | 418,191 | 418,191 | 418,191 | 418,191 | 418,191 |

Notes:
1. Post-petition revenues and expenses have been estimated from available debtor data. Actual revenue receipts and expense disbursements are included from the petition date of January 11 through April 7, 2018. Operating revenues and expenses are presented on a cash basis. Administrative expenses are a mix of accrued professional fees and cash payments.

2. Debtor's counsel's fees and expenses are included net of unused retainer. Prepetition fees of $10,260 and expenses of $25,755 are assumed offset against $70,000 retainer - leaving an unused retainer of $33,985. For purposes of this analysis, the unused retainer was applied pro-rata based on days in the month.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**10100 Santa Monica Boulevard, 13ᵗʰ Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION OF DAVID K. GOTTLIEB, CHAPTER 11 TRUSTEE, FOR ORDER CONVERTING CASE TO CHAPTER 7 NUNC PRO TUNC TO MARCH 6, 2018; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID K. GOTTLIEB AND WALTER BOWSER IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>April 12, 2018,</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On <u>April 12, 2018,</u> I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>April 12, 2018</u> served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*Via Federal Express*
Honorable Martin R. Barash
U.S. Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite  342/ Courtroom 303
Woodland Hills, California  91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 12, 2018 | Janice G. Washington | */s/ Janice G. Washington* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:313495.5 32277/001

## 1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Russell Clementson on behalf of U.S. Trustee
United States Trustee (SV)
russell.clementson@usdoj.gov

James A Dumas, Jr on behalf of Creditor NOA
Productions SPRL
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

James A Dumas, Jr on behalf of Creditor
Penthouse Global Broadcasting, Inc.
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

Allan B Gelbard on behalf of Other
Professional Allan B. Gelbard
xxxesq@aol.com, Allan@GelbardLaw.com

David Keith Gottlieb (TR)
dkgtrustee@dkgallc.com,
dgottlieb@iq7technology.com,rjohnson@dkgal
lc.com,akuras@dkgallc.com

David W. Meadows on behalf of Interested
Party Courtesy NEF
david@davidwmeadowslaw.com

Krikor J Meshefejian on behalf of Creditor
Interested Party
kjm@lnbrb.com

Alan I Nahmias on behalf of Interested Party
Courtesy NEF
anahmias@mbnlawyers.com,
jdale@mbnlawyers.com

Aram Ordubegian on behalf of Creditor LSC
Communications US, LLC / Creel Printing
ordubegian.aram@arentfox.com

Hamid R Rafatjoo on behalf of Creditor
Committee The Official Committee of
Unsecured Creditors
hrafatjoo@raineslaw.com,
bclark@raineslaw.com;cwilliams@raineslaw.c
om
S Margaux Ross on behalf of U.S. Trustee
United States Trustee (SV)
margaux.ross@usdoj.gov

Michael St James on behalf of Creditor
Interested Party
ecf@stjames-law.com

Michael St James on behalf of Interested Party
Michael St. James
ecf@stjames-law.com

Howard Steinberg on behalf of Creditor
Greenberg Traurig, LLP
steinbergh@gtlaw.com,
pearsallt@gtlaw.com;laik@gtlaw.com

Cathy Ta on behalf of Interested Party
Penthouse Clubs Worldwide, LLC
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;lisa.spencer@b
bklaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Michael H Weiss on behalf of Attorney Weiss
& Spees, LLP
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Danni
Ashe, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor GMI
Online Ventures, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor General
Media Communications, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor General
Media Entertainment, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Digital Media Productions, Inc.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Broadcasting, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Digital, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Licensing, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Media, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Publishing, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Images Acquisitions, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Pure
Entertainment Telecommunications, Inc. fka
For Your Ears Only, Ltd.

mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Streamray Studios, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Tan
Door Media, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor XVHUB
Group, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Christopher K.S. Wong on behalf of Creditor
LSC Communications US, LLC / Creel
Printing
christopher.wong@arentfox.com

Beth Ann R Young on behalf of Creditor
Dream Media Corporation
bry@lnbyb.com

Beth Ann R Young on behalf of Creditor
Interested Party
bry@lnbyb.com

Brian L. Davidoff
bdavidoff@greenbergglusker.com

Jonathan Hayes jhayes@SRHLawFirm.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**U.S. Bankruptcy Court**
**Central District of California (San Fernando Valley)**
**In re Penthouse Global Media, Inc., Case No. 18-10098-MB**

2.    <u>**SERVED BY UNITED STATES MAIL**</u>:

*Debtor*
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

*Counsel for Debtor*
Michael H. Weiss, Esq.
WEISS & SPEES LLP
6310 San Vicente Boulevard, Suite 401
Los Angeles, CA  90048

*Trustee*
David Keith Gottlieb, Managing
Member
D. Gottlieb & Associates, LLC
17000 Ventura Blvd., Suite 300
Encino, California, 91403

*Office of U.S. Trustee*
Margaux S. Ross
915 Wilshire Blvd. , Suite 1850
Los Angeles, CA 90017

*Counsel for The Official Committee of*
*Unsecured Creditors*
c/o Hamid R. Rafatjoo
Raines Feldman LLP
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

*Committee Members*
DVD Factory Inc.
Representative: Steve Kalson
7230 Coldwater Canyon Ave.
North Hollywood, CA 91605

LSC Communications US, LLC / Creel Printing.
Representative: Dan Pevonk
4101 Winfield Rd.
Warrenville, IL 60555

TGG
Representative: Matthew A. Garrett, CEO
10188 Telesis Court
Suite 130
San Diego, CA 92121

Miller Law Group
Representative: Walter M. Stella
111 Sutter Street
San Francisco, CA 94104

Palm Coast Data
Representative: Neil Gordon
11 Commerce Blvd.
Palm Coast, FL 32164

*Interested Parties*
Kelly Holland
President and Chief Executive Officer
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

Robert W. Campbell
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

Allan B. Gelbard
Attorney at Law
15760 Ventura Boulevard, Suite 801
Encino, CA  91436

Mark A. Mintz
Attorney at Law
JONES WALKER
201 St. Charles Avenue
New Orleans, LA  70170-5100

John D. Kirkendoll
Founder/CEO
Kirkendoll Management, LLC
201 St Charles Ave., Suite 3915
New Orleans, LA 70170

*Requests for Special Notice*
Howard J. Steinberg (CA SBN 89291)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA  90067

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Aram Ordubegian (SBN 185142)
Robert M. Hirsh (*pro hac vice*
application to be submitted)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Joseph E Bain
Jones Walker LLP
811 Main St., Ste 2900
Houston, TX 77002

Timothy Driver
433 North Camden, Suite 970
Beverly Hills, CA 90210

*20 Largest Creditors*

ExWorks Capital Funds I, LP
333 W. Wacker Drive
Suite 1620
Chicago, IL 60606

Dream Media Corporation
10990 Wilshire Blvd., Penthouse
Los Angeles, CA 90024

Greenberg Traurig, LLP
1840 Century Park East
Suite 1900
Los Angeles, CA 90067

Bayard, P.A.
222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, De 19899

TGG Accounting
10188 Telesis Court
Suite 130
San Diego, CA 92121

Hogan Lovells US, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067

Squar Milner LLP
4100 Newport Place
Suite 600
Newport Beach, CA 92660

Miller Law Group
111 Sutter Street
Suite 700
San Francisco, CA 94104

Sedgwick, LLP
2301 McGee Street
Suite 500
Kansas City, MO 64108-2662

Allen, Dyer, Dopplet, Milbrath &
Gilchris
255 South Orange Avenue
Suite 1401
Orlando, FL 32801

Bressler Law PLLC IOLTA Account
3 West 35th Street
9th Floor
New York, NY 10001

Premium Assignment
Corporation/Marsh USA
P.O. Box 8000
Tallahassee, FL 32314-8000

California Choice Benefit
Administrators
721 South Parker
Suite 200
Orange, CA 92868

Tom Fox
P.O. Box 2402
Santa Cruz, CA 95063

Total Records Information
Management LLC
371 Starke Road
Carlstadt, NJ 07072

Iron Mountain
1000 Campus Drive
Collegeville, PA 19426

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Akerman LLP
601 West Fifth Street
Suite 300
Los Angeles, CA  90071

GRM Information Management
Services, Inc.
P.O. Box 35539
Newark, NJ  07193-5539

C. Hocquel Inc.
8310 Jayseel Street
Sunland, CA  91040

Allgemeines Treuunternehmen (ATU)
Aeulestrasse 5 P.O. Box 83
9490 Vaduz
Furstentum, Liechtenstein

DSS Consulting Corporation
638 Lindero Canyon Road,
Suite 117
Oak Park, CA  91377

Nextgen Reporting
999 Old Eagle School
Suite 118
Wayne, PA  19087

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:313495.5 32277/001

**F 9013-3.1.PROOF.SERVICE**