1   Linda F. Cantor (CA Bar No. 153762)
    Iain A.W. Nasatir (CA Bar No. 148977)
2   PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
3   Los Angeles, CA  90067
    Telephone: 310/277-6910
4   Facsimile: 310/201-0760
    E-mail:  lcantor@pszjlaw.com
5
6   Proposed Attorneys for David K. Gottlieb, Chapter 11 Trustee
7
8               UNITED STATES BANKRUPTCY COURT
9               CENTRAL DISTRICT OF CALIFORNIA
10              SAN FERNANDO VALLEY DIVISION

11  In re:                                    Cases No.: 1:18-BK-10098-MB

12  PENTHOUSE GLOBAL MEDIA, INC.,             Chapter 11

13                          Debtor.           Jointly Administered with Cases Nos.:
                                              1:18-bk-10099-MB; 1:18-bk-10101-MB;
14  ⊠ Affects All Debtors                     1:18-bk-10102-MB; 1:18-bk-10103-MB;
                                              1:18-bk-10104-MB; 1:18-bk-10105-MB;
15  ☐ Affects Penthouse Global Broadcasting, Inc.   1:18-bk-10106-MB; 1:18-bk-10107-MB;
                                              1:18-bk-10108-MB; 1:18-bk-10109-MB;
16  ☐ Affects Penthouse Global Licensing, Inc.   1:18-bk-10110-MB; 1:18-bk-10111-MB;
    ☐ Affects Penthouse Global Digital, Inc.   1:18-bk-10112-MB; 1:18-bk-10113-MB
17  ☐ Affects Penthouse Global Publishing, Inc.
18  ☐ Affects GMI Online Ventures, Ltd.       NOTICE OF MOTION AND MOTION
    ☐ Affects Penthouse Digital Media Productions, Inc.   FOR ORDER APPROVING
19  ☐ Affects Tan Door Media, Inc.            SETTLEMENT WITH DREAM MEDIA,
                                              INC.; MEMORANDUM OF POINTS AND
20  ☐ Affects Penthouse Images Acquisitions, Ltd.   AUTHORITIES; DECLARATION OF
    ☐ Affects Pure Entertainment Telecommunications, Inc.   DAVID K. GOTTLIEB IN SUPPORT
21  ☐ Affects XVHUB Group, Inc.               THEREOF
22  ☐ Affects General Media Communications, Inc.   **Hearing:**
    ☐ Affects General Media Entertainment, Inc.   Date:      May 9, 2018
23  ☐ Affects Danni Ashe, Inc.                Time:      1:30 p.m.
    ☐ Affects Streamray Studios, Inc.         Place:     United States Bankruptcy Court
24                                                       21041 Burbank Boulevard
                                                         Courtroom 303
25                                                       Woodland Hills, California
26                                            Judge:     Hon. Martin R. Barash
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313716.1 32277/001

1  **TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE;**

2  **ALL PARTIES RECEIVING CM/ECF NOTICE; THE OFFICE OF THE UNITED STATES**

3  **TRUSTEE; AND PARTIES REQUESTING SPECIAL NOTICE:**

4      **PLEASE TAKE NOTICE** that David K. Gottlieb, in his capacity as Chapter 11 Trustee (the

5  "Trustee") of the above-captioned bankruptcy estates (the "Estates") of Penthouse Global Media,

6  Inc. and its debtor subsidiaries (the "Debtors"), hereby moves (the "Motion") the Court for entry of

7  an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

8  Rules") to approve a settlement ("Settlement") between the Trustee and Dream Media, Inc. ("Dream

9  Media", the "Parties").  The terms of the settlement are specifically set forth in the Settlement

10  Agreement, a copy of which is attached as Exhibit 1 to the Declaration of David Gottlieb (the

11  "Gottlieb Declaration") annexed hereto.

12      **PLEASE TAKE FURTHER NOTICE** that a hearing regarding the Motion has been

13  scheduled for **May 9, 2018, at 1:30 p.m. Pacific Time**, or as soon thereafter as counsel may be

14  heard before the Honorable Martin R. Barash, United States Bankruptcy Judge, in Courtroom 303,

15  21041 Burbank Boulevard, Woodland Hills, California 91367.

16      **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion

17  and Motion, the Memorandum of Points and Authorities and Declaration of David K. Gottlieb

18  annexed thereto (the "Motion Pleadings"), the record in these chapter 11 cases ("Cases"), as well as

19  any other documentary evidence as may be presented to this Court, Bankruptcy Rule 9019(a) and

20  Local Bankruptcy Rule 9013-1.

21      **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f),

22  if you wish to oppose the Motion, you must file a written response with the Court and serve a copy

23  of it upon the undersigned counsel no later than fourteen (14) days prior to the hearing on the

24  Motion.  The failure to properly file and serve an opposition may be deemed consent to the relief

25  requested in the Motion or a waiver of any right to oppose the Motion.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

DOCS_LA:313716.1 32277/001

1      **WHEREFORE**, The Trustee respectfully requests that the Court (a) grant the Motion, (b)

2   approve the Settlement Agreement, (c) authorize the Trustee to take such actions as are reasonable

3   and necessary to implement the Settlement Agreement, and (d) grant such other relief as is just and

4   proper under the circumstances.

5   DATED: April 18, 2018         PACHULSKI STANG ZIEHL & JONES LLP

6

7                   By:   */s/ Linda F. Cantor*

8                   Proposed Attorneys for David K. Gottlieb, Chapter 11
Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

DOCS_LA:313716.1 32277/001

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

By way of the Motion, the Trustee in his capacity as Chapter 11 Trustee of the Estates seeks approval of a compromise memorialized in the Settlement Agreement, that will resolve the amount, scope and validity of the secured claim asserted by Dream Media Corporation ( "Dream Media") against the Debtors, the potential challenges to the Dream Media claim raised by the Trustee and the objection to the Dream Media claim filed by the Debtors.  As set forth in greater detail herein and in the Settlement Agreement (an executed copy of which is appended to the Gottlieb Declaration as Exhibit A), the settlement provides for[1] (a) the allowance of the Dream Media claim in the amount of $10,440,903.14 as of the petition date (the "Allowed Dream Media Claim")[2]; (b) Dream Media shall be the stalking horse bidder at an auction of the Debtors' assets to be held on or about June 1, 2018, with an initial credit bid of $3 million, provided that Dream Media may credit bid up to the amount of the Allowed Dream Media Claim; (c) a substantial carve out and release of Dream Media's liens, claims and interests as against certain assets of the Debtors up to $1.8 million (exclusive of avoidance actions) for the benefit of the Estates; (d) Dream Media will consent to the Trustee's use of cash collateral through the close of sale of the auction; (e) the assignment to Dream Media of the Vice Coin receivable (as defined below);and (f) broad mutual releases and waivers of California Civil Code § 1542 and similar laws by the Trustee and Dream Media.

The Trustee submits that the Settlement Agreement is beneficial to the Estates and satisfies prevailing legal standard of falling within the lowest range of reasonableness.  Without the settlement, the Trustee would have to engage in highly contested litigation of disputed claims which the Trustee estimates could cost the Estates significant legal expenses, without a substantial likelihood of success.  Because the Settlement provides the Estates with a substantial carve-out which would not otherwise be available, the Trustee does not see how the uncertain litigation could

---

[1] While the summary herein of the principal terms of the Settlement Agreement is intended to be accurate, parties in interest should read the full Settlement Agreement for the complete terms and if there is any discrepancy between the summary herein and the Settlement Agreement, the terms of the Settlement Agreement control.
[2] If Dream Media is oversecured, the Allowed Dream Media Claim will increase by $200,000 per month (representing interest on the Allowed Dream Media Claim) up to the aggregate value of the Debtors' assets.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313716.1 32277/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

be in the best interest of the Estates. Thus, the Trustee requests that the Settlement with Dream Media be approved.

## II.

## FACTUAL BACKGROUND

1.      The instant cases were commenced by the filing of voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on January 11, 2018 (the "Petition Date").

2.      This Court has jurisdiction of this matter under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(M).

3.      Prior to the appointment of the Trustee, the Estates acted as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Court entered an Order Approving the Motion for Joint Administration on of the Debtors' cases on January 16, 2018 [Dkt. No.17] designating the case of In re Penthouse Global Media, Inc., Case No. 1:18-bk-10098 as the "Lead Case."

5.      On February 21, 2018, the Court held a status conference, at which time it was determined that the appointment of a chapter 11 trustee of the Estates was appropriate. On March 2, 2018, the Court entered its order directing the appointment of a chapter 11 trustee [Docket No. 231] on March 6, 2018 at the Office of the United States Trustee appointed David K. Gottlieb as the chapter 11 trustee in the cases [Dkt. No. 239].

6.      A description of the Debtors' background, capital structure, the events leading to these bankruptcy filings and the next steps for the Chapter 11 Cases are set forth in the Declaration of Kelly Holland filed on January 23, 2018 (the "Master Declarations of Kelly Holland and Catherine Brandt") [Dkt. No. 42].

DOCS_LA:313716.1 32277/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# III.

## STATEMENT OF FACTS

**A.    The Settlement**

The Trustee solely in his authority as trustee for the estates of the Debtors, has reached an agreement with Dream Media to settle various disputes relating to the secured claim asserted by Dream Media against the Debtors.  As set forth in its *Memorandum of Points and Authorities in Support of Dream Media Corporation's Motion for Relief from the Automatic Stay under 11 U.S.C. § 362 (Personal Property)* [Dkt. No. 60] and the declarations in support thereof [3], in February 2016, Debtors borrowed the aggregate sum of $9,000,000 from ExWorks Capital Fund I, L.P ("ExWorks").  On or about November 21, 2017, Dream Media acquired all right, title and interest in the ExWorks loans, including all liens and security interests in the Debtors' assets, including intellectual property assets and contract rights and account receivables.  Dream Media contends that the loans are secured by first priority and perfected security interests against all assets of the Debtors' Estates.

The loans were scheduled to mature in February 2017, but the maturity date was extended until April 30, 2018.  Monthly payments haven't been made since June 2017, and the loans have been accelerated and are now due and owing.  On January 9, 2018, Dream Media sought to recover the unpaid loans, take possession of its collateral, and appoint a receiver.  On January 11, 2018, the Debtors filed chapter 11 petitions in this court.

Dream Media now contends it is owed $10,440,903.14 as of the petition date, and that its debt, if oversecured, increases by $200,000.00 monthly.  On April 4, 2018, Dream Media filed its proof of claim with this Court.  On February 26, 2018, the Debtors filed an objection to the anticipated Dream Media claim on the grounds that the loan was usurious under California law.  Dream Media contends that objection is without merit since Illinois law applies under the loan agreements, and therefore California's usury law is irrelevant.

Both the Trustee and Dream Media believe the following:

---

[3] The Trustee respectfully requests that the Court take judicial notice of the Court record in these cases pursuant to Federal Rule of Evidence 201.

DOCS_LA:313716.1 32277/001

1.    There is insufficient liquidity in the Estates to enable the Trustee to operate the Debtors' business on any long term basis and to enhance or preserve the value of the Debtors' business on any long term basis;

2.    The continuation of these bankruptcy cases is likely to result in the devaluation of the Debtors' business;

3.    In the absence of a viable plan of reorganization, the Trustee proceeding with a sale of substantially all of the assets of the Estates is in the best interests of the Estates; and

4.    Absent a carve-out from Dream Media or the Trustee's success in substantially risky litigation with Dream Media, there are no assets in the Estates that are clearly not encumbered in favor of Dream Media, rendering it impossible for the Trustee to administer the Estates properly without the consent of Dream Media or litigation with Dream Media.

In order to avoid the costs and risks and delay associated with litigation, and to facilitate a sale designed to maximize the value for the Estates which otherwise would not exist, and provide the Trustee with continued cash collateral use to enable the Trustee to operate the Debtors' business through the closing of an asset sale and to provide the Estates with a substantial carve-out to for the benefit of the Estates, the Trustee and Dream Media have entered into a settlement agreement (the "Settlement Agreement").

The Settlement Agreement provides for the following:

a.    Dream Media shall have an allowed claim of $10,440,903.14 as of the petition date, and if the value of the Debtors' assets is greater than the allowed claim amount, then Dream Media's claim value will increase by $200,000.00 per month up to the aggregate value of the Debtors' assets until paid.

b.    The Trustee will conduct an auction substantially of all of the assets of the Estates (collectively, the "Purchased Assets"), excluding cash, avoidance actions, the Vice Coin receivable and the Club Owners license agreement.  The auctions shall be held on June 1, 2018 or the first available court date thereafter.  Eligible bidders will provide the Trustee with a cash deposit of $250,000, but Dream Media is already deemed to be financially

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

qualified and not required to make the cash deposit.  Dream Media will be the stalking horse bidder with a credit bid at the commencement of the Auction of $3.0 million.

      c.      Overbids will be in increments of $100,000 or a number wholly divisible by $100,000.  Dream Media will have the right to credit bid at the Auction up to the full amount of the Allowed Dream Media Claim.

      d.      If Dream Media wins with its credit bid of $3 million, it will pay the Trustee $550,000 in cash as a carve-out free and clear of Dream Media's claims and liens.  If someone other than Dream Media wins, Dream Media will provide the same $550,000 cash payment to the Trustee.

      e.      If the winning bid is more than $3 million and someone other than Dream Media is the purchaser, Dream Media will be paid $ 3million plus 90% of the extent to which the winning  bid is higher than $3million up to a sum of $10 million, and 80% of that portion of the winning bid which is higher than $10 million.  In that event, the Trustee will be paid the balance of the purchase price (i.e., 10% of the extent to which the winning bid is higher than $3million up to $10 million and 20% of that portion of the winning bid which is higher than $10 million) plus Dream Media will pay $550,000 to the Trustee as a carve out, all of which will be free and clear of Dream Media's claims and liens.

      f.      If the Trustee proceeds with an agreement with the Club Owners relating to affirmation or modification of the Club License (subject to overbid or not at the Trustee's discretion), the Trustee shall split the proceeds of any such agreement with Dream Media – 50% to Dream Media and 50% to the Trustee on the first $1 million in proceeds and 25% to Dream Media and 75% to the Trustee on all proceeds in excess of $1 million.  Any such transaction with Club Owners (or any other party) shall be structured in a manner that does not negatively impact upon Dream Media's collateral (if the transaction occurs prior to the Auction) and does not negatively impact upon Dream Media's ownership of the Purchased Assets (if the transaction occurs after the Auction and Dream Media is the winning bidder for the Purchased Assets at the Auction), including not creating any naked or abandoned marks.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313716.1 32277/001

The Trustee must obtain the prior written approval from Dream Media on the form of any such agreement.

g.    All right, title and interest of the Estates in and under the Amendment to Trade-Mark and Trade-Name License Agreement made as of December 29, 2017 between Penthouse Global Media Inc. as Licensor and Tokken MSB Inc. O/A/ Vice.Org as Licensee (the "Vice Coin Receivable") shall be assigned and transferred to Dream Media. Dream Media shall pursue collection of the Vice Coin Receivable in the Bankruptcy Court for the benefit of the Estates. Dream Media shall receive 90% of any net recovery obtained from the pursuit of the Vice Coin Receivable, with any such net recovery retained by Dream Media to reduce the Allowed Dream Media Claim. The Trustee shall receive 10% of any net recovery.

h.    Dream Media agrees that any funds in or derived from the Debtors' Merchant Bank Account do not constitute its cash collateral and are free and clear of Dream Media's liens, claim and interests.

i.    If the carve-outs from Dream Media's collateral collected by the Trustee amount to $1.8 million (excluding avoidance actions), and the Allowed Dream Media Claim has not yet been paid in full, all additional funds recovered by the Trustee or from the pursuit of the Vice Coin Receivable will be paid to Dream Media until its allowed claim has been paid in full. Notwithstanding the foregoing, if at the time of the closing of the Trustee's sale of the Purchased Assets the Trustee is in possession of any cash resulting from the operation of the Debtors' business (not including any funds in or derived from the Merchant Bank Accounts), the Trustee shall be authorized to use such cash to pay any non-professional post-petition expenses incurred by the Estates (including, without limitation, the fees of an investment banker or sales agent retained by the Trustee to assist the Trustee to sell the Purchased Assets) and not have the amount of such cash used by the Trustee for this purpose be counted against the $1.8 million figure referenced above in this paragraph.

j.    The Trustee shall have continued use of Dream Media's cash collateral through the closing of the sale of the Purchased Assets pursuant to mutually acceptable budgets prepared by the Trustee and approved by Dream Media and the Bankruptcy Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

k.     Pending the closing of the sale of the Purchased Assets, the Trustee will not sell, license lease or encumber any of the assets of the Estates without the prior written consent of Dream Media and this Court and in his capacity as Trustee of these Estates, the Trustee will take all reasonable steps to prohibit the Debtors from doing so.  Until the Dream Media allowed claim is paid in full, Dream Media will receive copies of all financial information prepared by or available to the Trustee, and the Trustee will provide Dream Media with physical access to the Debtors' business premises on reasonable advanced notice. Dream Media will also have the right to audit the Debtors' books and records until their allowed claim is paid in full.

l.      The Trustee and Dream Media will exchange mutual releases and waivers of California Civil Code § 1542 and similar laws by the Trustee and Dream Media.

## IV.

## ARGUMENT

### A.    The Standard of Review

Bankruptcy Rule 9019(a) sets forth the requirements for the settlement or compromise of controversies after notice to all creditors and a hearing upon each such proposed compromise. Bankruptcy courts favor compromise.  *See In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise … rests in the sound discretion of the bankruptcy judge.").  In reviewing a settlement, bankruptcy courts must determine whether the settlement is "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968).  When deciding whether to approve a settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate. *See Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986).  Here, it seems clear that under the circumstances of this case, the Settlement between the Trustee and Dream Media meets this standard.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The United States Court of Appeals for the Ninth Circuit has indicated that in determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, a court should consider the following factors: (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to their reasonable views in the premises (collectively, the "Woodson Factors"). *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988) (quoting *A & C Props.*, 784 F.2d at 1380). It is not necessary that all of the conclusions reached in the consideration of each of the Woodson Factors support the settlement, but taken as a whole, those conclusions must favor the approval of the settlement. *See In re Pacific Gas & Elec. Co*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)). "Ultimately, the court must determine whether the individual settlement sought to be approved under Bankruptcy Rule 9019(a) falls within the lowest range of reasonableness." *In re TCI2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010).

**B.** **The Settlement Agreement Satisfies the Rule 9019(a) Standard**

As discussed below, consideration of the Woodson Factors supports Court approval of the proposed Settlement.

1. **Probability of Success**

The Trustee faces two potential litigations with Dream Media over its claim. First the Trustee could contest the priority and perfection of Dream Media's security interests in the Debtors' assets. Second, the Trustee could pursue the Debtors' Objection to the Dream Media claim as usurious. The Trustee believes that neither prospect provides any significant probability of success for the Estates.

The Trustee instructed his professionals, as part of the due diligence investigation of the Dream Media loan, to review the priority and perfection of Dream Media's security interests in the Debtors' assets. The Trustee has been informed that no clear issue was found on any of the perfected interests of Dream Media on the Debtors' assets other than the Penthouse Club License trademarks, the liens against which were released by Dream Media. However, Dream Media asserts

11

a secured claim as against the Penthouse Club License Agreement as a general intangible and while the ultimate outcome of such litigation may be favorable to the Trustee, the cost of such litigation would further drain the Estates' assets and the carve-outs under the Settlement Agreement and continued use of cash collateral to maintain operations pending a sale provide more value to the Estates than would be the net results after costly litigation and the cessation of operations.

With respect to the Debtors' Objection to the Dream Media claim on the grounds that it is usurious under California law, the Trustee is relying on the following information from his counsel: (1) the loan agreement contains a choice of law provision that Illinois laws apply; (2) the Debtors' Objection does not cite to any case that accepted the application of California's usury laws when the loan documentation provided for another state's law to apply; (3) there were many cases that declined to apply California's usury law in a similar situation; and (4) there was one case in California that refused to dismiss as a matter of law the application of California's usury laws where the loan documentation provided for Colorado state law to apply, and remanded for further fact finding.

Relying on these four information bases, the Trustee has concluded that, while the Objection may not be untenable, he does not have a substantial likelihood of prevailing on the issue that California's usury laws apply. There appears to be an absence of clear authority supporting the use of California usury laws with another State's choice of law provision in the loan agreement. Even though Dream Media's claim of $10.4 million (valued as of the petition date), would be reduced by as much as $6 million if the objection were successful, the Trustee estimates the Estates would incur substantial legal fees litigating the facts and circumstances to completion, and incur appellate fees, and the passage of substantial time, only to result in, most likely, a disappointing outcome.

2.    **Difficulties With Collection**

This factor does not apply.

3.    **The Complexity of the Litigation**

The discussion with factor no.2 covers this factor.

4.    **Interests of Creditors**

DOCS_LA:313716.1 32277/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1        The Trustee in his capacity as Trustee of these Estates believes the interests of

2   creditors are best served by entering into the Settlement Agreement with Dream Media.  There are

3   no alternatives presented, no plans of reorganization filed with the court or draft plans provided to

4   the Trustee.  Without cash collateral relief from Dream Media, the Trustee cannot continue to

5   operate the Debtors business.  The Settlement Agreement provides for a prompt, fair and efficient

6   resolution of the Dream Media claim dispute without substantial and risky litigation, in addition to

7   the fact that the Settlement Agreement provides a carve-out and a mechanism for value to flow to the

8   Estates in what may otherwise be over-encumbered Estates.  Under the circumstances of these cases,

9   the Settlement Agreement is fair, reasonable and in the best interests of creditors.

10  **C.    Adequate Notice of the Motion Has Been Given**

11       Notice of the Motion the hearing thereon has been given to (1) the Debtors; (2) all parties

12  receiving notice through the Court's CM/ECF electronic notification system; (3) the Office of the

13  United States Trustee; (4) Dream Media; and (5) all parties who have requested special notice of

14  matters arising in the Case.  A separate notice of this Motion is being mailed to all creditors.

15  Accordingly, adequate notice of the Motion has been given.

16  **V.**

17  **CONCLUSION**

18       **WHEREFORE,** the Trustee respectfully requests that this Court enter an order (a)

19  approving the Settlement; (b) authorizing the Parties to enter into and take any and all actions

20  reasonably necessary to effectuate the Settlement; and (c) granting the Trustee such other and further

21  relief as the Court deems just and proper.

22  Dated:  April 18, 2018           PACHULSKI STANG ZIEHL & JONES LLP

23

24               By: */s/ Linda F. Cantor*
                     Linda F. Cantor

25                   Attorneys for David K. Gottlieb, Chapter 11 Trustee

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313716.1 32277/001

### DECLARATION OF DAVID K. GOTTLIEB

I, David K. Gottlieb, declare as follows:

1.     I am the duly appointed chapter 11 trustee ("Trustee") of the estates of Penthouse Global Media, Inc. ("PGMI") and its affiliated debtor entities whose cases are being jointly administered with the PGMI case.

2.     I make this Declaration in support of the Notice Of Motion And Motion For Order Approving Settlement With Dream Media, Inc.; Memorandum Of Points And Authorities And Declaration Of David K. Gottlieb (the "Motion") in support thereof  to which this Declaration is annexed.  All matters set forth in this Declaration are based on my personal knowledge and my review of relevant documents, including, without limitation, information supplied to me by my professionals, the Debtor and by others, as well as matters for which judicial notice is sought.  If called upon to testify, I could and would testify competently to the facts set forth herein.  Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

3.     The Debtors' Estates face two potential litigations with Dream Media over its claim. First, in my capacity as the authorized representative of the Estates, I could contest the priority and perfection of Dream Media's security interests in the Debtors' assets.  Second, in the same capacity, I could join the Debtors' Objection to the Dream Media claim as usurious or maintain my own objection.  Neither prospect provides any significant probability of success.

4.     I instructed my professionals, as part of the due diligence investigation of the Dream Media loan, to review the priority and perfection of Dream Media's security interests in the Debtors' assets.  I was informed that no clear issue was found on any of the perfected interests of Dream Media on the Debtors' assets other than the Penthouse Club License trademarks, the liens against which were released by Dream Media.  However, Dream Media asserts a secured claim as against the Penthouse Club License Agreement as a general intangible and while the ultimate outcome of such litigation may be favorable, the cost of such litigation would further drain the Estates' assets and the carve-out under the Settlement Agreement and continued use of cash collateral to maintain operations pending a sale provide more value to the Estates than would be the net results after costly litigation and the cessation of operations.

14

5.    With respect to the Debtors' Objection to the Dream Media claim on the grounds that it is usurious under California law, I am relying on the follow information from my counsel: (1) the loan agreement contains a choice of law provision that Illinois law apply; (2) the Debtors' Objection does not cite to any case that accepted the application of California's usury laws when the loan documentation provided for another state's law to apply; (3) there were many cases that declined to apply California's usury law in a similar situation; and (4) there was one case in California that refused to dismiss as a matter of law the application of California's usury laws where the loan documentation provided for Colorado state law to apply, and remanded for further fact finding.

6.    Relying on these four informational bases, I concluded that while the Objection may not be untenable, there appears to be an absence of clear authority supporting the application of California's usury laws where the loan agreement provides for Illinois law to apply.  Therefore, the probability of success of such an argument is not great and it would involve potentially expensive fact-finding litigation, which would cost the Estates money.  Although Dream Media's claim of $10.4 million (valued as of the Petition date) would be reduced by as much as $6 million, I believe litigating the Objection would involve substantial litigation and time, without a substantial likelihood of success.

7.    I believe in my capacity as Trustee of these Estates that the interests of creditors are best served by entering into the Settlement Agreement with Dream Media.  There are no alternatives presented, no plans of reorganization filed with the court or draft plans provided to me or my professional.  Without cash collateral relief from Dream Media, the Trustee cannot continue to operate the Estates.  The Settlement Agreement provides for a quick resolution of the Estates' assets, with some of the proceeds from that resolution to go to creditors.  Without any other feasible alternative, the Settlement Agreement is clearly in the best interests of creditors.

/ / /

/ / /

/ / /

/ / /

/ / /

15

DOCS_LA:313716.1 32277/001

8.     A true and correct copy of the executed Settlement Agreement is attached hereto as Exhibit "A".

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of April, 2018 at Encino, California.

David K. Gottlieb

DOCS_LA:313716.1 32277/001

# Exhibit A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is hereby entered into on this 17th day of April, 2018 by and between Dream Media Corporation ("Dream Media") and David K. Gottlieb (the "Trustee") in his capacity as the chapter 11 trustee of all of the following chapter 11 debtors: Penthouse Global Media, Inc. ("Penthouse"); Penthouse Global Broadcasting, Inc.; Penthouse Global Licensing, Inc.; Penthouse Global Digital, Inc.; Penthouse Global Publishing, Inc.; GMI Online Ventures, Ltd., Penthouse Digital Media; Productions, Inc.; Tandoor Media, Inc.; Penthouse Images Acquisitions, Ltd., Pure Entertainment; Telecommunications, Inc., fka For Your Ears Only, Ltd.; XVHUB Group, Inc., fka Giant Swallowtail Inc.; Global Publishing, Inc.; General Media Communications, Inc.; General Media Entertainment, Inc., fka Penthouse Video, Inc.; Danni Ashe, Inc.; and Streamray Studios, Inc. (collectively, the "Debtors"), with reference to the following (each party herein shall be singularly referred as a "Party" and all parties herein shall be collectively referred to as the "Parties"):

## RECITALS

A.    In February, 2016, Penthouse borrowed the aggregate sum of $9,000,000 (the "Loans") from ExWorks Capital Fund I, L.P. ("ExWorks").

B.    On November 21, 2017, pursuant to that certain Assignment and Assumption Agreement between Dream Media and ExWorks, Dream Media acquired all right, title and interest of ExWorks in and to the Loans (the

1

"Loan Assignment").  In connection with the Loan Assignment, Dream Media and ExWorks also assigned to Dream Media all of ExWorks' liens and security interests in the Debtors' assets, including, but not limited to, the Debtors' Copyrights, Trademarks and Intellectual Property, as well as contract rights and accounts receiveables as outlined in the underlying Loan and Security Agreement and related documents.

C.    Dream Media contends that the Loans are secured by first priority and perfected security interests against all assets of the Debtors' bankruptcy estates (the "Estates").

D.    The Loans were originally scheduled to mature in February, 2017.  Through certain amendments to the terms of the Loans, the maturity date of the Loans was extended to April 30, 2018.  However, due to multiple monetary and non-monetary defaults, the Loans have been accelerated and are now due and owing.

E.    In June 2017, Penthouse failed to make the monthly payment then due under the Loans, and has failed to make any payments on the Loans thereafter.[1]

F.    In September, 2017, ExWorks delivered to the Debtors a letter providing written Notice of Default and Reservation of Rights.  The Debtors never cured the defaults.

---

[1] There were a limited number of pre-petition sweeps conducted by Ex Works of the Debtors' funds but those amounts were substantially less than the required debt-service payments.

2

G.    Dream Media contends that in or about December 2017, Penthouse acknowledged to Dream Media that the Debtors had been falsifying their internal and external accounting records, and had suffered millions of dollars of losses since the inception of the Loans.

H.    On January 9, 2018, Dream Media filed its Complaint in the Los Angeles Superior Court, bearing Case No. BC 689593 commencing a lawsuit to, *inter alia*, recover the unpaid Loans, take possession of its collateral that secures the Loans, and obtain the appointment of a receiver to protect and preserve the assets (the "State Court Action").

I.    On January 11, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the bankruptcy code with the United States Bankruptcy Court, Central District of California, San Fernando Valley Division (the "Bankruptcy Court"), commencing the Debtors' chapter 11 bankruptcy cases (the "Bankruptcy Cases").

J.    Pursuant to an order entered on March 2, 2018, as Docket Number 231, the Bankruptcy Court ordered the appointment of a chapter 11 trustee.  Pursuant to an order entered on March 6, 2018 as Docket Number 239, David K. Gottlieb was appointed as the Trustee for each of the Debtors' Bankruptcy Cases.

K.    Dream Media contends that it is owed $10,440,903.14 as of the Petition Date and that its debt, provided it is oversecured, increases by approximately $200,000 per month following the Petition Date.  On April 4,

3

2018, Dream Media filed its proof of claim with the Bankruptcy Court in each
of the Debtors' Bankruptcy Cases.

   L.    On February 26, 2018, the Debtors filed an objection to Dream
Media's claim (the "Dream Media Claim Objection") as Docket No. 196.
Dream Media contends that the Dream Media Claim Objection lacks any
merit and that there is no legitimate legal basis for the Dream Media Claim
Objection.

   M.    Both the Trustee and Dream Media believe that (i) there is
insufficient liquidity in the Estates to enable the Trustee to operate the
Debtors' business on any long-term basis and to enhance or to preserve the
value of the Debtors' business on any long-term basis; (ii) the continuation
of the Bankruptcy Cases is likely to result in the devaluation of the Debtors'
business; (iii) in the absence of a viable plan, the Trustee proceeding with a
sale of substantially all of the assets of the Estates is in the best interests of
the Estates; and (iv) absent a carve-out from Dream Media or substantial
risk of litigation with Dream Media, there are no assets in the Estates that
are clearly not encumbered in favor of Dream Media rendering it impossible
for the Trustee to administer the Estates properly without the consent of
Dream Media or substantial risk of litigation with Dream Media.

   N.    In order to (i) avoid the costs and risks associated with any such
litigation, (ii) facilitate a sale process designed to maximize the value for the
Estates; (iii) provide the Trustee with continued cash collateral consent to

4

enable the Trustee to operate the Debtors' business through the closing of an asset sale; and (iv) provide the Estates with a substantial carve-out to insure a substantial recovery for creditors, Dream Media and the Trustee have reached a settlement agreement that they believe accomplishes all of the foregoing.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the approval of the Bankruptcy Court, Dream Media and the Trustee hereby agree as follows:

<u>AGREEMENT</u>

1.    **<u>Incorporation of Recitals</u>**.  The Parties hereby agree that Recitals, paragraphs A-N, inclusive, and all of their content, are incorporated herein by reference as though set forth in full herein.

2.    **<u>Submission of this Agreement to the Bankruptcy Court and Required Bankruptcy Court Approval</u>**.  Within one business day following the date of execution of this Agreement by the Parties, the Trustee will file a motion (the "<u>Settlement Motion</u>") with the Bankruptcy Court seeking the Bankruptcy Court's approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.  The effectiveness of this Agreement is expressly subject to the approval of this Agreement by the Bankruptcy Court.  The Trustee will use his reasonable best efforts to have the hearing on the Settlement Motion be heard on a shortened time basis,

5

on the first date available to the Court, to maximize the Trustee's sale timeline.

3. **Fixing the Allowed Amount of and Validating Dream Media's Claim and Validating Dream Media's Liens**.  Dream Media's claim will be deemed fixed and allowed in the amount of $10,440,903.14 as of the Petition Date (the "Dream Media Petition Date Claim Amount") and, if it turns out that the value of all of the Debtors' assets (excluding avoidance actions) is greater than the Dream Media Petition Date Claim Amount, then the Dream Media Petition Date Claim Amount will increase by $200,000 per month up to the aggregate value of all such assets until paid (with any partial month prorated) (the "Full Dream Media Claim").  Within three business days following the Bankruptcy Court's entry of an order approving this Agreement, the Trustee, as the legal representative of the Estates, shall take all steps necessary to withdraw with prejudice the Debtors' pending Dream Media Claim Objection, and the Trustee agrees that he is prohibited from ever filing any objection to Dream Media's claim which is being fixed and allowed under this Agreement.

4. **Auction Sale**.  The Trustee will seek Bankruptcy Court authority to conduct an auction sale (the "Auction") of all of the assets of these Estates (excluding cash, avoidance actions, the Vice Coin receivable, and the Club Owners license agreement)(collectively, the "Purchased Assets"), with the Auction to be held on June 1, 2018 or the first available date thereafter if

6

June 1, 2018 is not available to the Bankruptcy Court. The Parties will request the Bankruptcy Court to enter the sale order immediately after the Auction is completed or as soon thereafter as is possible. The sale closing shall occur by June 15, 2018. Only financially qualified bidders (as determined by the Trustee) will be eligible to bid at the Auction, with financially qualified to mean, at a minimum, that the bidder has the funding available to it at the time of the Auction to pay the proposed purchase price (meaning, no financing contingency). In order to be eligible to bid at the Auction, in addition to being financially qualified, all prospective overbidders will be required to provide the Trustee with a cash deposit of $250,000 at least two business days prior to the Auction, which deposit will be completely non-refundable and forfeited to the Trustee as liquidated damages if the winning bidder fails to close its purchase by June 15, 2018, due to the fault of the bidder. Dream Media is already deemed to be financially qualified and is not required to provide the Trustee with any bidding deposit in advance of the Auction. The Auction will commence with a credit bid by Dream Media of $3.0 million. All subsequent bidding must be in increments of $100,000 or figures which are wholly divisible by $100,000. The minimum initial overbid must be at least $3.1 million. All bids submitted by any bidder other than Dream Media must be for all cash. Dream Media shall have the right to credit bid its debt up to the amount of the Full Dream Media Claim in connection with the sale of the Purchased Assets by the

7

Trustee. If there is no overbid submitted at the Auction, the Purchased Assets will be sold to Dream Media free and clear of all liens, claims and interest with all usual and customary protections in the sale order, including a good faith finding (with the form of the sale order to be approved by Dream Media), for a credit bid of $3.0 million, in which case Dream Media will deliver a cash payment to the Trustee in the amount of $550,000 as a carve out which will be free and clear of Dream Media's claims and liens. Also, if someone other than Dream Media is deemed to be the winning bidder at the auction and the winning bidder fails to close its purchase by June 15, 2018 due to the fault of the buyer, the Purchased Assets will be sold to Dream Media for a credit bid of $3.0 million on the same terms as described above, in which case Dream Media will deliver a cash payment to the Trustee in the amount of $550,000 as a carve out which will be free and clear of Dream Media's claims and liens, and the Trustee will retain the $250,000 deposit forfeited by the winning bidder for its failure to close, which will also be free and clear of Dream Media's claims and liens.

5. **Allocation of Sale Proceeds and Carve Out**. If the winning bid at the Auction is more than $3 million and the winning bidder is someone other than Dream Media, then concurrently with the sale closing, (i) Dream Media will be paid $3.0 million plus 90% of the extent to which the winning bid is higher than $3.0 million up to the sum of $10 million, and 80% of that portion of the winning bid which is higher than $10 million; and (ii) the

Trustee will be paid the balance of the purchase price (i.e., 10% of the extent to which the winning bid is higher than $3.0 million up to $10 million and 20% of that portion of the winning bid which is higher than $10 million), plus Dream Media will pay $550,000 to the Trustee as a carve out, all of which will be free and clear of Dream Media's claims and liens.  If there is bidding at the Auction and the winning bidder is Dream Media, then the Purchased Assets will be sold to Dream Media for the amount of the winning bid free and clear of all liens, claims and interest with all usual and customary protections in the sale order, including a good faith finding (with the form of the sale order to be approved by Dream Media), and concurrently with the sale closing, Dream Media will pay to the Trustee $550,000 plus 10% of the extent to which the winning bid is higher than $3.0 million up to $10 million and 20% of that portion of the winning bid which is higher than $10 million as a carve out, all of which will be free and clear of Dream Media's claims and liens.

6.    **Allocation of Proceeds of any Agreement with the Club Owners**.  If the Trustee proceeds with an agreement with the Club Owners relating to affirmation or modification of the Club License (subject to overbid or not at the Trustee's discretion), the Trustee shall split the proceeds of any such agreement with Dream Media – 50% to Dream Media and 50% to the Trustee on the first $1 million in proceeds and 25% to Dream Media and 75% to the Trustee on all proceeds in excess of $1 million, with the portion

9

retained by the Trustee to be free and clear of Dream Media's claims and liens. If the Trustee desires to consummate a transaction involving the Club License prior to the Auction or if Dream Media is the winning bidder for the Purchased Assets at the Auction, then the Trustee must structure any such transaction with the Club Owners (or any other party) in a manner that does not negatively impact upon Dream Media's collateral (if the transaction occurs prior to the Auction) and does not negatively impact upon Dream Media's ownership of the Purchased Assets (if the transaction occurs after the Auction and Dream Media is the winning bidder for the Purchased Assets at the Auction), including not creating any naked or abandoned marks. If the Trustee desires to consummate a transaction involving the Club License prior to the Auction or if Dream Media is the winning bidder for the Purchased Assets at the Auction, the Trustee must obtain Dream Media's prior written approval on the form of any such agreement.

7. **Treatment of the Vice Coin Receivable**. Concurrently with and as part of the Bankruptcy Court's approval of this Agreement, all right, title and interest of these Estates to the Vice Coin receivable shall be assigned and transferred to Dream Media. Dream Media shall pursue collection of the Vice Coin receivable in the Bankruptcy Court for the benefit of these Estates, with the Bankruptcy Court (provided the Bankruptcy Court is willing) to retain jurisdiction as part of the Bankruptcy Court order approving this Agreement. Dream Media shall retain 90% of any net

10

recovery obtained from the pursuit of the Vice Coin receivable (with "net recovery" to mean any financial recovery after deducting all costs incurred by Dream Media in the pursuit of the Vice Coin receivable, including all legal fees and costs), with any such net recovery retained by Dream Media to serve as a reduction in the amount of the Full Dream Media Claim.  Dream Media will deliver to the Trustee 10% of any net recovery obtained from the pursuit of the Vice Coin receivable as a carve out which will be free and clear of Dream Media's claims and liens.

8.   **Maximum Total Recovery By Dream Media and Maximum Total Recovery By the Trustee Pending Payment in Full of the Full Dream Media Claim**.  The maximum total recovery actually received by Dream Media from (i) any sale of the Purchased Assets to a third party, (ii) any winning credit bid submitted by Dream Media for a sale of the Purchased Assets, (iii) any net recovery from the pursuit of the Vice Coin receivable, (iv) any transaction with the Club Owners, or (v) otherwise, will be the Full Dream Media Claim.  Also, if at any time the Trustee has recovered at least $1.8 million into these Estates, from any sources (but, in all events, excluding recoveries from avoidance actions), and the Full Dream Media Claim has not yet been paid in full, all additional funds recovered by the Trustee (or from the pursuit of the Vice Coin receivable) will be paid to Dream Media until the Full Dream Media Claim has been paid in full.  If at the time of the closing of the Trustee's sale of the Purchased Assets the

11

Trustee is in possession of any cash resulting from the operation of the Debtors' business (not including any funds in or derived from the Merchant Bank Accounts), the Trustee shall be authorized to use such cash to pay any non-professional post-petition expenses incurred by the Estates (including, without limitation, the fees of an investment banker or sales agent retained by the Trustee to assist the Trustee to sell the Purchased Assets) and not have the amount of such cash used by the Trustee for this purpose be counted against the $1.8 million figure referenced above in this Paragraph.

9.   **The Trustee's Continued Use of Dream Media's Cash Collateral**.  As part of this Agreement, Dream Media will consent to the Trustee's continued use of cash collateral through the closing of the sale of the Purchased Assets pursuant to mutually acceptable budgets to be prepared by the Trustee and approved by Dream Media and the Bankruptcy Court.  Dream Media agrees that any funds in or derived from the Merchant Bank Account do not constitute its cash collateral and are free and clear of Dream Media's liens, claim and interests.

10.   **Other Transactions By the Trustee**.  Pending the closing of the sale of the Purchased Assets, other than the transaction with the Club Owners described above, the Trustee hereby agrees that he is not permitted to sell, lease, license or encumber any assets of these Estates without the prior written consent of Dream Media and the consent of the Bankruptcy Court, and, in his capacity as the Trustee, the Trustee will take all

12

reasonable steps necessary to prohibit the Debtors (who are no longer Debtors-In-Possession, given the appointment of the Trustee) from doing so.

11.    **Dismissal of the State Court Action.**    Within five business days following entry by the Bankruptcy Court of an order approving this Agreement, and such order becoming a final order, Dream Media will dismiss and take the steps necessary to dismiss the State Court Action.

12.    **Financial Reporting and Access to the Debtors' Business Premises.**  Unless and until the Full Dream Media Claim has been paid in full, the Trustee will provide Dream Media will copies of all financial information prepared by the Trustee or made available to the Trustee, and the Trustee shall provide Dream Media will physical access to the Debtors' business premises upon reasonable advanced notice provided by Dream Media to the Trustee.

13.    **Dream Media's Audit Rights.**  Unless and until the Full Dream Media Claim has been paid in full, Dream Media shall have the right, at Dream Media's expense, to audit the Debtors' books and records, and the Trustee will provide Dream Media with information concerning the Trustee's administration of the Debtors' Estates.  The Trustee shall also cooperate with any such audits, including making all of the Debtors' books and records and all of the Trustee's books and records as they related to the Debtors available to Dream Media.

13

14. **Mutual Releases.** The Parties to this Agreement hereby agree, effective upon the entry of the Bankruptcy Court order approving this Agreement, to the following releases:

14.1 Other than with respect to Dream Media's obligations to the Trustee under this Agreement and the rights of the Trustee under this Agreement, the Trustee, on behalf of himself and the Estates hereby fully and finally release, remise and discharge Dream Media and ExWorks and any and all of their respective agents, employees, representatives, affiliates, directors, officers, partners, attorneys, assigns, predecessors and successors in interest from any and all claims, demands, and causes of action that exist as of the date of this Agreement or any time prior thereto, including, but not limited to, any claims, demands or causes of action which pertain to, are associated with, arise under or relate to the Loans, the Loan Assignment, the Security Assignment, the State Court Action, or the Bankruptcy Cases

14.2 Other than with respect to the Trustee's obligations to Dream Media under this Agreement and the rights of Dream Media under this Agreement, Dream Media hereby fully and finally releases, remises and discharges the Trustee, the Trustee's professionals and the Estates from any and all claims, demands, and causes of action that exist as of the date of this Agreement or any time prior thereto, recognizing that this release does not have any impact whatsoever upon Dream Media's rights against any individuals and/or third parties on account of any personal guaranties or

14

otherwise, and any rights that Dream Media has in its capacity as a current or prospective equity holder of the Debtors, all of which rights are expressly reserved and retained by Dream Media.

15. **Waiver of Section 1542 of the Civil Code of the State of California**. All of the Parties to this Agreement understand and recognize that they may discover or obtain information in the future pertaining to matters being released herein which they did not know or have as of the date of this Agreement. The releases set forth in paragraph 14 above are expressly intended to cover and include a mutual release by all of the Parties to this Agreement of any claims, demands or causes of action which arise out of, relate to, are connected with, or are incidental to any such information which may be discovered or obtained in the future. All of the Parties to this Agreement therefore expressly waive the provisions of Section 1542 of the Civil Code of the State of California which provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

All of the Parties to this Agreement expressly agree that, notwithstanding the provisions of Civil Code Section 1542, the releases set

forth in paragraph 14 above shall be given full force and effect according to each and all of their expressed terms and provisions, including those relating to unknown and unspecified claims, demands and rights, lawsuits, or other causes of action.

16. **Entire Agreement**. This Agreement, along with the documents and agreements implementing this Agreement, constitutes the entire agreement among the Parties with respect to the subject matter hereof. There are no promises, representations, or other agreements among the Parties concerning the subject matters of this Agreement, except as specifically set forth herein. Each Party expressly acknowledges that, in entering into this Agreement, he or it has not relied upon any statement or representation pertaining to the matters set forth herein made by or on behalf of any other Party.

17. **Beneficiaries**. This Agreement and all of the covenants, conditions and provisions contained herein shall apply to, be binding upon, and inure to the benefit of the respective heirs, administrators, executors, legal representatives, assignees, and successors of the Parties hereto, including ExWorks and any subsequently appointed chapter 7 trustee.

18. **Joint Preparation of this Agreement; Interpretation and Construction.** This Agreement shall, in all respects, be interpreted, enforced, and governed by and under the laws of the State of California. This Agreement is to be deemed to have been jointly prepared by the Parties

16

hereto, and any uncertainty or ambiguity existing herein shall not be interpreted against any other Party based upon that Party's role in the drafting of this Agreement, but instead shall be interpreted according to the application of the rules of interpretation of contracts, if any such uncertainty or ambiguity exists.

19.    **Forum for Dispute Resolution**.  Any dispute arising out of or otherwise related to this Agreement shall be resolved solely by the Bankruptcy Court.

20.    **No Waiver of Dream Media's Equity Rights**.    This Agreement has no impact upon any equity or warrant rights that Dream Media has in the Debtors or any right of Dream Media to receive its pro rata share of any money that is ultimately distributed to the equity holders of the Debtors.

21.    **Legal Fees Provision**.    In the event that either Party to this Agreement institutes any action or proceeding to enforce, construe, or interpret any rights granted hereunder, each Party in any such action or proceeding shall bear its own attorney's fees and costs.

22.    **Prompt Performance of Obligations and Good Faith**.    The Parties to this Agreement hereby agree to perform promptly all such further acts, provide such further information, and to execute and deliver any and all further documents that may reasonably be necessary or desirable to effectuate the purpose of this Agreement.    The Parties to this Agreement

17

hereby agree to use their reasonable and good faith efforts to resolve any disputes which arise under this Agreement or the documents and agreements implementing this Agreement.

23. **Knowledge of this Agreement and Authority to Enter into and to Execute this Agreement**. The Parties to this Agreement hereby warrant and represent that he or it (a) has voluntarily and knowingly executed this Agreement, (b) has read this Agreement and understands all of its terms, (c) has the authority to enter into this Agreement (subject to the Bankruptcy Court's approval of this Agreement in the case of the Trustee), (d) has executed this Agreement, with full knowledge of its significance, without relying upon any warranties or representations, except those set forth herein, (e) is competent and capable of understanding this Agreement, (f) was not under the influence of any substance or condition that could, or did, impair his or her ability to comprehend the meaning of this Agreement at the time he or it executed this Agreement, and (g) is represented by the counsel of his or its choosing and has taken the opportunity to consult with counsel on the meaning and significance of this Agreement and each of its terms.

24. **Counterpart Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument. Facsimile

or electronically transmitted signatures to this Agreement shall be deemed to have the same force and effect as original signatures.

25. **Severability**.   If any term, clause, or provision in this Agreement is found to be unenforceable or invalid by any authority of competent jurisdiction, the validity and enforceability of the remaining terms, clauses, and provisions in this Agreement, and the enforceability and validity of this Agreement as a whole,  shall not be affected by such finding, decision, ruling, or award.

Agreed:

Dream Media Corporation

By: _____

Its: CEO _____


Agreed:

David K. Gottlieb, solely in his capacity as the chapter 11 trustee of the Debtors and the Estates

By: _____
        David K. Gottlieb

19

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SETTLEMENT WITH DREAM MEDIA, INC.; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID K. GOTTLIEB IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 18, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On April 18, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 18, 2018 served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Via Federal Express*
Honorable Martin R. Barash
U.S. Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite  342/ Courtroom 303
Woodland Hills, California  91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 18, 2018 | Janice G. Washington | */s/ Janice G. Washington* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

Russell Clementson on behalf of U.S. Trustee
United States Trustee (SV)
russell.clementson@usdoj.gov

James A Dumas, Jr on behalf of Creditor NOA
Productions SPRL
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

James A Dumas, Jr on behalf of Creditor
Penthouse Global Broadcasting, Inc.
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

Allan B Gelbard on behalf of Other
Professional Allan B. Gelbard
xxxesq@aol.com, Allan@GelbardLaw.com

David Keith Gottlieb (TR)
dkgtrustee@dkgallc.com,
dgottlieb@iq7technology.com,rjohnson@dkgal
lc.com,akuras@dkgallc.com

David W. Meadows on behalf of Interested
Party Courtesy NEF
david@davidwmeadowslaw.com

Krikor J Meshefejian on behalf of Creditor
Interested Party
kjm@lnbrb.com

Alan I Nahmias on behalf of Interested Party
Courtesy NEF
anahmias@mbnlawyers.com,
jdale@mbnlawyers.com

Aram Ordubegian on behalf of Creditor LSC
Communications US, LLC / Creel Printing
ordubegian.aram@arentfox.com

Hamid R Rafatjoo on behalf of Creditor
Committee The Official Committee of
Unsecured Creditors
hrafatjoo@raineslaw.com,
bclark@raineslaw.com;cwilliams@raineslaw.c
om
S Margaux Ross on behalf of U.S. Trustee
United States Trustee (SV)
margaux.ross@usdoj.gov

Michael St James on behalf of Creditor
Interested Party
ecf@stjames-law.com

Michael St James on behalf of Interested Party
Michael St. James
ecf@stjames-law.com

Howard Steinberg on behalf of Creditor
Greenberg Traurig, LLP
steinbergh@gtlaw.com,
pearsallt@gtlaw.com;laik@gtlaw.com

Cathy Ta on behalf of Interested Party
Penthouse Clubs Worldwide, LLC
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;lisa.spencer@b
bklaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Michael H Weiss on behalf of Attorney Weiss
& Spees, LLP
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Danni
Ashe, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor GMI
Online Ventures, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor General
Media Communications, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor General
Media Entertainment, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Digital Media Productions, Inc.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Broadcasting, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Digital, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Licensing, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Media, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Publishing, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Images Acquisitions, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Pure
Entertainment Telecommunications, Inc. fka
For Your Ears Only, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Streamray Studios, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Tan
Door Media, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor XVHUB
Group, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Christopher K.S. Wong on behalf of Creditor
LSC Communications US, LLC / Creel
Printing
christopher.wong@arentfox.com

Beth Ann R Young on behalf of Creditor
Dream Media Corporation
bry@lnbyb.com

Beth Ann R Young on behalf of Creditor
Interested Party
bry@lnbyb.com

Brian L. Davidoff
bdavidoff@greenbergglusker.com

Jonathan Hayes jhayes@SRHLawFirm.com

Peter W. Lianides plianides@wcghlaw.com

Mark S. Horoupian
mhoroupian@sulmeyerlaw.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**U.S. Bankruptcy Court**
**Central District of California (San Fernando Valley)**
**In re Penthouse Global Media, Inc., Case No. 18-10098-MB**

2.    <u>**SERVED BY UNITED STATES MAIL**</u>:

*Debtor*
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

*Counsel for Debtor*
Michael H. Weiss, Esq.
WEISS & SPEES LLP
6310 San Vicente Boulevard, Suite 401
Los Angeles, CA 90048

*Trustee*
David Keith Gottlieb, Managing
Member
D. Gottlieb & Associates, LLC
17000 Ventura Blvd., Suite 300
Encino, California, 91403

*Office of U.S. Trustee*
Margaux S. Ross
915 Wilshire Blvd. , Suite 1850
Los Angeles, CA 90017

*Counsel for The Official Committee of*
*Unsecured Creditors*
c/o Hamid R. Rafatjoo
Raines Feldman LLP
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

*Committee Members*
DVD Factory Inc.
Representative: Steve Kalson
7230 Coldwater Canyon Ave.
North Hollywood, CA 91605

LSC Communications US, LLC / Creel Printing.
Representative: Dan Pevonk
4101 Winfield Rd.
Warrenville, IL 60555

TGG
Representative: Matthew A. Garrett, CEO
10188 Telesis Court
Suite 130
San Diego, CA 92121

Miller Law Group
Representative: Walter M. Stella
111 Sutter Street
San Francisco, CA 94104

Palm Coast Data
Representative: Neil Gordon
11 Commerce Blvd.
Palm Coast, FL 32164

*Interested Parties*
Kelly Holland
President and Chief Executive Officer
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

Robert W. Campbell
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

Allan B. Gelbard
Attorney at Law
15760 Ventura Boulevard, Suite 801
Encino, CA 91436

Mark A. Mintz
Attorney at Law
JONES WALKER
201 St. Charles Avenue
New Orleans, LA 70170-5100

John D. Kirkendoll
Founder/CEO
Kirkendoll Management, LLC
201 St Charles Ave., Suite 3915
New Orleans, LA 70170

*Requests for Special Notice*
Howard J. Steinberg (CA SBN 89291)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:313716.1 32277/001

**F 9013-3.1.PROOF.SERVICE**

Aram Ordubegian (SBN 185142)
Robert M. Hirsh (*pro hac vice*
application to be submitted)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Joseph E Bain
Jones Walker LLP
811 Main St., Ste 2900
Houston, TX 77002

Timothy Driver
433 North Camden, Suite 970
Beverly Hills, CA 90210

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:313716.1 32277/001

**F 9013-3.1.PROOF.SERVICE**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1     *20 Largest Creditors*

2

ExWorks Capital Funds I, LP
333 W. Wacker Drive
3   Suite 1620
Chicago, IL 60606

4

Dream Media Corporation
5   10990 Wilshire Blvd., Penthouse
Los Angeles, CA 90024

6

Greenberg Traurig, LLP
7   1840 Century Park East
Suite 1900
8   Los Angeles, CA 90067

9   Bayard, P.A.
222 Delaware Avenue
10   Suite 900
P.O. Box 25130
11   Wilmington, De 19899

12   TGG Accounting
10188 Telesis Court
13   Suite 130
San Diego, CA 92121

14

Hogan Lovells US, LLP
15   1999 Avenue of the Stars
Suite 1400
16   Los Angeles, CA 90067

17   Squar Milner LLP
4100 Newport Place
18   Suite 600
Newport Beach, CA 92660

19

Miller Law Group
20   111 Sutter Street
Suite 700
21   San Francisco, CA 94104

22   Sedgwick, LLP
2301 McGee Street
23   Suite 500
Kansas City, MO 64108-2662

24

Allen, Dyer, Dopplet, Milbrath & Gilchris
25   255 South Orange Avenue
Suite 1401
26   Orlando, FL 32801

27

28

Bressler Law PLLC IOLTA Account
3 West 35th Street
9th Floor
New York, NY 10001

Premium Assignment Corporation/Marsh USA
P.O. Box 8000
Tallahassee, FL 32314-8000

California Choice Benefit Administrators
721 South Parker
Suite 200
Orange, CA 92868

Tom Fox
P.O. Box 2402
Santa Cruz, CA 95063

Total Records Information Management LLC
371 Starke Road
Carlstadt, NJ 07072

Iron Mountain
1000 Campus Drive
Collegeville, PA 19426

Akerman LLP
601 West Fifth Street
Suite 300
Los Angeles, CA 90071

GRM Information Management Services, Inc.
P.O. Box 35539
Newark, NJ 07193-5539

C. Hocquel Inc.
8310 Jayseel Street
Sunland, CA 91040

Allgemeines Treuunternehmen (ATU)
Aeulestrasse 5 P.O. Box 83
9490 Vaduz
Furstentum, Liechtenstein

DSS Consulting Corporation
638 Lindero Canyon Road,
Suite 117
Oak Park, CA 91377

Nextgen Reporting
999 Old Eagle School
Suite 118
Wayne, PA 19087