1  Linda F. Cantor (CA Bar No. 153762)
   Victoria A. Newmark (CA Bar No. 183581)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA  90067
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760
   E-mail:  lcantor@pszjlaw.com
5            vnewmark@pszjlaw.com

6

7  Proposed Attorneys for David K. Gottlieb, Chapter 11 Trustee

8           **UNITED STATES BANKRUPTCY COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**
9           **SAN FERNANDO VALLEY DIVISION**

10  In re:                                    | Cases No.: 1:18-BK-10098-MB

11  PENTHOUSE GLOBAL MEDIA, INC.,             | Chapter 11

12                           Debtor.           | Jointly Administered with Cases Nos.:
                                               | 1:18-bk-10099-MB; 1:18-bk-10101-MB;
13  ☒ Affects All Debtors                      | 1:18-bk-10102-MB; 1:18-bk-10103-MB;
                                               | 1:18-bk-10104-MB; 1:18-bk-10105-MB;
14  ☐ Affects Penthouse Global Broadcasting, Inc. | 1:18-bk-10106-MB; 1:18-bk-10107-MB;
                                               | 1:18-bk-10108-MB; 1:18-bk-10109-MB;
15  ☐ Affects Penthouse Global Licensing, Inc. | 1:18-bk-10110-MB; 1:18-bk-10111-MB;
    ☐ Affects Penthouse Global Digital, Inc.   | 1:18-bk-10112-MB; 1:18-bk-10113-MB
16  ☐ Affects Penthouse Global Publishing, Inc.

17  ☐ Affects GMI Online Ventures, Ltd.        | **NOTICE OF MOTION AND MOTION FOR**
    ☐ Affects Penthouse Digital Media Productions, Inc. | **ORDER (A) APPROVING SALE OF**
18  ☐ Affects Tan Door Media, Inc.             | **SUBSTANTIALLY ALL ASSETS FREE**
                                               | **AND CLEAR OF ALL LIENS, CLAIMS,**
19  ☐ Affects Penthouse Images Acquisitions, Ltd. | **ENCUMBRANCES AND INTERESTS;**
    ☐ Affects Pure Entertainment Telecommunications, Inc. | **(B) SCHEDULING AUCTION AND SALE**
20  ☐ Affects XVHUB Group, Inc.                | **HEARING; (C) APPROVING SALE**
                                               | **PROCEDURES AND NOTICE OF**
21  ☐ Affects General Media Communications, Inc. | **SALE;AND (D)  GRANTING RELATED**
    ☐ Affects General Media Entertainment, Inc. | **RELIEF; MEMORANDUM OF POINTS**
22  ☐ Affects Danni Ashe, Inc.                 | **AND AUTHORITIES; DECLARATION OF**
    ☐ Affects Streamray Studios, Inc.          | **DAVID K. GOTTLIEB**

23                                             | **Hearing:**
                                               | Date:     May 9, 2018
24                                             | Time:     1:30 p.m.
                                               | Place:    United States Bankruptcy Court
25                                             |           21041 Burbank Boulevard
                                               |           Courtroom 303
26                                             |           Woodland Hills, California

27                                             | Judge:  Hon. Martin R. Barash

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313230.6 32277/001                    1

1    **TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE,**

2    **THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTORS, AND ALL OTHER**

3    **INTERESTED PARTIES:**

4    　　　**PLEASE TAKE NOTICE** that David K. Gottlieb, Chapter 11 Trustee (the "Trustee") of

5    the above-captioned bankruptcy estates (the "Estates") of Penthouse Global Media, Inc. and its

6    debtor subsidiaries (the "Debtors"), hereby moves (the "Motion") the Court for the entry of an

7    order, pursuant to sections 105, 327(a), 328(a), and 363 of title 11 of the United States Code (the

8    "Bankruptcy Code") and Rules 2002, 2014(a), 2016, 6004, 7062 and 9014 of the Federal Rules of

9    Bankruptcy Procedure (the "Bankruptcy Rules"):

10    　　　(a)　　authorizing the Trustee to sell (the "Sale") substantially all of the Debtors'

11    assets (excluding cash, avoidance actions, the Vice Coin receivable (as defined below) and the

12    Penthouse Club Owners' license agreement) (the "Assets") to Dream Media Corporation (the

13    "Stalking Horse Bidder") pursuant to the terms and conditions set forth in the Settlement

14    Agreement attached hereto as Exhibit A (the "Settlement Agreement"), or, alternatively, to the

15    successful bidder (the "Successful Bidder") determined in accordance with certain sale and bid

16    procedures as proposed by the Trustee, subject to Court approval (the "Sale Procedures"), pursuant

17    to the applicable agreement with such Successful Bidder, free and clear of all liens, claims, interests

18    and encumbrances pursuant to sections 363(b) and (f) of the Bankruptcy Code, with all liens,

19    claims, interests and encumbrances attaching to the Sale proceeds of the Assets, if any, with the

20    same validity (or invalidity), priority and perfection as existed immediately prior to such Sale,

21    except as expressly provided below;

22    　　　(b)　　approving the sale and bid procedures (the "Sale Procedures") and other

23    related relief as set forth in the proposed form of order approving the Sale Procedures attached

24    hereto as Exhibit B (the "Proposed Procedures Order");[1]

25    　　　(c)　　authorizing the Trustee to enter into an asset purchase agreement with the

26    Stalking Horse Bidder or other Successful Bidder, substantially in the form to be filed with the

27

28    _____

[1]  Any capitalized term not defined in this Notice shall have the meaning ascribed to such term in the Motion or the Proposed Procedures Order, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Court prior to the Sale Hearing (the "APA");

2                    (d)    approving the form and manner of notice of the Sale (to be filed prior to the

3    Sale Hearing); and

4                    (e)    setting the date for a hearing (the "Sale Hearing") at which the Court will

5    consider whether to authorize and approve the Sale.

6            **PLEASE TAKE FURTHER NOTICE** that, as explained more fully in the attached

7    Memorandum of Points and Authorities, the Trustee determined in his sound business judgment that

8    the proposed Sale of the Assets to the Stalking Horse Bidder, subject to overbid, for a credit bid in

9    the amount of $3,000,000 and the , is in the best interest of the Estates.  The proposed Sale to the

10   Stalking Horse Bidder shall be subject to overbid at an auction in accordance with the Sale

11   Procedures (the "Auction").  Pursuant to LBR 6004-1(b)(2), the following is a summary of the

12   proposed Sale Procedures[2]:

13                   (a)    upon execution of a confidentiality agreement, any person identified by the
14   Trustee, with the assistance of his advisors, as reasonably likely to be a Qualified Bidder that wishes
     to conduct due diligence on the Assets with respect to a potential overbid may be granted access to
15   all material information that has been or will be provided to the Stalking Horse Bidder;

16                   (b)    any Potential Bidder that wishes to participate in the bidding process for the
     Assets must, no later than the Bid Deadline, do all of the following: (1) submit to the Trustee an
17   irrevocable offer in the form of an executed Modified Agreement (together with a blacklined copy)
18   without financing, internal approval or due diligence contingencies, at a price that conforms with the
     following paragraph and on such other terms that are no less favorable to the Estates than those
19   contained in the APA; (2) agree, in such Modified Agreement, to a purchase price that provides for
     payment in cash at closing in an initial minimum amount equal to or exceeding the sum of
20   $3,100,000 ($3,000,000 plus $100,000); (3) make a Bid Deposit in the amount of $250,000; and (4)
21   provide written evidence reasonably satisfactory to the Trustee of, *inter alia*, the bidder's financial
     ability to fully and timely perform all obligations under the Modified Agreement;

22                   (c)    if the Trustee receives at least one Qualified Bid from a Qualified Bidder
23   other than the Stalking Horse Bidder prior to the Bid Deadline, then the Trustee shall conduct an
     Auction to be held at the Sale Hearing;
24
25                   (d)    at any Auction, subsequent bid increments shall be set at $100,000 or any
     number wholly divisible by $100,000;
26
27                   (e)    the Stalking Horse Bidder may participate in overbidding by increasing its
     credit bid up to the maximum amount of $10,440,903.14 (the "Maximum Credit Bid"), and the

28
_____
[2]  The following is a summary only and is subject to the Proposed Procedures Order.

amount of any overbid that exceeds the Maximum Credit Bid shall be in cash;

      (f)    at the Auction (if held), the Trustee shall determine which bid(s) shall be deemed the Successful Bid and Back-Up Bid (if any); and the Trustee shall request at the Sale Hearing that the Court authorize the Trustee to consummate the Sale of the Assets to the Successful Bidder and, should the Successful Bidder fail to close, to the Back-Up Bidder[3];

      (g)    if no qualified competing bid is received, the Stalking Horse Bidder's bid shall be determined to be the Successful Bid for the purchase of the Assets; and

      (h)    the Estates shall retain the deposit(s) made by the Successful Bidder and/or the Back-Up Bidder, free and clear of liens, claims and interests, if either the Successful Bidder and/or the Back-Up Bidder (as applicable) fails to close the Sale within fifteen (15) days after entry of a Bankruptcy Court order approving the Sale of the Assets.

**PLEASE TAKE FURTHER NOTICE** that here should be no negative tax implications to the Estates as a result of the sale.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities and Declaration of David K. Gottlieb (the "Gottlieb Declaration"), and the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Motion.  In addition, the Trustee requests that the Court take judicial notice of all documents filed with the Court in these cases.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 6004-1(b)(1), the hearing (the "Procedures Hearing") on the Motion with respect to the approval of the Sale Procedures and other relief set forth in the Proposed Procedures Order (the "Procedures Matters") shall be held on May 9, 2018 at 1:30 p.m. (Pacific time) before the Honorable Martin Barash, United States Bankruptcy Judge, 21041 Burbank Boulevard, Courtroom 303, Woodland Hills, CA  91367.  The Procedures Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Procedures Hearing.  Objections, if any, to the Procedures Matters requested by the Motion must be filed with the clerk of the Bankruptcy Court and served upon the Trustee's counsel, Linda Cantor, Esq., Pachulski, Stang, Ziehl & Jones LLP, 13th Floor, Los Angeles, CA 90067, fax: 310-201-0760, lcantor@pszjlaw.com, and the Stalking Horse Bidder's counsel, Ron Bender and Beth Young, fax:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[3]  As set forth in the Motion, the Trustee requests a Sale Hearing to be held no later than June 1, 2018 and for the closing of any sale to be by no later than June 15, 2018.

1   310-229-1244, RB@lnbyb.com and bry@lnbyb.com, so as to be received no later than April 25,

2   2018 at 5:00 p.m. (Pacific time).  UNLESS AN OBJECTION IS TIMELY SERVED AND FILED

3   IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE

4   BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF

5   REQUESTED.

6       **PLEASE TAKE FURTHER NOTICE** that counsel to the Trustee will serve this Notice

7   and Motion, the attached Memorandum of Points and Authorities and the Declarations on:  (1) the

8   Office of the United States Trustee, (2) the Official Committee of Unsecured, (3) counsel to the

9   Stalking Horse Bidder, and (4) parties that have filed with the Court and requested special notice.

10  The Trustee will also serve notice of the Motion and the hearing date on all creditors and parties in

11  interest.  To the extent necessary, the Trustee requests that the Court waive compliance with Local

12  Bankruptcy Rule 9075-1(a)(5) and approve service (in addition to the means of service set forth in

13  such Local Bankruptcy Rule) by overnight delivery.   In the event that the Court grants the relief

14  requested by the Motion, the Trustee shall provide notice of the entry of the order granting such

15  relief upon each of the foregoing parties and any other parties in interest as the Court directs.  The

16  Trustee submits that such notice is sufficient and that no other or further notice be given.

17      **WHEREFORE**, the Trustee respectfully requests that the Court enter an order (a) approving

18  the Sale of the Assets to the Stalking Horse Bidder or, alternatively, the Successful Bidder, as

19  applicable, free and clear of all liens, claims, encumbrances and interests, other than as set forth

20  below; (b) approving the APA or other applicable asset purchase agreement; (c) finding that the

21  Stalking Horse Bidder or other Successful Bidder (as applicable) is a good faith purchaser pursuant

22  to section 363(m) of the Bankruptcy Code; (d) approving the Sale Procedures;  (e) approving the

23  form and manner of notice of the Sale; (f) authorizing the Trustee to hold the Auction at the time and

24  place set forth in the Motion; and (g) granting such other relief as is fair and equitable.

25      / / /

26

27      / / /

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dated:     April 18, 2018                          PACHULSKI STANG ZIEHL & JONES LLP

                                                   By     /s/ Linda F. Cantor
                                                          Linda F. Cantor

                                                   Attorneys for David K. Gottlieb, Chapter 11
                                                   Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Trustee seeks authorization to sell the Assets owned by the Estates to the Stalking Horse Bidder, or, alternatively, to the Successful Bidder determined in accordance with the Sale Procedures. Through the proposed Sale, the Trustee expects the Estates to receive at least $3,000,000 in the form of a credit bid, reducing the Estates' secured debt, and other consideration as set forth in the Settlement Agreement (the "Consideration").[4] Additionally, the proposed Sale is subject to overbid (pursuant to the Sale Procedures) in the event another party is willing to provide greater consideration than that offered by the Stalking Horse Bidder.

## II.

## JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 1334. This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (N). Venue of these cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 327(a), 328(a) and 363(b), (f) and (m) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 9014.

## III.

## BACKGROUND

The Debtors operate an adult entertainment empire that includes the publication *Penthouse Magazine*, originally founded in 1965 by Bob Guccione. In addition to putting out a monthly magazine, the Debtors oversee several adult cable and satellite channels that reach more than 100 countries. The Debtors also run a licensing business for their intellectual property and iconic brand.

On January 11, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Central District of California, San

---

[4] The Settlement Agreement, a copy of which is appended hereto as Exhibit A, is the subject of *Notice Of Motion And Motion For Order Approving Settlement With Dream Media, Inc.; Memorandum Of Points And Authorities; Declaration Of David K. Gottlieb In Support Thereof* (the "9019 Motion") filed concurrently herewith.

1    Fernando Valley Division (the "Court").

2       On February 21, 2018, the Court held a status conference, at which time it determined that

3    the appointment of a chapter 11 trustee of the Estates was appropriate.  On March 2, 2018 the Court

4    entered its order directing the appointment of a chapter 11 trustee [Docket No. 231], and on March 6,

5    2018, the Office of the United States Trustee appointed David K. Gottlieb as the chapter 11 trustee

6    in the cases [Docket No. 239].

7 **IV.**

8 **THE PROPOSED SALE**

9 **A.**     **The Assets to Be Sold**

10       The Trustee is proposing to sell to the Stalking Horse Bidder, or a Successful Bidder,

11    substantially all of the Estates' assets (excluding cash, avoidance actions, that certain Trade-Mark

12    and Trade-Name License Agreement made as of December 29, 2017 between Penthouse Global

13    Media Inc. as Licensor and Tokken MSB Inc. O/A/ Vice.Org as Licensee (the "Vice Coin

14    Receivable") and the Penthouse Club Owners' license agreement) (the "Assets").  The Assets to be

15    sold are comprised primarily of intellectual property, including copyrights, films, trademarks,

16    domain names, and license agreements.

17       The Stalking Horse Bidder holds a claim against the Estates in the amount of $10,440,903.14

18    as of the petition date that is secured by a first priority lien and security interest on the Assets.

19    Pursuant to the Term Sheet, the Stalking Horse Bidder has agreed to purchase the Assets for a credit

20    bid in the amount of $3,000,000, in addition to a cash payment of $550,000 and other consideration

21    as set forth in the Settlement Agreement.

22       The Stalking Horse Bidder is not an insider and, apart from its secured claim, has no

23    connections with the Debtors or the Trustee.

24 **B.**     **Consideration**

25       The consideration to be paid by the Stalking Horse Bidder (the "Consideration") consists of a

26    credit bid in the amount of $3,000,000, in addition to a cash payment of $550,000 and other

27    consideration as set forth in the Settlement Agreement.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## C.    Assets to be Sold Free and Clear of Interests

The Assets shall be sold free and clear of all liens, claims, rights, interests and encumbrances whatsoever ("Interests"), in accordance with section 363(b) and (f) of the Bankruptcy Code, with all then-existing Interests to attach to certain proceeds of the Sale, if any, with the same validity, enforceability, and priority, if any, as existed with respect to the Assets as of the date of the commencement of these chapter 11 cases, subject to the terms of the proposed settlement agreement by and between the Trustee and Dream Media Corporation, the Stalking Horse Bidder (the "Settlement Agreement") that provides, *inter alia*, for the following: (a) the allowance of the Dream Media claim in the amount of $10,440,903.14 as of the petition date (the "Allowed Dream Media Claim")[5]; (b) a payment by Dream Media to the Trustee, for the benefit of the Estates, $550,000 if the winning bid at the Auction is $3 million and a payment of 10% of the extent to which the winning bid is higher than $3 million up to a sum of $10 million, and 20% of that portion of the winning bid which is higher than $10 million; and (c) the release at the sale closing of Dream Media's liens, claims and interests against certain other assets (or portions thereof) not included in the Assets to be sold (cash, avoidance actions, the Vice Coin Receivable and the Penthouse Club Owners' license agreement) up to the carve-out amount set forth in the Settlement Agreement. [6]

The Trustee is aware of only one prepetition lien against the Assets, which is the lien of the Stalking Horse Bidder.[7] As discussed above, the payoff amount for the Stalking Horse Bidder's indebtedness is $10,440,903.14 as of the petition date, and if the value of the Debtors' assets is greater than such allowed claim amount, then Dream Media's claim value will increase by $200,000.00 per month up to the aggregate value of the Debtors' assets.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[5] If Dream Media is oversecured, the Allowed Dream Media Claim will increase by $200,000 per month (representing interest on the Allowed Dream Media Claim) up to the aggregate value of the Debtors' assets.

[6] The foregoing description is only a summary of certain terms of the Settlement Agreement and parties in interest should read the full Settlement Agreement which is attached hereto as Exhibit A for the complete terms; if there is any discrepancy between the summary of certain provisions of the Settlement Agreement summarized above and the Settlement Agreement, the terms of the Settlement Agreement control.

[7] The Trustee's searches in the public records have revealed no other liens on the Assets. The licensee under a certain Master Club Licensing Agreement asserts an unperfected security interest in certain trademarks. The Trustee may seek to avoid such lien for the benefit of the Estates or enter into a stipulation with the licensee to that effect. The Master Club License Agreement is not an Asset subject to the Sale and will be sold separately.

**D.    Sale Procedures and Opportunity For Overbid**[8]

**1.    Opportunity for Due Diligence and Participation in Sale Process**

The Trustee requests that the Court authorize the Trustee to conduct an auction of the Assets (the "Auction") at the Sale Hearing, with the Auction/Sale Hearing held no later than June 1, 2018 (subject to the Court's availability), and that the closing of the Sale occur no later than June 15, 2018. The Trustee's goal is to efficiently and expeditiously administer the Estates' assets for the benefit of the Estates' creditors. To preserve the value of the Estates, minimize the deterioration of the value of the Assets, and limit the costs of administering the Assets and the cases, an expedient conclusion to the Sale process will inure to the benefit of the Estates and their creditors. Thus, the Trustee believes that conducting a Sale as expeditiously as practicable (by June 1, 2018) and closing a Sale as expeditiously as possible thereafter (by June 15, 2018), as noted above, is in the best interest of the Estates.

Provided that the Sale Procedures are approved by the Court, the Trustee will serve within two (2) business days of entry of the Procedures Order a notice of the Auction and Sale Procedures ("Sale Notice") on, among others, all parties whom the Trustee believes may have an interest in purchasing the Assets.

The Trustee will provide parties interested in acquiring the Assets ("Potential Purchasers") with reasonable access to the due diligence information it has previously provided to interested parties subject to execution of a confidentiality agreement.

**2.    Submission of Offer**

Any person or entity interested in submitting a bid on the Assets is urged to deliver an offer to counsel for the Trustee, whose name and address appear in the top, left-hand corner of this Motion, so that such bid is actually received no later than 5:00 p.m. PDT on a date which is three business days prior to the Sale Hearing to be set by the Court (each such offer, an "Offer"). An Offer shall, at a minimum, provide that: (i) the purchase price shall provide at least $100,000 above the current Consideration to the Estates; (ii) the Potential Purchaser offers to purchase all of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[8]  The following discussion is a summary only, and is subject to the more specific Sale Procedures set forth in the Proposed Procedures Order attached hereto as Exhibit A.

1    Assets; (iii) such Offer is not subject to, or conditioned on, and does not contain, any contingencies

2    to the validity, effectiveness, and/or binding nature of the Offer, including, without limitation,

3    contingencies for financing, due diligence, or inspection; (iv) such Potential Purchaser is prepared to

4    abide by these procedures; (v) the Purchase Price shall be paid in full in cash or immediately

5    available funds at closing, and (vi) such Potential Purchaser agrees to sign an APA (in the form to be

6    filed with the Court prior to the hearing on the Motion), adjusted only to account for a change in the

7    purchase price and in the identity of the purchaser.  Any Potential Purchaser should accompany its

8    offer with a deposit in an amount that is equal to $250,000 (the "Deposit") and provide information,

9    acceptable to the Trustee, which demonstrates that the Potential Purchaser (x) has sufficient cash on

10    hand or a binding financial commitment from an established and financially sound financial

11    institution to ensure such Potential Purchaser's ability to meet its commitments pursuant to its bid

12    and to close the transaction within the time frame established, and (y) has the legal capacity to

13    complete the purchase.

14    　　　An Offer should also be accompanied by sufficient indicia that the person submitting the

15    Offer is legally empowered, by power of attorney or otherwise, and financially capable to (i) bid on

16    behalf of the Potential Purchaser, and (ii) complete and sign, on behalf of the Potential Purchaser, a

17    binding and enforceable asset purchase agreement.

18    　　　**Notwithstanding the foregoing, the Trustee, in his sole discretion, shall determine**

19    **whether an Offer has satisfied all the conditions set forth above or if the Trustee believes it is**

20    **in the best interest of the Estates to waive any or all of the above conditions, including**

21    **permitting a bidder to bid at the Sale Hearing without submitting a prior Offer.**  Any bid that

22    the Trustee deems satisfies such conditions, including one first submitted at the Sale Hearing, shall

23    be deemed a "Qualified Bid" and the party submitting such bid shall be deemed a "Qualified

24    Bidder."  The Stalking Horse Bidder is hereby determined to be a Qualified Bidder and to have

25    submitted a Qualified Bid.

26    　　　**3.    Selection of the Successful Bid**

27    　　　If a Qualified Bidder has or is prepared to make a Qualified Bid at or before the Sale

28    Hearing, an auction (the "Auction") shall take place at the Sale Hearing.  All Qualified Bidders must

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   appear in person at the Auction, or through a duly authorized representative.  If multiple Qualifying

2   Bids satisfying all Auction requirements are received, each party shall have the right to continue to

3   improve its bid at the Auction.  The Auction will be an "open format" such that all participants are

4   contemporaneously to be made aware of the particulars of any Qualified Bids that are submitted.

5   The initial overbid must be at least $100,000 in excess of the Consideration offered by the Stalking

6   Horse Bidder.  Subsequent bid increments shall be set at $100,000 or amounts wholly divisible by

7   $100,000.  The Stalking Horse Bidder may participate in overbidding by increasing its credit bid up

8   to the maximum amount of $10,440,903.14 (the "Maximum Credit Bid"), and the amount of any

9   overbid that exceeds the Maximum Credit Bid shall be in cash.

10          At the conclusion of the Auction, and subject to Court approval at the Auction, the successful

11  bid shall be selected by the Trustee (the "Successful Bid").

12          Promptly following the conclusion of the Auction, the party submitting the successful bid

13  (the "Successful Bidder") shall complete and sign all agreements, contracts, instruments or other

14  documents evidencing and containing the terms and conditions upon which such bid was made.  Bid

15  Deposits of the non-Successful Bidder shall be returned, subject to the applicable asset purchase

16  agreement.  If the Successful Bidder or Back-Up Bidder fails to consummate a Court-approved sale

17  because of a material breach or failure to perform on the part of such Successful Bidder or Back-Up

18  bidder, the Trustee shall be entitled to retain the Bid Deposit made in connection therewith,  free and

19  clear of Dream Media's Interests.  If the Successful Bidder is not the Stalking Horse Bidder, then the

20  proceeds of sale shall be delivered at closing to Dream Media Corporation and to the Trustee

21  pursuant to the terms of the Settlement Agreement.

**V.**

**ARGUMENT**

**A.**     **The Proposed Sale Procedures Are Reasonable and Appropriate and Will Facilitate
        Maximizing the Proceeds of Sale**

26          In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course

27  of business may be by private sale or by auction.  The Trustee has obtained a "stalking horse" bid,

28  and seeks authority to conduct the Auction (if applicable) at which the Stalking Horse Bidder's offer

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

will be subjected to higher and better offers. The Sale Procedures, as implemented pursuant to the terms of the Settlement Agreement, are reasonably calculated to encourage a buyer to submit a final bid within the range of reasonably anticipated values and to maximize the value of the Assets for the Estates' benefit.

The Stalking Horse Bidder will be the stalking horse for competitive bids, potentially leading to further competition and the establishment of a baseline against which higher or otherwise better offers can be measured. The Trustee, with the assistance of his professionals and agents, will further solicit proposals for the purchase of the Assets prior to the proposed bid deadline, and based on such efforts, the Estates will have reasonably and sufficiently marketed the Assets prior to the Sale Hearing. The Trustee has proposed Sale Procedures designed to maximize the purchase price that should be realized from the Sale of the Assets. In short, the Trustee submits that good cause exists to approve such procedures and provisions because they are fair and reasonable under the circumstances and will encourage competitive bidding and the highest and best price for the Assets. Indeed, courts frequently approve competitive bidding procedures like the proposed Sale Procedures as a means of ensuring that such sales will maximize value for the Estates. *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.),* 679 F.2d 774, 775 (9th Cir. 1982) (district court required specific minimum overbid amounts, deposits, and comparable deal terms to be used by all overbidders); *In re GGW Brands, LLC*, Case No. 13-15130 (Bankr. C.D. Cal. Feb. 24, 2014) (J. Klein) (order approving overbidding and sale/auction procedures); *In re Victor Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D. Cal. Oct. 7, 2010) (J. Bauer) (order approving qualified bidder, overbidding and other sale/auction procedures); *In re Barbecues Galore, Inc.*, Case No. 08-16036-MT (Bankr. C.D. Cal. Sept. 4, 2008) (J. Tighe) (similar).

For the reasons set forth above, the Trustee respectfully requests approval of: (a) the proposed overbid protections; (b) the Sale Procedures for the conduct of overbidding, the Auction and selection of the Successful Bidder; (c) the scheduling of the Sale Hearing and other matters for which scheduling is requested; and (d) the related relief sought hereby as set forth in the Proposed Procedures Order.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.**    **The Proposed Sale of the Assets Should be Approved Under Section 363(b) of the Bankruptcy Code**

A debtor in possession, after notice and a hearing, may use, sell, or lease property, other than in the ordinary course of business.  11 U.S.C. § 363(b)(1).  The application of the debtor's sound business judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g., In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990); *In re Canyon P'ship*, 55 B.R. 520 (Bankr. S.D. Cal. 1985); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.").

In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a transaction involving property of the estate generally should be approved where the debtor or trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83 B.R. at 19-20; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).  Among other factors, courts should consider the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession. *See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light of impending deterioration of market value of debtor's assets).

As chapter 11 trustee, the Trustee's goal is to maximize value from the disposition of the Debtors' assets.  The Trustee believes that the Consideration to be paid by the Stalking Horse Bidder, subject to any qualified overbid in accordance with the Sale Procedures and pursuant to the terms of the Settlement Agreement, represents a fair and reasonable offer in light of all the terms of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the proposed Sale, based on the apparent market value of the Assets.  Nevertheless, the proposed

Sale to the Stalking Horse Bidder will be subject to overbid, as described above.  Accordingly, the

Sale of the Assets, as described herein, is designed to generate the greatest proceeds of Sale and is in

the best interests of the Estates and their creditors and should be authorized.

**C.      The Purchaser Acted in Good Faith in Connection With the Sale**

The Sale was negotiated in good faith, at arms' length and, to the best of the Trustee's

information and belief, without collusion or fraud of any kind.   Based upon the opportunity for

overbidding, it will be established that the Consideration reflects value to the Estates higher than

offered by any other party who makes a serious offer to purchase the Assets.  Accordingly, this

Court should find that the Stalking Horse Bidder acted in good faith within the meaning of section

363(m) of the Bankruptcy Code.  *See generally Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280

(9th Cir. 1992); *Marin v. Coated Sales, Inc.(In re Coated Sales, Inc.)*, No. 89 Civ. 3704 (KMW),

1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of good faith, a party must

demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see*

*also In re Sassoon Jeans, In*c., 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs.,*

*Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y.

1986) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct

during the sale proceedings" (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1998 (7th

Cir. 1978)).  If an Auction is held and the Stalking Horse Bidder is not the Successful Bidder,

evidence regarding the Successful Bidder's good faith will be presented at the Sale Hearing.

**D.      The Sale of the Assets Free and Clear of Liens, Claims, And Interests Pursuant to 11**
**U.S.C. § 363(f) Should Be Approved**

The Trustee requests that the Court approve the sale of the Assets free and clear of all

Interests, with any such Interests to attach to the proceeds of Sale, if any, with the same validity,

enforceability, and priority, if any, as existed with respect to the Assets as of the date of the

commencement of the cases, subject to the terms of the Settlement Agreement.

Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside

the ordinary course of business "free and clear of any interest in such property of an entity" if any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

one of the five following conditions is met:

    1.     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

    2.     such entity consents;

    3.     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; and

    4.     such interest is in bona fide dispute; or

    5.     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is written in the disjunctive, any one of these five conditions provides authority to sell the Assets free and clear of liens. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988).

As discussed above, the only lien against the Assets of which the Trustee is aware is the lien of the Stalking Horse Bidder. As the Stalking Horse Bidder has consented to a Sale with an overbidder pursuant to the Sale Procedures, section 363(f)(2) is satisfied as to the Stalking Horse Bidder and thus the Assets may be sold free and clear of the Stalking Horse Bidder's lien.

In any event, if a holder of a lien or claim receives notice of the sale and fails to object, section 363(f)(2) of the Bankruptcy Code would also apply and allow the Assets may be sold free and clear of that lien or claim. Thus, a sale free of Interests is thus permitted.

**F.    The Relief Granted Should Be Enforceable in a Chapter 7**

In the event that these cases are converted to cases under chapter 7 of the Bankruptcy Code, the Trustee requests that the authorizations and approvals with respect to the proposed Sale be enforceable in the Chapter 7 cases. Such relief will enable the Trustee to dispose of the Assets as promptly and efficiently as possible.

**G.    Waiver of the Stay Is Appropriate**

Moreover, the Trustee seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

2  the order, unless the court orders otherwise."

3      As expressed above, the Trustee's goal is to efficiently administer the Estates' financial and

4  business affairs for the benefit of their creditors.  An expedient conclusion to the sale process will

5  inure to the benefit of the Estates and their creditors.  Waiver of Bankruptcy Rule 6004(h) will

6  permit the Sale to take place as early as possible under the circumstances.

7  **VI.**

8  **CONCLUSION**

9      For the foregoing reasons, the Trustee respectfully requests that the Court enter an order

10  (a) approving the Sale of the Assets to the Stalking Horse Bidder or, alternatively, the Successful

11  Bidder, as applicable, free and clear of all liens, claims, encumbrances and interests, subject to the

12  terms of the Settlement Motion; (b) approving the APA or other applicable asset purchase agreement

13  [to be filed with the Court]; (c) finding that the Stalking Horse Bidder or other Successful Bidder (as

14  applicable) is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code;

15  (d) approving the Sale Procedures;  (e) approving the form and manner of notice of the Sale;

16  (f) authorizing the Trustee to hold the Auction at the time and place set forth in the Motion; and

17  (g) granting such other relief as is fair and equitable.

18

19  Dated:   April 18, 2018            PACHULSKI STANG ZIEHL & JONES LLP

20                     By    */s/ Linda F. Cantor*
                          Linda F. Cantor

21                     Proposed Attorneys for David K. Gottlieb, Chapter

22                     11 Trustee

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### DECLARATION OF DAVID K. GOTTLIEB

I, David K. Gottlieb, declare:

1.      I am the duly appointed chapter 7 trustee (the "Trustee") in the bankruptcy cases of Penthouse Global Media, Inc. and its debtor subsidiaries (the "Debtors").

2.      I submit this declaration in support of the *Motion for Order (a) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (b) Scheduling Auction and Sale Hearing; (c) Approving Sale Procedures and Notice of Sale; and (d) Granting Related Relief* (the "Motion").  Capitalized terms which I use below are as defined in the Motion.

3.      Unless otherwise stated, all matters set forth in this Declaration are based on my personal knowledge and my review of relevant documents, including, without limitation, information supplied to me by the Debtors and by others, as well as matters for which judicial notice is sought.  If called upon to testify, I could and would testify competently to the facts set forth herein.

4.      The Debtors operate an adult entertainment empire that includes the publication *Penthouse Magazine*, originally founded in 1965 by Bob Guccione.  In addition to putting out a monthly magazine, the Debtors oversee several adult cable and satellite channels that reach more than 100 countries.  The Debtors also run a licensing business for their intellectual property and iconic brand.

5.      On January 11, 2018, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Court").

6.      On February 21, 2018, the Court held a status conference, at which time it determined that the appointment of a chapter 11 trustee of the Estates was appropriate.  On March 2, 2018 the Court entered its order directing the appointment of a chapter 11 trustee [Docket No. 231], and on March 6, 2018, the Office of the United States Trustee appointed David K. Gottlieb as the chapter 11 trustee in the cases [Docket No. 239].

7.      To the best of my knowledge, the Estates own the Assets that are the subject of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Sale.  The Assets are composed primarily of intellectual property, including copyrights, films,

2   trademarks, domain names, and license agreements.  Assets that are excluded from the Sale are cash,

3   avoidance actions, that certain Trade-Mark and Trade-Name License Agreement made as of

4   December 29, 2017 between Penthouse Global Media Inc. as Licensor and Tokken MSB Inc. O/A/

5   Vice.Org as Licensee (the "Vice Coin Receivable") and Penthouse Club Owners' license agreement.

6          8.      The Motion to approve the Sale and designation of Dream Media Corporation as the

7   Stalking Horse Bidder is in accordance with the terms of my settlement with Dream Media

8   Corporation (the "Settlement Agreement"), a copy of which is appended hereto as Exhibit A.  The

9   Settlement Agreement is the subject of the *Notice Of Motion And Motion For Order Approving*

10  *Settlement With Dream Media, Inc.; Memorandum Of Points And Authorities; Declaration Of David*

11  *K. Gottlieb In Support Thereof* (the "9019 Motion") filed concurrently herewith.  The Settlement

12  Agreement generally provides, *inter alia*, for the following: (a) the allowance of the Dream Media

13  claim in the amount of $10,440,903.14 as of the petition date[9]; (b) a payment by Dream Media to the

14  Trustee, for the benefit of the Estates, $550,000 if the winning bid at the Auction is $3 million and a

15  payment of 10% of the extent to which the winning  bid is higher than $3 million up to a sum of $10

16  million, and 20% of that portion of the winning bid which is higher than $10 million; and (c) the

17  release at the sale closing of Dream Media's liens, claims and interests against certain other assets

18  (or portions thereof) not included in the Assets to be sold (cash, avoidance actions, the Vice Coin

19  Receivable and the Penthouse Club Owners' license agreement) up to the carve-out amount set forth

20  in the Settlement Agreement, all as further described in the 9019 Motion. [10]

21         9.      On the terms set forth in the Term Sheet, the Stalking Horse Bidder has agreed to

22  purchase the Assets for a credit bid in the amount of $3,000,000, in addition to a cash payment of

23  $550,000 and other consideration as set forth in the Settlement Agreement.   The Sale is "as is, where

24  is," without any representations or warranties of any kind concerning the Assets from the Trustee.

---

[9] If Dream Media is oversecured, the Allowed Dream Media Claim will increase by $200,000 per month (representing interest on the Allowed Dream Media Claim) up to the aggregate value of the Debtors' assets.

[10] The foregoing description is only a summary of certain terms of the Settlement Agreement and parties in interest should read the full Settlement Agreement which is attached hereto as Exhibit A for the complete terms; if there is any discrepancy between the summary of certain provisions of the Settlement Agreement summarized above and the Settlement Agreement, the terms of the Settlement Agreement control

10.     To the best of my knowledge, the Stalking Horse Bidder is not an insider and has no connections with me, the Debtors, the Estates, or their creditors or interest holders.

11.     The Assets shall be sold free and clear of all liens, claims, rights, interests and encumbrances whatsoever, in accordance with section 363(b) and (f) of the Bankruptcy Code, with all then-existing Interests to attach to the net proceeds of the Sale with the same validity, enforceability, and priority, if any, as existed with respect to the Assets as of the date of the commencement of these chapter 11 cases, subject to the terms of the Settlement Agreement.

12.     Based upon a review of the public records conducted by my professionals, I am aware of only one lien against the Assets, which is that of Dream Media Corporation. The Loan is secured by filings in the United States Copyright Office, filings in the United States Patent and Trademark Office and UCC filings.

13.     I am requesting that the Court authorize me to conduct an Auction of the Assets at the Sale Hearing, with the Auction/Sale Hearing held no later than June 1, 2018 (subject to the Court's availability), and that the closing of the Sale occur no later than June 15, 2018. The goal is to efficiently and expeditiously administer the Estates' assets for the benefit of the Estates' creditors. To preserve the value of the Estates, minimize the deterioration of the value of the Assets, and limit the costs of administering the Assets and the cases, an expedient conclusion to the Sale process will inure to the benefit of the Estates and their creditors. Thus, I believe that closing a Sale as promptly as practicable (by June 15, 2018 as noted above) is in the best interest of the Estates.

14.     Provided that the Sale Procedures are approved by the Court, I will cause to be served within two business days of entry of the Procedures Order a notice of the Auction and Sale Procedures on among others, all parties who may have an interest in purchasing the Assets, including those parties who expressed interest in purchasing the Assets during the marketing process.

15.     Parties interested in acquiring the Assets will be provided with reasonable access to the due diligence information that previously has been provided to interested parties subject to their signing a confidentiality agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313230.6 32277/001                                    3

16.    I believe that the Sale Procedures, as detailed in the Motion, are reasonably calculated to encourage a buyer to submit a final bid within the range of reasonably anticipated values and to maximize the value of the Assets for the Estates' benefit and should be approved.

17.    I believe that the cconsideration to be paid by the Stalking Horse Bidder, pursuant to the terms of the Settlement Agreement, represents a fair and reasonable offer in light of all the terms of the proposed Sale, based on the apparent market value of the Assets.  Accordingly, the Sale of the Assets and the proposed marketing process for identifying potential overbidders, as described in the Motion, is designed to generate the greatest proceeds of Sale.  I believe that the Sale is in the best interests of the Estates and their creditors and should be authorized.

18.    As expressed above and in the Motion, as Trustee my goal is to efficiently administer the Estates' financial and business affairs.  An expedient conclusion to the sale process will inure to the benefit of the Estates.  Waiver of Bankruptcy Rule 6004(h) will permit the Sale to take place as early as possible under the circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of April, 2018 at Encino, California.

DAVID K. GOTTLIEB

1

## EXHIBIT A

2

**Settlement Agreement**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is hereby entered into on this 17th day of April, 2018 by and between Dream Media Corporation ("Dream Media") and David K. Gottlieb (the "Trustee") in his capacity as the chapter 11 trustee of all of the following chapter 11 debtors: Penthouse Global Media, Inc. ("Penthouse"); Penthouse Global Broadcasting, Inc.; Penthouse Global Licensing, Inc.; Penthouse Global Digital, Inc.; Penthouse Global Publishing, Inc.; GMI Online Ventures, Ltd., Penthouse Digital Media; Productions, Inc.; Tandoor Media, Inc.; Penthouse Images Acquisitions, Ltd., Pure Entertainment; Telecommunications, Inc., fka For Your Ears Only, Ltd.; XVHUB Group, Inc., fka Giant Swallowtail Inc.; Global Publishing, Inc.; General Media Communications, Inc.; General Media Entertainment, Inc., fka Penthouse Video, Inc.; Danni Ashe, Inc.; and Streamray Studios, Inc. (collectively, the "Debtors"), with reference to the following (each party herein shall be singularly referred as a "Party" and all parties herein shall be collectively referred to as the "Parties"):

## RECITALS

A.      In February, 2016, Penthouse borrowed the aggregate sum of $9,000,000 (the "Loans") from ExWorks Capital Fund I, L.P. ("ExWorks").

B.      On November 21, 2017, pursuant to that certain Assignment and Assumption Agreement between Dream Media and ExWorks, Dream Media acquired all right, title and interest of ExWorks in and to the Loans (the

1

"Loan Assignment"). In connection with the Loan Assignment, Dream Media and ExWorks also assigned to Dream Media all of ExWorks' liens and security interests in the Debtors' assets, including, but not limited to, the Debtors' Copyrights, Trademarks and Intellectual Property, as well as contract rights and accounts receiveables as outlined in the underlying Loan and Security Agreement and related documents.

C.     Dream Media contends that the Loans are secured by first priority and perfected security interests against all assets of the Debtors' bankruptcy estates (the "Estates").

D.     The Loans were originally scheduled to mature in February, 2017. Through certain amendments to the terms of the Loans, the maturity date of the Loans was extended to April 30, 2018. However, due to multiple monetary and non-monetary defaults, the Loans have been accelerated and are now due and owing.

E.     In June 2017, Penthouse failed to make the monthly payment then due under the Loans, and has failed to make any payments on the Loans thereafter.[1]

F.     In September, 2017, ExWorks delivered to the Debtors a letter providing written Notice of Default and Reservation of Rights. The Debtors never cured the defaults.

---

[1] There were a limited number of pre-petition sweeps conducted by Ex Works of the Debtors' funds but those amounts were substantially less than the required debt-service payments.

G.     Dream Media contends that in or about December 2017, Penthouse acknowledged to Dream Media that the Debtors had been falsifying their internal and external accounting records, and had suffered millions of dollars of losses since the inception of the Loans.

H.     On January 9, 2018, Dream Media filed its Complaint in the Los Angeles Superior Court, bearing Case No. BC 689593 commencing a lawsuit to, *inter alia*, recover the unpaid Loans, take possession of its collateral that secures the Loans, and obtain the appointment of a receiver to protect and preserve the assets (the "State Court Action").

I.     On January 11, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the bankruptcy code with the United States Bankruptcy Court, Central District of California, San Fernando Valley Division (the "Bankruptcy Court"), commencing the Debtors' chapter 11 bankruptcy cases (the "Bankruptcy Cases").

J.     Pursuant to an order entered on March 2, 2018, as Docket Number 231, the Bankruptcy Court ordered the appointment of a chapter 11 trustee. Pursuant to an order entered on March 6, 2018 as Docket Number 239, David K. Gottlieb was appointed as the Trustee for each of the Debtors' Bankruptcy Cases.

K.     Dream Media contends that it is owed $10,440,903.14 as of the Petition Date and that its debt, provided it is oversecured, increases by approximately $200,000 per month following the Petition Date. On April 4,

3

2018, Dream Media filed its proof of claim with the Bankruptcy Court in each of the Debtors' Bankruptcy Cases.

L.      On February 26, 2018, the Debtors filed an objection to Dream Media's claim (the "<u>Dream Media Claim Objection</u>") as Docket No. 196. Dream Media contends that the Dream Media Claim Objection lacks any merit and that there is no legitimate legal basis for the Dream Media Claim Objection.

M.      Both the Trustee and Dream Media believe that (i) there is insufficient liquidity in the Estates to enable the Trustee to operate the Debtors' business on any long-term basis and to enhance or to preserve the value of the Debtors' business on any long-term basis; (ii) the continuation of the Bankruptcy Cases is likely to result in the devaluation of the Debtors' business; (iii) in the absence of a viable plan, the Trustee proceeding with a sale of substantially all of the assets of the Estates is in the best interests of the Estates; and (iv) absent a carve-out from Dream Media or substantial risk of litigation with Dream Media, there are no assets in the Estates that are clearly not encumbered in favor of Dream Media rendering it impossible for the Trustee to administer the Estates properly without the consent of Dream Media or substantial risk of litigation with Dream Media.

N.      In order to (i) avoid the costs and risks associated with any such litigation, (ii) facilitate a sale process designed to maximize the value for the Estates; (iii) provide the Trustee with continued cash collateral consent to

enable the Trustee to operate the Debtors' business through the closing of an asset sale; and (iv) provide the Estates with a substantial carve-out to insure a substantial recovery for creditors, Dream Media and the Trustee have reached a settlement agreement that they believe accomplishes all of the foregoing.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, subject to the approval of the Bankruptcy Court, Dream Media and the Trustee hereby agree as follows:

<u>AGREEMENT</u>

1.    **Incorporation of Recitals**.    The Parties hereby agree that Recitals, paragraphs A-N, inclusive, and all of their content, are incorporated herein by reference as though set forth in full herein.

2.    **Submission of this Agreement to the Bankruptcy Court and Required Bankruptcy Court Approval**.    Within one business day following the date of execution of this Agreement by the Parties, the Trustee will file a motion (the "Settlement Motion") with the Bankruptcy Court seeking the Bankruptcy Court's approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.    The effectiveness of this Agreement is expressly subject to the approval of this Agreement by the Bankruptcy Court.    The Trustee will use his reasonable best efforts to have the hearing on the Settlement Motion be heard on a shortened time basis,

5

on the first date available to the Court, to maximize the Trustee's sale timeline.

3.    **Fixing the Allowed Amount of and Validating Dream Media's Claim and Validating Dream Media's Liens**.    Dream Media's claim will be deemed fixed and allowed in the amount of $10,440,903.14 as of the Petition Date (the "Dream Media Petition Date Claim Amount") and, if it turns out that the value of all of the Debtors' assets (excluding avoidance actions) is greater than the Dream Media Petition Date Claim Amount, then the Dream Media Petition Date Claim Amount will increase by $200,000 per month up to the aggregate value of all such assets until paid (with any partial month prorated) (the "Full Dream Media Claim").    Within three business days following the Bankruptcy Court's entry of an order approving this Agreement, the Trustee, as the legal representative of the Estates, shall take all steps necessary to withdraw with prejudice the Debtors' pending Dream Media Claim Objection, and the Trustee agrees that he is prohibited from ever filing any objection to Dream Media's claim which is being fixed and allowed under this Agreement.

4.    **Auction Sale**.    The Trustee will seek Bankruptcy Court authority to conduct an auction sale (the "Auction") of all of the assets of these Estates (excluding cash, avoidance actions, the Vice Coin receivable, and the Club Owners license agreement)(collectively, the "Purchased Assets"), with the Auction to be held on June 1, 2018 or the first available date thereafter if

6

June 1, 2018 is not available to the Bankruptcy Court.  The Parties will request the Bankruptcy Court to enter the sale order immediately after the Auction is completed or as soon thereafter as is possible.  The sale closing shall occur by June 15, 2018.   Only financially qualified bidders (as determined by the Trustee) will be eligible to bid at the Auction, with financially qualified to mean, at a minimum, that the bidder has the funding available to it at the time of the Auction to pay the proposed purchase price (meaning, no financing contingency).  In order to be eligible to bid at the Auction, in addition to being financially qualified, all prospective overbidders will be required to provide the Trustee with a cash deposit of $250,000 at least two business days prior to the Auction, which deposit will be completely non-refundable and forfeited to the Trustee as liquidated damages if the winning bidder fails to close its purchase by June 15, 2018, due to the fault of the bidder.   Dream Media is already deemed to be financially qualified and is not required to provide the Trustee with any bidding deposit in advance of the Auction.  The Auction will commence with a credit bid by Dream Media of $3.0 million.  All subsequent bidding must be in increments of $100,000 or figures which are wholly divisible by $100,000. The minimum initial overbid must be at least $3.1 million.  All bids submitted by any bidder other than Dream Media must be for all cash.   Dream Media shall have the right to credit bid its debt up to the amount of the Full Dream Media Claim in connection with the sale of the Purchased Assets by the

7

Trustee.  If there is no overbid submitted at the Auction, the Purchased

Assets will be sold to Dream Media free and clear of all liens, claims and

interest with all usual and customary protections in the sale order, including

a good faith finding (with the form of the sale order to be approved by

Dream Media), for a credit bid of $3.0 million, in which case Dream Media

will deliver a cash payment to the Trustee in the amount of $550,000 as a

carve out which will be free and clear of Dream Media's claims and liens.

Also, if someone other than Dream Media is deemed to be the winning

bidder at the auction and the winning bidder fails to close its purchase by

June 15, 2018 due to the fault of the buyer, the Purchased Assets will be

sold to Dream Media for a credit bid of $3.0 million on the same terms as

described above, in which case Dream Media will deliver a cash payment to

the Trustee in the amount of $550,000 as a carve out which will be free and

clear of Dream Media's claims and liens, and the Trustee will retain the

$250,000 deposit forfeited by the winning bidder for its failure to close,

which will also be free and clear of Dream Media's claims and liens.

  5. **Allocation of Sale Proceeds and Carve Out**.  If the winning

bid at the Auction is more than $3 million and the winning bidder is someone

other than Dream Media, then concurrently with the sale closing, (i) Dream

Media will be paid $3.0 million plus 90% of the extent to which the winning

bid is higher than $3.0 million up to the sum of $10 million, and 80% of that

portion of the winning bid which is higher than $10 million; and (ii) the

8

Trustee will be paid the balance of the purchase price (i.e., 10% of the extent to which the winning bid is higher than $3.0 million up to $10 million and 20% of that portion of the winning bid which is higher than $10 million), plus Dream Media will pay $550,000 to the Trustee as a carve out, all of which will be free and clear of Dream Media's claims and liens.  If there is bidding at the Auction and the winning bidder is Dream Media, then the Purchased Assets will be sold to Dream Media for the amount of the winning bid free and clear of all liens, claims and interest with all usual and customary protections in the sale order, including a good faith finding (with the form of the sale order to be approved by Dream Media), and concurrently with the sale closing, Dream Media will pay to the Trustee $550,000 plus 10% of the extent to which the winning bid is higher than $3.0 million up to $10 million and 20% of that portion of the winning bid which is higher than $10 million as a carve out, all of which will be free and clear of Dream Media's claims and liens.

6. **Allocation of Proceeds of any Agreement with the Club Owners**.  If the Trustee proceeds with an agreement with the Club Owners relating to affirmation or modification of the Club License (subject to overbid or not at the Trustee's discretion), the Trustee shall split the proceeds of any such agreement with Dream Media – 50% to Dream Media and 50% to the Trustee on the first $1 million in proceeds and 25% to Dream Media and 75% to the Trustee on all proceeds in excess of $1 million, with the portion

retained by the Trustee to be free and clear of Dream Media's claims and liens.  If the Trustee desires to consummate a transaction involving the Club License prior to the Auction or if Dream Media is the winning bidder for the Purchased Assets at the Auction, then the Trustee must structure any such transaction with the Club Owners (or any other party) in a manner that does not negatively impact upon Dream Media's collateral (if the transaction occurs prior to the Auction) and does not negatively impact upon Dream Media's ownership of the Purchased Assets (if the transaction occurs after the Auction and Dream Media is the winning bidder for the Purchased Assets at the Auction), including not creating any naked or abandoned marks. If the Trustee desires to consummate a transaction involving the Club License prior to the Auction or if Dream Media is the winning bidder for the Purchased Assets at the Auction, the Trustee must obtain Dream Media's prior written approval on the form of any such agreement.

7.    **Treatment of the Vice Coin Receivable**.   Concurrently with and as part of the Bankruptcy Court's approval of this Agreement, all right, title and interest of these Estates to the Vice Coin receivable shall be assigned and transferred to Dream Media.   Dream Media shall pursue collection of the Vice Coin receivable in the Bankruptcy Court for the benefit of these Estates, with the Bankruptcy Court (provided the Bankruptcy Court is willing) to retain jurisdiction as part of the Bankruptcy Court order approving this Agreement.   Dream Media shall retain 90% of any net

10

recovery obtained from the pursuit of the Vice Coin receivable (with "net recovery" to mean any financial recovery after deducting all costs incurred by Dream Media in the pursuit of the Vice Coin receivable, including all legal fees and costs), with any such net recovery retained by Dream Media to serve as a reduction in the amount of the Full Dream Media Claim.  Dream Media will deliver to the Trustee 10% of any net recovery obtained from the pursuit of the Vice Coin receivable as a carve out which will be free and clear of Dream Media's claims and liens.

8.    **Maximum Total Recovery By Dream Media and Maximum Total Recovery By the Trustee Pending Payment in Full of the Full Dream Media Claim**.  The maximum total recovery actually received by Dream Media from (i) any sale of the Purchased Assets to a third party, (ii) any winning credit bid submitted by Dream Media for a sale of the Purchased Assets, (iii) any net recovery from the pursuit of the Vice Coin receivable, (iv) any transaction with the Club Owners, or (v) otherwise, will be the Full Dream Media Claim.  Also, if at any time the Trustee has recovered at least $1.8 million into these Estates, from any sources (but, in all events, excluding recoveries from avoidance actions), and the Full Dream Media Claim has not yet been paid in full, all additional funds recovered by the Trustee (or from the pursuit of the Vice Coin receivable) will be paid to Dream Media until the Full Dream Media Claim has been paid in full.  If at the time of the closing of the Trustee's sale of the Purchased Assets the

11

Trustee is in possession of any cash resulting from the operation of the Debtors' business (not including any funds in or derived from the Merchant Bank Accounts), the Trustee shall be authorized to use such cash to pay any non-professional post-petition expenses incurred by the Estates (including, without limitation, the fees of an investment banker or sales agent retained by the Trustee to assist the Trustee to sell the Purchased Assets) and not have the amount of such cash used by the Trustee for this purpose be counted against the $1.8 million figure referenced above in this Paragraph.

9.    **The Trustee's Continued Use of Dream Media's Cash Collateral**.  As part of this Agreement, Dream Media will consent to the Trustee's continued use of cash collateral through the closing of the sale of the Purchased Assets pursuant to mutually acceptable budgets to be prepared by the Trustee and approved by Dream Media and the Bankruptcy Court.  Dream Media agrees that any funds in or derived from the Merchant Bank Account do not constitute its cash collateral and are free and clear of Dream Media's liens, claim and interests.

10.    **Other Transactions By the Trustee**.  Pending the closing of the sale of the Purchased Assets, other than the transaction with the Club Owners described above, the Trustee hereby agrees that he is not permitted to sell, lease, license or encumber any assets of these Estates without the prior written consent of Dream Media and the consent of the Bankruptcy Court, and, in his capacity as the Trustee, the Trustee will take all

12

reasonable steps necessary to prohibit the Debtors (who are no longer Debtors-In-Possession, given the appointment of the Trustee) from doing so.

11.     **Dismissal of the State Court Action**.   Within five business days following entry by the Bankruptcy Court of an order approving this Agreement, and such order becoming a final order, Dream Media will dismiss and take the steps necessary to dismiss the State Court Action.

12.     **Financial Reporting and Access to the Debtors' Business Premises**.   Unless and until the Full Dream Media Claim has been paid in full, the Trustee will provide Dream Media will copies of all financial information prepared by the Trustee or made available to the Trustee, and the Trustee shall provide Dream Media will physical access to the Debtors' business premises upon reasonable advanced notice provided by Dream Media to the Trustee.

13.     **Dream Media's Audit Rights.**   Unless and until the Full Dream Media Claim has been paid in full, Dream Media shall have the right, at Dream Media's expense, to audit the Debtors' books and records, and the Trustee will provide Dream Media with information concerning the Trustee's administration of the Debtors' Estates.   The Trustee shall also cooperate with any such audits, including making all of the Debtors' books and records and all of the Trustee's books and records as they related to the Debtors available to Dream Media.

13

14.   **Mutual Releases.**  The Parties to this Agreement hereby agree, effective upon the entry of the Bankruptcy Court order approving this Agreement, to the following releases:

14.1 Other than with respect to Dream Media's obligations to the Trustee under this Agreement and the rights of the Trustee under this Agreement, the Trustee, on behalf of himself and the Estates hereby fully and finally release, remise and discharge Dream Media and ExWorks and any and all of their respective agents, employees, representatives, affiliates, directors, officers, partners, attorneys, assigns, predecessors and successors in interest from any and all claims, demands, and causes of action that exist as of the date of this Agreement or any time prior thereto, including, but not limited to, any claims, demands or causes of action which pertain to, are associated with, arise under or relate to the Loans, the Loan Assignment, the Security Assignment, the State Court Action, or the Bankruptcy Cases

14.2 Other than with respect to the Trustee's obligations to Dream Media under this Agreement and the rights of Dream Media under this Agreement, Dream Media hereby fully and finally releases, remises and discharges the Trustee, the Trustee's professionals and the Estates from any and all claims, demands, and causes of action that exist as of the date of this Agreement or any time prior thereto, recognizing that this release does not have any impact whatsoever upon Dream Media's rights against any individuals and/or third parties on account of any personal guaranties or

14

otherwise, and any rights that Dream Media has in its capacity as a current or prospective equity holder of the Debtors, all of which rights are expressly reserved and retained by Dream Media.

15. **Waiver of Section 1542 of the Civil Code of the State of California**.  All of the Parties to this Agreement understand and recognize that they may discover or obtain information in the future pertaining to matters being released herein which they did not know or have as of the date of this Agreement.  The releases set forth in paragraph 14 above are expressly intended to cover and include a mutual release by all of the Parties to this Agreement of any claims, demands or causes of action which arise out of, relate to, are connected with, or are incidental to any such information which may be discovered or obtained in the future.  All of the Parties to this Agreement therefore expressly waive the provisions of Section 1542 of the Civil Code of the State of California which provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

All of the Parties to this Agreement expressly agree that, notwithstanding the provisions of Civil Code Section 1542, the releases set

15

forth in paragraph 14 above shall be given full force and effect according to each and all of their expressed terms and provisions, including those relating to unknown and unspecified claims, demands and rights, lawsuits, or other causes of action.

16.    **Entire Agreement**.  This Agreement, along with the documents and agreements implementing this Agreement, constitutes the entire agreement among the Parties with respect to the subject matter hereof. There are no promises, representations, or other agreements among the Parties concerning the subject matters of this Agreement, except as specifically set forth herein.  Each Party expressly acknowledges that, in entering into this Agreement, he or it has not relied upon any statement or representation pertaining to the matters set forth herein made by or on behalf of any other Party.

17.    **Beneficiaries**.    This Agreement and all of the covenants, conditions and provisions contained herein shall apply to, be binding upon, and inure to the benefit of the respective heirs, administrators, executors, legal representatives, assignees, and successors of the Parties hereto, including ExWorks and any subsequently appointed chapter 7 trustee.

18.    **Joint Preparation of this Agreement; Interpretation and Construction.**    This Agreement shall, in all respects, be interpreted, enforced, and governed by and under the laws of the State of California. This Agreement is to be deemed to have been jointly prepared by the Parties

16

hereto, and any uncertainty or ambiguity existing herein shall not be interpreted against any other Party based upon that Party's role in the drafting of this Agreement, but instead shall be interpreted according to the application of the rules of interpretation of contracts, if any such uncertainty or ambiguity exists.

19.   **Forum for Dispute Resolution**.   Any dispute arising out of or otherwise related to this Agreement shall be resolved solely by the Bankruptcy Court.

20.   **No Waiver of Dream Media's Equity Rights**.   This Agreement has no impact upon any equity or warrant rights that Dream Media has in the Debtors or any right of Dream Media to receive its pro rata share of any money that is ultimately distributed to the equity holders of the Debtors.

21.   **Legal Fees Provision**.   In the event that either Party to this Agreement institutes any action or proceeding to enforce, construe, or interpret any rights granted hereunder, each Party in any such action or proceeding shall bear its own attorney's fees and costs.

22.   **Prompt Performance of Obligations and Good Faith**.   The Parties to this Agreement hereby agree to perform promptly all such further acts, provide such further information, and to execute and deliver any and all further documents that may reasonably be necessary or desirable to effectuate the purpose of this Agreement.   The Parties to this Agreement

17

hereby agree to use their reasonable and good faith efforts to resolve any disputes which arise under this Agreement or the documents and agreements implementing this Agreement.

23.   **Knowledge of this Agreement and Authority to Enter into and to Execute this Agreement**.   The Parties to this Agreement hereby warrant and represent that he or it (a) has voluntarily and knowingly executed this Agreement, (b) has read this Agreement and understands all of its terms, (c) has the authority to enter into this Agreement (subject to the Bankruptcy Court's approval of this Agreement in the case of the Trustee), (d) has executed this Agreement, with full knowledge of its significance, without relying upon any warranties or representations, except those set forth herein, (e) is competent and capable of understanding this Agreement, (f) was not under the influence of any substance or condition that could, or did, impair his or her ability to comprehend the meaning of this Agreement at the time he or it executed this Agreement, and (g) is represented by the counsel of his or its choosing and has taken the opportunity to consult with counsel on the meaning and significance of this Agreement and each of its terms.

24.   **Counterpart Signatures**.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.   Facsimile

18

or electronically transmitted signatures to this Agreement shall be deemed to have the same force and effect as original signatures.

25. **Severability**.    If any term, clause, or provision in this Agreement is found to be unenforceable or invalid by any authority of competent jurisdiction, the validity and enforceability of the remaining terms, clauses, and provisions in this Agreement, and the enforceability and validity of this Agreement as a whole,  shall not be affected by such finding, decision, ruling, or award.

Agreed:

Dream Media Corporation

By: _____

Its: _CEO_____


Agreed:

David K. Gottlieb, solely in his capacity as the chapter 11 trustee of the Debtors and the Estates

By: _____
      David K. Gottlieb

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

**Proposed Procedures Order**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:313230.6 32277/001

1    Linda F. Cantor (CA Bar No. 153762)
     Victoria A. Newmark (CA Bar No. 183581)
2    PACHULSKI STANG ZIEHL & JONES LLP
     10100 Santa Monica Blvd., 13th Floor
3    Los Angeles, CA  90067
     Telephone: 310/277-6910
4    Facsimile: 310/201-0760
     E-mail:  lcantor@pszjlaw.com
5            vnewmark@pszjlaw.com

6

7    Proposed Attorneys for David K. Gottlieb, Chapter 11 Trustee

8                  **UNITED STATES BANKRUPTCY COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
9                  **SAN FERNANDO VALLEY DIVISION**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| In re:<br><br>PENTHOUSE GLOBAL MEDIA, INC.,<br><br>              Debtor.<br><br>☒ Affects All Debtors<br>☐ Affects Penthouse Global Broadcasting, Inc.<br>☐ Affects Penthouse Global Licensing, Inc.<br>☐ Affects Penthouse Global Digital, Inc.<br>☐ Affects Penthouse Global Publishing, Inc.<br>☐ Affects GMI Online Ventures, Ltd.<br>☐ Affects Penthouse Digital Media Productions, Inc.<br>☐ Affects Tan Door Media, Inc.<br>☐ Affects Penthouse Images Acquisitions, Ltd.<br>☐ Affects Pure Entertainment Telecommunications, Inc.<br>☐ Affects XVHUB Group, Inc.<br>☐ Affects General Media Communications, Inc.<br>☐ Affects General Media Entertainment, Inc.<br>☐ Affects Danni Ashe, Inc.<br>☐ Affects Streamray Studios, Inc. | Cases No.: 1:18-BK-10098-MB<br><br>Chapter 11<br><br>Jointly Administered with Cases Nos.:<br>1:18-bk-10099-MB; 1:18-bk-10101-MB;<br>1:18-bk-10102-MB; 1:18-bk-10103-MB;<br>1:18-bk-10104-MB; 1:18-bk-10105-MB;<br>1:18-bk-10106-MB; 1:18-bk-10107-MB;<br>1:18-bk-10108-MB; 1:18-bk-10109-MB;<br>1:18-bk-10110-MB; 1:18-bk-10111-MB;<br>1:18-bk-10112-MB; 1:18-bk-10113-MB<br><br>**ORDER: (A) SCHEDULING AUCTION AND HEARING FOR SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS; (B) APPROVING SALE PROCEDURES; (C) APPROVING NOTICE OF AUCTION AND SALE HEARING; AND (E) GRANTING RELATED RELIEF**<br><br>**Hearing:**<br>Date:        May 9, 2018<br>Time:        1:30 p.m.<br>Place:      United States Bankruptcy Court<br>            21041 Burbank Boulevard<br>            Courtroom 303<br>            Woodland Hills, California<br><br>Judge:  Hon. Martin R. Barash |

1

On May 9, 2018, this Court held a hearing on the proposed sale, bidding and auction procedures and related matters provided for in this Order (the "Procedures Matters") as set forth in the *Motion for Order (a) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (b) Scheduling Auction and Sale Hearing; (c) Approving Sale Procedures and Notice of Sale; and (d) Granting Related Relief* [Docket No. ___] (the "Motion")[1] filed by David K. Gottlieb, the duly appointed chapter 11 trustee (the "Trustee") for the estates (the "Estates") of Penthouse Global Media, Inc. and its debtor subsidiaries (the "Debtors"), in the above-entitled chapter 11 cases (the "Cases"). Appearances at the hearing on the Procedures Matters (the "Procedures Hearing") are set forth on the record. This Court has considered the Motion and the Procedures Matters, any responsive pleadings filed in connection with the Motion, the record in the Cases, and the representations of counsel at the Procedures Hearing; and the Court having determined that notice of the Motion in respect to the Procedures Matters was adequate and sufficient; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over this matter and over the property of the Debtor and Estate pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002, 6004 and 9014. Venue of the Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The relief granted herein is in the best interests of the Estates, their creditors, and other parties in interest.

C.      The notice of the Motion, the Procedures Matters, and the Procedures Hearing given by the Trustee constitutes due and sufficient notice thereof.

D.      Any and all objections to the relief requested in the Motion relating to the Procedures Matters that have not been withdrawn, waived or settled as announced to the Court at the Procedures Hearing, or by stipulation filed with the Court, are overruled.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1]  Capitalized terms not defined herein have the meaning ascribed to such term in the Motion.

DOCS_LA:313230.6 32277/001

E.      The Trustee has articulated good and sufficient reasons for the Court to (i) approve the Sale Procedures, (ii) approve the form and manner of notice of the Motion, the Auction, the Sale Hearing, and (iii) set the date of the Auction (if any) and the Sale Hearing.

F.      The Sale Notice (as defined below) is calculated to provide adequate notice concerning the proposed Sale of the Assets, and will provide due and adequate notice of the relief sought in the Motion, and is hereby approved.

G.      The Sale Procedures are reasonable and appropriate and represent a fair and appropriate method for maximizing the realizable value of the Assets.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      Any objections filed in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or at the Procedures Hearing, are hereby OVERRULED.

3.      The terms of the Sale set forth in the Settlement Agreement appended to the Sale Motion as **Exhibit A**, is designated as the "Stalking Horse Bid."

4.      Upon execution of a confidentiality agreement, any person identified by the Trustee, with the assistance of his advisors, as reasonably likely to be a Qualified Bidder (as defined below) that wishes to conduct due diligence on the Assets with respect to a potential overbid may be granted access to all material information that has been or will be provided to the Stalking Horse Bidder.  If the Trustee, in his discretion, determines that a Potential Bidder does not constitute a Qualified Bidder (as defined below), then such Potential Bidder's ability to receive due diligence access or additional non-public information shall terminate.

5.      Any prospective bidder (each a "Potential Bidder") that wishes to participate in the bidding process for the Assets must, no later than _____, 2018 (*i.e.*, three business days prior to the Auction) at 5:00 p.m. (Pacific Time) (the "Bid Deadline") do all of the following:

a.      Submit to the Trustee, through his counsel, an irrevocable offer in the form of an executed asset purchase agreement (the "Modified Agreement") without financing, internal approval or due diligence contingencies, at a price that conforms with the following Paragraph 5.b, and on such other terms that are no less favorable to the Estates than those contained in the term

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

sheet with the Stalking Horse Bidder.  The Potential Bidder shall also submit a "blacklined" or otherwise marked copy of the Modified Agreement reflecting the differences between the Modified Agreement and the form of asset purchase agreement to be furnished to Potential Bidders by the Trustee.

       b.     Agree, in such Modified Agreement, to a purchase price that provides for the following (the "Purchase Price"): payment in cash at closing in an initial minimum amount equal to or exceeding the sum of $3,100,000 ($3,000,000 plus $100,000).

       c.     Make a good faith cash deposit in the form of a cashier's check or wire transfer, in the amount of $250,000 (the "Bid Deposit"), into a segregated account maintained by the Trustee (the "Segregated Account").  The Bid Deposit shall immediately become non-refundable (subject to the next sentence) and credited toward the Purchase Price, if and when the transaction with the Potential Bidder making such Bid Deposit is deemed the Successful Bid or Back-Up Bid at the Auction and approved by the Court at the Sale Hearing.  If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Successful Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder will be returned to such bidder within five (5) business days after the Sale Hearing.

       d.     Provide written evidence reasonably satisfactory to the Trustee of (i) the identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction, (ii) the Potential Bidder's corporate or other authority to enter into the contemplated transaction, (iii) identification of all individuals of the Potential Bidder and its advisors that will attend the Auction, and (iv) its financial ability to fully and timely perform all obligations under the Modified Agreement if it is declared to be the Successful Bidder.

       e.     Disclose any connections or agreements with the Debtors, the Trustee, the Stalking Horse Bidder, and any other known Potential Bidder or Qualified Bidder.

       6.     If a Potential Bidder delivers all of the materials described in paragraph 5, above, (including the Bid Deposit) by the Bid Deadline, the Trustee will determine whether the Potential Bidder (i) has demonstrated the financial ability to consummate the purchase of the Assets, (ii) is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

1 reasonably likely to be able to and willing to consummate the contemplated transactions and (iii) has

2 otherwise satisfied all of the requirements described in paragraph 5, above.  If the Potential Bidder

3 has satisfied the requirements of this paragraph 6, the Trustee shall designate the Potential Bidder as

4 a "Qualified Bidder" and such bid as a "Qualified Bid." The Stalking Horse Bidder shall be deemed

5 to be a Qualified Bidder.

6    7. If the Trustee receives at least one (1) Qualified Bid from a Qualified Bidder other

7 than the Stalking Horse Bidder prior to the Bid Deadline, then the Trustee shall notify the Stalking

8 Horse Bidder and each other Qualified Bidder that the Trustee intends to conduct an auction (the

9 "Auction") to consider all Qualified Bids, subject to reasonable rules as may be established by the

10 Trustee. The Sale Hearing and the Auction to determine the Successful Bidder for the Assets shall be

11 held on _____, 2018 at ___:___ a.m. (Pacific Time) at the Sale Hearing.  Each bidder

12 participating at the Auction will be required to confirm that it has not engaged in any collusion with

13 respect to the bidding or the Sale.

14    8. Subject to paragraph 15 below, only the Stalking Horse Bidder and other Qualified

15 Bidders may bid at the Auction.  Copies of all Qualified Bids shall be provided to the Stalking Horse

16 Bidder and each other Qualified Bidder prior to the Auction.  At the commencement of the Auction,

17 the Trustee shall identify the bid that he has determined to be the highest and best offer and shall

18 permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and better bids.  Each

19 subsequent bid must exceed the amount of the preceding bid by not less than $100,000 and shall not

20 be modified in a manner that causes it no longer to be a Qualified Bid.  The Stalking Horse Bidder

21 may participate in overbidding by increasing its credit bid up to the maximum amount of

22 $10,440,903.14 (the "Maximum Credit Bid"), and the amount of any overbid that exceeds the

23 Maximum Credit Bid shall be in cash.  The Auction will be an "open format" such that all

24 participants are contemporaneously to be made aware of the particulars of any Qualified Bids that

25 are submitted.  At the conclusion of the Auction, the Trustee shall determine which bid(s) shall be

26 deemed the Successful Bid and Back-Up Bid (if any).  The Trustee shall file a notice announcing the

27 results of the Auction and the identity of the Successful Bidder and the Back-Up Bidder on the

28 Court's docket as soon as practicable after conclusion of the Auction.  The Trustee shall request at

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

the Sale Hearing that the Court authorize the Trustee to consummate the Sale of the Assets to the

Successful Bidder and, should the Successful Bidder fail to close, to the Back-Up Bidder.  Promptly

following the conclusion of the Auction, the Successful Bidder shall complete and sign all

agreements, contracts, instruments or other documents evidencing and containing the terms and

conditions upon which such bid was made.  Bid Deposits of the bidders other than the Successful

Bidder and Back-Up Bidder shall be returned.

9.      If bids have been submitted by more than one Qualified Bidder, the Qualified Bidder

that makes the next-highest and best bid to that of the Successful Bidder shall become the back-up

bidder (the "Back-Up Bidder") and such Back-Up Bidder's final and highest and best bid (the

"Back-Up Bid") shall remain open pending the closing of the Successful Bid (the "Closing Date").

If a bid of the Stalking Horse Bidder is the next-highest and best bid to that of the Successful Bidder,

then such bid of the Stalking Horse Bidder shall be the Back-Up Bid, subject to the terms and

conditions of the asset purchase agreement relating thereto.

10.      The Estates shall retain the Bid Deposit(s) made by the Successful Bidder and/or the

Back-Up Bidder, free and clear of all liens, claims and interests of Dream Media Corporation if

either the Successful Bidder and/or the Back-Up Bidder (as applicable) fails to close the Sale within

five (5) business days after entry of a Bankruptcy Court order approving the Sale of the Assets.

11.      If the Trustee does not receive at least one Qualified Bid from a Qualified Bidder

other than the Stalking Horse Bidder, then no Auction shall be scheduled or conducted, and the

Court at the Sale Hearing shall proceed to consider the approval of the Sale of the Assets to the

Stalking Horse Bidder.

12.      If the Sale transaction with the Successful Bidder does not close, the Back-Up Bid

shall, upon notice by the Trustee to the Back-Up Bidder, be deemed the Successful Bid without

further order of the Court, and the Back-Up Bidder shall be required to consummate the Sale

transaction in accordance with the applicable asset purchase agreement, and the Back-Up Bidder

shall be subject to the terms of this Order as if it were the initial Successful Bidder.  If the Stalking

Horse Bidder is not the Successful Bidder or Back-Up Bidder, the Stalking Horse Bidder shall have

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

the right, but not the obligation, to keep its bid open pending the closing of a transaction with a Successful Bidder.

13.    Upon approval by the Court of the Successful Bidder and subject to the terms and conditions of the applicable asset purchase agreement, the Successful Bidder's Bid Deposit shall become non-refundable and deemed forfeited to the Estates, free and clear of all liens, claims and interests, if the asset purchase agreement is thereafter terminated as a result of a breach by the Successful Bidder or failure by the Successful Bidder to close the proposed transaction as specified in this Order and/or the applicable asset purchase agreement.  The Bid Deposit of the Back-Up Bidder shall remain on deposit in the Segregated Account pending the Closing Date (as defined below), and such deposit shall become non-refundable and deemed forfeited to the Estates if the Back-Up Bidder is declared the Successful Bidder and if the applicable asset purchase agreement is thereafter terminated as a result of a breach by the Back-Up Bidder or failure by the Back-Up Bidder to close the proposed transaction as specified in this Order and/or the applicable asset purchase agreement.

14.    Notwithstanding any other provision herein, the Trustee, in his sole discretion, shall determine whether a bid for the purchase of the Assets has satisfied all the conditions set forth above or if the Trustee believes it is in the best interest of the Estates to waive any or all of the above conditions, including permitting a bidder to bid at the Auction without submitting a prior Qualified Bid.

15.    The Trustee may modify the Sale Procedures set forth in this Order at any time prior to or during the Auction if the Trustee determines, following consultation with the Stalking Horse Bidder, in his reasonable judgment, that such modifications are reasonable and will better promote the goals of the Auction process and are in the best interest of the Estates and the creditors thereof.

16.    Any objections to the Sale and Sale Approval Motion shall be in writing and shall be filed with the Court and served so as to be actually received by (i) the Trustee's counsel, Linda Cantor, Esq., Pachulski, Stang, Ziehl & Jones, LLP, 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067, fax: 310-201-0760, lcantor@pszjlaw.com, (ii) the Stalking Horse Bidder's counsel, Ron Bender and Beth Young, fax: 310-229-1244, RB@lnbyb.com and bry@lnbyb.com,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

1   and (iii) the Office of the United States Trustee (the "Objection Recipients"), **on or before**

2   _____, **2018 at 5:00 p.m. (Pacific Time)**, and the Trustee's reply and any other

3   response to the objections shall be filed and served on no later than _____, 2018, at

4   5:00 p.m. (Pacific Time).

5          17.     Notice of (a) the Motion, (b) the Sale Procedures, (c) the Auction, (d) the Objection

6   Deadlines, and (e) the Sale Hearing shall be provided within two (2) business days after entry of this

7   Order, by the Trustee via ECF notification, U.S. mail, facsimile and/or email, upon the Service

8   Parties (defined below), substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"),

9   and such notice shall be good and sufficient, and no other or further notice shall be required, under

10  the circumstances. The "Service Parties" are (i) any parties known by the Trustee to have expressed

11  an interest to him in a transaction with respect to the Assets; (ii) any other parties that the Trustee

12  and his advisors believe may potentially have an interest in acquiring the Assets; (iii) any entities

13  known by the Trustee to have asserted any lien or interest in the Assets; (iv) the United States

14  Trustee; (v) the Debtors and the Committee, and (vi) all parties who have requested special notice in

15  the Cases.

16         18.     Notwithstanding any applicability of Bankruptcy Rule 6004(h) and/or any other

17  Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and

18  enforceable upon entry hereof.

19         19.     The relief granted to the Trustee in this Order shall be enforceable by any successor

20  to the Trustee, including any trustee appointed in the Cases in the event that the Cases are converted

21  to cases under chapter 7 of the Bankruptcy Code.

22         20.     This Court shall retain jurisdiction to enforce and interpret the provisions of this

23  Order.

24                                          # # # # #

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## EXHIBIT 1

2

(Settlement Agreement)

3

4                [Document attached as <u>Exhibit A</u> to Motion]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## EXHIBIT 2

(Form of Sale Notice)


[To Be Filed]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**10100 Santa Monica Boulevard, 13ᵗʰ Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) SCHEDULING AUCTION AND SALE HEARING; (C) APPROVING SALE PROCEDURES AND NOTICE OF SALE; AND (D) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID K. GOTTLIEB** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>April 18, 2018</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On <u>April 18, 2018</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>April 18, 2018</u> served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

*Via Federal Express*
Honorable Martin R. Barash
U.S. Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 342/ Courtroom 303
Woodland Hills, California 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 18, 2018 | Janice G. Washington | */s/ Janice G. Washington* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:313230.6 32277/001

**F 9013-3.1.PROOF.SERVICE**

## 1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Russell Clementson on behalf of U.S. Trustee
United States Trustee (SV)
russell.clementson@usdoj.gov

James A Dumas, Jr on behalf of Creditor NOA
Productions SPRL
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

James A Dumas, Jr on behalf of Creditor
Penthouse Global Broadcasting, Inc.
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

Allan B Gelbard on behalf of Other
Professional Allan B. Gelbard
xxxesq@aol.com, Allan@GelbardLaw.com

David Keith Gottlieb (TR)
dkgtrustee@dkgallc.com,
dgottlieb@iq7technology.com,rjohnson@dkgal
lc.com,akuras@dkgallc.com

David W. Meadows on behalf of Interested
Party Courtesy NEF
david@davidwmeadowslaw.com

Krikor J Meshefejian on behalf of Creditor
Interested Party
kjm@lnbrb.com

Alan I Nahmias on behalf of Interested Party
Courtesy NEF
anahmias@mbnlawyers.com,
jdale@mbnlawyers.com

Aram Ordubegian on behalf of Creditor LSC
Communications US, LLC / Creel Printing
ordubegian.aram@arentfox.com

Hamid R Rafatjoo on behalf of Creditor
Committee The Official Committee of
Unsecured Creditors
hrafatjoo@raineslaw.com,
bclark@raineslaw.com;cwilliams@raineslaw.c
om

S Margaux Ross on behalf of U.S. Trustee
United States Trustee (SV)
margaux.ross@usdoj.gov

Michael St James on behalf of Creditor
Interested Party
ecf@stjames-law.com

Michael St James on behalf of Interested Party
Michael St. James
ecf@stjames-law.com

Howard Steinberg on behalf of Creditor
Greenberg Traurig, LLP
steinbergh@gtlaw.com,
pearsallt@gtlaw.com;laik@gtlaw.com

Cathy Ta on behalf of Interested Party
Penthouse Clubs Worldwide, LLC
cathy.ta@bbklaw.com,
Arthur.Johnston@bbklaw.com;lisa.spencer@b
bklaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Michael H Weiss on behalf of Attorney Weiss
& Spees, LLP
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Danni
Ashe, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor GMI
Online Ventures, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor General
Media Communications, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor General
Media Entertainment, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Digital Media Productions, Inc.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:313230.6 32277/001

**F 9013-3.1.PROOF.SERVICE**

mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Broadcasting, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Digital, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Licensing, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Media, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Global Publishing, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Penthouse Images Acquisitions, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Pure
Entertainment Telecommunications, Inc. fka
For Your Ears Only, Ltd.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor
Streamray Studios, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor Tan
Door Media, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of Debtor XVHUB
Group, Inc.
mw@weissandspees.com,
lm@weissandspees.com

Christopher K.S. Wong on behalf of Creditor
LSC Communications US, LLC / Creel
Printing
christopher.wong@arentfox.com

Beth Ann R Young on behalf of Creditor
Dream Media Corporation
bry@lnbyb.com

Beth Ann R Young on behalf of Creditor
Interested Party
bry@lnbyb.com

Brian L. Davidoff
bdavidoff@greenbergglusker.com

Jonathan Hayes jhayes@SRHLawFirm.com

Peter W. Lianides plianides@wcghlaw.com

Mark S. Horoupian
mhoroupian@sulmeyerlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**U.S. Bankruptcy Court**
**Central District of California (San Fernando Valley)**
**In re Penthouse Global Media, Inc., Case No. 18-10098-MB**

2.    <u>**SERVED BY UNITED STATES MAIL**</u>:

*Debtor*
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

*Counsel for Debtor*
Michael H. Weiss, Esq.
WEISS & SPEES LLP
6310 San Vicente Boulevard, Suite 401
Los Angeles, CA  90048

*Trustee*
David Keith Gottlieb, Managing
Member
D. Gottlieb & Associates, LLC
17000 Ventura Blvd., Suite 300
Encino, California, 91403

*Office of U.S. Trustee*
Margaux S. Ross
915 Wilshire Blvd. , Suite 1850
Los Angeles, CA 90017

*Counsel for The Official Committee of*
*Unsecured Creditors*
c/o Hamid R. Rafatjoo
Raines Feldman LLP
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

*Committee Members*
DVD Factory Inc.
Representative: Steve Kalson
7230 Coldwater Canyon Ave.
North Hollywood, CA 91605

LSC Communications US, LLC / Creel Printing.
Representative: Dan Pevonk
4101 Winfield Rd.
Warrenville, IL 60555

TGG
Representative: Matthew A. Garrett, CEO
10188 Telesis Court
Suite 130
San Diego, CA 92121

Miller Law Group
Representative: Walter M. Stella
111 Sutter Street
San Francisco, CA 94104

Palm Coast Data
Representative: Neil Gordon
11 Commerce Blvd.
Palm Coast, FL 32164

*Interested Parties*
Kelly Holland
President and Chief Executive Officer
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

Robert W. Campbell
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

Allan B. Gelbard
Attorney at Law
15760 Ventura Boulevard, Suite 801
Encino, CA  91436

Mark A. Mintz
Attorney at Law
JONES WALKER
201 St. Charles Avenue
New Orleans, LA  70170-5100

John D. Kirkendoll
Founder/CEO
Kirkendoll Management, LLC
201 St Charles Ave., Suite 3915
New Orleans, LA 70170

*Requests for Special Notice*
Howard J. Steinberg (CA SBN 89291)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA  90067

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:313230.6 32277/001

**F 9013-3.1.PROOF.SERVICE**

Aram Ordubegian (SBN 185142)
Robert M. Hirsh (*pro hac vice*
application to be submitted)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

Joseph E Bain
Jones Walker LLP
811 Main St., Ste 2900
Houston, TX 77002

Timothy Driver
433 North Camden, Suite 970
Beverly Hills, CA 90210

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:313230.6 32277/001