Michael H. Weiss (State Bar Number 107481)
mw@weissandspees.com
WEISS & SPEES, LLP
6310 San Vicente Blvd., Suite 401
Los Angeles, CA 90048
Telephone: 424-245-3100
Facsimile: 424-217-4160

Attorneys for Debtors and Debtors in Possession
Penthouse Global Media, Inc. et al.

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| IN RE<br><br>PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation<br><br>Debtor.<br><br>In re:<br>Penthouse Global Broadcasting, Inc., Penthouse Global Licensing, Inc., Penthouse Global Digital, Inc., Penthouse Global Publishing, Inc. GMI Online Ventures, Ltd., Penthouse Digital Media Productions, Inc., Tan Door Media, Inc. Penthouse Images Acquisitions, Ltd., Pure Entertainment Telecommunications, Inc., XVHUB Group, Inc., General Media Communications, Inc., General Media Entertainment, Inc., Danni Ashe, Inc., Streamray Studios, Inc.<br><br>☒ Affects All Debtors<br>☐ Affects:<br>☐ Affects<br>☐ Affects<br>☐ Affects<br>☐ See attached for additional Debtors | Case No. 1:18-bk-10098-MB<br>Chapter 11<br>Jointly Administered With:<br>Case No. 1:18-bk-10099-MB, Case No. 1:18-bk-10101-MB, Case No. 1:18-bk-10102-MB, Case No. 1:18-bk-10103-MB, Case No. 1:18-bk-10104-MB, Case No. 1:18-bk-10105-MB, Case No. 1:18-bk-10106-MB, Case No. 1:18-bk-10107-MB, Case No. 1:18-bk-10108-MB, Case No. 1:18-bk-10109-MB, Case No. 1:18-bk-10110-MB, Case No. 1:18-bk-10111-MB, Case No. 1:18-bk-10112-MB and Case No. 1:18-bk-10113-MB<br><br>**DEBTORS' OBJECTION TO MOTION FOR ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS ENCUMBRANCES AND INTERESTS; (B) SCHEDULING AUCTION AND SALE HEARING; (C) APPROVING SALE PROCEDURES AND NOTICE OF SALE; AND (D) GRANTING RELATED RELIEF [DKT. NO. 327] AND MOTION FOR ORDER APPROVING SETTLEMENT WITH DREAM MEDIA CORPORATION [DKT. NO. 325]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KELLY HOLLAND AND MICHAEL H. WEISS**<br><br>Hearing:<br>Date:    May 9, 2018<br>Time:    1:30 p.m.<br>Place:   Room 303, 21041 Burbank Blvd**.**<br>             Woodland Hills, CA |

1

Debtors Penthouse Global Media, Inc., Penthouse Global Broadcasting, Inc., Penthouse Global Licensing, Inc., Penthouse Global Digital, Inc., Penthouse Global Publishing, Inc., GMI Online Ventures, Ltd., Penthouse Digital Media Productions, Inc., Tan Door Media, Inc., Penthouse Images Acquisitions, Ltd., Pure Entertainment Telecommunications, Inc., XVHUB Group, Inc., General Media Communications, Inc., General Media Entertainment, Inc., Danni Ashe, Inc. and Streamray Studios, Inc. (collectively. "Debtors") hereby object to the Motion of David K. Gottlieb, the Chapter 11 Trustee (the "Trustee") For Order (A) Approving Sale of Substantially All Assets Free and Clear Of All Liens, Claims Encumbrances and Interests; (B) Scheduling Auction and Sale Hearing; (C) Approving Sale Procedures and Notice Of Sale; and (D) Granting Related Relief [Dkt. No. 327] (the "Sale" Motion") and Motion for Order Approving Settlement with Dream Media [Dkt. No. 325] (the "Settlement Motion") (collectively, the "Motions").

## I.    INTRODUCTION

The Trustee proposes to sell all of the assets of the Debtors and to allow Dream Media Corporation ("DMC") to credit bid against those assets as part of the sale. [Dkt. No. 327 at pp. 3, 8.] DMC is the only secured creditor of these Debtors. The Trustee has agreed that DMC can credit bid up to the full amount of its claim of over $10.0 million as part of the sale process. Id. at pp. 3, 8. DMC's right to credit bid arises from the Trustee's settlement of DMC's claims against the estates under Fed. R. Bankr. Pro. 9019. [Dkt. No. 325 at pp. 4, 8.] Without one, the other does not proceed.

The Court should deny the Motions because they operate as a *de facto* substantive consolidation of these estates. The Trustee has made no attempt to show such consolidation is proper, especially outside of the plan confirmation process. Moreover, the facts show that there is no basis for substantive consolidation and that such consolidation would impose a significant injustice to many creditors.

Specifically, DMC is simply not a creditor of two Debtors, Penthouse Global Broadcasting, Inc. ("Broadcasting") and Penthouse Global Publishing, Inc. ("Publishing"). Those entities generated about 80% of Debtors' revenues in 2017. Each has its own separate creditors and assets. DMC has not perfected its lien in the assets of those entities because neither it nor its predecessor filed UCC-1's or copyright mortgages against them. Weiss Decl., ¶ 2. None of these substantial defects with DMC's

2

claim are disclosed, let alone discussed, in the Motions.

## II.    ARGUMENT

### A.    DMC/ExWorks are not creditors of either Broadcasting or Publishing.

ExWorks Capital Fund I, L.P. ("ExWorks") loaned $9.0 million to Penthouse Global Media, Inc. ("PGMI") to acquire the shares of 16 subsidiaries of Friend Finder Networks Inc. on February 19, 2016. Holland Decl. ¶ 2. The loan is evidenced by two notes (the "Notes"). Id. at ¶ 3; Exs. 1 and 2.[1] ExWorks assigned that loan to DMC.[2] PGMI is a maker of the Notes. Both Notes provide:

> This Note evidences indebtedness incurred under, and is subject to the terms and provisions of, the Loan and Security Agreement, dated as of the date hereof (as amended, restated or otherwise modified from time to time, the "***Loan Agreement***"; terms not otherwise defined herein are used herein as defined in the Loan Agreement), among Borrower, Lender, and the other parties thereto from time to time, to which Loan Agreement reference is hereby made for a statement of the terms and provisions under which this Note may or must be paid prior to its due date or its due date accelerated.

The Loan and Security Agreement ("LSA") (Ex. 3) is executed by PGMI and 14 of the entities acquired by PGMI from Friend Finder Networks, Inc. on February 19, 2016. Holland Decl. ¶ 4; Ex. 3 at pp. 69-70.[3] Neither Broadcasting nor Publishing signed the LSA. Both parties were incorporated in Delaware on February 26, 2016. Weiss Decl. ¶ 3; Ex. 4. Broadcasting and Publishing are not parties to the Notes and the LSA. Along with Penthouse Global Licensing, Inc. ("Licensing") and Penthouse Global Digital, Inc. ("Digital"), Broadcasting and Publishing are the operating entities of PGMI. Holland Decl. ¶ 3.

Section 2.7(a) of the LSA contains language that suggests other parties might be obligated under the Notes and LSA: "The payment and performance of all Obligations shall constitute the absolute and unconditional obligations of each Loan Party Obligor ... ." Ex. 3 at p. 29. If a person or entity is a "Loan Party Obligor," then that party is obligated under the LSA. The LSA lists 12 entities as ***"Loan Party Obligors."*** Id. at p. 69-70. Neither Broadcasting nor Publishing is among the Loan Party Obligors listed

---

[1]    All references to Exhibits refer to the exhibits in the accompanying Appendix of Exhibits.

[2]    See Declaration of Adam Levin at ¶ 2 filed in support of DMC's Motion for Relief from Stay, Dkt. No. 59 at pp. 222.

[3]    Unless otherwise noted all references to pages to an Exhibit refer to the "Bates" numbers printed in the lower left hand corner of the Exhibit.

3

in the LSA.

The Preamble of the LSA provides:

> This Loan and Security Agreement (as it may be amended, restated or otherwise modified from time to time, this "Agreement") is entered into on February 19, 2016 among EXWORKS CAPITAL FUND I, L.P. ("Lender"), PENTHOUSE GLOBAL MEDIA, INC., a Delaware corporation ("Borrower") and each of the parties signatory hereto as a Loan Party Obligor (as defined herein). The Schedules and Exhibits to this Agreement are an integral part of this Agreement and are incorporated herein by reference.

The term **"*Loan Party Obligor*"** means the Borrower or "any Obligor that is a Loan Party." Ex. 3 at p. 13. Under the LSA, "***Borrower***" has the meaning set forth in the preamble to the LSA. Id. Only PGMI is the ***"Borrower"*** under the LSA. The term "***Loan Parties***" means "collectively, Borrower and all Subsidiaries." Id. at p. 22. The term "***Subsidiary***" means

> any corporation or other entity of which a Person owns, directly or indirectly, through one or more intermediaries, ***more than 50% of the capital stock*** or other equity interest at the time of determination. ***Unless the context indicates otherwise, references to a Subsidiary shall be deemed to refer to a Subsidiary of Borrower.*** (emphasis supplied)

Neither Broadcasting nor Publishing, are "***Subsidiaries***" of PGMI. Ms. Holland guaranteed the obligations of the Borrower, PGMI. Ex. 5. Ms. Holland is therefore an "***Obligor***" under the LSA, which defines obligor as "any guarantor ... of the Obligations or who is the owner of any property which is security for any of the Obligations." Ex. 3 at p. 23. Ms. Holland does not own ***more than 50%*** of either Broadcasting or Publishing. Kelly Holland owns 45.45% of each corporation and the Kelly Holland Family Trust (the "Holland Trust") owns 54.55% of each entity. Holland Decl. ¶ 6; Ex. 8. The Holland Trust is not a guarantor of the LSA. Ex. 5. at p. 77. Thus, neither Broadcasting nor Publishing is a subsidiary of the Borrower or any Obligor under the LSA. As such, neither is obligated to DMC under the LSA or the Notes.

### B. DMC does not have a perfected security interest in the assets of Broadcasting and Publishing.

To have an enforceable lien in the assets of a bankruptcy estate, the secured creditor must "perfect" its lien so that the lien is superior to that of a judgment lien creditor. Otherwise, a bankruptcy trustee may avoid the lien of that creditor under section 544(a)(1) of the Bankruptcy Code. Whether

4

DMC has perfected its lien in the personal property of Broadcasting and Publishing depends upon where they are located under section 9301(1) of the California Commercial Code. They are both located in California and its law of perfection therefore applies.

As set forth in Broadcasting and Publishing's Schedule A/B,[4] most of their assets are comprised of the following: cash or cash equivalents, accounts receivable, office furniture and equipment and intellectual property. Except for registered copyrights, a secured party, like DMC, must perfects its lien rights in such assets by filing a financing statement (UCC-1) under section 9310(a) of California Commercial Code. That UCC-1 must be filed in Delaware where Broadcasting and Publishing are incorporated. *In re Aura Systems, Inc.*, 347 B.R. 720, 725 (Bankr. C.D. Cal. 2006). A search of the Delaware's UCC-1 index reveals that neither DMC, nor its predecessor, Exworks, filed UCC-1's for either Broadcasting or Publishing with the Delaware Secretary of State. Weiss Decl. at ¶ 2; Ex. 7.

### C. By allowing DMC to credit bid on all of the Debtors' assets, the Motion if granted would have the effect of substantively consolidating these estates.

Substantive consolidation is an equitable remedy that permits a "bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 764 (9th Cir. 2000). The policy ensures "the equitable treatment of all creditors." Id. "Although the essential purpose of the doctrine is to ensure fairness to all creditors, the doctrine must be used sparingly." Id. at 764 and 768; *In re Aroonsakool*, 2014 Bankr. LEXIS 1234, 2014 WL 1273696 at *8 (B.A.P. 9th Cir. Mar. 28, 2014).

As noted above, the Motions seek to grant DMC the right to credit bid on all of the Debtor's assets, including those of Broadcasting and Publishing. [Dkt. No. 327 at pp. 3, 8; Dkt. No. 325 at pp. 4, 8]. A secured lender can only credit bid under section 363(k) of the Bankruptcy Code if that lender has a perfected and bona fide lien. 3 *Collier on Bankruptcy* ¶ 363.09 ns. 1 & 7 (16th ed. 2018) ("The holder of a lien the validity of which has not been determined may not [credit] bid its lien. See *In re Daufuskie Island Props., LLC*, 441 B.R. 60 (Bankr. D.S.C. 2010); *National Bank of Commerce of El Dorado v.*

---

[4] 18-10099 Dkt. No. 30-1 at pp. 1-8; 18-10103 Dkt. No. 25 at pp. 1-8.

*McMullan (In re McMullan)*, 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996). But see *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991) (bank entitled to credit bid subject to requirement that it post an irrevocable letter of credit in order to protect the estate in the event the lien is avoided as a fraudulent conveyance) and (*In re Free Lance-Star Publishing Co.*, 512 B.R. 798 (Bankr. E.D. Va. 2014) (capping a secured creditor's right to credit bid where the creditor lacked a lien on certain of the debtors' assets, the creditor had engaged in inequitable conduct, and "limiting the amount of the credit bid in this case will restore enthusiasm for the sale and foster a robust bidding process"). Allowing DMC to credit bid on all of the Debtors assets, including the assets of Broadcasting and Publishing is tantamount to a substantive consolidation because the effect is to lump all of the assets of the Debtors into a pot and give DMC a lien on all of them even though it has no such lien on the assets of Broadcasting and Publishing. This will severely disadvantage the creditors of Broadcasting and Publishing, by diluting their share of the assets of those companies. The same result obtains for the equity holders of those debtors, i.e., Ms. Kelly and her trust. Courts have recognized this problem. *Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp.)*, 258 U.S. App. D.C. 151, 810 F.2d 270, 276 (1987)("However, because every entity is likely to have a different debt-to-asset ratio, consolidation almost invariably redistributes wealth among the creditors of the various entities. This problem is compounded by the fact that liabilities of consolidated entities inter se are extinguished by the consolidation."). As a result, courts "may order consolidation only if it determines that the demonstrated benefits of consolidation 'heavily' outweigh the harm." Id.

### D. The Trustee has not made the showing that substantively consolidation is permissible under these circumstances.

Substantive consolidation is an "extreme and unusual remedy." *In re Gandy*, 299 F.3d 489, 499 (5th Cir. 2002). It should be used sparingly. *Bonham,* 229 F.d at 764 and 768. The Ninth Circuit has adopted the following test to determine if substantive consolidation is proper:

> "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors. The presence of either factor is a sufficient basis to order substantive consolidation." Id at 229 F.3d at 766 (citation and quotation marks omitted).

The Motions do not specifically ask for substantive consolidation. Even if they did, the Motions do not

6

contain facts that come even close to meeting that burden.

"The burden is upon the proponent of a motion for [substantive] consolidation and [that burden] is exacting." *In re Avery*, 377 B.R. 264, 269 (Bankr. D. Alaska 2007); quoting *Reider v. Fed. Deposit Ins. Corp. (In re Reider),* 31 F.3d 1102, 1109 (11th Cir. 1994). The Motions do not even begin to attempt to present any facts that support substantive consolidation. For example, nothing in the Motions show creditors of PGMI or any other Debtors besides Broadcasting or Publishing, for example, relied on the credit of Broadcasting or vice versa. The Motions also present no evidence of spillover of assets from entity to another, i.e., the Motions present no evidence that assets acquired by Broadcasting were used by Digital or Publishing. Finally, the Motion presents no evidence that the affairs of each Debtor is so intertwined with the other that "the cost to disentangle them would be so substantial as to threaten the realization of any net assets for all the creditors or ... no accurate identification and allocation of assets is possible." *Avery*, 377 B.R. 270 quoting *Bonham*, 229 F.3d at 766.

To the contrary, the facts show that PGMI's operating affiliates are separate entities having separate creditors and separate assets. For example, PGMI and its operating affiliates have the following unsecured creditors:

| PGMI | $1,303,788.77 | Schedule E/F 18-10098 Dkt. No. 164 at p. 2 |
| Broadcasting | $437,435.73 | Schedule E/F 18-10099 Dkt. No. 30-2 at p. 2 |
| Publishing | $677,219.31 | Schedule E/F 18-10103 Dkt. No. 23 at p. 3 |
| Digital | $128,553.63 | Schedule E/F 18-10102 Dkt. No. 25-1 at p. 2 |
| Licensing | $65,275.86 | Schedule E/F 18-10101 Dkt. No. 25-2 at p. 2 |
| Total | $2,612,273.30 | |

Likewise, because they are in different lines of business, they have very different assets. Holland Decl. ¶ 9. Broadcasting and Publishing generated revenues of $5,186,340 and $2,659,327 respectively in 2017. Id. at ¶ 10. Whereas, the Debtors total revenues for that year were $10,221,887. Id. This shows that a substantial portion of the aggregate value of the Debtors can be attributed to Broadcasting and Licensing. Taken as whole, these facts demonstrate that the Trustee and DMC cannot meet the steep requirements of

substantive consolidation.[5]

## III. CONCLUSION

The threshold assumption of the Motions is that DMC holds liens on all of the assets of all of the Debtors and that it has claims against them all. These assumptions are manifestly false. Neither Broadcasting nor Publishing owes a dime to DMC and DMC is wholly unperfected in any lien that it might assert under the LSA against those companies because it has not filed a UCC-1 in Delaware against them. Any attempt to saddle those entities with DMC's lien and claim is improper in every sense of the word. However, the thrust of the Motions is to substantively consolidate those entities with the other debtors by allowing DMC to credit bid on all of the Debtors assets and for that simple reason, the Motions should be denied.

Dated: April 25, 2018

WEISS & SPEES, LLP
*/s/ Michael H. Weiss*
Michael H. Weiss
Attorneys for Debtors

---

[5] Debtors recognize that DMC might argue that there was something improper about the formation of Broadcasting, Publishing, Licensing and Digital (the operating affiliates") in a manner such that they were not **"Loan Party Obligors"** under the LSA. And as such, it would be inequitable to allow those Debtors to benefit from that by thwarting the attempts of DMC to substantively consolidate the assets of the Debtors. First and foremost, any inequity by the Debtors or Ms. Holland in forming the operating affiliates should not redound to the detriment of the innocent unsecured creditors of Broadcasting or Publishing. Ms. Holland did not conceal the existence of operating affiliates from ExWorks because the Debtors sent monthly statements to ExWorks revealing their existence and operation as the operating affiliates of PGMI. Holland Decl. ¶ 6; Ex. 8. Exworks was fully aware of the formation of the Operating Affiliates and the opening of separate bank accounts at East West Bank ("East West") for each of them. It was directly involved with the Debtor and East West in the formation of a cash sweep arrangement for the bank account for Penthouse Global Digital, Inc. After the ExWorks loan closed Licensing and Digital became **"Loan Party Obligors."** However, ExWorks did not demand that documents be revised to correct that discrepancy. Id. at ¶ 7. Finally, DMC has no basis to complain about any of this. Had DMC simply searched the Delaware UCC-1 index when it acquired ExWorks' position in the LSA and the Notes, it would have discovered in November of 2017 that ExWorks had failed to file UCC-1's on Broadcasting and Publishing. Further confirming that DMC knew that it had no claim against broadcasting or Publishing is DMC's failure to include them as parties in its receivership complaints. Weiss Decl., ¶ 3, Ex. 9.

## **DECLARATION OF KELLY HOLLAND**

1. I am the Chief Executive Officer of debtor and debtor in possession Penthouse Global Media, Inc. [Case No. 1:18-bk-10098]("PGMI"). I have personal knowledge of the facts set forth herein and would competently testify thereto.

2. I formed PGMI to acquire the stock of 16 subsidiaries of Friend Finder Networks Inc. (the "Seller") that comprise the business and operations of the Penthouse brand. That acquisition closed on February 19, 2016.

3. PGMI is currently comprised of 4 separate operating divisions:

   a) Penthouse Global Broadcasting, Inc. [Case No. 1:18-bk-10099]: PGMI operates 8 Channels in over 100 countries. The Broadcast division accounts for approximately 50% of the company's revenue;

   b) Penthouse Global Publishing, Inc. [Case No. 1:18-bk-10103]: PGMI is defined by the iconic Penthouse Magazine as well as Penthouse Letters;

   c) Penthouse Global Licensing, Inc. [Case No. 1:18-bk-10101]: PGMI has licensing agreements that rely on its extensive trademark and media library. Licenses range from apparel to fragrances and books; and

   d) Penthouse Global Digital, Inc. [Case No. 1:18-bk-10102]: PGMI runs membership sites as well as several free sites.

4. PGMI borrowed $9.0 million from ExWorks Capital Fund I, L.P. (ExWorks") to acquire the assets and companies from Friend Finder Networks. True and correct copies of the notes evidencing that loan are attached as Exhibits "1" and "2" to the accompanying appendix of exhibits. A true and correct copy of the Loan and Security Agreement is attached to the appendix as Exhibit "3".

5. Attached as Exhibit "6 are true and correct copies of the share certificates for Penthouse Global Broadcasting, Inc. and Penthouse Global Publishing, Inc. I own 500 shares of each of Penthouse Global Broadcasting, Inc. and Penthouse Global Publishing, Inc. The Kelly Holland Family Trust owns 600 shares of each of Penthouse Global Broadcasting, Inc. and Penthouse Global Publishing, Inc. There are no other shareholders of either entity.

6. From the time of the close of the loan from ExWorks, the Debtors provided ExWorks monthly reports of operations. A sample report is attached as Exhibit "8". These reports show that Exworks was fully aware of the formation of the operating affiliates and the opening of separate bank accounts for each of them. ExWorks was directly involved with the Debtor and its bank in the formation of a cash sweep arrangement for the bank account for Penthouse Global Digital, Inc.

7. When ExWorks assented to the licensing agreement with the Clubs, it filed a UCC-1 for Penthouse Global Licensing, Inc., but it did not file or ask to file UCC-1's for either Penthouse Global Broadcasting, Inc. and Penthouse Global Publishing, Inc.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on this 25th day of April 2018 at Chatsworth, California.

*Kelly Holland*
Kelly Holland

## DECLARATION OF MICHAEL H. WEISS

I, Michael H. Weiss, declare:

1. I am a member of the bar of this Court and member of Weiss & Spees, LLP counsel for the debtors in these cases. I have personal knowledge of the facts attested to herein; and if called to testify concerning same, I could and would do so competently.

2. Attached as Exhibit "7" are UCC-1 one searches that I did on Lexis Advance of the Delaware UCC-1 index which show that there are no UCC-1 filed with Delaware under either Penthouse Global Broadcasting, Inc. and Penthouse Global Publishing, Inc. as of this date.

3. Attached as Exhibit "4" are searches of the Delaware Secretary of State scite sowing the Penthouse Global Broadcasting, Inc. and Penthouse Global Publishing were formed on February 26, 2016.

4. Attached as Exhibit "9" is the face page of Verified Complaint for Breach of Contract, Breach of Guaranty, Possession of Personal Property and Damages, Appointment of Receiver and Injunctive Relief, Account Stated, Monies Lent and Money Had and Received, L. A. Sup. Ct. Case No. BC689593.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct; and that I executed this declaration on the date and in the location noted below.

Dated: April 25, 2018
Los Angeles, California

/s/*Michael H. Weiss*_____
Michael H. Weiss

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
6310 San Vicente Blvd., Suite 401, Los Angeles, CA 90048

A true and correct copy of the foregoing document entitled **DEBTORS' OBJECTION TO MOTION FOR ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS ENCUMBRANCES AND INTERESTS; (B) SCHEDULING AUCTION AND SALE HEARING; (C) APPROVING SALE PROCEDURES AND NOTICE OF SALE; AND (D) GRANTING RELATED RELIEF [DKT. NO. 327] AND MOTION FOR ORDER APPROVING SETTLEMENT WITH DREAM MEDIA CORPORATION [DKT. NO. 325]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KELLY HOLLAND AND MICHAEL H. WEISS; APPENDIX OF EXHIBITS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* April 23, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____ 2018 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 25, 2018 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Overnight:
Hon. Martin Barash, U.S. Bankruptcy Court, 21041 Burbank Boulevard, Courtroom 303, Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/25/2018 | Laura J. Meltzer | /S/ Laura J. Meltzer |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                              **F 9013-3.1.PROOF.SERVICE**

**ECF 4.23.18**

Ron Bender    rb@lnbyb.com
Linda F Cantor    lcantor@pszjlaw.com, lcantor@pszjlaw.com
Russell Clementson    russell.clementson@usdoj.gov
Brian L Davidoff    bdavidoff@greenbergglusker.com, calendar@greenbergglusker.com;jking@greenbergglusker.com
James A Dumas    jdumas@dumas-law.com, jdumas@ecf.inforuptcy.com
Jeffrey K Garfinkle    jgarfinkle@buchalter.com, docket@buchalter.com;dcyrankowski@buchalter.com
Allan B Gelbard    xxxesq@aol.com, Allan@GelbardLaw.com
David Keith Gottlieb (TR)    dkgtrustee@dkgallc.com, dgottlieb@iq7technology.com,rjohnson@dkgallc.com,akuras@dkgallc.com
Mirco J Haag    mhaag@buchalter.com, dcyrankowski@buchalter.com
Mark S Horoupian    mhoroupian@sulmeyerlaw.com, ppenn@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com;dperez@sulmeyerlaw.com;ppenn@ecf.inforuptcy.com
Peter W Lianides    plianides@wcghlaw.com, pj@wcghlaw.com;sly@wcghlaw.com
David W. Meadows    david@davidwmeadowslaw.com
Krikor J Meshefejian    kjm@lnbrb.com
Alan I Nahmias    anahmias@mbnlawyers.com, jdale@mbnlawyers.com
Iain A W Nasatir    inasatir@pszjlaw.com, jwashington@pszjlaw.com
Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
S Margaux Ross    margaux.ross@usdoj.gov
Michael St James    ecf@stjames-law.com
Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
Cathy Ta    cathy.ta@bbklaw.com, Arthur.Johnston@bbklaw.com;lisa.spencer@bbklaw.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Michael H Weiss    mw@weissandspees.com, lm@weissandspees.com
Michael H Weiss    lm@weissandspees.com, lm@weissandspees.com
Marc J Winthrop    mwinthrop@wcghlaw.com, pj@wcghlaw.com;sly@wcghlaw.com
Christopher K.S. Wong    christopher.wong@arentfox.com
Beth Ann R Young    bry@lnbyb.com