Linda F. Cantor (CA Bar No. 153762)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  lcantor@pszjlaw.com
         vnewmark@pszjlaw.com

Attorneys for David K. Gottlieb, Chapter 11 Trustee

FILED & ENTERED

MAY 16 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Ogier      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

In re:

PENTHOUSE GLOBAL MEDIA, INC.,

                Debtor.

☒ Affects All Debtors
☐ Affects Penthouse Global Broadcasting, Inc.
☐ Affects Penthouse Global Licensing, Inc.
☐ Affects Penthouse Global Digital, Inc.
☐ Affects Penthouse Global Publishing, Inc.
☐ Affects GMI Online Ventures, Ltd.
☐ Affects Penthouse Digital Media Productions, Inc.
☐ Affects Tan Door Media, Inc.
☐ Affects Penthouse Images Acquisitions, Ltd.
☐ Affects Pure Entertainment Telecommunications, Inc.
☐ Affects XVHUB Group, Inc.
☐ Affects General Media Communications, Inc.
☐ Affects General Media Entertainment, Inc.
☐ Affects Danni Ashe, Inc.
☐ Affects Streamray Studios, Inc.

Cases No.: 1:18-BK-10098-MB

Chapter 11

Jointly Administered with Cases Nos.:
1:18-bk-10099-MB; 1:18-bk-10101-MB;
1:18-bk-10102-MB; 1:18-bk-10103-MB;
1:18-bk-10104-MB; 1:18-bk-10105-MB;
1:18-bk-10106-MB; 1:18-bk-10107-MB;
1:18-bk-10108-MB; 1:18-bk-10109-MB;
1:18-bk-10110-MB; 1:18-bk-10111-MB;
1:18-bk-10112-MB; 1:18-bk-10113-MB

**ORDER: (A) APPROVING SALE MOTION, (B) SCHEDULING AUCTION AND HEARING FOR SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS; (C) APPROVING SALE PROCEDURES; AND (D) GRANTING RELATED RELIEF**

**Hearing:**
Date:       May 9, 2018
Time:       1:30 p.m.
Place:      United States Bankruptcy Court
            21041 Burbank Boulevard
            Courtroom 303
            Woodland Hills, California

Judge:      Hon. Martin R. Barash

1

DOCS_LA:314247.4 32277/001

1   On May 9, 2018, this Court held a hearing on the proposed sale, bidding and auction procedures and related matters provided for in this Order (the "Sale Matters") as set forth in the *Motion for Order (a) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (b) Scheduling Auction and Sale Hearing; (c) Approving Sale Procedures and Notice of Sale; and (d) Granting Related Relief* [Docket No. 327] (the "Sale Motion")[1] filed by David K. Gottlieb, the duly appointed chapter 11 trustee (the "Trustee") for the estates (the "Estates") of Penthouse Global Media, Inc. and its debtor subsidiaries (the "Debtors"), in the above-entitled chapter 11 cases (the "Cases").  Appearances at the hearing on the Sale Matters (the "Sale Matters Hearing") are set forth on the record.  This Court has considered the Sale Motion and the Sale Matters, the objections and responsive pleadings filed in connection with the Sale Motion, the representations of counsel at the Sale Matters Hearing, and the modification to the Trustee's proposed sale procedures (the "Sale Procedures") set forth on the record at the Sale Matters Hearing (the "Bid Modification") to authorize the Trustee, in his discretion, to consider separate bids for fewer than all of the Debtors' assets proposed to be sold at the Auction (as defined below); and the Court having determined that notice of the Sale Motion in respect to the Sale Matters was adequate and sufficient; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.   The Court has jurisdiction over this matter and over the property of the Debtors and the Estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002, 6004 and 9014.  Venue of the Cases and the Sale Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   The relief granted herein is in the best interests of the Estates, their creditors, and other parties in interest.

C.   The notice of the Sale Motion, the Sale Matters, and the Sale Matters Hearing given by the Trustee constitutes due and sufficient notice thereof.

---

[1] Capitalized terms not defined herein have the meaning ascribed to such term in the Sale Motion.

-1-

D.  Any and all objections to the relief requested in the Sale Motion relating to the Sale Matters that have not been withdrawn, waived or settled as announced to the Court at the Sale Matters Hearing, or by stipulation filed with the Court, are hereby overruled in their entirety.

E.  The Trustee has articulated good and sufficient reasons for the Court to (i) approve the Sale Motion and the Sale Procedures, as modified by the Bid Modification, (ii) set the date and time of the commencement of the Auction, and (iii) schedule the hearing to approve the outcome of the asset sale(s) resulting from the Auction as requested by the Trustee to occur immediately following the conclusion of the Auction (the "Sale Hearing").

F.  The Sale Procedures, as modified by the Bid Modification, set forth in the Sale Motion and as stated on the record at the Sale Matters Hearing are reasonably calculated under the circumstances of these Cases to achieve the highest and best price for the sale of those assets of the Debtors proposed to be sold at the Auction (the "Assets") and are hereby approved.

**NOW, THEREFORE, IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Sale Motion is GRANTED, as modified by the Bid Modification and as set forth herein.

2.  Any objections filed in opposition or response to the Sale Motion and the relief granted herein, to the extent not resolved as set forth herein or at the Sale Matters Hearing, are hereby OVERRULED in their entirety.

3.  Dream Media Corporation ("Dream Media") is designated as the "Stalking Horse Bidder" pursuant to the terms set forth in the Settlement Agreement appended to the Sale Motion as **Exhibit "A"** (the "Settlement Agreement"). If the Trustee elects to sell the Assets at the Auction in parts, rather than as one bulk sale, the Trustee and Dream Media shall have the right, at or prior to the Auction, to apportion the $3 million "Stalking Horse Bid" contained in the Settlement Agreement among the various Assets as they deem appropriate, in which case Dream Media's full credit bid rights shall apply to each such apportionment and continue throughout the entirety of the Auction.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4.     Upon execution of a Non-Disclosure Agreement, any person identified by the Trustee, with the assistance of his advisors, as reasonably likely to be a Qualified Bidder (as defined below and in the Sale Motion) that wishes to conduct due diligence on the Assets with respect to a potential bid for all or a portion of the Assets may be granted access to all material information that has been or will be provided to the Stalking Horse Bidder.  If the Trustee, in his discretion, determines that a Potential Bidder (defined below) does not constitute a Qualified Bidder (as defined below), then such Potential Bidder's ability to receive due diligence access or additional non-public information shall terminate.

5.     By no later than May 14, 2018, the Trustee will file with the Court the initial form of a proposed Asset Purchase Agreement (the "APA") between the Trustee and Dream Media as the Stalking Horse Bidder.  The Trustee and Dream Media shall have the right to modify the APA at any time for any reason the Trustee and Dream Media deem appropriate, including to apportion the Assets in parts as described above.  Any party wishing to be a Qualified Bidder at the Auction may obtain a word version copy of the APA from counsel to the Trustee, whose contact information is listed on the upper, left-hand corner of the caption page of this Order.

6.     Any prospective bidder (each a "Potential Bidder") that wishes to participate in the bidding process for the Assets (*i.e.*, the Auction) must, no later than May 30, 2018 (*i.e.*, three business days prior to the Auction) at 5:00 p.m. (Pacific Time) (the "Bid Deadline"), do all of the following:

a.     Submit to the Trustee, through his counsel, an irrevocable offer in the form of an executed APA (the "Modified Agreement"), which offer must not contain any financing contingency or any further internal approval or due diligence contingencies, specifying the Assets that are included in the bid and, if the bid is for all of the Assets, the Modified Agreement must be on substantially the same terms or terms more favorable to the Estates than those contained in the APA with the Stalking Horse Bidder.  If the Modified Agreement is a bid to purchase all of the Assets, the price must conform with the following Paragraph 6.b.  The Potential Bidder shall also submit a "blacklined" or otherwise marked copy of the Modified Agreement reflecting the differences between the Modified Agreement and the form of APA.  Additionally, the Potential

-3-

Bidder must designate on the Schedule of Assumed Contracts appended to the Modified Agreement ("Assumed Contracts Schedule") those executory contracts and unexpired leases, if any, that such Potential Bidder seeks the Trustee to assume and assign to the Potential Bidder as part of the Potential Bidder's purchase offer as reflected in the Modified Agreement and those license agreements, if any, that such Potential Bidder seeks the Trustee to assign to the Potential Bidder as part of the Potential Bidder's purchase offer as reflected in the Modified Agreement.  The Modified Agreement must not contain any requirement that the sale order become a final order as a condition to closing.

  b. If such bid is for all of the Assets, the Potential Bidder must agree, in such Modified Agreement, to a purchase price that provides for payment in cash at closing in an initial minimum amount equal to or exceeding the sum of $3,100,000 (which is the Stalking Horse Bid for all of the Assets plus the $100,000 overbid).

  c. If a bid is for all of the Assets, then by May 30, 2018, the Potential Bidder must deliver a good faith cash deposit to the Trustee in the form of a cashier's check or wire transfer (the "Bid Deposit"), in the amount of $250,000, which the Trustee shall maintain in a segregated account (the "Segregated Account").  If a bid is for fewer than all of the Assets, then by May 30, 2018, the Potential Bidder must deliver to the Trustee a Bid Deposit in an amount equal to ten percent (10%) of the purchase price offered in such Potential Bidder's Modified Agreement.  The Bid Deposit shall immediately become non-refundable (except as otherwise provided herein) and will be credited toward the purchase price of the winning bidder (the "Purchase Price"), if and when the transaction with the Potential Bidder making such Bid Deposit is deemed by the Court upon the recommendation and request of the Trustee to be the winning bid (the "Successful Bid") or the successful back-up bid (the "Back-Up Bid") at the Auction and approved by the Court at the Sale Hearing which will immediately follow the Auction.  If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Successful Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder will be returned by the Trustee to such bidder within five (5) business days after the completion of the Sale Hearing.  If a Potential Bidder's bid is designated by the Court as the Back-Up Bid for all or a portion of the Assets, and the party

that submitted the Successful Bid (the "Successful Bidder") timely consummates its purchase, the Bid Deposit of the party who submitted the Back-Up Bid (the "Back-Up Bidder") will be returned by the Trustee to such Back-Up Bidder within five (5) business days following the consummation of the purchase by the Successful Bidder.

d.  Provide written evidence reasonably satisfactory to the Trustee of (i) the identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction, (ii) the Potential Bidder's corporate or other authority to enter into the contemplated transaction, (iii) identification of all individuals of the Potential Bidder and its advisors that will attend the Auction, (iv) the Potential Bidder's financial ability to fully and timely perform all obligations under the Modified Agreement if it is declared to be the Successful Bidder including, without limitation, the Potential Bidder's financial ability to pay the purchase price and to pay all amounts required to cure any defaults under each of the contracts, leases and license agreements listed on its Assumed Contracts Schedule in the Potential Bidder's Modified Agreement, and (v) the Potential Bidder's ability to provide adequate assurance of future performance in accordance with 11 U.S.C. Section 365(b) and, if applicable, 11 U.S.C. Section 365(f)(3) of the Bankruptcy Code, with respect to each of the contracts and leases listed on the Assumed Contracts Schedule in the Potential Bidder's Modified Agreement. In addition to the foregoing, it will be the responsibility of each Successful Bidder to submit to the Court at or prior to the Sale Hearing whatever evidence the Court requires for the Successful Bidder to obtain a good faith finding under Section 363(m) of the Bankruptcy Code, recognizing that the binding nature of bids submitted at the Auction shall not be dependent upon the Court making such a good faith finding.

e.  Disclose any connections or agreements with the Debtors, the Trustee, the Stalking Horse Bidder, and any other known Potential Bidder or other known Qualified Bidder.

7.  If a Potential Bidder delivers to the Trustee all of the materials described in paragraph 6, above, (including the Bid Deposit) by the Bid Deadline, the Trustee will determine whether the Potential Bidder (i) has demonstrated the financial ability to consummate its purchase of the Assets (or portion thereof), (ii) is reasonably likely to be able to and willing to consummate the

-5-

contemplated transactions, and (iii) has otherwise satisfied all of the requirements described in paragraph 6, above. If the Potential Bidder has satisfied the requirements of paragraphs 6 and 7, the Trustee shall designate the Potential Bidder as a "Qualified Bidder" and such bid as a "Qualified Bid." The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. Upon delivery to the Trustee of the required Bid Deposit, Penthouse Global Licensing, LLC, Penthouse Clubs Worldwide, LLC, and Kirkendoll Management, LLC (the "KM Parties") shall be deemed to be a Qualified Bidder provided that (i) by May 21, 2018, all of the "Definitive Agreements" as defined in and contemplated by the Term Sheet dated May 9, 2018 and attached as Exhibit "1" to the pleading filed by the Trustee as Docket Number 461 (the "Term Sheet") have been executed by all of the parties to such Definitive Agreements, and (ii) by May 30, 2018, the KM Parties have delivered the full amount of the $1,075,000 Purchase Price to the Trustee as set forth in the Term Sheet.

8.  If the Trustee receives at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder prior to the Bid Deadline, then the Trustee shall notify the Stalking Horse Bidder and each other Qualified Bidder that the Trustee intends to conduct an auction (the "Auction") to consider any and all other Qualified Bids, subject to reasonable rules as may be established by the Trustee prior to, at or during the Auction. The Auction to determine the Successful Bidder(s) for the Assets shall commence on **June 4, 2018, at 12:00 p.m. noon (Pacific Time)** in Courtroom 303 of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, CA, and, if not completed on June 4, 2018, shall continue on June 5, 2018, commencing at 9:00 a.m. (Pacific Time) until completed. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Auction. Multiple Qualified Bidders, including Dream Media, shall have the right to submit one or more joint bids for all or any portion of the Assets, and to engage in discussions and negotiations beforehand, and having such discussions and negotiations (and any resulting joint bid) not constituting any violative collusion provided that this is done with the Trustee's knowledge and consent. All Qualified Bidders shall have the right at the Auction to increase the amount(s) of their bids as set forth in their Modified Agreement(s) and/or to allocate or to reallocate their bid(s) among all or any portion of the Assets, with the Trustee having the right, in his sole and absolute discretion

subject only to the ultimate approval of the Court, to conduct the Auction in any manner the Trustee deems appropriate with the ultimate goal of maximizing the total purchase price paid for all of the Assets. Qualified Bidders at the Auction shall have the right to combine their bids at the Auction and/or to submit one or more joint bids for all or any portion of the Assets provided that this is done with the Trustee's knowledge and consent.

9. All Assets of the Debtors are being sold without recourse, representation or warranty. Any Assets or rights of the Debtors involved in litigation or other disputes are being sold "As Is, Where Is" subject to such litigation claims and defenses.

10. Subject to paragraph 16 below, only the Stalking Horse Bidder and other Qualified Bidders may bid at the Auction. Copies of all Qualified Bids shall be provided to the Stalking Horse Bidder and each other Qualified Bidder prior to the Auction. With respect to a bid for all of the Assets, at the commencement of the Auction, the Trustee shall identify the bid that he has determined to be the highest and best offer and shall permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and better bids for all of the Assets. Each subsequent bid for all of the Assets must exceed the amount of the preceding bid by the sum of at least $100,000 or figures which are wholly dividable by $100,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid. The Stalking Horse Bidder may participate in overbidding by increasing its credit bid up to the maximum amount of the "Full Dream Media Claim" as defined in the Settlement Agreement (the "Maximum Credit Bid"), and the amount of any overbid by the Stalking Horse Bidder that exceeds the Maximum Credit Bid shall be in cash. The Auction will be an "open format" such that all participants are contemporaneously to be made aware of the particulars of any Qualified Bids that are submitted. At the Auction, pursuant to the Bid Modification, the Trustee may consider bids for fewer than all of the Assets and conduct one or more separate Auctions for such apportionment bids. The Trustee shall determine, in his sole and absolute discretion, whether to conduct such separate Auctions before or after the Auction for all of the Assets. At the conclusion of the Auction, the Trustee shall determine which bid (or groups of bids) constitutes the highest and best bid(s) for the Assets or sub-sets of the Assets by considering, among other things, the terms of the Modified Agreement(s), the net benefit of such bids to the Estates, and

such other factors that the Trustee may reasonably deem relevant, all with the intent of ending up with the collective highest and best total purchase price paid for the Assets. At the conclusion of the Auction, the Trustee shall announce on the record of the Court to the Court and all Qualified Bidders the results of the Auction and the identity of the Successful Bidder or, if applicable, Successful Bidders, (if it is determined that the sale of the Assets in sub-sets constitutes the highest and best bids), and, if applicable, any next highest bidder wishing to be considered a Back-Up Bidder (as set forth below). The Trustee shall request at the Sale Hearing that the Court authorize the Trustee to consummate the sale of the Assets to the Successful Bidder, or, if applicable, the Successful Bidders (if it is determined that the sale of the Assets in sub-sets constitutes the highest and best bids), and, should the Successful Bidder(s) fail to close, to the Back-Up Bidder(s). Promptly following the conclusion of the Auction, the Successful Bidder(s) shall complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which such bid was or bids were made.

11. If qualified bids have been submitted by more than one Qualified Bidder, the Qualified Bidder that the Trustee determines has made the next-highest and best bid to that of the Successful Bidder may elect to become the Back-Up Bidder and such Back-Up Bidder's final and highest and best bid (defined above as the "Back-Up Bid") shall remain open pending the closing of the Successful Bid (the "Closing Date"). If a bid of the Stalking Horse Bidder is the next-highest and best bid to that of the Successful Bidder, then such bid of the Stalking Horse Bidder shall be the Back-Up Bid, subject to the terms and conditions of the APA relating thereto.

12. The Estates shall retain the Bid Deposit(s) made by the Successful Bidder(s) and/or the Back-Up Bidder(s), free and clear of all liens, claims and interests of Dream Media if either the Successful Bidder(s) or, if applicable, any one or more of the Successful Bidders (if it is determined that the sale of the Assets in sub-sets constitutes the highest and best bids), and/or the Back-Up Bidder(s) (as applicable) fails to close their purchase(s) by June 15, 2018.

13. If the Trustee does not receive at least one Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then no Auction shall be scheduled or conducted, and the

Court at the Sale Hearing shall approve of the Trustee's sale of all of the Assets to the Stalking Horse Bidder in accordance with the terms of the Settlement Agreement.

14. If the sale transaction(s) with the Successful Bidder(s) does not close timely (i.e., by June 15, 2018), the Back-Up Bid(s) shall, upon notice by the Trustee to the Back-Up Bidder(s), be deemed the Successful Bid(s) without further order of the Court, and the Back-Up Bidder(s) shall be required to consummate their sale transaction in accordance with the applicable Modified Agreement as modified by the results of the Auction, and the Back-Up Bidder(s) shall be subject to the terms of this Order as if it were the initial Successful Bidder(s), except that such Back-Up Bidder(s) shall have ten calendar days following the date they are notified by the Trustee that their Back-Up Bid(s) have been accepted to consummate their sale transaction in accordance with their applicable Modified Agreement(s). If the Stalking Horse Bidder is not the Successful Bidder or Back-Up Bidder, the Stalking Horse Bidder shall have the right, but not the obligation, to keep its bid open pending the closing of a transaction with a Successful Bidder(s).

15. Upon approval by the Court of the Successful Bidder(s) and subject to the terms and conditions of the applicable Modified Agreement(s), the Bid Deposit(s) of the Successful Bidder(s) shall become non-refundable and deemed forfeited to the Estates, free and clear of all liens, claims and interests, if the Modified Agreement(s) is thereafter terminated as a result of a breach by the Successful Bidder(s) or failure by the Successful Bidder(s) to close the proposed transaction as specified in this Order and/or the applicable Modified Agreement(s). The Bid Deposit(s) of the Back-Up Bidder(s) shall remain on deposit in a segregated account maintained by the Trustee pending the Closing Date (as defined below), and such Bid Deposit(s) shall become non-refundable and deemed forfeited to the Estates if the Back-Up Bidder(s) is declared the Successful Bidder(s) and if the applicable Modified Agreement(s) is thereafter terminated as a result of a breach by the Back-Up Bidder(s) or failure by the Back-Up Bidder(s) to close the proposed transaction as specified in this Order and/or the applicable Modified Agreement(s).

16. Notwithstanding any other provision herein, the Trustee, in his sole discretion, shall determine whether a bid for the purchase of the Assets has satisfied all the conditions set forth above or if the Trustee believes it is in the best interest of the Estates to waive any or all of the above

conditions, including permitting a Qualified Bidder to bid at the Auction without having submitting a prior Qualified Bid.

17. The Trustee may modify the Sale Procedures set forth in this Order at any time prior to or during the Auction if the Trustee determines, following consultation with the Stalking Horse Bidder, in his reasonable judgment, that such modifications are reasonable and will better promote the goals of the Auction process and are in the best interest of the Estates and the creditors thereof.

18. The relief requested by the Trustee in the Sale Motion was sufficient to enable the Trustee to proceed with the Auction and the Sale Hearing and to consummate the free and clear sale of all or any portion of the Assets to the Successful Bidder(s) without the need to file any further sale pleadings with the Court. By May 14, 2018, the Trustee shall file with the Court a motion (the "Lease/Contract Motion") seeking authority to assume and assign to the Successful Bidder(s) any or all of the Debtors' executory contracts and/or unexpired leases and to assign to the Successful Bidder(s) any or all of the license agreements to which the Debtors or the Trustee are a party. In the Lease/Contract Motion, the Trustee shall include the amount of the cure payment (to the extent known by the Trustee) that the Trustee believes that the Successful Bidder(s) must pay to the counter-party to each such executory contract and/or unexpired lease to satisfy the cure requirement of Section 365(b)(1)(A) of the Bankruptcy Code and the cure payment (to the extent known to the Trustee) that the Trustee believes that the Successful Bidder(s) must pay to the counter-party to each license agreement that the Successful Bidder(s) seeks to have the Trustee assign to it. The Trustee shall serve the Lease/Contract Motion upon all counter-parties to all known executory contracts, unexpired leases and license agreements advising them that if they (i) oppose the Trustee's assumption and assignment of their executory contract or unexpired lease or assignment of their license agreement, (ii) dispute the amount of their proposed cure amount, or (iii) contend that they have incurred any actual pecuniary loss resulting from any existing default under such executory contract or unexpired lease, they must file a pleading with the Court by May 21, 2018 setting forth (i) all objections to the Trustee's proposed assumption and assignment of their executory contract or unexpired lease or assignment of their license agreement, (ii) all objections to the Trustee's proposed cure amount, and/or (iii) any actual pecuniary loss that they contend must be paid as condition of the

Trustee's assumption and assignment of their executory contract or unexpired lease along with all supporting evidence. Any counter-party to an executory contract, unexpired lease or license agreement who does not file such a pleading by May 21, 2018 will be irrevocably deemed to have consented to (i) the Trustee's assumption and assignment of their executory contract or unexpired lease to the Successful Bidder or assignment of their license agreement to the Successful Bidder, (ii) the Trustee's proposed cure amount, and (iii) there being no actual pecuniary loss which must be paid. Any counter-party to an executory contract or unexpired lease who wishes to have the right to require that the Successful Bidder who intends to take an assignment of their executory contract or unexpired lease must demonstrate adequate assurance of future performance must attend the Sale Hearing and make such an assertion, in which case the Court will require the Successful Bidder to make such a demonstration at the Sale Hearing. Any counter-party to an executory contract or unexpired lease who does not attend the Sale Hearing and make such an assertion will be deemed to have consented to the Successful Bidder(s) and Back-Up Bidder(s) having satisfied the adequate assurance of future performance requirement of Section 365(b)(1)(C) of the Bankruptcy Code.

19. The Trustee is in the process of documenting a transaction involving certain trademarks and ancillary rights to be sold to Penthouse Clubs Global Licensing LLC ("Penthouse Club Licensee") as described in that certain *Term Sheet – Trustee's Exhibit 1* filed with the Court on May 10, 2018 as Dkt. No. 461. Provided the Trustee is able to finalize his agreement with the Penthouse Club Licensee and such agreement is approved by the Court, then in addition to everything else set forth in this Order, any bid submitted at the Auction for all of the Assets must include an assumption of all of the Trustee's obligations under the license agreement to be entered into by and between the Penthouse Club Licensee and the Trustee, which license agreement is expected to provide for a perpetual license of certain Penthouse intellectual property related to the Penthouse Clubs (the "Penthouse Clubs IP License"). Any bid submitted at the Auction for all of the Assets must also include an assumption of (a) all of the Trustee's obligations under all other license agreements that the Trustee entered into subsequent to his appointment, and (b) the post-petition contracts and license agreements listed on the schedule of assumed post-petition contracts appended to the APA.

20. Notwithstanding anything else set forth in this Order, at the Auction, the Trustee will consider bids for fewer than all of the Assets only if one Qualified Bidder or more than one Qualified Bidders agree in the aggregate to assume all of the Trustee's obligations under the Penthouse Clubs IP License and all other license agreements that the Trustee entered into subsequent to his appointment.

21. The Trustee shall serve a copy of this Order within two (2) business days after entry of this Order, via ECF notification, U.S. mail, facsimile and/or email, upon the following parties: (i) any parties known by the Trustee to have expressed an interest to him in a transaction with respect to the Assets; (ii) any other parties that the Trustee and his advisors believe may potentially have an interest in acquiring all or any portion of the Assets; (iii) any entities known by the Trustee to have asserted any lien against or interest in all or any portion of the Assets; (iv) all counter-parties to executory contracts and unexpired leases of the Debtors, (v) the United States Trustee; (vi) the Debtors and the Creditors' Committee, and (vii) all parties who have requested special notice in the Cases.

22. Notwithstanding any applicability of Bankruptcy Rule 6004(h) and/or any other Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon entry hereof.

23. The relief granted to the Trustee in this Order shall be enforceable by any successor to the Trustee, including any trustee appointed in the Cases in the event that the Cases are converted to cases under chapter 7 of the Bankruptcy Code.

24. This Court shall retain jurisdiction to enforce and interpret the provisions of this Order.

Date: May 16, 2018

_____
Martin R Barash
United States Bankruptcy Judge