1    Linda F. Cantor (CA Bar No. 153762)
     PACHULSKI STANG ZIEHL & JONES LLP
2    10100 Santa Monica Blvd., 13th Floor
     Los Angeles, CA 90067
3    Tel: 310/277-6910; Fax: 310/201-0760
     E-mail: lcantor@pszjlaw.com
4
     Bradley E. Brook (CA Bar No. 125323)
5    LAW OFFICES OF BRADLEY E. BROOK, APC
     10866 Washington Blvd. #108
6    Culver City, CA 90232
     Tel: 310/839-2004; Fax: 310-945-0022
7    E-mail: bbrook@bbrooklaw.com

8    Attorneys for David K. Gottlieb, Chapter 7 Trustee

9

10             **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION**

12    In re:

13    PENTHOUSE GLOBAL MEDIA, INC.,

14                    Debtor.

| | |
|---|---|
| ☒ Affects All Debtors | Case No.: 1:18-BK-10098-MB |
| ☐ Affects Penthouse Global Broadcasting, Inc. | Chapter 7 |

Case No.: 1:18-BK-10098-MB
Chapter 7

Jointly Administered with Cases Nos.:
1:18-bk-10099-MB; 1:18-bk-10101-MB;
1:18-bk-10102-MB; 1:18-bk-10103-MB;
1:18-bk-10104-MB; 1:18-bk-10105-MB;
1:18-bk-10106-MB; 1:18-bk-10107-MB;
1:18-bk-10108-MB; 1:18-bk-10109-MB;
1:18-bk-10110-MB; 1:18-bk-10111-MB;
1:18-bk-10112-MB; 1:18-bk-10113-MB

15    ☒ Affects All Debtors
     ☐ Affects Penthouse Global Broadcasting,
     Inc.
16    ☐ Affects Penthouse Global Licensing, Inc.
     ☐ Affects Penthouse Global Digital, Inc.
17    ☐ Affects Penthouse Global Publishing, Inc.
     ☐ Affects GMI Online Ventures, Ltd.
18    ☐ Affects Penthouse Digital Media
     Productions, Inc.
19    ☐ Affects Tan Door Media, Inc.
     ☐ Affects Penthouse Images Acquisitions,
20    Ltd.
     ☐ Affects Pure Entertainment
21    Telecommunications, Inc.
     ☐ Affects XVHUB Group, Inc.
22    ☐ Affects General Media Communications,
     Inc.
23    ☐ Affects General Media Entertainment, Inc.
     ☐ Affects Danni Ashe, Inc.
24    ☐ Affects Streamray Studios, Inc.

**NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND WGCZ LTD., S.R.O AND ITS ASSIGNEES PER BANKRUPTCY RULE 9019 AND AUTHORIZING THE TRUSTEE TO SELL THE ESTATE'S EQUITY INTEREST IN CERTAIN PROPERTY PURSUANT TO 11 U.S.C. § 363 FREE AND CLEAR OF INTERESTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID K. GOTTLIEB IN SUPPORT THEREOF**

25    **HEARING**
26    Date: January 5, 2021
     Time: 11:00 a.m.
     Place: 21041 Burbank Blvd., Courtroom 303
27               Woodland Hills, CA 91367
     Judge: Hon. Martin R. Barash
28

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE; WGCZ LTD., S.R.O. AND ITS ASSIGNEES PENTHOUSE WORLD MEDIA, LLC, PENTHOUSE WORLD BROADCASTING, LLC, PENTHOUSE WORLD LICENSING, LLC, PENTHOUSE WORLD DIGITAL, LLC, AND PENTHOUSE WORLD PUBLISHING, LLC; ALL PARTIES RECEIVING CM/ECF NOTICE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE** that David K. Gottlieb, in his capacity as Chapter 7 Trustee (the "Trustee") of the above-captioned bankruptcy estates (the "Estates") of Penthouse Global Media, Inc. and its debtor subsidiaries (the "Debtors"), hereby moves (the "Motion") the Court for entry of an order pursuant to 11 U.S.C. § 363 and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to approve a settlement ("Settlement") by and between the Trustee, on the one hand, and WGCZ Ltd., S.R.O. and its assignees Penthouse World Media, LLC, Penthouse World Broadcasting, LLC, Penthouse World Licensing, LLC, Penthouse World Digital, LLC, and Penthouse World Publishing, LLC, on the other hand  (collectively, the "Buyer" and, together with the Trustee, the "Parties") and, as part of the Settlement, to authorize the modification of certain intellectual property assignments ("IP Assignments") and to sell, assign and transfer the shares of stock in designated Debtor entities so that the Buyer can  register and otherwise fully implement the purchase of the intellectual property it acquired from the Estates.  The terms of the Settlement, including the transfer, assignment and sale provisions, are specifically set forth in the Settlement Agreement, a copy of which is attached as Exhibit 1 to the Declaration of David Gottlieb (the "Gottlieb Declaration") annexed hereto.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion has been scheduled for **January 5, 2021 at 11:00 a.m. Pacific Time**, or as soon thereafter as counsel may be heard before the Honorable Martin R. Barash, United States Bankruptcy Judge, in Courtroom 303, 21041 Burbank Boulevard, Woodland Hills, California 91367.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities and Declaration of David K. Gottlieb

2

annexed thereto (the "Motion Pleadings"), the record in these chapter 7 cases ("Cases"), as well as any other documentary evidence as may be presented to this Court at or before the hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the undersigned counsel no later than fourteen (14) days prior to the hearing on the Motion.  The failure to properly file and serve an opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order (a) granting the Motion; (b) approving the Settlement Agreement; (c) authorizing the sale, transfer and assignment of the shares of stock of specified designated Debtors to be sold to the Buyer or its assignees free and clear of all liens, claims and interests; (d) authorizing the Parties to enter into and take any and all actions reasonably necessary to effectuate the Settlement, including execution of the Settlement Agreement and the modified IP Assignments; and (e) granting the Trustee such other and further relief as the Court deems just and proper.

December 14, 2020                    LAW OFFICES OF BRADLEY E. BROOK, APC


                                     By: /s/ Bradley E. Brook
                                     Attorneys for David K. Gottlieb, Chapter 7 Trustee

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

By way of this Motion, the Trustee in his capacity as Chapter 7 Trustee of the Estates seeks approval of a compromise (the "Settlement") memorialized in the Settlement Agreement attached to the appended Declaration of David K. Gottlieb, that will resolve all claims and matters as between the Estates on the one hand, and WGCZ LTD., S.R.O., Penthouse World Media, LLC, Penthouse World Broadcasting, LLC, Penthouse World Licensing, LLC, Penthouse World Digital, LLC, and Penthouse World Publishing, LLC (collectively, the "Buyer"), on the other hand. Under the Settlement, the Estates will realize $365,000 (the "Settlement Sum") from the reconciliation by the Trustee and the Buyer (the "Parties") of sums received by one Party but which rightfully belonged to the other, after the June 15, 2018 closing of a sale of substantially all of the Debtors' assets pursuant to the sale agreement approved by the Bankruptcy Court (the "Asset Purchase Agreement"). In exchange, upon payment of the Settlement Sum, the Buyer has requested the Trustee execute on behalf of Penthouse Global Media, Inc. modified Intellectual Property Assignments ("IP Assignments") of certain Debtors and to sell, transfer and assign shares of stock, free and clear of interests (to the extent any such interests even exist) of designated Debtors to remedy problems encountered by the Buyer in the registration of the intellectual property it purchased from the Estates. Accordingly, the Trustee will execute a modified Intellectual Property Assignment (the "Modified IP Assignments") with respect to the intellectual property of certain Debtors, true and correct copies of which are attached as Exhibit "A" to the Settlement Agreement and (ii) transfer, assign and sell the shares held by Penthouse Global Media, Inc. in certain of its Debtor subsidiaries to Buyer's assignees free and clear of any and all interests (the "Stock Sale").

The Trustee submits that obtaining the Settlement Sum by means of the Settlement and Stock Sale is significantly beneficial to the Estates and avoids the incurrence of potentially significant fees, costs, delays and risks associated with litigation. Accordingly, the Trustee requests that the Settlement Agreement and Stock Sale each be approved and the Trustee authorized to enter into modified IP Assignments and documents necessary to consummate the Stock Sale.

## II.    JURISDICTION.

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 1334.  This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (N).  Venue of these cases and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein is 11 U.S.C. § 363(b), (m) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9014 and 9019.

## III.    BACKGROUND.

1.    The instant cases were commenced by the filing of voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on January 11, 2018 (the "Petition Date").

2.    This Court has jurisdiction of this matter under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(M).

3.    Prior to the appointment of the Trustee, the Estates acted as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    The Court entered an Order Approving the Motion for Joint Administration on of the Debtors' cases on January 16, 2018 [Docket No. 18] designating the case of *In re Penthouse Global Media, Inc.*, Case No. 1:18-bk-10098 as the "Lead Case."

5.    On February 21, 2018, the Court held a status conference, at which time it was determined that the appointment of a chapter 11 trustee of the Estates was appropriate.  On March 2, 2018, the Court entered its order directing the appointment of a chapter 11 trustee [Docket No. 231] and on March 6, 2018, the Office of the United States Trustee appointed David K. Gottlieb as the chapter 11 trustee in the cases [Docket No. 239].

6.    By order entered May 16, 2018, the Trustee obtained an Order Approving Settlement With Dream Media Corporation which resolved the parties' disputes over the Estates' assets. [Docket No. 478].

//

//

7.      By order entered June 14, 2018, the Trustee obtained Bankruptcy Court authorization to sell substantially all of the Estates' assets to the successful bidder at a bankruptcy auction that was held on June 4, 2018 [Docket No. 577].

8.      The successful bidder was the Buyer.

9.      On June 15, 2018 (the "Sale Closing Date"), the sale of substantially all of the Debtors' assets to the Buyer was consummated pursuant to the terms of the Asset Purchase Agreement (the "Closing").

10.     On November 21, 2018, the Buyer filed a Request for Payment of an Administrative Claim in the cases as well as a proof of claim [Docket No. 739, Proof of Claim No. 88-1] contending that the Trustee owed it no less than a sum totaling $548,749.03  (the "Claim").

11.     On January 31, 2019, the Trustee filed a motion to convert the Debtors' cases to cases under chapter 7 of the Bankruptcy Code. The Court granted the motion to convert cases by order entered March 12, 2019 [Docket No. 810]. The Office of the United States Trustee appointed David Gottlieb to serve as Chapter 7 Trustee [Docket No. 812].

12.     The Parties have negotiated in good faith to resolve their disputes over the amounts owed to the other under the Asset Purchase Agreement and for the Buyer to confirm the adequacy of the registration of assets it acquired under the Asset Purchase Agreement.

## IV.    SUMMARY OF THE SETTLEMENT.

The Trustee, solely in his authority as trustee for the estates of the Debtors, has reached an agreement with the Buyer to settle various disputes relating to the parties' claims against one another under section 4.13 of the Asset Purchase Agreement ("Wrong Pocket Provision") and realize the Settlement Sum of $365,000 for the Estates. In consideration for the consensual resolution of the Wrong Pocket Provision and the release of other claims asserted by the Buyer against the Estates, the Trustee has agreed to execute the Modified IP Assignments in order to transfer and assign trademarks and copyrights of specified Debtors and, as to others, to sell, transfer and assign any and all shares of stock owned by Penthouse Global Media, Inc. free and clear of interests, consistent with

6

the schedule set forth below. The Parties further agree to full, broad and mutual releases and waivers of all claims each may have against the other.

The Wrong Pocket Provision provides that if the Trustee received any payments attributable to post-closing Accounts Receivable, as that term is defined in the Asset Purchase Agreement, after the Closing, the Trustee would be responsible for remitting or causing to be remitted such funds to the Buyer; conversely, the Wrong Pocket Provision obligated the Buyer to turnover to the Trustee any payments the Buyer received on account of pre-closing Accounts Receivable. The Trustee contends that after setting off the amounts each owed the other, the Estates were due a sum no more than ten percent (10%) higher than the amount now agreed upon to be paid by the Buyer as part of the Settlement. As set forth by the Claim, the Buyer contends it is owed as of November 2018, the sum of $548,749.03 without acknowledging that it owed anything to the Estates. While the Parties both shared the goal of reconciling the sums due each other and then providing for payment thereof, there was significant disagreements as to what was properly included in the amounts each claimed was due it. There were extensive negotiations between the Parties where each provided to the other its analysis and calculations in support of its respective position before the Buyer agreed to pay the Settlement Sum.

The Buyer believes that IP Assignments from certain Debtors may have been insufficient to unambiguously have caused the assignment and transfer to it of all of the intellectual property that it acquired under the Asset Purchase Agreement. The Buyer has requested that the issue be remedied in one of two ways. As to certain specified Debtor entities, the Buyer has requested that the Trustee execute modified IP Assignments in the form set forth in Exhibit "A" to the Settlement Agreement which is attached as Exhibit "1" to the Gottlieb Declaration. In other instances, the Buyer has requested that the Trustee also sell, transfer and assign all shares of stock owned by Penthouse Global Media, Inc. in certain designated Debtors, none of which has assets, to its assignees. Contemporaneous with the hearing on this Motion, the Trustee has set for hearing his motion to dismiss the cases of the designated Debtors.

//

7

The following schedule summarizes the actions to be taken:

| No. | Entity | PENTHOUSE IP | Action to be Taken |
|-----|--------|--------------|---------------------|
| 01 | General Media Communications, Inc. | Trademarks & Copyrights | To be acquired via stock purchase along with modified IP assignment |
| 02 | Pure Entertainment Telecommunications, Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 03 | General Media Entertainment Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 04 | Penthouse Images Acquisitions, Ltd. | Copyrights | Modified assignment to be executed by Trustee |
| 05 | XVHUB Group, Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 06 | Penthouse Digital Media Productions, Inc. | Trademarks & Copyrights | To be acquired in stock purchase along with modified IP assignment |
| 07 | Danni Ashe, Inc. | Trademarks & Copyrights | To be acquired in stock purchase along with modified IP assignment |
| 08 | Steamray Studios, Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 09 | Tan Door Media, Inc. | Trademarks & Copyrights | To be acquired in stock purchase along with modified IP assignment |
| 10 | GMI Online Ventures, Ltd. | Copyrights | To be acquired in stock purchase along with modified IP assignment |

Finally, the Settlement Agreement also provides that the Buyer and the Trustee will mutually waive and release any and all claims which any may have against the other, including but not limited to the Claim and any rights under California Civil Code § 1542 or similar laws.

In all, the Parties believed that it was substantially preferable for them to resolve their disputes over the Wrong Pockets provision, enter into the modified IP Assignments and undertake the Stock Sale to sell shares of stock for which there exists no market other than the Buyer to avoid the potentially substantial cost and unnecessary delay, risk and cost each would incur if the Parties were required to litigate.

## V.    THE SETTLEMENT SHOULD BE APPROVED.

### A.    Standard of Review for Approval of a Compromise.

Bankruptcy Rule 9019(a) sets forth the requirements for the settlement or compromise of controversies after notice to all creditors and a hearing upon each such proposed compromise. Bankruptcy courts favor compromise. *See In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or

8

disapprove a compromise … rests in the sound discretion of the bankruptcy judge."). In reviewing a settlement, bankruptcy courts must determine whether the settlement is "fair and equitable" based on an "educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Protective Committee v. Anderson*, 390 U.S. 414, 424 (1968). When deciding whether to approve a settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate. *See Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986). Courts generally should "give[ ] deference to a trustee's business judgment in deciding whether to settle a matter" for the benefit of the estate." (citations omitted). *In re Douglas J. Roger, M.D., Inc., APC, ("Roger")*, 393 F. Supp. 3d 940, 961 (C.D. Cal. 2019). Under the circumstances of this case, the Settlement as set forth in the Settlement Agreement between the Trustee and the Buyer meets this standard.

 The United States Court of Appeals for the Ninth Circuit has indicated that in determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, a court should consider the following factors:  (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to their reasonable views in the premises. *See Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988) (quoting *A & C Props.*, 784 F.2d at 1380). It is not necessary that all of the conclusions reached in the consideration of each of the foregoing factors support the settlement, but taken as a whole, those conclusions must favor the approval of the settlement. *See In re Pacific Gas & Elec. Co*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) (citing *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)). "Ultimately, the court must determine whether the individual settlement sought to be approved under Bankruptcy Rule 9019(a) falls within the lowest range of reasonableness." *In re TCI2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010).

**B.** **This Compromise Implicates The Sale Provisions of 11 U.S.C. § 363 As Well As Bankruptcy Rule 9019 And The Settlement Satisfies This Standard As Well.**

Disposition by way of 'compromise' that requires the sale of estate property simultaneously "implicates the 'sale' provisions under section 363 as implemented by Rule 6004 and the 'compromise' procedure of Rule 9019(a)." *Roger,* 393 F. Supp. 3d at 962 citing *In re Mickey Thompson,* (*Mickey Thompson*") 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003). *Roger* noted that in *Mickey Thompson,* the court held that, "[w]hen confronted with a motion to approve a settlement under Rule 9019(a), a bankruptcy court is obliged to consider, as part of the 'fair and equitable' analysis [under *A & C Properties*], whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale." *Id.* at 421-22. However, the court noted that the decision whether to implement formal sale procedures in connection with a settlement offer is left to the bankruptcy court's discretion. *Id.* at 422." *Roger*, 393 F. Supp. 3d at 962. A trustee's application of his or her sound business judgment in the use, sale, or lease of property pursuant to 11 U.S.C. § 363(b) is subject to great judicial deference. *See, e.g., In re Moore,* 110 B.R. 924 (Bankr. C.D. Cal. 1990). In this case, the Trustee has used his business judgment to obtain payment of the Settlement Sum without any further risks or costs which would be required if no settlement was reached.

**1.** **The Stock Sale Satisfies The Requirements Of 11 U.S.C. § 363(b) And Should Be Approved By The Court.**

Bankruptcy trustees are permitted to sell property of the estate not in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). The Chapter 7 bankruptcy trustee has the duty and authority to take actions that "maximize the value of the estate." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1993 (1985). Thus, ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection. *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005). In connection with sales outside the ordinary course, "[t]he trustee's business judgment is to be given 'great judicial deference.'" (citation omitted). *In re Alaska Fishing Adventure, LLC*, 594 B.R. 883,

10

889-90 (Bankr. D. Ala 2018). *See also*, 3 COLLIER ON BANKRUPTCY ¶ 363.02[4] (Richard

Levin & Henry J. Sommer eds., 16th ed.) (In the context of sales of estate property under § 363, a

bankruptcy court "should determine only whether the trustee's judgment was reasonable and whether

a sound business justification exists supporting the sale and its terms").

The Stock Sale is the sale, transfer and assignment of stock of the designated Debtors by

Penthouse Global Media, Inc., their parent company, to Buyer's assignees. None of the Entities have

marketable assets, and each is merely a corporate shell. (For the avoidance of doubt, the proceeds of

sale of the Estates' assets are held by the Trustee for the benefit of creditors of the Estates and no

such proceeds or any other assets are being transferred by the Trustee to the Buyer or its assignees

under the Settlement other than the stock representing the ownership interests of the designated

Debtor shell entities.) The Buyer seeks to purchase the shares of the designated Debtors so that it

may register and otherwise address intellectual property transfer issues it has encountered since the

Closing of the Asset Purchase Agreement. Buyer believes the intellectual property may not have

been adequately assigned and transferred pursuant to the IP Assignments. There is no party which

has expressed any interest in the acquisition of the stock shares other than the Buyer. Under these

circumstances, the Trustee's business judgment for the Stock Sale in order to obtain the Settlement

Sum reflects sound business judgment and satisfies the requirements of 11 U.S.C. § 363(b)(1) and it

should be approved.[1]

### 2. The Sale, Transfer And Assignment Of The Shares Of The Designated Debtors Should Be Approved Free And Clear Of Interests Pursuant To 11 U.S.C. § 363(f).

The Buyer has requested that the Court approve the transfer of the stock of the designated

Debtors free and clear of all liens, claims and interests, so that no prepetition or administrative

claims may be asserted against it. The Buyer's request is understandable; a key factor in every sale

is maximization of the benefit for the estate and without adequate legal protections "cutting off"

---

[1] As noted, the purpose of the Stock Sale is to ensure that the Buyer obtains the intellectual property assignments which the parties understand it to have obtained as part of the Asset Purchase Agreement, i.e., the benefit of its bargain. Accordingly, it may be more appropriate to consider the Stock Sale as a remedial action to provide to the Buyer what the Parties contemplated would be transferred by means of the Asset Purchase Agreement rather than examined as an independent sale of shares. However, the transfer of the shares may be approved as a free and clear sale pursuant to section 363(f) of the Bankruptcy Code.

successor liability, the third party purchaser will not pay maximum value for an asset. *In re White Motor Credit Corp.,* 75 B.R. 944, 948, 951 (Bankr. N.D. Oh. 1987).

The sale of the shares of the designated Debtors may be free and clear of interests pursuant to 11 U.S.C. § 363(f), which provides as follows:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding.

Because section 363(f) of the Bankruptcy Code is written in the disjunctive, any one of these five conditions provides authority to sell the assets free and clear of liens. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988).

The Trustee believes there are no interests that exist with respect to the shares and they may therefore be sold free and clear under non-bankruptcy law. No prepetition claims or liens, other than those of Dream Media Corp, were scheduled against the designated Debtors and no other entities have asserted any such liens or interests throughout the duration of these cases. The only claims and liens, previously asserted by Dream Media, were fully released under the Trustee's settlement with Dream Media which this Court approved.[2] To the extent claims were filed against all Debtors (by virtue of a creditor listing all 15 Debtors in its proof of claim) they would be in bona fide dispute as to these five entities, and could be sold pursuant to Bankruptcy Code section 363(f)(4).

---

[2] Dream Media Corporation was the only party prior to the Petition Date which had any security interest in Debtors' assets. The Trustee and Dream Media Corporation settled pursuant to a modified settlement agreement with Dream Media pursuant to which Dream Media released its lien as to shares of stock only if the Trustee recovered at least $1.8 million from sources other than the Buyer, a condition which has not occurred. An Order Approving Settlement With Dream Media Corporation was entered by the court on May 16, 2018 [Docket #478].

1    Moreover, any potential prepetition claims (and none have been asserted) and any holders of

2    administrative claims asserted against the designated Debtors' stock can be – and in fact are being –

3    compelled to accept a money satisfaction of their claims in these chapter 7 bankruptcy cases.  Those

4    administrative claims will be paid pursuant to the priorities of the Bankruptcy Code by the Trustee of

5    the remaining nine administratively consolidated estates of Penthouse Media Group, Inc. *et. al.*

6    Therefore, since those claimants could be compelled in a chapter 7 proceeding to accept a money

7    satisfaction, the sale and satisfaction of any administrative claims by the remaining Estates in these

8    bankruptcy cases meets the requirements of section 363(f)(5).  *See, e.g., In re TWA*, 322 F.3d 282

9    (3rd Cir. 2003).

10    Examined from any of these perspectives, the Stock Sale should be approved as having

11    satisfied 11 U.S.C. § 363(f) such that the shares are delivered free and clear of any liens, claims and

12    interests.

13    **C.**    **The Settlement Agreement Satisfies The Rule 9019(a) Standard.**

14    As discussed below, consideration of the foregoing factors supports Court approval of the

15    proposed Settlement.

16    **1.    Probability of Success.**

17    The Trustee believes that the netted sum of $365,000 which the Buyer will pay or cause to be

18    paid to the Trustee realizes within ten percent (10%) the maximum amount which the Trustee

19    believes is owed the Estates by Buyer on account of their respective Wrong Pocket claims. While the

20    Trustee is optimistic he would prevail if litigation ensued, he stands a realistic chance of obtaining

21    an award of a sum lesser than the Settlement Sum and avoids any possibility that he would not

22    succeed. The Trustee also had no interest in litigating whether or not the IP Assignments needed to

23    be modified as the intellectual property to be transferred by them was what had been negotiated at

24    the time of the Asset Purchase Agreement. The Trustee is aware that there is no market for the

25    shares of stock of those Debtor entities which are now shells. The fees, risks, and delays associated

26    with litigation would likely overwhelm any additional amount which is recoverable. Accordingly,

27

28

while the Trustee believes that there is a good likelihood of success, he believes that it is not a certainty and that the risks could be more than he stands to gain if litigation were necessitated.

### 2.    Difficulties With Collection.

The Trustee has no information at this time regarding the financial status of the Buyer or any of its subsidiaries. Thus, there is some risk that any sum which may be awarded by the Court as part of a judgment may not be fully collectible or would be time consuming to collect. The settlement eliminates any such risks and delays.

### 3.    The Complexity of the Litigation.

The Trustee believes that any litigation would require him to incur attorneys' fees and costs, cause delay and require him to undertake unnecessary risks with little or no basis for believing that he would be able to achieve a superior outcome than the compromise provides.

### 4.    Interests of Creditors.

The Estates are administratively insolvent. Thus, the benefits and risks associated with litigation rest squarely on those with allowable administrative claims. The Trustee believes that the interests of creditors are best served by entering into the Settlement Agreement. The Settlement Agreement provides for a prompt, fair and efficient resolution of the Parties' disputes without costly, time consuming and risky litigation and by providing for mutual releases and waivers, without any additional risks. Under the circumstances of these cases, the Settlement Agreement is fair, reasonable and in the best interests of creditors.

### D.    Adequate Notice of the Motion Has Been Given.

Notice of the Motion and the hearing thereon has been given to (1) the Buyer; (2) all parties receiving notice through the Court's CM/ECF electronic notification system; (3) the Debtor; (4) the Office of the United States Trustee; and (5) all parties who have requested special notice of matters arising in these Cases. Accordingly, adequate notice of the Motion has been given.

//

//

**E.    The Trustee and the Buyer Acted in Good Faith in Connection With the Settlement And Sale.**

The Settlement Agreement and Sale were negotiated in good faith, at arms' length and, to the best of the Trustee's information and belief, without collusion or fraud of any kind.  Based on his experience as the chapter 7 Trustee of these Estates, the Trustee has determined that the Sale is integral to the consummation of the Settlement which itself represents a fair and reasonable compromise. Accordingly, this Court should find that the Trustee and the Buyer acted in good faith within the meaning of section 363(m) of the Bankruptcy Code. *See generally Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*, No. 89 Civ. 3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sassoon Jeans, In*c., 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order (a) granting the Motion; (b) approving the Settlement Agreement; (c) authorizing the sale, transfer and assignment of the shares of stock of specified designated Debtors to be sold to the Buyer or its assignees free and clear of all liens, claims and interest; (d) authorizing the Parties to enter into and take any and all actions reasonably necessary to effectuate the Settlement, including execution of the Settlement Agreement and the modified IP Assignments; and (e) granting the Trustee such other and further relief as the Court deems just and proper.

DATED: December 14, 2020                    LAW OFFICES OF BRADLEY E. BROOK, APC

                                            By:  */s/ Bradley E. Brook*
                                            Attorneys for David K. Gottlieb, Chapter 7 Trustee

### DECLARATION OF DAVID K. GOTTLIEB

I, David K. Gottlieb, declare as follows:

1.      I am the duly appointed Chapter 7 Trustee of the estates of PGMI and its affiliated debtor entities whose cases are being jointly administered with the PGMI case.

2.      I make this Declaration in support of the *Motion for Order Approving Settlement Between The Trustee And WGCZ Ltd., S.R.O and its Assignees Penthouse World Media, LLC, et al.* (the "Motion") to which this Declaration is annexed. All matters set forth herein are based on either my personal knowledge, my review of relevant documents and information, including, without limitation, documents and information supplied to me by my professionals, and , the record in these Cases for which judicial notice is sought. If called upon to testify, I could and would testify competently to the facts set forth herein.[3]

3.      A true and correct copy of the Settlement Agreement is attached to this Declaration as Exhibit "1".

4.      Under my professionals' calculations, the Settlement Sum is within ten percent (10%) of the net amount which I believe is owed to the Estates after netting all claims under the Wrong Pockets provision of the Asset Purchase Agreement. Approval of the Settlement Agreement eliminates all risks, costs and delays associated with litigation, including the possibility that some or all of the Buyer's administrative claim for $548,749.03 would be allowed, whether in whole or in part, because the Parties are executing full and mutual releases of the other. Thus, while I believe that I would prevail in litigation, there was little to any upside in pursuing the same, especially in light of the fees, costs and delays attendant to any such litigation.

5.      The Buyer also contends that the terms of certain Intellectual Property Assignments that were executed pursuant to the Asset Purchase Agreement, may have been insufficient to effectuate a complete assignment and transfer of all of the intellectual property such that it would be capable of registration in various jurisdictions.

---

[3] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

6.    Accordingly, under the Settlement Agreement, as Trustee of the Estates, I have

agreed to modify the relevant Intellectual Property Assignment to assign and transfer certain

intellectual property to designated Buyer's assignees and to sell all shares of stock of particular

Debtors (subsidiaries of Penthouse Global Media, Inc., the parent Debtor hereto), consistent with the

following chart:

| No. | Entity | PENTHOUSE IP | Action to be Taken |
|---|---|---|---|
| 01 | General Media Communications, Inc. | Trademarks & Copyrights | To be acquired via stock purchase along with modified IP assignment |
| 02 | Pure Entertainment Telecommunications, Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 03 | General Media Entertainment Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 04 | Penthouse Images Acquisitions, Ltd. | Copyrights | Modified assignment to be executed by Trustee |
| 05 | XVHUB Group, Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 06 | Penthouse Digital Media Productions, Inc. | Trademarks & Copyrights | To be acquired in stock purchase along with modified IP assignment |
| 07 | Danni Ashe, Inc. | Trademarks & Copyrights | To be acquired in stock purchase along with modified IP assignment |
| 08 | Steamray Studios, Inc. | Copyrights | Modified assignment to be executed by Trustee |
| 09 | Tan Door Media, Inc. | Trademarks & Copyrights | To be acquired in stock purchase along with modified IP assignment |
| 10 | GMI Online Ventures, Ltd. | Copyrights | To be acquired in stock purchase along with modified IP assignment |

7.    Ultimately, upon payment of the sum of $365,000 by or on behalf of the Buyer, as

Trustee I will execute a modification of certain Intellectual Property Assignments in the form set

forth in Exhibit "A" to the Settlement Agreement. While I believe both Parties both shared the goal

of reconciling the sums due each under the Wrong Pockets provision, the negotiations were vigorous

and challenging. However, at the end, the Estates accepted little, if any, discount from the maximum

amount that I believe they were owed without any additional risk, delay or cost.

8.    The Estates are administratively insolvent without any reasonable possibility of

becoming otherwise.  Accordingly, I believe in my capacity as Trustee of these Estates that the

interests of creditors are best served by entering into the Settlement Agreement. Without any other

feasible alternative, the Settlement Agreement is clearly in the best interests of creditors.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed this 11th day of December, 2020 at Encino, California.

David K. Gottlieb

# Exhibit 1

Execution Version

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between David K. Gottlieb (the "Trustee"), solely in his capacity as Trustee of the estates (the "Estates") of Penthouse Global Media, Inc. and related entities (collectively, "Debtors") as identified in U.S. Bankruptcy Case Nos. 1:18-bk-10098-MB through 1:18-bk-10113-MB (collectively, the "Bankruptcy Cases") in the U.S. Bankruptcy Court for the Central District of California ("Bankruptcy Court"), on the one hand, and WGCZ Ltd., S.R.O., and its assignees Penthouse World Media, LLC, Penthouse World Broadcasting, LLC, Penthouse World Licensing, LLC, Penthouse World Digital, LLC, and Penthouse World Publishing, LLC (collectively, the "Buyer"), on the other hand. The Trustee and the Buyer may hereinafter be referred to individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, the Bankruptcy Cases of the Debtors were initiated on January 11, 2018, when each of the Debtors filed its respective Chapter 11 petition and are being jointly administered pursuant to an order entered on January 16, 2018 [Docket No. 18];

WHEREAS, on March 2, 2018, the Bankruptcy Court entered an order directing the appointment of a chapter 11 trustee [Docket No. 231] and on March 6, 2018, the Office of the United States Trustee appointed David K. Gottlieb as the chapter 11 trustee in the Bankruptcy Cases [Docket No. 239];

WHEREAS, by order entered June 14, 2018, the Trustee obtained the Bankruptcy Court's authorization to sell substantially all of the estates' assets under the terms of an Asset Purchase Agreement ("Purchase Agreement") to the successful bidder at a bankruptcy auction that was held on June 14, 2018 [Docket No. 577];

WHEREAS, amongst the agreements the Parties executed in conjunction with the Purchase Agreement were a series of Intellectual Property Assignments (each, an "Assignment");

WHEREAS, on June 15, 2018 (the "Sale Closing Date"), the sale of substantially all of the Debtors' assets to the Buyer was consummated pursuant to the terms of the Purchase Agreement (the "Closing");

WHEREAS, section 4.13 of the Purchase Agreement ("Wrong Pockets Provision") provides that the Trustee agreed that if he received payments after the Closing on account of receivables after June 15, 2018 which the Buyer had acquired, he would remit them to the Buyer while the Buyer agreed that if it received payment on account of pre-Closing receivables, it would remit them to the Trustee;

WHEREAS, on November 21, 2018, the Buyer filed a Request for Payment of an Administrative Claim in the case as well as a proof of claim [Docket No. 739, Proof of Claim

Execution Version

No. 88-1] contending that the Trustee owed it no less than a sum totaling $548,749.03 (the "Claim");

WHEREAS, on January 31, 2019, the Trustee filed a motion to convert the Debtors' cases to cases under chapter 7 of the Bankruptcy Code [Docket No. 791];

WHEREAS, by order dated March 12, 2019, the Bankruptcy Court entered an order granting the Trustee's motion to convert the Cases to Chapter 7 [Docket No. 810] and the Office of the United States Trustee appointed David Gottlieb to serve as Chapter 7 trustee (the "Trustee") [Docket No. 812];

WHEREAS, the Parties' reconciliation of the Wrong Pockets Provision differs;

WHEREAS, the Buyer has advised the Trustee that it believes the text of the Intellectual Property Assignments should be modified to address problems it has encountered in registering the purchaser Intellectual Property in certain foreign jurisdictions;

WHEREAS, the Buyer also desires to purchase the shares of stock of certain designated Debtor subsidiaries to address these issues;

WHEREAS, following good faith, arm's length negotiations, and to avoid the expense, delay and risks of litigation, the Parties desire to resolve the disputes between and among them, subject to the terms and conditions as hereinafter set forth, and pursuant to Bankruptcy Code section 363 and Federal Rule of Bankruptcy Procedure 9019;

NOW, THEREFORE, in consideration of the mutual terms and covenants to be performed by each of the Parties hereto, and subject to approval of this Agreement by the Bankruptcy Court, the Parties hereby agree as follows:

## TERMS AND CONDITIONS

1.    Recitals Acknowledged.
The foregoing recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.

2.    Bankruptcy Court Approval.
The terms of this Agreement, and the effectiveness thereof, are subject to the approval of the Bankruptcy Court, after the Parties' compliance with the notice and hearing requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.  Within ten (10) days of execution of this Agreement, the Trustee will file a motion seeking Bankruptcy Court approval of this Agreement.

3.    Effective Date.
This Agreement shall become effective (the "Effective Date") on the first business day following the fourteenth (14th) day after entry of an order by the Bankruptcy Court approving this Agreement for which no stay of the order granting the motion to approve this agreement is in

**Execution Version**

effect, unless the order expressly provides that the order shall be effective and enforceable immediately upon entry, in which case the Agreement shall become effective on the date of entry of the order.

4.    Escrows.

Contemporaneously with the Trustee's filing of a motion to approve this agreement:

    a.    The Buyer shall cause the sum of $365,000 (the "Payment") to be deposited in a trust account held by Buyer's counsel, Quinn Emanuel Urquhart & Sullivan, LLP, which amount will be held in escrow.

    b.    The Trustee shall execute all documents required by Section 5.b hereof and provide them to Trustee's counsel, in form and substance acceptable to Buyer, which documents will be held in escrow.

5.    Settlement.

On the Effective Date, and contemporaneous with each other:

    a.    The Buyer shall cause to be paid from the Quinn Emanuel, et al. trust account the Payment in full satisfaction of all amounts due either Party on account of the Wrong Pockets Provision and shall withdraw, with prejudice, all claims filed against the Estates including, without limitation, Proof of Claim No. 88-1 and expressly waives any and all other claims against the Estates except for any claims or rights under this Agreement.

    b.    The Trustee shall and hereby does sell, transfer and assign, free and clear of all claims, liens, and encumbrances (if any), all shares of stock of General Media Communications, Inc., Penthouse Digital Media Productions, Inc., Danni Ashe, Inc., Tan Door Media, Inc. and GMI On-Line Ventures, Ltd. to the assignee(s) as are designated by Buyer and shall release to the Buyer from escrow a modification of the respective Intellectual Property Assignments for General Media Communications, Inc., Pure Entertainment Telecommunications, Inc., General Media Entertainment, Inc., Penthouse Images Acquisitions, Ltd., XVHUB Group, Inc., Penthouse Digital Media Productions, Inc., Danni Ashe, Inc., Steamray Studios, Inc., Tan Door Media, Inc. and GMI On-Line Ventures, Ltd. substantially in the form set forth in Exhibit "A" hereto to confirm that the Estates transferred and assigned the following intellectual property set forth in the following Schedule:

CONTINUED ON PAGE 4

Execution Version

| No. | Entity | PENTHOUSE IP | Action to be Taken |
|---|---|---|---|
| 01 | General Media Communications, Inc. | Trademarks & Copyrights | Purchase of stock shares; modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 02 | Pure Entertainment Telecommunications, Inc. | Copyrights | Modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 03 | General Media Entertainment Inc. | Copyrights | Modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 04 | Penthouse Images Acquisitions, Ltd. | Copyrights | Modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 05 | XVHUB Group, Inc. | Copyrights | Modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 06 | Penthouse Digital Media Productions, Inc. | Trademarks & Copyrights | Purchase of stock shares; modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 07 | Danni Ashe, Inc. | Trademarks & Copyrights | Purchase of stock shares; modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 08 | Steamray Studios, Inc. | Copyrights | Modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |

Execution Version

| 09 | Tan Door Media, Inc. | Trademarks & Copyrights | Purchase of stock shares; modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |
| 10 | GMI On-Line Ventures, Ltd. | Copyrights | Purchase of stock shares and/or memberships interests, as applicable; modify Intellectual Property Assignment to reflect that the Trustee transferred and assigned the intellectual property described therein as of June 15, 2018 |

     c.    <u>Release of the Trustee and the Estates</u>.

    Except as for the Payment, obligations and benefits set forth by and for the Parties in this Agreement, each entity constituting the Buyer hereby releases and forever discharges the Estates, the Trustee, the Debtors, their successors in interest and their respective agents, attorneys, consultants, financial advisors and insurers each in their capacity(ies) as such (collectively, the "Trustee Release Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that any or all of the entities constituting the Buyer has or may have against any, some, or all of the Trustee Release Parties.

     d.    <u>Release of the Buyer Parties</u>.

    Except as for the obligations set forth by or for the Parties in this Agreement, the Trustee on behalf of each of the Debtors and their respective bankruptcy estates (collectively, the "Trustee Releasors") hereby releases and forever discharges the Buyer and each of its respective predecessors, successors, assigns, and attorneys (the "Buyer Released Parties") from and against any and all claims (including, without limitation, all complaints, causes of action, lawsuits, charges, debts, liens, contracts, agreements, promises, liabilities, judgments, demands, damages, losses, emotional distress, rights, benefits, obligations, attorneys' fees, costs and expenses), of any kind, nature or type, whether known or unknown, liquidated or unliquidated, matured or unmatured, that the Trustee Releasors have or may have against any, some, or all of the Buyer Released Parties.

     e.    <u>Unknown Claims</u>.

    The Parties each acknowledge and assume the risk that subsequent to the execution of this Agreement, he or it may discover facts or law, or may incur, suffer or discover losses, damage or injuries which are unknown and unanticipated at the time this Agreement was executed or became effective, which if known at such time may have materially affected his decision to give the release contained herein.

**Execution Version**

Having been fully advised by counsel, the Trustee on behalf of the Debtors and their Estates, and each of the entities constituting the Buyer voluntarily and with full knowledge of the potential consequences of doing so, assumes the obligations of this Agreement and all risks of any detriment arising from the execution of this Agreement, and hereby waives any possible right to set aside or rescind this Agreement, and further waives any and all rights he might otherwise possess under California Civil Code section 1542 and similar provisions of law existing in any other jurisdiction.

California Civil Code Section 1542 provides as follows:
"A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

6.    Entire Agreement.
This Agreement constitutes the final and entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous negotiations, discussions, agreements and understandings of the Parties, whether oral or written, with respect to such subject matter.

7.    Binding on Successors.
This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties.

8.    No Assignments or Delegation of Rights.
Neither Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement, including but not limited to the Claim.

9.    Jurisdiction and Venue.
Any action to enforce this Agreement must be brought in the Bankruptcy Court. The Parties each hereby waive their right to trial by jury, if any, in connection with any such legal action. The Parties consent to entry of a final judgment or order by the Bankruptcy Court as a core matter.

10.    Modification. This Agreement may be modified only by a writing executed by the Party to this Agreement against whom enforcement of such modification is sought.

11.    Further Assurances.
The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.

12.    Signature and Execution.
A signed copy of this Agreement shall have the same force and effect as the original. This Agreement may be executed in counterparts, each of which is deemed to be an original, but such counterparts together shall constitute one and the same instrument.

Execution Version

13.    <u>Severability</u>.
In the event that any court determines that any provision of this Agreement is unenforceable, the provision at issue shall be enforced to the maximum extent permitted by law, and all other provisions shall remain in full effect.

14.    <u>Full Authority to Sign Agreement</u>.
Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the Trustee, to bind the bankruptcy estates, subject only to approval of the Bankruptcy Court.

15.    <u>No Penalty for Drafting Agreement</u>.
No provisions of this Agreement shall be interpreted for or against any Party because that Party or its legal representative drafted this Agreement.

16.    <u>Parties to Bear Own Costs</u>.
Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution and approval of this Agreement. Notwithstanding the foregoing, if legal action is necessary to enforce the terms of this Agreement, the Party declared to be the prevailing party in such proceedings shall be entitled to its reasonable attorneys' fees and costs incurred in enforcing this Agreement.

17.    <u>Termination</u>.
Unless otherwise agreed by the Parties in writing, this Agreement shall terminate upon the earlier of (i) the entry of an order of the Bankruptcy Court denying the Trustee's motion to approve this Agreement, or (ii) January 21, 2021, if the Effective Date has not occurred on or before January 20, 2021, *provided, however*, that if termination pursuant to this Section is the result of a Party's breach, the non-breaching Party may waive termination and elect to enforce this Agreement.

IN WITNESS WHEREOF, the Parties hereto hereby execute this Settlement Agreement as of the date of final signature below.

Dated: December __, 2020          David K. Gottlieb, Chapter 7 Trustee

                                By:_____
                                    David K. Gottlieb, solely in his capacity as Chapter 7
                                    trustee of the jointly administered estates of Penthouse
                                    Global Media, Inc. and its related debtor entities

Dated: December __, 2020          WGCZ Ltd., S.R.O.

                                By:_____
                                Name:_____
                                Title:_____

7

**Execution Version**

Dated: December ___, 2020                    Penthouse World Media, LLC

                                             By:_____
                                             Name:_____
                                             Title:_____

Dated: December ___, 2020                    Penthouse World Broadcasting, LLC

                                             By:_____
                                             Name:_____
                                             Title:_____

Dated: December ___, 2020                    Penthouse World Licensing, LLC

                                             By:_____
                                             Name:_____
                                             Title:_____

Dated: December ___, 2020                    Penthouse World Digital, LLC

                                             By:_____
                                             Name:_____
                                             Title:_____

Dated: December ___, 2020                    Penthouse World Publishing, LLC

                                             By:_____
                                             Name:_____
                                             Title:_____

Exhibit A

## INTELLECTUAL PROPERTY ASSIGNMENT

This INTELLECTUAL PROPERTY ASSIGNMENT (this "Agreement"), dated as of June 15, 2018 (the "Execution Date"), is entered into by and between David K. Gottlieb, solely in his capacity as Chapter 11 Trustee for Penthouse Global Media, Inc., a Delaware corporation ("PGLM"), and those affiliates of PGLM set forth on Appendix A attached hereto (individually, a "Debtor" and collectively, "Debtors") (collectively, the "Assignor") on the one hand, and Penthouse World Media, LLC, a Delaware limited liability company ("Assignee"), on the other hand. Assignor and Assignee are each referred to herein as a "Party" and collectively, as the "Parties."

### RECITALS:

WHEREAS, Assignor and Assignee have entered into that certain Asset Purchase Agreement dated as of June 4, 2018 (the "APA"), pursuant to which Assignor has agreed to sell certain intellectual property and other assets to Assignee on the terms and conditions set forth therein. All capitalized terms used herein but not otherwise defined herein shall have the meanings provided in the APA.

WHEREAS, pursuant to the APA, Assignor agreed to assign all right, title and interest in and to certain Intellectual Property (as defined in the APA) assets to Assignee, and Assignor desires to further evidence the assignment of such right, title and interest in and to the Intellectual Property to Assignee on the terms and conditions of this Agreement; and Assignee desires to acquire from Assignor all right, title and interests in and to the Intellectual Property.

**NOW, THEREFORE,** in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.    Assignment. Subject to the terms and conditions of the APA, effective as of the Execution Date, Assignor hereby assigns, sells, transfers, conveys and delivers to Assignee, and Assignee acquires from Assignor, all right, title and interest of Debtors in the Intellectual Property related to the following:

(a)    all trademarks held or owned by the Debtor General Media Communications, Inc., including, without limitation, those listed on Schedule 1.1(a), whether unregistered or registered with the United States Patent and Trademark Office or other Governmental Entity or office thereof, and all common law rights therein, including all such trade names, trademarks, service marks, and trade dress, together with all goodwill associated with the foregoing (collectively, the "Marks");

(b)    the U.S., state and foreign trademark, trade name, and service mark registrations and applications associated with the Marks, including, without limitation, all common-law rights related to, and goodwill associated with, the foregoing, and the right to apply to register the Marks worldwide;

(c)    all copyrights held or owned by Debtor Penthouse Global Media, Inc.,

1

including, without limitation, the copyrights set forth on Schedule 1.1(b) hereto, whether unregistered or registered with the United States Copyright Office or other Governmental Entity or office thereof, and all common law rights therein, together with all goodwill associated with the foregoing (collectively, the "Copyrights");

(d)      all rights under warranties, indemnities and all similar rights against third parties to the extent related to any of the Marks and/or Copyrights, and any and all Claims and causes of action, of whatever nature, known or unknown, for past, present or future infringement of any of the foregoing, with the right, but not the obligation, to sue for and collect damages for infringement of the foregoing, whether arising by way of counterclaim or otherwise, and the right to enforce any rights and file any Claims against other Persons associated therewith.

2.      Other Terms. The provisions of the APA are incorporated herein by this reference. In the event of any conflict or inconsistency between the terms of this Agreement and the APA, the terms of the APA shall govern. Nothing herein is intended to, nor shall it, assign any rights to the Excluded Assets set forth on Schedule 1.2 of the APA.

3.      Successors and Assigns. The provisions of this Agreement shall be binding upon and inure to the benefit of each of Assignors and Assignee and their respective successors and permitted assigns, subject to the terms and conditions of the APA.

4.      Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without giving effect to any choice or conflict of law provision or rule of any other jurisdiction).

5.      Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Signatures appear on the following page.]*

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the day and year first above written.


**ASSIGNOR:**

_____
David K. Gottlieb, solely in his capacity as
Chapter 11 Trustee for the estates of the Debtors


**ASSIGNEE:**

Penthouse World Media, LLC

By:     _____
Name:  _____
Title:   _____

3

## APPENDIX A

### PGLM AFFILIATES

- PENTHOUSE GLOBAL LICENSING, INC.
- PENTHOUSE GLOBAL BROADCASTING, INC.
- PENTHOUSE GLOBAL DIGITAL, INC.
- PENTHOUSE GLOBAL PUBLISHING, INC.
- GMI ON-LINE VENTURES, LTD.
- PENTHOUSE DIGITAL MEDIA PRODUCTIONS, INC.
- TAN DOOR MEDIA, INC.
- PENTHOUSE IMAGES ACQUISITIONS, LTD.
- PURE ENTERTAINMENT TELECOMMUNICATIONS, INC.
- XVHUB GROUP, INC.
- GENERAL MEDIA COMMUNICATIONS, INC.
- GENERAL MEDIA ENTERTAINMENT, INC.
- DANNI ASHE, INC.
- STREAMRAY STUDIOS, INC.

4

## Schedule 1.1(a)

## MARKS

The term "Marks" as used in this Agreement includes, without limitation, the marks set forth below, together with all variations thereof owned, used or held for use by any Assignor and/or Debtors, whether registered or unregistered, and all common law rights therein, including without limitation the following (*provided, however*, the listing of trademark registrations or applications in this Schedule is not a representation by Assignor that the listed registration or application is currently valid or has been maintained with the applicable government trademark office or that this Schedule contains an exhaustive list of all trademarks owned by the Debtor):

[Attached.]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE FOR ORDER APPROVING SETTLEMENT BETWEEN THE TRUSTEE AND WGCZ LTD., S.R.O. AND ITS ASSIGNEES PER BANKRUPTCY RULE 9019 AND AUTHORIZING THE TRUSTEE TO SELL THE ESTATE'S EQUITY INTEREST IN CERTAIN PROPERTY PURSUANT TO 11 U.S.C. § 363; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID K. GOTTLIEB IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 14, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On December 14, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 14, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

    *Via Federal Express*
    Honorable Martin R. Barash
    United States Bankruptcy Court
    Central District of California
    21041 Burbank Boulevard, Suite 342 / Courtroom 303
    Woodland Hills, CA 91367

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 14, 2020 | Janice G. Washington | /s/ Janice G. Washington |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**U.S. Bankruptcy Court**
**Central District of California (San Fernando Valley)**
**In re Penthouse Global Media, Inc., Case No. 18-10098-MB**
**SETTLEMENT AGREEMENT SERVICE LIST**

## 1. NOTICE OF ELECTRONIC FILING (NEF)

Ron Bender on behalf of Interested
Party Courtesy NEF
rb@lnbyb.com

Stephen F Biegenzahn on behalf of
Creditor Eli B. Dubrow
efile@sfblaw.com

Paul M Brent on behalf of
Interested Party WGCZ Ltd.,
S.R.O.
snb300@aol.com

Bradley E Brook on behalf of
Plaintiff DAVID K GOTTLIEB
bbrook@bbrooklaw.com,
paulo@bbrooklaw.com;brookecfm
ail@gmail.com

Bradley E Brook on behalf of
Plaintiff DAVID K GOTTLIEB
bbrook@bbrooklaw.com,
paulo@bbrooklaw.com;brookecfm
ail@gmail.com

Bradley E Brook on behalf of
Trustee David Keith Gottlieb (TR)
bbrook@bbrooklaw.com,
paulo@bbrooklaw.com;brookecfm
ail@gmail.com

Linda F Cantor, ESQ on behalf of
Trustee David Keith Gottlieb (TR)
lcantor@pszjlaw.com,
lcantor@pszjlaw.com

Carol Chow on behalf of Interested
Party Jerrick Media Holdings, Inc.
carol.chow@ffslaw.com,
easter.santamaria@ffslaw.com

Carol Chow on behalf of Interested
Party Jerrick Ventures LLC
carol.chow@ffslaw.com,
easter.santamaria@ffslaw.com

Russell Clementson on behalf of
U.S. Trustee United States Trustee
(SV)
russell.clementson@usdoj.gov

Joseph Corrigan on behalf of
Creditor Iron Mountain
Information Management, LLC
Bankruptcy2@ironmountain.com

Brian L Davidoff on behalf of
Interested Party Silver Reel
Entertainment Mezzanine Fund,
L.P.
bdavidoff@greenbergglusker.com,
calendar@greenbergglusker.com;jk
ing@greenbergglusker.com

James A Dumas, Jr on behalf of
Creditor NOA Productions SPRL
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

James A Dumas, Jr on behalf of
Creditor Penthouse Global
Broadcasting, Inc.
jdumas@dumas-law.com,
jdumas@ecf.inforuptcy.com

Jeffrey K Garfinkle on behalf of
Creditor Easy Online Solutions,
Ltd. d/b/a MojoHost
jgarfinkle@buchalter.com,
docket@buchalter.com;dcyrankow
ski@buchalter.com

Allan B Gelbard on behalf of Other
Professional Allan B. Gelbard

xxxesq@aol.com,
Allan@GelbardLaw.com

David Keith Gottlieb (TR)
dkgtrustee@dkgallc.com,
dgottlieb@iq7technology.com,rjoh
nson@dkgallc.com,akuras@dkgall
c.com

Mirco J Haag on behalf of Creditor
Easy Online Solutions, Ltd. d/b/a
MojoHost
mhaag@buchalter.com,
dcyrankowski@buchalter.com;doc
ket@buchalter.com

Mark S Horoupian on behalf of
Interested Party Courtesy NEF
mhoroupian@sulmeyerlaw.com,
mhoroupian@ecf.inforuptcy.com;c
caldwell@sulmeyerlaw.com

Mark S Horoupian on behalf of
Interested Party WSM Investment,
LLC dba TOPCO Sales
mhoroupian@sulmeyerlaw.com,
mhoroupian@ecf.inforuptcy.com;c
caldwell@sulmeyerlaw.com

Jeffrey L Kandel on behalf of
Trustee David Keith Gottlieb (TR)
jkandel@pszjlaw.com

John P Kreis on behalf of Creditor
Claxson Media LLC
jkreis@kreislaw.com,
j.kreis@ca.rr.com

Michael D Kwasigroch on behalf
of Defendant Revideo, Inc.
attorneyforlife@aol.com

Michael D Kwasigroch on behalf
of Defendant Kelly Holland
attorneyforlife@aol.com

Andrew B Levin on behalf of
Interested Party Kirkendoll

Management LLC
alevin@wcghlaw.com,
Meir@virtualparalegalservices.co
m;pj@wcghlaw.com;jmartinez@w
cghlaw.com

Peter W Lianides on behalf of
Interested Party Kirkendoll
Management LLC
plianides@wghlawyers.com,
pj@wcghlaw.com;jmartinez@wghl
awyers.com;Meir@virtualparalegal
services.com

David W. Meadows on behalf of
Interested Party Courtesy NEF
david@davidwmeadowslaw.com

Krikor J Meshefejian on behalf of
Creditor Interested Party
kjm@lnbyb.com

Alan I Nahmias on behalf of
Interested Party Courtesy NEF
anahmias@mbnlawyers.com,
jdale@mbnlawyers.com

Iain A W Nasatir on behalf of
Interested Party Courtesy NEF
inasatir@pszjlaw.com,
jwashington@pszjlaw.com

Iain A W Nasatir on behalf of
Trustee David Keith Gottlieb (TR)
inasatir@pszjlaw.com,
jwashington@pszjlaw.com

Hamid R Rafatjoo on behalf of
Creditor Committee The Official
Committee of Unsecured Creditors
hrafatjoo@raineslaw.com,
bclark@raineslaw.com

S Margaux Ross on behalf of U.S.
Trustee United States Trustee (SV)
margaux.ross@usdoj.gov,
Kate.Bunker@UST.DOJ.GOV

Michael St James on behalf of
Creditor Interested Party
ecf@stjames-law.com

Michael St James on behalf of
Interested Party Michael St. James
ecf@stjames-law.com

Howard Steinberg on behalf of
Creditor Greenberg Traurig, LLP
steinbergh@gtlaw.com,
pearsallt@gtlaw.com;laik@gtlaw.c
om

Cathy Ta on behalf of Creditor
Penthouse Clubs Worldwide, LLC
cathyta@cathyta.net

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Michael H Weiss on behalf of
Attorney Weiss & Spees, LLP
mw@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Danni Ashe, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor GMI Online Ventures, Ltd.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor General Media
Communications, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor General Media
Entertainment, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Penthouse Digital Media
Productions, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Penthouse Global
Broadcasting, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Penthouse Global Digital,
Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Penthouse Global
Licensing, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Penthouse Global Media,
Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
 ebtor Penthouse Global
Publishing, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Penthouse Images
Acquisitions, Ltd.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Pure Entertainment
Telecommunications, Inc. fka For
Your Ears Only, Ltd.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Streamray Studios, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor Tan Door Media, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Michael H Weiss on behalf of
Debtor XVHUB Group, Inc.
lm@weissandspees.com,
lm@weissandspees.com

Marc J Winthrop on behalf of
Interested Party Kirkendoll
Management LLC
mwinthrop@wghlawyers.com,
bry@lnbyb.com

pj@wcghlaw.com;jmartinez@
wghlawyers.com

Christopher K.S. Wong on
behalf of Creditor LSC
Communications US, LLC /
Creel Printing
christopher.wong@arentfox.co
m, yvonne.li@arentfox.com

Beth Ann R Young on behalf
of Creditor Dream Media
Corporation
bry@lnbyb.com

Beth Ann R Young on behalf
of Creditor Interested Party

## 2.   SERVED BY UNITED STATES MAIL:

*Debtor*
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

*Counsel for Debtor*
Michael H. Weiss, Esq.
WEISS & SPEES LLP
6310 San Vicente Boulevard, Suite 401
Los Angeles, CA  90048

*Trustee*
David K. Gottlieb
Managing Member
D. Gottlieb & Associates, LLC
16255 Ventura Blvd., Suite 440
Encino, California, 91436

*Office of U.S. Trustee*
Margaux S. Ross
915 Wilshire Blvd. , Suite 1850
Los Angeles, CA 90017

*Counsel for The Official Committee of
Unsecured Creditors*
c/o Hamid R. Rafatjoo
Raines Feldman LLP
1800 Avenue of the Stars, 12th Floor
Los Angeles, California  90067

DVD Factory Inc.
Representative: Steve Kalson
7230 Coldwater Canyon Ave.
North Hollywood, CA 91605

LSC Communications US, LLC / Creel Printing.
Representative: Dan Pevonk
4101 Winfield Rd.
Warrenville, IL 60555

Palm Coast Data
Representative: Neil Gordon
11 Commerce Blvd.
Palm Coast, FL 32164

*Counsel for Buyers*
Razmig Izakelian, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
865 S Figueroa St Fl 10
Los Angeles, CA 90017-5003

Michael Thomas Zeller
Quinn Emanuel et al LLP
865 S Figueroa St Fl 10
Los Angeles, CA 90017-5003

Kenneth John Shaffer
Quinn Emanuel Urquhart & Sullivan, LLP
865 S Figueroa St Fl 10
Los Angeles, CA 90017-5003

Michelle Fullmer
Fisher Broyles
5670 Wilshire Blvd, Suite 1800
Los Angeles, CA 90036

Allan B. Gelbard
Attorney at Law
15760 Ventura Boulevard
Suite 801
Encino, CA 91436

Kelly Holland
10945 Old Santa Susana Pass
Chatsworth, CA 91311

Robert W. Campbell
Penthouse Global Media, Inc.
8944 Mason Ave.
Chatsworth, CA 91311

Miller Law Group
Representative: Walter M. Stella
111 Sutter Street
San Francisco, CA 94104

Mark A. Mintz
Attorney at Law
JONES WALKER
201 St. Charles Avenue
New Orleans, LA 70170-5100

Howard J. Steinberg (CA SBN 89291)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

Aram Ordubegian (SBN 185142)
Robert M. Hirsh (pro hac vice
application to be submitted
ARENT FOX LLP
555 West Fifth Street 48th Fl
Los Angeles, CA 90013-1065

Joseph Corrigan
Bankruptcy2@ironmountain.com
Iron Mountain Information Management,
LLC One Federal Street, 7th Floor
Boston, MA  02110

Internal Revenue Service
Bankruptcy Specialist
Attention:  Angela Smith
Insolvency Group 1
300 North Los Angeles Street M/S 5022
Los Angeles, CA  90012